**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

Case No. 20-30663

The Roman Catholic Diocese of Syracuse,
New York,

Chapter 11

Debtor.

Judge Margaret Cangilos-Ruiz

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
SEEKING AUTHORITY PURSUANT TO RULE 2004
TO SUBPOENA DOCUMENTS AND TESTIMONY**

The Official Committee of Unsecured Creditors (the "Committee") hereby moves, pursuant to

Rule 2004 of the Federal Rules of Bankruptcy Procedure, for entry of an order in the form annexed as

**Exhibit A**, authorizing the Committee to issue subpoenas to compel the production of documents and

the provision of testimony.

The Committee first requested information it deemed critical to mediation and case

administration as early as July 2020. The Debtor agreed to provide information quickly and

cooperatively. The Committee expanded its request for information during the Debtor's substantially-

delayed Section 341 meeting in early September. To date, the Committee has received very minimal

information from the Debtor.

This information bottleneck is hampering the Committee's work. The Debtor's chapter 11 case

has been pending for nearly 5 months and the Committee still has serious questions regarding the

Debtor's assets, insurance, and liabilities. Although the Committee expects that the Debtor will

ultimately provide the information sought (the Debtor finally provided a first draft of a non-disclosure

agreement on Tuesday of last week), the Debtor's delay in sharing information with the Committee is

very concerning and could lead to harmful delays in the case, as well as increased costs, if the

production languishes further.

CORE/9990000.2173/162913330.1

The Committee's concerns are made more acute by the recently-set claim deadline that will expire in approximately six months. In setting the bar date, the Court attempted to balance interests. The Court set a bar date that expires prior to the deadline under New York's Child Victims Act to reduce administrative costs and allow efforts at a mediated settlement to begin as soon as possible. Further delays in the Debtor's production of information will imperil both goals. It will presumably take the Debtor several additional weeks to produce all of the information at issue and the onset of seasonal holidays threatens to delay the process further. Further, the Committee will require time to digest the information requested, and the Committee may require the production of additional material before it can be in a position to mediate knowledgeably. At a minimum, the Committee must have access to (i) the documents and other information identified in **Exhibit B**, and (ii) certain witnesses it believes necessary to contextualize such information.

For these reasons, the Committee respectfully requests entry of an Order requiring the production of information requested. The Committee also respectfully asks the Court to impose a three-week deadline for the Debtor's production of information and an eight-week deadline for the production of information by the Debtor's parishes.

### JURISDICTION

1. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The predicate for the relief requested herein is Bankruptcy Rule 2004.

3. No prior request for the relief sought in this Motion has been made to this or any other court.

CORE/9990000.2173/162913330.1

**RELEVANT FACTS**

4.      On June 19, 2020, the Debtor filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.

5.      On July 9, 2020, the Office of the United States Trustee appointed the Committee in the Debtor's chapter 11 case pursuant to section 1102 of the Bankruptcy Code [Docket No. 38].

6.      Shortly after the Committee was appointed, its undersigned attorneys communicated with attorneys for the Debtor about a broad range of issues. In the course of this discussion, the Committee informed the Debtor that it would require, among other things, access to abusive priest information, detailed data relating to insurance coverage and policies, and detailed information relating to the assets and liabilities of both the Debtor and its affiliated entities. Counsel for the Debtor assured the Committee's attorneys that such information would be provided quickly and voluntarily.

7.      The 341 meeting in this case was originally scheduled to occur on July 28, 2020. It was later adjourned and rescheduled and it ultimately took place on September 9, 2020.

8.      During the 341 meeting, the Debtor stated on multiple occasions that it would provide substantial, additional information to the Committee on a voluntary basis. Such assurances related to many of the categories of information set forth on **Exhibit B**.

9.      Three months have passed since the date originally scheduled for the 341 hearing and approximately seven weeks have passed since the adjourned 341 hearing concluded. Despite prompting, the Debtor has not provided the information promised to the Committee.

