UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____
                                        )
                                        )
In re:                                  )
                                        )    Case No. 20-30663
The Roman Catholic Diocese of Syracuse, )
New York,                               )    Chapter 11
                                        )
            Debtor.                     )
_____  )

# MEMORANDUM-DECISION AND ORDER GRANTING MOTION TO DEEM LATE CLAIM AS TIMELY FILED

L.M. ("Movant"), a sexual abuse survivor and unsecured creditor in this case, filed a Motion to Deem Late Claim to be Timely Filed (the "Motion") and Supplemental Motion to Deem Claim Timely Filed (the "Supplement"), seeking an order of the court pursuant to Rule 9006(b)(1)[1] to permit his/her late proof of claim to be designated as timely.[2] The Roman Catholic Diocese of Syracuse, New York ("Debtor") objected to the relief requested on the grounds that Movant failed to demonstrate excusable neglect. For the reasons set forth below, the Motion is granted.

---

[1] All statutory references are to 11 U.S.C. et seq. (the "Bankruptcy Code" or "Code") and all references to "the Rules" are to the Federal Rules of Bankruptcy Procedure, unless otherwise noted.

[2] The record consists of Motion to Deem Late Claim to be Timely Filed (the "Motion" at Doc. 659); The Official Committee of Unsecured Creditors' Response in Support of Motion to Deem Claims as Timely Filed ("Committee Response" at Doc. 773); Declaration of Edwin H. Caldie in Support of the Official Committee of Unsecured Creditors' Response in Support of Motion to Deem Claims as Timely Filed ("Caldie Decl." at Doc. 773-2); Omnibus Response to Various Motions Seeking to Allow Late Filed Proofs of Claim as Timely Filed and Reservation of Rights ("Diocese Response" at Doc. 774); Supplement to Omnibus Response to Various Motions Seeking to Allow Late Filed Proofs of Claim as Timely Filed and Reservation of Rights ("Diocese Supplement" at Doc. 781); Supplemental Motion to Deem Claim Timely Filed ("Supplement" at Doc. 811-2); Response by the Official Committee of Unsecured Creditors in Support of Motion to Deem Claim Timely-Filed ("Committee Supplement" at Doc. 814); The Roman Catholic Diocese of Syracuse, New York Response to Supplemental Motion to Deem Claim Timely Filed ("Diocese Second Supplement" at Doc. 815); HEARING HELD PDF with attached audio on 12/09/2021 (Doc. 788); and HEARING HELD PDF with attached audio on 01/20/2022 (Doc. 826). The court takes judicial notice of other filings in the bankruptcy case as referenced throughout this Order.

1

## JURISDICTION AND VENUE

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Motion is proper pursuant to 28 U.S.C. § § 1408 and 1409.

## BACKGROUND

On September 21, 2020, Debtor filed Motion For Entry of an Order Establishing a Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof that sought to set a deadline of March 1, 2021, for creditors to file proofs of claim in this case (the "Bar Date Motion")(Doc. 118). The Official Committee of Unsecured Creditors (the "Committee") opposed the Bar Date Motion, instead seeking to set August 14, 2021, as the date to be coterminous with New York's Child Victims' Act deadline (the "CVA Deadline") for commencing a lawsuit for previously time barred childhood sexual abuse claims (Doc. 150). On November 6, 2020, this court entered Bar Date Order Establishing April 15, 2021, as the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof (the "Bar Date Order")(Doc. 214). The court coupled the earlier April 15, 2021 deadline ("Bar Date") with a robust notice protocol intended to address due process concerns and allow creditors to timely file their claims. The objective was to set Debtor's case on an expedited track (Bar Date Order, p.12).

Thereafter, the Committee filed Motion to Extend Time Deadline for the Filing of Claims (the "Extension Motion")(Doc. 363) renewing its request to extend the Bar Date to coincide with the CVA Deadline. The court denied the Extension Motion but noted "[t]here will be ways to remedy and address anyone who surfaces later and whether mentally they're incompetent because of something or they have excusable neglect." (Transcript regarding Hearing Held 3/25/2021, Doc. 446, p. 38).

