UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 20-30663 |
| The Roman Catholic Diocese of Syracuse, New York, | Chapter 11 |
| Debtor. | Judge Wendy A. Kinsella |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR ENTRY OF AN ORDER (I) PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING THE COMMITTEE TO ISSUE SUBPOENAS REGARDING THE DISCLOSURE OF CONFIDENTIAL SURVIVOR INFORMATION; AND (II) DIRECTING AZRA AND ISO TO SECURE, SEGREGATE, AND PRESERVE ALL INFORMATION RELATING TO SURVIVORS CLAIMS OR THE TRANSMISSION AND RECEIPT OF RELATED DATA**

The Official Committee of Unsecured Creditors (the "Committee") hereby moves the Court (the "Motion") for entry of an order pursuant to Fed. R. Bankr. P. 2004 authorizing the Committee to issue to subpoenas compelling Interstate Fire & Casualty Company, National Surety Corporation, and Fireman's Fund Insurance Company ("Interstate"), Allianz Reinsurance America Inc., dba, Allianz Resolution Management ("AZRA"), and Insurance Services Office ("ISO") to (1) produce all documents responsive the Document Requests (defined herein) no later than October 12, 2023; (2) immediately identify all individuals with knowledge regarding Document Requests (the "Potential Deponents"); (3) produce any Potential Deponents the Committee identifies for depositions no later than November 3, 2023; and (4) directing AZRA and ISO to immediately secure, segregate, and preserve Survivor proofs of claim and all related information or communications on a separate, off-network server or system for purposes of allowing the Committee to investigate the scope and impact of Interstate's admitted, improper disclosures. In support of the Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Individuals who suffered sexual abuse at the hands of the actors within the Diocese of Syracuse (the "Survivors") are the core creditor constituency in this case. If a global settlement is to be achieved, Survivors must be placed in a position to understand and develop a reasonable level of trust with respect to all aspects of the Diocese's bankruptcy process.

2.      Survivors provided deeply sensitive and personal information to assert their claims in this case. In coming forward, Survivors had to confront the circumstances of their abuse and manage the resulting trauma. Survivors filed their claims in this case pursuant to an explicit guarantee that their personal information would be protected and their confidence would not be betrayed.

3.      Interstate's admission—that it shared confidential Survivor information with unauthorized entities—not only violates the protections the Committee, the Debtor, and the Court sought to provide survivors, but, more importantly, harms Survivors themselves and threatens to undermine their collective trust in this case. Interstate's improper actions impacted over 100 Survivors in ways and to a degree that are, at this point, unknown.

4.      Interstate's admission that it shared confidential Survivor information with unauthorized parties further threatens to undermine trust in diocesan bankruptcy cases across the country and to create a further disincentive for Survivors to file claims in such matters.

5.      The timing of Interstate's admission raises further concerns.

6.      While Interstate does not disclose when it first discovered its breach of the Bar Date Order (defined herein), the Interstate Letter (defined herein) suggests that Interstate had knowledge of its breach at least a week before Interstate disclosed it to Survivors, the Court, the Debtor, or

2

the Committee.[1] Interstate addressed the Court and led argument before this Court on behalf of

certain insurers on the afternoon of September 28, 2023, just a few hours before Interstate filed its

Letter.

7.        By this Motion, the Committee respectfully seeks authority to ascertain the scope

and impact of Interstate's transmission of protected Survivor claim information to unauthorized

parties. Survivors have a right to understand what happened and how it may impact them. Creditors

will also need to know the full scope of Interstate's potential liability in this case before entering

into any settlement involving Interstate. This knowledge is necessary because any settlement with

Interstate would undoubtedly include broad, unqualified releases on its behalf.

### FACTUAL BACKGROUND

8.        On June 19, 2020, the Debtor filed a voluntary petition with this Court under

chapter 11 of the Bankruptcy Code (the "Petition Date").

9.        On July 9, 2020, the Office of the United States Trustee appointed the Committee

pursuant to 11 U.S.C. § 1102.

10.       On November 6, 2020, the Court entered the *Bar Date Order Establishing April

15, 2021 as the Deadline for Filing Proofs of Claim and Approving the Form and Manner of

Notice Thereof* (the "Bar Date Order") [Dkt. No. 214].

