UNITED STATES BANKRUPTY COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

IN RE:

THE ROMAN CATHOLIC DIOCESE OF
SYRACUSE, NEW YORK,                                    Case No. 20-30663
                                                       Chapter 11

                            Debtor.

<hr>

## UNITED STATES TRUSTEE'S OMNIBUS LIMITED OBJECTION REGARDING INTERIM APPLICATIONS FOR <u>COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>

TO:  THE HONORABLE WENDY A. KINSELLA, UNITED STATES CHIEF
BANKRUPTCY JUDGE:

   William K. Harrington, the United States Trustee for Region 2 (the "United States

Trustee"), through counsel, respectfully files this omnibus limited objection (the "Objection") to

the interim fee applications (the "Applications") of the retained professionals (collectively, the

"Retained Professionals") of the Diocese of Syracuse, N.Y. (the "Debtor") seeking interim

compensation and reimbursement of out-of-pocket expenses for the time periods set forth below

and defined as to each of the Retained Professionals, as follow:

| ECF Docket No. | Applicant | Fees Requested | Expenses Requested | Total | Application Period |
|---|---|---|---|---|---|
| 1530 | Bond, Schoeneck & King, PLLC, *Counsel for the Diocese* | $289,443.85 | $5,384.43 | $294,828.28 | 03/1/23-07/31/23 |
| 1529 | Blank Rome, LLP, *Special Counsel for the Diocese* | $59,351.16 | $4,745.91 | $64,097.07 | 03/1/23-07/31/23 |
| 1524 | MacKenzie Hughes, LLP *Special Counsel for Diocese* | $84,556.00 | $0.00 | $84,556.00 | 03/01/23-07/31/23 |
| 1522 | Stinson LLP, *Counsel to Official Committee of Unsecured Creditors* | $459,013.00 | $907.36 | $459,920.36 | 03/01/23-07/31/23 |
| 1523 | Burns Bair LLP, *Counsel to Official Committee of Unsecured Creditors* | $179,728.10 | $9,219.57 | $188,947.67 | 03/01/23-07/31/23 |
| 1527 | Saunders Kahler, L.P.P, *Local Counsel to the Official Committee of Unsecured Creditors* | $1,112.50 | $0.00 | $1,111.50 | 03/1/23-07/31/23 |
| 1526 | The Claro Group | $34,381.50 | $0.00 | $34,381.50 | 03/01/23-07/31/23 |

| ECF Docket No. | Applicant | Fees Requested | Expenses Requested | Total | Application Period |
|---|---|---|---|---|---|
| | *Valuation Expert to the Official Committee of Unsecured Creditors* | | | | |
| 1525 | Berkeley Research Group, LLC *Financial Advisor to the Official Committee of Unsecured Creditors* | $56,481.72 | $0.00 | $56,481.72 | 03/01/23-07/31/23 |
| 1528 | The Official Committee of Unsecured Creditors, *Attendance at Mediation* | | $12,900.79 | $12,900.79 | 03/01/23-07/31/23 |

In support of his Objection, the United States Trustee respectfully states as follows:

## I.    JURISDICTION, VENUE, AND STATUTORY PREDICATE

1.    The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. § 1408.

2.    The statutory predicates are Sections 330 and 331 of title 11, of the United States Code (the "Bankruptcy Code").  These matters were initiated pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses* filed under 11 U.S.C. § 330 (the "Guidelines"). 28 C.F.R. Part 58, Appendix A.

## II.    FACTUAL BACKGROUND

3.    On June 19, 2020, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the Northern District of New York (the "Court").  [ECF Doc. No. 1].

4.    On July 9, 2020, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") in this case [ECF Doc. No. 38].

5.      The Debtor is currently operating its business and managing its affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6.      By Order entered September 18, 2020, the Court approved procedures for monthly compensation and reimbursement of out-of-pocket expenses (the "Monthly Compensation Order").  [ECF Doc. No. 117].  Under the Monthly Compensation Order, the Retained Professionals may be paid 80% of fees incurred and 100% of expenses on a monthly basis.  Id.

## III.   LEGAL STANDARDS

### A.   Reasonableness

Bankruptcy Code Section 330(a)(1) provides that:

> After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, . . . professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

To determine reasonableness, Section 330(a)(3) instructs that the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

    a.   the time spent on such services;

    b.   the rates charged for such services;

    c.   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

     d.   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

     e.   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

     f.   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

To determine "reasonable compensation," bankruptcy courts are guided by, among other things, the Guidelines. See In re Value City Holdings, Inc., 436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010) ("In addition to conforming to the requirements of the Bankruptcy Code, requests for professional compensation must also conform with the Bankruptcy Rules, UST Fee Guidelines.") (footnotes omitted); Brous, 370 B.R. at 569, n.8. (adopting the Guidelines).

Section 330 requires the applicant to establish both reasonableness and benefit to the estate from the professional's services. In re Lederman Enter., Inc., 997 F.2d 1321, 1323 (10th Cir. 1993). To be compensable, the professional's services must have been necessary and beneficial to the estate or its creditors. In re Engel, 124 F.3d 567, 573 (3d Cir. 1997).

Each applicant bears the burden of proving the reasonableness of its fees and expenses sought. Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24 (2d Cir. B.A.P. 1997); Value City, 436 B.R. at 305; In re CCT Commc'ns, Inc., No. 07–10210 (SMB), 2010 WL 3386947, *4 (Bankr. S.D.N.Y. Aug. 24, 2010); In re Northwest Airlines Corp., 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). To satisfy its burden, an applicant must justify its charges with detailed, specific, itemized documentation. In re Baker, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007); In re Bennett Funding Group, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997).

[4]

If an applicant fails to sustain its burden on reasonableness, a court may properly deny the application for compensation. In re Beverly Mfg. Corp., 841 F.2d 365, 371 (11th Cir. 1988). Similarly, a court may reduce a professional's fees or expenses when they are disproportionate to the benefit to the estate, even if it already has approved the professional's retention under Sections 327 and 328 of the Bankruptcy Code. In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 262–63 (3d Cir. 1995) (affirming lower court's denial of improperly documented and inadequately detailed expenses).

The Court has an independent burden to review fee applications "lest overreaching . . . professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors." Keene Corp., 205 B.R. at 695 (quoting In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994)); CCT, 2010 WL 3386947, at *4; Value City, 436 B.R. at 305. Accordingly, courts serve a vitally important gate-keeping role in enforcing the Code's requirements that only reasonable fees be approved and paid as well as maintaining public confidence in the bankruptcy system itself. In re Temple Retirement Community, Inc., 97 B.R. 333, 337 (Bankr. W.D. Tex. 1989). "[T]he judiciary should retain control of fees, given the sensitivities they generate and the need to promote public confidence in the system." In re Child World, Inc., 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995).

**B.    Vague Time Entries**

In addition, time entries may not be vague. Each Retained Professional has the burden of proving the reasonableness of its fee request; accordingly, each applicant must provide specific and detailed time records. To that end, the Guidelines require:

> Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature

[5]

of the communication.  Time entries for court hearings and
conferences should identify the subject of the hearing or
conference.

