UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

IN RE:

The Roman Catholic Diocese of Syracuse, NY.

Case No. 20-30663
Chapter 11

Debtor.

_____

**OMNIBUS OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S MOTION FOR ENTRY OF ORDER (1) APPROVING DISCLOSURE STATEMENT, (II) APPROVING SOLICITATION PACKAGES AND DISTRIBUTION PROCEDURES, (III) APPROVING THE FORMS OF BALLOTS AND ESTABLISHING PROCEDURES FOR VOTING ON JOINT PLAN; (IV) APPROVING THE FORM, MANNER, AND SCOPE OF CONFIRMATION NOTICES; (V) ESTABLISHING CERTAIN DEADLINES IN CONNECTION WITH APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE JOINT PLAN; AND (VI) GRANTING RELATED RELIEF**

TO: THE HONORABLE WENDY A. KINSELLA, UNITED STATES CHIEF BANKRUPTCY
JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), through counsel, respectfully submits this objection (the "Omnibus Objection") to the Motion of the Roman Catholic Diocese of Syracuse, New York (the "Debor") for an *Order (I) Approving Disclosure Statement, (II) Approving Solicitation Packages and Distribution Procedures, (III) Approving the Forms of Ballots and Establishing Procedures for Voting on Joint Plan, (IV) Approving the Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* (ECF Dkt. No. 1626) (the "Motion"). The Debtor's Motion seeks approval of the Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York (ECF Dkt. No. 1566) (the "Disclosure Statement") filed by the Debtor and the Official Committee of Unsecured Creditors (the "Committee"), for the

1

Joint Plan of Reorganization (ECF Dkt. No. 1565) (the "Plan") filed on December 6, 2023 by the

Debtor and the Committee (collectively referred to as the "Plan Proponents"), and the Plan

Supplement filed on January 4, 2024 (ECF Dkt. No. 1604) ("Plan Supplement") and the Second Plan

Supplement filed on January 9, 2024 (ECF Dkt. No. 1613) ("Second Plan Supplement").  In support

thereof, the United States Trustee respectfully states as follows:

## 1.    PRELIMINARY STATEMENT

The primary purpose of a disclosure statement is to provide "adequate information" to allow

creditors to make an informed decision with respect to a proposed plan of reorganization.  The

Disclosure Statement falls short of this standard because it omits meaningful information and fails

to explain and justify the proposed treatment for creditors.  Key provisions of the Disclosure

Statement make it unconfirmable, including expansive, abusive, over-broad, and inappropriate non-

consensual third-party releases and exculpation clauses for which the Plan Proponents provide little

to no legal or factual justification.  To justify such provisions the Disclosure Statement must set

forth sufficient information including, the applicable legal authority and jurisdiction of the Court to

grant such release and exculpations, the identify of all the parties receiving these releases, the

specific consideration provided by each released party for such releases, the identity of all the

claims being released, and any justification for the release of conduct that has not yet occurred and

for parties not yet in existence.

The Disclosure Statement, Plan, Plan Supplement and Second Plan Supplement were filed

without certain exhibits and documents, including a proposed ballot.  Plan Exhibits 5, 8, and 9[1], and

certain Schedules to Plan Exhibits[2], remain unfiled.  These omissions render the Disclosure

---

[1] Exhibit 5 is the Child Protection Protocols, Exhibit 8 is the DOS Trust Note, and Exhibit 9 is the Trust Security
Agreement
[2] Exhibit 2, Schedules 1 and 2; Exhibit 4, Schedules 1 and 2; and Exhibit 7, Schedules 1 and 2.

Statement and Plan deficient and should not be approved until all information has been provided, with adequate notice to parties.

As discussed more fully below, the United States Trustee objects to the Disclosure Statement and Plan for the following reasons:

a. The Disclosure Statement fails to contain basic and essential information regarding the creditors expected recoveries and the timing associated with such recoveries.

b. The Disclosure Statement is unconfirmable because it contains expansive, abusive, over broad, and inappropriate non-consensual releases.

c. The Disclosure Statement fails to provide adequate information as to the legal or factual justification for such non-consensual releases, including, among others, the authority for the Court to grant the same, the identity of the released parties, the specific consideration provided for such releases, or the specific claims covered by such releases. *See* 11 U.S.C. § 1129(a)(3).

d. The Motion seeks to bind creditors to such releases without their consent, including non-voting creditors. *See* 11 U.S.C. § 1129(a)(3).

e. The Disclosure Statement contains overly broad and inappropriate exculpation and indemnification provisions for numerous parties without proper justification including for parties that our not yet in existence and for conduct that has not yet occurred. *See* 11 U.S.C. § 1129(a)(3).

f. The Disclosure Statement fails to advise parties that the approval of nonconsensual third-party releases are a non-core proceeding under *Stern v. Marshall*, 564, U.S. 462 (2011), and the bankruptcy court lacks constitutional authority to finally approve such releases.

g. The Motion obscures key provisions of the Disclosure Statement (ballots and voting

3

notices) to the detriment of affected parties.

h.   The Motion limits the manner and timing associated with notice to creditors.

i.   The Disclosure Statement is not written in plain English designed to enable abuse survivors and other creditors easily to understand the Plan's provisions.

j.   The Plan improperly seeks to exclude certain disbursements from the calculation of the Debtor's quarterly fee obligations under 28 U.S.C. § 1930.

k.   Notice of key terms of Disclosure Statement is insufficient, including balloting and voting procedures that were, instead, included in the Motion, with less than the minimum amount of notice required under Bankruptcy Rule 3017.

In sum, the Disclosure Statement and accompanying documents fall far short of the level of disclosure required under the Bankruptcy Code.   In addition, the Plan that it supports is not confirmable.  The United States Trustee respectfully submits that the Motion should not be granted, and the Disclosure Statement should not be approved.

## II.  BACKGROUND

### A.    General Facts

1.       On June 19, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the Northern District of New York (the "Court").  ECF Dkt. No. 1.  The Debtor is represented by Bond, Schoeneck & King, PLLC.

2.       On July 9, 2020, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee").  ECF Dkt. No. 38.  The Creditors' Committee employed as its counsel Stinson, LLP.

