Lauren M. Macksoud, Esq.
**DENTONS US LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-5347
Facsimile: (212) 768-6800
E-mail: lauren.macksoud@dentons.com

*Attorney for Travelers Insurance Company*
*Limited, Travelers Casualty and Surety*
*Company and Traveler's Indemnity Company*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>The Roman Catholic Diocese Of Syracuse, New York,<br><br>                           Debtor. | Case No. 20-30663-5-wak<br><br>Chapter 11 |

**TRAVELERS INSURANCE COMPANY LIMITED, TRAVELERS CASUALTY AND SURETY COMPANY, AND TRAVELER'S INDEMNITY COMPANY'S OBJECTION TO DISCLOSURE STATEMENT MOTION AND JOINDER TO LMI AND INTERSTATE INSURERS' OBJECTIONS**

Travelers Insurance Company Limited, Travelers Casualty and Surety Company and Traveler's Indemnity Company ("Travelers"), by and through undersigned counsel, hereby files this objection ("Objection") to the *Motion for Entry of an Order (I) Approving the Disclosure Statement; (II) Approving Solicitation Packages and Distribution Procedures; (III) Approving the Forms of Ballots and Establishing Procedures for Voting on the Joint Plan; (IV) Approving the Form, Manner, and Scope of Confirmation Notices; (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Joint Plan; and (VI) Granting Related Relief* (the "Disclosure Statement Motion") [Docket No. 1626] filed by The Roman Catholic Diocese of Syracuse, New York (the "Diocese" or the "Debtor").

For the reasons set forth herein, the *Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York dated December 6, 2023* [Docket No. 1566] (the "Disclosure Statement") in support of the *Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York dated December 6, 2023* [Docket No. 1565] (the "Plan")[1] should not be approved because it fails to provide creditors and other interested parties with adequate information pursuant to 11 U.S.C. § 1125. In addition to the objections set forth below, Travelers hereby joins in the objections filed by Interstate Fire & Casualty Company, Fireman's Fund Insurance Company, and National Surety Corporation (collectively, the "Interstate Insurers") on January 30, 2024 [Docket No. 1639] and Certain Underwriters at Lloyd's, London and Certain London Market Companies (collectively "LMI") on January 30, 2024 [Docket No. 1637] (the "Other Insurer Objections").

In opposition to the Disclosure Statement Motion, Travelers respectfully states as follows:

## I.    **PRELIMINARY STATEMENT**

1.      Travelers has worked diligently in mediation to settle and resolve coverage issues with the Debtor and Committee, to no avail. The Plan and Disclosure Statement proposed in this Chapter 11 case is not the product of a global settlement and lacks support of various insurers, including Travelers, who have stood by waiting to mediate and to work with all parties in interest to reach a consensual resolution.

2.      But setting that aside, the Disclosure Statement Motion should not be approved by the Court because the Plan described therein is patently unconfirmable and provides inadequate, misleading information to creditors. For instance, the Debtor's proposed Disclosure Statement fails to make clear that the Plan: (i) improperly seeks a finding of good faith for documents outside

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan and the Disclosure Statement.

US_ACTIVE\125926813\V-4

of the Plan, such as the Allocation Protocol filed as part of the Plan Supplement, (ii) seeks to assign insurance claims to the Trust, which would result in an inappropriate determination of the Debtor's insurance policies under state law and which lacks any statutory or jurisdictional predicate, given not all policies are property of the Debtor's estate, (iii) contemplates payment to potentially invalid or duplicative claims, and (iv) is inconsistent and unclear as to what rights and defenses of Travelers and other insurers are preserved.   The Disclosure Statement also fails to provide a breakdown of the DOS Entities' Cash Contribution so that the Court and other parties in interest can determine whether the contributions by Participating Parties are sufficient to earn such Participating Party the broad releases provided for under the Plan.

