| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>NORTHERN DISTRICT OF NEW YORK | Hearing Date: 2/6/2024<br>Hearing Time: 12:00 p.m<br>Location: Syracuse, NY |
| In re:<br><br>THE ROMAN CATHOLIC DIOCESE OF<br>SYRACUSE, NEW YORK,<br><br>          Debtor. | Case No. 20-30663-5-wak<br><br>Chapter 11<br><br>Hon. Wendy A. Kinsella |

**OMNIBUS REPLY OF THE PARISH STEERING COMMITTEE
TO THE OBJECTIONS BY INSURERS AND THE UNITED STATES
<u>TRUSTEE TO THE DISCLOSURE STATEMENT</u>**

The Parish Steering Committee ("Parish Committee"),[1] by its undersigned attorneys, Woods Oviatt Gilman LLP, Timothy P. Lyster, Esq., and Elsaesser Anderson Chtd., Ford Elsaesser, Esq., submit this omnibus reply in support of the Diocese and Official Committee of Unsecured Creditors' disclosure statement[2] and in response to the objections filed by the United States Trustee ("UST"), London Market Insurers ("LMI"), Interstate Fire & Casualty Company ("Interstate"), Travelers Insurance Company Limited ("Travelers"), as well as Fireman's Fund Insurance Company and National Surety Company, Travelers, Westchester Fire Insurance Company, and Ace Property and Casualty Insurance (collectively, the "Parish Insurers").[3]

   1.  The Parish Committee submits this reply, primarily in response to the objection of the Parish Insurers and the UST, concerning the assignment of the parishes' insurance rights, and

---

[1] The Parish Committee includes all of the parishes located in the Diocese along with certain other Diocese-affiliated entities.

[2] Disclosure Statement in Support of the Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York dated December 6, 2023 (Dkt. No. 1566), along with the Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York, dated December 6, 2023 (Dkt. No. 1565)

[3] The objections filed on January 30, 2024 of the UST (Dkt. No. 1636); London Market Insurers; Interstate Fire & Casualty Company (Dkt. No. 1637); Fireman's Fund Insurance Company and National Surety Company (Dkt. No. 1639); Travelers Insurance Company Limited, Travelers Casualty and Surety Company and Traveler's Indemnity Company (Dkt. No. 1640); and the Parish Insurers (Dkt. No. 1641)

{9469169: }

1

the proposed third-party release of the parishes and other Diocese affiliated-entities, under the plan.

2.      Over three and a half years into this bankruptcy case – with no agreement with the objecting insurers for their payment of monies to the survivors – the insurers seek to bury the Court in paper, along with the survivor's chance to receive an initial payment under the Diocese and survivor's joint plan.  The insurer's many arguments fail because at bottom, the proposed assignment does not violate the Bankruptcy Code and is permitted under New York law, as described herein.  Also, the UST's objections concerning third-party releases are misplaced, but in any event, should be addressed at the plan confirmation hearing, and not delay approval of the disclosure statement.

I.      **The Plan is Confirmable with Respect to the Assignment of Parish Insurance Rights**

3.      The insurers, including the Parish Insurers misinterpret the plan and applicable law with respect to the assignment of parish insurance rights.  The plan is confirmable, and the disclosure statement should be approved.

4.      The Parish Insurers incorrectly begin with the premise that the plan "purports to assign non-debtor policies." Parish Insurers Obj., p. 8, ¶2.

5.      The plan proposes an assignment, as applicable, of the parishes' economic claims for coverage under the policies – not the policies wholesale.  This assignment of claims is actually acknowledged by the Parish Insurers in its separate citation to the actual provisions of the plan, namely the parishes "'assign[ment] to the Trust…[of] the [Non-Debtor Parishes'] rights, if any, to all **Insurance Claims and recoveries on account of such Insurance Claims** against the Non-

Settling Insurers..and **shall not be construed[]…as an assignment of the insurance policies**.'" (emphasis added). Parish Insurer Obj., p. 3, ¶2 (citing the Plan, §§8.2.4(a)).

