So Ordered.

Signed this 8 day of February, 2024.



_____

   Wendy A. Kinsella

  United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| | Case No. 20-30663 |
| The Roman Catholic Diocese of Syracuse, New York, | Chapter 11 |
| Debtor. | |

**ORDER DENYING APPROVAL OF THE DISCLOSURE STATEMENT IN SUPPORT OF JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE ROMAN CATHOLIC DIOCESE OF SYRACUSE, NEW YORK DATED DECEMBER 6, 2023**

On February 6, 2024 the Court held a hearing (the "Disclosure Statement Hearing") on Debtor's *Motion for Entry of an Order (I) Approving Disclosure Statement; (II) Approving Solicitation Packages and Distribution Procedures; (III) Approving the Forms of Ballots and Establishing Procedures for Voting on Joint Plan; (IV) Approving the Form, Manner, and Scope of Confirmation Notices; (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Joint Amended Plan; and (VI) Granting Related Relief* (the "Motion" at Doc. 1626) and Debtor's *Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York Dated*

1

*December 6, 2023* (the "Disclosure Statement" at Doc. 1566) to address the adequacy of the Disclosure Statement which relates to the *Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York Dated December 6, 2023* (the "Plan" at Doc. 1565), together with the Child Protection Protocols (Doc. 1567), the Plan Supplement (Doc. 1604) and the Second Plan Supplement (Doc. 1613) (collectively, the "Ancillary Documents"), proposed jointly by The Roman Catholic Diocese of Syracuse, New York (the "Debtor") and the Official Committee of Unsecured Creditors (the "Committee").  The Ancillary Documents include: (i) Exhibit 1, the proposed Allocation Protocols (the "Allocation Protocols"), and (ii) Exhibit 7, the proposed Litigation Claimant Agreement (the "Litigation Claimant Agreement").  The Motion also included a request for approval of: (i) the solicitation package (the "Solicitation Package")[1]; (ii) distribution procedures ("Distribution Procedures"); and (iii) the forms of ballots (the "Ballots").

Five objections and one sur-reply were filed to the Motion and Disclosure Statement from the following insurers: (i) Certain Underwriters at Lloyd's, London, and London Market Companies (the "LMI Objection" at Doc. 1637); (ii) Interstate Fire & Casualty Company, Fireman's Fund Insurance Company, and National Surety Corporation (the "Interstate Objection" at Doc. 1639); (iii) Travelers Insurance Company Limited, Travelers Casualty and Surety Company and Traveler's Indemnity Company (the "Travelers Objection" at Doc. 1640); (iv) Westchester Fire Insurance Company and Ace Property and Casualty Insurance (the "Westchester Objection" at Doc. 1641)[2]; and (v) Catholic Mutual Relief Society of America (the "Catholic Mutual Objection" at Doc. 1653) (collectively, the "Insurers' Objections").  In addition to the

---

[1] The Motion stated that the Solicitation Package would include: (i) the Disclosure Statement Order (without exhibits); (ii) the appropriate ballot to accept or reject the Plan with detailed voting instructions and a pre-addressed, postage prepaid return envelope; (ii) the Disclosure Statement and Plan; (iv) a Copy of the Confirmation Hearing Notice; and (v) such other material as the Court may direct.

[2] Westchester filed a Sur-Reply in further support of its Objection at Doc. 1649.

2

Insurers' Objections, the United States Trustee (the "UST") filed an Omnibus Objection (the "UST Objection" at Doc. 1636) (collectively with the Insurers' Objections, the "Objections").  Debtor and the Committee each filed replies to the Objections (Docs. 1644 and 1645).

At the outset of the Disclosure Statement Hearing, the Court heard arguments on the Insurers' standing to raise Objections to the Disclosure Statement.  The Court concluded that it will consider each objection on an issue-by-issue basis and only to the extent the objection relates to clarification or disclosure of treatment of the policies, or to confirm the obligations of Debtor or Participating Parties.  At this stage, the Court will not consider objections to the Disclosure Statement that do not directly impact the legal interests of the Insurers unless the same objection is raised by the UST or the Court.  The Court will reassess the Insurers' standing to raise objections at the confirmation hearing.  *See In re Diocese of Camden*, No. 20-21257, 2022 Bankr. LEXIS 2244, at *11 (Bankr. D.N.J. Aug. 12, 2022) (citation omitted) (holding "the question [of standing] is simply whether [the Insurers] have legally protected interests that could be affected by the [Plan]").

The Court then heard extensive arguments on the substance of the Objections, during which Debtor and the Committee indicated a willingness to add certain provisions to the Disclosure Statement to address several of the issues raised.  At the conclusion of the Disclosure Statement Hearing, the Court requested the Insurers and the UST propose language to Debtor to resolve their specific concerns, with a reservation of rights regarding objections that should be more appropriately addressed at confirmation.  The Court directed the parties to meet and confer on such suggested language, with Debtor to file a redlined version of an amended Disclosure Statement including any agreed upon changes.  If some issues remain unresolved, the Court informed the Insurers and the UST that they may file supplemental objections with their proposed additions to

address them. The goal is to allow the parties the opportunity to narrow the outstanding disclosure disputes before returning to the Court for further argument.

