So Ordered.

Signed this 9 day of February, 2024.



_____

Wendy A. Kinsella

United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

The Roman Catholic Diocese of Syracuse,
New York,

        Debtor.

Case No. 20-30663

Chapter 11

### MEMORANDUM-DECISION AND ORDER DENYING MOTION TO DEEM LATE CLAIM AS TIMELY FILED WITHOUT PREJUDICE

S.B. ("Movant"), a sexual abuse survivor and unsecured creditor in this case, filed a Motion to Deem Late Claim to be Timely Filed (the "Motion" at Doc. 1409), seeking an order of the Court pursuant to Rule 9006(b)(1)[1] to permit his late proof of claim to be designated as timely.[2] The

---

[1] All statutory references to the "Bankruptcy Code" or "Code" are to 11 U.S.C. § 101 et seq., and all references to "the Rules" are to the Federal Rules of Bankruptcy Procedure, unless otherwise noted.

[2] The record consists of Motion to Deem Late Claim to be Timely Filed (the "Motion" at Doc. 1409), including the Affidavit of Meredith Reilly (the "Reilly Aff." at Doc. 1409-1); The Roman Catholic Diocese of Syracuse, New York Objection to Motion to Deem Claim Timely Filed (the "Diocese Objection" at Doc. 1462); The Official Committee of Unsecured Creditors' Limited Response to Motion to Deem Late Claim to be Timely Filed ("Committee Response" at Doc. 1465); and London Market Insurers' Opposition to the Motion to Deem Late Claim to be Timely Filed ("LMI Objection" at Doc. 1468). The Court takes judicial notice of other filings in the bankruptcy case as referenced throughout this Order.

1

claim was filed on August 18, 2023 (the "Late Claim"), nearly two and one-half years after the April 15, 2021 Bar Date. S.B. states he was only able to disclose the abuse he suffered as a child when he realized he was a victim in October 2022 after the Bar Date has passed. The Roman Catholic Diocese of Syracuse, New York ("Debtor") and Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies ("LMI") objected to the relief requested in the Motion on the grounds that Movant failed to demonstrate excusable neglect. The Official Committee of Unsecured Creditors (the "Committee") filed a Limited Response to the Motion.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

On September 21, 2020, Debtor filed a Motion for Entry of an Order Establishing a Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof that sought to set a deadline of March 1, 2021, for creditors to file proofs of claim in this case (the "Bar Date Motion" at Doc. 118). The Committee opposed the Bar Date Motion, instead seeking to set August 14, 2021, as the date to be coterminous with New York's Child Victims' Act deadline (the "CVA Deadline") for commencing a lawsuit for previously time barred childhood sexual abuse claims (Doc. 150). On November 6, 2020, this Court entered Bar Date Order Establishing April 15, 2021, as the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof (the "Bar Date Order" at Doc. 214). The Court coupled the earlier April 15, 2021 deadline ("Bar Date") with a notice protocol intended to address due process concerns and allow creditors to timely file their claims.

In the past, with Debtor's and the Committee's support, the Court entered three orders permitting survivor claimants to have their claims deemed timely, even though they were filed after the Bar Date because the claims were filed before the expiration of the CVA Deadline (*See* Docs. 823, 824 and 831). This Court also entered a Memorandum, Decision and Order (Doc. 842) finding a sexual abuse survivor, L.M. had met his/her burden of demonstrating 'excusable neglect' and allowed the late claim as timely because the claimant had commenced an action against Debtor in New York State Supreme Court prior to the expiration of the CVA Deadline. While the legal analysis is the same, the record in this case is not sufficient to support the same conclusion. As a result, the Court denies the Motion without prejudice.

