**IN THE UNITED STATES BANKRUPTCY COURT**
**THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>THE ROMAN CATHOLIC DIOCESE OF<br>SYRACUSE, NEW YORK,<br><br>Debtor. | Case No. 20-30663-5-wak<br><br>Chapter 11<br><br>Hon. Wendy A. Kinsella<br><br><br>Hearing Date:  March 7, 2024<br>Hearing Time:  1:00 p.m. Eastern Time<br>Location:  James M. Hanley U.S. Courthouse<br>and Federal Building, 100 South Clinton Street,<br>Syracuse, NY 13261 |

**WESTCHESTER FIRE INSURANCE COMPANY'S**
**MOTION TO COMPEL "PARISH STEERING COMMITTEE" AND ITS LAW FIRMS**
**TO MAKE MANDATORY RULE 2019 DISCLOSURES**

**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI, ESQ.
REDWAN SALEH, ESQ.
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Email: tschiavoni@omm.com
          rsaleh@omm.com

**CLYDE & CO US LLP**
MARIANNE MAY, ESQ.
200 Campus Drive, Suite 300
Florham Park, NJ 07932
Telephone: (973) 210-6700
Email: marianne.may@clydeco.us

*Counsel for Westchester Fire Insurance*
*Company*

**TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | PRELIMINARY STATEMENT ................................................................. 1 | |
| II. | JURISDICTION ...................................................................................... 4 | |
| III. | RELEVANT BACKGROUND ................................................................. 4 | |
| | A. | The Parish Steering Committee Has Made Appearances, Filed an Adversary Complaint and Substantive Briefs, and Entered Stipulations, Yet Continuously Failed to Comply with Bankruptcy Rule 2019......................... 4 |
| | B. | The Debtor's Monthly Operating Reports Indicate that "Parish Legal Representation" Paid by the Debtor.......................................................... 6 |
| | C. | The Parish Steering Committee and Its Law Firms Suggest They Speak for All Parishes and All Diocese Affiliated Entities Without Identifying Them. ........................................................................................................ 7 |
| | D. | The Parish Steering Committee's Failure to Respond to Westchester Fire's Request for Cooperation from Individual Parishes................................. 9 |
| | E. | The Parish Steering Committee's and Its Law Firms' Failure to Comply with Rule 2019. .......................................................................................... 10 |
| IV. | REQUESTED RELIEF .......................................................................... 11 | |
| V. | BASIS FOR REQUESTED RELIEF...................................................... 11 | |
| | A. | Bankruptcy Rule 2019 Requires Broad Disclosures, Including Pertinent Facts and Circumstances of "Every Group or Committee" and "Every Entity" Being Represented.................................................................... 11 |
| | B. | Rule 2019 Disclosures are Necessary to Guard Against Conflicts Between Fundamentally Different Entities, and to Ensure all Parties are Fully Informed of Pertinent Facts and Circumstances Regarding the Interested Parties such as an *Ad Hoc* Committee in this Chapter 11 Case. ........................ 15 |
| | C. | Courts, Including Courts in Other Diocesan Cases, Have Ordered Similar Relief Sought Here—This Court Should do so as Well. ................................. 17 |
| | D. | Westchester Fire has a Direct, Material Interest in Compliance with Rule 2019 and Standing to be Heard............................................................. 20 |
| VI. | CONCLUSION...................................................................................... 21 | |

**Page(s)**

## Cases

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*,
   321 B.R. 147 (D.N.J. 2005) ........................................................................ 10, 11, 13

*City of Lafayette v. Okla. P.A.C. First Ltd. P'ship (In re Okla. P.A.C. First Ltd. P'ship),*
   122 B.R. 387 (Bankr. D. Ariz. 1990) ............................................................... 11

*In re Archdiocese of Saint Paul & Minneapolis*,
   No. 15-30125, Dkt. 987, Hr'g Tr. 36:8-12 (Bankr. D. Minn. Feb. 23, 2017) ................... 14, 17

*In re CF Holding Corp.*,
   145 B.R. 124 (Bankr. D. Conn. 1992) ............................................................... 3, 12

*In re Congoleum Corp.*,
   426 F.3d 675 (3d Cir. 2005) ......................................................................... 18

*In re Diocese of Camden, New Jersey*,
   No. 20-21257-JNP, Dkt. 1311 (Bankr. D.N.J. Mar. 14, 2022) ................................... 17

*In re Enron Corp.*,
   326 B.R. 497 (S.D.N.Y. 2005) ....................................................................... 13

*In re F&C Int'l, Inc.*,
   1994 Bankr. LEXIS 274 (Bankr. S.D. Ohio Feb. 18, 1994) ...................................... 10

*In re Ionosphere Clubs, Inc.*,
   101 B.R. 844 (Bankr. S.D.N.Y. 1989) .............................................................. 13

*In re N. Bay Gen. Hosp., Inc.*,
   404 B.R. 443 (Bankr. S.D. Tex. 2009) ........................................................... 3, 12, 13

*In re Northwest Airlines Corp.*,
   363 B.R. 701 (Bankr. S.D.N.Y. 2007) .............................................................. 10

*In re the Diocese of Rochester*,
   Case No. 2-19-20905-PRW (Bankr. W.D.N.Y. 2019) ............................................. 15

*In re Wash. Mut., Inc.*,
   419 B.R. 271 (Bankr. D. Del. 2009) ............................................................... 2, 12

## Other Authorities

9 COLLIER ON BANKRUPTCY ¶ 2019.01 (16th 2023) ...................................................... 13

9 King et al., COLLIER ON BANKRUPTCY, ¶ 2019.01 (15th ed. 2009) ........................................ 12

Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of
   Potential Conflicts of Interest in Bankruptcy*, 26 CONN. L. REV. 913, 939-40 (1994) ............. 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Sparkle L. Alexander, Note, *The Rule 2019 Battle: When Hedge Funds Collide With The Bankruptcy Code*, 73 Brook. L.Rev. 1411, 1420 (2008) ......................................................... 12

**Rules**

Fed. R. Bankr. P. 2019 ................................................................................................... 1, 12, 13

FED. R. BANKR. P. 2019(a)(1) ............................................................................................ 13

Fed. R. Bankr. P. 2019(b) ................................................................................................. 11

