| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>NORTHERN DISTRICT OF NEW YORK | Hearing Date: 3/7/2024<br>Hearing Time: 1:00 p.m<br>Location: Syracuse, NY |
| In re:<br><br>THE ROMAN CATHOLIC DIOCESE OF<br>SYRACUSE, NEW YORK,<br><br>                           Debtor. | Case No. 20-30663-5-wak<br><br>Chapter 11<br><br>Hon. Wendy A. Kinsella |

**RESPONSE BY THE CATHOLIC AFFILIATES IN OPPOSITION
TO WESTCHESTER FIRE INSURANCE COMPANY'S
<u>MOTION TO COMPEL RULE 2019 DISCLOSURES</u>**

The parishes and other Catholic affiliate entities (the "Catholic Affiliates"),[1] by its undersigned attorneys, Woods Oviatt Gilman LLP ("Woods Oviatt"), Timothy P. Lyster, Esq., and Elsaesser Anderson Chtd., Ford Elsaesser, Esq. ("Elsaesser Anderson")(Woods Oviatt and Elsaesser Anderson are each a "Law Firm" and collectively, the "Law Firms") submit this response in opposition to Westchester Fire Insurance Company's ("Westchester") Motion to Compel "Parish Steering Committee" and its Law Firms to Make Mandatory Rule 2019 Disclosures ("Motion to Compel").[2]

---

[1] The Catholic Affiliates are described in the Verified Statement Pursuant to Bankruptcy Rule 2019, being filed herewith (the "Rule 2019 Statement").

[2] The Law Firms also submit this response on behalf of St. Mary's of Assumption Parish, Oswego, and St. Patrick & St. Brigid's Parish/St. Brigid & St. Joseph Church (collectively, "St. Brigid") with respect to certain assertions by Westchester as to claims concerning these parishes. While St. Mary's and St. Brigid's disagree with many of the assertions, they will not be addressed herein because they are not relevant to the motion to compel compliance under Rule 2019, and Westchester has been dismissed from the insurance adversary proceeding as referenced below.

{9486346: }

1

**INTRODUCTION**

1. As a threshold matter, Westchester does not have standing to pursue the Motion to Compel because it has been dismissed from the insurance adversary proceeding.[3] On this basis alone, the Motion to Compel is not properly before the Court and should be denied.[4]

2. Regardless, the Law Firms are herewith filing a Rule 2019 Statement for its representation of multiple parties, namely the Catholic Affiliates as described therein. The Law Firms respectively submit that the Rule 2019 Statement is sufficient, and based upon such filing, the Motion to Compel is moot or should be denied.

3. Westchester's Motion to Compel is in a form virtually identical to a motion for such relief filed in *In re Diocese of Rochester*, except for one critical thing: the motion and order in the *Diocese of Rochester* case was directed to attorneys representing abuse survivors, not parishes or other Catholic affiliate entities. Westchester's citation to other similar motions to compel in Diocesan cases, each pertaining only to attorneys for abuse survivors, is equally unavailing. As discussed herein, Westchester cites to no decision compelling the expansive disclosure requested, as to entities like the Catholic Affiliates, which do not have an economic stake like the survivors or similar creditors, and ultimately will not vote or receive a distribution under the plan.

4. While the Motion to Compel should not proceed given Westchester's lack of standing due to its dismissal, the Law Firms are willing to consider requests concerning its Rule 2019 Statement informally, without the need for a hearing or further filings.

---

[3] Notice of Voluntary Dismissal Without Prejudice, dated February 28, 2024, Dkt. No. 223.

[4] To be clear, the filing of the purported "joinder" by the Travelers Insurance Company entities (Dkt. No. 1702) and Hartford Insurance Company (Dkt. No. 1698) do not confer these entities standing or place any relief before the Court, and the Law Firms and Catholic Affiliates hereby oppose the joinder requests. *See Gulf Coast Dev. Group v. Lebror*, 2003 U.S. Dist. LEXIS 21740 *4, ftn.1 (refusing to consider joinder request based upon failure to include individualized arguments); *see also Krause v. Buffalo & Erie County Workforce Dev. Consortium, Inc.* 426 F. Supp. 2d 68, 77 (W.D.N.Y. 2005)(stating that Fed. R. Civ. P. Rule 10(c) "provides no authority for one party to adopt by reference the arguments advanced by another party in a motion in which the first party seeks to join.").

