**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>THE ROMAN CATHOLIC DIOCESE OF SYRACUSE, NEW YORK,<br><br>            Debtor. | Case No. 20-30663-5-wak<br><br>Chapter 11<br><br>Hon. Wendy A. Kinsella<br><br><br>Hearing Date:  March 7, 2024<br>Hearing Time:  1:00 p.m. Eastern Time<br>Location:  James M. Hanley U.S. Courthouse and Federal Building, 100 South Clinton Street, Syracuse, NY 13261 |

**WESTCHESTER FIRE INSURANCE COMPANY'S**
**REPLY IN FURTHER SUPPORT OF**
**MOTION TO COMPEL "PARISH STEERING COMMITTEE" AND ITS LAW FIRMS**
**TO MAKE MANDATORY RULE 2019 DISCLOSURES**

                                **O'MELVENY & MYERS LLP**
                                TANCRED V. SCHIAVONI, ESQ.
                                REDWAN SALEH, ESQ.
                                Times Square Tower
                                7 Times Square
                                New York, NY 10036
                                Telephone:  (212) 326-2000
                                Email: tschiavoni@omm.com
                                              rsaleh@omm.com

                                **CLYDE & CO US LLP**
                                MARIANNE MAY, ESQ.
                                200 Campus Drive, Suite 300
                                Florham Park, NJ 07932
                                Telephone: (973) 210-6700
                                Email: marianne.may@clydeco.us

*Counsel for Westchester Fire Insurance Company*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1
    A.    The Parish Steering Committee and its Law Firms' Statement Is Deficient. ........ 3
    B.    Westchester Fire Maintains Party-In-Interest Standing, To the Extent and Until It Can Confirm Its Exclusion Under the Revised Plan and Disclosure Statement.................................................................................................................. 8
CONCLUSION ............................................................................................................................ 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*City of Lafayette v. Okla. P.A.C. First Ltd. P'ship (In re Okla. P.A.C. First Ltd. P'ship),*
 122 B.R. 387 (Bankr. D. Ariz. 1990)........................................................................................ 7

*In re CF Holding Corp.,*
 145 B.R. 124 (Bankr. D. Conn. 1992) .................................................................................. 5, 8

*In re Congoleum Corp.,*
 426 F.3d 675 (3d Cir. 2005) .................................................................................................... 8

*In re N. Bay Gen. Hosp., Inc.,*
 404 B.R. 443 (Bankr. S.D. Tex. 2009) .................................................................................... 7

*In re Northwest Airlines Corp.,*
 363 B.R. 701 (Bankr. S.D.N.Y. 2007)..................................................................................... 4

*In re Wash. Mut., Inc.,*
 419 B.R. 271 (Bankr. D. Del. 2009) .................................................................................... 5, 7

**Other Authorities**

9 COLLIER ON BANKRUPTCY ¶ 2019.01 (16th 2023)................................................................... 13

9 King et al., COLLIER ON BANKRUPTCY, ¶ 2019.01 (15th ed. 2009) .......................................... 12

Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy*, 26 CONN. L. REV. 913, 939-40 (1994) ............. 10

Sparkle L. Alexander, Note, *The Rule 2019 Battle: When Hedge Funds Collide With The Bankruptcy Code*, 73 Brook. L.Rev. 1411, 1420 (2008) ........................................................ 12

**Rules**

Fed. R. Bankr. P. 2019............................................................................................... 1, 12, 13

FED. R. BANKR. P. 2019(a)(1) ................................................................................................... 13

Fed. R. Bankr. P. 2019(b) ........................................................................................................ 11

Westchester Fire Insurance Company ("Westchester Fire") files this reply memorandum in further support of its motion [Dkt. No. 1686] ("Motion") and in response to the Parish Steering Committee and its Law Firms' opposition to the Motion [Dkt. No. 1711] ("Opposition"), and their statement pursuant to Bankruptcy Rule 2019 [Dkt. No. 1710] ("Statement"), and respectfully states as follows:

## PRELIMINARY STATEMENT[1]

1. The Statement filed by the *ad hoc* committee and its Law Firms does not comply with Rule 2019 for five reasons.

2. ***First***, the Law Firms have appeared and signed pleadings on behalf of the "Parish Steering Committee" and not on behalf of individual non-debtor members. Subpart (c)(1) of Rule 2019 mandates that counsel appearing on behalf of an *ad hoc* committee must disclose the instrument authorizing the Law Firms and the *ad hoc* committee to file papers and stipulations on behalf of its members. The Law Firms and the Parish Steering Committee have not done so.

