# **Exhibit 5**

Child Protection Protocols

**CHILD PROTECTION PROTOCOLS FOR
THE ROMAN CATHOLIC DIOCESE OF SYRACUSE, NEW YORK**

**GUIDING PRINCIPLES**

The Roman Catholic Diocese of Syracuse, New York pledges:

1. To recognize forthrightly the tragedy of sexual abuse of minors in society and in the Church.  We are committed to recognizing and addressing the problem.

2. To maintain focus on the healing, reconciliation, and spiritual well-being of persons who were sexually abused as minors. We pledge to reach out to survivors of abuse to offer whatever pastoral and professional care we can, and to address their spiritual and emotional needs. We pledge also to assist these survivors of sexual abuse in locating resources and providers to address their emotional and mental health needs that arise from the tragic experience of sexual abuse.

3. To assist both accusers and accused in knowing their respective rights under the law.

4. To notify appropriate civil authorities, even when not required by civil law, of every report of suspected sexual abuse of a minor.

5. To receive every accusation of suspected sexual abuse of a minor with compassion and to treat it with seriousness and diligent attention.

6. To make our policies and procedures regarding the sexual abuse of minors known and available in openness and transparency and to follow these policies, practices and procedures consistently in each case.

7. To educate the Church community – youth and adults – in matters related to the sexual abuse of minors, especially its identification, prevention, and reporting.

8. To make known to all clergy and church personnel the provisions of these Child Protection Protocols, along with a "Code of Conduct" to guide interactions with minors, and to take reasonable steps to ensure compliance with these Child Protection Protocols.

9. To undertake a comprehensive practice of screening clergy and church personnel whose scope of duties includes Direct Contact with Children.

17433013.1

## DEFINITIONS

As used in these Child Protection Protocols, the following terms shall have the meaning stated:

i. "**Accused**" – A person who is suspected of Sexual Abuse of a Minor, or who has been reported as having sexually abused one or more Minors. Using this term does not indicate a judgment of guilt or innocence.

ii. "**Accuser**" – A person making a report or Accusation of suspected Sexual Abuse of a Minor, whether that person is the Survivor, a family member, or other concerned person. Using this term does not indicate a judgment on the veracity or falsehood of the Accusation.

iii. "**Accusation**" – A report of suspected Sexual Abuse of a Minor received from any source involving a Cleric or any Church Personnel. For the purposes these Child Protection Protocols, a self-report will be treated as an Accusation and will initiate all applicable provisions of this policy.

iv. "**Volunteer**" – Any adult volunteer for the Diocese, parish, or school who has Direct Contact with Children.

v. "**Bishop**" – The sitting Bishop of the Roman Catholic Diocese of Syracuse.

vi. "**USCCB Charter**" –  The most recent and revised Charter for the Protection of Children and Young People issued by the USCCB.

vii. "**USCCB**" – The United States Conference of Catholic Bishops.

viii. "**Chapter 11 Case**" – The Diocese's chapter 11 case filed in the United States Bankruptcy Court for the Northern District of New York and assigned Case No. 20-30663.

ix. "**Church**" – The Roman Catholic Diocese of Syracuse and any affiliated or related parishes, missions, schools, institutions, corporations, and agencies that are accountable to the Bishop.

x. "**Church Personnel**" – An inclusive term of all Employees (other than Clergy) and Volunteers in the service of: the Diocese, any Catholic parish or mission within the Diocese, any Catholic school within the Diocese, and any other corporation or institution affiliated with the Diocese. This term also includes any seminarian, student or candidate for Holy Orders that is not a Cleric.

xi. "**Clergy**" or "**Cleric**" – A bishop, priest or deacon in the Catholic Church, whether incardinated in a diocese or a member of an institute of consecrated life.

xii. "**Code of Conduct**" – The Roman Catholic Diocese of Syracuse Safe Environment Code of Conduct or any subsequent guidelines promulgated by the Diocese governing the conduct for Clergy and Church Personnel.

xiii.     **"Communications Director"** – The person named by the Bishop who has the responsibility of coordinating all communication and activities related to these Child Protection Protocols.

xiv.     **"Compliance Coordinator"** – The person named by the Bishop who oversees and ensures compliance of procedures mandated by these Child Protection Protocols, the USCCB Charter, and Essential Norms, including implementing mandatory background certification and clearances, the auditing of all institutions, and any other applicable policies and procedures published by the Bishop (in consultation with the Safe Environment Committee). Unless another individual is appointed by the Bishop in his sole discretion, the Chancellor of the Diocese shall serve as the Compliance Coordinator.

xv.     **"Consecrated Individuals"** – An inclusive term of all individuals who are not Clergy, who are members of an institute of consecrated life or religious institutes, secular institutes, societies of apostolic life, hermits, and the Order of Consecrated Virgins, and who are involved in any assignment or apostolate, full or part-time, employed or volunteer, in any youth-serving programs or ministries in the Diocese.

xvi.     **"Diocese"** or **"Diocese of Syracuse"** – The Roman Catholic Diocese of Syracuse, New York.

xvii.     **"Diocese Territory"** – The seven (7) New York counties of Diocese include: Broome, Chenango, Cortland, Madison, Oneida, Onondaga, and Oswego.

xviii.     **"Diocesan Review Board"** – The confidential, consultative body appointed by the Bishop to advise him in developing these Child Protection Protocols and other Policies. This body also assesses Accusations of Sexual Abuse of a Minor leveled against Clergy and makes recommendations to the Bishop in connection therewith.

xix.     **"Direct Contact with Children"** – The care, supervision, guidance or control of children, or any interaction with children.

xx.     **"Director"** – The person appointed by the Bishop to manage the processes for handling allegations of Clergy and Church Personnel misconduct and for leading ministerial standards and safe environment in overseeing Accusations and directing investigations. Unless another individual is appointed by the Bishop in his sole discretion, the Chancellor of the Diocese shall serve as the Director.

xxi.     **"Safe Environment Director"** – The person designated by the Bishop who oversees and approves the educational programs required in these Child Protection Protocols, by the Safe Environment Committee or by the USCCB Charter.

xxii.     **"Employee"** – Persons on the payroll (full or part time) for the Diocese or any parish, school, institution, or corporation affiliated with the Diocese.

xxiii.     **"Employer"** – The Secretariat or diocesan office, parish, school, institution, or corporation directly affiliated with the Diocese that immediately employs or oversees the work or ministry of an Employee or Volunteer. The relationship pertains only during the time in

which a person is directly acting within the scope of their employment or volunteer service (cf. also Responsible Supervisor).

xxiv. "**Essential Norms**" – The most recent and revised Essential Norms for Diocesan and Eparchial Policies Dealing with Allegations of Sexual Abuse of Minors by Priests or Deacons document issued by the USCCB that provides norms ensuring that each diocese/eparchy in the United States has procedures in place to respond promptly to all allegations of sexual abuse of minors by Clergy and Seminarians. These norms are complementary to the universal law of the Catholic Church and are to be interpreted in accord with that law.

xxv. "**Independent Professional Investigators**" – An investigative firm hired by the Diocese to investigate claims of Sexual Abuse of a Minor. The firm must have personnel experienced in investigating claims of Sexual Abuse of a Minor. At least one member of the firm must be either a former prosecutor or police officer.

xxvi. "**Inquiry Coordinator**" – The person (usually a canon lawyer) appointed by the Bishop to conduct the Preliminary Inquiry when an Accusation involving Clerics or Seminarians has been made to the Diocese. When an Accusation involving Church Personnel has been made, the Inquiry Coordinator oversees the fact-finding inquiry and serves as advisor to the Employer or Responsible Supervisor of the Accused, who is responsible for conducting the fact-finding inquiry. Unless another individual is appointed by the Bishop in his sole discretion, the Vicar for Clergy Affairs shall serve as the Inquiry Coordinator.

xxvii. "**Inquiry Team**" – Those responsible for conducting the Preliminary Inquiry into an Accusation according to the provisions of these Child Protection Protocols. Team membership varies according to the status of the Accused person: Cleric, Seminarian, Consecrated Individuals, or Church Personnel.

xxviii. "**Mandatory Reporting**" – A report of child abuse, including sexual misconduct that an individual must make under the provisions of the current civil law of the State of New York, as it may be amended from time to time.

xxix. "**Minor**" – A person under the age of eighteen (18). This term also includes any individual who is developmentally disabled or habitually lacks the use of reason as defined in the USCCB Charter (cf. SST, art. 6, §1, 1°).

xxx. "**OCUC**" – The Official Committee of Unsecured Creditors appointed to represent Survivors and other creditors in the Diocese's Chapter 11 Case.

xxxi. "**Perpetrator**" – Anyone who has engaged in any form of Sexual Abuse of a Minor.

xxxii. "**Plan of Reorganization**" – The confirmed chapter 11 plan of reorganization in the Diocese's Chapter 11 Case.

xxxiii. "**Policy**" or "**Policies**" – Any Diocese policies relating to the Sexual Abuse of a Minor, including the Code of Conduct.

xxxiv.    **"Preliminary Inquiry"** – A fact-finding inquiry into an Accusation. The Preliminary Inquiry includes various steps including, informing the proper civil authorities, cooperating with law enforcement, and offering Diocesan counselling to the Survivor. In canon law, Preliminary Inquiry is also referred to as the Prior Investigation, and follows the norms of canon law (c. 1717ff), the USCCB Charter, the USCCB Essential Norms, and these Child Protection Protocols.

xxxv.    **"Program Director"** – The person appointed by the Bishop to provide overall direction for the Safe Environment Program within the Diocese, coordinate the development and implementation the Safe Environment Program by chairing the Safe Environment Committee and convene the Response Team and Review Board. Unless another individual is appointed by the Bishop in his sole discretion, the Safe Environment Director shall serve as the Program Director.

xxxvi.    **"Response Team"** – The group that meets to advise the Bishop or the Responsible Supervisor on appropriate actions to be taken based on the results of the Preliminary Inquiry. Team membership varies according to the status of the Accused: Cleric, Consecrated Individuals, or Church Personnel. The Response Team includes the members of the Inquiry Team, the Program Director, the Victim (Survivor) Assistance Coordinator, the Diocesan counsel, other counsel versed in both canon and civil law. If the Accused is a Cleric, the Bishop and members of the Diocesan Review Board are included as members of the Response Team.

