**Hearing Date & Time**: [*pending*]
**Objection Deadline**: [*pending*]
**Hearing Location**: 100 South Clinton Street, Syracuse, NY 13261

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

－－－－－－－－－－－－－－－－－－－－－－－－－－－－－－－－ X

| | |
|---|---|
| In re: | CHAPTER 11 |
| THE ROMAN CATHOLIC DIOCESE OF SYRACUSE, NEW YORK, | Case No. 20-30663-WAK |
| Debtor. | |

－－－－－－－－－－－－－－－－－－－－－－－－－－－－－－－－ X

## THE INTERSTATE INSURERS' MOTION FOR ENTRY OF SCHEDULING ORDER IN CONNECTION WITH ANY CONFIRMATION HEARING

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

JURISDICTION AND VENUE ............................................................................................... 3

RELEVANT BACKGROUND ................................................................................................ 3

    A. The Original Plan ........................................................................................ 4

    B. Denial of Original Disclosure Statement .................................................... 5

    C. Current Plan and Disclosure Statement....................................................... 7

RELIEF REQUESTED............................................................................................................ 9

STATUTORY FRAMEWORK................................................................................................ 10

ARGUMENT & CITATION TO AUTHORITY ....................................................................... 11

    I.   A RULE 7016 SCHEDULING ORDER IS WARRANTED.......................... 12

    II.  THE PROPOSED ORDER SHOULD BE ENTERED.................................... 15

CONCLUSION........................................................................................................................ 19

# TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*Diocese of Rochester v. Cont'l Ins. Co.*
2023 Bankr. LEXIS 1114 (Bankr. W.D.N.Y. Apr. 25, 2023) ....................................................... 8

*Act Now to Stop War & End Racism Coal. v. District of Columbia*,
   286 F.R.D. 117 (D.D.C. 2012)..................................................................................................... 13

*Casse v. Key Bank Nat'l Ass'n (In re Casse)*,
   198 F.3d 327 (2d Cir. 1999)................................................................................................... 12, 15

*Complaint of Bankers Trust Co.*,
   752 F.2d 874 (3d Cir. 1985)......................................................................................................... 16

*Congoleum Corp. v. Ace American Insurance Co.*, NO. MID-L-8908-01,
   2007 N.J. Super. Unpub. LEXIS 3000 (N.J. Sup. Ct. May 18, 2007) ...................................... 14

*FERC v. Powhatan Energy Fund, LLC*,
   286 F. Supp. 3d 751 (E.D. Va. 2017) ......................................................................................... 16

*Gold v. Johns-Manville Sales Corp.*,
   723 F.2d 1068 (3d Cir. 1983)....................................................................................................... 16

*Hernandez v. Mario's Auto Sales, Inc.*,
   617 F. Supp. 2d 488 (S.D. Tex. 2009) ................................................................................... 13, 15

*Hickman v. Taylor*,
   329 U.S. 495 (1947)...................................................................................................................... 16

*In re Diocese of Camden*,
   653 B.R. 309 (Bankr. D.N.J. 2023) .......................................................................................... 8, 13

*In re Olympia Office LLC*,
   574 B.R. 38 (Bankr. E.D.N.Y. 2017)........................................................................................... 12

*In re Peregrine Sys. Inc.*,
   311 B.R. 679 (D. Del. 2004)......................................................................................................... 15

*In re Ranch House of Orange-Brevard, Inc.*,
   773 F.2d 1166 (11th Cir. 1985) ................................................................................................... 15

*In re Rogers*,
   583 B.R. 604 (Bankr. D. Mass. 2018) ......................................................................................... 12

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)...................................................................................... 16

*Lassiter v. Dep't of Soc. Servs.*,
    452 U.S. 18 (1981)........................................................................................ 16

*Lindsey v. Normet*,
    405 U.S. 56 (1972)........................................................................................ 16

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)...................................................................................... 16

*Matter of TransAmerican Nat. Gas Corp.*,
    978 F.2d 1409 (5th Cir. 1992) ...................................................................... 11

*Ostroff v. Alterra Healthcare Corp.*,
    433 F. Supp. 2d 538 (E.D. Pa. 2006) ........................................................... 16

*Pedersen v. S. Williamsport Area Sch. Dist.*,
    677 F.2d 312 (3d Cir. 1982)........................................................................... 16

*In re Hart*,
    No. 13-20039-TLM, 2013 Bankr. LEXIS 719 (Bankr. D. Idaho Feb. 26, 2013) ..................... 14

*Schwartz v. Aquatic Dev. Grp., Inc. (In re Aquatic Dev. Grp., Inc.)*,
    352 F.3d 671 (2d Cir. 2003)........................................................................... 15

*United States v. Int'l Bus. Machs. Corp.*,
    68 F.R.D. 358 (S.D.N.Y. 1975) ..................................................................... 15


*Charter Nat'l Life Ins. Co. v. FPL Grp. Capital.*,
    1997 U.S. Dist. LEXIS 3815, at *2 (S.D.N.Y. Mar. 28, 1997) ................................. 16

*United States v. Proctor*,
    356 U.S. 677 (1958)...................................................................................... 16

Statutes

11 U.S.C. § 105......................................................................................... 12, 15
11 U.S.C. § 1129(a) ...................................................................................... 13
11 U.S.C. § 1129(a)(1)............................................................................... 13, 17
11 U.S.C. § 1129(a)(3)................................................................................... 13
28 U.S.C. § 157(b)(2) ...................................................................................... 3
28 U.S.C. §§ 1408 ........................................................................................... 3
28 U.S.C. §§ 1409 ........................................................................................... 3

28 U.S.C. §§ 1334 ........................................................................................................................... 3

Rules

FED. R. BANK. P. 7016 ............................................................................................................... 11, 12
FED. R. BANKR. P. 2002 .................................................................................................................. 15
FED. R. BANKR. P. 3020(b)(1) ........................................................................................................ 11
FED. R. BANKR. P. 7001 ............................................................................................................. 10, 11
FED. R. BANKR. P. 9014 ...................................................................................................... 10-12, 14
FED. R. CIV. P. 16 ............................................................................................................................ 15

