UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 20-30663-5-wak |
| The Roman Catholic Diocese of Syracuse, New York, | Chapter 11 |
| Debtor. | |

## LONDON MARKET INSURERS' RENEWED MOTION FOR AN ORDER (I) APPROVING CLAIM OBJECTION PROCEDURES, (II) APPROVING DISCOVERY PROCEDURES AND (III) GRANTING RELATED RELIEF

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.    RELEVANT BACKGROUND ..............................................................................3

   A.    The LMI Policies .......................................................................................3

   B.    Bankruptcy and Bar Date Orders ..............................................................7

   C.    The Original Motion ..................................................................................9

   D.    The Court's Denial of the Motion to Approve the Disclosure Statement.............11

   E.    The Amended Disclosure Statement and Plan..........................................12

III.    JURISDICTION AND VENUE ..........................................................................13

IV.    RELIEF REQUESTED........................................................................................13

V.    ARGUMENT ......................................................................................................13

   A.    The Amended Plan impairs LMI's rights because it allows the Assureds to not perform their obligations under the LMI Policies ..........................14

   B.    The Amended Plan fails to satisfy the conditions precedent to coverage in the LMI Policies........................................................................15

   C.    The Amended Plan does not permit the Debtor to defend against the Distribution Claims....................................................................................16

   D.    The Claim Objection Procedures .............................................................17

      1.    Procedures for Objections to Individual Claims......................................18

      2.    Omnibus Objections and Bankruptcy Rule 3007....................................20

      3.    Discovery Procedure for Contested Claims.............................................23

      4.    Discovery on Amended Claims ...............................................................23

      5.    The Claims Objection Procedures Are Appropriate And Should Be Approved..................................................................................24

VI.    NOTICE..............................................................................................................25

VII.    CONCLUSION...................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*641 Assocs. v. Balcor Real Estate Fin. (In re 641 Assocs.)*, No. 91-11234S, 1993
Bankr. LEXIS 1191 (Bankr. E.D. Pa. Aug. 26, 1993).............................................14

*Amatex Corp. v. Aetna Cas. & Sur. Co. (In re Amatex Corp.)*, 97 B.R. 220 (Bankr.
E.D. Pa. 1989), *aff'd sub nom., Amatex Corp. v. Stonewall Ins. Co.*, 102 B.R.
411 (E.D. Pa. 1989)................................................................................................14

*Bellevue S. Assocs. v. HRH Const. Corp.*, 78 N.Y.2d 282 (1991)...............................15

*Brown v. Village of Pelham*, No. 05-cv-7386, 2010 WL 11712459 (N.Y. Sup. Ct.,
Jul. 2, 2010)...........................................................................................................16

*In re Cajun Elec. Power Co-Op, Inc.*, 230 B.R. 715 (Bankr. M.D. La. 1999) ..............14

*Cissel v. Am. Home Assur. Co.*, 521 F.2d 790 (6th Cir. 1975), cert. denied, 423
U.S. 1074 (1976)...................................................................................................14

*Coca-Cola Bottling Co. v. Coca-Cola Co.*, 769 F. Supp. 671 (D. Del. 1991).............14

*Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063
(2d Cir. 1983).......................................................................................................24

*In re Crippin*, 877 F.2d 594 (7th Cir. 1989) ...............................................................14

*In re Denario*, 267 B.R. 496 (Bankr. N.D.N.Y. 2001) .................................................15

*Doe v. Alsaud*, 12 F.Supp.3d 674 (S.D.N.Y. 2014) .....................................................16

*Doe v. City of New York*, No. 18-cv-670, 2018 WL 3824133 (E.D.N.Y. Aug. 9,
2018) ....................................................................................................................16

*Doe v. Poly Prep Country Day School*, No. 20-cv-04718, 2022 WL 4586237
(E.D.N.Y. Sept. 29, 2022)....................................................................................16

*In re Kaiser Gypsum Co., Inc.*, 60 F.4th 73 (4th Cir.), cert. granted sub nom.
*Truck Ins. Exch. v. Kaiser Gypsum Co.*, 144 S. Ct. 325 (2023) ...........................17

*In re Keene Corp.*, 168 B.R. 285 (Bankr. S.D.N.Y 1994).............................................24

*MBIA Inc. v. Certain Underwriters at Lloyd's, London*, 33 F. Supp. 3d 344
(S.D.N.Y. 2014)......................................................................................................7

*In re MF Glob. Holdings Ltd.*, 469 B.R. 177 (Bankr. S.D.N.Y. 2012) .........................15

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652 (2019).................14

*Moody v. Amoco Oil Co.*, 734 F.2d 1200 (7th Cir. 1984), cert. denied, 469 U.S. 982 (1984) ............................................................................................................ 14

*In re Nashville White Trucks, Inc.*, 5 B.R. 112 (Bankr. M.D. Tenn. 1980) .................................. 14

*New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 662 N.E.2d 763 (1995) ............................... 15

*In re Rockville Centre*, No. 20-12345, Doc. Nos. 1554 (Bankr. S.D.N.Y. Jan. 10, 2023) ................................................................................................................... 25

*In re Roman Catholic Diocese of Rockville Centre*, 651 B.R. ................................................ 16, 25

*Save Mart Supermarkets v. Underwriters at Lloyd's London*, 843 F. Supp. 597 (N.D. Cal. 1994) ........................................................................................................ 7

*Skola v. Weinstein*, 187 N.Y.S.3d 493 (N.Y. Sup. Ct. 2023) ........................................................ 16

*Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540 (1992) .................................................................. 15

*The Roman Catholic Diocese of Syracuse, New York v. LG 35 Doe et al.* (Bankr. N.D.N.Y. February 16, 2021) ....................................................................... 3-5, 7

**Statutes**

11 U.S.C. Chapter 11 ............................................................................................................ *Passim*

11 U.S.C. § 105 ..................................................................................................................... 13

11 U.S.C. § 105(a) ................................................................................................................ 24

11 U.S.C. § 365 ..................................................................................................................... 14

11 U.S.C. § 365(a) ................................................................................................................ 14

11 U.S.C. § 501 ................................................................................................................. 17, 24

11 U.S.C. § 502 ..................................................................................................................... 13

11 U.S.C. § 502(a) ................................................................................................................ 17

11 U.S.C. § 1109(b) .............................................................................................................. 17

11 U.S.C. § 1129(a)(3) .......................................................................................................... 14

28 U.S.C. § 157 ..................................................................................................................... 13

28 U.S.C. § 157(b) ................................................................................................................ 13

28 U.S.C. § 1334 ................................................................................................................... 13

28 U.S.C. § 1408 ................................................................................................................... 13

BLOOMBERG LAW (Mar. 19, 2024), available at
https://news.bloomberglaw.com/bankruptcy-law/justices-lean-toward-insurer-
in-asbestos-bankruptcy-dispute; ....................................................................................17

Part VII Financial Services and Markets Act 2000 ..........................................................1

**Other Authorities**

Dietrich Knauth, *US Supreme Court appears to back insurers' participation in
bankruptcy*, REUTERS (March 20, 2024), available at
https://www.reuters.com/legal/government/us-supreme-court-appears-back-
insurers-participation-bankruptcy-2024-03-19/........................................................17

Evan Ochsner, *Justices Lean Toward Insurer in Asbestos Bankruptcy Dispute (2)* ....................17

Fed. R. Bankr. P. 1001 ......................................................................................................25

Fed. R. Bankr. P. 2002.......................................................................................................25

Fed. R. Bankr. P. 3001(e) ..................................................................................................18

Fed. R. Bankr. P. 3007........................................................................................13, 20, 24

Fed. R. Bankr. P. 3007(a)(2) ........................................................................................18, 20

Fed. R. Bankr. P. 3007(a)(2)(A) ......................................................................................18

Fed. R. Bankr. P. 3007(c) ......................................................................................20-21, 24-25

Fed. R. Bankr. P. 3007(d) ..................................................................................................21

Fed. R. Bankr. P. 3007(f).....................................................................................................22

Fed. R. Bankr. P. 9014........................................................................................................13

Certain Underwriters at Lloyd's, London, and London Market Companies (together "London Market Insurers" or "LMI")[1] hereby file this *Renewed Motion for an Order (I) Approving Claim Objection Procedures, (II) Approving Discovery Procedures and (III) Granting Related Relief* ("Renewed Motion") and respectfully state as follows:

## I.    **INTRODUCTION**

On October 12, 2023, LMI moved ("Original Motion")[2] the Court to establish claim and discovery procedures that would help streamline and resolve objections to sexual abuse claims ("Abuse Claims") in this bankruptcy case.[3]