10.     The Debtor's parishes have retained counsel in the case. [*See* Docket No. 197].

**RELIEF SOUGHT**

11.     The Committee seeks entry of an order authorizing the Committee to conduct Bankruptcy Rule 2004 examinations of the Debtor and its parishes, which will all be seeking a *de facto*

CORE/9990000.2173/162913330.1

discharge through this case by means of a channeling injunction and third party releases, and authorizing the Committee to issue subpoenas pursuant to Bankruptcy Rule 9016 compelling the Debtor and its affiliated parishes to produce documents as set forth in **Exhibit B**. In addition, the Committee requests the authority to issue subpoenas to compel the testimony of up to four officers or employees of the Debtor and/or its parishes without further application to this Court to the extent that the Committee determines, in its discretion, that such testimony is reasonably necessary and appropriate based on the Committee's review of documents produced. The Committee further asks (i) that the Court require the Debtor to produce all non-privileged, responsive documents within three weeks, and (ii) that the Court require the Debtor's parishes to produce all non-privileged, responsive documents within eight weeks.

12.   The Bankruptcy Code charges the Committee with "investigat[ing] the acts, conducts, assets, liabilities, and financial condition of the debtor . . . [and] any other matter relevant to the case or the formulation of a plan." 11 U.S.C. § § 1103(c)(2). The Committee believes that a reasonable examination of the Debtor and any other parties seeking a release or channeling injunction through these proceedings to be a critical and necessary component of the Committee's fulfillment of its statutory obligations.

13.   Rule 2004(a) provides, that "[o]n motion of any party in interest, the court may order the examination of any entity."

14.   In addition, Rule 2004 permits a bankruptcy court to order the examination of any person and the production of documentary evidence relating to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Bankruptcy Rule 2004(b),(c).

15.   The purpose of Rule 2004 is to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether

wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (citation omitted). *See also In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000) (purpose of Rule 2004 is to "determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors").

16. Rule 2004 "necessarily permits a broad investigation into the financial affairs of debtors to assure the proper administration of bankruptcy estates." *In re Symington*, 209 B.R. 678, 683-84 (Bankr. D. Md. 1997); *see also Keene Corp. v. Johns-Manville Corp. (In re Johns-Manville)*, 42 B.R. 362, 364 (S.D.N.Y. 1984) (2004 examination may "cut a broad swath through the Debtor's affairs"); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008) (inquiry into any matter that may affect administration of estate "comfortably falls within the allowed limits under Rule 2004"); *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (purpose of Rule 2004 "is to facilitate the discovery of assets and the unearthing of frauds"); *In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985) (scope of a 2004 examination is "unfettered and broad"); *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983) (2004 examination "to a considerable extent [may be] a fishing expedition").

17. Rule 2004 expressly contemplates the examination of non-debtor parties. *See* Fed. R. Bankr. P. 2004(a) and (c) ("On motion of any party in interest, the court may order the examination of *any entity*" and compel such witness's attendance through a subpoena) (emphasis added).

18. The relief requested by this Motion falls squarely within the broadly recognized scope of Rule 2004.

19. To serve the interests of clarity and fairness, the Committee made an effort to serve this Motion on all parties that it expects may be impacted by the requests for relief it contains.

20. The Committee anticipates that it may need to seek discovery beyond the scope of the request in this Motion and thus expressly reserves all related rights.

Page **5** of **6**

WHEREFORE, the Committee respectfully requests that this Court enter an order, substantially in the form attached, granting the relief requested, and such other and further relief as this Court deems appropriate.

Date: November 3, 2020

/s/ *Robert T. Kugler*

Robert T. Kugler (MN # 194116)
Edwin H. Caldie (MN # 388930)
**Stinson LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Main: 612-335-1500
Facsimile: 612-335-1657
Email:    robert.kugler@stinson.com
             ed.caldie@stinson.com

*Counsel for the Official Committee of Unsecured Creditors*

CORE/9990000.2173/162913330.1

# EXHIBIT A – PROPOSED ORDER

CORE/9990000.2173/162921237.1

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

The Roman Catholic Diocese of Syracuse,
New York,

         Debtor.

Case No. 20-30663

Chapter 11

Judge Margaret Cangilos-Ruiz

**ORDER AUTHORIZING THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO SUBPOENA DOCUMENTS AND TESTIMONY
PURSUANT TO RULE 2004**

Based on the *Motion of the Official Committee of Unsecured Creditors Seeking Authority Pursuant to Rule 2004 to Subpoena Documents and Testimony* (the "2004 Motion") filed on November 3, 2020, by the Official Committee of Unsecured Creditors pursuant to 11 U.S.C. § 2004:

IT IS ORDERED:

1.      The Committee is authorized to issue subpoenas compelling the Debtor to produce documents and otherwise respond to all Debtor-specific items set forth on Exhibit B to the 2004

CORE/9990000.2173/162921237.1

Motion. The Debtor shall have no more than three calendar weeks from the issuance of such subpoena to produce all non-privileged, responsive documents.