Since that time, with Debtor and the Committee support, the court has entered three orders permitting survivor claimants to have their claims deemed timely, even though they were filed after the Bar Date. (See Doc. Nos. 823, 824 and 831). Those other claimants differ from Movant in one important way; their proofs of claim were filed after the Bar Date but before the expiration of the CVA Deadline, while Movant's proof of claim was filed on August 27, 2021, two weeks after the CVA Deadline lapsed. Significantly, Movant commenced an action against Debtor in New York State Supreme Court one day <u>prior</u> to the expiration of the CVA Deadline.[3] With this background in mind, the court must determine whether the circumstances surrounding Movant's belated claim establishes 'excusable neglect' so that such claim should be deemed timely filed.

## DISCUSSION

**I.    Bar Dates are Critically Important to the Reorganization Process**

Rule 3003(c) provides that a court shall fix a date by which proofs of claim must be filed in a Chapter 11 case, commonly referred to as a bar date. The United States Court of Appeals for the Second Circuit (the "Second Circuit") has recognized that such deadlines have an "essential function" in bankruptcy proceedings. *See In re Enron Corp.*, 419 F.3d 115, 127 (2d Cir. 2005). "A bar order does not function merely as a procedural gauntlet, but as an integral part of the reorganization process. If individual creditors were permitted to postpone indefinitely the effect of a bar order . . . the institutional means of ensuring the sound administration of the bankruptcy estate would be undermined." *In re Hooker Invs., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991). Established time limits for claims "serve the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal

---

[3] Although it disputes the validity of such action, Debtor acknowledges Movant commenced a lawsuit in New York State Supreme Court solely against Debtor on August 13, 2021.

3

of successful reorganization." *Id.* As such, it is "akin to a statute of limitations, and must be strictly observed." *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y 1995).

## II.     The *Pioneer* Excusable Neglect Analysis

Although bar dates play a critical role in bankruptcy proceedings, there may be limited circumstances in which a court will permit a party to file a late proof of claim and have it deemed timely. Rule 3003(c)(3) permits a court "for cause shown" to extend the time within which proofs of claim or interest may be filed. The "cause" standard of Rule 3003 incorporates the excusable neglect standard of Rule 9006, the general rule governing the computation, enlargement, and reduction of periods of time prescribed in other bankruptcy rules. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).

Rule 9006(b)(1) provides:

> when an act is required or allowed to be done at or within a specified period . . . by order of the court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done **where the failure to act was the result of excusable neglect.**

(emphasis added).

The United States Supreme Court's precedential holding in *Pioneer* governs the excusable neglect analysis. "Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable', we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 380. The circumstances considered in *Pioneer* included four factors that courts now routinely utilize when reviewing excusable neglect: (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether

the movant acted in good faith (collectively, the "*Pioneer* Factors"). *Id.* at 395. The burden to show that the *Pioneer* Factors have been met falls on the claimant. *See In re XO Commc'ns, Inc.*, 301 B.R. 782, 795 (Bankr. S.D.N.Y. 2004).

In the Second Circuit, the reason for the delay is weighted more heavily than the other factors. *See In re Global Aviation Holdings*, 495 B.R. 65 (citing *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-416 (2d Cir. 2004). "'[T]he four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a close[ ] case, the reason-for-delay factor will always be critical to the inquiry.'" *In re Enron Corp.*, 419 F.3d 115, 123 (2d Cir. 2005), citing *Silivanch v. Celebrity Cruises Inc.*, 333 F.3d 355, 367 n.7 (2d Cir. 2003). This approach recognizes the first, second, and fourth factors usually favor the party seeking the extension. *See In re Lyondell Chem. Co.*, 543 B.R. 400, 409 (Bankr. S.D.N.Y. 2016). Consequently, the justification for the tardy claim is the principal consideration in the analysis.