11.       The Bar Date Order established a confidentiality protocol (the "Confidentiality

Protocol") for the protection of sensitive information contained in proofs of claim filed by

Survivors.[2] Among other things, the Confidentiality Protocol limits the parties who are authorized

---

[1] The Interstate Letter (defined herein) indicates that ISO employees signed the Confidentiality Agreement on September 19, 2023. Interstate Letter at p. 4-12. The Interstate Letter further indicates that "[r]ecords have been maintained" for purposes of Interstate's disclosure, suggesting that Interstate was aware of its breach of the Bar Date Order for a period of time before notifying interested parties of its breach. *See* Interstate Letter at p. 2.
[2] The Confidentiality Protocol is set forth in the Bar Date Order at ¶ 11.

access to Survivor claims filed in this case (the "Authorized Parties").[3] The Bar Date Order

indicates that following insurer entities implicated by Survivor claims are Authorized Parties:

> Any Insurance Carriers that provided insurance or reinsurance that
> may cover the claims described in any Sexual Abuse Proof of Claim,
> together with their respective successors, reinsurers and counsel.[4]

The Bar Date Order does not define "Insurance Carriers," but indicates that "[c]apitalized terms

used but not defined herein shall have the meanings ascribed to them in the [*Motion for Entry of*

*an Order Establishing a Deadline for Filing Proofs of Claim and Approving the Form and Manner*

*of Notice Thereof* (the "Bar Date Motion") [Dkt. No. 118]]."[5] The Bar Date Motion defines

"Insurance Carriers" as:

> The Diocese has identified each of the following insurance carriers
> as a potential source of insurance coverage: Arrowpoint Capital,
> Certain Underwriters at Lloyd's, London, Certain London Market
> Companies, Markel International Insurance Company Limited, CX
> Reinsurance Company Limited, Tenecom Limited, English &
> American Insurance Company, London & Edinburgh Insurance
> Company Limited, Dominion Insurance Company Limited,
> Travelers Insurance Company Limited, Bermuda Fire and Marine
> Insurance Company Limited, Mutual Reinsurance Company
> Limited, Old Mutual International (Guernsey) Limited, Tokio
> Marine & Nichido Fire Insurance Company Limited, Mitsui
> Sumitomo Insurance Company (Europe), Limited, Allianz
> International Insurance Company, Heddington Insurance Company
> (U.K.) Limited, Assicurazioni Generali S.p.A., Winterthur Swiss
> Insurance Company, Harper Insurance Limited, Interstate Fire &
> Casualty Company, Colonial Penn Insurance Company, Catholic
> Mutual Group, National Catholic Risk Retention Group, Merchants
> Mutual Insurance Company, Westchester Fire Insurance Company,
> Aetna Casualty and Surety Company of America, U.S. Fidelity and
> Guaranty Company, Aviva, PLC, Continental Insurance Company,
> TIG Insurance Company, Great American Assurance Company,
> Fireman's Fund Insurance Company, Traveler's Indemnity
> Company, North River Insurance Company, Insurance Company of
> North America, Hartford Fire Insurance Company, U.S. Fire
> Insurance Company, Hanover Insurance Company, National Surety

---

[3] Bar Date Order at ¶ 11(c).

[4] *Id.* at ¶ 11(c)(iv).

[5] *Id.* at p.1, fn. 1.

4

Corporation, Continental Casualty Company, American and Foreign Insurance Company, Excelsior Insurance Company, Royal Globe Insurance Company, Utica Mutual Insurance Company, Providence Washington Insurance Company, and Safeguard Insurance Company (collectively, the "Insurance Carriers").[6]

12.     The Bar Date Order further provides that "[n]otwithstanding the designation of Authorized parties above, no person or entity may obtain copies of any Sexual Abuse Proof of Claim prior to the execution of a confidentiality agreement substantially in the form attached hereto as **Schedule 2** . . .."[7] It also provides that "Authorized Parties in possession of any Sexual Abuse Proof(s) of Claim shall keep such Sexual Abuse Proof(s) of Claim confidential and shall not use or disclose any information provided in any Sexual Abuse Proof(s) of Claim except in accordance with the terms of this Order, the Confidentiality Agreement or pursuant to an order of this Court" unless the Survivor elected to make their claim public by designating as such on their claim form.[8]