See Guidelines, (b)(4)(v).

To enable the Court to determine whether a professional's time spent on a task is
reasonable, time entries must be specific, and the records must clearly identify each discrete task
billed.  Baker, 374 B.R. at 495 ("The records must be detailed enough to enable a Court to
determine whether the attorneys are claiming compensation for hours that are 'redundant,
excessive, or otherwise unnecessary.'"); See also Bennett Funding, 213 B.R. at 244 ("In cases
where the time entry is too vague or insufficient to allow for a fair evaluation of the work done
and the reasonableness and necessity for such work, the court should disallow compensation for
such services.").  Such vague entries, "make a fair evaluation of the work done and the
reasonableness and necessity for the work extremely difficult, if not impossible."  In re Hudson,
364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007).

The time entries submitted by professionals should allow the Court and any reviewer to
determine, "the legal issues involved, the difficulties of the issues, and the resolution or results
obtained," with ease.  Id.  For example, references to telephone calls that do not make clear who
the call was with or the subject matter discussed, preparation of memoranda of law that do not
indicate the legal issues involved, email communications without a description of the substance
of the communications and the recipients of such communications, and the review of documents
without providing a description of the document reviewed are examples of vague time entries
that make a fair evaluation of the work done and its reasonableness impossible.  See Id.; CCT,
2010 WL3386947, *7 (disallowing time entries referring to telephone calls and emails without
identifying the subject matter of the call or email, referring to preparation of draft letters without

[6]

identifying the subject matter, and referring to vague description such as, "work on fee application" or "attention to Vlahos's request"); In re Fibermark, Inc., 349 B.R. 385, 396–97 (Bankr. D. Vt. 2006); In re Hirsch, No. 1–02–17966–DEM, 2008 WL 5234057, at *7 (Bankr. E.D.N.Y. Dec. 11, 2009) ("Entries that contain such vague characterization of the services performed as 'meeting with,' 'conversations with,' 'review materials or docket,' and 'draft correspondence to' fail to adequately describe the services provided and are routinely disallowed.").

### C.    Multiple Professionals Billing for the Same Task

A fee applicant should exercise "billing judgment" and "make a good-faith effort to exclude from a fee request, hours that are excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). A determination that the time expended is reasonable and requires the attendance by multiple professionals, requires the applicant to justify its necessity. See, Fibermark, 349 B.R. at 396. Moreover, the Guidelines state that, "if more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."

The Bankruptcy Code does not allow compensation for services that duplicate those of another professional. See 11 U.S.C. § 330(a)(4)(i). Indeed, it is an accepted principle that generally no more than one attorney may bill for time spent in an intra-office conference or meeting absent an adequate explanation. See Bennett Funding, 213 B.R. at 245.

There are certainly many instances when discrete matters require multiple professionals. However, the practice of multiple professionals routinely attending and billing for the same court hearings, meetings, office conferences, and teleconferences without justification can significantly increase costs and should be avoided.

### D.    Overhead and Other Administrative Activities

When determining whether requested fees are reasonable, courts consider, among other things, the professional's expertise or skill.  See, Fibermark, 349 B.R. at 396–97 ("The Court specifically considers whether the task at hand could have been performed competently by a less experienced professional at a lower cost to the estate.  Whether it is reasonable for a certain professional to complete a task is to be determined by the level and skill reasonably required for the task.").

Many courts have taken the position that clerical tasks are appropriate for office staff, rather than attorneys.  The costs associated with office staff, like other office overheads, are not separately compensable because they are a component of the attorney's hourly rate.  Id. (concluding that non-compensable administrative activities include tasks such as "mailing or delivering papers; photocopying; word processing, including but not limited to creating templates, adding pages to various stipulations, formatting, creating spreadsheets, scanning and saving files into the firm's computer system, creating and revising charts, inserting case numbers into orders and printing documents; organizing files; maintaining an internal calendar; checking for docket updates; updating a master service list; creating, organizing, and indexing binders; pulling precedent pleadings requested by an attorney; and making travel arrangements"); Indeed, many courts have taken the position that tasks which are clerical in nature  and that are appropriate for office staff – which is considered part of a professional's overhead – may not be billed to the estate. Id.; see also, In re Tan, Lie Hung & Mountain States Invs., LLC, 413 B.R. 851, 862 (Bankr. D. Or. 2009) (holding that reductions were warranted in compensation sought by Chapter 11 trustee's attorneys based upon their improper billing, at paralegal rates, for clerical tasks such as compiling and processing data for the electronic filing of various motions and other

[8]

documents); <u>Hudson</u>, 364 B.R. at 881 (holding that photocopying, organizing documents, and assembling exhibits constituted clerical tasks included in the firm's overhead); <u>In re Dimas, LLC</u>, 357 B.R. 563, 577 (Bankr. N.D. Cal. 2006) (disallowing services performed by professionals which were clerical in nature, such as indexing, organizing and copying documents, conducting PACER searches to locate an order or other pleading, uploading pleadings to CM-ECF, and filing pleadings); <u>In re Market Resources Dev.</u>, 320 B.R. 841, 846 (Bankr. E.D. Va. 2004) (concluding that tasks such as sending documents, delivering documents, printing, and copying were non-compensable overhead); <u>In re Joseph Charles & Associates, Inc.</u>, 295 B.R. 399, 401 (Bankr. S.D. Fla. 2003) (holding that a paraprofessional's serving and filing of an objection fell within the purview of clerical duties which were non-compensable); <u>In re Castorena</u>, 270 B.R. 504, 516 (Bankr. D. Idaho 2001) ("Lawyers, or paralegals for that matter, may not charge professional rates for clerical functions").

### E.    Preparation of Fee Applications

The United States Trustee acknowledges the allowance of a reasonable amount of time for fee application preparation under the Bankruptcy Code, however, the fees related to such task should be limited to the actual time spent in preparation of the fee application.  It is presumed that the professionals bill their time properly in the first instances.  Therefore, fees for the professional's subsequent review of their own time entries, correction of bills, responses to inquiries or objections raised regarding the fee applications, etc. should not be charged to the estate.  As the court in <u>In re Computer Learning Centers, Inc.</u>, held:

> [T]his does not mean that every aspect of preparing a fee application is compensable. In re CF & I Fabricators of Utah, Inc., 131 B.R. 474, 483–88 (Bankr. D. Utah 1991) carefully reviews the billing process and analyzes each aspect for purposes of compensation under 11 U.S.C. §330.  It holds that those portions of the billing process common to billing both bankruptcy clients and non-

> bankruptcy clients are not compensable under §330 because they are part of the professional's overhead.  They are not separately charged to non-bankruptcy clients and no additional effort is required to complete them for a bankruptcy client.  For example, maintaining time records does not require additional effort. Lawyers and accountants maintain the same time records in a non-bankruptcy matter as in bankruptcy matters.  Nor do lawyers or accountants charge for preparing their bills.  Bills must be prepared in non-bankruptcy matters as well as bankruptcy matters.  There may be some additional effort in putting the time records into the format required by the court.  For example, the court requires time records to be maintained chronologically by task.   While this may sometimes differ from the format of a nonbankruptcy bill, the additional effort is not generally significant if the records are initially properly set-up.   Time records are almost universally maintained on computers with software that shows multiple formats, one of which will usually satisfy the bankruptcy requirements.  "A computer billing package used by a professional that does not retrieve information in a format compatible with bankruptcy requirements and requires revisions to rectify the inadequacies, is not a deficiency the estate should pay for. This is especially true for professionals who regularly practice in this court and regularly prepare fee applications. Only those aspects of preparing a bankruptcy fee application that require additional-not merely different-efforts are compensable under §330(a)(6).