3.      The Debtor currently is operating its business and managing its affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this case.

4.      In monthly operating report ("MOR") for the period of November of 2023, the Debtor reported a month ending cash balance of  $913,382.  The Debtor reported total disbursements for the month in the amount of $2,827,008.  The November MOR shows that professional fees paid through November total $10,707,365.  ECF Dkt. No. 1620.  Despite having had the benefit of mediation for nearly three years, at a cost of millions of dollars to the estate, no settlement was reached with any of the Debtor's insurers.

**B.      The Plan Process and Disclosure Statement and Plan Contents**

5.      On December 6, 2023, the Debtor filed a Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York ("Disclosure Statement") along with a Joint Plan of Reorganization ("Plan").  ECF Dkt. Nos. 1565, 1566.  On January 4, 2024, the Debtor filed a Plan Supplement along with Exhibits 1, 2, 3, 4, and 7 ("Plan Supplement").  ECF Dkt. No. 1604.  On January 9, 2024, the Debtor filed a Second Plan Supplement along with Plan Exhibit 6 and Disclosure Statement Exhibits B and C ("Second Plan Supplement").  ECF Dkt. No. 1613.

6.      On January 4, 2024, the Court entered an Order and Notice Setting Hearing on Disclosure Statement for February 6, 2024 ("Disclosure Statement Hearing Order").  ECF Dkt. No. 1608.

7.      After the Court entered the Disclosure Statement Hearing Order, the Debtor filed the Motion on January 16, 2024.

**C.      Absence of Essential Documents**

8.      The Disclosure Statement and Plan reference certain Exhibits and other documents that have not been filed.  They include:

     i.    Accompanying Ballots (page iii of Disclosure Statement).

     ii.   "Participating Party" at Plan Section 1.1.127 refers to a list on "Exhibit A" attached to the Plan, but no such list was provided.

     iii.  Child Protection Protocols at Plan Section 8.4 refers to Exhibit 5 which has not been filed.  While the contents of Exhibit 5 may not involve money, it is no less important.

     iv.  DOS Trust Note

     v.   DOS Trust Security Agreement

**D.      Key Provisions of Disclosure Statement and Plan**

9.      The Disclosure Statement states that there are no Settling Insurers and no Insurance Settlement Agreements executed.  Disclosure Statement, pg. 39.

**E.      Voting & Ballots**

10.      The Plan provides that certain classes of creditors are not entitled to vote.  Specifically, holders of administrative claims, priority tax claims, non-tax priority claims, professional fee claims, and pass through claims are all deemed to have accepted the Plan and will not vote.  Inbound Contribution Claims are deemed to have rejected the Plan and are not entitled to vote.  Disclosure Statement, pgs. 23-24.

11.      Under Voting Procedures and Requirements, the Disclosure Statement references holders of claims in Class 1, Class 2, Class 4, and Class 5 receiving a Ballot along with receipt of the Disclosure Statement.

12.     The Disclosure Statement does not include a proposed ballot or a sufficient explanation of the balloting and voting procedures for voting classes and non-voting classes.

13.     Rather, the Ballot and Notice of Non-Voting Status were attached as exhibits to Debtor's Proposed Order in approving the Motion, filed more than a month after the Disclosure Statement was filed.

**F.     Releases & Exculpations**

14.     Section 12.7 sets forth the Plan's provision concerning third-party releases.  The release provision provides in part as follows:

> EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, ALL HOLDERS OF CLAIMS, INCLUDING ABUSE CLAIMS (THE "RELEASING PARTIES"), SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS RELATING TO THE DIOCESE, THE PARTICIPATING PARTIES, THE ESTATE, THE CONDUCT OF THE DIOCESE'S AND THE PROTECTED PARTIES' BUSINESSES, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THIS PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THIS PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AMONG THE RELEASING PARTIES AND ANY RELEASED PARTY, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE.
>
> THE FOREGOING RELEASE SHALL BE EFFECTIVE UPON THE OCCURRENCE OF THE EFFECTIVE DATE, EXCEPT THAT, SOLELY WITH RESPECT TO ANY ABUSE CLAIM THEY MAY HOLD, EACH ABUSE CLAIMANT WILL RELEASE THE DIOCESE OR ANY PARTICIPATING PARTY UPON THE OCCURRENCE OF THE ABUSE CLAIM DISCHARGE DATE APPLICABLE TO SUCH ABUSE CLAIM.
>
> FOR THE AVOIDANCE OF DOUBT, PRIOR TO THE OCCURRENCE OF THE APPLICABLE ABUSE CLAIM DISCHARGE DATE AND SUBJECT TO THE

LIMITATIONS SET FORTH IN THE PLAN, A DULY AUTHORIZED LITIGATION CLAIMANT MAY NAME THE DIOCESE OR ANY PARTICIPATING PARTY IN A CASE OR PROCEEDING TO ADJUDICATE WHETHER THE DIOCESE OR ANY PARTICIPATING PARTY HAS LIABILITY FOR AN ABUSE CLAIM AND THE AMOUNT OF ANY SUCH LIABILITY, BUT THAT LITIGATION CLAIMANT'S RECOURSE IN SUCH CASE OR PROCEEDING SHALL BE LIMITED TO THE PROCEEDS OF ANY NON-SETTLING INSURER POLICIES AND ALL OTHER COSTS AND/OR DAMAGES THAT MAY BE RECOVERABLE AGAINST ANY NONSETTLING INSURERS.

15.    The Plan defines "Released Parties" as follows:

> …(i) the Diocese and its Related Persons; (ii) the Reorganized Diocese and its Related Persons; (iii) the Participating Parties and their Related Persons; (iv) a Settling Insurer, but only to the extent that such Settling Insurer's liability arises out of liabilities covered by the Settling Insurer Policies; and (v) a Settling Insurer's Related Persons, but only to the extent such Person's liability arises out of liabilities covered by the Settling Insurer Policies, *provided, however*, that "**Released Parties**" shall not include: (i) any Person who perpetrated an act of Abuse; or (ii) any religious order, diocese, or archdiocese, unless such entity is identified as a Participating Party on **Exhibit A**.

Plan, § 1.1.145.