3.      Quite troublingly, the Plan also allows for outcomes that are inconsistent with the primary purpose of the Bankruptcy Code: balancing the rights of a debtor's various constituents as fairly and equitably as possible.   For instance, the Plan allows for the Survivor Claim Reviewer to be the *sole arbiter* of whether an Abuse Claim will be allowed.   It denies insurers and any other party in interest the right to object to an Abuse Claim.   It even strips this Court from its ability to review claims.   As a result, the Plan violates Section 502 of the Bankruptcy Code, which preserves a party in interest's right to object to claims, and reserves for the Court the ability to determine the amount of a claim, except to the extent that a claim is unenforceable against the debtor or property of the debtor.   *See* 11 U.S.C. §§ 502(a) and (b).   Stated simply, the Plan cannot be proposed in good faith, nor can it satisfy the Bankruptcy Code's equitable purpose if it allows, without scrutiny, fraudulent claims, claims for individuals who may not be creditors of the debtor's estate or duplicate claims.

4.      In addition, the Plan is not insurance neutral, but rather is prejudicial to Travelers'

rights and defenses.[2]  For instance, while purporting to not impair or prejudice the rights and defenses of Non-Settling Insurers, the Plan's Insurance Neutrality language does not expressly preserve the insurers' rights and defenses vis a vis the Trust.  *See* Plan, § 8.7.2.  Instead, the Plan preserves all rights and defenses of, among others, the Trust, leaving it unclear exactly how or whether the rights of insurers are preserved.  *Id.*

5.      Recovery from the Diocese's insurance coverage is limited to the coverage the Diocese purchased.  Travelers' alleged insurance policies (the "<u>Alleged Policies</u>" or an "<u>Alleged Policy</u>") with the Debtor, if issued at all, simply do not provide coverage for the injuries alleged in the Abuse Claims.  Based on the available policy documentation,  and contrary to the Debtor's assertions, as explained below the policies issued or allegedly issued by Travelers do not provide commercial general liability ("<u>CGL</u>") coverage, but rather are what is known as designated premises/owners, landlords and tenants ("<u>OLT</u>" or the "<u>OLT Policies</u>") which provide coverage that is limited to  the ownership, use and maintenance of certain specifically identified properties/premises and operations incidental and necessary to the ownership, use and maintenance of those properties.  The locations identified in the OLT Policies include empty fields, cemeteries, certain residences and the Chancery Building, among other similar types of specifically identified locations.  The OLT Policies simply do not apply to Abuse Claims in which the abuse happened at a parish, a school, a private home and/or a car.  None of the Abuse Claims allege abuse that happened at any of the locations identified in the OLT Policies, an essential requirement of OLT coverage.   The OLT Policies do not respond to any of the claims alleging

---

[2] Court have found that "insurance neutrality" exists when a plan has no adverse effect on the rights, defenses or obligations of the debtor's insurers."  *See, e.g., In re Combustion Engineering Inc.*, 391 F.3d 190, 217-18 (3d Cir. 2004); *In re Pittsburgh Corning Corp.*, 417 B.R. 289, 315-16 (Bankr. W.D. Pa. 2006).  A plan that expressly preserves such rights, defenses or obligations for post-confirmation insurance coverage litigation in a nonbankruptcy forum will be deemed insurance neutral, and the unimpaired insurers will lack standing to object to the plan.  *See Combustion Engineering*, 391 F.3d at 218.

abuse during the OLT policy periods.  If the Court is inclined to grant the Disclosure Statement

Motion, the Debtor should be required to revise the Disclosure Statement to indicate the limited

OLT coverage the Alleged Policies provide, as further described below.

## II.    BACKGROUND

### A.    Insurance Policies

6.      As alleged by the Debtor, Travelers contracted with the Debtor to provide coverage

for three periods:

- The Alleged Coverage Period (1942 to 2/14/58).
- The Assumed OLT Coverage Period (2/14/58 to 2/14/67).
- The 67/70 Assumed Coverage Period (2/14/67 to 2/14/70).

7.      For the first period, the Debtor alleges that Travelers issued it eleven (11) policies

providing primary commercial general liability ("CGL") coverage in effect from 1942 to

February 14, 1958 (each an "Alleged Policy").  Travelers has found no evidence of any of the

Alleged Policies in its records.