6. The insurers cite heavily to *In re Diocese of Camden*, 653 B.R. 309 (Bankr. Dist. N.J. 2023), in asserting, wrongly, that the plan is unconfirmable.

7. However, the insurers sidestep the actual finding in *Camden* – that an assignment under the plan of the parishes' claims for coverage "do not violate the Bankruptcy Code, and therefore do not make the Plan unconfirmable." *Diocese of Camden*, 653 B.R. at 352.

8. The plan here is likewise confirmable. The remainder of the insurers' objections are misdirected and do not render the Plan unconfirmable.

9. The parishes do not seek to extend the Bankruptcy Court's jurisdictional boundary described in *Diocese of Camden* concerning property of the estate. *See Diocese of Camden*, 653 B.R. at 352. But, as in *Diocese of Camden*, the assignment provided under the plan is proper under The Bankruptcy Code, and state law otherwise governs, "given the debtor[']s remaining obligations under the policies." 653 B.R. at 351.

10. To be clear, such a transfer of rights to recover under an insurance policy, after the loss has occurred, is permissible under New York State law, even when the policy includes an anti-assignment clause. *See Arrowood Indem. Co. v. Atlantic Mut. Ins. Co.*, 948 N.Y.S.2d 581, 582 (1st Dep't 2012)(quoting *Globecon Grp. LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006)(applying New York law). Under New York law, a loss occurs when "the potential liabilities in question arose," or stated differently, when the injury at issue occurred. *Arrowood*, 948 N.Y.S.2d at 695; *see also In re Viking Pump, Inc.* 148 A.3d at 652.

11. Here, the proposed assignment of rights to recover on claims for coverage for abuse claims which happened decades ago, is permitted under settled New York law.

12. The Trust[4] will only stand in the shoes of the Diocese and Participating Parties, such that the insurers will maintain all of their rights and obligations under the respective policies. *Intelligent Digital Sys. LLC v. Beazley Ins. Co., Inc.,* 207 F. Supp. 3d 242, 247 (E.D.N.Y 2016); *Arrowood*, 948 N.Y.S.2d at 583. This well-settled construct does not modify the insurance policy terms.

13. The disclosure statement and plan provide for the transfer of the Diocese and parishes' interests in claims under the policies, as appropriate under New York law. The objections of the insurers do not alter this controlling premise.

14. The plan does not improperly transfer ownership of the policies or any obligations the parishes may have under the policies. Such a transfer does not violate the Bankruptcy Code, and the propriety of the transfer, with consideration of its impact on the availability of coverage, can be left for subsequent determination under state law. *See Diocese of Camden*, 653 B.R. at 351.

15. Also, for example, the insured's continuing obligation/duty to cooperate, as raised by the insurers, would be preserved as provided in the plan, and the insurers have pointed to no specific provision to the contrary. Even if the Trust assumed the duty to cooperate, which is not what the plan provides, the insurers would retain their rights to challenge the Trust's cooperation in connection with asserting future defenses to coverage. *See Diocese of Camden*, 653 B.R. at 651.

16. Indeed, under the plan, the insurer's rights and defenses with respect to claims for coverage are expressly preserved.

17. The plan expressly provides that nothing in the plan or confirmation order "shall affect, impair, or prejudice the rights and defenses of any Non-Settling Insurer against the Diocese

---

[4] Capitalized terms used herein and not otherwise defined have the meaning ascribed to them in the Disclosure Statement and Plan.

{9469169: }

or any other Participating Party under any Non Settling Insurer Policies, including any factual or legal defenses to any claim for insurance."[5]

18. Accordingly, the assignment, which as stated herein, comports with New York law and preserves the insurers' rights, is "insurance neutral." Notably, the Parish Insurers have failed to identify any actual policy language supporting their broad, but passing references, that the Plan "modifies" their insurance contracts.

19. The Parish Insurers' objections to the adequacy of disclosure should also be disregarded. The proposed assignment is proper, and there is sufficient disclosure with respect to the third-party releases.

## II.  The UST's Objections are Misdirected and Premature

20. The disclosure statement contains "adequate information" with respect to third-party releases, and the UST otherwise raises premature plan confirmation objections, which should not be addressed at this time.