In declining to approve the Disclosure Statement and Solicitation Procedures, the Court raised its own issues and provided a list of deficiencies that must be addressed before the adequate information requirements of 11 U.S.C. § 1125 are satisfied. Many of this Court's concerns were shared by the Honorable Martin Glenn when he held: "As a guiding principle, the Disclosure Statement should provide in easy-to-digest terms what rights an Abuse Claimant possesses under the Plan as well as what an Abuse Claimant can expect in terms of recovery and distribution. The Court believes that such information would allow Abuse Claimants to make an informed assessment how they may fare if they pursued their claims outside of the bankruptcy system and, therefore whether they would vote in favor of or against the Plan." *In re The Roman Catholic Diocese of Rockville Center*, *New York* Case No. 20-12345, Doc. 2828 p. 3 (Bankr. S.D.N.Y. Jan. 18, 2024). In addition, "Abuse Claimants should be not expected to navigate multiple documents and cobble together bits and pieces of information to ascertain what rights they may or may not possess." *Id*. at pp. 4-5.

Accordingly, the Court directed Debtor to provide an Executive Summary of the Plan, including, at a minimum, a plain English description of the treatment of claims and timing of distributions. The Court also required a plain English explanation of the release and exculpation provisions, and an acknowledgement that third party releases, if approved, would be subject to District Court *de novo* review, delaying distributions under the Plan.

As the Court noted at the Disclosure Statement Hearing, other deficiencies in the Disclosure Statement included a lack of information on: the impairment of Key Bank, whether Self Insurance Retention funds were to be held in the Trust Reserve (as defined in the Plan), the

treatment of duplicate or fraudulent claims, the treatment of potential abuse claims that may have occurred post-petition, and a disclosure of any connections that the proposed Trustee and the proposed Survivor Claims Reviewer have with the professionals and parties in interest in this case. In addition, a final unredacted version of the Child Protection Protocols must be filed.

With respect to the Solicitation Procedures and Ballots, the Class 5 Ballot must be revised to reflect that the Abuse Claimant information will be kept strictly confidential consistent with the Confidentiality Protocols employed in this case.  The Publication Notice of the Confirmation Hearing (the "Publication Notice") and its dissemination must be bolstered if Debtor hopes to satisfy the *Purdue* requirements for notice and opportunity to be heard in light of the third-party releases being sought and the issues raised in the UST Objection.  The need to ensure sufficient notice and opportunity to be heard is magnified by the extensive number of potentially released "Participating Parties" which were identified for the first time on a list filed the day before the Disclosure Statement Hearing.

While recognizing they may be more appropriately addressed in later proceedings, the Court raised other concerns that need to be resolved if this case proceeds to confirmation, which are as follows:  (1) the Plan documents must provide for the appointment of an independent fee reviewer or establish a process for the Court to review fees of counsel for Abuse Claimants for reasonableness under the New York Rules of Professional Conduct; (2) the Court shall retain jurisdiction and will not approve automatic irrevocable releases for Debtor and Participating Parties if the DOS Entities' Post Effective Date Cost Reserve is depleted to $500,000; (3) the Allocation Protocol must be revised to remove additional Claimant Involvement points for services rendered by the members of the Official Committee of Unsecured Creditors.  The Court recognizes, and is grateful for, the tremendous contribution of those individuals, but compensation

for those services is not authorized by the Bankruptcy Code; (4) the $750 Claims Reconsideration Fee should be reduced to $425, and there should be a process to allow a reconsideration fee waiver request based on financial circumstances. The time to seek reconsideration should be expanded to 30 days from 15 days; (5) the Litigation Claimant Agreement should be revised to remove Trustee's "unfettered" discretion if a Litigation Claimant wants to discontinue and rescind a Litigation Claimant Election; and (6) it is anticipated that findings of good faith will be limited only to the Plan, not Plan Supplements or Ancillary Documents.

In light of the above, the Court declines to approve the Disclosure Statement and Solicitation Procedures in their current form. The parties are directed to meet and confer, and propose language to Debtor that address the concerns raised in the Objections. As noted above, the Insurers' additions should be limited to address issues that impact their legal interests or the rights and obligations of the parties under the policies. Debtor is directed file a redlined Disclosure Statement and any related documents that are amended by March 5, 2024. Any Supplemental Objections are due by March 22, 2024, with the Court recognizing all objections to confirmation of the Plan are preserved. The Disclosure Statement Hearing is adjourned to April 2, 2024 at 12:00 p.m. and can be attended either in person at the United States Bankruptcy Court, United States Courthouse and Federal Building, 100 South Clinton Street, 2nd Floor, Syracuse New York, or can be accessed telephonically by dialing (888) 398-2342 and entering access code: 3187406#.

###