**The Current Motion**

The allegations in the Motion detail horrendous abuse and S.B.'s repression of those memories. The Motion states that S.B. "was not ready, having just disclosed the fact he was a victim of Clergy abuse, and having just begun therapy, to become involved in litigation related to the same." (Motion at p. 1-2.) S.B.'s licensed mental health counselor, Meredith Reilly, provided a sworn affidavit stating "it [was her] professional opinion that S.B. was not capable of disclosing the extent of his abuse prior to what [she] understand[s] to be the claims bar date." (Reilly Aff. at ¶ 11). The Reilly Affidavit states that certain events in 2022 triggered S.B.'s memories of the child sexual abuse, and it was not until October 2022 that S.B. "fully understood the nature and extent of the abuse he had suffered many years ago as a child." *Id*.

**DISCUSSION**

I. **Bar Dates are Critically Important to the Reorganization Process**

Rule 3003(c) provides that a court shall fix a date by which proofs of claim must be filed in a Chapter 11 case, commonly referred to as a bar date. The United States Court of Appeals for the Second Circuit (the "Second Circuit") has recognized that such deadlines have an "essential function" in bankruptcy proceedings. *See In re Enron Corp.*, 419 F.3d 115, 127 (2d Cir. 2005). Established time limits for claims "serve the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization." *In re Hooker Invs., Inc., 937 F.2d 833, 840 (2d Cir. 1991).* As such, it is "akin to a statute of limitations, and must be strictly observed." *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y 1995).

II. **The *Pioneer* Excusable Neglect Analysis**

Although bar dates play a critical role in bankruptcy proceedings, there may be limited circumstances in which a court will permit a party to file a late proof of claim and have it deemed timely. Rule 3003(c)(3) permits a court "for cause shown" to extend the time within which proofs of claim or interest may be filed. The "cause" standard of Rule 3003 incorporates the excusable neglect standard of Rule 9006, the general rule governing the computation, enlargement, and reduction of periods of time prescribed in other bankruptcy rules. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 394 (1993).

Rule 9006(b)(1) provides:

> when an act is required or allowed to be done at or within a specified period . . . by order of the court, the court for cause shown may at any time in its discretion . . . on motion made after

4

the expiration of the specified period permit the act to be done **where the failure to act was the result of excusable neglect.**

(emphasis added).

The United States Supreme Court's precedential holding in *Pioneer* governs the excusable neglect analysis. "Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable', we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. The circumstances considered in *Pioneer* included four factors that courts now routinely utilize when reviewing excusable neglect: (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith (collectively, the "*Pioneer* Factors"). *Id.* The burden to show that the *Pioneer* Factors have been met falls on the claimant. *See In re XO Commc'ns, Inc.*, 301 B.R. 782, 795 (Bankr. S.D.N.Y. 2004).

### A. Danger of Prejudice to Debtor

The first element in the *Pioneer* inquiry considers the danger of prejudice to Debtor. Movant asserts there is "no risk of prejudice to [D]ebtor or [D]ebtor's estate" because Debtor and the Survivors have already reached an agreement. Debtor states the prejudice imposed upon it and the administration of its case is significant, highlighting the potential danger of opening the "floodgates to similarly situated claimants."

"The prejudice factor calls for consideration of the overall negative effect, if any, on a debtor and its estate resulting from allowing a late claim." *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120 (Bankr. S.D.NY. 2010). In addition, "[p]rejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *In re Enron*

5

*Corp.*, 419 F.3d at 131 (citing *In re O'Brien Envtl. Energy Inc.*, 188 F.3d 116, 127 (3d Cir. 1999)). In the instant proceeding, any hypothetical harm that could result from a potential barrage of survivors' late claims is somewhat minimized by the statutory and common law safeguards of Rule 9006(b)(1) and the *Pioneer* Factors. Moreover, history in this case has shown there are not many survivors who are waiting on the sidelines to file their late claims and disrupt this case. The Court does not believe the allowance of this claim would cause any material prejudice to Debtor. As a result, in balancing Debtor's and LMI's claim of prejudice with the asserted harm to Movant by not allowing the Late Claim, that scale favors Movant.

### B. Length of Delay and its Potential Impact on Judicial Proceedings

When considering the length of delay and potential impact on judicial proceedings, there is no specific threshold at what point the lateness of a claim is "substantial." *In re Enron,* 419 F.3d at 128. It is undisputed that Movant's claim was filed more than two years after the Bar Date and nearly two years after the CVA Deadline.