Westchester Fire Insurance Company ("Westchester Fire") files this motion (the "Motion") for an order, substantially in the form attached hereto as **Exhibit A**, pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" or "Rules"), compelling the so-called "Parish Steering Committee" (the "Parish Steering Committee") and its attorneys, Elsaesser Anderson, Chtd. and Woods Oviatt Gilman LLP (its "Law Firms"), to file the required disclosures under Bankruptcy Rule 2019; and (ii) if they fail to comply, barring them from being heard as parties-in-interest in this proceeding and the adversary proceeding until they do. In support of this Motion, Westchester Fire respectfully states as follows:

## I.    PRELIMINARY STATEMENT[1]

1.      Parties' compliance with Bankruptcy Rule 2019 is mandatory, and its requirements are self-effectuating.  Bankruptcy Rule 2019 requires specific disclosures by "***every group or committee***" and "***every entity***" that represents multiple creditors acting in concert to advance their common interests.  The rule further provides that if the Court finds an entity or committee has "fail[ed] to comply" with the rule, the Court "may refuse to permit that entity, group or committee to be heard" further, and "hold invalid any authority, acceptance, rejection, or objection given, procured, or received by the entity, group, or committee."  Fed. R. Bankr. P. 2019.

2.      The Parish Steering Committee and its Law Firms are actively litigating in this case and the insurance adversary proceeding they initiated[2]—making appearances, filing substantive motions, entering stipulations, and negotiating/mediating on behalf of various known and unknown (bankruptcy remote) non-debtors that they purport to represent.  At the February 6, 2024

---

[1] Unless otherwise stated, "Ex." refers to exhibits attached to the February 16, 2024 Declaration of Redwan Ibn Saleh, Esq., all emphasis is added, and internal citations or quotations are removed.

[2] Adv. Pro. No. 21-50002-5-wak, Dkt. No. 1-2 (Jan. 15, 2021, adversary complaint) at 4.

in-person hearing, the *ad hoc* Parish Steering Committee stated that it represents "***all of the***

***parishes*** of the Diocese of Syracuse and ***other affiliated entities***."[3]

3.    The Parish Steering Committee made such representation even though the list of

"Participating Parties"[4] to the proposed plan includes various non-debtor affiliates (referred to as

"Other Catholic Entities" or "OCE") that are not parishes.  For instance, "Participating Parties"

includes various foundations such as "The Foundation of the Roman Catholic Diocese of

Syracuse, Inc.," and "The Syracuse Diocesan Investment Fund," and other undefined entities, such

as the "Propagation of Faith."[5]  There has been no disclosure regarding many of these entities,

leaving the Court and parties guessing which of these entities are members of the Parish Steering

Committee and represented individually by its Law Firms.[6]

4.    The fact that compliance with Bankruptcy Rule 2019 is mandatory is sufficient by

itself for this Court to grant the Motion.  When an *ad hoc* committee such as a "Steering

Committee" purports to represent multiple parties, counsel who file pleadings and appeared must

comply with Rule 2019.[7]

---

[3] Ex. 1 (Feb. 6, 2024, Hearing Tr.) at 13:20-24.

[4] Dkt. No. 1648 (*Exhibit A – List of Participating Parties*).

[5] Dkt. No. 1648 at 7; *see also* Dkt. No. 6 (*Declaration of Stephen Breen Regarding the Diocese's Assets and Operations and in Support of the Chapter 11 Petition and First Day Pleadings*) at ¶ 97 ("The Diocese maintains several accounts with the Syracuse Diocesan Investment Fund, Inc. ("SDIF"), a not-for-profit corporation formed in 2010 to enable the Diocese, along with parishes, cemeteries, and various other separately incorporated Catholic entities, to pool their investments to achieve collective benefits.").

[6] The Court in fact alluded to this issue with respect to the long list of Participating Parties, expressing its "confirmation concerns" with the disclosure statement.  *See, e.g.*, Ex. 1 (Feb. 6, 2024, Hearing Tr.) at 137:14-21 ("And it's not just the participating parties, then we have ***related parties*** who is ***conceivably anybody under the sun who's ever had a professional relationship with these people***. While it may not be a disclosure statement issue, I can tell you at first blush the Court has confirmation concerns with the breadth of the language contained in both the releases and the exculpation provisions.").

[7] *See, e.g., In re Wash. Mut., Inc.*, 419 B.R. 271, 275 (Bankr. D. Del. 2009) (members of an *ad hoc* committee must make Rule 2019 disclosures because they represent "multiple creditors holding similar claims," "filed pleadings and appeared in these chapter 11 cases collectively, not individually," and retained common counsel "that has never advised this Court that it is representing less than all the Group"); *In re N.*

5.      Here, compliance is also a vital practical necessity.  The multiple Diocese-affiliate non-debtor entities—such as certain diocesan employees and parishes but not all OCEs—maintain greater or lesser responsibility or liability with respect to the underlying abuse claims and lawsuits. Thus, certain non-debtors (*e.g.*, St. Mary's of the Assumption Roman Catholic Church ("St. Mary's") and St. Brigid & St. Joseph Church of Syracuse ("St. Brigid & St. Joseph")) have drastically different positions and interests in this matter than the so-called "other affiliated entities" (*e.g.*, Propagation of Faith and Syracuse Diocesan Investment Fund), which the Parish Steering Committee and its Law Firms also purportedly represent.[8]

6.      With over 100 interested parties (some of whom are undisclosed or unclear) ostensibly represented by one *ad hoc* committee and the same law firms—negotiating and stipulating to the terms of a proposed plan for the *ad hoc* committee's fundamentally different non-debtor entity members—the possibility of conflicts is obvious and need for further disclosure is warranted.  It is exactly for this reason that Bankruptcy Rule 2019 exists, and Westchester Fire moves to enforce the rule's mandatory disclosures.

7.      Finally, Westchester Fire has a direct, material interest in compliance with Rule 2019 as an entity that entered into a contract with a non-debtor parish.  Its contract rights are directly impacted by actions that the Parish Steering Committee is taking while holding itself our as representing **all of the parishes** of the Diocese and **other affiliated entities**.