{9486346: }

## BACKGROUND

5.  In each of its motion papers filed in the bankruptcy case, the Law Firms have indicated that they represent all of the parishes in the Diocese, along with certain other entities affiliated with the Diocese.[5] This is correct, and the representation of the specific parishes[6] and other Catholic/Diocesan affiliate entities is now specified in the Rule 2019 Statement. The Law Firms also appropriately filed the complaint in the insurance adversary proceeding as "Counsel for the Parishes," since the parishes alone are plaintiffs in that proceeding (not other Catholic affiliate entities). Additionally, for ease of reference, the entities listed on the Stay Defendant list[7] and Participating Party list,[8] not represented by the Law Firms is identified herein.

6.  Significantly, the Law Firms' Rule 2019 Statement comports with the statements of similar counsel representing parishes and other Catholic affiliate entities in other Diocesan cases. A sampling of Rule 2019 statements filed by such law firms is attached hereto as **Exhibit A**.[9]

---

[5] Parish Steering Committee's Opposition to Motion to Subpoena Documents and Testimony Pursuant to Rule 2004, Dkt. No. 243, and Omnibus Reply of the Parish Steering Committee to the Objections by Insurers and the United States Trustee to the Disclosure Statement, Dkt. No. 1644.

[6] As listed in the Rule 2019 Statement, the Law Firms represent each of the active parishes located in the Diocese, along with (i) representation as to related merged, closed or inactive parishes, as such parishes typically retained a separate EIN number, and (ii) related parish schools and cemeteries.

[7] The entities listed on the Stay Defendant list (Dkt. No. 345) not represented by the Law Firms are: Blessed Sacrament School (Syracuse), Cathedral Academy at Pompei (Syracuse), Holy Cross School (Dewitt), Holy Family School (Syracuse), Holy Family School (Norwich), Immaculate Conception School (Fayetteville), Most Holy Rosary School (Syracuse), St. Margaret's School (Mattydale), St. Mary's Academy (Baldwinsville), St. Mary's School (Cortland), St. Rose of Lima School (North Syracuse) and Jail Ministry of Onondaga County, Inc.

[8] The entities listed on the Participating Party list (Dkt. No. 1648) not represented by the Law Firms are: Holy Family School (Norwich), Christopher Community, Inc., Joseph T. O'Keefe Corporation, Jail Ministry of Onondaga County, Inc., Propagation of Faith, Spiritual Renewal Center, The Guardian Angel Society, The Robert L. McDevitt K.S.G., K.C.H.S. and Catherine H. McDevitt L.C.H.S. Fund of St. James Church of Lestershire, NY, The Robert L. McDevitt K.S.G., K.C.H.S. and Catherine H. McDevitt L.C.H.S. Fund of St. Patrick's Church of Binghamton, NY, The Robert L. McDevitt K.S.G., K.C.H.S. and Catherine H. McDevitt L.C.H.S. Fund of St. Thomas Aquinas Church, and Brady Market, Cathedral Academy at Pompei (Syracuse).

[9] Attached as Exhibit A are the following Rule 2019 Statements: (i) *The Roman Catholic Diocese of Rockville Centre, New York*, Case No. 20-12345, Dkt. No. 471; (ii) *The Roman Catholic Diocese of Rockville Centre, New York*, Case No. 20-12345, Dkt. No. 493; (iii) *The Roman Catholic Diocese of Rockville Centre, New York*, Case No. 20-12345, Dkt. No. 578, (iv) *The Roman Catholic Church of the Archdiocese of Santa Fe,* Case No. 18-13027, Dkt. No. 197, (v)

{9486346: }

## APPLICABILITY OF RULE 2019

7. Historically, the focus of disclosure and transparency under Rule 2019 was on "hedge funds" which might impact on a debtor's proposed plan.[10]

8. The focus of the rule is on creditors who hold an economic claim, such as the survivors here, who constitute the vast majority of the creditor body.

9. The Law Firms have at times entered appearances as attorneys for the "Parish Steering Committee," but this is for convenience, and no more than an appearance on behalf of client A, B and C, the individual Catholic Affiliates which have each retained the Law Firms.