3. ***Second***, the Law Firms state that an agreement exists, which authorizes counsel's retention for each of the 250-plus non-debtor entities but have not provided that agreement or made a showing of ***when*** such an agreement was entered into and signed by all such 250-plus non-debtors (Dkt. No. 1710 at 4-9), and ***by whom***. This is important because the proposed plan is predicated on the members of the *ad hoc* committee supposedly having pledged half of the funding for the plan. The lack of disclosure also leaves the Court with no indication that the *ad hoc* committee represented the 250-plus non-debtors when it signed pleadings in the adversary proceeding or when the proposed plan was filed.

---

[1] Unless otherwise stated, all terms undefined correspond to their respective meaning in the Motion, "Ex." refers to exhibits attached to the February 16, 2024, Declaration of Redwan Ibn Saleh, Esq., all emphasis is added, and internal citations or quotations are removed.

4.      ***Third***, the *ad hoc* committee concedes in its Opposition that the operating reports show that the Debtor paid the Law Firms for "Parish Legal Representation" (Mot. at ¶¶ 16-17) and the Statement offers nothing to show that any actual payments were made by the *ad hoc* committee members.

5.      ***Fourth***, the Statement filed by the Law Firms and the *ad hoc* committee lacks any showing that the members of the *ad hoc* committee verified the statements regarding joint representation and engagements, agreed to a multi-party engagement or sought or obtained the necessary waivers to do so.

6.      ***Fifth***, contrary to the contention that Parish Steering Committee has no "direct economic stake" in the Debtor, the non-debtors asserted claims against the Debtor and the Debtor has paid their fees. Yet there is no disclosure of the claims and interests held by the members of the Parish Steering Committee.

7.      While the Debtor and non-debtor plaintiffs in the adversary proceeding dismissed Westchester Fire, they did so without prejudice—and closely before Westchester Fire filed this reply memorandum—the Debtor filed revised version of the proposed plan and disclosure statement. Dkt. Nos. 1718, 1719. Westchester Fire has not had the opportunity to fully review the Debtor's amendments, and whether the Debtor has adequately implemented Westchester Fire's dismissal as promised through modifications to the proposed plan. Until Westchester Fire can confirm that the amendments accurately reflect the dismissal, Westchester Fire maintains its status as a party-in-interest in this bankruptcy, given that the proposed plan sought to assign and limit its contractual rights. *See In re Heating Oil Partners, LP*, 422 F. App'x 15, 17 (2d Cir. 2011) ("[A] party in interest . . . may raise and may appear and be heard on any issue in a case under [Chapter 11]").

2

A.  **The Parish Steering Committee and its Law Firms' Statement Is Deficient.**

8.  Contrary to their contention that no further disclosure is required, the Parish Steering Committee and its Law Firms are not exempt from Rule 2019's express statutory disclosure obligations, as summarized in the Motion. Their Statement falls short of certain key mandatory disclosures for several reasons.

9.  *First*, the Law Firms have signed pleadings and stipulations on behalf of the Parish Steering Committee, as recent as February 20, 2024 (see below), and appeared for that *ad hoc* committee at the February 6, 2024 hearing[2]; the Law Firms have also entered other stipulations and filed substantive briefs and objections[3]—all while stating that its *ad hoc* committee client represents "all of the **119 active parishes** located in the Diocese" and "**certain other [previously unidentified] Diocese-affiliated entities**."[4] Mot. at ¶ 12.