xxxvii.    **"Responsible Supervisor"** – The Employer, superior or highest-ranking supervisor of Clergy, Consecrated Individuals, and Church Personnel. The Responsible Supervisor for:

    a.    Clergy is the Bishop or the major superior of Consecrated Individuals (working with the bishop or superior of the Cleric's place of assignment or residence);

    b.    Consecrated Individuals is the proper superior of their institute (working with the bishop of the place of assignment or residence);

    c.    Church Personnel is the appropriate Employer or highest-ranking supervisor (i.e., diocesan vicar, secretary, pastor, or the principal of the school).

xxxviii.    **"Safe Environment Card"** – The personal identification card that is given to persons, including Clerics, Seminarians, Consecrated Individuals, and Church Personnel, who have successfully passed the background certification, clearances, and safe environment training provided for in these Child Protection Protocols. All Clerics, Seminarians, Consecrated Individuals and Church Personnel must have a Safe Environment Card before working or serving in the Diocese, a Parish, mission, School, institution, corporation, or agency affiliated with the Diocese. A Safe Environment Card will be provided and must be worn whenever a person is involved in youth serving events or activities. Clerics should wear the card visibly and must have it on their person during youth events or activities.

xxxix.    **"Safe Environment Committee"** – A group of diocesan staff designated by the Bishop to serve in the following capacities under the provisions of these Child Protection Protocols:

17433013.1

Program Director, Victim (Survivor) Assistance Coordinator, Communications Coordinator, Safe Environment Director, and Compliance Coordinator.

xl.  "**Seminarians**" – Men accepted by a Diocese (or an institute of consecrated life) as seminary students who seek ordination to the priesthood, individuals (married or single) who are accepted by a Diocese for formation toward ordination to the Permanent Diaconate, or men in formation toward Holy Orders. Until such men are ordained as Clergy, they remain in the lay state.

xli.  "**Sexual Abuse of a Minor**" – (i) any sexual offence as defined in article one hundred thirty of the New York Penal Law committed against a Minor, (ii) incest in the first, second, or third degree as defined in sections 255.27, 255.26 and 255.25 of the Penal Law committed against a Minor, (iii) use of a child in a sexual performance as defined in section 263.05 of the Penal Law; or (iv) any offence included in 18 U.S.C. §§ 2251, 2251A 2252, 2252A, and 2260.

xlii.  "**Sexual Harassment**" – Inappropriate and harassing behavior of a sexual nature directed toward a Minor, which may or may not rise to the level of Sexual Abuse of a Minor, including, but not limited to: (1) derogatory verbal comments of a sexual nature such as epithets, jokes and slurs; (2) unwanted sexual advances; (3) displaying lewd visuals such as posters, photographs, cartoons, drawings or gestures including derogatory sexually oriented materials; (4) physical contact or sexual overtures that interfere with an individual's work or academic performance or which create an intimidating, hostile or offensive working or academic environment; and (5) threats and demands to submit to sexual requests as a condition of continued employment, other benefits, or to avoid some other loss or to offer benefits in return for sexual favors.

xliii.  "**Substantiated Claim**" – A claim for which sufficient evidence exists to establish reasonable grounds for an objective person to believe that the alleged conduct is more likely to have occurred than to not have occurred. Determinations regarding whether a claim against a Cleric is substantiated shall be made by the Bishop upon consultation with the Diocesan Review Board. Determinations regarding whether a claim against Church Personnel other than Clergy is substantiated shall be made by the Safe Environment Committee, in consultation with the Bishop.

xliv.  "**Support Counselor**" – A professional counselor who works with the Survivor.

xlv.  "**Survivor**" – A person who is, or is alleged to be, the injured party or direct subject of Sexual Abuse of a Minor. The term Survivor is generally used to distinguish the person who was or may have been abused from any other person who may be an Accuser (i.e., a parent or guardian).

xlvi.  "**Trustee**" – has the definition given to it in the Plan.

xlvii.  "**Victim (Survivor) Assistance Coordinator**" – A person competent and knowledgeable in the areas of mental health counseling and social services, who is named by the Bishop, to oversee all aspects of the outreach and assistance to Survivors and their immediate family members.

6

# CHILD PROTECTION PROTOCOLS

## 1. Oversight

**1.1.** <u>Diocesan Review Board.</u>  The Diocesan Review Board shall be knowledgeable about the content of these Child Protection Protocols and shall exercise reasonable oversight with respect to the effectiveness of the Child Protection Protocols.

**1.1.1.** According to the USCCB Charter, Dioceses are to have "a review board that functions as a confidential consultative body to the bishop/eparch. Most of its members are to be lay persons not in the employ of the diocese/eparchy (see norm 5 in Essential Norms, 2006). This board is to advise the diocesan/eparchial bishop in his assessment of allegations of sexual abuse of minors and in his determination of a Cleric's suitability for ministry. It is regularly to review diocesan/eparchial policies and procedures for dealing with sexual abuse of minors. Also, the board can review these matters both retrospectively and prospectively and give advice on all aspects of responses in connection with these cases" (art. 2; cf. also Essential Norms, norm 4).

**1.1.2.** Any member of the Diocesan Review Board may recommend, in their own discretion, or pursuant to a request made to the Diocesan Review Board by a Survivor, Accuser, the Victim (Survivor) Assistance Coordinator or any other individual, that any Accusation previously reported to the Diocese and reviewed by the Diocesan Review Board be re-reviewed. A Diocesan Review Board Member that makes such recommendation must provide as a basis for why an Accusation should be re-reviewed either (i) material and credible new information pertaining to the factual basis of the Accusation or (ii) credible information suggesting that the Diocesan Review Board's historical review of an Accusation was materially deficient. Upon the vote of the Diocesan Review Board within twenty-one (21) days of such recommendation, and the agreement of at least two members of the Diocesan Review Board, the Diocesan Review Board or Response Team (as applicable) shall re-review such Accusation, and any files maintained with respect thereto, make a determination with respect to such Accusation, and report their determination to the Bishop. To the extent a claim is re-reviewed by the Diocesan Review Board or Response Team in connection with this provision, the claim inquiry provisions set forth in these Child Protection Protocols shall apply.

**1.1.3.** The Diocesan Review Board shall meet with the Director as often as it determines necessary to assess and evaluate the effectiveness of the Child Protection Protocols at the highest level of the Diocese, but in any event, no less than once annually.

7

**1.1.4.** The Diocesan Review Board shall complete specialized training related to trauma and secondary trauma and recognition and reporting of Sexual Abuse of a Minor.

**1.2.** <u>Diocesan Review Board Members</u>. The Bishop will appoint members to five-year concurrent terms on the Diocesan Review Board. The Diocesan Review Board shall consist primarily of lay persons not in the employ of the Diocese. The Board shall act in full conformity with the USCCB Charter, the USCCB Essential Norms, the Diocesan safe environment program, and all other applicable provisions of canon and civil law.

**1.2.1.** The Diocesan Review Board shall at all times include a licensed psychiatrist, a psychologist or social worker; a parent; a member of law enforcement; one or more Survivor(s); and a non-Catholic. At least one member shall be a priest who is an experienced and respected pastor. At least one member should have particular expertise in the treatment of the sexual abuse of minors.

**1.2.2.** Upon adoption of these Child Protection Protocols, the members of the OCUC shall form a nominating committee and nominate a chair thereof to provide a list of five Survivors for consideration by the Bishop for membership upon the Diocesan Review Board. The Bishop shall select at least one of the proposed Survivors to be appointed to the current Diocesan Review Board.

1.2.2.1. At such future time as the Diocesan Review Board seeks to appoint a Survivor to the Diocesan Review Board to assure at least one Survivor is a member thereof, the Bishop shall send written notice to the chair of the nominating committee that the Diocese intends to appoint a new Survivor to the Diocesan Review Board, the nominating committee shall provide the Diocese with a list of five Survivors, and the Bishop shall select at least one of the proposed Survivors to be appointed to the Diocesan Review Board, *provided however*, that if the nominating committee does not provide such list to the Diocese within 30 days of the date of the Diocese's notice of intent to appoint a new Survivor, the Bishop shall select such Survivor in his sole discretion.

1.2.2.2. The Diocese shall receive written notice from the OCUC of the formation of the nominating committee and the chair's name and contact information within 30 days of approval of these Child Protection Protocols by the court. The nominating committee shall provide written notice to the Diocese of any change in the identity or

8

contact information for the chair of the nominating committee.

**1.2.3.** The chairperson of the Diocesan Review Board acting on October 17, 2023 shall serve in such capacity through the end of her term on December 31, 2023 and shall thereafter be replaced by a newly elected chairperson, *provided, however,* that the OCUC shall be consulted prior to the appointment of such individual as chairperson of the Diocesan Review Board.

**1.2.4.** Diocesan Review Board members shall be permitted access to all records pertaining to the Diocesan Review Board's investigation and recommendations of (i) any Accusation made after the adoption of these Child Protection Protocols and (ii) any Accusation made prior to the adoption of these Child Protection Protocols if (a) the Diocesan Review Board votes to conduct a re-review in accordance with Section 1.1.2 above or (b) if the Accused is not deceased and the Survivor that is the subject of the Accusation has requested that such materials be made available to Diocesan Review Board members on the basis of a good faith belief that any prior investigation of such Accusation was materially deficient.

**1.3.** Bishop. The Bishop shall be knowledgeable about the content of the Child Protection Protocols and shall exercise reasonable oversight with respect to implementation, operation, and assessed effectiveness of the Child Protection Protocols.

**1.4.** Program Director. The Program Director has the duties and responsibilities and that authority that is defined in the job description as outlined by the Diocese. Among other things:

**1.4.1.** The Program Director is responsible for continuing to develop, implement, and revise as necessary the Policies and procedures for preventing, responding to, and ensuring the reporting of child sexual abuse.

**1.4.2.** The Program Director shall support and coordinate the activities of the Diocesan Review Board, the Victim (Survivor) Assistance Coordinator, and other entities and programs dealing with the protection of minors.

**1.4.3.** The Program Director oversees the development and publication of standards of ministerial conduct for all persons – Clergy or laity – engaged in any ministry within the Diocese of Syracuse. A separate document entitled, Roman Catholic Diocese of Syracuse Safe Environment Code of Conduct, is published separately from these Child Protection Protocols and a copy of it is given to all Clergy, Seminarians, Consecrated Individuals, Church Personnel and other Employees and Volunteers who are involved in any ministry relating to youth in the Diocese, as well as to Members of the Diocesan Review Board (cf. USCCB Charter, art. 6). The Safe

9

Environment Code of Conduct is available through the Office of Safe Environment, and on the Diocesan website.