Interstate Fire & Casualty Company and Fireman's Fund Insurance Company (collectively, the "Interstate Insurers"), by and through undersigned counsel, hereby file this "Motion" for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (a) scheduling certain dates and deadlines in connection with any hearing (a "Confirmation Hearing") to consider confirmation of the *Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Dkt. No. 1718] (as amended, supplemented, replaced, or superseded, the "Current Plan");[1] and (b) granting related relief.  In support hereof, the Interstate Insurers respectfully state as follows:

### **PRELIMINARY STATEMENT**

The Current Plan and the Plan Proponents tell two, very different stories.  According to the Plan Proponents, the Current Plan (like its predecessor) effects an innocuous, everyday transfer of mere insurance claims – one that will not affect coverage issues and therefore need not be scrutinized.  The Plan Proponents have flogged this refrain repeatedly, often while deriding the Interstate Insurers' legitimate concerns as unfounded speculation or worse.  But the Plan Proponents' increasingly strained responses are irreconcilable with the contents of their plans.

The Original Plan (defined below), for example, sought a finding – the good faith finding with respect to the TDP – that served no identifiable bankruptcy purpose whatsoever.  It was not required by Section 1129, and other bankruptcy courts have consistently rejected identical findings.  The only possible reason for its inclusion was to prevent the Interstate Insurers (and others) from later contesting the validity of the TDP *in coverage litigation*.  Put differently, the

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in (i) *The Interstate Insurers' Objection to Approval of the Debtor's Disclosure Statement* [Dkt. No. 1639] (Jan. 30, 2024) or (ii) the Current Plan and other Plan Documents (as defined in the Current Plan), in that order.

Original Plan attempted to do precisely what the Plan Proponents insisted it would not: "decide coverage issues."[2]

The Current Plan is little better. Although it omits the good faith finding from the Original Plan, which is itself revealing, the Current Plan still seeks a finding that the Insurance Claims Assignment "is authorized by, and does not conflict with, [. . .] applicable law" and elsewhere purports to eliminate any coverage defense "regarding or arising from the Insurance Claims Assignment."[3] Once again, neither provision is necessary under Section 1129; both attempt to prejudge outcomes that should be decided ***in coverage litigation*** (on the basis of the future conduct of the Trustee and Abuse Claims Reviewer); and similar concepts have been prohibited by other bankruptcy courts.[4]

These and other provisions underscore a substantial and obvious disconnect between the language of the Current Plan and the Plan Proponents' professed intentions. To help bridge that divide, the Interstate Insurers in this Motion seek entry of a scheduling order (*viz.*, the Proposed Order) setting a pretrial discovery schedule, along with related deadlines, in connection with any Confirmation Hearing. The Motion should be granted for at least two reasons.

---

[2] *The Official Committee of Unsecured Creditors' Response to Travelers Insurance Company Limited, Travelers Casualty and Surety Company, Traveler's Indemnity Company and Arrowood Indemnity's Motion to Terminate the Mediation Stay* [A.P. Dkt. No. 151] at 3.

[3] Current Plan, § 8.7.h. *But see* Current Plan, § 8.2.4.a. (adding "subject to any defenses the Non-Settling Insurers may have under applicable state law.").

[4] *See, e.g.*, Decision and Order Declining to Approve Competing Disclosure Statements Filed by Continental Insurance Company and Jointly by the Debtor & Creditors' Committee at ¶ 9, *In re The Diocese of Rochester*, No. 19-20905 (Bankr. W.D.N.Y. Feb. 16, 2024), ECF No. 2461 ("With regard to the Diocese/Committee Disclosure Statement and Plan—the inclusion of an 'exception' to the insurance neutrality provision that states that the Court will enter a confirmation order finding that the insurance assignment does not trigger a coverage defense is overreaching and unacceptable . . .").

*First*, entry of a scheduling order is clearly warranted here. The Confirmation Hearing will involve live testimony from both fact and expert witnesses, and substantive discovery before that. This makes a scheduling order a practical necessity. Without it, the parties will lack clear and definite deadlines for disclosures, discovery, and pretrial motions, all of which are imperative for a fair and efficient trial.

*Second*, the schedule that the Interstate Insurers propose herein – the Pretrial Schedule (as defined below) – is appropriate under the circumstances of this case. The Current Plan is complex, and it raises serious questions. Approximately four months of discovery, as the Interstate Insurers request, will provide adequate time to unravel the former and gather answers to the latter. It is also consistent with schedules approved and entered in similar cases involving similar concerns, including *Boy Scouts of America*, *The Diocese of Camden, New Jersey*, and *The Diocese of Rochester, New York*.

For these reasons, and for those set forth in greater detail below, the Interstate Insurers respectfully submit that this Motion should be approved, and the Proposed Order entered.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L).

2.      Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## RELEVANT BACKGROUND

3.      The Interstate Insurers incorporate by reference, as if fully restated herein, Sections A.–E. (inclusive) of the "Factual Background" from *The Interstate Insurers' Objection to Approval of the Debtor's Disclosure Statement* [Dkt. No. 1639] (Jan. 30, 2024) (the "Objection").

A.    **The Original Plan**

4.    The Debtor filed the *Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Dkt. No. 1565] (the "Original Plan") and accompanying *Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Dkt. No. 1566] (the "Original Disclosure Statement") on December 6, 2023, followed by two supplements in early January.[5]

5.    As set forth in the Objection, the centerpiece of the Original Plan was a trust established for the benefit of the Abuse Claimants.  That trust would be funded with an assignment of insurance claims,[6] plus $100 million (total) from the Debtor and the Participating Parties, and Abuse Claims would be channeled exclusively to the trust for resolution and payment.  The trustee would in turn (i) make *pro rata* distributions from the trust to each Abuse Claimant based on "points" awarded pursuant to trust distribution procedures and (ii) pursue the Interstate Insurers, among others, for coverage of the Abuse Claims.