On November 30, 2023, the Court denied the Original Motion without prejudice. The Court based its denial on a chapter 11 plan that the Roman Catholic Diocese of Syracuse, New York ("Debtor") and Official Committee of Unsecured Creditors ("Committee") (collectively, "Plan Proponents") contemplated filing but had not filed. The Plan Proponents represented, and the Court denied the Original Motion based on these representations, that "the plan, quote, includes protocols based on which an independent survivor claim reviewer will evaluate survivor claims for purpose of monetary distributions, and more importantly, to the extent a non-settling insurer

---

[1] LMI include solvent Certain Underwriters at Lloyd's, London, subscribing Policy Nos. L73-05-17-01, SL3107/SLC 5115, SL3551/SLC 5577, SL4008/SLC 5995, and ISL3352/ICO5202; Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Company Ltd and/or London & Edinburgh Insurance Company Ltd as successor to London & Edinburgh General Insurance Company Ltd); RiverStone Insurance (UK) Limited (formerly known as Dai Tokyo Insurance Company (UK) Limited) of 161-163 Preston Road, Brighton, East Sussex, BN1 6AU with Company Number 01167327 (RIUK) on its own behalf and as successor in interest to Markel International Insurance Company Limited ("Markel") (formerly Terra Nova Insurance Company Limited) under the terms of a transfer under Part VII Financial Services and Markets Act 2000 with effect from 31 March 2017; Tenecom Limited as successor in interest to Sompo Japan Nipponkoa Insurance Company of Europe Ltd. (formerly known as The Yasuda Fire & Marine Insurance Company of Europe Ltd); Harper Insurance Limited f/k/a Turegum Insurance Company; Dominion Insurance Company Ltd.; Assicurazioni Generali S.p.A.; and River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited (on its own behalf and in turn as successor in interest to certain business of St. Paul Travelers Insurance Company Limited (f/k/a St. Katherine Insurance Company Limited, St. Katherine Insurance Company Plc, and St. Paul International Insurance Company Limited))).

[2] Doc. No. 1489.

[3] *Id.*

wishes to challenge whether a survivor claim implicates their coverage obligations, ***they will have
every opportunity to do so through post-confirmation coverage litigation***."[4]  Based specifically
on these "protections", the Court believed that "establishing a claim objection process right now
would not be in the best interest of any part in this proceeding…"[5]

However, despite these assurances, the Plan Proponents' *Amended Joint Chapter 11 Plan
of Reorganization for the Roman Catholic Diocese of Syracuse New York* ("Amended Plan")[6]
described by the Plan Proponents' *Disclosure Statement in Support of Amended Joint Chapter 11
Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York* ("Amended
Disclosure Statement")[7] impairs LMI's rights and increases LMI's burdens under the excess
indemnity-only liability policies subscribed by LMI (collectively, "LMI Policies")[8].  Hence, the
Amended Plan is not insurance neutral.

The Amended Plan would establish a trust ("Trust") to pay claims based on the Diocese's
and the Participating Parties' alleged negligent employment and retention of sexually abusive
employees and clergy ("Abuse Claims").  However, upon the exhaustion of the "Reserve Fund",
the Amended Plan allows the Diocese and certain Participating Parties (collectively, "Assureds",
as described further, below) to evade their obligations under the LMI Policies.[9]   In addition, the
Amended Plan and Abuse Claim Allocation Protocol ("Allocation Protocol"), which the Amended
Plan would establish, do not permit the Assureds to defend Abuse Claims, by Abuse Claimants

---

[4] Doc. No. 1572 at 61:5-12 (emphasis added).

[5] *Id.* at 60:13-16.

[6] Doc. No. 1718.

[7] Doc. No. 1566.

[8] The "LMI Policies" are described further below.

[9] Amended Plan, § 8.10.1.  The Reserve Fund is a fund established by the Amended Plan to pay the Assureds' (i) self-insured retentions under the LMI Policies ("SIRs"); (ii) costs attributable to the Assureds' satisfaction of the conditions precedent to coverage under the LMI Policies; and (iii) the costs attributable to the Assureds' performance of their material duties imposed by the LMI Policies and state law.  *Id.*, § 1.1.63.

who choose to take distributions from the Trust in lieu of litigating their claims (collectively,

"Distribution Claims").[10]  Such defense by the Alleged Assureds is required by the LMI Policies

and New York law to obtain coverage under the LMI Policies.[11]

The Amended Plan also does not permit LMI to associate in the defense of the Distribution

Claims.[12]  LMI must be afforded the opportunity to protect their rights.  There are numerous Abuse

Claims that are facially invalid or contradict other available evidence, but Amended Plan does

nothing to address such claims; to the contrary, it provides for the payment of such claims.

Consequently, LMI renew the relief requested in the Original Motion.  LMI's proposed claim

objection and discovery procedures provide an efficient mechanism to address invalid Abuse

Claims, and LMI must be allowed to pursue such objections before the Court addresses

confirmation of the Amended Plan.

## II.   RELEVANT BACKGROUND

### A.   The LMI Policies

The Debtor and certain "Named Assureds"[13] became self-insurers starting in 1973.  As a

self-insurer, the Debtor and such Named Assureds have the right and responsibility to defend and

---

[10] Amended Plan, § 4.3.1.a; Doc. No. 1720-1, Art. III, § 3.1.

[11] The LMI Policies also specify that LMI shall have the opportunity to associate in the defense of claims, as follows: "CLAIMS: The Assured shall immediately notify Underwriters through [the Service Organization] of any occurrence, the cost of which is likely to result in payment by the Underwriters under this Insurance. Underwriters shall have the opportunity to be associated with the Assured in defense of any claims, suits, or proceedings relative to an occurrence wherein the opinion of the Underwriters, their liability under this Insurance is likely to be involved, in which case the Assured and Underwriters shall cooperate to the mutual advantage of both." *See, e.g., Syracuse*, Adv. No. 21-50005, Doc. No. 22-6 at 3 (LMI Policy No. SL3551 (Part 6)).

[12] Amended Plan, § 4.3.1.a; Doc. No. 1720-1, Art. III, § 3.1 (An Abuse Claims is allowed only if it "is not duplicative or fraudulent, and such Abuse Claimant proved his or her claim by a preponderance of the evidence.").

[13] *See, e.g., The Roman Catholic Diocese of Syracuse, New York v. LG 35 Doe et al.*, Adv. No. 21-50005, Adv. No. 21-50005, Doc. No. 22-2 at 1 (Bankr. N.D.N.Y. February 16, 2021) (LMI Policy No. SL3551 (Part 2)) ("Name of Assured: Most Reverend Francis J. Harrison, D.D., the Roman Catholic Diocese of Syracuse, New York and all Affiliated Parishes, Schools and Institutions and Catholic Charities"); *id.*, Doc. No. 22-3 at 1 (LMI Policy No. SL3551 (Part 3)) ("Name of Insured: It is agreed that Most Reverend Francis J. Harrison, D.D. et al. owns and/or operates Parishes, Schools, Cemeteries and Other Agencies under specific Names, and it is the intention of this Insurance to cover such Parishes, Schools, Cemeteries and Other Agencies or directly connected organizations as Named Assureds").

administer the Abuse Claims, while LMI and other insurers provide excess indemnity coverage to reimburse covered "Ultimate Net Loss" ("UNL")[14] in excess of SIR amounts.

LMI subscribed Combined Property, Casualty and Crime Insurance Policies ("Package Policies"), on behalf of the Debtor, as the Named Assured.[15]  The Package Policies provided excess indemnity coverage above the self-insurance administered by the Debtor.  The Debtor's Related Entities, including its parishes and schools, are also Assureds under the Package Policies.[16]

LMI subscribed the relevant Package Policies from April 16, 1973, to July 1, 1986.[17]  The Package Policies provided property, casualty, crime and other types of coverage.[18]  The Package Policies provide General Liability Coverage, on an "occurrence" basis with Specific Excess Coverage limits of: 80% of $150,000 UNL each occurrence excess of a $50,000 UNL each occurrence SIR for the periods from 1973 to 1976;[19] 80% or 90% of $135,000 UNL each occurrence excess of a $65,000 UNL each occurrence SIR for the periods from 1976. to 1985;[20]

---

[14] The term "Ultimate Net Loss" means "the total sum which the Assured becomes obligated to pay by reason of personal injury or property damage claims, either through adjudication or compromise, after making proper deductions for all recoveries and salvages, and shall also include . . . expenses for doctors, lawyers, nurses, . . . and for litigation . . . *which are paid as a consequence of any occurrence covered hereunder…. Fees, charges and expenses for [the Service Organization] are specifically excluded*, and are to be paid by the Assured.  *See, e.g., id.*, Doc. Nos. 22-17 at 1, 22-4 at 4 (LMI Policy No. SL4008 (Part 4) and LMI Policy No. SL3551 (Part 4)) (emphasis added).