2.      The Committee is authorized to issue subpoenas compelling all parishes within the Diocese of Syracuse to produce documents and otherwise respond to all parish-specific items set forth on Exhibit B to the 2004 Motion. Any parish receiving such a subpoena shall have no more than eight calendar weeks from the issuance of such subpoena to produce all non-privileged, responsive documents.

3.      The Committee is authorized, without further application to the Court, to issue subpoenas compelling testimony from up to four officers and employees of (i) the Debtor, or (ii) any of the parishes that will be seeking a third party release or protected party status under a channeling injunction in this case.

###

CORE/9990000.2173/162921237.1

## EXHIBIT B – FIRST 2004 REQUEST

CORE/9990000.2173/162921237.1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 20-30663 |
| The Roman Catholic Diocese of Syracuse, New York, | Chapter 11 |
| Debtor. | Judge Margaret Cangilos-Ruiz |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND ADDITIONAL INFORMATION TO THE DEBTOR PURSUANT TO FED. R. BANKR. P. 2004**

The Official Committee of Unsecured Creditors hereby requests that the debtor, The Roman Catholic Diocese of Syracuse, New York, produce the following documents and additional information on or before October 30, 2020.

**DEFINITIONS**

1. "And" and "or" shall be construed either in the disjunctive or conjunctive as necessary to bring within the scope of these discovery requests all responses that might otherwise be construed to be outside their scope.

2. "Debtor" refers to The Roman Catholic Diocese of Syracuse, New York, and its employees, agents, attorneys, accountants, and all other persons and entities representing and/or acting or purporting to act on its behalf.

3. "Bankruptcy" means the bankruptcy proceeding of the Debtor, captioned as *In re The Roman Catholic Diocese of Syracuse, New York* (Bankr. N.D.N.Y., Case No. 20-30663).

4. "Communication" shall mean the transmission of information in any form.

5. "Document" or "Documents" means all written, electronic or graphic material and defined as documents in Rule 34 of the Federal Rules of Civil Procedure, and all ESI. This definition

CORE/9990000.2173/162921237.1

includes, without limitation: reports; memoranda; correspondence; communications; notes; email; letters; inter-office and intra-office communications; diaries; financial statements; trial balances; statistics; term sheets; contracts; minutes; proposals; studies; pamphlets; statements; summaries; agendas or bulletins. This definition includes graphic or oral records or representations of any kind and any electronic, mechanical, or electric records or representations of any kind. This definition also includes all drafts, versions and non-identical copies of any such materials.

6. "ESI" means electronically-stored information as that phrase is used in the Federal Rules of Civil Procedure.

7. "Petition Date" means June 19, 2020.

8. "Relating to" means to consist of, refer to, pertain to, reflect, evidence, constitute or be in any way logically or factually connected with the matter discussed.

9. "Relevant Time Period" means June 19, 2014 to the present.

10. "Schedules" means the documents filed at ECF No. 48 and 57, and all supplements and amendments thereto.

11. "Statement of Financial Affairs or SOFA" means the documents filed at ECF No. 48 and all supplements and amendments thereto.