### A. Danger of Prejudice to Debtor

The first element in the *Pioneer* inquiry considers the danger of prejudice to Debtor. Movant asserts Debtor will "in no way be prejudiced" by the belated filing of Movant's claim, as Debtor knew about it a mere fourteen days after the expiration of the CVA Deadline. (See Supplement at ¶ 3). The Committee supports that position, indicating there is "no risk of hindering the progress of the case" and granting the Motion is "almost certain to have no impact on the Debtor's outcome in the case." (See Committee Response at ¶ 4). In opposition, Debtor states the prejudice imposed upon it and the administration of its case is significant, highlighting the potential danger of opening the "floodgates to similarly situated claimants" such that achieving finality in this case would not

5

be possible. (See Diocese Second Supplement at ¶ 8; see also Hearing Held PDF with attached audio on 01/20/2022 at Doc. 826). Debtor argues this risk warrants denial of the Motion.

When considering the prejudice factor, courts share Debtor's concerns about opening the floodgates to potential claimants. *See In re Dana Corp.*, 2007 WL 157763 at *6; *see also In re Enron* 419 F.3d at 132. This concern is pronounced in a very large bankruptcy case such as this one and is further magnified by the scope of abuse and number of survivors in this case. *See In re AMR Corp.*, 492 B.R. 660, 667 (Bankr. S.D.N.Y. 2013). As a result, there is a possibility that many potential claimants who were not aware of the Bar Date could continue to come forward during the pendency of this proceeding and disrupt the orderly administration of claims.

Nevertheless, the court does not find Debtor's prejudice argument dispositive based on the specific circumstances of this case. "The prejudice factor calls for consideration of the overall negative effect, if any, on a debtor and its estate resulting from allowing a late claim." *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120 (Bankr. S.D.NY. 2010). In addition, "Prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *In re Enron Corp.*, 419 F.3d at 131, citing *In re O'Brien Envtl. Energy Inc.*, 188 F.3d 116, 127 (3d Cir. 1999). In the instant proceeding, any hypothetical harm that could result from a potential barrage of survivor's late claims is minimized by the statutory and common law safeguards of Rule 9006(b)(1) and the *Pioneer* Factors. The court, as the gatekeeper, will use those protections to prevent the floodgates from opening and hindering Debtor in its reorganization efforts. Consequently, the court concludes that allowing Movant's late claim will create little or no danger of prejudice to the Debtor, nor will it result in any delay in advancing this case.

**B. Length of Delay and its Potential Impact on Judicial Proceedings**

When considering the length of delay and potential impact on judicial proceedings, there is no specific threshold at what point the lateness of a claim is "substantial." *In re Enron*, 419 F.3d at 128. It is undisputed that Movant's claim was filed in the bankruptcy case four months after the Bar Date and two weeks after the CVA Deadline. Given the current posture of this case, the court does not find a four month delay substantial.

The Second Circuit dictated that "The lateness of a claim must be considered in the context of the proceedings as a whole." *In re Enron Corp.*, 419 F.3d at 128. Although a four month delay could negatively impact this proceeding at a more advanced stage of the case, it is insignificant at this juncture. Debtor and the other interested parties are still involved in extensive mediation and a chapter 11 disclosure statement and plan of reorganization has not yet been proposed. Thus, allowing Movant's claim to be deemed as timely filed at this point will have very little impact on Debtor's reorganization efforts.

Additionally, as noted above, Movant commenced a state court lawsuit one day prior to the expiration of the CVA Deadline. This affirmative legal action was an attempt to preserve his/her rights before the CVA Deadline passed, a significant consideration in the court's analysis and in the context of this restructuring. As the Supreme Court noted in reviewing excusable neglect under Rule 9006, a Chapter 11 restructuring intends to achieve the twin aims of both reorganization of the debtor while avoiding forfeitures by creditors.[4] Not permitting the belated proof of claim under

---

[4] "The "excusable neglect" standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases. The rules' differentiation between Chapter 7 and Chapter 11 filings corresponds with the differing policies of the two chapters. Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors." *Pioneer* at 389, citing *United States* v. *Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983).