13.     The Confidentiality Agreement (as defined in the Bar Date Order) indicates the following:

> Recipient acknowledges that the Sexual Abuse Proofs of Claim contain sensitive, non-public information, which is to remain confidential pursuant to the Bar Date Order and the terms of this Agreement.[9]
>
> Recipient agrees that the Sexual Abuse Proofs of Claim and any Confidential Information (as such term is defined below) contained therein shall be kept confidential pursuant to and in accordance with the terms of the Bar Date Order and this Agreement.[10]

---

[6] Bar Date Motion at p. 3, fn. 1.
[7] Bar Date Order at ¶ 11(d).
[8] *Id.* at ¶ 11(e).
[9] Bar Date Order at Schedule 2, p. 1.
[10] *Id.* at Schedule 2, ¶ 1.

Recipient agrees to not to use or distribute any Sexual Abuse Proof of Claim or Confidential Information in violation of this Agreement.[11]

Recipient shall not disclose any Confidential Information to any other person or entity except that Recipient may disclose Confidential Information (i) to any person or entity that is an Authorized Party who may receive such information pursuant to the Bar Date Order and has executed a copy of this Agreement, (ii) to the Bankruptcy Court or any other tribunal of competent jurisdiction so long as such disclosure is made pursuant to a Permitted Use and under seal, or (iii) pursuant to an order of the Bankruptcy Court after a hearing and upon notice to the affected claimant(s), the Committee and the Debtor.[12]

Recipient consents to the exclusive jurisdiction of the Bankruptcy Court to adjudicate any disputes with respect to any terms, condition or alleged violations of this Agreement or the Bar Date Order.[13]

Recipient shall promptly report any disclosure of Confidential Information in violation or breach of this Agreement to the Debtor and the Committee and shall cooperate with efforts to recover and secure any such Confidential Information and/or to mitigate the effects of any such disclosure.[14]

14.     On September 28, 2023, counsel for Interstate filed an unverified letter (the "Interstate Letter") [Dkt. No. 1439] indicating that its affiliate AZRA—who is not included as an Authorized Party in the Bar Date Order—disclosed information related to more than 100 Survivor claims to another non-Authorized Party, third-party consultant ISO. The Interstate Letter indicates that "AZRA contracts with [ISO] for access to ISO's 'ClaimSearch' product to assist AZRA in processing claims and detecting claims fraud."[15] ISO's ClaimSearch product allows participating organizations access to claim data entered into the ClaimSearch product by other participating

---

[11] *Id.* at Schedule 2, ¶ 3.
[12] *Id.* at Schedule 2, ¶ 5.
[13] *Id.* at Schedule 2, ¶ 6.
[14] *Id.* at Schedule 2, ¶ 7.
[15] Interstate Letter at p. 1.

organizations.[16] Organizations participating in the ClaimSearch product can access such information including "the claimant's name, the insured on the policy at issue, and general and categorical descriptions of the claimants alleged injury and claimed loss."[17]

15. While Interstate assures that "AZRA has confirmed there has been no further disclosure (i.e. no 'matching reports' were sent to [ClaimSearch] participating organizations),"[18] sensitive claim information for at least 101 Survivors was distributed to AZRA and ISO in violation of the Bar Date Order, and potentially other entities participating in ISO's ClaimSearch product.[19]

## JURISDICTION

16. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

17. The statutory predicate for the relief sought herein is Fed. R. Bankr. P. 2004.

18. No prior request for the relief sought in this Motion has been made to this or any other court.

## RELIEF REQUESTED

19. The Committee respectfully requests entry of an order pursuant to Fed. R. Bankr. 2004 authorizing the Committee to issue to subpoenas compelling Interstate, AZRA, and ISO to (1) produce all documents responsive the Document Requests (defined herein) no later than October 12, 2023; (2) immediately identify the Potential Deponents; (3) produce any Potential

---

[16] *Id.* at p. 1-2.
[17] *Id.* at p. 2.
[18] *Id.* at p. 2.
[19] The Committee notes that the Interstate Letter is not made under oath, and that Interstate's assertions warrant careful scrutiny given the timing of its admission and the form in which it was made.