285 B.R. 191, 219–20 (Bankr. E.D. Va. 2002) (citations omitted); see also In re Mesa Air Group Inc., 449 B.R. 441, 445 (Bankr. S.D.N.Y. 2011) (quoting CCT, 2010 WL 3386947, at *9) ("'[T]he review and editing of time records – as opposed to fee applications – is not compensable.'").  Accordingly, billing a debtor's estate for time spent reviewing the firm's time entries to ensure compliance with the Guidelines imposed by case law, the Court, and the United States Trustee as well as handling administrative matters in connection with billing for the engagement should not be compensable.

### F.    "Lumped Time Entries" or Block Billing

The Guidelines state that billing records must clearly identify each discrete task billed, indicate the date the task was performed, the precise amount of time spent (not to be billed in

increments greater than one-tenth of an hour), who performed the task, the level of experience, and that person's hourly rate. See Guidelines at (b)(4)(v). Moreover, the Guidelines provide that "[s]ervices should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." Id. The only limited exception is when the professional performs multiple discrete tasks but the total time billed is less than 30 minutes. Id.

Recording multiple tasks as one billing entry, typically referred to as "block billing" or "lumping," is routinely disallowed as it makes it exceedingly difficult to determine the reasonableness of the time spent on each of the individual tasks performed. See Baker, 374 B.R. at 494 (citations omitted) ("A professional is required to bill each task separately. That way, a Court can scrutinize the reasonableness of the time expended and counsel is not tempted to inflate the actual time spent and group multiple tasks together hoping to camouflage the true length of an individual task."). As a result of "lumping" time, the "timekeeper fails to sustain [his] burden of providing that [his] fees are reasonable." Brous, 370 B.R. at 576. Consequently, courts summarily will disallow time for discrete legal services merged together in a fee application. See, e.g., Baker, 374 B.R. at 496 (deducting 20% from the requested fees for improper block billing); see also, In re M. Fabrikant & Sons, Inc., Case No. 06-12737 (SMB) (Bankr. S.D.N.Y. Jan. 13, 2009) (Memorandum Decision Regarding Applications for Professional Fees and Reimbursement of Expenses) (Docket No. 926) (allowing only 30 minutes for each "lumped" entry, irrespective of the aggregate time billed for that entry); CCT, 2010 WL 3386947at *7 (allowing only 30 minutes of time for lumped entries).

The failure to specifically identify and describe the task prohibits the United States Trustee and Court from determining whether those entries are reasonable in relation to the time spent.

[11]

### G.    Nonworking Travel

The court may allow professional travel time at one-half of the professional's normal hourly rate, unless otherwise justified.  See Fibermark, 349 B.R. at 397 (citing In re S.T.N. Enters., Inc., 70 B.R. 823, 837 (Bankr. D. Vt. 1987)).  This is because time spent traveling is generally unproductive and not compensable at the attorneys' regular hourly rate.  In re Hottinger,  2023 WL 3240021, *2 (Bankr. N.D. West Virginia May 3, 2023).  Courts have historically allowed one-half the reasonable travel time "unless legal work is actually performed during the trip."  In re Computer Learning Ctrs., Inc., 272 B.R. 897, 910 (E.D. Va. 2001).

### H.    Actual and Necessary Expenses

Under Section 330(a)(1)(B), only documented expenses that are actual and necessary are reimbursable.  11 U.S.C. § 330(a)(1)(B).  Professionals must "furnish enough specificity for the Court to establish whether a given expense was both actual and necessary."  In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (quoting In re S.T.N. Enters., Inc., 70 B.R. 823, 834 (Bankr. D. Vt. 1987)).  Expenses are "actual" if they are incurred and not based on a formula or pro rata calculation.  Bennett Funding, 213 B.R. at 398.  Expenses are "necessary" if they were "reasonably needed to accomplish proper representation of the client." In re American Preferred Prescription, Inc., 218 B.R. 680, 686–87 (Bankr. E.D.N.Y. 1998).

### I.    Interim Compensation

Interim compensation to professionals, as reflected in Section 331, finds its origins in the equity powers of the bankruptcy court.  In re Barron, 73 B.R. 812, 814 (Bankr. S.D. Cal. 1987). Therefore, the Bankruptcy Court has broad discretion in the course of examining and awarding interim fee applications.  Id.

[12]

In particular, "whether interim allowances are awarded, and in what amounts, [are] questions left by Congress to the sound discretion of the bankruptcy court." Id. Because all but one of the pending Applications are interim in nature, the timing of any payments is also within the parameters of the Court's discretion. Id. Furthermore, courts have discretion to defer ruling on any or all of the Applications, until the time for final applications is proper. In re ACT Mfg., Inc., 281 B.R. 468, 474 (Bankr. D. Mass. 2002).

Section 331 incorporates the requirements of 11 U.S.C. § 330, and the standards are the same for interim and final awards of compensation. See Bennett Funding, 213 B.R. at 244. At the interim fee stage, "there is [no] legal entitlement to payment prior to the final fee award." Child World, 185 B.R. at 17. Section 331 "is permissive, nothing in that provision requires a court to grant an application for interim compensation." Id. Thus, the statute "authorizes the award of interim compensation, but does not mandate it." In re First Hartford Corp., 23 B.R. 729, 732 (Bankr. S.D.N.Y. 1982); see also Barron, 73 B.R. at 814 (noting that Congressional intent underlying Section 331 "was only to give officers of the estate an opportunity to apply for reimbursement.") (emphasis in original).

## IV.    **OBJECTIONS AND COMMENTS**

The United States Trustee has reviewed the fee applications filed by the following Retained Professionals and has no objections to their applications:  Blank Rome, LLP [ECF Doc. No. 1529], Saunders Kahler, LPP [ECF Doc. No. 1527], The Claro Group [ECF Doc. No. 1526] and Berkeley Research Group, LLC [ECF Doc. No. 1525].  The United States Trustee does not object to the Committee's request for expenses in the amount of $12,900.79. [ECF Doc. No. 1528].  The United States Trustee has limited objections to the following fee applications:

[13]

**A.    Application of Bond, Schoeneck & King, PLLC ("BSK")**

BSK, Counsel for the Diocese, seeks an allowance of fees aggregating $289,443.85 and

reimbursement of expenses totaling $5,384.43 for its seventh interim compensation application

during the time period from March 1, 2023 through July 31, 2023 [ECF Doc. No. 1530] ("BSK's

Seventh Interim Application").