16.    The Plan defines "Related Person" as follows:

> …with respect to any person or entity, such person's or entity's predecessors, successors, assigns, and present and former shareholders, members, affiliates, subsidiaries, employees, Agents, brokers, adjusters, managing agents, claims agents, underwriting agents, administrators, officers, directors, trustees, partners, attorneys, financial advisors, accountants, and consultants, each in their capacities solely as such.

Plan, § 1.1.143

17.    The Plan defines "Protected Parties" as follows:

> …the Diocese, the Reorganized Diocese, the Participating Parties, the Settling Insurers, any Settling Insurer Covered Persons, and their respective Related Persons.

Plan, § 1.1.141

18.    Section 12.9 sets forth the Plan's provision concerning exculpation (the "Exculpation Provision").  The Exculpation Provision provides as follows:

8

FROM AND AFTER THE EFFECTIVE DATE, NONE OF THE EXCULPATED PARTIES SHALL HAVE OR INCUR ANY LIABILITY FOR, AND EACH EXCULPATED PARTY SHALL BE RELEASED FROM, ANY CLAIM BY ANY OTHER EXCULPATED PARTY, BY ANY HOLDER OF A CLAIM, OR BY ANY OTHER PARTY IN INTEREST, FOR ANY ACT OR OMISSION (I) THAT OCCURRED FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE IN CONNECTION WITH THIS CHAPTER 11 CASE OR (II) IN CONNECTION WITH THE PREPARATION AND FILING OF THIS CHAPTER 11 CASE, THE FORMULATION, NEGOTIATION, OR PURSUIT OF CONFIRMATION OF A PLAN, THE CONSUMMATION OF THIS PLAN, AND THE ADMINISTRATION OF THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, EXCEPT FOR CLAIMS ARISING FROM THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD, OR BREACH OF THE FIDUCIARY DUTY OF LOYALTY OF ANY EXCULPATED PARTY, IN EACH CASE SUBJECT TO DETERMINATION OF SUCH BY FINAL ORDER OF A COURT OF COMPETENT JURISDICTION AND PROVIDED THAT ANY EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THIS PLAN. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE COMMITTEE, THE DIOCESE, THE REORGANIZED DIOCESE AND THEIR RESPECTIVE OFFICERS, TRUSTEES, BOARDS, COMMITTEE MEMBERS, EMPLOYEES, ATTORNEYS, FINANCIAL ADVISORS, EXPERTS, EXPERT WITNESSES, AND OTHER PROFESSIONALS SHALL BE ENTITLED TO AND GRANTED BENEFITS OF SECTION 1125(e) OF THE BANKRUPTCY CODE AND THE CHANNELING INJUNCTION.

19.    The Plan defines "Exculpated Parties" as follows:

> …the Diocese, the Reorganized Diocese, the Diocese's Professionals, the Committee, the Committee's Professionals, the Mediators, the Participating Parties, the Settling Insurers, and Related Persons of the foregoing Persons and entities.

Plan, § 1.1.71

20.    Section 12.3 sets forth the Plan's provision concerning a channeling injunction that channels all Channeled Claims as defined in the Plan (1.1.27) ("Channeling Injunction"). The Channeling Injunction provides, among other things, that all "Channeled Claims" are channeled to a Trust and enjoined from taking any action, directly or indirectly (as further defined therein) against the Protected Parties.

**Abuse Claims**

9

21.    The Plan conditions distributions to Class 5 Abuse Claimants from the Trust on the signing by Abuse Claimants of a "release [of] all Claims against the Protected Parties."  Plan, § 2.3.5(c).

**G.    Claims Classification**

22.    The Plan contains the following provisions with respect to classification and specification of treatment of claims:

      i.    Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, and Professional Fee Claims are deemed to accept the Plan.  Plan, § 2.2.

      ii.    Class 3 Pass-Through Claims are deemed to accept the Plan.  Plan, § 2.2.

      iii.    Class 1 Secured Claims of KeyBank and NBT are entitled to vote.

      iv.    Class 4 (General Unsecured Claims) and Class 5 (Abuse Claims) are entitled to vote.

**H.    Quarterly Fees Payable to the United States Trustee Pursuant to 28 U.S.C. § 1930(a)(6)**

23.    With respect to quarterly fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), as well as interest thereon under 31 U.S.C. § 3717, the Plan provides, in part, as follows: In no event shall the payments made to the Trust pursuant to Sections 2, 5, 7 or 8 of this Plan by any Person other than the Diocese be considered "disbursements" under 28 U.S.C. § 1930, nor shall any payment made by the Trust to any Person be considered a disbursement under 28 U.S.C. § 1930.

## II.  ARGUMENT

**A.    The Disclosure Statement Fails to Comply With Legal Standards**

Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan. 11 U.S.C. § 1125; *see also In re Quiqley Co.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007). The Bankruptcy Code defines "adequate information" as:

information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999).

Section 1125(b) of the Bankruptcy Code requires the Bankruptcy Court to find that the disclosure statement contains "adequate information" before a debtor is allowed to solicit its plan. 11 U.S.C. § 1125(b). The disclosure statement requirement of section 1125 is "crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.*), 848 F.2d 414 (3d Cir. 1988)). "Adequate information" under section 1125 is "determined by the facts and circumstances of each case." *See Oneida*, 848 F.2d at 417 (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)). The "adequate information" requirement is designed to help creditors in their negotiations with the Debtor over the plan. *See Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94 (3d Cir. 1988).

The "adequate information" requirement merely establishes a floor, and not a ceiling, for disclosure to voting creditors. *Adelphia*, 352 B.R. at 596 (citing *Century Glove,* 860 F.2d at 100).