8.      For the second coverage period, the Debtor has alleged it was insured by Travelers

under policies with three year policy periods between 1958 and 1967.  Neither the Diocese nor

Travelers have located complete copies of any of the Assumed OLT Policies.  Each Assumed OLT

Policy is styled "Owners, Landlords and Tenants Liability Policy" and provides insurance on form

C-2100 which provides in pertinent part as follows:

> Coverage A-Bodily Injury Liability – To pay on behalf of the Insured all sums
> which the insured shall become legally obligated to pay as damages because of
> bodily injury, sickness or disease … sustained by any person, caused by accident
> and ***arising out of the hazards hereinafter defined…***

(Emphasis added.) Each of these Assumed OLT Policies specifically identifies the "hazards" to

which that Policy's limited liability insurance applies, stating as follows:

> Definition of Hazard Division 1 – Premises-Operations…The ownership, maintenance or use of ***the premises,*** and all operations necessary or incidental thereto.

(emphasis added).  The covered designated premises identified in each of the Assumed OLT Policies include vacant lots, a cemetery, some single family dwellings and a set of buildings on East Onondaga Street identified as including the Chancery, a Catholic women's group and Catholic Charities.

9.       Regarding the third period, as is the case with the Assumed OLT Policies, neither the Diocese nor Travelers have been able to locate a complete copy of the 67/70 Assumed Policy. The documentation shows that the 67/70 Assumed Policy, if issued and in force, is also an OLT policy.

**B.       The Insurance Coverage Action**

10.       On January 15, 2021, the Debtor and over one hundred other related parties (the "Plaintiffs") filed an adversary proceeding against approximately 56 of their alleged insurers, including Travelers.  *See* Adversary Proceeding No. 21-50002-5-wak (Bankr. N.D.N.Y) (the "Adversary Proceeding" or "Adv. P.").  Through the Adversary Proceeding, the Plaintiffs are seeking to determine the availability of insurance coverage for Abuse Claims that Travelers and other named insurer-defendants may or may not have issued.

11.       On February 4, 2021, the Debtor filed a motion requesting that the Court refer to the Adversary Proceeding to mediation ("Mediation Motion").  Adv. P., Docket No. 3.  On March 5, 2021, while the Mediation Motion was pending, the Debtor and Travelers, along with certain other insurers, entered into a stipulation which stayed certain deadlines of the Adversary Proceeding.  Adv. P., Docket No. 21.

12.       On April 12, 2021, the Court granted the Mediation Motion, implementing a stay of "[a]ll deadlines and actions required by the rules or applicable law in connection with the

US_ACTIVE\125926813\V-4

Adversary Proceeding . . . ." (the "Mediation Stay").  Adv. P., Docket No. 59 at ¶ 10.

13.     On October 20, 2023, Travelers and Arrowood Indemnity Company (which has since been placed into voluntary liquidation in Delaware) filed a joint motion to terminate the Mediation Stay ("Motion to Terminate Stay") [Adv. P., Docket No. 141], which was joined by other insurers.  *See e.g.*, Adv. P., Docket No. 142 (LMI joinder) and Docket No. 163 (Interstate joinder).  The Court granted the Motion to Terminate Stay on January 5, 2024, which lifted the Mediation Stay.  Adv. P., Docket No. 170. The Court has directed that responsive pleadings be filed by February 20, 2024.

**C.     The Plan and Disclosure Statement**

14.     On December 6, 2023, the Debtor and the Official Committee of Unsecured Creditors (the "Committee") filed the Plan and Disclosure Statement.  On January 4, 2024, the Debtor filed the first plan supplement ("First Plan Supplement") [Docket No. 1604], and on January 9, 2024, the Debtor filed the second plan supplement ("Second Plan Supplement, together with the First Plan Supplement, the "Plan Supplement") [Docket No. 1613].

## III.     ARGUMENT

**A.     The Plan and Disclosure Statement are not Insurance Neutral.**

15.     As further described in the Other Insurer Objections, a review of the Plan and Disclosure Statement reveal that among other fatal issues, the Plan: (i) improperly seeks a finding of good faith as to the Allocation Protocol, which falls outside the Plan, (ii) seeks to assign non-debtor and Debtor Insurance Policy Claims to the Trust under both bankruptcy and state law, (iii) attempts to improperly assign Travelers' rights and defenses while simultaneously increasing potential insurer liability by making Distributions to unknown, invalid claims, and (iv) purports to strip Travelers' rights and defenses under the Plan and its terms while simultaneously preserving

7

all Travelers' obligations.  While the Disclosure Statement indicates that the Plan is "insurance neutral" and contains a purported "Insurance Neutrality" provision (*see* Disclosure Statement at Article IX(G)(2)), nothing about the actual mechanics of the Plan regarding insurers or their rights and obligations is neutral. Instead, there are several provisions of this Plan that fail the insurance neutrality test.  Travelers joins in the arguments set forth in the Other Insurer Objections on this issue.