21. Based upon the Second Circuit's recent decision, *In re Purdue Pharma L.P.*, 69 F.4th 45, 77-79 (2d Cir. 2023), non-consensual third-party releases are permitted in the appropriate circumstances. The UST's policy preference to the contrary does not change this controlling law.

22. The Diocese and parishes acknowledge the factors justifying such a third-party release of the Participating Parties under *Purdue Pharma*, and intend to meet these criteria at the appropriate time, at plan confirmation.

23. Similarly, additional information on the Participating Parties' contributions will be provided in connection with the plan confirmation hearing.

---

[5] Plan, Article 9 (G)(2)(i).

{9469169: }

24. The UST asserts that there "has been no proof that any of the proposed released parties have or will contribute substantial assets to the reorganization." However, again, the *proof* will be provided, as required, at the confirmation hearing. Also, the UST completely ignores the fact that the parishes and other Participating Parties' are all assigning valuable claims for insurance coverage, including claims for coverage under the parishes' policies, to the Trust for the benefit of claimants. This contribution is of course, in addition to the substantial monetary contribution of the parishes, as part of the $100 million dollar Catholic Family Contribution. It is anticipated that the parishes, along with the other Catholic entities that are related to the Diocese, will contribute $50 million dollars of the $100 million dollar total.

25. What is lost in the recycled recitations of law from *Purdue Pharma* is that, for <u>this Diocese</u>, and <u>these parishes</u>, in <u>Syracuse, New York</u>, these amounts are an extraordinary stretch, and it is respectfully submitted that the Diocese and parishes will be able to show a substantial contribution and the other factors warranting third-party releases at the confirmation hearing.

26. There is no legal authority for the UST's assertion that the individual amount to be paid by each Participating Party is required to be included in the disclosure statement. In fact, this was rejected in *The Diocese of Camden*, where the Bankruptcy Court held that a reference to the total parish contribution was adequate for approval of a disclosure statement. Specifically, the Court stated:

> The Tort Committee also argues the Disclosure Statement should provide an analysis of the contribution from each parish so survivors can analyze if each parish's contribution is substantial on its own. However, this is a confirmation issue and what the – what the disclosure statement currently provides, which is a total of $10 million, is adequate for disclosure purposes.
>
> [*In re Diocese of Camden, New Jersey*, Case No. 20-21257-JNP (Bankr. D.N.J. Feb. 25, 2022)(Dkt. 1216, at 13:22; Bankruptcy

{9469169: }

6

      Court's Ruling of the Adequacy of the Second Amended Disclosure Statement].

27. The UST's assertion also completely misses the actual reality that, because these amounts being paid are coming from numerous entities, and are a significant strain, they are still being internally finalized and funded, as is typical in Diocesan cases.

28. Accordingly, the UST's objections are premature and should be addressed at the hearing on plan confirmation. It is respectfully submitted that it is not the UST's role to adjudge whether the parishes' contributions toward a settlement of $100 million dollars <u>which the survivors have agreed to</u>, is sufficient to justify third party releases. That determination should be made by survivors and the Court in light of the *Purdue Pharma* factors set out by the Second Circuit. It is time to let the survivors vote on a plan, and at least be paid in part from the initial Trust funding coming from the Diocese and parishes.

29. The Parish Committee reserves its rights to supplement this reply, and its response in further support of the Diocese's disclosure statement and plan.

30. Based on the foregoing, along with the reply submitted by the Diocese, the Parish Committee respectfully requests that the Diocese's disclosure statement be approved.

Dated: February 2, 2024

                                    Respectfully submitted,

                                    WOODS OVIATT GILMAN LLP

                        By:    /s/ Timothy P. Lyster
                                  Timothy P. Lyster, Esq.
                                  1900 Bausch & Lomb Place
                                  Rochester, New York 14604
                                  585.987.2894
                                  tlyster@woodsoviatt.com

ELSAESSER ANDERSON, CHTD.
J. Ford Elsaesser, Esq.
320 East Neider Avenue, Suite 102
Coeur d'Alene, Idaho 83815
(208) 667-2900
firm@eaidaho.com