The Second Circuit dictated that "[t]he lateness of a claim must be considered in the context of the proceedings as a whole." *Id*. "The most important issue for factor two is whether the delay may disrupt the judicial administration of the case." *In re Roman Catholic Diocese of Rockville Ctr.*, 2023 Bankr. LEXIS 1747, at * 23 (Bankr. S.D.N.Y. July 12, 2023).

Given the current posture of this case, the Court finds that the more than two-year delay is quite substantial. However, neither Debtor nor LMI have identified a disruption that would interfere with the judicial administration of the case by allowing the Late Claim as timely. The balance of the second *Pioneer* factor weighs in favor of allowing the Late Claim.

### C. Whether Movant Acted in Good Faith

Jumping to the fourth inquiry under the *Pioneer* analysis, the Court must examine the good faith and intentions of Movant. Based on the record before it and the nature of the trauma associated with Movant's sexual abuse claim, the Court and all parties accept Movant's statement that he has acted in good faith as genuine. Accordingly, the fourth *Pioneer* Factor supports a finding of excusable neglect.

### D. Reason for the Delay, Including Whether it was Within Reasonable Control of Movant

When considering the *Pioneer* Factors, the reason for the delay has been cited as the most critical inquiry. *See In re Enron Corp.*, 419 F.3d at 123. A creditor seeking to file a late claim "must explain the circumstances surrounding the delay in order to supply the Court with sufficient context to fully and adequately address the reason for the delay factor and the ultimate determination of whether equities support the conclusion of excusable neglect." *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) (citing *Pioneer*, 507 U.S. at 388). The Second Circuit takes a "hard line" approach in analyzing the third factor. *Roman Catholic Diocese of Rockville Ctr.*, 2023 Bankr. LEXIS at *26 (citing *In re Enron Corp.*, 419 F.3d 115, 122 (2d Cir. 2005).

In the instant matter, Movant did not adequately explain the extended delay that prevented him from filing a claim <u>after</u> he acknowledged his abuse in October 2022. As stated in the Reilly Affidavit, as of October 2022, Movant was able to disclose the abuse he sustained; however, the Late Claim was not filed until August 18, 2023. The Motion does not provide a legally sufficient explanation for the more than 10-month delay between the disclosure of the abuse and filing the Late Claim. Notably, there is no assertion that Movant was unaware of the Bar Date. In the

7

absence of additional evidence supporting the reason for the delay, the Court finds this factor warrants the denial of the Motion without prejudice to renew.

The alleged abuse in this case is horrific, but the Bankruptcy Code and case law set a high bar for allowing late claims. Here, S.B. did not provide a legally sufficient explanation or evidence regarding the 10-month delay to allow a finding of excusable neglect. With this *Pioneer* factor being the most critical, the Court cannot allow the Late Claim at this time.

## CONCLUSION

In reaching its decision, the Court is not opining on whether the alleged repression of S.B.'s memories of abuse is sufficient to toll any statute of limitations under state or other applicable law. The Court acknowledges the substantial argument on the record wherein counsel for S.B. argued that his repressed memories rendered him unable to file a claim timely. That assertion was not fully developed in the Motion and the Reilly Affidavit with respect to the 10-month delay.

Therefore, it is hereby

ORDERED, that the Motion is denied without prejudice.[3]

### ###

---

[3] At the hearing, the Court encouraged S.B. and his counsel to review Section 5.2 of the Survivor Allocation Protocols filed in support of the Plan. While not approved, they provide to the extent a late filed abuse claimant was under a disability or another condition recognized by New York law or other applicable law suspending the running of the CVA deadline, such abuse claimant shall be entitled to a monetary distribution equal to their pro rata share of total points assigned to such claim. In the alternative, there appears to be a mechanism for late claimants to be paid under the Plan, although at a reduced amount. The Court sincerely hopes that the available processes will ensure that S.B. receives his rightful share of compensation with the other survivors as another step in his life-long healing journey.