---

*Bay Gen. Hosp., Inc.*, 404 B.R. 443, 452 (Bankr. S.D. Tex. 2009) ("Any entity seeking to represent more than one creditor in a Chapter 11 case must file an application that conforms with" these requirements); *In re CF Holding Corp.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992) (an attorney representing multiple creditors must file a copy of the document empowering the attorney to act on the creditors' behalf).

[8] *See, e.g.,* Dkt. No. 872 (*Schedule of CVA Actions*) at 3-19 (showing St. Brigid & St. Joseph as a named defendant in at least six underlying state court actions that are enjoined).

8.     In other mass tort bankruptcies, including diocesan bankruptcies, firms who represent *ad hoc* committees or more than one party routinely comply with Rule 2019, and when they do not, they have been ordered to make the Rule 2019 disclosures, revealing among other things their retention arrangements, authority and economic interests.

9.     The proposed order attached as **Exhibit A** is substantially in the same form as the order that Bankruptcy Judge Warren recently granted in *In re Diocese of Rochester.* Judge Warren's order compelling specific list of Rule 2019 disclosures is attached as **Exhibit B**.

10.    For these reasons, and the reasons set forth below, the Westchester Fire respectfully requests the Court grant this Motion.

## II.   JURISDICTION

11.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. A court's order compelling compliance with Bankruptcy Rule 2019 disclosure in a bankruptcy case is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein include Bankruptcy Rule 2019.

## III.   RELEVANT BACKGROUND

**A.     The Parish Steering Committee Has Made Appearances, Filed an Adversary Complaint and Substantive Briefs, and Entered Stipulations, Yet Continuously Failed to Comply with Bankruptcy Rule 2019.**

12.    The Parish Steering Committee and its Law Firms appeared before this Courts at the Disclosure Statement hearing,[9] initiated an adversary proceeding against multiple insurers,[10]

---

[9] Dkt. Nos. 175, 197, 198, 212, 215; *see also* Ex. 1 (Feb. 6, 2024, Hearing Tr.) at 7:7-9, 13:20-24.

[10] Adv. Pro. No. 21-50002-5-wak, Dkt. No. 1-2.

filed substantive briefs and objections,[11] and entered various stipulations[12]—all while purporting to represent "all of the *119 active parishes* located in the Diocese"[13] and "*certain other [unidentified] Diocese-affiliated entities*."[14]

13.    The Parish Steering Committee's is represented by the three person Idaho firm of Elsaesser Anderson, Chtd.[15]  Mr. Elsaesser and his daughter have their office in Coeu d'Alene, Idaho.[16]  Their colleague, Mr. Anderson, is a tax lawyer there.[17]  They are licensed to practice law in Idaho.  They do not hold themselves out on their website as being members of the New York bar.[18]  Woods Oviatt Gilman LLP, is their local counsel.[19]

14.    The adversary complaint, which asserts claims against more than 50 different insurer defendants on behalf of the parishes is signed by the Law Firms for the entity calling itself the Parish Steering Committee.[20]

---

[11] Dkt. Nos. 243 (*The Parish Steering Committee's Opposition to Motion to Subpoena Documents and Testimony Pursuant to Rule 2004*); 1644 (*Omnibus Reply of the Parish Steering Committee to the Objection by Insurers and the United States Trustee to the Disclosure Statement*).

[12] *See, e.g.,* Dkt. No. 345-1 (*Stipulation Staying Continued Prosecution of Certain Lawsuits*) at 14-15; Adv. Pro. No. 21-50002-5-wak, Dkt. No. 21-1 (*Stipulation* regarding voluntary dismissal of certain named parties), at 8.

[13] Dkt. No. 243 at 1 n.1.

[14] Dkt. No. 1644 at 1 n.1.

[15] *See* Ex. 2 (Webpages of Elsaesser Anderson, Chtd.).

[16] *Id.* at 2-3.

[17] *Id.* at 2.

[18] Dkt. Nos. 215 (*Notice of Appearance and Request for Notice by J. Ford Elsaesser filed by on behalf of Parish Steering Committee*); 212 (*Notice of Appearance and Request for Notice by Bruce Alan Anderson filed by on behalf of Parish Steering Committee*). Elsaesser Anderson, Chtd. describe in their Parish Steering Committee filings as representing of all parishes within the Diocese and undisclosed "certain other Diocese-affiliated entities."

[19] *See* Ex. 3 (Webpages of Woods Oviatt Gilman LLP).  Woods Oviatt Gilman LLP has appeared on behalf of the Parish Steering Committee, including all parishes within the Diocese and undisclosed "certain other Diocese-affiliated entities." Dkt. No. 175 (*Notice of Appearance and Request for Notice by Timothy Patrick Lyster filed by on behalf of Parish Steering Committee*).

[20] Adv. Pro. No. 21-50002-5-wak, Dkt. No. 1-2.

15.      While the complaint alleges that "multiple claims and suits" are asserted against "the Diocese and/or the Parishes" stemming from the "alleged sexual abuse injuries," not every parish within the Diocese has been named as a defendant in underlying state court actions or in the proofs of claims asserted by unsecured tort claimants.[21]  In other words, not all parishes are named parties to underlying actions, and some members have fundamentally different positions and interests than others, while all are ostensibly  represented by the same Idaho lawyers in this case.[22]

**B.      The Debtor's Monthly Operating Reports Indicate that "Parish Legal Representation" Paid by the Debtor.**

16.      The Diocese's monthly operating reports list under "Professional Fees and Expenses" $20,000 paid out of estate funds for the "Parish Representation Fund" and lists the same $20,000 amount for the "Parish Legal Representation" under the "Other" cost category in the Diocese's statement.[23]  Below is an example of excerpted images from the Diocese's monthly operating reports filed on the docket, illustrating the payment of $20,000 to the "Parish Legal Representation":

---

[21] *See generally* Adv. Pro. No. 21-50002-5-wak, Dkt. No. 1-2 (case caption); Dkt. Nos. 345-2, 872 (*Schedule of CVA Actions*, listing named defendants in each underlying action).  Certain stipulations that the Parish Steering Committee and its Law Firms have executed on behalf of all parishes covered various other Catholic entities in addition to parishes, and those entities are entirely not identical to the "Participating Parties" to the joint proposed plan.  *Compare* Dkt. No. 345-3 at 6 (listing stay defendants, including 13 non-parish entities) *with* Dkt. No. 1648 (listing additional foundations, investment vehicles, and other entities such as the "Propagation of Faith").