10. While each individual client may be a "creditor" as described in the Rule 2019 Statement, including based upon (contingent) claims against the Diocese for indemnification and contribution, they are not the typical "creditors acting in concert to advance their common interests" under Rule 2019.

11. Under the proposed plan, a Catholic Affiliate's applicable indemnification or contribution claim, would fall under "Class 6, Inbound Contribution Claims," and each such claim would be deemed extinguished:[11]

---

*The Roman Catholic Church of the Archdiocese of Santa Fe,* Case No. 18-13027, Dkt. No. 263; (vi) *Roman Catholic Diocese of Harrisburg*, Case No. 20-00599, Dkt. No. 1287, (v) *The Archdiocese of Saint Paul and Minneapolis*, 15-30125, Dkt. No. 212, (vi) *Roman Catholic Church of the Diocese of Gallup*, Case No. 13-13676, Dkt. No. 186, (vii) *The Roman Catholic Church of the Archdiocese of New Orleans*, 20-10846, Dkt. No. 2501.

[10] Sparkle L. Alexander, *The Rule 2019 Battle: When Hedge Funds Collide with the Bankruptcy Code*, 73 Brook. L. Rev. (2008); *In re Phila. Newspapers, LLC*, 422 B.R. 553, 568 (Bankr. E.D. Pa. 2010).

[11] *The Roman Catholic Diocese of Syracuse, New York*, Case No. 20-30663, Dkt. No. 1566, Disclosure Statement, Art. 4(c)(2)(f), p. 32.

{9486346: }

**f.    Class 6 – Inbound Contribution Claims.**

**Classification:** Class 6 Inbound Contribution Claims include any Claim asserted against the Diocese for indemnity, contribution, or reimbursement arising out of, or related to, the Claimant's liability to pay or defend any Class 5 Abuse Claim.

**Treatment:** Class 6 Claims shall be Disallowed and extinguished and there will be no Distributions to the holders of Class 6 Claims on account of such Class 6 Claims.

**Voting:** Class 6 Inbound Contribution Claimants will not receive or retain any property under the Plan and therefore are deemed to have rejected the Plan. Class 6 will not vote on the Plan.

12. Rather than having a controlling economic stake, like the survivors or other similar creditors, the Catholic Affiliates will not receive a distribution under the plan.

13. The Catholic Affiliates are also not the typical creditors "acting in concert"[12] under Rule 2019, including because there is no instrument authorizing the "Parish Steering Committee" or any committee to act on behalf of the Catholic Affiliates.[13] There is no instrument collectively binding the Catholic Affiliates; an individual retainer agreement does not fall into the "group" or collective "instrument" requirement under Rule 2019(c)(4). As discussed *infra*, similar counsel's Rule 2019 statements do not include a retainer agreement.

14. The article, James M. Wilton & James A. Wright III, *Parsing and Complying with New Rule 2019*, Am. Bankr. Inst. J., October 2011, at 16, provides:

> the scope of New Rule 2019 is more limited in this respect than existing Rule 2019: Law firms, for example, will not fall under the scope of the rule if they represent more than one creditor in a case unless the clients are acting in concert. . . . Because New Rule 2019 restricts compliance to situations where multiple clients are represented and are acting in concert, in most circumstances, law firms will no longer need to comply with the rule.

---

[12] *Blacks, Law Dictionary* (5th ed.) defines "concerted action" as "an action that has been planned,, and agreed on by the parties acting together to further some scheme or cause so that all involved are liable for the actions of another."

[13] *See* Rule 2019 Statement.

{9486346: }

15. *Collier's* explains that "Rule 2019 has been used as a control device to provide stakeholders complete disclosure of material facts in the solicitation and voting process and to prevent conflicts of interest among creditors' counsel from undermining the fairness of plan access."[14] This does not apply to the Catholic Affiliates, who will not be entitled to vote on the plan.

16. Rather than stand upon the inapplicability of the Rule, the Law Firms have filed the Rule 2019 Statement, which complies with Rule 2019, to the extent applicable.

## ARGUMENT

17. The movant bears the burden of proving its standing, and the purported failure to comply with Rule 2019.[15] Westchester has been dismissed from the insurance adversary proceeding, thus, it is clear that it cannot demonstrate its standing to pursue its Motion to Compel.[16] Westchester has also failed to carry its burden in showing non-compliance.