> Dated: Rochester, New York
> February 20, 2024
>
> WOODS OVIATT GILMAN LLP
>
> By: */s/ Timothy P. Lyster*
> Timothy P. Lyster, Esq.
> 1900 Bausch & Lomb Place
> 14604
> 585.987.2894
> tlyster@woodsoviatt.com
>
> ELSAESSER ANDERSON, CHTD.
> J. Ford Elsaesser, Esq.
> 320 East Neider Avenue, Suite 102
> Coeur d'Alene, Idaho 83815
> (208) 667-2900
> firm@eaidaho.com
>
> *Attorneys for The Parish Steering Committee*

Dkt. No. 187. at 2 (*Stipulation and Order Regarding Time to Respond to Complaint*).

---

[2] Ex. 1 (Feb. 6, 2024, Hearing Tr.) at 7:7-9, 13:20-24.

[3] *See, e.g.,* Dkt. No. 345-1 (*Stipulation Staying Continued Prosecution of Certain Lawsuits*) at 14-15; Adv. Pro. No. 21-50002-5-wak, Dkt. No. 21-1 (*Stipulation* regarding voluntary dismissal of certain named parties), at 8; *see also* Dkt. Nos. 243 (*The Parish Steering Committee's Opposition to Motion to Subpoena Documents and Testimony*); 1644 (*Omnibus Reply of the Parish Steering Committee*).

[4] Dkt. No. 243 at 1 n.1; Dkt. No. 1644 at 1 n.1.

3

10. Subpart (c)(1) of Rule 2019 require counsel appearing on behalf of the *ad hoc* committee to disclose the instrument authorizing the Law Firms and the *ad hoc* committee to file papers and stipulations on behalf of its members. *See* Mot. at ¶ 28; Fed. R. Bankr. P. 2019(c) (dictating that the verified statement "shall include . . . the pertinent facts and circumstances concerning . . . the formation of the group or committee . . . with respect to an entity, the employment of the entity, . . . a copy of the instrument, if any, authorizing the entity, group, or committee to act on behalf of creditors . . ."). As stated in *Baron & Budd, P.C.*,, Rule 2019's requirement for "pertinent facts and circumstances in connection with the employment of the entity" contemplates disclosures of fee-sharing, co-counsel or joint counsel arrangement if any. 321 B.R. 147, 166, 160 (D.N.J. 2005). The Statement does not do so and thus does not comply with Rule 2019.

11. In the Statement, the Law Firms state that they represent over 250 non-debtor entities (some of whose names are not reflected in, and in fact are in addition to, the listed Participating Parties to the Plan, *see* Dkt. No. 1648), and that "there is **no instrument authorizing the Parish Steering Committee or any committee** to act on behalf of" all these non-debtor entities. Dkt. No. 1710 at ¶¶ 2-5. If this is indeed true, there is no explanation in the Opposition or the Statement on how the Parish Steering Committee has, through its counsel, filed stipulations and substantive motions on behalf of all parishes and other non-debtor entities, and specifically the named plaintiffs in the adversary proceeding. *See, e.g.,* Dkt. No. 1644; Adv. Dkt. No. 187.

12. As Westchester Fire stated in its Motion, when an *ad hoc* committee appears as such on behalf of multiple creditors, that *ad hoc* committee is required to provide information "plainly required by Rule 2019 on behalf of each of its members." *In re Northwest Airlines Corp.*, 363 B.R. 701, 703 (Bankr. S.D.N.Y. 2007) (granting motion to compel mandatory Rule 2019

disclosures and ordering the ad hoc committee of shareholders to comply with Rule 19 in three business days); *In re Wash. Mut., Inc.*, 419 B.R. 271, 275 (Bankr. D. Del. 2009) (requiring members of the *ad hoc* committee to make Rule 2019 disclosures because the group represents "multiple creditors holding similar claims," "filed pleadings and appeared in [] chapter 11 cases collectively, not individually," and retained common counsel "that has never advised this Court that it is representing less than all the Group."). Thus, the Parish Steering Committee and its Law Firms should comply with their full obligations under Rule 2019.