1.5.    Diocesan Review Board Meetings.

    1.5.1.    The Program Director will convene the Diocesan Review Board, which will meet on an as-needed basis throughout the year to hear specific cases and advise the Bishop. The Diocesan Review Board shall meet at least once annually for the specific purpose of reviewing the Diocese's child protection policies and making recommendations to the Bishop to enhance the Diocese's child protection efforts.

    1.5.2.    In consultation with the Bishop and Safe Environment Committee, the Program Director will prepare a written agenda for all the Diocesan Review Board meetings and will maintain general written notes of all meetings.

    1.5.3.    All members of the Diocesan Review Board will be invited by the Program Director to attend meetings of the Response Team when Accusations are discussed.

## 2.  Policies and Procedures

2.1.    Policies Protecting Minors. The Diocese shall create a comprehensive set of documents encompassing all Policies relating to the protection of Minors. This comprehensive set of documents shall be organized and readily available on its website.

    2.1.1.    The Policies shall be written and formatted so they are easy to read and understand.

    2.1.2.    The Policies shall define key terms including:

        a.    Terms that define what behavior constitutes misconduct involving Minors, which includes Sexual Abuse of a Minor and Sexual Harassment of Minors.

        b.    Terms that define what constitutes a "Substantiated Claim."

    2.1.3.    Among any other instructional formats it may choose to employ, the Diocese shall also provide in written form what constitutes misconduct involving a Minor as part of training or training-related materials, including what is considered "appropriate" vs. "inappropriate" physical contact.

2.2.    Technology Policies. The Diocese shall include guidelines for the acceptable use of technology within its Policies:

    2.2.1.    The Policies will grant the Diocese the ability to inspect, review, audit, intercept, or access all matters on systems of the Diocese, including

Employee email, voicemail, and computer systems at any time, with or without notice, but only to the extent permitted under applicable federal and state law, and not inconsistent with applicable principles of common law.

**2.2.2.** Guidelines shall include how to safely use social media and cellular phones, including text messaging and social media applications.

**2.3.** <u>Policies on Interactions with Minors</u>. The Policies shall prohibit Clergy, Seminarians, Consecrated Individuals, and Church Personnel from being alone (i.e., out of sight of at least one other adult) with any unrelated Minor while serving in the Diocese, subject to common sense exceptions, such as emergency situations, interactions with Minors that are incidental and not extended, interactions with family members, and Church Personnel transporting the children of friends and neighbors.

**2.3.1.** Nothing in these Child Protection Protocols shall prevent Minors from receiving the sacrament of confession in strict confidence and privacy, provided, however, that the Diocese shall take precautions to ensure that Minors participating in confession are protected, notwithstanding the confidential nature of confession. Such precautions include having a safe environment credentialed adult present in an area outside of earshot but adjacent to the confessional and, where existing or future improvements to facilities so permit, conducting confession in a manner that allows others to visually observe the confession participants.

**2.3.2.** The Policies shall prohibit:

a. Clergy, Seminarians, Consecrated Individuals, and Church Personnel from traveling alone or taking overnight trips alone with any unrelated Minor; and

b. Clergy, Seminarians, Consecrated Individuals, and Church Personnel from sleeping in the same private space (*e.g.,* room, tent, bed, etc.) with any unrelated Minor.

c. Minors from having access to Diocesan rectories.

**2.4.** <u>Suitability for Ministry</u>. The Diocese shall not recommend or otherwise place any member of the Clergy into a position in active ministry if such individual has an unresolved Accusation of Sexual Abuse of a Minor pending against them.

**2.4.1.** The Diocese shall not recommend or otherwise place any layperson, and shall direct its Clergy not to recommend or otherwise place any layperson, into any position or role that provides such layperson with access to Minors if such layperson has an unresolved Accusation of Sexual Abuse of a Minor pending against them.

11

**2.4.2.** Determinations as to a Cleric's suitability for active ministry shall be made, in every instance, by the Bishop after receipt of written recommendations from the Diocesan Review Board. The Diocesan Review Board shall be provided all details and information relevant to each suitability determination with a sufficient period for meaningful review of such materials. Determinations as to a layperson's suitability for a position with access to Minors shall be made by such person's Responsible Supervisor.

**2.5.** <u>Compliance Auditing</u>. To ensure compliance with the screening and educational programs mandated by these Child Protection Protocols and by the USCCB Charter, periodic audits are to be conducted at all levels.

**2.5.1.** To ensure compliance with the requirements for Clergy, Seminarians, Consecrated Individuals, and Church Personnel in the mandated educational programs, the Vicar Forane (Dean) will, during his annual visit to each parish, check the parish records to ensure that mandated background certification and clearances and educational programs have been completed by all Clergy, Seminarians, Consecrated Individuals, and Church Personnel in youth-serving programs and ministries within the parish. The Vicar Forane will report his findings on each parish to the Vicar General, and prepare a written record regarding such compliance with such measures as part of the report of each parish visit.

**2.5.2.** The Safe Environment Committee may publish additional audit and compliance procedures for any element of these Child Protection Protocols. An annual report on compliance for both the background certification and clearances and mandatory educational programs will be given to the Diocesan Review Board and to the Bishop. The Diocesan Review Board will make recommendations to the Bishop regarding existing audit and reporting methods and, if necessary, disciplinary actions for any failure to comply with any mandatory programs.

**2.5.3.** The intentional or negligent failure of any Responsible Supervisor to implement the necessary background certification and clearances and/or education practices and programs mandated these Child Protection Protocols or by the USCCB Charter, will be considered a serious omission and a basis for disciplinary action, including possible suspension or dismissal from office or employment.

**2.6.** <u>Compliance Coordinator</u>. The Compliance Coordinator serves on the Safe Environment Committee and their responsibilities include the implementation and oversight of procedures for auditing all institutions covered these Child Protection Protocols. The Compliance Coordinator is to ensure compliance with the mandates and practices of these Child Protection Protocols, the USCCB Charter, Essential Norms, and any other applicable policies and procedures published by the Bishop (in consultation with the Safe Environment Committee).

## 3. Reporting Requirements

**3.1.** <u>Immediate Reporting to Law Enforcement</u>. When the Diocese receives a report of Sexual Abuse of a Minor it will, without delay or alteration, communicate such report along with all related details to law enforcement by calling the police department and the New York State Child Abuse Hotline (1-800-342-3720) or, for vulnerable adults, the police department and the Vulnerable Persons Central Register Hotline at 1-855-373-2122. The Diocese shall also provide such report to the Diocesan Review Board (with respect to Accusations involving Clergy) and to the Safe Environment Office (with respect to Accusations involving Church Personnel other than Clergy). For avoidance of doubt, the Child Protection Protocols shall not prohibit the Diocese from reporting any Accusation to any other appropriate law enforcement or governmental agency after the foregoing reporting obligations are adhered to by the Diocese.

**3.1.1.** When the Diocese receives a report of child sexual abuse and makes a report to law enforcement, the Diocese will not interfere in any way with law enforcement.

**3.1.2.** Notwithstanding anything to the contrary contained herein, when the Diocese receives a report of child sexual abuse and makes a report to law enforcement, the Diocese shall not conduct an internal investigation of such incidents until law enforcement concludes its investigation, closes its file without an investigation, or authorizes the Diocese to proceed with its own internal investigation.

**3.1.3.** If the Diocese learns of any effort(s) to hide or delay discovery of one or more incidents of child sexual abuse, or to hinder discovery of any related fact(s), the Diocese will provide a detailed report of such efforts or activity to both law enforcement and the Diocesan Review Board.

**3.2.** <u>Mandatory Reporting Policies</u>. The Policies shall clearly state that a report to the Diocese does not relieve the individual from reporting known or suspected abuse as may be required under New York law.

**3.2.1.** The Policies shall contain a section dedicated to civil Mandatory Reporting requirements, including the following guidance: (1) who must report; (2) what must be reported; (3) to whom the report must be made.

**3.2.2.** The Policies shall clearly define the proper reporting channels for Mandatory Reporting. The Policies shall state:

a. Mandatory reporters' first report of suspected abuse of a Minor shall be to civil law enforcement authorities. Thereafter, a report shall be made to the Victim (Survivor) Assistance Coordinator.

b. Any Clergy or Church Personnel who makes a report to civil law enforcement authorities shall be required to report the same information

13

without undue delay to the Director. The Director shall then promptly notify the Bishop or his designee.

    i.    The Director shall notify or confirm that law enforcement has been notified as required by the Policies. The Director shall complete written documentation of the report and the actions taken.

c.  In addition to Section 3.2.2(a) and (b), if authorized by law enforcement, and the suspected abuse occurred at or during a parish/school activity or involves parish/school personnel or volunteers, the Director shall notify the principal or pastor of the parish/school, unless the suspected abuse involves the principal or pastor, in which case the Director shall notify the board of trustees of the parish or school.

    i.    Any individual who receives a report from the Director as detailed in Section 3.2.2(c) shall document in writing (i) their receipt of a report under this Section 3.2.2; (ii) information detailing the nature of the report; and (iii) the actions taken in response to such report.

d.  If the report of abuse involves a Cleric, the Director shall request all relevant written reports from the seminary, parish, or school where the Cleric is assigned.

**3.2.3.** The Policies shall also require any Employee or Volunteer serving within the Diocese Territory who has reason to suspect Sexual Abuse of a Minor involving a Cleric or Church Personnel to immediately notify civil law enforcement authorities in a manner consistent with applicable law.

**3.2.4.** The Policies shall ensure that the person making the Accusation is provided with: (1) an adequate explanation of the Diocese's overall process and procedures for dealing with allegations of Sexual Abuse of a Minor, including its policy on reporting to civil authorities; (2) advice that the Diocese shall endeavor to conduct, when permitted by Section 3.1.2, above, its investigation with appropriate discretion and, to the extent possible, protect the privacy and reputations of both the person reporting as well as the person about whom the report was made, and (3) a timely response to inquiries and, as necessary, periodic update(s) as to the status or resolution of the report.

**3.3.** <u>Mandatory Reporter Training</u>. All mandated reporters, as defined in applicable statutes, as well as individuals who may not be mandatory reporters under applicable law but who are required to report abuse under the Diocese's Policies, including Clerics, Employees, and Volunteers, shall receive specific training regarding reporting obligations every two (2) years and within thirty (30) days of their retention if newly hired. The Diocese will provide a copy of all mandatory-

14

reporter training materials currently in use within the Diocese to the Diocesan Review Board annually.