6.    As part of that process, the Original Plan purported to:[7]

---

[5] *See generally* Original Plan; *see also Notice of Filing of Plan Supplement to Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York Dated December 6, 2023* [Dkt. No. 1604]; *Notice of Filing of Second Plan Supplement to Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York Dated December 6, 2023 and Disclosure Statement* [Dkt. No. 1613].

[6] The Original Plan contemplated an assignment of the Debtor's and/or Participating Parties' (as applicable) claims and interests in the Non-Settling Insurer Policies (but not the policies themselves).  Original Plan, §§ 1.1.83, 8.2.4.  The Insurance Claims Assignment under the Current Plan is materially similar.  *See* Current Plan, §§ 1.1.87, 8.24.

[7] Capitalized terms used in this ¶ 6 have the definitions ascribed to such terms in the Original Plan.

a.      seek a finding that "the assignment of Insurance Claims . . . as contemplated in the Plan is authorized by, and does not conflict with, any provision of the Bankruptcy Code or other applicable law";[8]

b.      limit or eliminate the Interstate Insurers' coverage defenses relating to, among other things, "the Insurance Claims Assignment" and the "negotiation . . . of the Plan"[9]; and

c.      seek a finding that "the Allocation Protocol as proposed by the Committee and attached . . . to the Plan Supplement has been proposed in good faith and is fair and reasonable . . . ."[10]

## B.    Denial of Original Disclosure Statement

7.      Shortly after filing the Original Plan and Original Disclosure Statement, the Debtor moved for entry of an order (a) approving the Original Disclosure Statement and Original Plan for solicitation and (b) granting related relief.[11]   In that motion, the Debtor also appeared to request a Confirmation Hearing approximately 35 days after entry of any order approving the Original

---

[8] Original Plan, § 11.1.1.b.

[9] *Id*., § 8.7.h.

[10] *Id*., § 11.1.1.a.

[11] *See generally Motion for Entry of an Order (I) Approving Disclosure Statement; (II) Approving Solicitation Packages and Distribution Procedures; (III) Approving the Forms of Ballots and Establishing Procedures for Voting on Joint Plan; (IV) Approving the Form, Manner, and Scope of Confirmation Notices; (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Joint Amended Plan; and (VI) Granting Related Relief* [Dkt. No. 1626].

Disclosure Statement.[12]  The Debtor did not, however, furnish a specific date for the Confirmation

Hearing – and the timeline, to the extent one was proposed, did not contemplate plan discovery.[13]

8.      The Court never had an occasion to address this issue.  It instead entered an order

on February 8 denying approval of the Original Disclosure Statement (the "<u>Denial Order</u>"),[14] citing

a number of "deficiencies that must be addressed before the adequate information requirements of

[Section] 1125 are satisfied"[15] and noting "other concerns that need to be resolved if th[e] [Chapter

11 Case] proceeds to confirmation."[16]

9.      As a result of these deficiencies, the Court (a) directed the parties to "propose

language to [the] Debtor that addresses the concerns raised" in the objections and other responses

to the Original Disclosure Statement;[17] (b) instructed the Debtor to file an amended disclosure

statement, along with a redline, by March 5, 2024;[18] and (c) adjourned to April 2 the hearing on

the amended disclosure statement.[19]

10.     In accordance with the Court's Denial Order, the Interstate Insurers provided

curative language (for the Original Plan and the Original Disclosure Statement) to the Plan

Proponents.  But the Plan Proponents adopted very few of the Interstate Insurers' disclosure

---

[12] *See id.* at ¶ 60 ("[T]he Diocese requests that the Confirmation Hearing be scheduled to commence on the earliest date the Court may be available that is at least twenty-eight (28) days following the Solicitation Commencement Date."); *id.* at ¶ 12 (defining "Solicitation Commencement Date" as "No later than seven (7) days after entry of [an order approving the adequacy of the Original Disclosure Statement, permitting solicitation, etc.].").

[13] *See generally id.*; *see also id.* at ¶ 12 (proposing a confirmation objection deadline of 14 days prior to any Confirmation Hearing).

[14] *Order Denying Approval of the Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Dkt. No. 1664].

[15] *Id.* at 4.

[16] *Id.* at 5.

[17] *Id.* at 6.

[18] *Id.*

[19] *Id.*

proposals and, with one exception, declined to adopt any of the Interstate Insurers' plan proposals.[20]

      **C.**     **Current Plan and Disclosure Statement**

    11.    The Debtor filed the Current Plan and *Disclosure Statement in Support of Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Dkt. No. 1719] (the "Current Disclosure Statement") on March 5, 2024. Despite the Plan Proponents' changes, the Current Plan mirrors the Original Plan in most material respects.[21]

    12.    Both plans provide for the same Trust and Trust funding mechanism (including an assignment of Insurance Claims),[22] contemplate a substantially similar distribution process,[23] and vest in the Trustee the same power to pursue the Interstate Insurers, among others, for coverage of the Abuse Claims.[24] The Current Plan also seeks the same finding with respect to the Insurance Claims Assignment[25] and, like the Original Plan, purports to limit or eliminate the Interstate Insurers' coverage defenses relating to (among other things) "the Insurance Claims Assignment" and the "negotiation of the Plan."[26]

    13.    These and other provisions raise a number of critical – and unanswered – questions, including:

---

[20] The Current Plan removes the good faith finding for the Allocation Protocol, as the Interstate Insurers requested. *Compare, e.g.*, Objection, § I.C., *with Notice of Filing of Redlines* [Dkt. No. 1722], Ex. A (the "Plan Redline") at 61.

[21] *See generally* Plan Redline.

[22] *See id.* at 47-49.

[23] *See generally Notice of Filing of Redlines* [Dkt. No. 1722], Ex. D.

[24] *See* Plan Redline at 51-52.

[25] *See id.* at 61.