[15] *See, e.g., id*, Doc. Nos. 22-2 at 1 (LMI Policy No. SL3551 (Part 2)), 22-14 at 5 (LMI Policy No. SL4008 (Part 1)), 22-20 at 2 (LMI Policy No. L(C)73051701 (Part 1)).

[16] *See, e.g., id.*, Doc. Nos. 22-2 at 1 (LMI Policy No. SL3551 (Part 2)), 22-14 at 5 (LMI Policy No. SL4008 (Part 1)), 22-20 at 2 (LMI Policy No. L(C)73051701 (Part 1)).

[17] *See* Doc. No. 1604-4 at 2-3 (LMI Policies No. L(C)73051701 effective from April 16, 1973 to April 16, 1976; No. SL 3107/SLC 5115 effective from April 16, 1976, to April 16, 1979; No. SL3551/SLC5577 effective from July 1, 1979, to July 1, 1982; No. SL4008/SLC5995 effective from July 1, 1982, to July 1, 1985).  LMI also subscribed Package Policies on behalf of the Assureds for the periods from July 1, 1986, to July 1, 1989, which, however, only provided liability coverage on a claims made basis and/or were subject to Sexual Misconduct Exclusions.  *See, e.g.*, DOS_Insur00007168 (Sexual Misconduct Exclusion of LMI Policy No. ISL 3564 effective from July 1, 1986, to July 1, 1987).

[18] *See, e.g., Syracuse*, Adv. No. 21-50005, Doc. No. 22-15 at 2 (LMI Policy No. SL4008 (Part 2)).

[19] *See, e.g., id.*, Doc. Nos. 22-20 at 2 (LMI Policy No. L(C)73051701 (Part 1)), 22-21 at 6  (LMI Policy No. L(C)73051701 (Part 2)), 22-22 at 1 (LMI Policy No. L(C)73051701 (Part 3)).

[20] *See, e.g., id.*, Doc. Nos. 22-2 at 1 (LMI Policy No. SL3551 (Part 2)), 22-3 at 3 (LMI Policy No. SL3551 (Part 3)), 22-6 at 5 (LMI Policy No. SL3551 (Part 6)), 22-14 at 5 (LMI Policy No. SL4008 (Part 1)), 22-15 at 5 (LMI Policy No. SL4008 (Part 2)), 22-19 at 6 (LMI Policy No. SL4008 (Part 6)).

and 80% of $100,000 UNL each occurrence excess of a $100,000 UNL each occurrence SIR for the period from 1985 to 1986.[21]

LMI also subscribed Excess Umbrella and Excess Broadform Policies, on behalf of the Assureds, effective from April 16, 1973, to April 16, 1975, and from July 1, 1979, to July 1, 1985 ("High Layer Excess Policies", and collectively with the Package Policies, "LMI Policies").[22] The High Layer Excess Policies provided General Liability Coverage with limits excess of at least $5,000,000 each occurrence underlying insurance.[23]

The Package Policies have several conditions precedent to coverage, including that the Assureds must:

- Utilize a service organization;[24]

- Provide notice of an occurrence to LMI through its service organization;

- Provide LMI with the opportunity to associate with the Assured in the defense of claims, and cooperate with LMI;[25]

---

[21] *See* DOS_Insur00004840 (summary of limits for Policy No. ISL3352/ICO5202 effective from July 1, 1985 to July 1, 1986).

[22] *See* Doc. No. 1604-4 at 2-3 (LMI Policies No. L(C)73051701E effective from April 16, 1973, to April 16, 1976; No. SL3578/SLC5603 effective from July 1, 1979, to July 1, 1982; No. SL3579/SLC5604 effective from July 1, 1979, to July 1, 1980; SL3710/SLC5731 effective from July 1, 1980, to July 1, 1981; SL 3844/SLC 5855 effective from July 1, 1981, to July 1, 1982; SL 4010/SLC 5997 effective from July 1, 1982, to July 1, 1985; SL 4011/SLC5998 effective from July 1, 1982, to July 1, 1985). The Diocese alleges that LMI subscribed to policies other than the ones listed in this footnote and in footnote 12 above. *See* Doc. No. 1604-4. LMI's position is that there is insufficient or no evidence to support that such policies provide coverage for the Abuse Claims.

[23] *See, e.g.*, DOS_Insur00005516 (Limits of No. SL3578/SLC5603 effective from July 1, 1979 to July 1, 1982).

[24] The Service Organization requirement in the LMI Policies states: "Insurance afforded under this Insurance is issued to the Assured on the express condition that the Assured undertakes to utilize at all times the services of Gallagher Bassett Insurance Service . . . This Service Organization shall perform the following duties: (a) Strictly discharge the Assured's obligation to the employees or members of the public; (b) Maintenance of accurate records of all details incident to payments; (c) Furnish inspection and safety engineering service; (d) Furnish monthly claims records on an approved form. The acceptance of these services shall be a condition precedent to any liability which may attach to the Underwriters in accordance with the terms and conditions of this Insurance." *See, e.g., Syracuse*, Adv. No. 21-50005, Doc. No. 22-3 at 3-4 (LMI Policy No. SL3551 (Part 3)).

[25] The LMI Policies require the Debtor to provide notice of each occurrence, as follows: "NOTICE OF OCCURRENCE: Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered under Section II of this Insurance involves injuries or damages, notice shall be given to Gallagher Bassett Insurance Service, The Tower, Golf Road, Rolling Meadows, Illinois 60008 as soon as practicable. Claims shall not be prejudiced if the Assured, through clerical oversight or error, fails to notify the above firm of any such occurrence." *See, e.g., id.*, Doc. No. 22-5 at 1 (LMI Policy No. SL3551 (Part 5)). The LMI Policies also specify that

- Maintain its status as a self-insurer;[26]

- Allow LMI to inspect books and records;[27]

- Obtain LMI's consent to assign any interest in the LMI Policies;[28] and

- Must not make false or fraudulent claims.[29]

In addition to such conditions precedent imposed on the Debtor, LMI's obligations are set forth in (and no broader than) the General Liability Insuring Agreement and its applicable terms, exclusions, and conditions.[30]  LMI have no duty to defend or settle claims, only to indemnify

---

LMI shall have the opportunity to associate in the defense of claims, as follows: "CLAIMS: The Assured shall immediately notify Underwriters through [the Service Organization] of any occurrence, the cost of which is likely to result in payment by the Underwriters under this Insurance. Underwriters shall have the opportunity to be associated with the Assured in defense of any claims, suits, or proceedings relative to an occurrence wherein the opinion of the Underwriters, their liability under this Insurance is likely to be involved, in which case the Assured and Underwriters shall cooperate to the mutual advantage of both." *Id.*, Doc. No. 22-6 at 3 (LMI Policy No. SL3551 (Part 6)).

[26] The LMI Policies require the Debtor to maintain its status as a self-insurer, as follow: "SELF-INSURERS STATUS: The Assured agrees to duly qualify as a self-insurer by compliance with the provisions of the Worker's Compensation and/or Occupational Disease Law respecting Self-Insurance in the State of New York and shall continue to maintain said status throughout the period of this Insurance, provided, however, Underwriters shall not be relieved of their obligations hereunder because of a breach of this condition until (1) the Assured becomes insured with respect to his Worker's Compensation and/or Occupational Disease liability or (2) the expiration of a period of thirty days after date of the notice served upon the Assured by the Industrial Commission terminating his status as a self-insurer, whichever occurs first." *See, e.g.*, *id.*, Doc. No. 22-5 at 1 (LMI Policy No. SL3551 (Part 5)).

[27] The LMI Policies require the Debtor to allows claims and records inspections, as follows: "INSPECTIONS, AUDIT AND VERIFICATION OF VALUES:  The Underwriters or their duly authorized representatives shall be permitted at all reasonable times during continuance of this Insurance to inspect the premises used by the Assured and to examine the Assured's books or records so far as they relate to coverage afforded by this Insurance. *See, e.g.*, *id.*, Doc. No. 22-5 at 1 (LMI Policy No. SL3551 (Part 5)). "Records" are defined in the LMI Policies, as follows: "RECORDS: It is hereby understood and agreed that the records and books as kept by the Assured shall be acceptable to Underwriters in determining the amount of loss or damage covered hereunder." *See, e.g.*, *id.*

[28] The LMI Policies require LMI's consent to assign *any interest* under the LMI Policies, as follows: "ASSIGNMENT: Assignment of interest, under this Insurance shall not bind the Underwriters until the Underwriters' consent is endorsed hereon. *See, e.g.*, *id.* at 4.