## INSTRUCTIONS

1. Unless otherwise specified, the time period for these requests is the Relevant Time Period.

2. Produce all ESI in its original, native format with all metadata intact.

## REQUESTS

**Debtor-Specific Requests**

CORE/9990000.2173/162921237.1

| 1. | All Documents relating to any insurance claim(s) paid by the Debtor during the three years preceding the Petition Date. |
|---|---|
| 2. | A detailed catalog or list of the items included in the archives located on the basement level of the Chancery at 240 E. Onondaga Street, including an estimate of each item's value. |
| 3. | All Documents relating to building improvements listed in section 55.14 of the schedules. |
| 4. | An estimate of the number of claims/claimants included in section 3.9 of the schedules. |
| 5. | All Documents relating to the transfers of land, building, and equipment in sections 13.4-13.9 of the schedules. |
| 6. | A statement setting forth (i) the amount that the Debtor paid Mackenzie Hughes to prepare and complete any transfers and (ii) the total amount that the Debtor paid Mackenzie Hughes within ninety (90) days prior to the Petition Date? |
| 7. | All Documents relating to the formation of the Hope Appeal. |
| 8. | All Documents relating to transfers to, or lines of credit for Bishop Grimes and Bishop Ludden, as referred to in sections 3.29 & 3.30 of the Debtor's Schedules or otherwise. |
| 9. | All Documents reflecting the value of properties listed in sections 13.1-13.6 of the schedules and all documents containing any information referencing or demonstrating the methodology applied for such valuation. |
| 10. | All Documents relating to the transfer of St. Patrick's School, Rome Catholic School, and Trinity Catholic School to the Debtor in 2013. |
| 11. | All Documents relating to payments listed in the SOFA 3 attachment (p.58). |
| 12. | All Documents relating to the transfers to the benefit pension plan held by Charles Schwab ($1,278,173.42) within ninety (90) days prior to the Petition Date. |
| 13. | All Documents relating to the transfer of $469,149.75 to the Clerical Fund Society, listed in section of 3.112 of the Debtor's Schedules. |
| 14. | All Documents relating to the Debtor's roster of retired priests. |
| 15. | All Documents relating to the transfers, and/or the basis/bases for the transfers listed in the Debtor's Schedules or Statement of Financial Affairs. |
| 16. | All Documents reflecting the Debtor's hiring of investigators to investigate or examine individuals who filed complaints against the Debtor. |
| 17. | All Documents relating to valuations included in the Debtor's 2016/2017 Financial Statement. |
| 18. | All Documents relating to transfers by the Debtor relating to the property located at 333 Butternut Drive, Syracuse, New York. |
| 19. | All Documents relating to audits conducted by the Debtor in the 20 years preceding the Petition Date. |
| 20. | All Documents relating to any transfer made by the Debtor within ninety (90) days prior to the Petition Date. |
| 21. | All Documents relating to investigators hired by the Debtor, including information on their qualifications and the Debtor's consideration and evaluation of their qualifications. |
| 22. | All Documents relating to the Debtor's funding of treatment for survivors of child sexual trauma or abuse. |
| 23. | All Documents relating to amounts budgeted for assistance to survivors of clergy sexual abuse. |

| 24. | All Documents relating to priests that have been named in a lawsuit filed under New York's Child Victims Act. |
|---|---|
| 25. | All Documents relating to priests (whether active, inactive, retired, or of another status), receiving inpatient or outpatient treatment assistance relating to the abuse of children or allegations of abuse of children. |
| 26. | All Documents relating to victims of clergy sexual abuse who have died by suicide. |
| 27. | All Documents relating to James Purtell. |
| 28. | All Documents relating to the formation of, operation of, management of, and amounts on deposit with the Syracuse Diocesan Investment Fund. |
| 29. | All Documents relating to transfers listed on the Debtor's SOFA 3 attachment. |
| 30. | All financial statements for Catholic Cemeteries of the Roman Catholic Diocese of Syracuse, Inc. from 2016 to present. |
| 31. | All Documents relating to the June 2017 term loan for $2.5 million entered into for purposes of loaning $2,000,000 to Catholic Cemeteries of the Roman Catholic Diocese of Syracuse, Inc. |
| 32. | All Documents relating to the $5.3 million letter of credit posted for the New York Workers' Compensation Board. |
| 33. | All Documents relating to the cost of administering the Debtor's Insurance Program and Health Plan as well as Documents reflecting amounts that participants paid in premiums over the three (3) years preceding the Petition Date. |
| 34. | All financial statements of the Debtor for the 10 fiscal years preceding the Petition Date. |
| 35. | All Documents relating to, or reflecting board appointments and/or composition for the board of the pension trust account at Charles Schwab. |
| 36. | A schedule setting forth the names and locations of all priests (whether current, retired, or religious order priests) receiving payments of any form from the Debtor. |
| 37. | All Documents relating to credibly-accused priests that received payment through the Clerical Fund or any other pension funds administered, funded, or controlled (directly or indirectly) by the Debtor. |
| | **Parish-Specific Requests** |
| 38. | All versions of your articles of incorporation, bylaws, and any operating agreements. |
| 39. | All versions of the articles of incorporation, bylaws and operating agreements, of any affiliated entity, including, but not limited to, parish councils, foundations, and schools. |
| 40. | The names and contact information for your trustees, directors, and officers during the Relevant Time Period. |
| 41. | All Documents and Communications concerning property of the Debtor during the Relevant Time Period. |
| 42. | All of your federal, state, and local tax returns and all related Communications and other Documents during the Relevant Time Period. |
| 43. | All Documents and Communications such as financial statements, operating statements, loan applications or any similar documents prepared by the parish or on its behalf during the Relevant Time Period. |
| 44. | All Documents and Communications such as financial statements, operating statements, loan applications or any similar documents prepared by or on behalf of any parish foundations during the Relevant Time Period. |