7

these circumstances would undeniably result in a forfeiture by Movant, contrary to one of the underlying goals of the reorganization process.

### C.  Reason for the Delay, Including Whether it was Within Reasonable Control of Movant

As previously discussed, when considering the four *Pioneer* Factors, the reason for the delay has been cited as the most critical inquiry. *See In re Enron Corp.*, 419 F.3d at 123. A creditor seeking to file a late claim "must explain the circumstances surrounding the delay in order to supply the Court with sufficient context to fully and adequately address the reason for the delay factor and the ultimate determination of whether equities support the conclusion of excusable neglect." *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007), citing *Pioneer*, 507 U.S. at 388. In the instant matter, Movant provided an undisputed explanation: As a victim of seven years of childhood sexual abuse, Movant's memories of trauma are difficult and painful. (See Motion at ¶¶ 1 and 7). "The brief delay from the bar date is entirely understandable considering the years of psychological pain L.M. has had to endure as a result of the Debtor's negligence. Prior to the expiration of the CVA deadline L.M. was unable to reconcile the abuse s/he had to endure." (Supplement at ¶ 2).

Additionally, in spite of the robust notice protocols established by the Bar Date Order, Movant was "[u]naware of the bar date until recently, as s/he did not receive notice of the bankruptcy and contacted his/her counsel just days before the expiration of the CVA Deadline to file a case in State court." (Supplement at ¶ 5). Counsel for the Movant stated s/he also had no information on the Bar Date until s/he was "contacted by counsel for the Debtor after the CVA deadline passed (this is the only case counsel has against the Debtor)." *Id.* The court concurs with well established precedent that lack of knowledge alone does not suffice to establish a right to relief from the bar date based on excusable neglect. *See In re Tronnox Inc.*, 626 B.R. 688, 698 (Bankr. S.D.N.Y.

8

2021). It is, however, a consideration in the overall analysis and partially explains Movant's reason for the delay in this case. *Id.* Moreover, Movant's mistaken belief that the CVA Deadline governed his/her claim is plausible given the widespread publication of that date and the legal action taken within that time limit. Under these limited circumstances, the court finds Movant's error, coupled with the reluctance to disclose the sexual abuse, provides sufficient justification for the belated filing. Accordingly, the third and most significant *Pioneer* Factor weighs in favor of permitting the late claim to be deemed timely filed.

### D.     Whether Movant Acted in Good Faith

The fourth inquiry under the *Pioneer* analysis requires an examination of the good faith and intentions of Movant. Based on the record before it and the nature of the trauma associated with Movant's sexual abuse claim, the court accepts Movant's statement that s/he has acted in good faith as genuine. In addition, Debtor has affirmatively stated that Movant is not proceeding in bad faith, and later stipulated that Movant acted in good faith (See Diocese Second Supplement at ¶12; see also Hearing Held PDF with attached audio on 01/20/2022 at Doc. 826). Accordingly, the final *Pioneer* Factor supports a finding of excusable neglect.

### CONCLUSION

Upon careful review of the *Pioneer* Factors and the equities in this case, the court concludes Movant has satisfied his/her burden and demonstrated 'excusable neglect' exists to permit the late filed claim to be deemed timely pursuant to Rule 9006(b)(1). These considerations are persuasive to warrant relief and the Motion is therefore granted as set forth herein.

**IT IS HEREBY:**

**ORDERED** that Movant's claim shall be deemed timely filed for purposes of voting and participation in a subsequent distribution pursuant to a confirmed plan of reorganization; and it is further

**ORDERED** that all of Debtor's rights are reserved with respect to the allowance, classification, and treatment of Movant's claim in any subsequent plan of reorganization; and to object to, and seek disallowance of, Movant's claim on any grounds other than timeliness.

The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

February 22, 2022

/s/ Wendy A. Kinsella
Wendy A. Kinsella
United States Bankruptcy Judge