Deponents the Committee identifies for depositions no later than November 3, 2023; and (4)

directing AZRA and ISO to immediately secure, segregate, and preserve Survivor proofs of claim,

and all related information or communications on a separate, off-network server or system for

purposes of allowing the Committee to investigate the scope and impact of Interstate's admitted,

improper disclosures.

**ARGUMENT**

**I.      2004 Discovery of Interstate, AZRA, and ISO is Necessary to Ensure Confidential
        Survivor Information is Protected Going Forward**

20.      The Bankruptcy Code charges the Committee with "investigat[ing] the acts,

conducts, assets, liabilities, and financial condition of the debtor . . . [and] any other matter relevant

to the case or the formulation of a plan." 11 U.S.C. § 1103(c)(2). The Bankruptcy Code authorizes

the Committee to "participate in the formulation of a plan" and "advise those represented by such

committee of such's committee's determinations as to any plan formulated . . .." 11 U.S.C. §

1103(c)(3).

21.      Fed. R. Bankr. P. 2004(a) provides that "[o]n motion of any party in interest, the

court may order the examination of any entity." Fed. R. Bankr. P. 2004(b) provides that "[t]he

examination of an entity under [Fed. R. Bankr. 2004]" may relate to "any matter which may affect

the administration of the debtor's estate . . .." Fed. R. Bankr. P. 2004(c) further provides the

"attendance of an entity for examination and for the production of documents. . . may be compelled

in the manner provided in Rule 9016 . . .." Fed. R. Bankr. P. 9016 indicates that Fed. R. Civ. P. 45

is applicable in cases under the Bankruptcy Code.

22.      The Motion requests relief that falls squarely within the ambit of Fed. R. Bankr. P.

2004 as it directly relates to a critical matter impacting the administration of the Debtor's estate.

8

23.     The Debtor filed for bankruptcy to address its liability to Survivors. Survivor support is necessary for the Debtor to reorganize successfully, and to achieve, as the Debtor and the Committee desire, a global settlement including monetary contributions from the insurers, including Interstate. Settlements with insurers like Interstate invariably contain broad, unqualified releases of all liability relating to insurance policies issued to the Debtor, the Debtor's bankruptcy, and any claim by a Survivor that may impact a settling insurer in any way.

24.     Survivor trust in the confidentiality procedures established in this case is critical to achieving a global resolution in this case. Similarly, a clear and fulsome understanding of Interstate's acts and its attendant, potential liabilities will be critical to (i) any future settlement with Interstate, (ii) creditor balloting on any global plan in this case, and (iii) the confirmation of any global plan in this case.

25.     Survivors have a right to develop a firsthand understanding of the scope and impact of Interstate's violation of the Court-ordered confidentiality procedures. Survivors are entitled to know the details regarding what happened, how it happened, what remedial measures have been undertaken, and when and how such measures were put in place.

26.     The Committee should be authorized to investigate, pursuant to Fed. R. Bankr. P. 2004, Interstate's breach of the Bar Date Order. In carrying out this investigation, the Committee respectfully requests Court authorization to issue subpoenas compelling Interstate, AZRA, and ISO to produce, no later than October 12, 2023, the following documents (the "Document Requests"):

    a. Any documentation, including communications, relating to, or offering insight into, when, why, and/or how Survivor proofs of claim, or information contained therein,

were transferred by Interstate to AZRA, AZRA to ISO, and ISO to any other entities.

b.  Any documentation, including communications, indicating which Survivor proofs of claim, or information contained therein, were transferred by Interstate to AZRA, AZRA to ISO, and ISO to any other entities.

c.  Any documentation, including communications, indicating the purpose for which Survivor proofs of claim, or information contained therein, were transferred by Interstate to AZRA, AZRA to ISO, and ISO to any other entities.

d.  Any documentation, including communications, containing discussions or information regarding the timing of any unauthorized disclosure or transmission of Survivor claim information and/or the implementation of remedial measures relating to the same.

e.  To the extent not covered by the attorney-client privilege (in which case otherwise-responsive materials should be logged in detail), any documentation, including communications, relating to the timing and manner of Interstate's disclosure to the Court of any issue or incident identified in its Letter.