**1.    Multiple Professionals Billing for Same Task**

BSK billed 9.5 hours or $4,131.00 for two or more professionals for attending to the

same task (excluding mediation attendance and preparation) or attending the same hearing.

| 3/2/23 | Walter, Grayson | Participated in call with Attorneys Donato and Sullivan regarding Committee derivative standing demand | 0.40 | $165.60 |
|--------|-----------------|-------------------------------------------------------------------------------------------------------|------|---------|
| 3/2/23 | Sullivan, Charles | Participated in conference call with Diocese and Attorney Donato regarding mediation strategic issues | 1.50 | $715.50 |
| 3/2/23 | Sullivan, Charles | Participated in conference call with Diocese, and Attorneys Donato and Simcoe regarding mediation preparation issues | 1.00 | $477.00 |
| 3/3/23 | Walter, Grayson | Participated in call with Attorneys Donato and Sullivan regarding Committee standing demand | 0.30 | $124.20 |
| 3/6/23 | Sullivan, Charles | Participated in conference call with Attorneys Temes and Donato regarding mediation discovery updates | 0.60 | $286.20 |
| 3/6/23 | Sullivan, Charles | Participated in conference call with Attorneys Temes and Donato regarding mediation discovery updates | 0.60 | $286.20 |
| 3/6/23 | Donato, Stephen | Participated in conference call with Attorneys Temes and Sullivan regarding mediation discovery updates | 0.60 | $297.00 |
| 3/9/23 | Walter, Grayson | Appeared at hearing in support of KeyBank note extension motion | 0.20 | $82.80 |
| 3/9/23 | Walter, Grayson | Attended hearing on Lipsitz injunction motion | 0.70 | $289.80 |
| 3/9/23 | Eaton, Jeffrey | Attended hearing on motion to extend Lipsitz injunction | 0.70 | $226.80 |
| 3/24/23 | Krell, Justin | Consulted with Attorney Walter regarding drafting the Diocese's response to the Committee's impending motion for derivative standing and performing legal research in connection with same | 0.40 | $151.20 |
| 4/21/23 | Walter, Grayson | Consulted with Attorney Donato regarding mediation status and strategy | 0.30 | $124.20 |
| 4/27/23 | Sullivan, Charles | Participated in status conference and hearing on Rule 2004 motion before Bankruptcy Court | 0.30 | $143.10 |
| 4/28/23 | Hill, Camille | Telephone conferenced with Attorney Sullivan regarding Diocese settlement with Creditors' Committee on avoidance action issues | 0.40 | $183.60 |
| 6/16/23 | Sullivan, Charles | Participated in telephone conference with Attorney Donato regarding mediation issues | 0.30 | $143.10 |
| 7/13/23 | Eaton, Jeffrey | Attended hearing on fee applications | 0.90 | $291.60 |
| 7/14/23 | Sullivan, Charles | Participated in telephone conference with Attorney Donato regarding mediation issues | 0.30 | $143.10 |
| | | | **9.50** | **$4,131.00** |

It should be noted that the United States Trustee did not identify and does not object to each and every instance where multiple attorneys and professionals attended to the same task. Indeed, given the complicated nature of this case, the United States Trustee acknowledges many matters require multiple professionals. However, the United States Trustee believes a voluntary disallowance of a portion of BSK's fees will address his concerns regarding the billing of multiple professionals for work on the same task.

## 2. **Administrative Tasks/Overhead**

BSK billed the estate 2 hours, or $360.00 for time that appears to be administrative and/or clerical and is therefore in the nature of overhead. In addition, many of the entries were billed by other professionals for the same task, thus appear to be duplicative.

The following entries are examples of time entries that appear to be administrative and/or clerical (thus overhead):

| 4/10/23 | Doner, Kristin | Participated in telephone conference with Attorney Eaton regarding additional updates to Bond's February 2023 fee statement | 0.20 | $36.00 |
|---------|----------------|----------------------------------------------------------------------------------------------------------------------------|------|--------|
| 4/26/23 | Doner, Kristin | Participated in telephone conference with Attorney Eaton regarding updates to order approving Gellert Scali Busenkell & Brown's final fee application | 0.10 | $18.00 |
| 5/1/23 | Doner, Kristin | Participated in telephone conference with Attorney Eaton Bond's sixth interim fee application | 0.10 | $18.00 |
| 5/12/23 | Doner, Kristin | Participated in telephone conference with Attorney Eaton regarding updates to Bond's March 2023 fee statement | 0.10 | $18.00 |
| 5/12/23 | Doner, Kristin | Participated in telephone conference with Attorneys Sullivan and Eaton regarding Bond's sixth interim fee application | 0.10 | $18.00 |
| 5/15/23 | Doner, Kristin | Participated in telephone conference with Attorney Eaton regarding Bond's sixth interim fee application | 0.20 | $36.00 |
| 5/18/23 | Doner, Kristin | Consulted with Attorney Eaton regarding Bond's sixth interim fee application | 0.40 | $72.00 |
| 5/19/23 | Doner, Kristin | Drafted correspondence to Attorney Eaton regarding updates to joint notice of hearing and cover sheets for Blank Rome and Bond's sixth interim fee application | 0.20 | $36.00 |
| 5/19/23 | Doner, Kristin | Participated in telephone conferences with Attorney Eaton regarding Bond's sixth fee application | 0.20 | $36.00 |
| 5/22/23 | Doner, Kristin | Participated in telephone conference with Attorney Eaton regarding updates to Bond's sixth fee application | 0.10 | $18.00 |
| 6/2/23 | Doner, Kristin | Participated in telephone conference with Attorneys Donato and Eaton regarding Bond's March and April 2023 fee statements | 0.10 | $18.00 |

[15]

| 6/2/23 | Doner, Kristin | Participated in telephone conference with Attorneys Temes and Eaton regarding the Diocese's April 2023 operating report | 0.10 | $18.00 |
| 7/31/23 | Doner, Kristin | Participated in telephone conference with Attorney Eaton regarding proposed orders approving Bond's and Blank Rome's sixth interim fee applications | 0.10 | $18.00 |
| | | | **2** | **$360.00** |

### 3.  Vague Entries

There are several entries with vague or missing description of the activity performed by the timekeeper, for a total of $4,031.50.

| 3/3/23 | Walter, Grayson | Participated in call with co-counsel regarding plan strategy analysis | 1.20 | $496.80 |
| 4/24/23 | Walter, Grayson | Participated in call with co-counsel to discuss mediator recommendation | 0.50 | $207.00 |
| 4/25/23 | Stephen Donato | Consulted with litigation counsel regarding mediation issues | 0.50 | $247.50 |
| | | | **2.20** | **$951.30** |

Based on the foregoing, the United States Trustee recommends a voluntary downward adjustment to BSK's Seventh Interim Application in the amount of $5,000.

### B.    Application of MacKenzie Hughes, LLP ("MacKenzie Hughes")

MacKenzie Hughes, Special Counsel for the Debtor, seeks allowance of fees aggregating $84,556.00 ($0 claimed expenses) for its seventh interim application for compensation during the time period from March 1, 2023 through July 31, 2023 [ECF Doc. No. 1524 ] ("MacKenzie Hughes' Seventh Interim Application").