11

Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement as long as the additional information is accurate and its inclusion is not misleading. *Adelphia*, 352 B.R. at 596.  The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999).  The disclosure statement must inform the average creditor what it will receive and when and what contingencies might intervene.  *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

Moreover, Section 1129(a)(2) conditions confirmation of a plan upon compliance with applicable Code provisions.  The disclosure requirement of Section 1125 is one of those provisions. *See* 11 U.S.C. § 1129(a)(2); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000). Therefore, a disclosure statement should not be approved if the plan it describes is unconfirmable on its face, because approving the disclosure statement and proceeding to a confirmation hearing would be a fruitless exercise.  *In re Dow Corning Corp.*, 237 B.R. 380 (Bankr. E.D. Mich. 1999); *In re 266 Washington Assoc.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992); *In re H.K. Porter Co.*, 156 B.R. 16 (W.D. Pa. 1993); *In re Monroe Well Service*, 80 B.R. 324 (Bankr. E.D. Pa. 1987); *In re Valrico Square Ltd. P'ship*, 113 B.R. 794, 796 (Bankr. S.D. Fla. 1990); *John Hancock Mutual Life Insurance Company v. Route 37 Business Park Associates*, 987 F. 2d 154 (3d Cir. 1993).

The Disclosure Statement should not be approved because it contains inadequate information and describes an unconfirmable plan, as discussed below.

**B.    The Debtor Has Failed to Provide Adequate Information Establishing that the Proposed Releases and Exculpation Provisions are Appropriate.**

1.    <u>The Disclosure Statement Fails to Establish Why Releases are Appropriate in This Case</u>

The Disclosure Statements fails to fully address the Plan provisions which provide various third parties with broad releases that, if confirmed, will deprive the Debtor's creditors of certain property rights without their consent.  The third-party releases in the Plan are material terms and should be sufficiently explained so that interested creditors can determine (i) exactly what releases will be imposed upon them and (ii) the likelihood of the Debtor's success in confirming a Plan with such broad third-party releases.  Other than the Debtor's own assertions that the third-party releases are reasonable and fair, the Disclosure Statement fails to explain in a clear and succinct manner what releases are being imposed on creditors and the relevant legal authority to support such releases.

The Disclosure Statement should likewise explain why the third-party releases in the Plan are justified.   Specifically, assuming the Debtor persuades the Court that it has subject matter jurisdiction to compel creditors to provide non-consensual third-party releases, the authority to grant releases, if it is deemed proper at all as the United States Trustee contends that the Bankruptcy Code provides no authority for the imposition of the same, is proper only in rare and unique circumstances.  *In re SunEdison*, 576 B.R. 453, 461-62 (S.D.N.Y. Bankr. 2017) (citing *Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136, 141 (2d Cir. 2005) ("*Metromedia*")).  In *Metromedia*, the Second Circuit articulated at least two reasons for its reluctance to approve these releases:

> First, the only explicit authorization in the Code for non-debtor releases is 11 U.S.C. § 524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims, [and] …Second, a non-debtor release is a device that lends itself to abuse. By it, a non-debtor can

13

shield itself from liability to third parties. In form, it is a release; in effect it may operate as a bankruptcy discharge without a filing and without the safeguards of the Code. The potential for abuse is heightened when releases afford blanket immunity.

*Id.* at 142. *See also In re DBSD N. Am., Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009)

(footnotes omitted); *In re Motors Liquidation Co.*, 477 B.R. 198, 220 (Bankr. S.D.N.Y. 2011)

("Although (since the Code is silent on the matter) third-party releases aren't 'inconsistent with

the applicable provisions of this title,' the Second Circuit has ruled that they're permissible only in

rare cases, with appropriate consent or under circumstances that can be regarded as unique, some

of which the Circuit listed.  But where those circumstances haven't been shown, third-party

releases can't be found to be appropriate").

### 2.  Releasing Parties Have No Opportunity to Demonstrate Consent

The non-consensual, third-party releases in the Plan require denial of confirmation and

thus, the Disclosure Statement cannot be approved.  A release of claims held by non-debtors

against other non-debtors is "a dramatic measure to be used cautiously" and "is only proper in rare

cases." *Metromedia*, 416 F.3d at 142-43 (internal citation omitted).  "The plain admonition of the

Second Circuit Court of Appeals is that third-party releases are frequently a subject of abuse and

that they are appropriate only in narrow and unusual circumstances."  *Chassix Holdings*, 533 B.R.

at 78 (citing *Metromedia*, 461 F 3d. at 143).  The Disclosure Statement does not pass muster under

these Second Circuit standards.

Further, by virtue of the Channeling Injunction (discussed below) all abuse claims are

channeled to the Trust and barred from future pursuit, and therefore, confirmation of the Plan is a

functional release of any and all claims against the Participating Parties, Settling Insurer Parties,

and a host of others.   The Plan does not condition confirmation on affirmative consent from *all*

affected creditors nor does it disclose what each of the Released Parties is contributing in exchange

14

for their release.

      According to *Purdue Pharma,* given the potential for abuse, third-party releases must be imposed against a backdrop of equity, and courts should exercise particular care when evaluating a non-debtor release.  *In Re Purdue Pharma L.P.*, 69 F.4th 45, 79 (2d Cir. 2023), *cert. granted sub nom. Harrington v. Purdue Pharma L.P.*, No. (23A87), 2023 WL 5116031 (U.S. Aug. 10, 2023).[3] In evaluating releases, courts must consider the following seven factors to determine if a non-consensual non-debtor release is appropriate:

      First, is there an identity of interest between the debtor and the released third parties?

      Second, are the claims against the debtor and non-debtor factually and legally intertwined?

      Third, is the scope of the release appropriate?

      Fourth, is the release essential to the reorganization?

      Fifth, has the non-debtor contributed substantial assets to the reorganization?

      Sixth, did the impacted creditors overwhelmingly vote in support of the plan? And

      Seventh, does the plan provide fair payment of enjoined claims?

*Id*. at 78-79.

      The Second Circuit requires "consideration of each factor" but also cautions that "there may even be cases in which all factors are present, but the inclusion of third-party releases in a plan of reorganization should not be approved." *Id*. at 79.  The Court also required the bankruptcy court to "support each of these factors with specific and detailed findings." *Id.*

      The third-party releases as described in the Disclosure Statement and Plan fail to satisfy the seven-factor test.

      Specifically, the Disclosure Statement fails to disclose and explain the contributions (or lack

---

[3] The matter was argued before the Supreme Court of the United States on December 4, 2023.

thereof) of many of the Released Parties – many of whom are not identified – and fails to disclose the Participating Parties (despite the Plan's reference to a list on "Exhibit A", which was not included with the Plan).