16.     The Plan is unconfirmable for these reasons, and the reasons set forth in the Other Insurer Objections, which Travelers hereby joins.

**B.     The Alleged Policies Provide OLT, not CGL Coverage.**

17.     The documentation Travelers has located and been provided with indicates that (i) it is doubtful the Alleged Policies were actually ever issued to the Diocese, and (ii) the Alleged Policies do not provide coverage for Abuse Claims.  The Diocese must establish that each of the Alleged Policies are of a type of policy that provides the right kind of coverage for Abuse Claims. Here, however, the limited documentation for the applicable alleged policy years indicates that the Assumed OLT Policies do not provide CGL coverage, but rather provide limited liability OLT coverage, which does not apply to the Claims.

18.     OLT coverage is:

A very common form of liability insurance …which insures the owner, occupier, or operator of real property against liability incident to his ownership or use of the premises. Such insurance, the purpose of which is simply to protect against liability arising from the condition or use of the building as a building must be distinguished from insurance against liability arising from the nature of the enterprise or activity conducted therein. ***More simply stated, a building liability policy does not cover a liability arising from the insured's [business] activity in the building.***

*See generally* 11 Couch on Insurance 2d section 44:379 at 551–52 (1982) (emphasis added).

19.     None of the Claimants allege that they were abused at any of the premises identified in the Assumed OLT Policies.  Accordingly, none of the Assumed OLT Policies respond to any

8

of the Abuse Claims alleging abuse during the Assumed OLT Policy periods, even assuming being

abused at a designated premises is in and of itself sufficient to activate the coverage.  For all of

these reasons, it is Travelers' position that the Assumed OLT Policies do not respond to any of the

Claims.

**C.    The Disclosure Statement and Plan Should be Amended to Put Claimants on Notice that the Alleged Policies May Ultimately Not Provide Coverage for Abuse Claims.**

20.    The Disclosure Statement indicates that Insurance Policies issued by certain

Insurers may be implicated by Abuse Claims.  *See* Disclosure Statement at Article III(H).

However, as further described above, the Alleged Policies, if they exist at all, can only provide

coverage for OTL, not CGL, claims, and therefore do not provide coverage for Abuse Claims.  The

Disclosure Statement should be amended as follows:

> Travelers Insurance Company Limited, Travelers Casualty and Surety Company and Traveler's Indemnity Company ("Travelers") contends that the Diocese has not established the existence of any Travelers' Insurance Policy that provides coverage for commercial general liability claims that may cover Abuse Claims.  If such Travelers' policies exist, based on the available documentation the policies Travelers issued or is alleged to have issued provided designated premises/owners, landlords and tenants coverage, and would not provide coverage for Abuse Claims. None of the Claimants allege they were abused at any of the premises identified in alleged Travelers' Insurance Policies.

Absent the inclusion of the corrected wording above, the Disclosure Statement should not be

approved.

## IV.    JOINDER AND RESERVATION OF RIGHTS

21.    Travelers incorporates by reference and hereby joins in all relevant arguments and

requests set forth in the Other Insurer Objections.

22.    Travelers reserves its rights to supplement this Objection and participate in the

hearing to consider the Disclosure Statement.

US_ACTIVE\125926813\V-4

## V.      <u>**CONCLUSION**</u>

WHEREFORE, for the reasons set forth above and in the Other Insurer Objections, the

Court should deny approval of the Disclosure Statement.

Dated: January 30, 2024
New York, New York

Respectfully submitted,

By: */s/ Lauren Macksoud*
Lauren Macksoud
**DENTONS US LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-5347
Facsimile:  (212) 768-6800
E-mail: lauren.macksoud@dentons.com

*Attorney for Travelers Insurance Company
Limited, Travelers Casualty and Surety
Company and Traveler's Indemnity
Company*

11