[22] Ex. 1 (Feb. 6, 2024, Hearing Tr.) at 43:24-44:5 ("There is a group here that says they represent the Parishes, but ***they haven't filed a 2019 statement*** . . . I don't think they'll come to the podium and say they actually, individually represent St. Mary's Parish on something like this.").

[23] *See, e.g.,* Dkt. Nos. 1620 at 3, 1620-1 at 111-12.

| In re The Roman Catholic Diocese of Syracuse, New York | | Case No. 20-30663 |
|---|---|---|
| Debtor | | Reporting Period: 11/1/2023 - 11/30/2023 |

**STATEMENT OF OPERATIONS** (Income Statement)

The Statement of Operations is to be prepared on an accrual basis. The accrual basis of accounting recognizes revenue
when it is realized and expenses when they are incurred, regardless of when cash is actually received or paid.

| REVENUES | MONTH | CUMULATIVE -FILING TO DATE |
|---|---|---|

. . .

**BREAKDOWN OF "OTHER" CATEGORY**

| OTHER COSTS | | |
|---|---|---|
| Pension Contribution | | 1,916,667 |
| Marsh Insurance Fees | | 116,405 |
| Barclay Damon Legal Fees | | 9,527 |
| Mackenzie Hughes Self Insurance Legal Fees | 1,360 | 258,340 |
| Digital Campaign | | 31,514 |
| OLL Maintenance | | 67,648 |
| Mediation | (263) | 160,018 |
| Mediation (PVO) | 1,832 | 125,598 |
| BSA Council | | 6,497 |
| Claro Group | | 267,090 |
| BRG | | 237,964 |
| Cushman Wakefield | | 50,000 |
| Parish Legal Representation | | 20,000 |
| Data Mining Service | | 5,831 |
| Total | 2,929 | 3,273,099 |

Dkt. 1620-1 at 111-112.

17.    Unlike other entries on this schedule, the law firm being paid by the "Parish Legal

Representation" is not disclosed, nor are fee statements filed with Court or provided to the U.S.

Trustee reflecting such information. The Law Firms for the Parrish Steering Committee were not

the subject of retention motions and did not file any Rule 2014 disclosure statements.

**C.    The Parish Steering Committee and Its Law Firms Suggest They Speak for All
       Parishes and All Diocese Affiliated Entities Without Identifying Them.**

18.    During the February 6, 2024 hearing, the Parish Steering Committee and its Law

Firms made appearances on the record, stating that they represent "*all of the parishes* of the

Diocese of Syracuse and *other affiliated entities*"[24] even though (i) they have yet to disclose who

are the "other affiliated entities," (ii) various non-debtors listed as "Participating Parties" are not

---

[24] Ex. 1 (Feb. 6, 2024, Hearing Tr.) at 13:20-24.

7

parishes nor named parties in underlying actions brought by unsecured tort claimants,[25] and (iii) these non-parish investment vehicles and other entities are drastically different and hold fundamentally different positions and interests in this Chapter 11 case.[26]

19.    On February 5, 2024, the day before the Court's hearing on the approval of the disclosure statement, a list of "Participating Parties" to the Diocese's proposed plan was filed for the first time.[27]  The Participating Parties include various named parishes and schools within the Diocese, and other more mysterious entities, such as the "Propagation of Faith," and various entities referred to as foundations including "The Foundation of the Roman Catholic Diocese of Syracuse, Inc." and "The Syracuse Diocesan Investment Fund."[28]

20.    The Parish Steering Committee did not disclose – then or now – which of these entities are among the other affiliated entities that they represent or any information about any of these Participating Parties, such as what (if any) contributions such parties have made (or will make) to the proposed plan.[29]

---

[25] Dkt. No. 1648 (*Exhibit A – List of Participating Parties*); Dkt. Nos. 345-2, 872 (*Schedule of CVA Actions*, listing named defendants in each underlying action).  Certain stipulations that the Parish Steering Committee and its Law Firms have executed on behalf of all parishes covered various other Catholic entities in addition to parishes within the Diocese, and those entities are entirely not identical to the "Participating Parties" to the joint proposed plan.  *Compare* Dkt. No. 345-3 at 6 (listing stay defendants, including 13 non-parish entities) *with* Dkt. No. 1648 (listing additional foundations, investment vehicles, and other entities such as the "Propagation of Faith").

[26] *See, e.g., supra* ¶ 3, *compare with* Dkt. No. 872 (*Schedule of CVA Actions*) at 3-19 (showing St. Brigid & St. Joseph as a named defendant in at least six underlying state court actions that are enjoined).

[27] Dkt. No. 1648 (*Exhibit A – List of Participating Parties*).

[28] Dkt. No. 1648 at 7; *see also* Dkt. No. 6 at ¶ 97.

[29] *See, e.g.,* Dkt. No. 1648 at 7 ("Newman Foundation of Binghamton," "Newman Foundation of Cortland," "Joseph and Elaine Scuderi Foundation, Inc.," "The Robert L. McDevitt, K.S.G.K.C.H.S. and Catherine H. McDevitt, L.C.H.S. Foundation Inc.").

**D.      The Parish Steering Committee's Failure to Respond to Westchester Fire's Request for Cooperation from Individual Parishes.**

21.      On October 24, 2022, Westchester Fire filed a claims objection with respect to Proof of Claim no. 169 ("Claim no. 169") that was filed by a *pro se* claimant, in support of St. Mary's.[30]  Claim no. 169 is patently defective and does not state a claim as a matter of law for the reasons stated in the claim objection.[31]  Hence, Westchester Fire filed the objection and sought an order to disallow and expunge that proof of claim.  The claimant defaulted rather than appear, as one would expect in such a circumstance, but when Westchester Fire sought to move forward with a hearing, the Diocese joined the Tort Committee in obstructing it from doing so and did not object to the claim itself.[32]

22.      All efforts by Westchester Fire to solicit the aid and cooperation of St. Mary's have gone unanswered.  The Parish Steering Committee and its Law Firms were on notice of Westchester Fire's objection in 2022 and the parties discussed that particular claim issue during the February 6, 2024 hearing.[33]  After the hearing, counsel for Westchester Fire wrote to the Parish Steering Committee and its Law Firms, reiterating the request that "St. Mary's aid and cooperate with Westchester Fire, in securing and giving evidence and obtaining the attendance of witnesses,

---

[30] Dkt. Nos. 1059 (*Motion for Entry of Order Authorizing Westchester to File Westchester's Objection to Proof of Claim No. 169 Under Seal*), 1059-1 (*Westchester's Objection to Proof of Claim No. 169 [REDACTED]*).