---

[14] 9 *Collier's Bankruptcy* ¶2019.01.

[15] 9 *Collier's Bankruptcy* ¶2019.06.

[16] To the extent that there is further litigation concerning compliance, the Law Firms and Catholic Affiliates reserve the right to supplement this response, including to assert that any insurer-movant seeking to compel compliance with Rule 2019 lacks standing. In *In re Kaiser Aluminum Corp.,* 327 B.R. 554 (D. Del. 2005) the District Court explained that where a plan is "insurance neutral," the insurer has no standing to contest Rule 2019 compliance:

> Applying these principles in the context of this case, the Court concludes that Appellants do not have standing to challenge the Bankruptcy Court's Revised Rule 2019 Orders. As Appellees point out, the Rule 2019 Orders have no effect, unless (1) a plan of reorganization is first conceived, approved by creditors and confirmed, and (2) payment is sought from the Appellants under the respective insurance policies they issued to the Debtors. Appellants direct the Court to *Baron & Budd* for the proposition that insurers have standing to challenge Rule 2019 orders; however, *Baron & Budd* involved a plan which was not insurance neutral. 321 B.R. at 159. In *Combustion Engineering*, the Third Circuit recognized that insurance neutral plans are possible, and that an insurer does not have standing to challenge such insurance neutral provisions of a plan. 391 F.3d at 218. In this case, plans have not yet been conceived, and therefore, any impact that the Revised Rule 2019 Orders may have on Appellants is contingent and speculative.

327 B.R. at 558-559 (Emphasis added.)

{9486346: }

6

18. Westchester mistakenly relies upon motions to compel directed to abuse survivors and other wholly dissimilar creditor groups. These cases are easily distinguishable, and Westchester has failed to show that any further compliance with Rule 2019 is required. The Law Firms' 2019 Statement already includes more disclosures than its peer counsel in other Diocesan cases, including as to fee sharing and litigation financing arrangements - there is none.

19. Westchester cites (at page 17) to an Order in *Lehman Brothers Holdings, Inc.*[17] which granted a motion to compel an "ad hoc" group to provide information pursuant to Rule 2019. The Motion explained that the "ad hoc" group consisted of eleven creditors holding over $20 **billion** in claims, a far cry from the parishes and other entities which will ultimately relinquish its claims as described, *supra*.[18] Any "economic interest" interest of the Catholic Affiliates is wholly dissimilar from the ad hoc group, and the affiliates are not acting "in concert" as the Lehman "ad hoc" group, which filed its own competing chapter 11 plan.[19]

20. *Northwest Airlines Corp.*, 363 B.R. 701 (Bankr. S.D.N.Y. 2007) required Rule 2019 disclosure by an "ad hoc" committee. That committee was, however, a committee of "Equity Security Holders" which held over 16 million shares of stock as well as an aggregate of $164 million in claims against the Debtor.[20] The individual equity holders each agreed to be members of the committee, and the law firm was retained by the committee and agreed to be paid for work on

---

9 *Collier's Bankruptcy*, ¶2019.04 reiterated this distinction: "In *Kaiser Aluminum*, the district court distinguished *Baron & Budd* because the latter case involved a plan that was not insurance neutral, whereas in *Kaiser Aluminum* there was no plan on file at the time of the decision."

Here, as in *Kaiser Aluminum*, the insurer-movants might not have standing to seek relief under Rule 2019 unless and until a determination is made that the proposed plan is not "insurance neutral."

[17] *Lehman Brothers Holdings, Inc.*, Case No. 08-13555, Dkt. No. 16107 (Bankr. S.D.N.Y. April 18, 2011).
[18] *Id*. Dkt. No. 15461.
[19] *Id*.
[20] *Northwest Airlines Corp.*, 363 B.R. 701, 702 (Bankr. S.D.N.Y. 2007)
{9486346: }

behalf of the committee, rather than individual equity holders.[21] The law firm was potentially entitled to a performance fee in the committee's discretion, and payment of the firm's fees was subject to it being paid as a committee of equity security holders by the estate.[22] The driving premise of the additional disclosure was to require, at the debtor's request, the equity security holders/their committee, to disclose the holders' specific amount of stock in the debtor, since the law firm's Rule 2019 statement failed to include this information, clearly required under Rule 2019(c)(3)(B).[23]

21.     Also, while it was noted that the equity holders had appeared together as the "Ad Hoc Committee of Equity Security Holders," the court relied upon the above analysis and the committees' actual makeup as a "formal organization of a group of creditors…who have elected to consolidate their collection efforts," in requiring the committee to file a Rule 2019 statement.[24] The Catholic Affiliates' and Law Firms' use of "Parish Steering Committee," without any of the hallmarks in *Northwest*, does not transform the committee into one for which a separate Rule 2019 statement should (or could) be filed.