13.    **Second**, the Law Firms' Statement identifies over 250 non-debtor entities they represent, and states that "[e]ach of the Catholic Affiliates has executed a representation agreement with the Law Firms (together in one agreement, as co-counsel)" for the purpose of allowing the Law Firms to represent them all in the bankruptcy matter. Dkt. No. 1710 at ¶¶ 4-5. But there is no such proof provided, and the Law Firms have failed to submit any "agreement(s)"—let alone any "instrument" to show **when** or **who** authorized the Law Firms to act on behalf of all such entities, and whether any multi-party engagement waiver was part of such agreement—as required by Rule 2019. *See* Fed. R. Bankr. P. 2019(c) (dictating that the verified statement "shall include . . . a copy of the instrument, if any, authorizing the entity, group, or committee to act on behalf of creditors . . ."); *In re CF Holding Corp.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992) (reflecting that an attorney representing multiple creditors must file a copy of the document empowering the attorney to act on the creditors' behalf).

14.    The Opposition's argument, that entities in other diocesan bankruptcies have not provided a "retainer agreement" with Rule 2019 disclosures (*see* Dkt. No. 1711 at ¶ 41), ignores the fact that Rule 2019's requirements are mandatory regardless of how other parties in other matters have avoided complying fully, especially given the common trend for parties to comply

5

with their obligations only after a motion to compel is filed. *See, e.g.,* Mot. at ¶ 46 (citing *In re Motors Liquidation Co. et al., f/k/a General Motors Corp., et al.*, No. 09-50026 (REG), Dkt. 9207, 9673 (Bankr. S.D.N.Y. 2011)).

15. **Third**, the Parish Steering Committee and its Law Firms concede that the Law Firms were **paid by the Debtor**, as reflected among the Debtor's operating reports. Mot. at ¶¶ 16-17. Yet, the Statement states that the "Catholic Affiliates have agreed to pay each of the Law Firms **on an hourly basis**." Dkt. No. 1710 at ¶ 6. This stand-alone statement is not followed by any disclosure as to who of the Parish Steering Committee members (if any) actually paid the Law Firms (on an hourly basis or at all).

16. **Fourth**, the Statement is only "verified" by the Law Firms, but there is no showing that any actual *Parish Steering Committee members* verified the statements regarding joint representation and engagements, agreed to a multi-party engagement or sought or obtained the necessary waivers to do so. Moreover, in a footnote, the Opposition states that several "entities listed on the Participating Party list" (including Propagation of Faith) are not being represented by the Law Firms (*see* Dkt. No. 1711 at n.8) but there has been no explanation or disclosure on who represents such entities, who appraised them of the filings, appearances, and statements in support of the proposed plan, and when or how these entities (as opposed to others) were excluded in any joint representation or agreement. The lack of clarity as to the *ad hoc* committee and its counsel (who have negotiated and stipulated to the terms of a proposed plan for purported number of members, many of whom are fundamentally different from other members) directly relates to the purpose of Rule 2019's requirements and the need for further compliance. Therefore, the Statement is deficient and should be amended accordingly.

17. And *finally*, the Debtor has confirmed that approximately "half" of the $100 million monetary contribution from the Diocese and Participating Parties are expected to come from non-debtor Participating Parties, most of whom the Parish Steering Committee and its Law Firms represent.[5] The Opposition's argument, that the requirements under Rule 2019 should be avoided because the "economic stake" at issue is not the same as in other diocesan cases (Dkt. No. 1711 at ¶ 35-39) ignores the reality of the economic stake of hundreds of members represented by the Parish Steering Committee and its Law Firms. These non-debtors asserted claims against the Debtor and the Debtor has paid their fees. Yet there is no disclosure of the claims and interests held by the members. Lack of such disclosures and clarity with respect to such representation thus reflect the purpose behind why Congress enacted Rule 2019 to be "on its face, . . . extremely broad,"[6] and maintain "certain ethical standards and approach all reorganization related matters openly and subject to the scrutiny of the court."[7] Thus, the Parish Steering Committee and its Law Firms should amend the Statement accordingly.[8]

---

[5] Dkt. No. 1566 at 2; Corky Siemaszko, *Catholic diocese agrees to pay $100 million settlement to hundreds of abuse victims*, NBC NEWS, July 28, 2023 (accessible at https://www.nbcnews.com/news/us-news/catholic-diocese-agrees-pay-100-million-settlement-hundreds-abuse-vict-rcna96904).