**3.4.**  Whistleblower Policy. The Diocese shall not discharge from employment any Clergy or Church Personnel, or discriminate against any Clergy or Church Personnel with respect to compensation, hire, tenure, terms, conditions or privileges of employment, because that person made a report of suspected child abuse to authorities, provided such Clergy or Church Personnel was acting in good faith in making the report.

**3.5.**  Vicar General's Duties. On or before thirty (30) days after the effective date of the Plan of Reorganization, the Vicar General shall make a good faith effort to obtain from each Clergy member working within the Diocese, a signed and dated written statement affirming that the Clergy member (1) has not sexually abused any Minor at any time, and (2) has no knowledge of the Sexual Abuse of a Minor by another Cleric or Church Personnel that has not been reported to law enforcement and the Diocese.

    **3.5.1.**  The Vicar General shall also make a good faith effort to obtain from any visiting Cleric who is given open-ended faculties to minister in the Diocese or has an assignment in a parish or related Diocesan entity (this does not include Clergy visiting for a single event or over a time period of less than twenty-one (21) days) a signed and dated statement under this paragraph no later than thirty (30) days after assignment or open-ended faculties are given.

    **3.5.2.**  Copies of all statements obtained under this paragraph will be provided timely to the Diocesan Review Board.

**3.6.**  Publications. The Diocese shall post on its website and provide parishes and Catholic schools within the Diocese Territory information regarding how to make a report of suspected Sexual Abuse of a Minor, including the flow chart attached hereto as **Exhibit A**, in the principal language in which the liturgy is celebrated. The Diocese shall publish in The Catholic Sun, and/or any other similar Diocesan publication, no less than four (4) times per year for the term of these Child Protection Protocols a statement urging Survivors to report Sexual Abuse of a Minor and seek assistance and support.

**3.7.**  Code of Conduct. The Policies shall include a Code of Conduct acknowledgement form for Clergy, Employees, and Volunteers. Those required to acknowledge the Code of Conduct must acknowledge receipt of the Code of Conduct, their understanding of the Code of Conduct, and their agreement to comply with the Code of Conduct. The acknowledgement forms will refer to the reporting requirements under the Policies. The acknowledgement may be completed electronically.

**3.7.1.** <u>Collecting and Maintaining Acknowledgment Records</u>. The Office of the Director shall maintain the Code of Conduct acknowledgement forms (or records). Such files may be kept electronically. The Director shall collect and maintain an acknowledgement form and electronic record certifying that any individual who has received the Code of Conduct, understands the Code of Conduct, and will comply with the Code of Conduct, within thirty (30) days of each of the following events: (1) assignment of a Cleric to a continuing ministry in the Diocese Territory; (2) the commencement of any employment or continuing volunteer service; and (3) a Seminarian's commencement of study.

**3.7.2.** The Office of the Director shall request no less than annually that each parish and school within the Diocese Territory furnish the Director with records demonstrating compliance with this requirement. If a parish or school fails to provide such records as requested, the Director shall, within a reasonable amount of time, notify the Bishop and the Board of Trustees of said parish or school in writing, and the Bishop shall direct the parish or school to comply with this Section 3.7.2.

**3.7.3.** The Director shall maintain the acknowledgement forms (or records) for each Employee, Volunteer, or Seminarian.  Such files may be kept electronically.

**3.8.** <u>Disclosure</u>. The Diocese shall disclose all Substantiated Claims of Sexual Abuse of a Minor involving members of its Clergy or Church Personnel, or former members of its Clergy or Church Personnel, to any potential employer who inquires about the existence of such Accusations against Clergy or Church Personnel, except to the extent such disclosure is prohibited by, or otherwise inconsistent with, applicable federal or state or common law.

**3.8.1.** Upon adoption of these Child Protection Protocols, the Diocese shall make arrangements to provide Syracuse University with copies of all files maintained with respect to any individual who is the subject of a Substantiated Claim of Sexual Abuse of a Minor, and shall request that the files be housed in the Special Collections Research Center at Bird Library. Prior to providing such files to Syracuse University, the Diocese shall redact from such files any and all confidential information that could allow for the personal identification of a Survivor and may redact (i) any other privileged information contained in such files and (ii) any information which the Trustee agrees should not be publicly disclosed.  Before the Effective Date of the Plan, to the extent not already produced, the Diocese will either produce to the Committee or provide a privilege log setting forth the basis for any documents withheld. If so requested by the Trustee, the Diocese will provide the Trustee with a privilege log or otherwise establish to the Trustee's reasonable satisfaction that items withheld or otherwise designated as privileged are appropriate.  To the extent there are any disputes between the Diocese and the Trustee related to any privilege

16

17433013.1

designations, the Diocese shall bear the burden of proving the allegedly privileged information is privileged pursuant to this Section 3.8.1, and the Diocese and Trust would submit the dispute to a mutually agreeable neutral for binding resolution of the dispute. If for any reason Syracuse University does not accept or host the files, the Diocese shall make similar arrangements with another publicly available archive/reference center. To the extent any Survivor is unable to view the files at Syracuse University, the Diocese shall make reasonable accommodations upon request to facilitate the Survivor's review of any of the files delivered to Syracuse University pursuant to this Section 3.8.1.

**3.8.2.** Upon the adoption of these Child Protection Protocols, and notwithstanding anything to the contrary contained within these Child Protection Protocols, the Diocese shall disclose on the Diocesan website the names of all Perpetrators that are the subject of a Substantiated Claim to the extent they have not already done so.

**3.9.** <u>Maintaining Records</u>. The Diocese will maintain complete copies of all insurance policies under which it is identified as an insured party for claims of Sexual Abuse of a Minor and will also undertake all reasonable efforts to maintain related correspondence and other memorializing and evidencing documentation relating to the existence and terms of such policies.

## 4.   Education

**4.1.** <u>Programs Preventing Child Sexual Abuse</u>. The Diocese shall routinely and consistently encourage, in writing, each of the parishes and Catholic schools within the Diocese Territory to maintain all programs and efforts necessary to prevent Sexual Abuse of a Minor and to train all Clergy and Church Personnel to identify signs of Sexual Abuse of a Minor.

**4.2.** <u>Child Protection Protocols</u>. The Diocese will provide a copy of these Child Protection Protocols to each of the Catholic schools and parishes within the Diocese Territory annually along with a letter urging comprehensive and consistent compliance with the Child Protection Protocols and request a certification from each entity that they have received the Child Protection Protocols and agree to abide by them.

**4.3.** <u>Encouraging Reporting</u>. At least twice annually, the Diocese will send each of the parishes and Catholic schools within the Diocese Territory affirmative, written statements encouraging the reporting of abuse consistent with these Child Protection Protocols.

**4.4.** <u>Written Statement</u>. At least once a year, the Diocese will send written statements to each of the parishes and Catholic schools within the Diocese Territory, stating that Survivors of Sexual Abuse of a Minor are not at fault for their abuse and are not enemies of the church. Suggested language for the Diocese's written statement

includes: "God's children are valued members of the flock who need and deserve the Catholic's community's empathy, care, and above all, protection."

**4.5.** <u>Safe Environment Director.</u> The Bishop will designate a Safe Environment Director who will serve as a member of the Safe Environment Committee. The Safe Environment Director's responsibilities include approval and oversight of various educational programs required by these Child Protection Protocols, the Safe Environment Committee, or the USCCB Charter.

**4.5.1.** The Safe Environment Director will prepare an annual report on the curricula and Diocesan Safe Environment training in use by the Catholic schools within the Diocese Territory and religious education programs for the Diocesan Review Board.

**4.5.2.** The Safe Environment Director shall develop and implement procedures by which each secretariat, parish, school, or other institution will report annually on its educational programs. This report is to be forwarded to the Compliance Coordinator.

**4.5.3.** The Diocesan Secretariat for Education will ensure that each Catholic school within the Diocese Territory (elementary and secondary) and each parish or inter-parochial program of religious education has adopted a program of instruction regarding the recognition, prevention and reporting of Sexual Abuse of a Minor, and promoting healthy relationships between adults and minors.

**4.6.** <u>Educational Programs</u>. All Clergy, Seminarians, Consecrated Individuals, Employees, Volunteers in youth-serving programs, students in any Catholic school or program of religious education, educators and teachers in any Catholic school or religious education program (including children's liturgy of the word, etc.), adult supervisors and assistants of any youth ministry program, college and university ministry program participants, are required to partake in educational programs.

**4.6.1.** Educational programs shall include topics such as: education in healthy relationships between adults and Minors; maintaining appropriate professional boundaries; human sexuality and the prevention of sexual abuse; recognition and reporting of the Sexual Abuse of a Minor; trauma and secondary trauma, and recognition of sexual abuse perpetrator behavior.

**4.6.2.** All Clergy are to be educated in the current laws of New York pertaining to Sexual Abuse of a Minor and in the requirements of the USCCB Charter regarding reporting of Sexual Abuse of a Minor.

**4.6.3.** The Program Director will ensure that materials regarding these Child Protection Protocols are produced, regularly updated, and made available to all secretariats, parishes, Catholic schools, and other institutions affiliated

17433013.1

with the Diocese. This will include explanatory materials available on the diocesan website.

**4.6.4.** Students and Minors engaged in volunteer work are not required to obtain clearance certifications.

## 5. Prevention Requirements

**5.1.** <u>Prevention Policies</u>. The Policies shall define who is required to complete (1) acknowledgement of the Code of Conduct; (2) specialized child protection training; and (3) a criminal background check. These shall include, but are not limited to:

- All Clergy of the Diocese, Seminarians, Consecrated Individuals, and Church Personnel;

- All Clergy incardinated in another Diocese or Institute or Society of Consecrated Life before they assume office, residence, or assist in any ministry within the Diocese involving Direct Contact with Children;

- All applicants for certificates in ministry in Diocese's Formation for Ministry Program, and all persons receiving a certificate for specialized ministry given by a secretariat, department, or office of the Diocese.

- All vendors who have Direct Contact with Children.

- With respect to international Clergy: after all due diligence, it may not always be possible to obtain criminal background clearances from some foreign countries, but the Diocese will always obtain a Letter of Suitability from the international Cleric's proper bishop or religious superior; and

- Other persons as determined by the Bishop.