[26] Current Plan, § 8.7.h. *See* Plan Redline at 51-52 (showing no changes to Section 8.7.h.). *But see* Current Plan, § 8.2.4.a. (adding "subject to any defenses the Non-Settling Insurers may have under applicable state law.").

a.      what (if any) bankruptcy purpose is served by findings and determinations that appear to target the Interstate Insurers' coverage defenses, particularly since bankruptcy judges in other Chapter 11 cases have criticized similar attempts as inappropriate[27] or unduly prejudicial;[28]

b.      whether the Trustee can seek coverage for Abuse Claims based solely on a TDP points award from the Abuse Claims Reviewer (as opposed to, *e.g.*, a Litigation Award – judgment for damages – entered by an appropriate tribunal);[29] and

---

[27] *See* Decision and Order Declining to Approve Competing Disclosure Statements Filed by Continental Insurance Company and Jointly by the Debtor & Creditors' Committee at ¶ 9, *In re The Diocese of Rochester*, No. 19-20905 (Bankr. W.D.N.Y. Feb. 16, 2024), ECF No. 2461 ("With regard to the Diocese/Committee Disclosure Statement and Plan—the inclusion of an 'exception' to the insurance neutrality provision that states that the Court will enter a confirmation order finding that the insurance assignment does not trigger a coverage defense is overreaching and unacceptable . . ."). *Accord, e.g., Diocese of Rochester v. Cont'l Ins. Co. (In re Diocese of Rochester)*, Nos. 19-20905-PRW, 19-2021-PRW, 2023 Bankr. LEXIS 1114, at *10 (Bankr. W.D.N.Y. Apr. 25, 2023) (dissolving a mediation stay entered in an insurance coverage adversary proceeding when it became apparent that the plan proponents intended to use "the confirmation process . . . [to] control[] the manner in which . . . critical issues concerning insurance coverage defenses are ultimately decided," and holding that "[i]t is now time for the insurance coverage issues to be fully and fairly adjudicated in th[e] [a]dversary [p]roceeding, and not as a backdoor adjunct to the plan confirmation process.").

[28] *Compare In re Diocese of Camden*, 653 B.R. 309, 356 (Bankr. D.N.J. 2023) (noting that the court "w[ould] not confirm a plan which is so biased as to strip the [i]nsurers of rights necessary to ensure the [p]lan is equitable."), *and id*. at 356 ("Another significant problem raised by the [i]nsurers is the inconsistent and insufficient language in the [p]lan and [trust distribution procedures] preserving the [i]nsurers' rights under the [p]olicies," including language stating that the insurers in that case would "retain any [coverage] defenses . . . ***except any defense arising from the [i]nsurance [a]ssignment***." (emphasis added) (internal citations and quotations omitted)), *with* Transcript of Decision of the Honorable Jerrold N. Poslusny, Jr. at 11:1-9, *In re The Diocese of Camden, New Jersey*, No. 20-21257 (Bankr. D.N.J. Dec. 15, 2023) (finding that the same language was "acceptable" after it was amended to include a proviso "expressly preserv[ing] the insurers' rights" to contest the validity of "the insurance assignment . . . under governing law.").

[29] *Cf.* Transcript of [*Various Motions*] Before Honorable Wendy A. Kinsella at 53:14-17, *In re The Roman Catholic Diocese of Syracuse, New York*, No. 20-30663 (Bankr. W.D.N.Y. Feb. 6, 2024)

    c.       whether or to what extent the Trust fiduciaries-elect are irreparably tainted

by bias as a result of, among other things, their connections to Committee counsel

and/or certain plaintiffs' attorneys (along with a more robust accounting of those

connections).[30]

### RELIEF REQUESTED

    14.    By this Motion, the Interstate Insurers seek entry of an order, substantially in the

form of the Proposed Order, setting the following dates and deadlines in connection with any

Confirmation Hearing (collectively, as follows, the "Pretrial Schedule"):

*[continued]*

---

("[Mr. Donato:] The claims [review] process [under the TDP] doesn't bind the insurance companies at all. . . . ***It doesn't impact them***." (emphasis added)). At the February 6 hearing on approval of the Original Disclosure Statement, counsel for the Debtor repeatedly represented that any valuation of Abuse Claims under the TDP would not affect the insurers. *See id*.; *see also id*. at 54:18-24. This careful phrasing sets up a straw man. The issue with the TDP points-based valuation is not whether the product will "impact" or affect the insurers, but whether the Trustee can seek indemnity (coverage) from the insurers for Abuse Claims valued solely under the TDP. *See id*. at 56:14-18 ("[Mr. Schiavoni:] They're having this claims reviewer . . . adjudicate the claim, okay, and come up with a value for it and allow it, and then they're going to present the bill for that and seek coverage for it."); *see also infra* n.58.

[30] *Cf. Current Disclosure Statement, art.V.B. (disclosing that the proposed Abuse Claims Reviewer, Roger L. Kramer, has served in a similar capacity in a number of other diocesan bankruptcies in which Stinson LLP (Committee counsel) and "[s]everal State Court Counsel" were or are involved); *id*., art.IX.E. (disclosing similar connections with respect to the proposed Trustee, DW Harrow & Associates, LLC). Notably, neither disclosure provides anything close to what Fᴇᴅ. R. Bᴀɴᴋʀ. P. 2014 would require. They instead make vague references to "[s]everal State Court Counsel" without disclosing who, fail to disclose any personal relationships, and lack any certification from the individual.