[29] The LMI Policies become void if the Debtor makes any fraudulent claims, as follows: "FRAUDULENT CLAIMS: If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Insurance shall become void and all claim hereunder shall be forfeited. *See, e.g.*, *id.*

[30]  The General Liability Insuring Agreement states: Agreement C–General Liability: Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term "ultimate net loss," on account of personal injuries . . . arising out of any occurrence happening during the period of Insurance. *See, e.g.*, *id.*, Doc. No. 22-4 at 2 (LMI Policy No. SL3551 (Part 4)).

covered UNL.[31]  The obligation to reimburse defense expenses or a loss payment arises only after the underlying claim is resolved and coverage for that claim has been determined.  This is because the Package Policies provide indemnity coverage for Ultimate Net Loss incurred for Personal Injury claims arising from an Occurrence where there is legal liability, for damages and expenses, which has been either "imposed upon the Assured by law" or "assumed by the Named Assured under contract or agreement."[32]

The Package Policies also specify the timing of a "Loss Payment," as "*[w]hen it has been determined that Underwriters are liable under this Insurance*, Underwriters shall thereafter promptly reimburse the Assured for all payments made in excess of the amounts stated in…the Limits Agreement."[33]

## B.    Bankruptcy and Bar Date Orders

On June 19, 2020, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code").

Following the enactment of the Child Victims Act in 2019, which revived time-barred sexual abuse claims, Abuse Claimants filed approximately 100 lawsuits against the Debtor.[34]

On September 21, 2020, the Debtor filed a *Motion for Entry of an Order Establishing a Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, seeking to establish March 1, 2021, as the deadline for filing all proofs of claim and proposing a claim form for sexual abuse claims to "facilitate the collection of information necessary to evaluate

---

[31] *See MBIA Inc. v. Certain Underwriters at Lloyd's, London*, 33 F. Supp. 3d 344, 355 (S.D.N.Y. 2014) ("[I]n the absence of a policy provision expressly imposing a duty to defend, New York courts will not find such a duty"); *Save Mart Supermarkets v. Underwriters at Lloyd's London*, 843 F. Supp. 597, 603 (N.D. Cal. 1994) ("More importantly, the London Defendants' explicit option to join in the defense directly contradicts any possible duty to join in the defense.").

[32] *See, e.g.*, *Syracuse*, Adv. No. 21-50005, Doc. No. 22-4 at 2 (LMI Policy No. SL3551 (Part 4)).

[33] *See, e.g.*, *id.*, Doc. No. 22-6 at 3 (LMI Policy No. SL3551 (Part 6) (emphasis added)).

[34] Doc. No. 6 at 6.

the claims … and the availability of insurance coverage to pay the claims."[35]  In response, LMI filed a limited objection, stating that the Debtor's proposed form was "inadequate to produce all the information that LMI would need to successfully mediate this case."[36]  The Court subsequently continued the matter to October 28, 2020.

On October 27, 2020, LMI further specified their objections in a filed letter to the Court, requesting more information "to assess liability and coverage" to support a successful mediation.[37] This included, among other requests, additional questions inquiring (1) whether a claimant told anyone about the abuse, and (2) whether the claimant knew or had reason to believe that the Debtor knew that the claimant's abuser abused the claimant or others.[38]  At the continued hearing, on October 28, 2020, the Court denied LMI's request to include the additional questions but "preserv[ed] everyone's right to seek discovery."[39]  This preservation included all insurers.[40]

On November 6, 2020, the Court entered the *Bar Date Order Establishing April 15, 2021 As the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* ("Bar Date Order").[41]  Under the Bar Date Order, the Court set April 15, 2021, at 11:59 P.M. (prevailing Eastern Time), as the deadline for each person or entity to file a proof of claim, including Abuse Claims, in the Debtor's chapter 11 case.[42]

On October 5, 2022, the Debtor filed a *Motion for Entry of an Order Establishing a Supplemental Bar Date for Adult Claims and Granting Related Relief* seeking to establish

---

[35] Doc. No. 118 at 4, ¶ 10.

[36] Doc. No. 153 at 1-2, ¶ 1.

[37] Doc. No. 194 at 2, ¶ 5.

[38] Doc. No. 194-1, ¶¶ j-k.

[39] Doc. No. 406 at 26:3; *see also id.* at 26:4-5 ("I'm not going to cut off your rights, obviously, under the federal rules.").

[40] *Id.* at 51:9-10 ("We're preserving all rights of the insurers.").

[41] Doc. No. 214.

[42] *Id.* at 2.

December 31, 2022, as the deadline for filing proofs of claim for certain claims revived[43] under New York's Adult Survivors Act ("ASA") for sexual offenses committed against claimants who were eighteen (18) years of age or older at the time the abuse occurred ("Adult Claims").[44]  On November 3, 2022, the Court entered the *Order Establishing Supplemental Bar Date for Adult Claims* ("Supplemental Bar Date Order")[45], which set January 17, 2023, at 11:59 P.M. (prevailing Eastern Time) as the deadline for each person or entity to file an Adult Claim.[46]

As of the date of this filing, the claims register, prepared and maintained by Stretto, shows that Abuse Claimants have filed over 400 claims in this case.

### C.     The Original Motion

On October 12, 2023, LMI filed the Original Motion.[47]  The Original Motion sought to establish claim and discovery procedures that would help streamline and resolve objections to Abuse Claims.[48]

On November 2, 2023, the Court held a hearing on the Original Motion.  At the hearing, LMI argued that the Plan Proponents were attempting to "take away the claims review process…and transfer that authority…to a self-appointed administrator who will allow all these claims in large amounts."[49]  LMI averred that this was not "insurance neutral"[50] because the LMI Policies are indemnity-only policies, meaning LMI contracted with the Debtor for the Debtor to

---

[43] On May 24, 2022, New York Governor Kathy Hochul signed into law the ASA.  Doc. No. 1037, ¶ 12.  Since the Bar Date Order set a deadline to file all claims about a year before this ratification occurred, certain adult claimants could otherwise revive their legal viability under state law but not under the deadline to file in the Bar Date Order.

[44] Doc. No. 1037, ¶ 12.

[45] Doc. No. 1083.

[46] *Id.*

[47] Doc. No. 1489.

[48] *Id.*

[49] Doc. No. 1542 at 29:15-19.

[50] *Id.* at 29:20.

defend and settle claims or seek a jury trial of those claims.[51]  LMI stated that its policies "never envisioned a third party administrator coming in and making rulings as to the viability of the claims…"[52]  LMI further contended that the Plan Proponents were utilizing bankruptcy to prevent LMI from asserting claims objections via a chapter 11 plan.[53]  At the hearing's conclusion, the Court adjourned the matter to November 30, 2023, because the Plan Proponents had yet to file a plan of reorganization or disclosure statement.[54]

At the continued hearing on November 30, 2023, LMI again argued that the Debtor's plan would affect LMI's rights pursuant to the LMI Policies, stating by way of example that the Debtor could not assign indemnity policies until a loss occurred.[55]  A loss occurred when the Debtor paid a "valid covered claim" and sought "reimbursement less [its] self-insured retention" thereafter.[56]  LMI argued that this had not happened, was "not going to happen", and would never happen.[57]  LMI further stated that based on the Debtor's description of the plan, it would "allow invalid and fraudulent claims to go through [a] trust" and that the trust would pay those claims and then "sue the insurers for coverage."[58]  Such treatment would affect LMI's rights because Abuse Claims are not treated this way in the tort system and such treatment would violate the LMI Policies.[59]

After further consideration, the Court denied the Motion without prejudice.[60]  The Court found that "permitting a claims objection process to proceed now would be distracting, time

---

[51] *Id.* at 29:21-25.

[52] *Id.* at 29:23-25.

[53] *Id.* at 32:23-33:1.

[54] *Id.* at 72:20-73:7.

[55] Doc. No. 1572 at 33:24-34:3.

[56] *Id.* at 34:1-2.

[57] *Id.* at 34:4-6.

[58] *Id.* at 35:6-9.

[59] *Id.* at 35:9-12.

[60] *Id.* at 59:20-23, 62:4.

consuming, and expensive, and may impair and delay confirmation."[61]  The Court further stated

that the "Committee contends that the plan, quote, includes protocols based on which an

independent survivor claim reviewer will evaluate survivor claims for purpose of monetary

distributions, and more importantly, to the extent a non-settling insurer wishes to challenge

whether a survivor claim implicates their coverage obligations, ***they will have every opportunity***

***to do so through post-confirmation coverage litigation***."[62]   Based specifically on this

"protection", the Court believed that "establishing a claim objection process right now would not

be in the best interest of any part in this proceeding…."[63]

However, the Committee's contention has turned out to be incorrect.