| 45. | All Documents and Communications related to parish guidelines, policies, employment manuals or operating instructions during the Relevant Time Period. |
|---|---|
| 46. | All Documents and Communications related to any donor restrictions applicable to any funds in your possession or under your control in excess of $5,000. |
| 47. | All Documents and Communications that indicate that you are a named insured, or otherwise insured, under any insurance policy. |
| 48. | All Documents and Communications relating to any payment made by the parish, or on the parish's behalf, for the purchase of insurance during the Relevant Time Period. |
| 49. | All Documents and Communications relating to allegations of sexual abuse that occurred within the parish or that were committed by priests, officers, managers, ministers, employees, or volunteers of the parish. |
| 50. | All Communications between any priest, deacon, officer, director, manager, or other employee of the parish and the Bishop or Auxiliary Bishop of the Debtor. |
| 51. | All Documents containing the personnel file of any priest, deacon, officer, director, manager, or other employee of the parish, that has been accused of sexual misconduct. |
| 52. | For each priest that worked in your parish and thereafter worked in another parish in the Roman Catholic Diocese of Syracuse or any other diocese, all Documents and Communications regarding the change in location of their place of ministry or practice. |
| 53. | All Documents and Communications related to the parish's efforts to identify insurance potentially available to the parish with respect to any liability for acts of sexual abuse. |
| 54. | All Documents and Communications related to any claim or lawsuit of any kind against the parish during the Relevant Time Period. |
| 55. | All Documents and Communications relating to any transfers of property from the parish to the Debtor in excess of $5,000 during the Relevant Time Period. |
| 56. | All Documents and Communications relating to any transfers of property from the Debtor to the parish in excess of $5,000 during the Relevant Time Period. |
| 57. | All Documents and Communications relating to any transfers of parish funds, or parish affiliate funds, to the Syracuse Diocesan Investment Fund from 2010 to present. |
| | **Insurance Requests - Each of the Following Constitutes both a "Debtor-Specific Request" and a "Parish-Specific Request"** |
| 58. | All insurance policies and certificates issued to the Debtor that may provide coverage for a claim of sexual abuse or sexual misconduct. |
| 59. | All insurance policies and certificates issued to any parish or school within the Debtor, which may provide coverage for any claim based on sexual abuse or sexual misconduct. |
| 60. | Any insurance coverage charts describing or demonstrating the policy periods, limits, and retentions for any insurance policies or certificates that may provide coverage for a claim(s) of sexual abuse or sexual misconduct. |
| 61. | All declination letters and reservation of rights letters issued by any insurer(s) to the Debtor, or any parish or school within the Debtor, for a claim of sexual abuse or sexual misconduct. |
| 62. | All insurance policies and certificates issued to any party that may evidence the rights or status of the Debtor, or the rights or status of any parish or school within the Debtor, as an additional insured under such policy or certificate. |

| 63. | For each missing or incomplete insurance policy or certificate that may fall into any of the categories listed in foregoing requests, copies of all secondary evidence of such missing or incomplete policy or certificate, including but not limited to any organizational documents reflecting the existence or amount of insurance, parish reports, and documents from any agent or broker reflecting the existence or amount of insurance. |
|---|---|
| 64. | For any missing or incomplete insurance policies or certificates that may fall into any of the categories listed in foregoing requests, a description of efforts undertaken or planned by You for locating copies of such policies and/or secondary evidence of such missing or incomplete policies. |

Date: November 3, 2020

/s/ *Robert T. Kugler*

Robert T. Kugler (MN # 194116)
Edwin H. Caldie (MN # 388930)
**Stinson LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Main: 612-335-1500
Facsimile: 612-335-1657
Email:    robert.kugler@stinson.com
           ed.caldie@stinson.com

*Counsel for the Official Committee of
Unsecured Creditors*

CORE/9990000.2173/162921237.1