27.  The Committee further requests authorization pursuant to Fed. R. Bankr. P. 2004 to issue subpoenas compelling Interstate, AZRA, and ISO to immediately identify the Potential Deponents and produce any Potential Deponents the Committee identifies for depositions no later than November 3, 2023.

**II.  AZRA AND ISO'S CONTINUED POSSESSION OF CONFIDENTIAL INFORMATION GENERATED FROM SURVIVOR PROOFS OF CLAIM IN VIOLATION OF THE BAR DATE ORDER**

28.     AZRA and ISO remain in possession of confidential Survivor information in violation of the Bar Date Order. The Committee respectfully submits that the most efficient, immediate means to address this reality, and to protect Survivor information, would be the issuance of a Court order directing AZRA and ISO to immediately secure, segregate, and preserve Survivor proofs of claim, and all related information or communications, on separate, off-network servers or systems until such time as the Committee can fully investigate the scope and impact of all improper transmissions and/or disclosures of Survivor information..

29.     The Committee reserves all rights to seek further relief from the Court.

## **CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the Motion and entering such other and further relief as the Court deems appropriate.

Date: September 29, 2023

*/s/ Robert T. Kugler*
Robert T. Kugler (MN # 194116)
Edwin H. Caldie (MN # 388930)
**Stinson LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Main: 612-335-1500
Facsimile: 612-335-1657
Email:     robert.kugler@stinson.com
           ed.caldie@stinson.com

*Counsel for the Official Committee of Unsecured Creditors*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 20-30663 |
| The Roman Catholic Diocese of Syracuse, New York, | Chapter 11 |
| Debtor. | Judge Wendy A. Kinsella |

**ORDER GRANTING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR ENTRY OF AN ORDER (I) PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING THE COMMITTEE TO ISSUE SUBPOENAS REGARDING THE DISCLOSURE OF CONFIDENTIAL SURVIVOR INFORMATION; AND (II) DIRECTING AZRA AND ISO TO IMMEDIATELY SECURE, SEGREGATE, AND PRESERVE ALL INFORMATION RELATING TO SURVIVORS CLAIMS OR THE TRANSMISSION AND RECEIPT OF RELATED DATA**

Based on *The Official Committee of Unsecured Creditors' Motion for Entry of an Order (i) Pursuant to Bankruptcy Rule 2004 Authorizing the Committee to Issue Subpoenas Regarding the Disclosure of Confidential Survivor Information; and (ii) Directing AZRA and ISO to Immediately Secure, Segregate, and Preserve all Information Relating to Survivor Claims or the*

1

*Transmission and Receipt of Related Data* (the "Motion"),[1] and the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and venue of this Chapter 11 Case and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and after due deliberation and sufficient cause appearing therefor;

      **IT IS HEREBY ORDERED:**

      1.     The Committee is authorized to issue subpoenas to Interstate, AZRA, and ISO compelling them to produce all documentation, including communications, responsive to the Document Requests no later than October 12, 2023.

      2.     The Committee is authorized to issue subpoenas to Interstate, AZRA, and ISO compelling them to immediately identify the Potential Deponents.

      3.     The Committee is authorized to issues subpoenas compelling Interstate, AZRA, and ISO to produce any Potential Deponents the Committee identifies for depositions no later than November 3, 2023.

      4.     AZRA and ISO shall immediately secure, segregate, and preserve Survivor proofs of claim and all related information or communications on a separate, off-network server or system

---

[1] Terms undefined herein have the meanings given to them in the Motion.

2

for purposes of allowing the Committee to investigate the scope and impact of Interstate's admitted, improper disclosures.

5.      This Order is without prejudice to the Committee's right to request further examination of Interstate, AZRA, or ISO, under Fed. R. Bankr. P. 2004.

6.      This Court retains jurisdiction to resolve all matters arising under or related to this Order, and to interpret, implement, and enforce the provisions of this Order.

###