The United States Trustee has identified instances in which two or more professionals appear to perform the same task:

| 4/25/2023 | Dean J. Dipilato | Attorney conference with client to strategize next steps in re-organization litigation. | 2.00 | $460.00 |
| 4/25/2023 | Stephen T. Helmer | Prepare for and conference call with clients and Chapter 11 counsel re post-mediation issues. | 1.50 | $345.00 |
| 4/26/2023 | Lorraine R. Mertell | Telephone conference with Attorneys DiPilato and Helmer re negotiations issues. | 0.70 | $161.00 |
| 4/27/2023 | Lorraine R. Mertell | Participation in conference call with counsel re strategy matters. | 0.30 | $69.00 |

[16]

| 4/27/2023 | Dean J. Dipilato | Conference call with legal team and client regarding next steps and strategy regarding same. | 1.20 | $276.00 |
|---|---|---|---|---|
| 4/28/2023 | Dean J. Dipilato | Conference call with Attorney Mertell regarding stipulated judgments. | 0.20 | $46.00 |
| 3/2/2023 | Lorraine R. Mertell | Discussion with Attorneys Helmer and DiPilato re Committee letter and upcoming call with counsel. | 0.40 | $92.00 |
| 3/3/2023 | Lorraine R. Mertell | Telephone conference with Attorney DiPilato re memorandum. | 0.40 | $92.00 |
| 3/3/2023 | Stephen T. Helmer | Prepare for and participate in counsel conference call re strategy. | 1.50 | $345.00 |
| 3/7/2023 | Stephen T. Helmer | Prepare for and participate in DOS counsel and client strategy conference. | 6.00 | $1,380.00 |
| 3/23/2023 | Lorraine R. Mertell | Telephone conference with Attorneys Helmer and DiPilato re plan of action and next steps for mediation. | 0.40 | $92.00 |
| 3/23/2023 | Stephen T. Helmer | Lengthy telephone conference with Mr. Donato re post-mediation issues. | 0.70 | $161.00 |
| 3/23/2023 | Stephen T. Helmer | Telephone conference with Mr. Breen re post-mediation issues. | 0.30 | $69.00 |
| 3/23/2023 | Stephen T. Helmer | Conference call with CVA team re post-mediation issues. | 0.50 | $115.00 |
| 5/2/2023 | Dean J. Dipilato | Telephone conference with Attorney Mertell regarding motion practice in Rockville Center litigation relevant to the Diocese of Syracuse reorganization plan. | 0.10 | $23.00 |
| 5/2/2023 | Dean J. Dipilato | Telephone conference with Attorneys Helmer and Mertell regarding recent decisions in Rockville Center and their impact on continued resolution of Diocese of Syracuse reorganization and negotiation with carriers regarding same. | 0.20 | $46.00 |
| 5/2/2023 | Lorraine R. Mertell | Telephone conference with Attorney DiPilato re Rockville Centre litigation and relevance to Diocese negotiations. | 0.10 | $23.00 |
| 5/10/2023 | Dean J. Dipilato | Call with Attorneys Helmer and Mertell regarding Creditors committee document production and ability to preserve the same for future use. | 0.20 | $46.00 |
| 5/10/2023 | Lorraine R. Mertell | Telephone conference with Attorney DiPilato re State investigation issues and potential use of documents produced to Creditors Committee. | 0.30 | $69.00 |
| 5/10/2023 | Lorraine R. Mertell | Separate conference with Attorneys DiPilato and Helmer re potential use of documents produced to Creditors Committee. | 0.30 | $69.00 |
| 6/22/2023 | Stephen T. Helmer | Prepare for and participate in conference call with counsel and clients to prepare for following week's mediation sessions. | 1.10 | $253.00 |
| 6/30/2023 | Lorraine R. Mertell | Telephone conference with Attorney Helmer re non-monetary issues. | 0.20 | $46.00 |
| 7/25/2023 | Lorraine R. Mertell | Telephone conference with Attorney Helmer re new document re non-monetary considerations. | 0.30 | $69.00 |
| 7/25/2023 | Dean J. Dipilato | Telephone conference and multiple texts with Attorneys Helmer and Mertell regarding new non-monetary proposals sent by creditors committee. | 0.80 | $184.00 |
| 7/26/2023 | Stephen T. Helmer | Conference call with CVA Team re draft with comments on proposed Child Protection Protocols. | 0.30 | $69.00 |

| 7/27/2023 | Dean J. Dipilato | Telephone conferences with Attorney Mertell regarding edits to proposed non-monetary terms. | 0.50 | $115.00 |
|---|---|---|---|---|
| | | | **20.50** | **$4,715.00** |

Based on the foregoing, the United States Trustee believes a voluntary downward adjustment to MacKenzie Hughes' Seventh Interim Application in the amount of $4,000.00 is warranted and reasonable.

### C.    Application of Stinson, LLP ("Stinson")

Stinson, Counsel to the Official Committee of Unsecured Creditors, seeks an allowance of fees aggregating $459,013.00 and reimbursement of expenses totaling $907.36 for its seventh interim application for compensation during the time period from March 1, 2023 through July 31, 2023.  [ECF Doc. No. 1522] ("Stinson's Seventh Interim Application").

#### 1.   Excessive Time Entries

Stinson's Seventh Interim Application contains an unusually high percentage of fees attributable to professionals reviewing pleadings or work product of other professionals.  While such services are not necessarily objectionable, applications that contain extremely high amounts of such fees may raise concerns that timekeepers are working inefficiently or are billing for duplicative or unnecessary work.  An estimated $187,739 was charged for review or analysis of case documents, representing approximately 40.90% of all fees charged.

In the fee application, Stinson does not explain why these "reviews" were reasonable, necessary, or beneficial to the estate.  The United States Trustee believes a downward adjustment of such fees attributable to professionals reviewing pleadings or the work product of other professionals is warranted and reasonable.

#### 2.  Vague Entries

In order to demonstrate the reasonableness of a timekeeper's work, fee entries should

contain a specific description of the activity performed by the timekeeper.  Vague activity

descriptions such as "attention to" or "work on" are disfavored and may be objectionable

because they do not allow a reviewer to meaningfully evaluate the timekeeper's contribution.