Both "Released Parties" and "Protected Parties" include "Related Persons," which, according to Section 1.1.143, "means, with respect to any person or entity, such person's or entity's predecessors, successors, assigns, and present and former shareholders, members, affiliates, subsidiaries, employees, Agents, brokers, adjusters, managing agents, claims agents, underwriting agents, administrators, officers, directors, trustees, partners, attorneys, financial advisors, accountants, and consultants, each in their capacities solely as such."   These "Related Persons" are otherwise unidentified.

The Disclosure Statement does describe a cash contribution to be provided by the "DOS Entities," but the mechanics of the contribution are intentionally convoluted.  The cash contribution is to be contributed "by or on behalf of the Diocese and the Participating Parties to the Trust and used to fund the payment of Abuse Claims and Trust Expenses pursuant to the Plan and the Trust Agreement."  Among other things, the Disclosure Statement fails to disclose the amount paid by each of the Participating Parties.

Yet in the Summary of the Plan section of the Disclosure Statement, the Debtor discloses that, under the Plan, a Trust will be funded by the "Catholic Family Contribution" and the assignment to the Trust of certain insurance claims against non-settling insurers.  In exchange for the contribution, the Disclosure Statement identifies groups of contributors to the Trust – the Diocese and Reorganized Diocese, the Parishes, the Schools, Other Catholic Organizations, the Settling Insurers, and "each of the foregoing Persons' respective Related Persons" – and defines them all as "Protected Parties" that are "entitled to the benefit of certain release, exculpation, and

16

injunctions." *See* Disclosure Statement, pg. 3.  However, the Disclosure Statement is silent as to

the respective contributions of each of these contributors.  The failure to disclose the identities of

the parties and their respective contributions renders the Disclosure Statement inadequate and the

Plan unconfirmable.

      The Disclosure Statement states that "[t]he Plan's injunctive provisions and releases are an

integral part of the Plan and are essential to its implementation." *See* Disclosure Statement, pg. 73.

The simple, self-serving statement does not explain why the Plan's implementation hinges on the

release of each of the many undisclosed "Released Parties."

      The Motion provides that certain claims will not receive a Ballot, including Non-Voting

Classes (Classes 3 and 6) (presumed to accept or deemed to reject the Plan) and Unclassified

Claims (holders of administrative, priority tax, non-tax priority, professional fee, and U.S. Trustee

fee claims).  The "Notice of Non-Voting Status" (attached to Exhibit A, "Proposed Order," to the

Motion), states that both Unclassified Claims and Non-Voting Claims will be "conclusively

presumed to consent to certain releases, exculpation, and injunctive relief . . . unless [they] file an

objection to confirmation."

      As such, these creditors are deemed to have consented to releases in the context of a Plan

where the consent of the releasing parties is immaterial.

      Should the Debtor argue that it can impose releases upon holders of non-voting claims or

interests, the Plan must make that clear and provide a way for the affected parties to affirmatively

demonstrate knowing and informed consent to such releases.   This is especially true for creditors

listed as "unimpaired."  It is difficult to fathom how an entity can be classified as "unimpaired" at

the same time the entity is being compelled to grant a third-party release.  As one court observed,

"unimpaired creditors should not be deemed to have consented to the third party releases set forth

in the Plan." *In re Chassix Holdings, Inc.,* 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015).

Additionally, creditors that are deemed to reject the Plan cannot be construed to have accepted the

releases. *Id.*

      In sum, the Disclosure Statement fails to address the multi-factor test adopted by the

Second Circuit in *Purdue Pharma* in considering approval of third-party releases.  Debtor has

not shown that any of the numerous proposed released third parties have made essential

contributions to the Plan.   As the Second Circuit held, "if the only reason for the inclusion of a

release is the non-debtor's financial contribution to a restructuring plan, then the release is not

essential to the bankruptcy." *Id.* at 81.  Second, there has been no proof that any of the proposed

released parties have or will contribute substantial assets to the reorganization.   In *Purdue*

*Pharma*, the Second Circuit noted that the funds contributed to the plan were one of the largest

contributions in bankruptcy anywhere.[4] *Id*.   The Disclosure Statement fails to identify what

each released party is contributing to even make such an assessment.  The identities of the

proposed released parties must be disclosed and their  contributions and consideration must be

sufficiently explained.

      Even if, however, the third-party release could satisfy the *Purdue* factors, approval of the

release is a non-core proceeding under *Stern v. Marshall*, 564, U.S. 462 (2011), *Purdue Pharma,*

69 F.4th at 68, and the bankruptcy court therefore lacks constitutional authority to finally

approve the release.[5]  Accordingly, the bankruptcy court's decision, should it approve the third-

---

[4] The United States Trustee takes the position that whether the contributions were the largest in a case are not relevant to the analysis. Moreover, the arguments made and positions taken by the United States Trustee in this pleading are not an indication or waiver of his positions on relevant issues in other or future cases, particularly given the pending outcome of *William K. Harrington, United States Trustee, Region 2, v. Purdue Pharma L.P., et al.*, Case No. 23A_, filed in July 2023.

[5] There is no information contained in the Disclosure Statement setting forth a basis for the Debtor's apparent belief that this Court has subject matter jurisdiction to impose the third-party releases. Whether this Court has subject matter to bestow such broad releases is a material issue and an issue that should be addressed by the Debtor in the Disclosure

party release, would only constitute findings of fact and conclusions of law for the district

court's *de novo* review before the Plan could be confirmed.

### 3.    The Channeling Injunction Functions as an Additional Third-Party Release

Another integral component of the Plan is the Channeling Injunction described at

Section 12.3, which protects the Participating Parties, and a host of others from liability, past

and future, and is the functional equivalent of a release of claims against those non-debtor third

parties because it bars non-debtor third parties, including but not limited to abuse claimants,

from bringing claims.[6]   The Disclosure Statement does not address this Court's authority and

jurisdiction to impose such a channeling injunction against claimants who do not consent and

sign the release, nor has the Debtor demonstrated that its proposed process yields true consent.