[31] Dkt. No. 1059-1 at 2-5.

[32] Dkt. No. 1139 (*Reply in Further Support of the Motion for Entry of an Order Authorizing Westchester to File Westchester's Objection to Proof of Claim No. 169 Under Seal*) at 1 ("The Debtor and TCC will not settle this claim or join in moving to expunge it."); *see also* Dkt. No. 1296 (Dec. 8, 2022, Hearing Tr.) at 10 ("MR. KUGLER: . . . I've spoken with Tim Burns, who is insurance counsel for the Committee, and we agree there's no reason not to talk to Westchester, and we're going to reach out to them and have specific conversations about the claim that they're focused on in terms of a claim objection and see if we can resolve that as part of the mediation process.").  Following this exchange, the Tort Committee did not allow the claims objection to go forward and did not object to the claim itself.

[33] *See, e.g.,* Ex. 1 (Feb. 6, 2024, Hearing Tr.) at 43-44, 121.

9

in the investigation and defense of . . . Claim No. 169."[34]  This letter has gone unanswered.  Further,

counsel for Westchester Fire requested a meet and confer with "parish counsel to discuss this claim

and how it is treated under the plan proposed by the Tort Committee."[35]  This request was also

unanswered.

**E.      The Parish Steering Committee's and Its Law Firms' Failure to Comply with Rule 2019.**

23.      The Parish Steering Committee and its Law Firms (one of which is located

hundreds of miles away from Syracuse) have not complied with Rule 2019 by providing, among

other things, any instrument of agreement between or among the Law Firms and the Parish Steering

Committee to govern the *ad hoc* committee's activities in this Chapter 11 case, any fee

arrangements with the parishes and undisclosed "certain other Diocese-affiliated entities" that are

represented, nor any power of attorney information or instrument authorizing the group to execute

on behalf of all parishes and undisclosed "certain other Diocese-affiliated entities."[36]

24.      On February 7, 2024, the Parish Steering Committee's counsel wrote an e-mail to

counsel for Westchester Fire, acknowledging Westchester's objection that it had not complied with

Rule 2019, and stated "we are working on the statement and will be filing it soon."[37]  Despite this,

neither the Parish Steering Committee nor its Law Firms have complied with Rule 2019

requirements or responded to Westchester Fire's requests for cooperation with regard to St. Mary's

parish.

---

[34] Ex. 5 (Feb. 8, 2024, Letter from R. Saleh to T. Lyster) at 1 ("Please let us know on Monday whether the parish of St. Mary's will comply, identify a representative witness and cooperate with Westchester Fire in providing a declaration in the next two weeks and secure the attendance of this person or persons at a hearing on the claims objection").

[35] *Id.*

[36] Dkt. No. 1644 at 1 n.1.

[37] *See* Ex. 4 (Feb. 7, 2024, E-mail from T. Lyster to T. Schiavoni).

## IV.    REQUESTED RELIEF

25.    Westchester Fire respectfully request that the Court enter the proposed order, attached hereto as **Exhibit A** (the "Proposed Order"), (i) compelling the Parish Steering Committee and it Law Firms to file the disclosures required by Bankruptcy Rule 2019 within fourteen days after entry of the Court's order and (ii) if they fail to comply, barring them from being heard as parties-in-interest in this proceeding and the adversary proceeding, and (iii) granting such other relief as the Court deems just and proper.

26.    The Proposed Order mirrors the same relief ordered by Judge Warren in the Bankruptcy Court for the Western District of New York, for the *In re Diocese of Rochester* bankruptcy matter.[38]  Attached to this Motion as **Exhibit B,** is a true and correct copy of the order entered by Judge Warren.

## V.    BASIS FOR REQUESTED RELIEF

### A.    Bankruptcy Rule 2019 Requires Broad Disclosures, Including Pertinent Facts and Circumstances of "Every Group or Committee" and "Every Entity" Being Represented.

27.    Rule 2019 "is the Bankruptcy Code's mechanism for keeping tabs on multiple representation of creditors"[39] and, in the mass tort context, "to root out conflicts of interest."[40]  In *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, the court explained that "the information sought in the Rule 2019 disclosures, does indeed bear on the overall fairness of" any proposed plan of reorganization, and that "Insurers have standing to raise these Rule 2019

---

[38] Case No. 2-19-20905-PRW (Bankr. W.D.N.Y. 2019), Dkt. No. 2141.

[39] *See* Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy*, 26 CONN. L. REV. 913, 939-40 (1994).

[40] *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.,* 321 B.R. 147, 168 (D.N.J. 2005); *see also In re F&C Int'l, Inc.*, 1994 Bankr. LEXIS 274, at *8 (Bankr. S.D. Ohio Feb. 18, 1994) (failure to comply with Rule 2019 creates a danger that "parties purporting to act on another's behalf may not be authorized to do so and may receive distributions to which they are not entitled").

compliance issues."[41]  Further, the court in *In re Northwest Airlines Corp.* stated that "[w]here an *ad hoc* committee has appeared as such, the committee is required to provide the information plainly required by Rule 2019 on behalf of each of its members."[42]  For this reason, like in *In re Wash. Mut., Inc.*, courts require members of an *ad hoc* committee to make Rule 2019 disclosures because they represent "multiple creditors holding similar claims," "filed pleadings and appeared in [] chapter 11 cases collectively, not individually," and retained common counsel "that has never advised this Court that it is representing less than all the Group."[43]

28.     Bankruptcy Rule 2019(b)(1) states:

> In a chapter 9 or 11 case, a verified statement setting forth the information specified in subdivision (c) of this rule ***shall be filed*** by ***every group or committee*** that consists of or represents, and ***every entity*** that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another.