22.     The bankruptcy court in *Northwest Airlines Corp.*, specifically recognized that a law firm which represents several individual clients, may be the only entity, on its own behalf, required to file a Rule 2019 statement. *In re Northwest Airlines Corp.*, 363 B.R. 701, 703 (Bankr. S.D.N.Y. 2007)(*citing CF Holding Corp.*, 145 B.R. 124, Bankr. D. Conn. 1992)(also cited by Westchester).

23.     Also, *In re Wash. Mut. Inc.*, 419 B.R. 271, 275 (Bankr. DE 2009) addressed a dissimilar group of noteholders, where the group never represented less than all of the group, and the group's positions were premised upon its collective $1.1 billion in holdings.  In contrast, for example, the Law Firms filed the insurance adversary proceeding complaint as attorneys solely for the parishes,

---

[21] *Id*. at 702-703.
[22] *Id*. at 702.
[23] *Id*.
[24] *Id*. at 703.
{9486346: }

as plaintiffs in the proceeding (not its other Catholic affiliate entity clients). Further, the Catholic Affiliates' position in the bankruptcy case is not premised upon its collective claim amount, which is unliquidated and contingent.

24. Westchester draws too fine of a line in questioning the use of "Parish Steering Committee" and the varied makeup of the Catholic Affiliates. Use of "Parish Steering Committee" or the like is not uncommon in Diocesan cases. For example, the parishes joined the motion to compel cited by Westchester in *Archdiocese of Saint Paul*, as the "Parish Group," and at the hearing the Court asks for the "Parish committee? Parish group."[25] However, counsel for the parishes, like the Law Firms here, discloses in its Rule 2019 statement that it had been retained by each of the parishes (not a committee) to represent the parishes in the bankruptcy case.[26] Counsel in the *Archdiocese of Santa Fe* filed a Rule 2019 statement referencing the parishes as the "Parish Steering Committee," along with its other clients, which include a deposit and loan, real estate trust, real estate corporation, and cemetery.[27]

25. Westchester incorrectly asserts that the filing of an instrument, such as an executed power of attorney authorizing counsel to file a claim, is required under Rule 2019.

26. Such a power of attorney might be required for a specific agency relationship, not applicable here. *In re N. Bay Gen. Hosp. Inc.*, 404 B.R. 443, 448, Bankr. S.D. TX 2009), cited by Westchester, involves an agency relationship by virtue of appointment of an 'unsecured creditor agent' in a confirmed plan in a prior bankruptcy case.

---

[25] *In re Archdiocese of Saint Paul & Minneapolis*, Case No. 15-30125, Dkt. No. 973, Joinder of the Parish Group to the Motion by the Debtor Seeking an Order Compelling Compliance with Rule 2019; and Dkt. 987, Hearing Tr. 7:1-3 (Bankr. D. Minn. Feb. 23, 2017).

[26] *See* Exhibit A, Amended Verified Statement of Represented Parishes Under Bankruptcy Rule 2019, *Archdiocese of Saint Paul and Minneapolis*, Dkt. No. 212.

[27] *See* Notice of Filing Bankruptcy Rule 2019 Disclosure, *Roman Catholic Church of the Archdiocese of Santa Fe*, Case No. 18-13027, Dkt. No. 263.

{9486346: }

9

27.     *In re Ionosphere Clubs*, 101 B.R. 844, 847, 851-852 (Bankr. S.D.N.Y. 1989) addresses the "agency relationship" and requirements of a consumer union nonprofit organization acting as an "agent" in filing claims for certain ticket holders.  Likewise, a purported agent-energy services company, filed claims for unidentified gas producers, in *In re Enron Corp.*, 326 B.R. 497, 498 (Bankr. S.D.N.Y. 2005).