[6] *City of Lafayette v. Okla. P.A.C. First Ltd. P'ship (In re Okla. P.A.C. First Ltd. P'ship),* 122 B.R. 387, 390 (Bankr. D. Ariz. 1990).

[7] *Baron & Budd, P.C.*, 321 B.R. at 165.

[8] *See, e.g., In re Wash. Mut., Inc.*, 419 B.R. 271, 275 (Bankr. D. Del. 2009) (members of an ad hoc committee must make Rule 2019 disclosures because they represent "multiple creditors holding similar claims," "filed pleadings and appeared in these chapter 11 cases collectively, not individually," and retained common counsel "that has never advised this Court that it is representing less than all the Group"); *In re N. Bay Gen. Hosp., Inc.*, 404 B.R. 443, 452 (Bankr. S.D. Tex. 2009) ("Any entity seeking to represent more than one creditor in a Chapter 11 case must file an application that conforms with" these requirements); *In re CF Holding Corp.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992) (an attorney representing multiple creditors must file a copy of the document empowering the attorney to act on the creditors' behalf).

B. **Westchester Fire Maintains Party-In-Interest Standing, To the Extent and Until It Can Confirm Its Exclusion Under the Revised Plan and Disclosure Statement.**

18. Westchester Fire has not had the opportunity to review the Debtor's amended disclosure statement and proposed plan (revisions that are to be heard by the Court next month), as they were filed immediately before Westchester Fire was to file its reply memorandum.

19. Until Westchester Fire can confirm that the Debtor has revised the proposed plan and its disclosure statement to reflect Westchester Fire's dismissal from the adversary proceeding and any impact to Westchester Fire's rights under its contracts, Westchester Fire continues to have party-in-interest standing with respect to disclosures required from the plan proponent creditors and their *ad hoc* committee or counsel. The Parish Steering Committee and its Law Firms seek approval from the Court for the proposed plan that is supported by "***all of the parishes*** and ***other affiliated entities***"[9] who are members of the *ad hoc* committee. These members include Westchester Fire's contractual, non-debtor counterparties to insurance contracts identified in plan supplements (Dkt. No. 1604-4 (*List of Insurance Policies*)). The initial version of the proposed plan sought to assign *some but not all* of Westchester Fire's insurance contracts' rights to a plaintiff-controlled trust, and enjoin contract obligations owed to Westchester Fire by non-debtor counterparties. *See generally* Dkt. Nos. 1565-66, 1648, 1641. Thus, Westchester Fire would maintain its party-in-interest status until it can confirm that the Debtor's recent revisions to the proposed plan and disclosure statement reflect Westchester Fire's dismissal and full exclusion from the plan's purported assignment, injunction, and releases. *Id.*; *In re Congoleum Corp.*, 426 F.3d 675, 685 (3d Cir. 2005) (holding that "insurers are entitled to have standing" in bankruptcy proceedings, including issues regarding the identity of parties represented by counsel, the capacity

---

[9] Ex. 1 (Feb. 6, 2024, Hearing Tr.) at 13:20-24.

8

in which they are representing parties, and whether they have conflicts, issues "based on procedural due process concerns that implicate the integrity of the bankruptcy court proceeding as a whole.").

## CONCLUSION

WHEREFORE, Westchester Fire respectfully requests the Court grant the Motion in its entirety, and award such other relief as is just and proper.

Dated:  March 5, 2024,    Respectfully submitted,

/s/ Tancred V. Schiavoni
**O'MELVENY & MYERS LLP**
TANCRED V. SCHIAVONI (NDNY Bar # 518616)
REDWAN SALEH (NDNY Bar # 701110)
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Email:  tschiavoni@omm.com
         rsaleh@omm.com

**CLYDE & CO US LLP**
MARIANNE MAY (NDNY Bar # 519327)
200 Campus Drive, Suite 300
Florham Park, NJ 07932
Telephone: (973) 210-6700
Email: marianne.may@clydeco.us

*Counsel for Westchester Fire Insurance Company*

9