**5.2.** <u>Clearance Requirements</u>. Employees and Volunteers who have obtained the necessary background certification and clearances for their employment or volunteer work in one agency or institution, may carry the same certification and clearances for volunteer work in another agency or institution without having to obtain new certification and clearances if those clearances remain current. Nevertheless, certification and clearances obtained for volunteer purposes cannot be used for employment purposes.

**5.2.1.** <u>Clergy Requirements</u>. All Clergy within the Diocese of Syracuse are required to obtain the following clearances at the time of their initial retention by, or transfer to the Diocese as well as at least every sixty (60) months thereafter:

a. A criminal history check from a reputable third party provider.

b. In addition, an international Cleric serving the Diocese must obtain an Interpol clearance.

**5.2.2.** <u>Employee Requirements</u>.  Employees are required to obtain the following clearances at the time of their initial hiring, as well as at least every sixty (60) months thereafter:

a. A criminal history check from a reputable third party provider.

**5.2.3.** <u>Volunteer Requirements</u>. All Volunteers are required to obtain the following clearances at the time of their initial application to volunteer as well as at least every sixty (60) months thereafter:

a. A criminal history check from a reputable third party provider.

**5.2.4.** <u>Vendor Requirements</u>. All vendors who have Direct Contact with Children are required to obtain clearances at the initial time of their onboarding or retention as well as at least every sixty (60) months thereafter based on their role:

a. A criminal history check from a reputable third party provider.

**5.3.** <u>Criminal Activity and Background Checks</u>: If a background certification or clearance reveals a prior conviction or other legal concern, the question of suitability for ministry, employment or volunteer work must be considered carefully. At issue is not only the nature of the previous offense and when it occurred, but also its relevance to the proposed job description for the applicant or volunteer.

**5.3.1.** If an Employee or Volunteer is arrested for or convicted of an offense that would constitute grounds for denying employment or participation in a program, activity, or service, or is named as a Perpetrator in a statewide criminal database, the Employee or Volunteer must provide the their Responsible Supervisor written notice not later than seventy-two (72) hours after being released from arrest, the conviction, or notification that the person has been listed as a Perpetrator in the statewide database.

**5.3.2.** An Employee or Volunteer who fails to disclose an offense or incident as described in section 5.3.1 shall be subject to discipline, including possible termination or denial of employment or a volunteer position.

**5.3.3.** An Employer, Responsible Supervisor, or other person responsible for employment decisions that fails to require an applicant to submit the required certification and clearances before the applicant's hiring shall be subject to discipline, including possible termination.

**5.3.4.** At all times, the results of each person's background certification and clearances must be treated with confidentiality. If the screening of any

person reveals a prior history of criminal activity, the Responsible Supervisor is to consult with the Program Director before the person assumes any employment or volunteer position. A school principal is to direct the matter with the superintendent of schools, who will discuss it with the Program Director.

5.4. <u>Clergy Screening Requirements</u>. Clergy, Seminarians, and Consecrated Individuals shall be screened by the Secretariat for Clergy and Consecrated Life prior to admission to the seminary or a formation program.

    **5.4.1.** Clergy, Seminarians, and Consecrated Individuals must undergo a psychological assessment as part of the screening process in a manner designated by the Secretariat for Clergy and Consecrated Life. At the discretion of those responsible for their formation, the psychological assessment may be repeated prior to ordination.

    **5.4.2.** Clergy from other dioceses seeking to incardinate into the Diocese or requesting the faculties of the Diocese are screened by the Vicar for Clergy and Vicar for Religious prior to receiving any ministerial assignment or faculties in the Diocese, following consultation with, and documentation from, the Cleric's proper bishop. The Vicar General will require a letter from the Cleric's own bishop attesting to the good standing of the Cleric. This letter, which must state that the Cleric has never been the subject of a Substantiated Claim of Sexual Abuse of a Minor, is necessary before the Cleric is given an assignment within the Diocese or is granted the faculties of the Diocese. If the Cleric served previously in the United States, background certification and clearances (criminal record checks) will also be conducted in the State of his last U.S. assignment prior to his grant of faculties in the Diocese.

    **5.4.3.** Priests, deacons, brothers, or students from institutes of consecrated life assigned to the Diocese are screened by documentation from their major superiors, obtained by the Vicar General prior to any assignment to ministry in the Diocese. The Vicar General will require a letter from the Cleric's major superior attesting to the good standing of the Cleric. This letter, which must state that the Cleric has never been the subject of a Substantiated Claim of Sexual Abuse of a Minor, is necessary before the Cleric is given an assignment within the Diocese or is granted the faculties of the Diocese. All background certification and clearances will also be required.

    **5.4.4.** In each case of an Accusation of Sexual Abuse of a Minor where a Cleric has been found not guilty of criminal conduct by civil authorities, or has been investigated by civil authorities without prosecution, the Diocese shall make an independent inquiry into and determination of the given Cleric's fitness for ministry.

5.5.    <u>Safe Environment Coordinator</u>. The Bishop shall direct that each parish, Catholic school, and seminary within the Diocese Territory designate a safe environment coordinator to oversee the parish, school, or seminary program for screening, selecting, and supervising those working in the parish, school, or seminary who will have Direct Contact with Children. The office of the Safe Environment Director shall provide training to such coordinators upon their assumption of those responsibilities and then no less than every three (3) years thereafter.

    **5.5.1.** The Safe Environment Director shall request confirmation that a safe environment coordinator has been designated in each parish, school, and seminary.

    **5.5.2.** If a parish, school, or seminary fails to confirm the designation of a safe environment coordinator, the Safe Environment Director shall within a reasonable time notify the Bishop and the board of trustees of the parish, school, or seminary in writing that a local safe environment coordinator has not been designated.

5.6.    <u>Fitness for Ministry</u>. The Diocese shall not assign a Cleric for a position in public ministry or a position that provides Direct Contact with Children, who has a Substantiated Claim of Sexual Abuse of a Minor against him, or who is otherwise deemed to be not suitable for ministry.

    **5.6.1.** <u>Fitness Determination</u>. Where there has been an Accusation of Sexual Abuse of a Minor by a Cleric, fitness for ministry determinations are to be made by the Bishop after receiving recommendations from the Diocesan Review Board. If the Bishop, after considering these recommendations, determines a Cleric is not fit for ministry based on a Substantiated Claim of Sexual Abuse of a Minor, the Diocese shall not recommend such Cleric to another religious organization, and shall notify an inquiring organization of the Bishop's determination regarding fitness for ministry.

    **5.6.2.** <u>Assignment or Transfer</u>. If a Cleric seeks assignment, transfer, or residence outside of the Diocese Territory, the Diocese shall provide to the receiving diocese, religious community, or organization, a complete copy of his Clergy file and any other Diocese files materially related to the Cleric. Notwithstanding the foregoing, the Diocese shall not disclose such information to the extent doing so would violate, or be inconsistent with, applicable federal, state, or common law.

    **5.6.3.** <u>Disclosure</u>. The Diocese shall disclose any Accusation or Substantiated Claim of Sexual Abuse of a Minor to any diocese, Catholic entity, or secular employer that inquiries about the existence of such an Accusation of Sexual Abuse of a Minor with respect to any past or present Cleric or Church Personnel of the Diocese.  The Diocese shall also disclose the status or resolution of that Accusation as reflected in its records.  Notwithstanding the foregoing, the Diocese shall not disclose such information to the extent

doing so would violate, or be inconsistent with, applicable federal, state, or common law.

**5.6.4.** <u>Prohibited Recommendations</u>. The Diocese shall not recommend and shall have a Policy that prohibits a Cleric or Church Personnel from recommending any Cleric or Church Personnel for a position that engages in Direct Contact with Children to the extent such individual is the subject of a Substantiated Claim or has an Accusation of Sexual Abuse of a Minor pending against him or her.

## 6.   Outreach and Assistance for Survivors

**6.1.** <u>Victim (Survivor) Assistance Coordinator</u>. The Bishop will name a Victim (Survivor) Assistance Coordinator to oversee all aspects of the outreach and assistance to Survivors of sexual abuse (cf. USCCB Charter, art. 2). The Victim (Survivor) Assistance Coordinator will attend Diocesan Review Board meetings and will serve as a member of the Safe Environment Committee.

**6.1.1.** The Victim (Survivor) Assistance Coordinator will be the Diocesan contact and support person for Survivors. Prior to the Preliminary Inquiry into any Accusation, the Victim (Survivor) Assistance Coordinator will designate a Support Counselor to participate in the Preliminary Inquiry by serving on the Inquiry Team. During the Preliminary Inquiry process, it is the Support Counselor who will serve as the contact and support person for the alleged Survivor, advising the Victim (Survivor) Assistance Coordinator of any immediate needs that have been expressed by the Survivor or Accuser, and who will make specific recommendations to the Response Team during their meeting.

**6.1.2.** Following the Preliminary Inquiry, the Victim (Survivor) Assistance Coordinator is responsible for the ongoing assistance to an alleged Survivor until they mutually determine that such support and assistance is no longer needed. The Victim (Survivor) Assistance Coordinator will help the alleged Survivor obtain counseling or therapy from a qualified provider selected by the Survivor in consultation with the Victim (Survivor) Assistance Coordinator. The Victim (Survivor) Assistance Coordinator will also answer any questions the alleged Survivor may have about the process.

**6.1.3.** If requested, the Victim (Survivor) Assistance Coordinator will help the alleged Survivor obtain any needed urgent medical assistance as well as pastoral or spiritual care. If requested, the Victim (Survivor) Assistance Coordinator will also help the alleged Survivor locate any available financial assistance to satisfy any outstanding financial expenses of mental health therapy.

**6.2.** <u>Welfare of the Survivor</u>. The welfare of the Survivor is of primary concern to the Diocese. All Survivors are to be offered spiritual, pastoral, and mental health

assistance, regardless of their ability to pay for these services (cf. USCCB Charter, art. 1).

**6.2.1.** If the Diocese does not appear to have legal liability in a case involving a Substantiated Claim of Sexual Abuse of a Minor, the expenses for the Survivor's therapy are the personal responsibility of the Accused, and the Diocese will assist in obtaining a financial commitment from the Accused to the extent possible. If the Accused is unwilling to pay the therapy expenses, the Bishop may use reasonable efforts to compel the Accused to pay to the extent possible under applicable law, including, to the extent consistent therewith, by means of the attachment of wages. Notwithstanding the foregoing, in the event no other party pays for these services, the Diocese shall do so as set forth in Section 6.3 below.