| Event | Date[31] |
|---|---|
| Deadline for Identification of all Proposed Trust Fiduciaries and Submission of Proposed Confirmation Order and all Plan Supplements[32] | +15 |
| Deadline to Serve Written Discovery | +20 |
| Deadline to Serve Responses & Objections to Written Discovery | 20 days after service of written discovery |
| Deadline for Substantial Completion of Document Production and Service of Privilege Logs (as applicable) | +46 |
| Deadline to File Motions re: Written Discovery Disputes | +48 |
| Deadline for Identification of Expert Report Topics (excl. Rebuttal Reports) | +54 |
| Completion of Fact Discovery | +75 |
| Expert Reports Due | +75 |
| Deadline for Identification of Rebuttal Experts | +88 |
| Rebuttal Expert Reports Due | +95 |
| Completion of Expert Depositions | +108 |
| Plan Proponents' Brief in Support of Confirmation Due | +110 |
| Deadline to File Objections to Plan Confirmation | +115 |
| Deadline to Exchange Deposition Designations and File Motions *in Limine* | +120 |
| Responses to Confirmation Objections / Replies in Support of Confirmation Due | +127 |
| Deadline to Exchange Deposition Counter-Designations | +128 |
| Responses to Motions *in Limine* Due; Objections to Counter-Designations Due | +130 |
| Deadline to Submit Joint Pretrial Order and Witness and Exhibit Lists | +133 |
| Final Pretrial Conference* | +135 |
| Commencement of Confirmation Hearing* | +140 |

## STATUTORY FRAMEWORK

15.     The Federal Rules of Bankruptcy Procedure (each, a "Rule") distinguish between two different types of disputes – adversary proceedings and contested matters – and supply a different set of default procedural rules for each.[33]  Adversary proceedings, typically described as

---

[31] Unless otherwise noted, the dates set forth herein are shown as the number of days after the date on which solicitation of the Plan begins.  By way of illustration and not limitation, if solicitation of the Plan were to begin on April 16, 2024, then the deadline to serve written discovery would be May 6, 2024 (April 16 + 20 days = May 6).

[32] To the extent not identified or filed previously.

[33] *See* FED. R. BANKR. P. 7001 ("An adversary proceeding is governed by the rules of this Part VII."); FED. R. BANKR. P. 9014(c) (". . . the following rules [from Part VII] shall apply . . .").

"full blown federal lawsuits within the larger bankruptcy case,"[34] are governed by Part VII of the Rules.[35] This includes Rule 7016, which in pertinent part requires entry of a scheduling order.[36] But adversary proceedings are restricted to the ten categories of suits set forth in Rule 7001; anything not listed therein (including, as relevant here, a contested plan) is a contested matter.[37]

16.    Contested matters are subject to more streamlined procedures.[38] Those procedures are detailed in full in Rule 9014,[39] but the most meaningful difference is a limitation on the Part VII Rules that apply by default: only those Part VII Rules enumerated in Rule 9014 remain operative, and Rule 7016 is not one of them.[40] As a result, scheduling orders ordinarily are required only in adversary proceedings – not contested matters.[41] But that is subject to change. Under Rule 9014(c), a court may "at any stage in a particular [contested] matter direct" that any of the "rules in Part VIII shall apply."[42]

## ARGUMENT & CITATION TO AUTHORITY

17.    This Motion should be granted pursuant to Rules 9014(c) and 7016(a), and Section 105(a). Rules 9014(c) and 7016(a), together with Section 105(a) (*see infra*), grant courts broad discretion over scheduling.[43] But inherent in each is the same basic principle: a court can and

---

[34] *Matter of TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992) (internal citations and quotations omitted).

[35] FED. R. BANKR. P. 7001.

[36] *See* FED. R. BANK. P. 7016.

[37] *Compare* FED. R. BANKR. P. 7001 ("The following are adversary proceedings . . ."), *with* FED. R. BANKR. P. 9014(a) ("In a contested matter not otherwise governed by these rules . . . ), *and* FED. R. BANKR. P. 3020(b)(1) ("An objection to confirmation is governed by [Bankruptcy] Rule 9014").

[38] *TransAmerican Nat. Gas Corp.*, 978 F.2d at 1416.

[39] *See generally* FED. R. BANKR. P. 9014(a)-(c).

[40] *See generally* FED. R. BANKR. P. 9014(c).

[41] *Compare id*. (excluding Rule 7016), *with* FED. R. BANKR. P. 7001 ("An adversary proceeding is governed by the rules of this Part VII."), *and* FED. R. BANKR. P. 7016.

[42] FED. R. BANKR. P. 9014(c).

[43] *See supra*; *see also infra*, § II.

should schedule disposition of matters fairly and appropriately under the applicable circumstances.[44]  That principle confirms both (i) the need for *a* scheduling order here and (ii) the propriety of *the* Pretrial Schedule in the Proposed Order.  Accordingly, and as set forth in greater detail below, the Court should exercise its discretion to impose a scheduling order under Rule 7016 and thereafter select and enter the Proposed Order.

## I.    A RULE 7016 SCHEDULING ORDER IS WARRANTED

18.    As a gating issue, a scheduling order under Rules 9014(c) and 7016(a) should be required for the Current Plan.[45]  Rule 9014(c) by its terms grants a presiding court the discretion to invoke Rule 7016 and enter a scheduling order in any "particular matter."[46]  And although Rule 9014(c) does not identify when or for what reason a court should do so,[47] bankruptcy courts have repeatedly entered Rule 7016 scheduling orders in contested matters where evidentiary hearings are planned or anticipated.[48]  This makes good sense.  Scheduling orders "are . . . essential [to]

---

[44] *Cf.* Fed. R. Bankr. P. 9014(c) ("The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply."); 11. U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); *id.* § 105(d)(2) ("The court . . . unless inconsistent with another provision of [the Bankruptcy Code] or with applicable Federal Rules of Bankruptcy Procedure, may issue an order . . . prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically . . .").

[45] Although an objection to confirmation is technically required for a contested matter, the Interstate Insurers respectfully submit that the Court can apply Rule 7016, as an expression of its inherent power, in anticipation of objections to confirmation.  *See, e.g.*, *Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 336 (2d Cir. 1999) ("Bankruptcy courts, both through their inherent power as courts, and through the general grant of power in [S]ection 105, are able to police their dockets and afford appropriate relief.").

[46] Fed. R. Bankr. P. 9014(c).