### D.    The Court's Denial of the Motion to Approve the Disclosure Statement

On December 6, 2023, the Plan Proponents filed a disclosure statement ("Disclosure

Statement") and plan ("Plan").[64]  If confirmed, the Plan would have materially affected LMI's

rights under the LMI Policies.[65]

On February 8, 2024, the Court denied approval of the Disclosure Statement ("Denial

Order").[66]  In the Denial Order, the Court held that the Plan Proponents must remedy several

deficiencies before it would hold that the Disclosure Statement satisfied the adequate information

requirements of Section 1125, including whether the Plan held any SIR funds and its treatment of

duplicate or fraudulent claims.[67]

---

[61] *Id.* at 60:5-7.

[62] *Id.* at 61:5-12 (emphasis added).

[63] *Id.* at 60:13-16.

[64] Doc. Nos. 1565, 1566.

[65] *See generally*, Doc. No. 1637.

[66] Doc. No. 1664.

[67] *Id.* at 4-5.

### E. The Amended Disclosure Statement and Plan

On March 5, 2024, the Plan Proponents filed the Amended Disclosure Statement and Amended Plan.[68] The Plan Proponents revised the Amended Plan to state that the Reserve Fund would pay costs incurred by the Debtor or Participating Parties in (1) pursuing Insurance Claims[69] against the Non-Settling Insurers; (2) defending against Abuse Claims; and (3) administering an allocation protocol.[70] These costs include payment of the SIR pursuant to the LMI Policies.[71] The Amended Plan will fund the Reserve Fund with an initial contribution of three million dollars.[72] As the Reserve Fund diminishes, however, the Trustee has "sole and exclusive discretion" to

---

[68] Doc. Nos. 1718-19.

[69] "Insurance Claims means all Claims, causes of action and enforceable rights of an Abuse Claimant, the Diocese and any Participating Party against an Insurer that is not an Excluded Insurer, whether sounding in contract, tort, or otherwise, including equity and bad faith, held by: (i) the Diocese for any reason related to any Abuse Claim including those for (a) indemnity and payment of any Abuse Claim, (b) any Insurer's failure or refusal to provide insurance coverage for any Abuse Claim under any Insurance Policy, (c) any Insurer's tortious or wrongful claims handling including the failure or refusal of any Insurer to timely compromise and settle any Abuse Claims against the Diocese pursuant to any Insurance Policy, (d) to the extent not otherwise encompassed by section (c) above, any Insurer's failure or refusal to reasonably settle the Abuse Claims, and (e) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing; and/or (ii) any of the Participating Parties or Settling Insurers for any reason related to any Abuse Claim against the Participating Party or Settling Insurer, whether independently or jointly liable with the Diocese on such Abuse Claim, including for (a) indemnity and payment of any Abuse Claim, (b) any Insurer's failure or refusal to provide insurance coverage under any Insurance Policy for any Abuse Claim against the Diocese, a Participating Party or a Settling Insurer, (c) any Insurer's tortious or wrongful claims handling including the failure or refusal of any Insurer to timely compromise and settle any Abuse Claims against the Diocese, a Participating Party, or a Settling Insurer pursuant to any Insurance Policy, (d) to the extent not otherwise encompassed by section (c) above, any Insurer's failure or refusal to reasonably settle the Abuse Claims, and (e) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing." Amended Plan, § 1.1.86. The term "Insurance Claim also includes any Claims or causes of action for reimbursement of DOS Entities' Post-Effective Date Costs under any Insurance Policy, but only to the extent such DOS Entities' Post-Effective Date Costs are actually paid by the Trust." *Id.*

[70] *See* Amended Plan, § 8.10.1. Costs include "all fees and expenses reasonably incurred by the Diocese, the Reorganized Diocese or the Participating Parties in connection with performing any of their respective duties or obligations under the Plan with respect to any Abuse Claims or Insurance Claims, including, without limitation, in connection with: (i) any attempt by the Trust to enforce or recover Insurance Claims against Non-Settling Insurers; (ii) responding to and defending against any legal action taken by any Litigation Claimants with respect to Litigation Claims; or (iii) upon request by the Trustee or the Abuse Claims Reviewer, assisting with the administration of the Allocation Protocol. For the avoidance of doubt, such costs include any costs and expenses incurred by the Diocese, the Reorganized Diocese or the Participating Parties in connection with such efforts, or in connection with any depositions, discovery, or other litigation matters relating in any way to the Abuse Claims or Insurance Claims, including, without limitation, any attorney's fees, expert fees, applicable [SIR] obligations, if any, arising out of any Abuse Claim or under any Non-Settling Insurer Policy, and other costs and expenses." *Id.* § 1.1.63.

[71] *Id.* § 1.1.63.

[72] *Id.* § 8.10.1.

replenish the fund.[73]  If the Trustee does not replenish the Reserve Fund and the balance falls below $500,000, the Amended Plan improperly would rewrite the Assureds' obligations under the LMI Policies, by irrevocably releasing the Assureds from "any obligations to comply with any Post-Effective Date Insurance Obligations…"[74]

On March 22, 2024, LMI filed supplemental objections to the Amended Disclosure Statement.[75]  The hearing on the Amended Disclosure Statement is set for April 2, 2024.

## III.   JURISDICTION AND VENUE

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

## IV.   RELIEF REQUESTED

Pursuant to sections 105 and 502 of the Bankruptcy Code and Rules 3007 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), LMI hereby renew their Original Motion seeking entry of an order: (a) approving procedures by which they may (i) file objections to Abuse Claims; and (ii) resolve responses that may be received to those objections, (b) granting relief from certain limitations of Bankruptcy Rule 3007, as specified below, and (c) approving procedures by which the Parties may take discovery of Abuse Claimants ("Claim Objection Procedures").

## V.   ARGUMENT

The Amended Plan impairs LMI's rights and increases their burdens because, among other things, (i) it excuses the Assureds from performing their obligations under the LMI Policies upon

---

[73] *Id.*

[74] "Post-Effective Date Insurance Obligations means those duties or obligations (if any) required of the Diocese and/or any Participating Party under any Non- Settling Insurer Policy, on and after the Effective Date."  *Id.* § 1.1.140.

[75] Doc. No. 1759.

exhaustion of the Reserve Fund; (ii) fails precludes the Assureds from satisfying the conditions

precedent to coverage in the LMI Policies, and (iii) precludes any entity, including the Debtor,

from defending Distribution Claims, as required by the LMI Policies and New York law.

The proposed claim objection and discovery procedures provide an efficient mechanism to

disallow invalid claims that the Amended Plan does not otherwise permit.  Hence, the Claim

Objection Procedures are appropriate.

### A.    <u>The Amended Plan impairs LMI's rights because it allows the Assureds to not perform their obligations under the LMI Policies</u>

The Amended Plan allows the Assureds not to perform their obligations under the LMI

Policies.

A bankruptcy estate does not possess anything more than the debtor itself did outside

bankruptcy.[76]  Similarly, except as specifically provided by section 365[77], a debtor may not use

the bankruptcy process to rewrite its bargained-for contractual rights and obligations unilaterally.[78]

A debtor may also not add terms to contracts to which the parties did not previously agree.[79]  This

---

[76]    *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019).

[77]    *See* 11 U.S.C. §365(a).

[78]    *See In re Cajun Elec. Power Co-Op, Inc.*, 230 B.R. 715, 737 (Bankr. M.D. La. 1999) (finding that the plan violated Section 1129(a)(3) of the Bankruptcy Code and was unconfirmable because it "call[ed] for an improper modification of the [debtor's contracts]"). *Cf. Coca-Cola Bottling Co. v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) ("Courts do not rewrite contracts to include terms not assented to by the parties."); *Amatex Corp. v. Aetna Cas. & Sur. Co. (In re Amatex Corp.)*, 97 B.R. 220, 221 (Bankr. E.D. Pa. 1989), *aff'd sub nom., Amatex Corp. v. Stonewall Ins. Co.*, 102 B.R. 411, 414 (E.D. Pa. 1989) (refusing to compel insurers to make lumpsum payments to the debtor "contrary to the terms of their policies"); *641 Assocs. v. Balcor Real Estate Fin. (In re 641 Assocs.)*, No. 91-11234S, 1993 Bankr. LEXIS 1191, *20–21 (Bankr. E.D. Pa. Aug. 26, 1993) ("There is no provision in the Bankruptcy Code allowing a bankruptcy court to disregard state-law contractual rights."); *Cissel v. Am. Home Assur. Co.*, 521 F.2d 790, 792 (6th Cir. 1975), cert. denied, 423 U.S. 1074 (1976) (holding that a bankruptcy trustee could not obtain recovery from insurer for claims filed against the estate absent a judgment or a written settlement agreement among the policyholder, the claimant, and the insurance company, as required by the policy holder); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984), cert. denied, 469 U.S. 982 (1984) (holding that the Bankruptcy Code is not intended to expand debtor's rights against others more than they existed at the commencement of the case).