There are multiple entries in the application that are vague or missing a description of the

activity performed by the timekeeper, for a total of $3,657.50:

| | | | | |
|---|---|---|---|---|
| 7/21/2023 | Kugler, Logan | Asses third party release issues related to plan | 0.2 | $78.00 |
| 7/26/2023 | Kugler, Logan | Assist with child protection and settlement issues | 0.4 | $156.00 |
| 4/6/2023 | Kugler, Logan | Assist with child protection initiatives | 0.2 | $68.00 |
| 4/19/2023 | Kugler, Logan | Assist with considerations related to insurance negotiations | 0.3 | $102.00 |
| 5/24/2023 | Kugler, Logan | Assist with developing Committee strategy related to insurers | 0.4 | $136.00 |
| 3/9/2023 | Kugler, Logan | Assist with development of case and mediation strategy | 0.5 | $170.00 |
| 3/1/2023 | Kugler, Logan | Assist with development of global case strategy issues and issues for consideration in advance of mediation | 0.5 | $170.00 |
| 4/6/2023 | Kugler, Logan | Assist with development of third party stay strategy | 0.3 | $102.00 |
| 3/2/2023 | Kugler, Logan | Assist with issues and inquiries relating to perpetrator files | 0.4 | $136.00 |
| 4/27/2023 | Kugler, Logan | Assist with issues prior to hearing on status conference and 2004 motion hearing | 0.2 | $68.00 |
| 7/25/2023 | Kugler, Logan | Assist with issues related to announcement of settlement | 0.3 | $117.00 |
| 3/31/2023 | Kugler, Logan | Assist with issues related to assessment of adult claims | 0.1 | $34.00 |
| 6/30/2023 | Kugler, Logan | Assist with issues related to child protection issues | 0.2 | $68.00 |
| 6/1/2023 | Kugler, Logan | Assist with issues related to monthly fee statements | 0.1 | $34.00 |
| 7/26/2023 | Kugler, Logan | Assist with issues related to press release and publication | 1 | $390.00 |
| 7/25/2023 | Kugler, Logan | Assist with issues related to protocols | 0.3 | $117.00 |
| 3/31/2023 | Kugler, Logan | Assist with issues related to subsequent document production | 0.1 | $34.00 |
| 7/24/2023 | Kugler, Logan | Assist with issues related to term sheet | 0.4 | $156.00 |
| 4/20/2023 | Ashfield, Phillip J | Assist with mediation information relating to assets | 0.8 | $372.00 |
| 3/18/2023 | Kugler, Logan | Assist with mediation preparations regarding negotiations | 0.2 | $68.00 |
| 4/18/2023 | Ashfield, Phillip J | Assist with mediation requests and information needed at mediation | 0.5 | $232.50 |
| 3/10/2023 | Kugler, Logan | Assist with mediation strategy development | 0.3 | $102.00 |
| 6/27/2023 | Kugler, Logan | Assist with mediation strategy regarding child protection | 0.4 | $136.00 |
| 4/7/2023 | Kugler, Logan | Attention to allocation issues | 0.2 | $68.00 |
| 4/10/2023 | Ashfield, Phillip J | Attention to asset investigation and restricted asset analysis | 1 | $465.00 |
| 7/27/2023 | Kugler, Logan | Attention to issues related to press release from Committee professionals | 0.2 | $78.00 |
| | | | 9.5 | $3,657.50 |

Based on the excessive time attributable to professionals reviewing pleadings or the work product of other professionals and vague time entries, the United States Trustee believes a voluntary downward adjustment to Stinson's Seventh Interim Application in the amount of $10,000.00 is warranted and reasonable.

**D.     Application of Burns Bair, LLP ("Burns Bair")**

Burns Bair, Special Insurance Counsel to Official Committee of Unsecured Creditors, seeks an allowance of fees aggregating $179,728.10 for its fifth application for interim compensation, together with reimbursement of expenses in the sum of $9,219.57, during the time period from March 1, 2023 through July 31, 2023 [ECF Doc. No. 1523] ("Burns Bair's Fifth Interim Application").

In Burns Bair's Fifth Interim Application, the United States Trustee has identified several areas of concern:

**1.     Multiple Professionals Billing for Same Task**

Burns Bair billed 8.6 hours or $4,985.00 for two or more professionals from the same firm for attending to the same task.  The fee application must establish that having numerous intra-office conferences was necessary and beneficial to the estate.  See, e.g., In re Fibermark, Inc., 349 B.R. 385, 396 (Bankr. D. Vt. 2006).  Burns Bair failed to establish the necessity of or benefit to the estate of having multiple attorneys attending intra-office conferences.  The United States Trustee submits that the following entries should be disallowed:

| 3/6/2023 | Jesse Bair | conference with T. Burns re same (.1); | 0.10 | $62.50 |
|---|---|---|---|---|
| 3/9/2023 | Jesse Bair | Participate in conference with T. Burns re insurance strategy for upcoming mediation session (.1); | 0.10 | $62.50 |
| 3/9/2023 | Jesse Bair | Participate in conference with T. Burns re potential direction action claims against the Diocese's insurers (.1); | 0.10 | $62.50 |
| 3/10/2023 | Leakhena Au | Participate in conference with T. Burns re issues in connection with potential direct claims against the Diocese's insurers (.2); | 0.20 | $84.00 |

[20]

| 3/13/2023 | Nathan Kuenzi | Participate in team meeting re case strategy and ongoing projects (.2); | 0.20 | $84.00 |
|---|---|---|---|---|
| 3/13/2023 | Leakhena Au | Participate in team meeting re case strategy and ongoing projects (.2); | 0.20 | $84.00 |
| 3/13/2023 | Brian Cawley | Participate in team meeting regarding case status and assignments (.2); | 0.20 | $84.00 |
| 3/14/2023 | Jesse Bair | Participate in conference with T. Burns re case insurance strategy (.1); | 0.10 | $62.50 |
| 3/14/2023 | Leakhena Au | Participate in conference with Stinson to discuss potential direct claims against the Diocese's insurers (.2); follow up on action items from meeting (.1); | 0.30 | $126.00 |
| 3/15/2023 | Jesse Bair | participate in additional call with T. Burns and state court counsel re same (.1); | 0.10 | $62.50 |
| 3/23/2023 | Nathan Kuenzi | Participate in team meeting re case status and projects (.2); | 0.20 | $84.00 |
| 3/23/2023 | Leakhena Au | Participate in team meeting re case status and related projects (.2); | 0.20 | $84.00 |
| 4/4/2023 | Jesse Bair | Participate in conference with T. Burns re case insurance strategy (.2); | 0.20 | $125.00 |
| 4/7/2023 | Jesse Bair | Conference with T. Burns re insurance strategy issues (.1); | 0.10 | $62.50 |
| 4/10/2023 | Jesse Bair | Participate in call with Stinson and T. Burns re Plan and insurance strategy (.8); follow-up conference with T. Burns re same and next-steps .2); | 1.00 | $625.00 |
| 4/12/2023 | Jesse Bair | Participate in conference with T. Burns re consideration of insurance resolution strategy (.1); begin analyzing T. Burns PowerPoint presentation re same (.2); | 0.30 | $187.50 |
| 4/20/2023 | Jesse Bair | Participate in call with T. Burns re settlement status and developments (.1); | 0.10 | $62.50 |
| 4/27/2023 | Jesse Bair | Participate in conference with T. Burns re next-steps re case insurance strategy (.1); | 0.10 | $62.50 |
| 5/1/2023 | Nathan Kuenzi | Participate in BB team conference re case developments and projects (.1); | 0.10 | $42.00 |
| 5/1/2023 | Leakhena Au | Participate in BB team meeting re case developments and projects (.1); | 0.10 | $42.00 |
| 5/1/2023 | Brian Cawley | Participate in BB team meeting re case developments and projects (.1); | 0.10 | $42.00 |
| 5/8/2023 | Jesse Bair | Participate in conference with T. Burns re insurance adversary proceeding issues (.1); participate in supplemental conference with T. Burns re insurance mediation strategy (.3); participate in call with R. Kugler and T. Burns re insurance mediation and litigation strategy (.6); | 1.00 | $625.00 |