In sum, the Debtor has not offered an adequate basis - in fact or in law - for this Court to find

that the Disclosure Statement provides adequate information regarding the Channeling

Injunction.   The United States Trustee objects to the Channeling Injunction because, like the

releases discussed above, it protects and insulates a myriad of non- debtor parties, without the

consent of all affected creditors.   While the Plan states that the Channeling Injunction bars the

prosecution of "channeled claims against Protected Parties . . . in consideration of the

undertakings of the protected parties herein, their contributions to the trustee, and other

---

Statement so that interested creditors can determine (i) exactly what release are being imposed and on which creditors and (ii) the likelihood of Debtor's success of confirming a plan with such broad releases. *See In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008), *vacated & remanded on other grounds*, 557 U.S. 137 (2009), *aff'g in part & rev'g in part*, 600 F.3d 135 (2d Cir. 2010) and *Deutsche Bank AG v. Metromedia*, 416 F. 3d at 141; accord *In re Dreier LLP*, 429 B.R. 112, 132 (Bankr. S.D.N.Y. 2010); *In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 695 (Bankr. S.D.N.Y. 2010).

[6] The channeling injunctions authorized in asbestos cases under section 524(g) offer protections that satisfy the Constitution's requirements that the extra-statutory, ad hoc third-party releases do not, including that (1) the liabilities channeled are derivative of the debtor and not direct claims held by one non-debtor against another non- debtor, i.e., the claims implicate the *res* of the estate; (2) claimants whose claims are channeled to a trust have super- majority voting rights (75% must approve); and (3) the appointment of a future claimants' representative preserves and protects the rights of future claimants.

19

consideration, . . ."  the Plan fails to identify the "consideration" provided by the Protected

Parties.  Accordingly, the Channeling Injunction should not be approved.

> 4.  <u>The Disclosure Statement Should Not Be Approved Because the Exculpation
> Provision is Overly Broad</u>

Similarly, the Exculpation Provision is overly broad and far beyond the scope of 11

U.S.C. § 1125(e).[7]   The Debtor should revise their exculpation provision so that it is consistent

with 11 U.S.C. § 1125, the only provision of the Bankruptcy Code which provides authority for

such relief; otherwise, the United States Trustee objects to the exculpation provision as set forth

below.

First, the Exculpation Provision appears to encompass virtually any action taken during –

and even prior to -- these Chapter 11 cases.   Section 1125(e) is the only section of the

Bankruptcy Code that provides for exculpation. *See* 11 U.S.C. § 1125(e) (limiting liability in

connection with certain good faith solicitation and plan participation efforts).  There is no

Bankruptcy Code provision that supports exculpating all the defined Exculpated Parties, *see*

Plan, § 1.1.71, in a manner as broadly as this Plan.  *See Wash. Mut.*, 442 B.R. at 350-351

(limiting exculpation clause to estate fiduciaries for "actions in a bankruptcy case").

Second, the Exculpation Provision is not limited to acts or omissions during the case, but

instead extends to post effective date activity that cannot be exculpated.  Plan, § 12.9, pg. 68

(exculpation covers conduct "[f]rom and after the Effective Date").  *See Id.*  at 350 (exculpations

cover "actions in the bankruptcy case") (citing *PWS Holding.*, 228 F.3d at 246).  The temporal

scope has no end date and therefore could be interpreted to provide prospective exculpation that

extends past the Effective Date, especially as it covers entities that will not exist until after the

---

[7] The arguments made and positions taken by the United States Trustee in this pleading are not an indication or waiver
of his positions on relevant issues in other or future cases.

Effective Date, such as the Reorganized Diocese. Exculpation clauses should not extend past the effective date of a plan, to avoid exculpating actions that have not yet occurred and are as yet unknown. *See In re Mallinckrodt PLC*, 639 B.R. 837, 883 (Bank. D. Del. 2022) (exculpation "only extends to conduct that occurs between the Petition Date and the effective date"). In addition, post- effective date entities cannot receive prospective immunity by exculpation, just as they cannot receive prospective immunity through a release. *See Wash. Mut.*, 442 B.R. at 348 ("The Liquidating Trust and its Trustee have not done anything yet for which they need a release. They will not even come into existence until the Plan is confirmed."). The Plan should not grant prospective releases to entities that do not yet exist on account of future conduct and claim that have yet to arise. All post-effective date entities should be stricken from the list of Released Parties and should not be covered by the Plan's Exculpation Provision.

Third, the Exculpation Provision is inappropriate because the list of exculpated parties in overly broad. The list of exculpated parties includes many individuals who cannot be classified as estate fiduciaries. A proper exculpation operates to shield court-supervised fiduciaries from liability. *Aegean Marine*, 599 B.R. at 721. "The exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtor's directors and officers." *In re Washington Mut., Inc.*, 442 B.R. 314, 350–51 (Bankr. D. Del. 2011). Exculpation provisions are based "to some extent . . . on the theory that court-supervised fiduciaries are entitled to qualified immunity for their actions." *Aegean*, 599 B.R. at 721. *See also, Roni LLC v. Arfa*, 74 A.D.3d 442, 444 (2010), *aff'd*, 18 N.Y.3d 846 (2011) ("a conventional business relationship between parties dealing at arm's length does not give rise to fiduciary duties.").

The Exculpated Parties include not only the Debtor, the Debtor's Professionals, the

21

Committee, the Committee's Professionals, and the Mediators, but also Participating Parties, Settling Insurers, and "Related Persons of the Persons and Entities." Plan, § 1.1.71. In fact, the range of Exculpated Parties is so broad that it likely includes parties who performed no duties essential, necessary, or at all, related to the Plan. The Plan provides no basis for including non-fiduciaries as Exculpated Parties. *See Wash. Mut.*, 442 B.R. at 350-351 (limiting exculpation clause to estate fiduciaries). The Settling Insurers, for example, are indisputably not fiduciaries to the estate. But a proper exculpation is a protection of court-supervised *fiduciaries. In re Aegean Marine Petroleum Network, Inc*. 599 B.R. 717, 721 (Bankr. S.D.N.Y. 2019). Exculpation provisions are based "to some extent . . . on the theory that court-supervised fiduciaries are entitled to qualified immunity for their actions." *Aegean Marine*, 599 B.R. at 721. There is no legal basis to provide the protection of an exculpation provision to the Settling Insurers or the other non-fiduciaries listed in the Plan's definition of Exculpated Parties.