Fed. R. Bankr. P. 2019(b) (emphasis added).

Rule 2019(c) dictates that the "verified statement ***shall*** include:"

> (1) the ***pertinent facts and circumstances*** concerning:
>
> > (A) with respect to ***a group or committee***, . . . the formation of the group or committee, including the ***name of each entity*** at whose instance the group or committee was formed or for whom the group or committee has agreed to act; or

---

[41] 321 B.R. at 160.

[42] *In re Northwest Airlines Corp.*, 363 B.R. 701, 703 (Bankr. S.D.N.Y. 2007) (granting motion to compel mandatory Rule 2019 disclosures and ordering the *ad hoc* committee of shareholders to comply with Rule 19 in three business days).

[43] 419 B.R. 271, 275 (Bankr. D. Del. 2009); *see also In re N. Bay Gen. Hosp., Inc.*, 404 B.R. 443, 452 (Bankr. S.D. Tex. 2009) ("Any entity seeking to represent more than one creditor in a Chapter 11 case must file an application that conforms with" these requirements); *In re CF Holding Corp.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992) (an attorney representing multiple creditors must file a copy of the document empowering the attorney to act on the creditors' behalf).

(B) with respect to an entity, the employment of the entity, including the name of each creditor or equity security holder at whose instance the employment was arranged;

(2) if not disclosed under subdivision (c)(1), with respect to an entity, and with respect to ***each member of a group or committee***:

(A) name and address;

(B) ***the nature and amount of each disclosable economic interest held in relation to the debtor*** as of the date the entity was employed or the group or committee was formed; . . .

(3) if not disclosed under subdivision (c)(1) or (c)(2), with respect to each creditor or equity security holder represented by an entity, group, or committee . . . :

(A) name and address; and

(B) the nature and amount of each disclosable economic interest held in relation to the debtor as of the date of the statement; and

(4) ***a copy of the instrument, if any, authorizing the entity, group, or committee to act on behalf of creditors or equity security holders***.

*Id*. (emphasis added).

29.    Rule 2019 is clear, unambiguous, and mandatory.  Its purpose is to hold lawyers involved in chapter 11 bankruptcies "to certain ethical standards and approach all reorganization related matters openly and subject to the scrutiny of the court."[44]  To fulfill this purpose, the scope of Rule 2019 is, "on its face, . . . extremely broad."[45]  It "applies to a group of creditors or equity security holders that act in concert to advance common interests . . . even if the group does not call itself a committee."[46]

---

[44] *Baron & Budd, P.C.*, 321 B.R. at 165.

[45] *City of Lafayette v. Okla. P.A.C. First Ltd. P'ship (In re Okla. P.A.C. First Ltd. P'ship),* 122 B.R. 387, 390 (Bankr. D. Ariz. 1990).

[46] Fed. R. Bankr. P. 2019, Committee Notes on Rules—2011 Amendment; *see also* Sparkle L. Alexander, Note, *The Rule 2019 Battle: When Hedge Funds Collide With The Bankruptcy Code*, 73 Brook. L.Rev. 1411, 1420 (2008) ("[I]t is clear that [Rule 2019] was enacted to specifically address abuses by protective committees in the 1930s that solicited deposit agreements from investors."); 9 King et al., COLLIER ON BANKRUPTCY, ¶ 2019.01 (15th ed. 2009) (noting Rule 2019 "covers entities which act in a fiduciary

13

30.    When an *ad hoc* committee such as a "Steering Committee" purports to represent "multiple creditors holding similar claims," "retained counsel" who "filed pleadings and appeared in these chapter 11 cases collectively, not individually," and "never advised [the] Court [whether] it is representing less than all" members in the group, the *ad hoc* committee and its counsel "must comply with Rule 2019."[47]  As *Collier* explains:

> The need in Chapters 9 and 11 for policing creditor groups and those who act on their behalf is greater than under other relief chapters.  [Rule 2019] is part of the disclosure scheme of the Bankruptcy Code and is designed to foster the goal of reorganization plans which deal fairly with creditors and which are arrived at openly.

9 COLLIER ON BANKRUPTCY ¶ 2019.01 (16th 2023).

31.    Bankruptcy Rule 2019 is meant "to further the Bankruptcy Code's goal of complete disclosure during the business reorganization process" and "was designed to cover entities which, during the bankruptcy case, act in a fiduciary capacity to those they represent, but are not otherwise subject to control of the court."[48]

32.    The requirements of Rule 2019 are defined broadly, consistent with its purpose. For example, the term "disclosable economic interest" means "***any*** claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the

---

capacity that are not otherwise subject to the control of the court," and "is facially broader . . . [to] reach[] any entity having multiple representations").

[47] *See, e.g., In re Wash. Mut., Inc.*, 419 B.R. 271, 275 (Bankr. D. Del. 2009) (members of an ad hoc committee must make Rule 2019 disclosures because they represent "multiple creditors holding similar claims," "filed pleadings and appeared in these chapter 11 cases collectively, not individually," and retained common counsel "that has never advised this Court that it is representing less than all the Group"); *In re N. Bay Gen. Hosp., Inc.*, 404 B.R. 443, 452 (Bankr. S.D. Tex. 2009) ("Any entity seeking to represent more than one creditor in a Chapter 11 case must file an application that conforms with" these requirements); *In re CF Holding Corp.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992) (an attorney representing multiple creditors must file a copy of the document empowering the attorney to act on the creditors' behalf).

[48] *In re CF Holdings*, 145 B.R. at 126.

14

Case 20-30663-5-wak   Doc 1686   Filed 02/16/24   Entered 02/16/24 22:12:16   Desc
Main Document   Page 19 of 25

holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest."[49]

33.     As indicated by Rule 2019's advisory committee notes, the term "is intended to be sufficiently broad to cover any economic interest that could affect the legal and strategic positions a stakeholder takes in a chapter 9 or chapter 11 case."[50]  Similarly, questions of professional responsibility related to fee arrangements "qualify as pertinent facts and circumstances in connection with the employment of counsel, because they may have a direct bearing on both good faith and the fairness of the plan's classification system."[51]

34.     Finally, Rule 2019 "requires that an entity must file an instrument which empowers the entity to act on behalf of the creditors.  This includes an executed power of attorney authorizing counsel to file a proof of claim in this case."[52]

**B.     Rule 2019 Disclosures are Necessary to Guard Against Conflicts Between Fundamentally Different Entities, and to Ensure all Parties are Fully Informed of Pertinent Facts and Circumstances Regarding the Interested Parties such as an *Ad Hoc* Committee in this Chapter 11 Case.**

35.     In addition to Bankruptcy Rule 2019's mandatory requirements, the Parish Steering Committee's and its Law Firms' compliance with the rule is imperative because of the need for transparency and to avoid inherent conflicts.