28.     The filing of a power of attorney or similar document by an agent is not required as to the Law Firm's representation, as attorneys for each of the Catholic Affiliates.

29.     This distinction is apparent when considering the customary Official Form 410, used to file claims on behalf typical creditors such as the Catholic Affiliates.[28]  The form permits filing by "the creditor's attorney **or** authorized agent" [emphasis added].[29]  In contrast, in addition to filing a claim using Form 410, under the Bar Date Order for Filing Proofs of Claim in this bankruptcy case, a claim by survivor claimants should be accompanied by the detailed Confidential Sexual Abuse Claim Supplement, presumably filed by the survivor.[30]

30.     The motions to compel in *Diocese of Rochester, Archdiocese of Saint Paul & Minneapolis*, and the *Diocese of Camden* were directed to the survivor's claimants' counsel,[31] not firms representing parishes or other Catholic affiliate entities.

---

[28] https://www.uscourts.gov/forms/bankruptcy-forms/proof-claim-0.
[29] *Id*.
[30] Bar Date Order Establishing April 15, 2021 as the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof, dated November 6, 2020, Dkt. No. 214; p. 5, and Schedule 1, Confidential Sexual Abuse Claim Supplement, p. 1, indicating "If you have and attorney, **you** should complete this form with the assistance of counsel" [emphasis added].

[31] *See* Continental's Motion to Compel Claimant's Attorneys to Make Mandatory Rule 2019 Disclosures, *Diocese of Rochester*, (Bankr. W.D.N.Y.), Case No. 19-20905, Dkt. No. 1960 (compelling the claimant's attorneys listed in appendix A to file disclosures under Rule 2019); *see also* Joint Motion to Compel the Claimants' Attorneys to Submit the Disclosures Required by Federal Rule of Bankruptcy Procedure 2019, *Diocese of Camden, New Jersey*, Case No. 20-21257, Dkt. No. 1311.

{9486346: }

31. The motion to compel in *Diocese of Rochester*, was premised upon the likely existence of contingency fee arrangements between the survivors and their counsel, which would give their counsel an economic stake in the outcome of the bankruptcy case.[32] Jeff Anderson & Associates, P.A. (the "Anderson Firm") represents approximately 178 of approximately 565 survivor-claimants.[33] The movant-insurer cited to *Archdiocese of Saint Paul & Minneapolis*, where the bankruptcy court noted that based on upon its similar representation of a large number of claimants on a contingency, "the law firm had 'a bigger economic interest' than anyone else in the case."[34]

32. Westchester's identical citation here, to "'a bigger economic interest' than anyone else," as to Woods Oviatt and Elsaesser Anderson, is confounding.

33. Further, as set forth in the *Diocese of Rochester* order, and as discussed by the Court in colloquy with counsel[35] and the separate Motion Under Rule 2004,[36] there was a substantial dispute regarding litigation financing of law firms, which could conceivably impact on their positions taken in the chapter 11 case. Thus, the Rule 2019 motion and order addressed the unique factual background of counsel in that case. Westchester's causal attempt to simply adopt that order as to the Catholic Affiliates, ignores these clear distinctions.

34. Westchester's citation to motions and orders directing compliance with Rule 2019 all pertain to other types of claimants such as asbestos claimants, in *In re Kaiser Aluminum Corp.*, 327 B.R. 554 (D. Del. 2005), or tort claimants or sex abuse claimants.

---

[32] *Diocese of Rochester*, (Bankr. W.D.N.Y.), Case No. 19-20905, Dkt. No. 1960, p. 4.
[33] *Id*. at pp. 3-4.
[34] *Id*. at p. 8, *citing*, *In re Archdiocese of Saint Paul & Minneapolis*, Case No. 15-30125, Dkt. 987, Hearing Tr. 36:8-12 (Bankr. D. Minn. Feb. 23, 2017).
[35] *Diocese of Rochester*, (Bankr. W.D.N.Y.), Case No. 19-20905, Dkt. No. 2127, Hearing Tr., April 19, 2023, p. 9.
[36] Notice of Continental's Motion Under Bankruptcy Rule 2004 For Disclosure of Claimant Counsel Litigation Financing Arrangements, dated February 21, 2023, *Diocese of Rochester*, (Bankr. W.D.N.Y.), Case No. 19-20905 Dkt. No. 1959, p. 2.