**6.2.2.** In cases involving a Substantiated Claim of Sexual Abuse of a Minor against a Cleric from an institute or society of consecrated life or another diocese, the Cleric's proper superior or bishop will be asked to make arrangements to pay for the Survivor's counseling expenses.

**6.3.** Diocese Financial Assistance to Survivors. The Diocese may offer financial assistance to offset costs of counseling as part of its pastoral outreach to Survivors. Such action implies no legal liability on the part of the Diocese. Any financial assistance will generally include up to 104 one-hour sessions of counseling, provided by a mutually agreed upon and properly credentialed therapist, after which an assessment by the Victim (Survivor) Assistance Coordinator will be undertaken, if requested by the Survivor, to determine: (1) the effectiveness of current therapies; (2) if additional assistance is necessary (which may be approved for up to 13 additional sessions at a time, subject to progress reports submitted to the Victim (Survivor) Assistance Coordinator according to American Psychological Association standards); or (3) when to end such assistance. At no time, however, will a Survivor with a Substantiated Claim be denied financial assistance to help pay for needed therapy for up to 52 one-hour sessions of counseling.

**6.3.1.** Counseling assistance may be terminated under any one of three conditions: (1) all parties agree; (2) 104 one-hour sessions of counseling have already been provided; or (3) it is obvious to the Victim (Survivor) Assistance Coordinator, in consultation with one or more members of the Diocesan Review Board, that the therapy is not effective, in which case, and at the request of the Survivor, reasonable efforts will be made by the Victim (Survivor) Assistance Coordinator to help the Survivor obtain another mutually agreed upon and credentialed therapist.

**6.3.2.** In connection with this Section 6.3, the Diocese shall pay the reasonable hourly rate, or such other rate as may be mutually agreed, for a licensed counselor in the Survivor's state of residence providing counseling assistance to a Survivor.

17433013.1

**6.3.3.** The Diocese shall not request access to the medical records of Survivors who receive counseling in connection with this Section 6.3, including any records maintained by a counselor providing services to such individuals, provided however, that a Survivor may, in his or her discretion, authorize the release of such records to the Diocese in connection with any assessment by the Victim (Survivor) Assistance Coordinator regarding continued financial assistance from the Diocese for counseling or for any other reason that the Survivor may determine in his or her discretion. To the extent the Diocese is in possession of the Survivor medical records detailed in this Section 6.3.3 that it obtained prior to the adoption of these Child Protection Protocols, it shall destroy such records within its possession unless the Diocese has already received the authorization detailed in this Section 6.3.3. To the extent a Survivor at any time requests that such records in the possession of the Diocese be destroyed, the Diocese shall do so.

## 7. Response to an Accusation of Sexual Abuse

**7.1.** <u>Reporting Procedures</u>. For those reporting an Accusation by a Cleric or any Church Personnel to the Diocese, the following procedures shall be utilized. These procedures will be regularly announced in the Diocesan newspaper, The Catholic Sun, and/or any other similar Diocesan publication, and may be found on the Diocese's website. The first step shall be to notify law enforcement by calling the police department and the New York State Child Abuse Hotline (1-800-342-3720). Next, the Program Director shall be immediately notified of suspected Sexual Abuse of a Minor involving any Clergy or Church Personnel. A report to the Program Director can be made by calling the Victim (Survivor) Assistance Coordinator at 315-470-1465.

**7.1.1.** In the absence of the Victim (Survivor) Assistance Coordinator and the Program Director, reports can be made to the Vicar General, the Secretary for Clergy and Consecrated Life, or the Judicial Vicar. The following actions will then be taken immediately.

**7.2.** <u>Initiating the Inquiry Process</u>:

**7.2.1.** After receiving an Accusation of suspected Sexual Abuse of a Minor, the Program Director will ensure that the proper civil authorities have been contacted. Next, an Inquiry Coordinator will be appointed to begin the Preliminary Inquiry process as soon as possible. The Inquiry Coordinator will normally be a canon lawyer if the Accusation is against a Cleric, Seminarian, those in formation toward Holy Orders, or a person in Consecrated Life. If the allegation is against Church Personnel, the Inquiry Coordinator will be the Employer or Responsible Supervisor of the Accused. In such a case, a canon lawyer will help and advise the Inquiry Coordinator.

**7.3.**    <u>Status of Accused</u>:

**7.3.1.**    <u>Bishop</u> – If an Accusation is made against a bishop, whether serving currently or previously in the Diocese of Syracuse (or elsewhere), the Vicar General will refer the matter immediately to the Apostolic Nuncio in Washington, D.C., and will follow the directions of the Nuncio (cf. *Vos Estis Lux Mundi*). The Accusation will also be forwarded to appropriate civil authorities in accordance with applicable law and Diocesan Policies.

**7.3.2.**    <u>Cleric, Seminarian or Consecrated Individuals</u> – If an Accusation is made against any Cleric, Seminarian or Consecrated Individual, the Program Director is to notify the Bishop and the Secretary for Clergy and Consecrated Life, or in the case of a Seminarian, the Vocation Director, of the Accusation without delay. The Program Director will appoint a canon lawyer as the Inquiry Coordinator and the Preliminary Inquiry will begin with a report to the appropriate civil authorities in accordance with applicable law and Diocesan Policies. If the Accused is incardinated in, or in formation for another diocese, the Program Director, together with the Secretary for Clergy and Consecrated Life will contact the proper bishop of the Accused without delay to forward the Accusation. It is the expectation of the Diocese of Syracuse that the proper diocese of the Accused will conduct a Preliminary Inquiry (according to their own policy and process). If such proper diocese is not able to do so (due to lack of canonical staff, geographical distance, etc.) the Diocese of Syracuse will conduct a Preliminary Inquiry, and will then forward the results to the proper bishop of the Accused.

**7.3.3.**    <u>Church Personnel</u> – If an Accusation is received against any Church Personnel, the Program Director shall ensure the Accusation is reported to law enforcement as set forth in Section 7.1 and notify the Responsible Supervisor or Employer of the Accused of the report without delay. As provided for by Section 3.1.2, and after consultation with counsel, the Diocese may proceed with an internal inquiry.

**7.3.4.**    <u>Vendor, Independent Contractor or Subcontractor</u> – If an Accusation is received against any vendor, independent contractor, or subcontractor of the Diocese, the Program Director is to forward the Accusation and all known details to the appropriate civil authorities without delay.

**7.3.5.**    <u>Sexual Abuse of a Minor by another Minor</u> – If an Accusation is received, stating that one Minor abused another Minor, the Program Director will determine the most appropriate and effective response. Such an Accusation will not normally be investigated under these Child Protection Protocols, but if it is subject to Mandatory Reporting it will be forwarded without delay to the appropriate civil authority.

**7.4.**    <u>Specific Steps of the Inquiry Process</u>. The following steps will be taken whenever an Accusation is received by the Diocese and such an Accusation falls under these Child Protection Protocols:

**7.4.1.**    The Accusation will be immediately reported by calling the police department and the New York State Child Abuse Hotline (1-800-342-3720).

**7.4.2.**    The Diocese shall take all reasonable actions within its control to restrict the Accused's access to Minors until such time as the Bishop makes a determination that Accusation does not constitute a Substantiated Claim.

**7.4.3.**    Except to the extent law enforcement officials or any government agency having prosecutorial powers request that the Diocese refrain from publicly disclosing an Accusation so as to avoid interfering with an ongoing investigation, the Diocese shall make a public announcement of the fact that an Accusation has been made, and that it has been reported to law enforcement for investigation. Such announcement need not identify the Accused if, in the discretion of the Bishop or the Program Director, it would be imprudent to do so in order to protect the Accused's privacy and reputation before an investigation is concluded.  The Diocese shall provide a final public update as soon as a conclusion regarding the Accusation is made by law enforcement and/or the Diocese. The Diocese shall provide this update on its website.

**7.4.4.**    The Diocese shall conduct an internal investigation of an Accusation at such time as law enforcement concludes its investigation, closes its file without an investigation, or authorizes the Diocese to proceed with its own internal investigation.

**7.4.5.**    If the Accused is Clergy:

7.4.5.1.    After the proper civil authorities have been consulted and give approval, the Diocese will have Independent Professional Investigators investigate the Accusation. The Independent Professional Investigators will examine such evidence as necessary (including files of the Diocese) and, consistent with best practices for evaluating Accusations of Sexual Abuse of a Minor, shall interview such persons as they deem necessary, reasonable, and appropriate to investigate the matter, including, if available, the Accuser, witnesses, and the Accused. Any Accuser or Survivor shall be advised of the right to have counsel or any other person the Accuser or the Survivor wishes present for such interview, including, but not limited to, a professional counselor. The Accused will be informed, prior to any interview, that civil authorities have been informed of the

27

Accusation and will be encouraged to obtain legal counsel. The Accused shall be given, in writing, a list of rights enjoyed by both the Accused and the Accuser. Upon completion of their investigation, the Independent Professional Investigators shall present a written summary of their findings to the Director.

7.4.5.2.   The Independent Professional Investigators shall also present their findings to the Diocesan Review Board.

7.4.5.3.   Upon consultation with the Diocesan Review Board or Response Team (as applicable), the Bishop shall make the final determination as to whether any Accusation made against Clergy is a Substantiated Claim.

**7.4.6.**  If the Accused is Church Personnel other than Clergy:

7.4.6.1.   After the proper civil authorities have been consulted and give approval, the Safe Environment Committee shall, after taking such investigatory steps as it determines to be necessary and appropriate, make a determination as to whether an Accusation is a Substantiated Claim, and shall implement such disciplinary actions it determines are necessary under the circumstances, including the potential removal of his/her safe environment credentials, terminating his/her employment or volunteer role in the Diocese.

**7.4.7.**  If an Accusation is deemed a Substantiated Claim, the Diocese shall send a letter signed by the Bishop to the Survivor, in the form attached hereto as **Exhibit B**, indicating that the Accusation has been deemed a Substantiated Claim.