[47] *See generally id.*

[48] *E.g.*, *In re Olympia Office LLC*, 574 B.R. 38, 40 (Bankr. E.D.N.Y. 2017); *In re Rogers*, 583 B.R. 604, 613 (Bankr. D. Mass. 2018).

ensuring that cases proceed to trial in a just, efficient, and certain manner."[49]   Among other things,

they "help prevent delays, reduce litigation costs, manage the [c]ourt's docket and generally

maintain the speedy resolution of cases."[50]   They also allow the court "to control and expedite

pretrial discovery matters."[51]   Applying Rule 7016 to (and entering a scheduling order in) a

contested matter designated for trial thus inures to the benefit of litigants and the court.

19.     That reasoning applies with equal force here.   The contested matter at issue – the

Current Plan – is a massively complex undertaking that must meet numerous statutory predicates

for confirmation under Section 1129.[52]   This requires a showing that, among other things, the

Current Plan complies with the Bankruptcy Code[53] and "has been proposed in good faith and not

by any means forbidden by law."[54]   It further prohibits confirmation of a plan "which is so biased

as to strip . . . [i]nsurers of rights necessary to ensure the [p]lan is equitable."[55]   Yet the Current

Plan is riddled with provisions that are facially prejudicial to the Interstate Insurers, such as: (a) a

request for a finding "the assignment of Insurance Claims . . . is authorized by, and does not conflict

with, any provision of the Bankruptcy Code or otherwise applicable law";[56]   (b) language

purporting to limit or eliminate the Interstate Insurers' coverage defenses relating to "the Insurance

Claims Assignment" and the "negotiation . . . of the Plan," among other things;[57] and (c) language

---

[49] *Hernandez v. Mario's Auto Sales, Inc.*, 617 F. Supp. 2d 488, 493 (S.D. Tex. 2009) (citations omitted).

[50] *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 286 F.R.D. 117, 120 (D.D.C. 2012).

[51] *Hernandez*, 617 F. Supp. 2d at 493 (S.D. Tex. 2009) (citations omitted).

[52] *See generally* 11 U.S.C. § 1129(a).

[53] *See* 11 U.S.C. § 1129(a)(1).

[54] 11 U.S.C. § 1129(a)(3).

[55] *Diocese of Camden*, 653 B.R. at 356 (analyzed within the context of Sections 1129(a)(1) and (a)(3)).

[56] Current Plan, § 11.1.1.a.

[57] *Id.*, § 8.7.h.

purporting to vest in the Trust the "right to pursue" the Interstate Insurers for inflated claim values generated under the TDP.[58]

20.    Each of these provisions lacks any apparent proper bankruptcy purpose, and all of them appear to target the Interstate Insurers' rights and coverage defenses under the Interstate Policies.[59]    But either way, the Plan Proponents' satisfaction of several of the statutory requirements for confirmation hinges upon disputed issues of material fact that cannot be resolved without an evidentiary hearing.[60]    As a result, and particularly in light of the complexity of the

---

[58] *Id.*, § 8.7.1.b.; *see also id.* ("The Trust shall also have the right to pursue Claims against Non-Settling Insurers related to the [Debtor's] and/or the Participating Parties' liability for Abuse Claims or the non-Settling Insurers' obligations in respect of such Claims, regardless of whether an Abuse Claimant holds a Claim against the Trust, a Litigation Claim, or both."). *Accord id.*, § 4.3.3. ("The Trust retains the right to pursue Non-Settling Insurers for the [Debtor's] and any other Protected Party's liability to Abuse Claimants regardless of whether the Abuse Claimants elect treatment as Distribution Claimants or Litigation Claimants."). Although the Current Plan elsewhere suggests that that a Non-Settling Insurer's potential coverage obligations will be determined by a Litigation Award (and that TDP valuations are not binding), *see id.*, § 6.2., that concept is irreconcilable with Sections 8.7.1.b. and 4.3.3. The Current Plan provides that all Abuse Claimants are treated either as Litigation Claimants or Distribution Claimants, *id.*, § 4.3.1., and that only the former are eligible for Litigation Awards. *See id.*, § 1.1.107 (defining "Litigation Award" as "a judgment or verdict determining that the [Debtor] and/or any Participating Party is/are liable to *a Litigation Claimant* on account of *a Litigation Claim*." (emphasis added)). Distribution Claims, by contrast, are valued solely (and for all purposes) under the TDP. *See id.*, § 4.3.1.a.  Thus, the TDP valuation is by necessity the amount for which the Trust will seek indemnity (coverage) with respect to Distribution Claims; there is no other means of valuation under the Current Plan.

[59] *Cf., e.g., Congoleum Corp. v. Ace American Insurance Co.*, NO. MID-L-8908-01, 2007 N.J. Super. Unpub. LEXIS 3000, at *23 (N.J. Sup. Ct. May 18, 2007) (finding that a "Claimant Agreement" providing for the allowance and liquidation of asbestos claims was "an unreasonable agreement, not made in good faith," thus vitiating coverage).

[60] *See* 2002 Advisory Committee Note to FED. R. BANKR. P. 9014 (If a contested matter "cannot be decided without resolving a disputed material issue of fact, an evidentiary hearing must be held at which testimony of witnesses is taken in the same manner as testimony is taken in an adversary proceeding or at a trial in a district court civil case."). *Accord, e.g., In re Hart*, No. 13-20039-TLM, 2013 Bankr. LEXIS 719, at *5 (Bankr. D. Idaho Feb. 26, 2013) ("[A] contested matter . . . ordinarily requires trial testimony in open court with respect to disputed material factual issues in the same manner as an adversary proceeding." (internal citations and quotations omitted)).

14

Current Plan, there is ample cause to impose a scheduling order: it will provide clarity to the parties, a greater degree of control to the Court, and reassurance to all that the Current Plan will "proceed to trial in a just, efficient, and certain manner."[61]  The Court therefore should invoke Rule 7016 and require a pretrial scheduling order for the Current Plan.