[79]    *See, e.g., In re Crippin*, 877 F.2d 594, 598 (7th Cir. 1989) ("While bankruptcy courts have the power to allow debtors to escape burdensome contracts by rejecting them, bankruptcy courts do not have the power to rewrite contracts to allow debtors to continue to perform on more favorable terms*."); In re Nashville White Trucks, Inc.*, 5 B.R. 112, 117 (Bankr. M.D. Tenn. 1980) ("The [Bankruptcy] Code does not . . . grant the debtor in bankruptcy greater rights and powers under the contract than he had outside of bankruptcy.").

applies to insurance policies: "The filing of a bankruptcy petition does not alter the scope or terms of a debtor's insurance policy"[80] or permit a debtor-insured to "obtain greater rights to the proceeds" of the policy.[81]

Nonetheless, the Amended Plan impermissibly provides for exactly such a result. It affords the Trustee the "sole and exclusive discretion" not to replenish the Reserve Fund, consequently *extinguishing* the Debtor's and Participating Parties' obligations under the LMI Policies.[82] This is unpermitted by the Bankruptcy Code or any other applicable law.

### B.   The Amended Plan fails to satisfy the conditions precedent to coverage in the LMI Policies

The Amended Plan would improperly limit the Assureds' obligations under the LMI Policies by adding a "reasonable efforts" limitation to their obligation to comply with any conditions precedent in the LMI Policies, and then only after a "reasonable request" of the Trust.[83] None of these limitations are provided by the LMI Policies or applicable state law. Reasonableness is inapplicable where a party seeks to enforce its contractual bargain, such as under the LMI Policies.[84] The LMI Policies do not permit "reasonable" refusals by the Debtor and Participating Parties to satisfy the conditions precedent to coverage by LMI. Any failure to satisfy a condition precedent voids coverage, whether it was "reasonable" or not.

---

[80]    *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 194 (Bankr. S.D.N.Y. 2012).

[81]    *In re Denario*, 267 B.R. 496, 499 (Bankr. N.D.N.Y. 2001) (quotation omitted).

[82]    Amended Plan, § 8.10.1; *see also Id.* § 1.1.140 ("Post-Effective Date Insurance Obligations means those duties or obligations (if any) required of the Diocese and/or any Participating Party under any Non- Settling Insurer Policy, on and after the Effective Date.")

[83]    Amended Plan, § 8.2.4.a.

[84]    *See, e.g., New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316, 662 N.E.2d 763, 767–68 (1995); *Sommer v. Fed. Signal Corp.,* 79 N.Y.2d 540, 552 (1992); *Bellevue S. Assocs. v. HRH Const. Corp.*, 78 N.Y.2d 282, 293-94 (1991).

## C.    The Amended Plan does not permit the Debtor to defend against the Distribution Claims

The Amended Plan improperly precludes the Debtor from defending against Distribution Claims, which is a condition precedent under the LMI Policies.[85]

Under New York Law, to pursue a claim for abuse against a tortfeasor's employer successfully, an Abuse Claimant must prove that the defendant had prior notice of the abuser's propensity to commit abuse.  Negligent supervision and/or retention of an employee, is direct liability for negligence, not vicarious liability.[86]  To state a claim for negligent hiring, retention or supervision under New York Law, a plaintiff must plead, in addition to the elements required for a claim of negligence:  "(1) the existence of an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury; (3) a nexus or connection between the defendant's negligence in hiring and retaining [or supervising] the offending employee and the plaintiff's injuries."[87]  Specifically, the employer must have notice of a propensity for sexual abuse – notice of other types of abuse are insufficient.[88]  "Neither *in loco parentis*, general negligence, nor premises liability claims obviate the need to show such notice."[89]

---

[85]     A "Distribution Claim means any Abuse Claim held by a Distribution Claimant."  Amended Plan, § 1.1.58.  A "Distribution Claimant means an Abuse Claimant who is not a Litigation Claimant.  *Id.*, § 1.1.59.  A "Litigation Claim means any Abuse Claim held by a Litigation Claimant, to the extent the Trustee has (i) determined in good faith that such Abuse Claim is covered, in whole or in part, by one or more Non-Settling Insurer Policies, and (ii) authorized such Litigation Claimant to liquidate their Abuse Claim in accordance with the Plan, Allocation Protocol, and the Trust Agreement." *Id.*, § 1.1.108

[86]     *Brown v. Village of Pelham*, No. 05-cv-7386, 2010 WL 11712459, *1 (N.Y. Sup. Ct., Jul. 2, 2010).

[87]     *Skola v. Weinstein*, 187 N.Y.S.3d 493, 500 (N.Y. Sup. Ct. 2023) (internal quotation marks omitted) (citations omitted).

[88]     *In re Roman Catholic Diocese of Rockville Centre*, 651 B.R. 146, 162 (Bankr. S.D.N.Y. 2023) (citing *Doe v. Alsaud*, 12 F.Supp.3d 674, 680-81 (S.D.N.Y. 2014)).

[89]     *Id.*; *see also Doe v. Poly Prep Country Day School*, No. 20-cv-04718, 2022 WL 4586237 (E.D.N.Y. Sept. 29, 2022) (dismissing negligent hiring, supervision, and retention claims for failure to allege defendant's knowledge of perpetrator's propensity for sexual abuse); *Doe v. City of New York*, No. 18-cv-670, 2018 WL 3824133 (E.D.N.Y. Aug. 9, 2018) (dismissing complaint for failure to allege factual allegations that make it plausible the defendant had notice of the perpetrator's propensity to commit sexual abuse); *Alsaud*, 12 F.Supp.3d 674 ) (granting motion to dismiss for failure to allege factual allegations concerning defendant's notice of assailant's propensity for sexual abuse).

There is nothing in the Amended Plan requiring a Distribution Claimant to allege, let alone

prove, that the Diocese or a Participating Party had notice of a propensity for sexual abuse by an

alleged tortfeasor, as required by New York law.  Consequently, a Distribution Claimant could

receive payment for an Abuse Claim, without having to even allege, let alone prove that the Debtor

or Participating Party had notice of the alleged perpetrator's propensity for sexual abuse, a

necessary element of such a claim under New York law.  Hence, the Amended Plan affords no

opportunity for the Debtor to defend against Distribution Claims, because the Amended Plan will

pay claims whether or not a proof of claim sets forth a cognizable claim under New York law.

### D.    The Claim Objection Procedures

Under the Bankruptcy Code, "(a) A claim or interest, proof of which is filed under section

501 of this title, is deemed allowed, unless a party in interest… objects."  11 U.S.C. § 502(a).  LMI

are parties-in-interest that have standing to assert objections to the Abuse Claims.[90]

---

[90]    On March 19, 2024, the United States Supreme Court heard oral argument in Kaiser Gypsum on whether insurers have standing to be heard in bankruptcy proceedings.  The Office of United States Trustee submitted an amicus brief taking the position that insurers should have standing as a party-in-interest under section 1109(b) of the Bankruptcy Code.  *See* Brief for the United States as *Amicus Curiae*, at 15, filed on Dec. 14, 2023, in *In re Kaiser Gypsum Co., Inc.*, 60 F.4th 73 (4th Cir.), *cert. granted sub nom. Truck Ins. Exch. v. Kaiser Gypsum Co.*, 144 S. Ct. 325 (2023).  Under section 1109(b), a party in interest "may raise and may appear and be heard on any issue in a case under this chapter."

At oral argument, Justices Roberts, Kagan, Sotomayor, Kavanaugh, Gorsuch, and Barrett all questioned the basis for saying an insurer should not have standing.  *See* **Exhibit C**, Transcript of Oral Argument, *Truck Ins. Exch. V. Kaiser Gypsum Co*., U.S. (2024) (No. 22-1079). The justices expressed concerns about preserving an insurer's right to be heard in bankruptcy proceedings. Justice Kavanaugh asked, "Isn't it just common sense that an insurer…is going to have an interest in this because how much the insurer will have to pay will be affected by how the plan is structured?" *Id.* at 43:20-24. Justice Barrett inquired, "Why do you want Truck to not even be heard? Just what is your motivation to be fighting . . . so hard." *Id.* at 46:11-13. Justice Kagan framed the issue more directly: "I think what everybody is saying to you is, well, they do have an interest in these anti-fraud provisions. Not just a concern, they have an interest, a material interest." *See id.* at 48:21-25.