| 5/15/2023 | Jesse Bair | Participate in conferences with T. Burns re insurance case strategy (.3); | 0.30 | $187.50 |
|---|---|---|---|---|
| 5/16/2023 | Jesse Bair | Participate in conference with T. Burns and L. Au re Arrowood strategy (.1); | 0.10 | $62.50 |
| 5/16/2023 | Leakhena Au | Participate in conference with T. Burns and J. Bair re Arrowood strategy (.1); | 0.10 | $42.00 |
| 5/25/2023 | Jesse Bair | Prepare for call with Stinson team re case insurance strategy (.1); participate in call with Stinson team and T. Burns re same (.4); | 0.50 | $312.50 |
| 5/30/2023 | Jesse Bair | Participate in call with T. Burns and state court counsel re case insurance developments (.1); | 0.10 | $62.50 |
| 6/1/2023 | Jesse Bair | Prepare for insurance meeting with the Diocese (.1); correspondence with J. Murray and T. Burns re same (.1); | 0.20 | $125.00 |
| 6/10/2023 | Jesse Bair | Correspondence with L. Kugler re adjourned hearing on next round of Committee interim fee applications (.1); | 0.10 | $62.50 |
| 6/14/2023 | Jesse Bair | Participate in call with T. Burns re case developments and insurance strategy for upcoming mediation (.2); | 0.20 | $125.00 |
| 6/15/2023 | Jesse Bair | Participate in call with T. Burns re insurance mediation and case strategy (.1); | 0.10 | $62.50 |
| 6/20/2023 | Jesse Bair | Participate in conference with T. Burns re mediation strategy and Arrowood issues (.2); | 0.20 | $125.00 |
| 7/6/2023 | Jesse Bair | Participate in detailed conference with T. Burns re LMI strategy, insurance demand letters, and potential summary judgment motions against the insurers (.7); | 0.70 | $437.50 |
| 7/6/2023 | Jesse Bair | Participate in supplemental conference with T. Burns re outcome of call with state court counsel and LMI settlement strategy (.2); | 0.20 | $125.00 |
| 7/11/2023 | Jesse Bair | Participate in call with T. Burns re insurance case updates and next-steps (.1); | 0.10 | $62.50 |
| 7/24/2023 | Jesse Bair | Participate in conference with Stinson team and state court counsel re case insurance strategy (.6): | 0.60 | $375.00 |
| | | | **8.60** | **$4,985.50** |

## 2. Excessive Time Entries

Interim fee applications submitted pursuant to Code § 331 . . . are judged under the

same standards as final applications under Code § 330." Id. Moreover, the exercise of billing

judgment by attorneys is ethically mandated; it is an inherent and unavoidable component of

every fee application.  See Bennett Funding, 213 B.R. at 241.  A fee applicant must make a good

faith effort to exclude redundant or otherwise unnecessary hours from a fee request.  Id. at 241.

Burns Bair is employed as special insurance counsel to the Official Committee of

Unsecured Creditors in other committee related representations in diocesan bankruptcy cases,

including In re Diocese of Rochester (Bankr. W.D.N.Y. 19-20905) and  In re Diocese of

Rockville Centre (Bankr. S.D.N.Y. 20-12345).  The United States Trustee identified entries that

appear to be excessive when compared to time billed by Burns Bair in other diocesan matters on

the same day and by the same timekeeper.

The United States Trustee recognizes that certain matters may have been billed on a

prorated basis, but Burns Bair's Fifth Interim Application fails to sufficiently address what

otherwise appears to be entries billed in duplicate and/or triplicate when compared to Burns

Bair's fee statements filed in In re Diocese of Rochester (Bankr. W.D.N.Y. 19-20905) and In re

Diocese of Rockville Centre (Bankr. S.D.N.Y. 20-12345).  Detailed disclosure and transparency

is paramount given the high administrative costs of professionals in this case, where

professionals have been paid close to $9 million through the end of September, 2023.

Accordingly, the United States Trustee brings the following entries to the Court's

attention:

| | | | | | |
|---|---|---|---|---|---|
| Syracuse | 3/13/2023 | Timothy Burns | meet with team re ongoing projects and case strategy (.2); | 0.20 | $140.00 |
| Syracuse | 3/13/2023 | Nathan Kuenzi | Participate in team meeting re case strategy and ongoing projects (.2); | 0.20 | $84.00 |
| Syracuse | 3/13/2023 | Leakhena Au | Participate in team meeting re case strategy and ongoing projects (.2); | 0.20 | $84.00 |
| Syracuse | 3/13/2023 | Brian Cawley | Participate in team meeting regarding case status and assignments (.2); | 0.20 | $84.00 |
| Syracuse | 3/13/2023 | Jesse Bair | Conference with internal team re ongoing projects and case strategy (.2); | 0.20 | $125.00 |

| | | | | | |
|---|---|---|---|---|---|
| Rochester | 3/13/2023 | Nathan Kuenzi | Participate in conference with internal BB team re case developments, strategy, and assignments (.1); | 0.10 | $42.00 |
| Rochester | 3/13/2023 | Brian Cawley | Participate in conference with internal BB team re case developments, strategy, and assignments (.1); | 0.1 | $41.00 |
| Rochester | 3/13/2023 | Leakhena Au | Participate in conference with internal BB team re case developments and assignments (.1); | 0.1 | $42.00 |
| Rochester | 3/13/2023 | Timothy Burns | Meet with BB team re ongoing projects (.1); review correspondence with the Diocese re mediation attendance (.1); | 0.2 | $140.00 |
| Rochester | 3/13/2023 | Jesse Bair | Participate in internal BB team conference re case status and ongoing projects (.1); | 0.1 | $62.50 |
| Rockville Centre | 3/13/2023 | Nathan Kuenzi | Participate in BB team meeting re case status and ongoing projects (.1); | 0.1 | $42.00 |
| Rockville Centre | 3/13/2023 | Leakhena Au | Participate in BB team meeting re case status and ongoing projects (.1); | 0.1 | $42.00 |
| Rockville Centre | 3/13/2023 | Timothy Burns | participate in BB team meeting re case status and ongoing projects | 0.1 | $97.50 |
| Rockville Centre | 3/13/2023 | Jesse Bair | Participate in BB team meeting re case status and ongoing projects (.1); | 0.1 | $62.50 |
| | | | | | **$1,088.50** |
| Syracuse | 3/21/2023 | Brian Cawley | Analysis re the ability of an injured party to provide notice instead of a policyholder under New York Insurance Law Section 3420 (1.8); draft summary of Section 3420 research (.2); | 2.00 | $840.00 |
| Rochester | 3/21/2023 | Brian Cawley | Analysis re the ability of an injured party to provide notice instead of a policyholder under New York Insurance Law Section 3420 (1.8); draft summary of Section 3420 research (.2); | 2 | $840.00 |
| Rockville Centre | 3/21/2023 | Brian Cawley | Analysis re the ability of an injured party to provide notice instead of a policyholder under New York Insurance Law Section 3420 (1.8); draft summary of Section 3420 research (.2); | 2 | $840.00 |
| | | | | | **$2,520.00** |
| Syracuse | 3/23/2023 | Brian Cawley | Additional research re claimant notice requirements under New York Insurance Law Section 3420 (.3); draft summary of research findings (.1); | 0.40 | $168.00 |
| Rochester | 3/23/2023 | Brian Cawley | Additional research re claimant notice requirements under New York Insurance Law Section 3420 (.3); draft summary of research findings (.1); | 0.4 | $168.00 |
| Rockville Centre | 3/23/2023 | Brian Cawley | Additional research re claimant notice requirements under New York Insurance Law Section 3420 (.3); draft summary of research findings (.1); | 0.4 | $168.00 |
| | | | | | **$504.00** |
| Syracuse | 5/1/2023 | Nathan Kuenzi | Participate in BB team conference re case developments and projects (.1); | 0.10 | $42.00 |
| Syracuse | 5/1/2023 | Leakhena Au | Participate in BB team meeting re case developments and projects (.1); | 0.10 | $42.00 |
| Syracuse | 5/1/2023 | Timothy Burns | Conference with internal team re case assignments and strategy (.1); review correspondence from the mediator re June mediation session (.1); | 0.20 | $140.00 |