Fourth, in addition to excepting gross negligence, willful misconduct, fraud, or breach of fiduciary duty, the exculpation provision should also carve out claims for bad faith and legal malpractice, release of which is prohibited under section of the New York Rules of Professional Conduct, *i.e.*, N.Y. Comp. Codes R. & Res. Tit. 22 § 1200.8 Rule 1.8(h)(1).

Fifth, the United States Trustee objects to the extent the Exculpation Provision shields Exculpated Parties who rely upon the advice of counsel.[8] Although reliance could be raised as an affirmative defense, it should not be an absolute bar against liability. The Exculpated Parties should have a claim against their legal advisors for any improper or mistaken advice, and the Exculpation should not protect such advice.

---

[8] In the context of the carve-outs for fraud, breach of contract, willful misconduct, and breach of fiduciary duty, the Exculpation Provision states that "any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan. Plan, § 12.9.

22

Sixth, the Trust created under the Plan includes a provision that operates as an additional release and exculpation provision.  The Plan provides that "[n]o recourse shall ever be had… by the Trustee" [except that] "the Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, breach of the fiduciary duty of loyalty, or fraud."  Plan, § 8.11.  This "no recourse" provision provides for a release and exculpation of non-Debtor parties that are not yet in existence and have not yet done anything to warrant such protections.  This provision functions as a release of and exculpation for prospective future conduct.  Of note, the indemnification provision at Section 8.12 of the Plan is really an overly broad exculpation provision for "the Trustee and it Agents" (which are unidentified) that is overly broad, internally inconsistent as to what is unprotected excluded conduct, applies to future conduct, and does not exclude breach of fiduciary duty.  The Motion, the Disclosure Statement, and Plan do not explain why it is appropriate to provide such protections to the Trust and others connected to the Trust.  Moreover, although the ballots mention the third- party releases, they do not refer to the release/exculpation for the Trust and its agents.

Seventh, abuse survivors can receive a distribution from the Trust under the Plan, but only if they first sign a release:  "[e]ach Class 5 Claimant must release all Claims against the Protected Parties prior to receiving a Distribution."  Plan, § 2.3.5.(c).  Again, "Protected Parties" is inclusive of a long list of parties, including the Diocese, the Reorganized Diocese, the Participating Parties, the Settling Insurers, any Settling Insurer Covered Persons, and their respective Related Parties.  Plan, § 1.1.141.  Not only do abuse survivors have no way to opt out of the release, but their ability also to receive a distribution is conditioned on the survivors signing a release form in order to receive a distribution.

There is no meaningful choice for the abuse survivors under the Plan; they must either

23

accept the Plan with overly broad releases and exculpations or file an objection to confirmation. This is fundamentally unfair to the abuse survivors. And third-party release should be consensual, and such consent should be knowingly, voluntarily, and not coerced. Here, if they wish to opt out of the releases, the only option is an objection to confirmation. This raises questions whether the legitimate concern that their consent is not voluntary.

A debtor is entitled to a discharge under Section 1141 if it confirms a plan that complies with Section 1129 and that pays creditors what they are entitled to receive. That discharge provides the Debtor with protections from all pre-petition abuse claims and functions as a release. Third parties who are not debtors have no statutory right to receive a discharge and are not entitled to receive a release that is the equivalent of a debtor discharge. In prioritizing the protections of non-debtors over its obligation to pay abuse survivors, the Debtor is in violation of the good faith requirement under 11 U.S.C. § 1129(a)(3).

**C.    The Disclosure Statement Fails to Inform Voting Creditors the Amounts They Can Expect to Receive Under the Plan**

The Disclosure Statement fails to disclose the percentage amount or range of amounts that the Plan. The Disclosure Statement merely provides for a Trust to be funded by an Abuse Claims Settlement, comprised of a monetary contribution "by the Diocese and other Participating Parties in the aggregate amount of up to $100,000,000, which may include up to $15 million to be evidenced by the DOS Trust Note," defined as the "Catholic Family Contribution." Plan, § Art. 1, pg. 2. The Disclosure Statement does not contain what for many creditors is the most salient fact: How much will they receive under the Plan – and when will they receive it? The creditors cannot be expected to make an informed decision regarding the competing plans without this piece of crucial information.

24

D. **The Disclosure Statement and Motion Fail to Provide Creditors With Adequate Notice**

Not only are the Plan Proponents required to provide adequate disclosure to voting creditors and other parties-in-interest, but they are also required to give those parties a full and fair opportunity to respond to the plan. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (requiring that notice be "reasonably calculated, under all the circumstances, to apprise interest parties of the pendency of the action and afford them an opportunity to present their objections"); *DePippo v. Kmart Corp.*, 335 B.R. 290, 295 (S.D.N.Y. 2005) (confirmed chapter 11 plan binds creditors, but only so long as they have received notice sufficient to satisfy due process).

The Debtor has failed to provide sufficient notice of hearing to consider approval of its Disclosure Statement as required under Rules 2002 and 3017 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). The Disclosure Statement, filed on December 6, 2023, contains multiple references to the Ballot and voting procedures. However, when filed, the Disclosure Statement failed to include key documents related to the balloting and voting process, including, the proposed Ballots (the "Class 1, 2, and 4 Ballot" and "Class 5 Ballot"), Confirmation Hearing Notice, Notice of Confirmation, Publication Notice, and the Notice of Non-Voting Status. These were not provided to the parties until the Motion was filed, more than a month later. Each of the Motion's Exhibits contain provisions regarding the binding effect of the releases and injunctions. This information is integral to the Disclosure Statement and failure to include it constitutes insufficient notice under Bankruptcy Rule 3017.

Disclosure statements frequently contain attachments or exhibits which are referenced in the disclosure statement itself. *In re Congoleum Corporation, et al.*, 636 B.R. 362 (Bankr. D.