---

[49] FED. R. BANKR. P. 2019(a)(1) (emphasis added).

[50] FED. R. BANKR. P. 2019, Committee Notes on Rules—2011 Amendment.

[51] *Baron & Budd, P.C.*, at 165.

[52] *In re Ionosphere Clubs, Inc*., 101 B.R. 844, 852 (Bankr. S.D.N.Y. 1989); *see also In re N. Bay Gen. Hosp., Inc.*, 404 B.R. at 453 ("Bankruptcy Rule 2019(a) also requires that the entity provide a copy of the instrument, if any, whereby the entity, committee, or indenture trustee is empowered to act on behalf of creditors") (internal citation and quotation marks omitted); *In re Enron Corp.*, 326 B.R. 497, 499 (S.D.N.Y. 2005) (noting that an entity's "failure to submit the required disclosures under Bankruptcy Rule 2019 raises the question of whether these unidentified [claimants] in fact have consented to this agency relationship in relation to the bankruptcy").

36.    Here, well over 100 non-debtors are purportedly being represented by the Parish Steering Committee and its Law Firms—litigating, negotiating and stipulating to the terms of a proposed plan on their behalf.[53]  This is so, despite the fact that, even among parish members of this *ad hoc* committee alone, some committee members have fundamentally different positions and interests than others, as some have different claims or defenses asserted for or against them, and drastically different positions with respect to the respective at-issue insurance agreements they each concern.[54]  When considering the additional, unclear number of "other affiliated entities" that the Parish Steering Committee and its Law Firms have stated that they also represent—many of whom are not parties to the adversary action or underlying state court actions—those entities certainly have drastically different needs, positions and/or interests in this Chapter 11 case.[55]  The conflicts are obvious and need for further disclosure is warranted.

37.    In addition to conflicts among parish entities themselves, the Parish Steering Committee's Law Firms have their own interests in how they are compensated or how their fee arrangements are structured to represent well-over 100 separate and distinct non-debtor entities. This reality is the reason behind Bankruptcy Rule 2019's requirement that law firms' economic stakes, which in this case are undoubtedly significant, be disclosed.

38.    As the bankruptcy judge noted while granting a similar motion in *In re Archdiocese of Saint Paul & Minneapolis*, because the law firm represented hundreds of claimants in that case on contingency, the law firm had "a bigger economic interest" than anyone else in the case.[56]

---

[53] *See supra* ¶¶ 12-13.

[54] *See supra* ¶¶ 5, 15, 18-19.

[55] *See supra* ¶ 18.

[56] *In re Archdiocese of Saint Paul & Minneapolis*, No. 15-30125, Dkt. 987, Hr'g Tr. 36:8-12 (Bankr. D. Minn. Feb. 23, 2017).

Likewise, recently in *In re the Diocese of Rochester* bankruptcy matter, Judge Warren granted a similar Rule 2019 motion where the law firm represented 178 claimants, and ordered that the law firm make such pertinent disclosures.[57]

39.     Finally, the instruments authorizing the law firms to act on behalf of their clients must be disclosed.  Rule 2019(c)(4) explicitly calls for disclosure of this information.

**C.    Courts, Including Courts in Other Diocesan Cases, Have Ordered Similar Relief Sought Here—This Court Should do so as Well.**

40.     Numerous bankruptcy courts—including and in addition to those presiding over the diocesan bankruptcy cases *In re the Diocese of Rochester*, *In re Archdiocese of Saint Paul & Minneapolis*, and the *Diocese of Camden*—have afforded the relief Westchester Fire seeks here.

41.     For example, in *In re Lehman Brothers Holding, Inc.,* debtors moved to compel an *ad hoc* group of "Lehman Brothers Creditors" engaged by its attorneys White & Case LLP (who filed Rule 2019 statements) to comply with Rule 2019.[58]  Judge James M. Peck of the Southern District of New York granted the motion and instructed the *ad hoc* group to provide "at a minimum" information such as "(1) the names and addresses of the members of the Ad Hoc Group; (2) the nature of the claims and interests held by the members of the Ad Hoc Group; (3) the amounts paid for the claims and interests held by the members of the Ad Hoc Group; (4) the date of acquisition of the claims and interests held by the members of the Ad Hoc Group; (5) the details of any disposition of the claims and interests held by the members of the Ad Hoc Group; (6) a recital of the pertinent facts and circumstances in connection with the formation of the Ad Hoc Group and the name or names of the entity or entities at whose instance, directly or indirectly, the Ad Hoc Group was formed; and (7) a copy of the instrument whereby the Ad Hoc Group is

---

[57] *See In re the Diocese of Rochester*, Case No. 2-19-20905-PRW, Dkt. No. 2141.

[58] Case No. 08-13555-mg, Dkt. No. 16107 (Bankr. S.D.N.Y. Apr. 18, 2011).

empowered to act."[59]  Westchester Fire seeks similar disclosures from the *ad hoc* committee and its counsel here, as reflected in the Proposed Order.

42.    Likewise, in *In re Northwest Airlines Corp.*, the bankruptcy court ordered that the *ad hoc* committee of equity security holders comply with its Rule 2019 obligations, supplementing its disclosures within three business days.[60]  There, Judge Allan L. Gropper noted that the *ad hoc* committee's appearance was filed "as a committee" through its law firm Kasowitz, Benson, Torres & Friedman LLP, who had been "actively litigating discovery issues in numerous hearings and conferences before the [c]ourt," and counsel was retained by the committee to service the committee, "the committee is required to provide the information plainly required by Rule 2019 on behalf of each of its members."[61]

43.    Judge Gropper added that the rule plainly requires disclosure of "the amounts of claims or interests owned by the members of the committee, the times when acquired, the amounts paid therefor, and any sales or other disposition thereof."[62]  While the court in *Northwest Airlines* required immediate Rule 2019 supplemental disclosures, despite some disclosures were already filed, the Parish Steering Committee and its Law Firms have acknowledged and continued to avoid filing required disclosures, even as to the basic information on who each of the committee members truly are.[63]

44.    With respect to other diocese bankruptcy matters, in *In re the Diocese of Rochester*, the court granted Continental Insurance Company's Rule 2019 motion to compel various abuse

---

[59] *Id.* at 2-3.