35.     As described in *Baron & Budd, P.C.*, 321 B.R. 147, 166-167 (Dist. N.J. 2005), cited by Westchester, compliance with Rule 2019 provides disclosure during the plan reorganization process, including, preventing parties from receiving distributions which they are not entitled, assuring equality of distribution among creditors, and preventing an "inside group" from securing a dominant position in the reorganization.  These considerations are simply not present as to the Catholic Affiliates.

36.     Westchester cites (at page 19) to *Archdiocese of St. Paul & Minneapolis*, but that motion and resulting order was directed to the Anderson Firm that represented several hundred abuse survivors who filed proofs of claim, and the Court questioned whether the Anderson Firm itself had an economic interest: "what does the representative have to gain. That's the point of the rule here."[37] Indeed, it was the Diocese itself that filed the motion to compel disclosure by the Anderson attorneys,[38] and the "Parish Group" on behalf of numerous Parishes within the Diocese filed a joinder of the request for disclosure under Rule 2019.[39]

37.     This is no different than the *Rochester* order and motion to compel in which the contested issue was disclosure by the law firm representing the abuse claimants of litigation financing arrangements.  The motion for Rule 2019 compliance asserted:

> Whereas here, claimants are represented by the same few law firms negotiating the terms of a plan for their different claimant clients to vote on, the possibility of conflicts is obvious. It is exactly for this reason that rule 2019 exists, and Continental moves to enforce the rule's mandatory disclosures.
>
> Compounding the need for Rule 2019 disclosure are the likely fee arrangements between claimants and counsel, which would give the lawyers a direct economic stake in the outcome of this case.[40]

---

[37] *In re Archdiocese of St. Paul & Minneapolis*, Case No. 15-30125, Dkt. No. 987, Tr. 5:19-20.
[38] *Id*. at Dkt. No. 965.
[39] *Id*. at Dkt. No. 973.
[40] *Diocese of Rochester*, Dkt. No. 1960, p. 4.

{9486346: }

38. Likewise, in *Diocese of Camden*, several insurance carriers moved to compel attorneys who represented abuse victims to make disclosure pursuant to Rule 2019.[41]

39. In stark contrast, these concerns as to a direct economic stake, are not present with the Law Firms and Catholic Affiliates.

40. Notwithstanding, in its Rule 2019 Statement filed herewith, the Law Firms have attempted to comply to the extent possible with the requested disclosures. This includes disclosure, that there is no agreement for fee-sharing, co-counsel, referral, or other financing arrangements, (including litigation financing) with third parties providing for payment of the Law Firms' fees and costs.[42] Each of the Law Firms holds no claim against or has any interest in the Debtor.[43] There is no instrument authorizing the "Parish Steering Committee" to act on behalf of the Catholic Affiliates.[44]

41. To be clear, other law firms representing Catholic affiliate entities in recent Diocesan bankruptcy cases, have not included an exemplar retainer agreement with its Rule 2019 statement.[45] The Law Firms' Rule 2019 Statement conforms to such filings and includes additional disclosure to address Westchester's requests.

42. Based on the foregoing, The Law Firms' Rule 2019 Statement is sufficient under Rule 2019, and no additional disclosure is required.

**WHEREFORE**, the Law Firms and Catholic Affiliates respectfully submit that the Motion to Compel should be denied.

Dated: February 29, 2024

---

[41] *Diocese of Camden, New Jersey*, Case No. 20-21257, Dkt. No. 1311.
[42] *See* Rule 2019 Statement.
[43] *Id*.
[44] *Id*.
[45] *See* Exhibit A.

{9486346: }

Respectfully submitted,

WOODS OVIATT GILMAN LLP

By: /s/ Timothy P. Lyster
Timothy P. Lyster, Esq.
1900 Bausch & Lomb Place
Rochester, New York 14604
585.987.2894
tlyster@woodsoviatt.com

/s/ Ford Elsaesser
ELSAESSER ANDERSON, CHTD.
J. Ford Elsaesser, Esq.
320 East Neider Avenue, Suite 102
Coeur d'Alene, Idaho 83815
(208) 667-2900
firm@eaidaho.com