## 8.  Possible Outcomes of the Inquiry Process

**8.1.**   <u>Administrative or Enforced Leave</u>. Except with respect to any Accusations which are not "credible" in accordance with the USCCB Charter, or which do not provide information sufficient for the Diocese to conduct an investigation into the Accusation, a person Accused of the Sexual Abuse of a Minor, no matter what their status, shall be placed on enforced leave from their assignment, office, or employment as soon as reasonably practicable upon the upon notice to the Accused by the Accused's Responsible Supervisor or, in the absence of the Responsible Supervisor by the Program Director (with respect to Church Personnel) and the Vicar General (with respect to Clergy). This administrative or enforced leave incurs no interruption of salary and accrual of benefits. The faculty to impose temporary administrative or enforced leave in such circumstances and, in cases involving Clerics, to demand withdrawal from a particular rectory or place of residence, is expressly granted by the Bishop as particular law under these Child Protection

17433013.1

Protocols to the Vicar General. This action is not penal in nature and is intended only to facilitate the free and unhindered investigation of a serious Accusation of a crime (cf. Essential Norms, n. 9). If a person is placed on leave, such leave shall extend through such time that the Bishop makes a determination that the Accusation is not a Substantiated Claim.

**8.1.1.** Subject to the discretion of the Diocese, no publicity is to be given to any administrative or enforced leave. This step is taken to protect the reputation of the Accused while the Preliminary Inquiry is conducted. The act of placing an Accused on administrative or enforced leave will not give rise under canon law to any action for reinstatement during the leave, or for damages at any time.

**8.2.** <u>When Sexual Abuse of a Minor is Substantiated</u> – When the Sexual Abuse of a Minor is deemed to be a Substantiated Claim, the Accused, no matter what his or her status, will be permanently removed from all ministry, employment or volunteer status and the individual's Safe Environment Card will be permanently revoked.

<u>Employee</u> – a Substantiated Claim of Sexual Abuse of a Minor made against an Employee shall result in permanent dismissal of the Accused from all employment by any Employer. The Accused will not be permitted to volunteer in any position of ministry in the Diocese.

<u>Volunteer</u> – A Substantiated Claim of Sexual Abuse of a Minor made against a Volunteer shall result in permanent removal of the Accused from all his or her volunteer positions in the Diocese, parish, mission, school, or other Catholic institutions affiliated with the Diocese, and the Accused shall not be permitted to volunteer or seek employment within the Diocese in the future.

<u>Seminarian</u> – A Substantiated Claim of Sexual Abuse of a Minor made against a Seminarian will result in the dismissal of the Accused from formation and the Accused shall not be permitted to re-enter a seminary within the Diocese in the future.

<u>Cleric incardinated in the Diocese of Syracuse</u> – A Substantiated Claim of Sexual Abuse of a Minor made against a Cleric incardinated in the Diocese will result in the removal of the Accused from his place of assignment (parish, campus, hospital, etc.), from any assignment or participation in ministry, and if a priest, his faculties will be withdrawn, and he will be placed under penal precept. Following all appropriate canonical processes, the Diocese will seek to permanently remove from all ministry any Accused Cleric who is the subject of Substantiated Claim (cf. USCCB Charter, art. 5; Essential Norms, n. 8). In every case where the Accusation of Sexual Abuse of a Minor by a Cleric is a Substantiated Claim, the Bishop will forward the case file to the Congregation for the Doctrine of the Faith as required by the norms of the Holy See document, *Sacramentorum*

*sanctitatis tutela*. Also, in every case the pertinent processes provided in Canon Law will be strictly observed (cf. Book VI of the Code of Canon Law; the USCCB Charter; the USCCB Essential Norms), and dismissal from the clerical state may be sought, if the case warrants it (cf. USCCB Essential Norms, n.8). A report will also be made to the appropriate civil authorities.

    a.  A Cleric who is the subject of a Substantiated Claim of Sexual Abuse of a Minor may be offered professional assistance for his own healing and well-being, and for the purpose of preventing any future Sexual Abuse of a Minor. Such Accused Cleric will be given the assistance of the Diocese if he wishes to seek voluntary laicization.

    b.  To the extent permitted by applicable state, federal, and canon law, and not inconsistent with applicable principles of common law, the Diocese will take all reasonable actions within its control to discontinue payments of any kind to Clergy incardinated in the Diocese against whom a Substantiated Claim has been established.

    c.  The Diocese shall take all reasonable actions within its control to restrict the Cleric's access to Minors.

    d.  The Diocese will provide yearly, detailed updates regarding each of the above efforts to the Diocesan Review Board.

<u>Cleric incardinated in another diocese or is a member of an institute or society of consecrated life and the Preliminary Inquiry was conducted by the Diocese of Syracuse</u> - the Secretary for Clergy and Consecrated Life together with the Program Director will promptly notify the proper bishop or superior of a Substantiated Claim of Sexual Abuse of a Minor. The Accused will be removed from any assignment or participation in ministry, and if the Accused is Clergy, his faculties will be withdrawn, and he will be placed under penal precept. The proper bishop or religious superior will be responsible for the residence of the Accused apart from any diocesan or parochial facility. A report will also be made to the appropriate civil authorities of the jurisdiction in which the Sexual Abuse of a Minor occurred.

<u>Consecrated Individuals</u> - if the Preliminary Inquiry was conducted by the Diocese of Syracuse, the Secretary for Clergy and Consecrated Life together with the Program Director will promptly notify the proper superior of the Accused of a Substantiated Claim of Sexual Abuse of a Minor. The Accused will be removed from residence within the Diocese, from any assignment or participation in ministry (volunteer or paid), and he or she will be placed under penal precept. A report will also be made to the appropriate civil authorities of the jurisdiction in which the Sexual Abuse of a Minor occurred.

**8.3.**    <u>Additional Steps in the Case of Substantiated Claims</u>: In addition to the outcomes set forth in section 8.2 above, the Employer or Responsible Supervisor of the Accused (for any Church personnel) or the Bishop (for any Cleric, Seminarian, or Consecrated Individual) shall undertake reasonable efforts to effectuate appropriate action in the case of Substantiated Claims, including the following:

(i)    If the Accused is a Cleric incardinated in the Diocese of Syracuse, to request that he seek a medical or psychological assessment, evaluation, or treatment, which does not preclude other appropriate actions at the same time.

(ii)    The Diocese shall aid pastors and other Responsible Supervisors so that they may appropriately respond to media inquiries and provide media responses designed to reassure the community that abuse Accusations are taken seriously and that the Diocese cooperates fully with civil authorities.

(iii)    The Diocese shall make public disclosures of any Cleric or Consecrated Individual against whom there is a Substantiated Claim of Sexual Abuse of a Minor. In each case of a Substantiated Claim against a Cleric or Consecrated Individual, the Diocese will add the name of the individual to the disclosure section of its website. Such disclosures under this paragraph shall be made as soon as reasonably practicable but, in any event, no later than thirty (30) days after the relevant determination.

(iv)    If an Accusation made against Church Personnel other than Clergy results in the filing of criminal charges against such individual, the Diocese will publicly disclose the fact that such charges were filed in the news/current events section of its website promptly upon being made aware of such criminal charges.

(v)    The Diocese shall remove from public display any photographs and visible honors (such as a plaque or naming of a building) which prominently feature any Cleric or Church Personnel against whom an Accusation of Sexual Abuse of a Minor has been made which is found to be a Substantiated Claim. This does not prevent the Diocese from displaying photos of Clerics or Church Personnel with a Substantiated Claim in a group setting where such individual is not prominently featured or if that photo or the words accompanying it clearly indicate that the individual had a Substantiated Claim of Sexual Abuse of a Minor asserted against him.

(vi)    Notwithstanding anything to the contrary in this Section 8.3, the Diocese shall not make any public disclosures if doing so is prohibited by, or otherwise inconsistent with, applicable federal, state or common law.

**8.4.**    <u>Anonymous Accusations</u>.

**8.4.1.**    The Diocese strongly discourages anonymous Accusations of suspected Sexual Abuse of a Minor because anonymous reports can prevent the

healing and reconciliation of the Survivor and generally provide insufficient information for a competent and fair inquiry. Anonymous Accusations may inadvertently allow Sexual Abuse of a Minor to continue and are therefore, strongly discouraged. Such Accusations will, however, be investigated consistent with these Child Protection Protocols and will always be reported to appropriate civil authorities.

**8.4.2.** The right to know the identity of one's Accuser is based on the fundamental rights of due process, including the right of the Accused to self-defense. Protection of due process is necessary to maintain the integrity of the Church's ministry and to indicate the seriousness of false accusations. Because an Accusation of Sexual Abuse of a Minor can bring serious harm to a person's reputation and employment, it is important to safeguard the rights of the Accused as well as those of the Accuser. Ordinarily, the identity of the Survivor and Accuser will be made known to the Accused.

**8.5.** Role of the Bishop in the Process.

**8.5.1.** At times the Bishop's personal presence, or that of his delegate, may be helpful to foster healing and reconciliation. The Bishop or his delegate will offer, through the Victim (Survivor) Assistance Coordinator, to meet with Survivors and their families (cf. Charter, art. 1). He will listen with patience and compassion to their experiences and concerns, and he will share with them his own sentiments and that of the Diocese, as expressed on May 1, 2016 by His Holiness, Pope Francis in his weekly address: "This (the abuse of minors) is a tragedy… We must not tolerate the abuse of minors. We must defend minors. And we must severely punish the abusers."

**8.5.2.** At times, the Bishop's personal presence, or that of his delegate, may also be helpful to foster healing and reconciliation for the Accused.

**8.6.** Legal Considerations

**8.6.1.** If either the Survivor or the Accused requests the counsel of a canon lawyer, the Victim (Survivor) Assistance Coordinator will help the Survivor or the Accused in locating competent outside canonical counsel to assist them.

**8.6.2.** During a penal process, if requested by the Survivor, the Diocese may agree to assume part or all the costs associated with canonical counsel to the Survivor, if those costs are within acceptable standards suggested by the Canon Law Society of America. Such costs may also be assumed by the Accused, to the extent authorized by Canon Law or agreed to by the Accused.

**8.6.3.** All legal fees and any award for damages against a person found to be a Perpetrator by a court of competent jurisdiction are the personal responsibility of the Perpetrator. The Diocese will not assist in providing

legal fees for any person who is found to be a Perpetrator by a court of competent jurisdiction.

**8.6.4.** The Diocese will not require, as a condition to any settlement with a Survivor, that the Survivor enter into a confidentiality agreement with respect to such settlement. The Diocese will enter into a confidentiality agreement only if specifically requested by the Survivor or the Survivor's legal representative and will do so only for compelling reasons. At no time will the Diocese initiate such a confidentiality agreement. If such a request for confidentiality is made and agreed upon by the Diocese, such a request of the Survivor will be noted in the text of the agreement (cf. USCCB Charter, art. 3).