## II.    THE PROPOSED ORDER SHOULD BE ENTERED

21.    In addition to applying Rule 7016 (and requiring *a* scheduling order for the Current Plan), the Court should select the Pretrial Schedule and enter the Proposed Order.  Scheduling decisions (like this one) are almost entirely within a bankruptcy court's sole discretion.[62]  Section 105(a), however, supplies a useful frame of reference to guide the exercise of that discretion. Section 105(a) in relevant part provides that a "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.[63]  This language is widely regarded as a grant of the equitable power "to achieve fairness and justice in the reorganization process"[64] – including with respect to docket management,[65] where courts frequently emphasize the importance of judicial economy and fairness to litigants.[66]  Section

---

[61] *Hernandez*, 617 F. Supp. 2d at 493 (S.D. Tex. 2009) (citations omitted).

[62] *Cf. United States v. Int'l Bus. Machs. Corp.*, 68 F.R.D. 358, 359 (S.D.N.Y. 1975) ("[FED. R. CIV. P. 16] is consistent with the theory that, in large part, the ultimate parameters of pretrial practice are left to the sound exercise of the court's discretion.").  Certain of the Rules, however, impose a *de facto* floor.  *See, e.g.*, FED. R. BANKR. P. 2002 (setting minimum notice periods for various contested matters).

[63] 11 U.S.C. § 105(a).

[64] *Schwartz v. Aquatic Dev. Grp., Inc. (In re Aquatic Dev. Grp., Inc.)*, 352 F.3d 671, 680 (2d Cir. 2003) (internal citations and quotations omitted) (Straub, J., concurring).  *Accord, e.g.*, *In re Ranch House of Orange-Brevard, Inc.*, 773 F.2d 1166, 1169 (11th Cir. 1985) ("[B]ankruptcy courts are inherently courts of equity with broad remedial powers."); *see also id.* (citing 11 U.S.C. § 105(a)).

[65] *Casse*, 198 F.3d at 336 (2d Cir. 1999) ("Bankruptcy courts, both through their inherent power as courts, and through the general grant of power in [S]ection 105, are able to police their dockets and afford appropriate relief.").

[66] *E.g.*, *In re Peregrine Sys. Inc.*, 311 B.R. 679, 690 (D. Del. 2004) ("Section 105 specifically codifies what are traditionally called 'inherent powers' to give the bankruptcy courts the necessary

105(a), in other words, suggests that a schedule should be efficient and fair.[67]   The Pretrial Schedule is both.

22.     At the outset, the Pretrial Schedule is necessary to ensure a fair Confirmation Hearing.   Fairness is grounded in the opportunity to be heard at a meaningful time and in a meaningful manner,[68] including by presenting evidence on contested facts.[69]   But the ability to take adequate discovery is itself antecedent to such an opportunity:[70] discovery is the primary tool

---

ability to manage the cases on their docket.  Those powers provide courts with the necessary authority to manage the arguments and conduct of parties to ensure judicial efficiency and to do justice." (internal citations and quotations omitted)).  *Cf. Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983) (every court has inherent power to "schedule disposition of the cases on its docket so as to promote fair and efficient adjudication."); *Charter Nat'l Life Ins. Co. v. FPL Grp. Capital*, 95 Civ. 9067 (SAS), 1997 U.S. Dist. LEXIS 3815, at *2 (S.D.N.Y. Mar. 28, 1997) (noting "the inherent power of every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants" (internal quotations omitted) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

[67] *See supra* n. 66.

[68] *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (citations omitted)); *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 24 (1981) ("[T]he phrase [due process] expresses the requirement of 'fundamental fairness' . . ."). *Cf. Pedersen v. S. Williamsport Area Sch. Dist.*, 677 F.2d 312, 317 (3d Cir. 1982) ("Essentially, fundamental fairness is what due process means.").

[69] *In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 890 (3d Cir. 1985) ("Due Process mandates that a judicial proceeding give all parties an opportunity to be heard on the critical and decisive allegations which go to the core of the parties' claim or defense and to present evidence on the contested facts."); *see also Lindsey v. Normet*, 405 U.S. 56, 66 (1972) ("Due process requires that there be an opportunity to present every available defense.")

[70] *Cf., e.g., Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 545 (E.D. Pa. 2006) (denying a motion to compel an arbitral proceeding due in part to substantial limitations on discovery, holding that the limitations "may well deny [the plaintiff] a fair opportunity to present [her] claims." (second alteration in original) (internal citations and quotations omitted)); *FERC v. Powhatan Energy Fund, LLC*, 286 F. Supp. 3d 751, 768 (E.D. Va. 2017) (opining that restrictions on the opportunity to engage in independent discovery in a FERC administrative proceeding "could implicate the[] due process right to be heard 'in a meaningful manner.'" (internal citations omitted)).

by which litigants can "make a trial less a game of blind man's bluff and more a fair contest."[71] To that end, the Pretrial Schedule incorporates sufficient time to permit the Interstate Insurers to take discovery on critical facts that pertain to confirmation, including, for example: (a) the formulation and drafting of the Current Plan, TDP, and Trust Agreement, and the intent behind the prejudicial aspects of each; (b) whether (and if so, how) the Trust can seek coverage for Distribution Claims; (c) the criteria and selection process for the Trustee and Abuse Claims Reviewer (and any other Trust fiduciaries), along with a more detailed accounting of their connections to professionals in the Chapter 11 Case; (d) the feasibility of the Current Plan, particularly with respect to the Interstate Insurers' coverage defenses; (e) the proposed assignment to the Trust of claims arising under the Interstate Policies; (f) the Debtor's (and non-debtors') compliance with their contractual obligations under the Interstate Policies; and (g) the Debtor's pre-petition claims handling experience, as opposed to the proposed assessment of Abuse Claims under the Current Plan and TDP.  These factual matters are directly relevant to whether the Current Plan complies with, among other things, Sections 1129(a)(1), 1129(a)(3), and 1129(a)(5).[72]