These remarks from other justices reveal the strong possibility that the Court will issue a decision affecting mass tort bankruptcies including this case.  *Kaiser Gypsum* may establish—conclusively—that insurers have standing to be heard on any issue in a chapter 11 case, contrary to the standing rulings in this Chapter 11 Case.  *See* Evan Ochsner, *Justices Lean Toward Insurer in Asbestos Bankruptcy Dispute (2)*, BLOOMBERG LAW (Mar. 19, 2024), available at https://news.bloomberglaw.com/bankruptcy-law/justices-lean-toward-insurer-in-asbestos-bankruptcy-dispute; Dietrich Knauth, *US Supreme Court appears to back insurers' participation in bankruptcy*, REUTERS (March 20, 2024), available at https://www.reuters.com/legal/government/us-supreme-court-appears-back-insurers-participation-bankruptcy-2024-03-19/.

### 1.    Procedures for Objections to Individual Claims

Bankruptcy Rule 3007(a)(2) requires an objecting party to serve a copy of the claim objection, with notice of a hearing, on "the person most recently designated on the claimant's original or amended proof of claim as the person to receive notices, at the address so indicated." Fed. R. Bankr. P. 3007(a)(2)(A).  LMI propose to provide such notice to be substantially in the form attached as **Exhibit A** to this Motion ("Claim Objection Notice").

Due to the sensitive and confidential nature of Abuse Claims, LMI seek authority to file objections to Abuse Claims under seal and to file only redacted versions on the public docket.

The proposed Claim Objection Procedures provide:

a)    Any party-in-interest ("Abuse Claim Objector") may assert a claim objection ("Abuse Claim Objection") by seeking any combination of reduction, reclassification and/or disallowance of claims, in whole or in part, on the grounds enumerated in Bankruptcy Rule 3007(d) and on the grounds that the Debtor is not liable to such Abuse Claimant for the amount or claim asserted.

b)    An Abuse Claim Objection, whether included in an omnibus objection or filed individually, shall not prejudice any party-in-interest's ability to raise additional Abuse Claim Objections to that Abuse Claim on other grounds, future Abuse Claim Objections to other Abuse Claims on the same grounds, or future omnibus objections on the same grounds.  For the avoidance of doubt, the filing of a purely legal Abuse Claim Objection shall not prejudice any party-in-interest's ability to pursue related fact-based objections at a later date.

c)    Briefing Schedule:

i.    Any Abuse Claim Objection shall be filed and served[91] at least 30 calendar days before it is to be heard, and may be served by U.S. mail without requiring the additional days provided for under Bankruptcy Rule 9006(f).  The Claim Objection Notice shall be individualized to the applicable Abuse Claim, and copied to the Debtor, to provide the notice information required under Bankruptcy Rule 3007.

---

[91]    With respect to any transferred claim(s) under Bankruptcy Rule 3001(e), notice of a claim objection shall be sufficient if provided to the transferor(s) of such claim(s), unless such transfer has been properly noticed by a filing on the Debtor's docket and has become final pursuant to Bankruptcy Rule 3001(e) at least five business days prior to the service of the claim objection.

ii.      Except as may be otherwise established by either the Abuse Claim Objection, agreement of the Abuse Claimant and the Abuse Claim Objector, or the Court's order, (i) any response to an Abuse Claim Objection ("Response") shall be filed and served no later than (a) the last business day that is at least fourteen (14) days before the scheduled hearing; and (b) on the last business day that is no more than twenty-one (21) days after service of the Abuse Claim Objection, and (ii) any reply to a Response ("Reply") shall be filed and served no later than seven (7) calendar days before the scheduled hearing. To avoid confusion, each Claim Objection Notice will specify the date and time that Responses are due.

iii.     The Abuse Claim Objections shall have a page limit of forty (40) pages. Responses shall have a page limit of twenty (20) pages; *provided*, *however*, that if the Response is submitted in an omnibus format, it shall have a page limit of forty (40) pages. Replies shall have a page limit of twenty (20) pages. Exhibits and attachments shall be excluded from the page limitations.

iv.     The Abuse Claims Objections, Responses, and Replies (and any attachments thereto) may also be filed under seal without further order of the Court.

e)     Orders and Hearings.

i.      If no Response to an Abuse Claim Objection is timely filed and served by the established deadline with respect to any particular Abuse Claim Objection(s), an Abuse Claim Objector may submit a form of order sustaining the Abuse Claim Objection and disallowing such Abuse Claim(s) without any further notice or hearing.

ii.     The hearing to consider an Abuse Claim Objection as to which a Response is properly filed and served shall be set for a contested hearing (each, a "Claim Hearing") to be scheduled by an Abuse Claim Objector, in its discretion, as set forth herein.

iii.     An Abuse Claim Objector may move for a non-evidentiary hearing to address whether the Abuse Claim has failed to state a claim against the Debtor, which can be dismissed pursuant to Bankruptcy Rule 7012(b) ("Sufficiency Hearing"). Unless an Abuse Claim Objector serves an Abuse Claimant with a "Notice of Merits Hearing" (as defined herein), the Sufficiency Hearing shall go forward at the return date set in accordance with (e)(ii) above. The legal standard of review that will be applied by the Court at a Sufficiency Hearing will be equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted, in accordance with Bankruptcy Rule 7012(b).

iv.    At a Sufficiency Hearing, the Court may consider any evidence that is subject to judicial notice, including public records.

v.    For an evidentiary hearing on the merits of an Abuse Claim ("Merits Hearing"), an Abuse Claim Objector, in its discretion, may serve upon the relevant Abuse Claimant (by email or overnight delivery) and file with the Court, a notice that the hearing will be a Merits Hearing ("Notice of Merits Hearing") at least thirty (30) days prior to the date of such Merits Hearing. The rules and procedures applicable to such Merits Hearing will be set forth in any scheduling order issued by the Court in connection therewith.

vi.    In advance of a Sufficiency Hearing and/or Merits Hearing, an Abuse Claim Objector and the Abuse Claimant shall meet and confer with respect to the appropriate confidentiality procedures, if any, that shall govern the hearing on the matter.

vii.    Discovery, with respect to an Abuse Claimant who receives a Notice of Merits Hearing, will be permitted in accordance with the schedule set forth below in section C.

viii.    If an Abuse Claimant files an amended Proof of Claim, an Abuse Claim Objector will be entitled to take discovery as discussed in Section D.

f)    An Abuse Claim Objection need not include copies of the proof(s) of claim subject to the Abuse Claim Objection.  An Abuse Claim Objector will provide copies of claims to the Court in a manner and at the times acceptable to Chambers.

g)    Each timely Response to an Abuse Claim Objection shall initiate a separate contested matter.  For the avoidance of doubt, a timely Response shall not affect the claim objection proceedings with respect to any other claims.

### 2.    Omnibus Objections and Bankruptcy Rule 3007

In addition to the procedures set forth above, LMI intend to file omnibus objections to the Abuse Claims.

As discussed in Section A above, an Abuse Claim Objector will provide notice as required by Bankruptcy Rule 3007(a)(2).  Bankruptcy Rule 3007 provides that an entity may assert objections to multiple claims in an "omnibus objection."[92]  Rule 3007(c) allows the Court to issue

---

[92]    The Local Bankruptcy Rules for the Northern District of New York do not establish guidelines for the filing of Omnibus Claim Objections.

an order providing for the filing of an omnibus objection on grounds other than those listed in Rule

3007(d).  *See* Fed. R. Bankr. P. 3007(c) ("Unless otherwise ordered by the court or permitted by

subdivision (d), objections to more than one claim shall not be joined in a single objection.").  Rule

3007(d), in turn, permits an omnibus objection when the claims in question:

a)      duplicate other claims;

b)      have been filed in the wrong case;

c)      have been amended by subsequently filed proofs of claim;

d)      were not timely filed;

e)      have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order;

f)      were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance;

g)      are interests, rather than claims; or

h)      assert priority in an amount that exceeds the maximum amount under §507 of the Code.

Fed. R. Bankr. P. 3007(d).

Many Abuse Claims appear to be legally invalid.  While any party-in-interest may file

omnibus objections to proofs of claim based on the grounds enumerated in Bankruptcy Rule

3007(d), objections regarding the legal validity of certain claims may be made in an omnibus

objection on grounds not listed in Bankruptcy Rule 3007(d).  For example, LMI anticipate

objecting to claims that (i) have already been paid and released; (ii) have been dismissed with

prejudice against the Debtor; (iii) allege abuse by a person with no other history of abuse; (iv) fail

to allege any relationship between the Debtor and the abuser; or (v) fail to allege that the Debtor

had any duty to the Abuse Claimant at the time of the abuse, or that the Debtor committed a breach

thereof, thereby preserving funds to compensate survivors with Abuse Claims that are legally

enforceable against the Debtor.