| | | | | | |
|---|---|---|---|---|---|
| Syracuse | 5/1/2023 | Brian Cawley | Participate in BB team meeting re case developments and projects (.1); | 0.10 | $42.00 |
| Syracuse | 5/1/2023 | Jesse Bair | Participate in BB team conference re case developments and projects (.1); | 0.10 | $62.50 |
| Rochester | 5/1/2023 | Jesse Bair | Participate in BB team conference re case developments and projects (.1); | 0.10 | $62.50 |
| Rochester | 5/1/2023 | Nathan Kuenzi | Participate in BB team conference re case developments and projects (.1); | 0.1 | $42.00 |
| Rockville Centre | 5/1/2023 | Leakhena Au | Participate in BB team conference re case developments and projects (.2); | 0.2 | $84.00 |
| Rockville Centre | 5/1/2023 | Jesse Bair | Participate in BB team conference re case developments and projects (.2); | 0.2 | $125.00 |
| Rockville Centre | 5/1/2023 | Brian Cawley | Participate in BB team conference re insurance strategy and related assignments | 0.2 | $84.00 |
| | | | | | **$726.00** |

### 3. Non-Working Travel

Burns Bair billed 71.1 hours for non-working travel in the amount of $23,827.50, which accounts for approximately 13% of the total amount of the fee application. Although travel time was properly billed at one half of the attorneys' hourly rates, the amount is significant and should be scrutinized by the Court. The United States Trustee identified instances where it appears that legal work was performed during non-working travel time and should therefore not be compensated. In addition, Burns Bair seeks reimbursement for expenses related to "Delta WiFi Onboard" indicating that work may have been performed in-flight.

Accordingly, the United States Trustee brings the following sample of entries to the Court's attention in which it appears that Burns Bair performed legal work during non-working travel time (shaded entries represent time billed at full rate on same date where non-working travel billed):

| | | | | | |
|---|---|---|---|---|---|
| Syracuse | 6/26/2023 | Timothy Burns | Participate in conference with J. Bair re mediation preparations, overall insurance strategy, and next-steps (.3); | 0.30 | $210.00 |
| Syracuse | 6/26/2023 | Timothy Burns | Travel to mediation in Syracuse from Madison [billed at 1/2 travel rate] (7.5); | 7.50 | $2,625.00 |
| Rochester | 6/26/2023 | Timothy Burns | Participate in conference with J. Bair re insurance next steps | 0.1 | $70.00 |

| | | | | | |
|---|---|---|---|---|---|
| Rockville Centre | 6/26/2023 | Timothy Burns | Participate in conference with J. Bair re case developments and insurance next-steps (.1); | 0.1 | $97.50 |
| Syracuse | 6/26/2023 | Jesse Bair | Travel to Syracuse from Madison for mediation [billed at 1/2 travel rate] (7.3) | 7.30 | $2,281.25 |
| Syracuse | 6/26/2023 | Jesse Bair | Participate in conference with T. Burns re mediation preparations, overall insurance strategy, and next-steps (.3); | 0.30 | $187.50 |
| Rochester | 6/26/2023 | Jesse Bair | Participate in conference with T. Burns re insurance | 0.1 | $62.50 |
| Rochester | 6/26/2023 | Jesse Bair | Review correspondence with I. Scharf re mediation | 0.1 | $62.50 |
| Rockville Centre | 6/26/2023 | Jesse Bair | Additional analysis of Interstate's responses to the Committee's Section 3420 notice letter (.2); provide instructions to N. Kuenzi and B. Cawley re supplemental analysis needed in connection with same (.2) | 0.4 | $250.00 |
| Rockville Centre | 6/26/2023 | Jesse Bair | Review correspondence with J. Stang and state court counsel re parish stay issues (.1) | 0.1 | $62.50 |
| Rockville Centre | 6/26/2023 | Jesse Bair | Review Lexington's' response to the Committee's Section 3420 notice letter (.2); | 0.2 | $125.00 |
| | | | | | |
| Syracuse | 6/28/2023 | Jesse Bair | Participate in day 2 of mediation session (6.8); | 6.80 | $4,250.00 |
| Syracuse | 6/28/2023 | Jesse Bair | Return travel from Syracuse mediation to Madison [billed at 1/2 travel rate] (7.1) | 7.10 | $2,218.75 |
| Rochester | 6/28/2023 | Jesse Bair | Review and respond to correspondence with state court counsel re CAN demand letter issues (.2) | 0.2 | $125.00 |
| Rochester | 6/28/2023 | Jesse Bair | Participate in call with I. Scharf and T. Burns re mediation and insurance demand letters (.1) | 0.1 | $62.50 |
| Rockville Centre | 6/28/2023 | Jesse Bair | Review final version of the Arrowood district court action confindentiality stipulation and protective order (.1) | 0.1 | $62.50 |

Based on the foregoing, absent further justification and/or a sufficient narrative, the

United States Trustee believes a voluntary downward adjustment to Burns Bair's Fifth Interim

Application in the amount of $18,000.00 (approximately 10% of the application total) is warranted and reasonable.

## V.    <u>CONCLUSION</u>

The United States Trustee respectfully submits that the foregoing requests for adjustment to each of the Retained Professionals' applications for compensation, further discussed above, are warranted under applicable law and reasonable under the circumstances.

**WHEREFORE**, the United States Trustee respectfully submits that the Court enter an order reducing the fees and expenses requested by the Retained Professionals as set forth herein; and granting such other and further relief as it may be deemed just and proper.

Dated:  December 7, 2023
Utica, New York                                          Respectfully submitted,

**WILLIAM K. HARRINGTON**
**UNITED STATES TRUSTEE FOR REGION 2**

By: */s/ Erin P. Champion*
Erin P. Champion
Bar Roll # 510812
Assistant United States Trustee
Office of the U.S. Trustee
10 Broad Street, Room 105
Utica, New York 13501
(315) 793-8191

[27]