N.J. 2022) (citing to *In re Maremont Corp.*, 601 B.R. 1, 199 (Bankr. D. Del. 2019) (approving

disclosure statement in asbestos bankruptcy case that referenced and attached documents

governing agreements and releases); *In re Panda Temple Power, LLC*, No. 17-10839 (LSS),

2017 WL 5483155, at *5 (Bankr. D. Del. June 29, 2017) (approving disclosure statement that

attached exhibits)). Each interested party is tasked with reading the disclosure statement and any

referenced documents…and taking appropriate steps to protect its rights.  *Id.*

Here, however, the parties do not have sufficient time to protect their rights because the

relevant attachments and exhibits were not timely provided.  Moreover, the relevant attachments

and exhibits not provided (the proposed ballots and notices) are substantively critical to the

terms of the Plan and should be called attention to the parties, not buried in a proposed order.

In addition, the Motion limits the number of abuse survivors and other creditors who are

directly to receive the pleadings and other documents that they are being asked to consider.  The

Motion provides, in part:

> Solicitation Packages for holders of Abuse Claims shall be
> served via the noticing address included on their proof of claim,
> if any, based on the information reflected on Stretto's claims
> register as of the Voting Record Date. For the avoidance of
> doubt, if such noticing address is the address of the Abuse
> Claimant's attorney, the Abuse Claimant will be
> served Solicitation Packages through such attorney unless such
> Abuse Claimant or attorney has notified the Diocese or Stretto
> that the representation has terminated. To avoid duplication and
> reduce expenses, the Diocese proposes to serve attorneys who
> represent more than one Class 5 Abuse Claimant with only one
> copy of the Solicitation Package (except that the Diocese will
> provide separate Ballots for each Class 5 Claimant as set forth
> herein).

Motion, ¶ 33

Thus, the Solicitation Packages are in certain cases not to be received directly by the voting

creditors; these creditors will have to wait until – and unless – their respective attorneys relay them

26

to their intended recipients.  Attorneys who represent more than one Class 5 Abuse Claimant will receive a single copy of the Solicitation Package.

Notice is also limited for "Non-Voting Classes," who will not receive a complete Solicitation Package, but instead, only the copy of the Confirmation Hearing Notice and the Notice of Non-Voting Status.  Non-Voting Class members' rights are impaired as a result of the Motion's limited amount of notice of integral provisions that should have otherwise been disclosed along with the Disclosure Statement.

Finally, significant portions of the Disclosure Statement are not written in plain English so that abuse survivors and other creditors can easily understand the Plan's provisions, especially when parties are forced to have to review separate, yet essential, documents buried in the Debtor's Motion.

**E.      The Statutory Obligation to Pay Fees Due Pursuant to 28 U.S.C. § 1930(a)(6) and Post-Confirmation Reporting**

The Plan provides for the payment of quarterly fees to the United States Trustee.  *See* Plan, § 2.1.5.  However, the Plan also provides that that the Chapter 11 Quarterly Fees due and not paid as of the Effective Date will be paid "as soon as practicable after the Effective Date."  *Id.*  This provision violates 11 U.S.C. § 1129(a)(12), which specifically requires payment of Chapter 11 Quarterly Fees "on the effective date of the plan."  The Plan provides further that payments made (1) to the Trust under Sections 2, 5, 7 or 8 of the Plan by anyone other than the Diocese, and (2) by the Trust to anyone are not to be considered "disbursements" under 28 U.S.C. § 1930(a)(6).  *Id.*

(i)      The Reorganized Debtor has an obligation to pay fees due pursuant to 28 U.S.C. § 1930(a)(6) ("Chapter 11 Quarterly Fees") based on all monies distributed or paid pursuant to the Plan.  Chapter 11 Quarterly Fees are properly assessed on the following categories of disbursements: disbursements of cash made by the Debtor, pursuant to the Plan and to the Trust, as well as disbursements directly by

the Debtor to non- abuse creditors and other payments obligated by the Plan;[9]

    (ii)    disbursements by the Trust of monies generated from the liquidation of real estate transferred to the Trust by the Debtor, including both disbursements to creditors and for fees and expenses associate with Trust administration; *and*

    (iii)   disbursements by the Trust of monies that did not originate with the Debtor and were contributed to the Trust by non-debtor third parties.

The Plan is the Debtor's mechanism to pay its creditors their rightful share, along with paying the costs of administration of the chapter 11 case. The choice to utilize a plan-created entity (the Trust) to effectuate the payments to certain creditors does not alter the Debtor's statutory obligation to pay Chapter 11 Quarterly Fees that accrue and are imposed as a result of the monies that must be paid under the Plan. The reorganized Debtor has an obligation to pay Chapter 11 Quarterly Fees based on *all* post-Effective Date disbursements made pursuant to the Plan, regardless of how the disbursements are accomplished.

Finally, the definition of Administrative Claim at Section 1.1.10 of the Plan inappropriately includes, "all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code." Plan, § 1.1.10. Chapter 11 Quarterly Fees are included among such "fees and charges." *See* 28 U.S.C. 1930(a)(6). This definition should be revised to remove any reference to Chapter 11 Quarterly Fees as they are statutory, rather than administrative claims and are not subject to the same obligations of administrative creditors.

---

[9] To be clear, no double counting of disbursements is being proposed. The cash being contributed by the Debtor to the Trust is a disbursement that will be counted and assessed fees at the time the Debtor makes the disbursement, not when the Trust distribute that same cash.

Case 20-30663-5-wak    Doc 1636    Filed 01/30/24    Entered 01/30/24 09:10:49    Desc
Main Document      Page 29 of 30

### III.  CONCLUSION

WHEREFORE, for all of the foregoing reasons, the United States Trustee respectfully requests that the Court (i) sustain this Omnibus Objection, (ii) deny the Motion, (iii) disapprove the Disclosure Statement, and (iv) grant such other relief as is just and appropriate.

Additionally, the United States Trustee reserves his rights to supplement this Objection and object at the hearing on the Disclosure Statement and Motion to other deficient and/or amendments, including supplemental disclosures and documents.  The United States Trustee further reserves his rights to object to confirmation of the Plan, or any future amendments or supplements thereto.

Dated:  January 30, 2024
        Utica, New York

Respectfully submitted,

WILLIAM K. HARRINGTON UNITED STATES TRUSTEE, Region 2

By: /s/ Erin P. Champion, Esq.
Erin P. Champion
Assistant United States Trustee
Office of the United States Trustee
10 Broad Street, Ste. 105
Utica, New York 13501
(315) 793-8127
erin.champion@usdoj.gov

29

30