[60] 363 B.R. at 703.

[61] *Id.* at 702-03.

[62] *Id.*

[63] *Supra* ¶ 24.

survivor claimants' counsels' compliance with the Rule.[64]   Indeed, the Proposed Order to this

Motion mirrors the order that Judge Warren entered in Western District of New York Bankruptcy

Court in favor of Continental on this exact issue, attached as Exhibit B to this Motion.[65]

45.    Likewise, in *In re Archdiocese of Saint Paul & Minneapolis*, the court granted the

debtor's Rule 2019 motion and ordered the law firms to comply with Rule 2019, noting that

counsel should have done so voluntarily.[66]   There, the court noted that where "a group of clients

who are acting in concert through [counsel]," and "there are different interests or different

motivations or just different things going on[,] . . . [t]hat's something the entire body of people,

the court and lawyers need to understand."[67]

46.    Further, in the *Diocese of Camden* case, a motion to compel Rule 2019 disclosures

was filed because the claimants' law firms, including five of the six state court counsel, had filed

none of the requisite disclosures.[68]   There, the claimants' attorneys did not even oppose the relief

requested and filed their disclosures shortly after the motion was filed.  This trend is very common

in Rule 2019 motion practice in the context of *ad hoc* committees.[69]

---

[64] *See* Case No. 2-19-20905-PRW (Bankr. W.D.N.Y. 2019), Dkt. Nos. 1960, 2141.

[65] *See id.* at Dkt. No. 2141.

[66] *Id.* at 46:20-47:5 ("I mean this is not a new issue and the rule . . . is self-effectuating.  We don't need an order.  The Anderson firm should have complied with it two years ago[,] and they should have complied with it a year ago and six months ago.  The fact that we're here now on the motion doesn't mean they no longer have to comply with the rule, so I think they have to comply . . . with the rule").

[67] *In re Archdiocese of Saint Paul & Minneapolis*, No. 15-30125, Dkt. 987, Hr'g Tr. at 48:13-15.

[68] *In re Diocese of Camden, New Jersey*, No. 20-21257-JNP, Dkt. 1311, *Joint Motion to Compel the Claimants' Attorneys to Submit the Disclosures Required by Rule 2019* (Bankr. D.N.J. Mar. 14, 2022).

[69] *See, e.g., In re Motors Liquidation Co. et al., f/k/a General Motors Corp., et al*., No. 09-50026 (REG), Dkt. Nos. 9207, 9403, 9673 (Bankr. S.D.N.Y. 2011) (where a group of noteholders joined in objection to proposed plan by debtors, and upon the court's mandate that the group's "submission will not be considered" without timely compliance with Rule 2019, the group filed a statement listing *inter alia* the names and addresses of the members of the group, the amount of security interests held by each party, and other circumstances of the group's formation).  Here, the Parish Steering Committee has yet to even provide the address of "Propagation of Faith" which is listed as a Participating Party.

47.    In other words, all competent counsel knows that their compliance with Bankruptcy Rule 2019 is mandatory—as the Parish Steering Committee and its Law Firms acknowledged by e-mail.[70]   They know what they need to do to comply with the Rule, but they ***choose to not do so until a motion is filed*** seeking to enforce Rule 2019.   This Motion should be completely unnecessary, but it is necessary here because of the Parish Steering Committee's and its Law Firms' utter lack of compliance.

**D.    Westchester Fire has a Direct, Material Interest in Compliance with Rule 2019 and Standing to be Heard.**

48.    Westchester Fire has a direct, material interest in compliance with Rule 2019. Westchester Fire sought the aid and cooperation of St. Mary's in objecting to an obviously deficient claim.[71]   The Parish Steering Committee and its Law Firms held themselves out as representing the individual parishes but have not said which ones, and have no responded to requests for witnesses, information, and aid in prosecuting the claims objection with respect to St. Mary's.[72]   At the same time, it is being touted that the Parish Steering Committee has joined a plan that calls for the contractual obligations of individual parishes, such as St. Mary's, to be impaired by third-party injunctions while some, but not other, contract rights are transferred to a plaintiff-controlled trust.

49.    The complaint in the adversary proceeding names Westchester Fire as a defendant and the Law Firms representing the Parish Steering Committee initiated and signed it.   *See In re Congoleum Corp.*, 426 F.3d 675, 685 (3d Cir. 2005) (holding that "insurers are entitled to have standing" in bankruptcy proceedings, including issues regarding the identity of parties represented

---

[70] *Supra* ¶ 24; Ex. 4 (Feb. 7, 2024, E-mail from T. Lyster to T. Schiavoni).

[71] *Supra* ¶¶ 21-22.

[72] *Id.*

by counsel, the capacity in which they are representing parties, and whether they have conflicts,

issues "based on procedural due process concerns that implicate the integrity of the bankruptcy

court proceeding as a whole.").

## VI.    CONCLUSION

WHEREFORE, Westchester Fire respectfully requests the Court enter an order,

substantially in the form attached hereto as **Exhibit A**, (i) granting the Motion in its entirety, and

(ii) awarding such other relief as is just and proper.

Dated:  February 16, 2024                Respectfully submitted,

*/s/ Tancred V. Schiavoni*
**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI (NDNY Bar # 518616)
REDWAN SALEH (NDNY Bar # 701110)
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Email:  tschiavoni@omm.com
           rsaleh@omm.com

**CLYDE & CO US LLP**
MARIANNE MAY (NDNY Bar # 519327)
200 Campus Drive, Suite 300
Florham Park, NJ 07932
Telephone: (973) 210-6700
Email: marianne.may@clydeco.us

*Counsel for Westchester Fire Insurance Company*