## 9. Communications

**9.1.** <u>Communications Coordinator</u>. In accord with the USCCB Charter, the Bishop will designate a Communications Coordinator. Any person offering statements or commentary to the media other than the Bishop or the Communications Coordinator must be understood as offering only personal viewpoints and opinions, not necessarily reflecting the position of the Diocese or any of its parishes or schools in any official manner.

**9.1.1.** The Communications Coordinator is a member of the Safe Environment Committee and works closely with the Program Director in developing and maintaining the section on communications in these Child Protection Protocols. The Diocese's communications policy will reflect a commitment to openness in a manner which respects the right to privacy and the reputation of all persons involved in Accusations, including the Accuser or Survivor as well as the Accused. The Communications Coordinator will be kept informed of new Accusations and the progress of inquiries into Accusations by the Program Director. The Communications Coordinator, in turn, will inform those individuals or groups with a legitimate interest in the matters, especially parish communities affected by Accusations, through regular release of information

**9.1.2.** The Diocese shall be open and transparent in communicating with the public about the Sexual Abuse of a Minor within the confines of respect for the privacy and the reputation of the individuals involved.

**9.2.** <u>Sharing Information</u>. The primary means of communicating to the Catholic community and the larger public is through the diocesan website and in the diocesan newspaper, The Catholic Sun, and/or any other similar Diocesan publication. As appropriate and as determined by the Communications Coordinator in consultation with the Program Director or the Bishop, other means of communication, including the secular media, will be used to make known the current policies of the Diocese regarding the Sexual Abuse of a Minor.

**9.2.1.** The Communications Coordinator is to recommend to the Program Director specific policies for keeping the following persons or groups of persons properly informed as needed:

    a. The secular media, regarding a specific Accusation or determination as to whether such Accusation is a Substantiated Claim.

    b. The secular or religious media, regarding policies, procedures, and statistics.

    c. The Clergy of the Diocese of Syracuse.

    d. The staff or people of a parish, school, secretariat, or other place affected by a specific Accusation.

    e. The Catholic people of the Diocese of Syracuse.

    f. The public of New York.

**9.3.** <u>Disclosure and Confidentiality</u>.  The Diocese of Syracuse constantly maintains on its website (syracusediocese.org/safe-environment) a clear announcement on how to report (1) suspected abuse of a Minor (call the police department and the New York State Child Abuse Hotline at 1-800-342-3720); (2) of a vulnerable adult (call the police department and the Vulnerable Persons Central Register Hotline at 1-855-373-2122); (3) of a Minor by a Cleric or any Church Personnel (call the police department, the New York State Child Abuse Hotline at 1-800-342-3720, and contact the Victim (Survivor) Assistance Coordinator at 315-470-1465).

**9.3.1.** The Diocese will also ensure that annual announcements on how to report the suspected abuse of a Minor by a Cleric or any Church Personnel will be made in all parishes (by announcement or printed in bulletins) (cf. USCCB Charter, art. 2).

**9.3.2.** By means of the annual announcements, the Diocese will encourage all Survivors of sexual abuse to report any Perpetrators to Diocesan officials. While the Church's primary focus is the healing and well-being of Survivors, these public announcements should assure Survivors of the eagerness of the Diocese to assist them and encourage them to come forward to prevent ongoing or future abuse.

**9.3.3.** Notwithstanding anything to the contrary contained in these Child Protection Protocols, the Diocese shall not disclose the identity, or information that may allow the identification, of the individual that makes an Accusation to any person or entity other than law enforcement without written permission from the individual that made the Accusation.

**9.3.4.** From time to time, it may become necessary or appropriate to provide information regarding the inquiry into an Accusation and the results thereof

17433013.1

to the institution to which the Accused is connected (i.e., their parish, school, secretariat or office). This will be done by the Communications Coordinator, with the Program Director and the proper pastor, principal, diocesan vicar or secretary.

**9.3.5.** Disclosure of information regarding the inquiry into an Accusation and the results thereof may be made to any of the following, depending on the circumstances of the case:

    a.  The staff or parishioners (or students) of the Accused's current and/or previous assignment(s) or place(s) of work or ministry.

    b.  Co-workers or staff of an Accused's current diocesan assignment, employment, or ministry.

    c.  Officials of any other diocese or institute or society of consecrated life in which the Accused may work or reside.

    d.  Potential employers of the Accused.

    e.  The secular or religious media.

    f.  In every case disclosure will be made to the appropriate civil and ecclesiastical authorities.

**9.3.6.** If disclosure is made to a school or parish community at large, the Program Director, together with the Victim (Survivor) Assistance Coordinator, is to ensure that several counselors or therapists are available at the same time and place to offer immediate crisis counseling to any who desire it, or to report additional incidents of suspected abuse.

**9.3.7.** If disclosure is made under Section 9.3.4, 9.3.5, or 9.3.6, such disclosure is made with the expectation of confidentiality and privacy, under possible penalty in canon or civil law. If an Accusation becomes public by any means, the Communications Coordinator or the Program Director is to inform the appropriate personnel at the Accused's current assignment or employment that an inquiry is being conducted. Media questions are to be directed to the Communications Coordinator.

**9.3.8.** Notwithstanding anything to the contrary in this section 9.3, the Diocese shall not disclose any information to the extent doing so is prohibited by, or otherwise inconsistent with, applicable federal, state, or common law.

**9.4.** Inquiries from Third Parties

**9.4.1.** Any inquiries from the media concerning Accusations of Sexual Abuse of a Minor by a Cleric, Employee, or Volunteer, who are in any way affiliated with the Diocese, are to be forwarded to the Communications Coordinator.

17433013.1

It is the policy of the Diocese to provide accurate and up-to-date information concerning the number of Accusations received within a given time, the inquiries conducted, and the number of Substantiated Claims. This includes information regarding the current employment or ministerial status of Clergy or any Church Personnel. The Diocese will not ordinarily offer commentary regarding an open inquiry or any matter in litigation before secular or ecclesiastical courts.

**9.4.2.** When an Accusation involves Clergy from another diocese, institute or society of consecrated life, or an employee or volunteer of either, the Communications Coordinator will be kept informed of the Accusation and the progress of the inquiry (which may or may not take place in the Diocese of Syracuse), but normally all questions regarding the matter are referred to the person's proper diocese or institute of consecrated life.

## 10. Record Keeping

**10.1.** The Office of the Program Director shall maintain records relating to Clergy and the Safe Environment Program.

**10.2.** The Office of the Director shall maintain records of the training sessions and educational requirements required under the Policies.

**10.3.** The Diocese shall maintain files for all Clergy.

**10.4.** The Diocese shall ensure that files for any Seminarians and Church Personnel are maintained.

**10.5.** The Diocese shall not destroy any files maintained pursuant to Section 10.3 or 10.4.

**10.6.** Files may be maintained electronically.

**10.7.** The files maintained pursuant to Sections 10.3 and 10.4 shall contain the following records:

A.    Signed documents as required under the Policies.

B.    Copies of all returned background checks.

C.    Internal memoranda or documentation regarding Cleric or Church Personnel misconduct.

D.    Records of any allegation of Sexual Abuse of a Minor made against the Cleric or Church Personnel.

E.    Records of any Mandatory Reporting made to law enforcement about the Cleric or Church Personnel.

17433013.1

F.      Records of any internal investigation into the Cleric or Church Personnel.

G.      Records relating to review of the Cleric or Church Personnel by all Review Boards.

## 11. Other Considerations

**11.1.**  <u>The Website</u>. The Diocese shall support and encourage the reporting of suspected Sexual Abuse of a Minor on its website and in print documents posted in office facilities within parishes and Catholic schools in the Diocese Territory. The website and documents shall seek to educate the public on the reporting of Sexual Abuse of Minors and the protection afforded to Accusers who make good-faith Accusations.

**11.2.**  <u>Meetings with Survivors and Listening Sessions</u>. In instances where a claim of Sexual Abuse of a Minor is deemed a Substantiated Claim, if requested, Diocese leadership, including the Bishop, shall meet with the Survivor or his or her support person(s) as may be reasonably arranged, with due respect for the needs of both the Survivor and Diocesan personnel.

**11.3.**  <u>Apology Letter</u>. In instances where a claim of Sexual Abuse of a Minor is deemed a Substantiated Claim, if requested by the Survivor, the Bishop shall, on behalf of the Diocese, send a personally signed letter of apology to the Survivor.

**11.4.**  <u>Annual Mass</u>. The Diocese will have a mass at least once per calendar year dedicated to support of Survivors and to prevention of sexual abuse of children. The Bishop will encourage all Clergy in writing to attend the annual mass. The Bishop will exercise best efforts to preside over this annual mass. The Diocese shall cause to be announced in Parish bulletins at least one month in advance the time and location of this annual mass. The location of this annual mass shall rotate through each deanery located within the Diocese.

**11.5.**  <u>24/7 Hotline</u>. The Diocese shall maintain an independent mechanism where concerns regarding suspected Sexual Abuse of a Minor or other misconduct can be reported. The mechanism should provide for 24/7 access and allow reports to be made by phone or through a confidential web-based reporting mechanism.

**11.6.**  <u>Law Enforcement</u>. The Diocese shall have a policy to provide law enforcement, upon request, with residential address of each Cleric incardinated in the Diocese having a Substantiated Claim of Sexual Abuse of a Minor, to the extent known by the Diocese.

**11.7.**  <u>Multi-lingual Publication</u>. The Diocese agrees to make these Child Protection Protocols available on its website in languages other than English, including Spanish, and any other languages the Diocese, in its discretion, may reasonably select.

## 12.   Compliance

**12.1.** The Diocese shall institute a reasonable timeline for the implementation of, and compliance with, these Child Protection Protocols.

**12.2.** Not less than every forty-eight (48) months, the Diocese shall cause to be undertaken an independent audit of the Diocese's compliance with the Diocese's safe environment program. The independent audit shall be conducted by a firm with demonstrated competencies to conduct a compliance audit with policies like these Child Protection Protocols.

**12.3.** Each audit shall be provided to the Independent Professional Investigator(s) and the Diocesan Review Board and maintained by the Diocese.

**12.4.** The Diocese will review and consider each audit report to further evaluate and continuously improve these Child Protection Protocols.

17433013.1

# EXHIBIT A

17433013.1

**EXHIBIT B**

17433013.1