23.    In addition to this fact discovery, the Interstate Insurers anticipate potential expert testimony on (among other things): (a) the Current Plan's impairment of the Interstate Insurers' contractual rights from an insurance and economics perspective; (b) deficiencies in the proposed governance of the Trust; (c) deficiencies in the assessment of Abuse Claims under the TDP; and

---

[71] *United States v. Proctor*, 356 U.S. 677, 682 (1958) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

[72] *See generally* 11 U.S.C. § 1129(a)(1) (a plan must comply "with the applicable provisions of" the Bankruptcy Code); *id*. § 1129(a)(3) (a plan must have been "proposed in good faith and not by any means forbidden by law"); *id*. § 1129(a)(5) (requiring disclosure of "the identity and affiliations" of certain individuals that may serve postconfirmation, and further requiring such appointment to be "consistent with the interests of creditors and equity security holders and with public policy").

(d) procedural and due process deficiencies in the TDP. These potential topics may be of great aid to the Court in determining whether to confirm the Current Plan, and the Pretrial Schedule affords to the Interstate Insurers the time required to develop the facts underlying each topic. Altogether, the Pretrial Schedule provides the Interstate Insurers an opportunity to be meaningfully heard at the Confirmation Hearing – it is, in a word, fair.

24.     It is also efficient. This is borne out by scheduling orders entered (and often extended) in other, analogous bankruptcy cases. The court in *Boy Scouts of America*, for example, initially approved a three-and-a-half month pretrial schedule when faced with a comparably prejudicial plan.[73] That schedule, however, proved insufficient; the court later adjusted the plan confirmation schedule on three separate occasions to meet the needs of the case, ultimately providing the parties over five months to prepare.[74] The court in *The Diocese of Camden, New Jersey*, following a similar turn of events, eventually provided the parties with just under three

---

[73] Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief, *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (Bankr. D. Del. Oct. 8, 2021), ECF No. 6528.

[74] *See, e.g.*, Order Granting Certain Insurers' Motion to Modify the Confirmation Scheduling Order, *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (Bankr. D. Del. Dec. 28, 2021), ECF No. 7996 (moving the confirmation date out a month); Order (I) Amending and Scheduling Certain Supplemental Dates and Deadlines in Connection with Confirmation of the Debtor's Plan of Reorganization and (II) Approving a Limited Supplemental Voting Deadline for Class 8 Direct Abuse Claims and Class 9 Indirect Abuse Claims, *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (Bankr. D. Del. Feb. 15, 2022), ECF No. 8830 (moving the confirmation date out a couple of weeks); Revised Order (I) Amending and Scheduling Certain Supplemental Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization and (II) Approving a Limited Supplemental Voting Deadline for Class 8 Direct Abuse Claims and Class 9 Indirect Abuse Claims, *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (Bankr. D. Del. Mar. 4, 2022), ECF No. 9150 (moving the confirmation date out five days).

months for discovery.[75]  And most recently, Judge Warren in *The Diocese of Rochester, New York*

approved a three-and-a-half month discovery schedule in connection with a contested motion for

the settlement and sale of certain insurance claims and policies.[76]  At approximately four months

long, this Pretrial Schedule is facially consistent with the schedules entered in those cases.  And,

given the substantial conceptual overlap between the Current Plan here and the plans in, *e.g.*, *Boy*

*Scouts* and *Camden*, that alone compels the conclusion that the Pretrial Schedule is sufficiently

efficient.

## CONCLUSION

WHEREFORE, the Interstate Insurers respectfully request entry of the Proposed Order

and such other and further relief as is just and proper.

Dated: March 22, 2024

*[Signatures follow]*

---

[75] Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Eighth Amended Plan of Reorganization, (II) Establishing Certain Protocols And (III) Granting Related Relief, *In re The Diocese of Camden, New Jersey*, No. 20-21257 (Bankr. D.N.J. June 24, 2022), ECF No. 1845 (initially setting discovery from June 24, 2022, to August 12, 2022); Amended Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Eighth Amended Plan of Reorganization, (II) Establishing Certain Protocols and (III) Granting Related Relief, *In re The Diocese of Camden, New Jersey*, No. 20-21257 (Bankr. D.N.J. Sept. 1, 2022), ECF No. 2352 (extending discovery from August 12, 2022, to September 14, 2022).
[76] Stipulation and Order Regarding Discovery and the Hearing Relating to the Motion by the Diocese to Approve Negotiated Settlements Pursuant to Federal Rule of Bankruptcy Procedure 9019, *In re The Diocese of Rochester*, No. 19-20905 (Bankr. W.D.N.Y. Jun. 28, 2022), ECF No. 1552 (setting discovery in connection with a settlement with insurers for three and a half months from June 30, 2022, to October 14, 2022).

PARKER, HUDSON, RAINER & DOBBS LLP

By:  /s/ *Matthew G. Roberts*

Harris B. Winsberg (admitted *pro hac vice*)
Matthew M. Weiss (admitted *pro hac vice*)
Matthew G. Roberts (admitted *pro hac vice*)
303 Peachtree Street, Suite 3600
Atlanta, GA 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
hwinsberg@phrd.com
mweiss@phrd.com
mroberts@phrd.com

*-and-*

PARKER, HUDSON, RAINER & DOBBS LLP
Todd C. Jacobs (admitted pro hac vice)
John E. Bucheit (admitted pro hac vice)
Two N. Riverside Plaza, Suite 1850
Chicago, Illinois 60606
Telephone: (312) 417-3306
Facsimile: (404) 522-8409
tjacobs@phrd.com
jbucheit@phrd.com

*-and-*

WHITE AND WILLIAMS LLP
Siobhain P. Minarovich (704462)
7 Times Square, Suite 2900
New York, NY 10036-6524
Telephone: (212) 244-9500
Facsimile: (212) 631-1248
minarovichs@whiteandwilliams.com

20