Preparing and filing multiple separate, individual objections to Abuse Claims on such grounds would be time consuming and expensive, would threaten to clog the Court's docket with numerous additional pleadings unnecessarily, and would place unnecessary burdens on other parties in interest.  Moreover, the impact of the resulting delays and costs could be substantial in this case considering the large number of Abuse Claims.  Conversely, permitting LMI to object to Abuse Claims in an omnibus fashion will conserve judicial resources while reducing the administrative and financial burden on the Debtor's estate.

The Claim Objection Procedures in Section A would also apply to the omnibus claim objections.

In addition, the following procedures will apply to omnibus claim objections:

I.    Rather than providing an Abuse Claimant with a copy of the entire omnibus claim objection, the proposed Claim Objection Notice will be personalized for each Abuse Claimant and will only contain exhibits relevant to their individual Abuse Claim.  All Claim Objection Notices will explain the claim objection process, identify the Abuse Claim that is subject to the objection, describe the basis for the objection, and supply information to the Abuse Claimant regarding the response deadline and hearing date.  The proposed Claim Objection Notice is for illustrative purposes only and will be adapted based on the nature of each Abuse Claim Objection.  LMI consider this process necessary to maintain the confidentiality of Abuse Claimants' personal information, and to comply with the Confidentiality Protocol as defined in the Bar Date Order.  *See* Bar Date Order at 6.

II.    Each omnibus claim objection will be separately and consecutively identified.

III.    Bankruptcy Rule 3007(f), which provides that the "finality of any order regarding a claim objection included in an omnibus objection shall be determined as though the claim had been subject to an individual objection," shall apply to the omnibus claim objections authorized herein.

These procedures would result in a timely and efficient resolution for Abuse Claimants, the Debtor, and the Abuse Claim Objector.

### 3.     Discovery Procedure for Contested Claims

If an Abuse Claim Objector serves an Abuse Claimant with a Notice of Merits Hearing, then as set forth in Section D.1.e).vii, supra, the Abuse Claim Objector shall provide notice of a discovery schedule according to the following timeline:

| Deadline | Event |
|---|---|
| Within seven days of response | Abuse Claim Objector files notice of merits hearing |
| Thirty days following the issuance of notice of merits hearing | Deadline to serve written discovery ("Written Discovery Deadline") |
| Thirty days following the Written Discovery Deadline | Deadline to serve responses and objections to written discovery;  Deadline for production of documents in response to written discovery and service of privilege logs<br><br>("Response Deadline") |
| Within five days of Response Deadline | Deadline to meet and confer on written discovery disputes ("Meet and Confer Deadline") |
| Within seven days of Meet and Confer Deadline | Deadline to submit written discovery disputes to court ("Dispute Deadline") |
| Within seven days of Dispute Deadline | Deadline to submit responses to written discovery disputes to the court |
| Ten days following court determination of the discovery disputes | Deadline for production of disputed discovery that is ordered to be produced ("Disputed Discovery Production Deadline") |
| Depositions to be completed within forty-five days after the Disputed Discovery Production Deadline, subject to any relevant Court ruling or agreement of the parties | Depositions |

### 4.     Discovery on Amended Claims

In the instance where an Abuse Claimant files an amended Proof of Claim with its opposition to an Abuse Claim Objection, then the Abuse Claim Objector may (a) withdraw the objection; (b) proceed with the Abuse Claim Objection, and address any issues raised by the

amended Proof of Claim in its reply; or (c) the Abuse Claim Objector shall serve a notice of a

Merits Hearing, and provide notice of the Discovery Schedule as set forth in C, above.  If the

Abuse Claim Objector elects to proceed with a Merits hearing, relevant discovery shall include

issues raised in the initial Proof of Claim, as well as the differences between the original and

amended Proof of Claim.

    **5.**       **The Claims Objection Procedures Are Appropriate And Should Be Approved**

Approving and establishing the Claim Objection Procedures is well within this Court's

authority.  Bankruptcy Rule 3007(c) provides that this Court may modify that Rule's limitations

on omnibus claim objections.[93]  In addition, section 105(a) of the Bankruptcy Code provides, in

pertinent part, that a bankruptcy court may "issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions [of the Bankruptcy Code]…."[94]  The Court has expansive

equitable power to fashion any order or decree that is in the interest of preserving or protecting the

value of a debtor's assets.[95]

Moreover, granting the relief requested here is an appropriate use of the Court's discretion

under Bankruptcy Rule 3007(c) and equitable power under section 105(a) of the Bankruptcy Code,

because the proposed modifications comport not only with Bankruptcy Rule 3007 itself—which

provides for due process in asserting and resolving claim objections as well as for efficient and

cost-sensitive administration of large bankruptcy cases—but also with the spirit of the Bankruptcy

---

[93] *See* Fed. R. Bankr. P. 3007(c) (providing that the Rule's "[l]imitation on joinder of claims objections" applies "[u]nless otherwise ordered by the court").

[94] 11 U.S.C. § 105(a).

[95] *See, e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir. 1983) ("[A] bankruptcy judge must have substantial freedom to tailor his orders to meet differing circumstances."); *In re Keene Corp.*, 168 B.R. 285, 292 (Bankr. S.D.N.Y 1994) ("Under 11 U.S.C. § 105(a), the Court can 'use its equitable powers to assure the orderly conduct of the reorganization proceedings.'") (quoting *In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y. 1987)).

Rules generally.[96]  For example, in *Rockville Centre*, which involved approximately 747 sexual abuse proofs of claim,[97] the Court entered an order approving certain claim objection procedures and allowing the debtor to assert omnibus claim objections under Bankruptcy Rule 3007(c), including for duplicated or certain amended claims.[98]  This also included additional grounds that the debtor was not liable to the claimant for the amount stated.[99]  Based on these procedures, the debtor filed twenty omnibus objections through the date of this Motion, resulting in over one-hundred claims disallowed and over another one-hundred claims disallowed with leave to amend.[100]  Undoubtedly, these results have proportionally increased any available funds to pay each meritorious claimant and streamlined the claims objection process, reducing costs for all parties involved.

In accordance with these standards, and for the reasons set out in this motion, LMI submit that approving and establishing the Claim Objection Procedures will provide for a timely, cost-effective and efficient claims-administration process and unclog the gridlock that is obstructing settlement negotiations.

## VI.    **NOTICE**

Notice of this Motion shall be provided to: (a) the Debtor, (b) the Office of the United States Trustee for the Southern District of New York; (c) the Official Committee of Unsecured Creditors; (d) the Abuse Claimant; and (e) all parties entitled to notice pursuant to Bankruptcy

---

[96] *See* Fed. R. Bankr. P. 1001 (providing that the Bankruptcy Rules "shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding").

[97] *See In re Rockville Centre*, No. 20-12345, Doc. No. 2372, ¶ 9 (Bankr. S.D.N.Y. Jan. 10, 2023).

[98] *Id.*, Doc. No. 1554.

[99] *Id.*

[100] *Id.*, Doc. Nos. 1832, 1929, 1949, 2000, 2024, 2086, 2138, 2142, 2331, 2335, 2336, 2339, 2352, 2541, 2939, 2940, 2941, 2942.

Rule 2002. LMI submit that, in light of the nature of the relief requested herein, no other further notice need be given.

## VII.    <u>CONCLUSION</u>

WHEREFORE, LMI respectfully request that the Court enter an order substantially in the form attached hereto as <u>**Exhibit B**</u>, granting: (a) the relief requested herein; and (b) such other and further relief to LMI as the Court may deem proper.

Dated:  March 29, 2024                                    Respectfully submitted,

By: */s/ Russell W. Roten*
    Russell W. Roten (*pro hac vice*)
    Jeff D. Kahane (*pro hac vice*)
    Andrew Mina (*pro hac vice*)
    Nathan Reinhardt (*pro hac vice*)
    Duane Morris LLP
    865 S. Figueroa Street, Suite 3100
    Los Angeles, CA  90017-5450
    Telephone: (213) 689-7400
    Facsimile:  (213) 689-7401
    Email: RWRoten@duanemorris.com

By: */s/ Catalina J. Sugayan*
    Catalina J. Sugayan (*pro hac vice*)
    Yongli Yang (*pro hac vice*)
    Clyde & Co
    30 S. Wacker Drive, Suite 2600
    Chicago, IL 60606
    Telephone: (312) 635-7000
    Facsimile:  (312) 635-6950
    Email: catalina.sugayan@clydeco.us

    *Attorneys for London Market Insurers*