# EXHIBIT 4

Trust Agreement

# Roman Catholic Diocese of Syracuse, New York
# Settlement Trust Agreement

This trust agreement (the "***Trust Agreement***") is made and entered into by and between the Roman Catholic Diocese of Syracuse, New York (the "***Diocese***") and DW Harrow & Assoc., LLC (the "***Trustee***") pursuant to the Chapter 11 Plan of Reorganization (together with any and all amendments, exhibits, and schedules, the "***Plan***")[1] filed in the Diocese's chapter 11 bankruptcy case, case number 20-30663), pending before the United States Bankruptcy Court for the Northern District of New York (the "***Bankruptcy Court***").

## RECITALS

A. On June 19, 2020, the Diocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

B. The Diocese has sought entry of the Confirmation Order with respect to the Plan.

C. The Plan contemplates the creation and existence of the Trust and the transfer and assignment to the Trust of the Trust Assets.

D. Pursuant to the Plan, the Trust is to use the Trust Assets to pay Abuse Claims and otherwise carry out the purposes of the Plan.

E. The Trust is established for the benefit of Abuse Claimants and is intended to qualify as a "Designated" or "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated under the Internal Revenue Code and codified at 26 C.F.R. §§ 1.468B-1 to -5.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the premises and provisions in the Plan, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, it is agreed as follows:

## DECLARATION OF TRUST

Subject to approval by the Bankruptcy Court, the Diocese absolutely assigns to the Trustee, and to its successors in trust and its successors and assigns, all rights, title, and interest of the Diocese in and to the Trust Assets;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust and its successors and assigns forever;

IN TRUST NEVERTHELESS upon the terms and subject to the conditions set forth in this Trust Agreement and for the benefit of the Beneficiaries (as defined below) as and to the extent

[1] Unless otherwise defined in this Trust Agreement, capitalized terms shall have the meanings ascribed to them in the Plan, Confirmation Order (as defined in the Plan), or Bankruptcy Code (as defined in the Plan).

provided in the Plan, and for the performance of, and compliance with, the terms of this Trust Agreement, the Plan, and the Confirmation Order;

PROVIDED, HOWEVER, that upon termination of the Trust in accordance with Article IV of this Trust Agreement, this Trust Agreement shall cease, terminate, and be of no further force and effect; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED that the Trust Assets are to be held and applied by the Trustee upon the further covenants and terms and subject to the conditions set forth in this Trust Agreement.

## 1. AGREEMENT OF TRUST.

1.1. Creation and Name. The Diocese hereby creates the Trust known as the "Roman Catholic Diocese of Syracuse, New York Settlement Trust," which is the Trust provided for in Section 8 of the Plan. In the event of any inconsistency between the Plan and this Trust Agreement, the terms of the Plan shall govern.

1.2. Purpose. The purpose of the Trust is to assume responsibility for preserving, managing, and distributing Trust Assets to Abuse Claimants in accordance with the Trust Agreement and the requirements of the Plan and Confirmation Order.

1.3. Transfer of Trust Assets. Pursuant to the Plan and upon the Confirmation Order becoming a Non-Appealable Order, the Diocese will irrevocably transfer, absolutely grant, assign, convey, set over and deliver to the Trust at all times as set forth in the Plan, all of the Diocese's rights, titles, and interests in and to the Trust Assets to be held in trust and for the uses and purposes stated in this Trust Agreement and in the Plan. The Trustee is hereby authorized to file with the proper governmental authorities any and all documents necessary or helpful to establish the Trust.

1.4. Transfer of Confidential Information. The Trustee shall maintain the confidentiality of all documents and follow the confidentiality procedures provided for in the Bankruptcy Court's FINAL ORDER AUTHORIZING THE DIOCESE TO FILE PORTIONS OF SCHEDULE F, THE STATEMENT OF FINANCIAL AFFAIRS, THE MASTER CREDITOR MAILING MATRIX, CERTAIN CERTIFICATES OF SERVICE AND OTHER PLEADINGS AND DOCUMENTS UNDER SEAL (Dkt. No. 73); BAR DATE ORDER ESTABLISHING APRIL 15, 2021 AS THE DEADLINE FOR FILING PROOFS OF CLAIM AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF (Dkt. No. 214); AND ORDER APPROVING MEDIATION CONFIDENTIALITY AND FEE AGREEMENT PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE (Dkt. No. 586).

1.5. Irrevocability. The Trust shall be irrevocable. The Diocese shall not alter, amend, revoke, or terminate the Trust. The Diocese shall have no power or authority to direct the Trustee to return any of the Trust Assets to the Diocese. Nothing in this Agreement shall diminish the Trust's obligation to pay the DOS Entities' Post-Effective Date Costs pursuant to the Plan.

1.6. Beneficiaries. The beneficiaries of the Trust are Abuse Claimants under the Plan whose Claims are allowed by the Survivor Claims Reviewer (the "***Beneficiaries***").

1.7. Acceptance of Assets and Assumption of Liabilities.

1.7.1. In furtherance of the purposes of the Trust, the Trustee hereby accepts the role of trustee of the Trust and accepts the grant, assignment, transfer, conveyance, and delivery of the Trust Assets to the Trust, subject to the terms and conditions set forth in this Trust Agreement, the Plan, and the Confirmation Order.

1.7.2. In furtherance of the purposes of the Trust, the Trustee, on behalf of the Trust, hereby expressly assumes all responsibility for preserving, managing, and distributing Trust Assets to the Beneficiaries. The Claims of the Beneficiaries will be evaluated by the Survivor Claims Reviewer in accordance with the Survivor Claim Allocation Protocol, which is attached to the Plan as **Exhibit 1**.

1.7.3. The Trustee shall have all of the rights, powers, and duties set forth in this Trust Agreement, the Survivor Claim Allocation Protocol, and the Plan, and available under applicable law, for accomplishing the purposes of the Trust. The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the applicable provisions of the Plan, the purpose of the Trust, and applicable law. The Trustee shall have the authority to bind the Trust within the limitations set forth in this Trust Agreement, but shall be acting in the capacity as Trustee, and not individually, for all purposes contained in this Trust Agreement.

1.7.4. In furtherance of the purposes of the Trust, the Trustee assumes responsibility for: (a) making payments to the Beneficiaries; (b) receiving, collecting, liquidating, maintaining, and distributing the Trust Assets; and (c) fulfilling all other obligations of the Trust under this Trust Agreement, the Plan, and the Confirmation Order. The Trust will be administered consistent with the purpose of the Trust and with no objective to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the value of the Trust Assets or as otherwise provided in the Plan or Confirmation Order.

1.7.5. All Trust expenses and all liabilities of the Trust with respect to the Beneficiaries shall be payable solely by the Trustee out of the Trust Assets.

## 2. CORPUS OF TRUST.

2.1. Trust Composition. The Trust Assets shall include all property transferred to the Trust pursuant to the Plan, Confirmation Order, and any future orders of the Bankruptcy Court, including without limitation all rights of every kind, nature, and description transferred to the Trust pursuant to Section 8 of the Plan.

2.2. Transfer to Trust. After the Confirmation Order becomes a Final Order, pursuant to the Plan and Confirmation Order, title to and all rights and interests in the Trust Assets shall be transferred to the Trust free and clear of all Liens, claims, encumbrances or interests of any kind in the Trust Assets of any other Person (including all Liens, claims, encumbrances or interests of creditors of, or holders of claims against or interests in the Diocese) in accordance with sections 1123, 1141, and 1146(a) of the Bankruptcy Code, except as otherwise provided for in the Plan.

The Trustee, on behalf of the Trust, shall receive the Trust Assets when they are transferred to the Trust.

2.3. Trustee's Right to and Title and Interest in Trust Assets. Upon the transfer of the Trust Assets, the Trust succeeds to all of the Diocese's and its bankruptcy estate's right to and title, and interest in the Trust Assets, and the Diocese and its bankruptcy estate shall have no further right to, or title, or interest in or with respect to, the Trust Assets or this Trust, except as provided in this Trust Agreement, the Plan, or the Confirmation Order.

2.4. No Tax on Transfers to Trust. Pursuant to section 1146(a) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Trust, including any deeds, bills of sale, or assignments executed in connection with any transfer to the Trust or receipt or disposition/sale of assets by the Trust contemplated by the Plan, shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax, or similar tax.

2.5. Spendthrift Provision. To the fullest extent permitted by law, neither the principal nor income of the Trust, in whole or in part, shall be subject to (a) any legal or equitable claims of creditors of any Beneficiary or others, (b) legal process, or (c) voluntary or involuntary transfer, assignment, anticipation, pledge, or other form of alienation or encumbrance except as may be ordered by the Bankruptcy Court.

2.6. Trust Corpus. The entirety of the Trust's corpus shall be available to pay the Beneficiaries and authorized expenses. The Trust's corpus shall be allocated, administered, and distributed as provided in the Survivor Claim Allocation Protocol, the Plan, and the Confirmation Order.

## 3. POWERS AND DUTIES OF TRUSTEE.

3.1. Trustee's Bond. The Trustee shall not be required to post any bond, surety, or other security for the performance of the Trustee's duties, unless otherwise ordered by the Bankruptcy Court, and, in the event the Trustee is so otherwise ordered, all reasonable costs and expenses of procuring any bond or surety shall be borne by the Trust and paid for from the Trust Assets.

3.2. Powers and Duties. The Trustee shall have, in addition to any other powers and duties conferred on the Trustee by applicable trust law (to the extent not inconsistent with applicable bankruptcy law, the Plan, and the Confirmation Order), the Plan, and the other provisions in this Trust Agreement, the following powers and duties:

a. to act as custodian of, and to receive, control, manage, liquidate, monetize, and dispose of, all Trust Assets for the benefit of the Beneficiaries as the Trustee deems appropriate to accomplish the purpose of the Trust, in accordance with the terms contained in this Trust Agreement, the Plan, and the Confirmation Order;

b. to abandon any property which the Trustee determines in the Trustee's reasonable discretion to be of *de minimis* value or of more burden than value to the Trust;

c. to protect and enforce the rights in and to the Trust Assets by any method deemed appropriate, including without limitation by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

d. to enter into contracts in the course of administering the Trust Assets for liquidation and in conjunction with their disposition under this Trust Agreement and the Plan;

e. to open and maintain bank accounts on behalf of the Trust, deposit funds in the bank accounts, and draw checks on the bank accounts, as appropriate under this Trust Agreement, the Plan, and the Confirmation Order;

f. to obtain all reasonably necessary insurance coverage with respect to any property that is, or may in the future become, a Trust Asset;

g. to incur on behalf of the Trust, and pay from the assets of the Trust, all fees, costs, and expenses of administering the Trust as provided in this Trust Agreement and the Plan, including: (i) the fees of bankruptcy claims and/or distribution agents; (ii) the fees and costs of professionals employed by the Trustee (the "***Professionals***"), including without limitation the Survivor Claims Reviewer, investment advisors, accountants, agents, managers, attorneys-at-law, actuaries, or auditors; (iii) the premiums charged by insurers, including without limitation professional liability insurers; (iv) the DOS Entities' Post-Effective Date Costs; (v) reimbursement of any statutory fees and court costs incurred by the Diocese (A) in the event the Trustee opposes the closure of the Chapter 11 Case, from the date of the filing of any such opposition through the closure of the Chapter 11 Case or (B) should the Trustee reopen the Chapter 11 Case in the future;

h. in accordance with the evaluation of the Survivor Claims Reviewer pursuant to the Survivor Claim Allocation Protocol, to make distributions, in accordance with the Survivor Claim Allocation Protocol to Beneficiaries who have provided signed copies of all required releases and forms;

i. in the Trustee's discretion, to rely on the authenticity of the signature or other reasonably equivalent form of authentication of the Survivor Claims Reviewer, and the accuracy of the information set forth by, and the reasonableness of the determination of, the Survivor Claims Reviewer in the administration of the Survivor Claim Allocation Protocol and assessment of the Abuse Claims without any verification or confirmation;

j. in the Trustee's discretion, as a party in interest, to seek enforcement of any provision of the Plan pertaining to the Trust, including, in the Trustee's sole discretion, whether to authorize an Abuse Claimant to pursue a Litigation Claim, *provided*, *however*, that the Trustee shall take into consideration, and shall use reasonable efforts to minimize the cumulative impact of post-Effective Date litigation on, the business operations and legal and personnel resources of the Diocese, the Reorganized Diocese, and the Participating Parties;

k. to retain any attorney-at-law, consultant, expert, accountant, investment advisor, bankruptcy management company or such other agents and advisors as are necessary and appropriate to effectuate the purpose of, and maintain and administer, the Trust and shall be entitled to rely on advice given by such advisors within his, her, or its areas of competence; provided, however, in no event shall the Trustee incur fees from any Professional, except the Trustee's primary legal counsel, the Trustee's primary insurance counsel, and Professionals in connection with DOS Entities' Post-Effective Date Costs, in excess of $100,000.00 without prior approval of the Bankruptcy Court;

l. in the Trustee's sole right and discretion, to appoint the Survivor Claims Reviewer, who the Trustee may subsequently remove for cause, which shall mean: (i) the willful and continued refusal by the Survivor Claims Reviewer to perform the Survivor Claims Reviewer's duties as set forth in this Trust Agreement, the Survivor Claimant Allocation Protocol, and the Plan; (ii) gross negligence, gross misconduct, fraud, embezzlement, or theft; (iii) a serious breach of fiduciary duty; or (iv) other cause as the Trustee shall in good faith determine;

m. in the event the Survivor Claims Reviewer resigns, is removed, or is otherwise unable to perform the Survivor Claims Reviewer's obligations, the Trustee shall have exclusive authority to appoint a new Survivor Claims Reviewer, and nothing contained in this Trust Agreement shall prohibit the Trustee from also serving as the Survivor Claims Reviewer, if the Trustee determines that serving as both the Trustee and the Survivor Claims Reviewer is in the best interest of the Trust and the Beneficiaries;

n. to make, sign, execute, acknowledge, and deliver any documents that may be necessary or appropriate to effectuate the purpose of the Plan or the Trust or to maintain and administer the Trust;

o. to seek the examination of any Person under, and subject to, the provisions of the Bankruptcy Rules, including without limitation Rule 2004 of the Bankruptcy Rules;

p. to amend, modify, or alter the Trust Agreement by filing a motion with the Bankruptcy Court, with notice to the Beneficiaries, the Reorganized Diocese, and any or all other parties in interest; provided, however, the amendments, modifications, or alterations may not be inconsistent with the terms of the Plan, the terms of the Confirmation Order, or the purpose of the Trust, as identified in Section 1.2 of this Trust Agreement;

q. upon any event terminating the Trust, to defer distribution of Trust Assets for a reasonable time needed to wind up the affairs of the Trust, including time needed to provide for payment of debts and expenses, although the Beneficiaries' rights to distributions shall vest immediately;

r. to comply with section 345 of the Bankruptcy Code with regard to the investment of the Trust Assets; provided, however, the Trustee is relieved of any obligation to diversify, regardless of whether such obligation would otherwise come from the Bankruptcy Code or any other applicable state or federal law;

s. to establish the accounts, funds, and reserves, as required by the Plan, for ease of administration; provided, however, nothing in this provision shall restrict the Trustee's authority to pool the accounts, funds, or reserves for investment purposes or require separate bank accounts for the accounts, funds, or reserves;

t. to be responsible for only the Trust Assets delivered to the Trust and have no duty to make, nor incur any liability for failing to make, any search for unknown property or liabilities; and

u. to cause the Trust to assume all duties, obligations and indemnification responsibilities outlined in the Plan and Insurance Settlement Agreements.

3.3. Limitations on the Trustee. Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall not do or undertake any of the following: (a) guaranty any debt other than as provided for in this Trust Agreement or as required by the Plan; (b) loan Trust Assets (other than investments in cash and cash equivalents); (c) make any transfer or distribution of Trust Assets other than those authorized in this Trust Agreement, the Plan, or the Confirmation Order; (d) engage in any trade or business; or (e) engage in any investments or activities inconsistent with the treatment of the Trust as a "Designated" or "Qualified Settlement Trust."

## 4. **Termination of the Trust.**

4.1. Pre-Confirmation Termination. The Trustee shall terminate the Trust if (a) the Confirmation Order does not become a Non-Appealable Order within one year from the date the Trust Agreement is executed by the Diocese and the Trustee or (b) the Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code (the "***Pre-Confirmation Termination***"). Upon the Pre-Confirmation Termination of the Trust, the Trust Agreement shall be null and void and of no force and effect, with the Trustee and the Diocese both discharged from any and all duties and obligations provided for in this Trust Agreement.

4.2. Post-Confirmation Termination. The Trustee shall terminate the Trust after (a) the Trustee's liquidation, administration, and distribution of the Trust Assets in accordance with this Trust Agreement and the Plan and (b) the Trustee's full performance of all other duties and functions set forth in this Trust Agreement and the Plan (the "***Post-Confirmation Termination***"). The Trust shall terminate on the fifth (5th) anniversary of the Effective Date, provided, however, that Trustee may apply to the Bankruptcy Court for and extension of the Post-Confirmation Termination date.

4.3. Post-Confirmation Termination Procedures. After the Post-Confirmation Termination of the Trust and solely for the purpose of liquidating and winding up its affairs, the Trustee shall continue to act as Trustee until the Trustee's duties in this Trust Agreement have been fully performed. The Trustee shall retain the books, records, documents, and files that shall have been delivered to, or created by, the Trustee until distribution of all the Trust Assets. For purposes of this provision, the Trust Assets will be deemed distributed when the total amount remaining in the Trust is less than $150,000. At the Trustee's discretion, all of the books, records, documents, and files may be destroyed at the first anniversary of the Post-Confirmation Termination; provided that, notwithstanding the foregoing, the Trustee shall not destroy or discard

any books, records, documents, or files relating to the Trust without giving the Reorganized Diocese and the Beneficiaries reasonable prior written notice.

4.4. Post-Confirmation Termination Distribution. Upon Post-Confirmation Termination of the Trust, provided that all fees and expenses of the Trust have been paid or provided for in full, the Trustee will deliver all funds and other investments in the Trust, if any, including any investment earnings, to a charity supporting survivors of childhood sexual abuse as set forth in the Confirmation Order.

4.5. Discharge, Exculpation, and Exoneration. Upon Post-Confirmation Termination of the Trust and accomplishment of all activities described in this Article, the Trustee and the Trustee's Professionals shall be discharged and exculpated from liability, and the Trustee's bond (if any), shall be exonerated except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud of the Trustee or his designated agents or representatives. The Trustee may, at the expense of the Trust, seek an order of the Bankruptcy Court confirming the discharges, exculpations, and exoneration referenced in this Section.

## 5. IMMUNITY, LIABILITY, AND INDEMNIFICATION OF TRUSTEE.

5.1. Limitations on Liability. Neither the Trustee nor any of the Trustee's duly designated agents, representatives, or Professionals shall be liable for any act or omission taken or omitted by the Trustee in good faith, other than acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud of the Trustee or the Trustee's designated agents, representatives, or Professionals. The Trustee may, in connection with the performance of the Trustee's functions, and in the Trustee's sole and absolute discretion, consult with the Trustee's Professionals and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with the advice or opinions rendered by the Trustee's Professionals. Notwithstanding this authority, the Trustee shall be under no obligation to consult with the Trustee's Professionals, and the Trustee's good faith determination not to consult with the Trustee's Professionals shall not result in the imposition of liability on the Trustee, unless the determination is based on the Trustee's recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud. The provisions of this Article 5 are intended to be enforceable in accordance with New York law, and the Diocese expressly acknowledges that the Trustee did not draft nor cause to be drafted the exculpatory terms of this Article 5.

5.2. No Recourse Against the Trustee Personally. No recourse shall be had, directly or indirectly, against the Trustee personally, or against any employee, contractor, or Professional retained by the Trustee in accordance with the terms of this Trust Agreement, Plan, or Confirmation Order, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or trust agreement executed by the Trustee in implementation of this Trust Agreement or the Plan or by reason of the creation of any indebtedness by the Trustee under the Plan for any purposes authorized by this Trust Agreement or the Plan, it being expressly understood and agreed that any promise, contract, instrument, undertaking, obligation, covenant, or trust agreement entered into by the Trustee, whether in writing or otherwise, shall be enforceable only against, and be satisfied only out of, the

Trust Assets and shall be evidence only of a right of payment out of the Trust Assets. The Trustee may be held liable for the Trustee's recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability for these grounds is established, recourse may be had directly against the Trustee. The Trust will not be covered by a bond.

5.3. Indemnification. The Trustee, using Trust Assets, shall defend, indemnify, and hold harmless the Trustee, the Trustee's officers, directors, agents, representatives, and employees to the fullest extent that a corporation or trust organized under the laws of the State of New York is entitled to defend, indemnify, and hold harmless its trustees, officers, directors, agents, representatives, and employees against any and all costs (including attorneys' fees and costs), judgments, awards, amounts paid in settlement, liabilities, expenses, claims, damages, or losses incurred by them in the performance of their duties under this Trust Agreement; provided that neither the Trustee nor the Trustee's officers, directors, agents, representatives, or employees shall be defended, indemnified, or held harmless in any way for any liability, expense, claim, damage, or loss for which they are ultimately held liable under Section 5.1 or Section 5.2 of this Trust Agreement.

## 6. COMPENSATION AND EXPENSE REIMBURSEMENT OF TRUSTEE AND ITS AGENTS.

6.1. Trustee Compensation. The Trustee shall be entitled to receive compensation from the Trust Assets. The Trustee's average hourly rate shall be $425.

6.2. Compensation of the Trustee's Professionals. Any Professional retained by the Trustee pursuant to this Trust Agreement or the Plan will be entitled to reasonable compensation for services rendered paid by the Trustee from the Trust Assets.

6.3. Reimbursement of Expenses. Any and all reasonably necessary costs and expenses incurred by the Trustee and any Professional retained by the Trustee, in performing their respective duties under this Trust Agreement, will be reimbursed by the Trustee from the Trust Assets.

## 7. SUCCESSOR TRUSTEE.

7.1. Vacancy Caused by the Trustee's Resignation or Removal.

7.1.1. The Trustee may resign at any time upon thirty (30) days written notice to be filed with the Bankruptcy Court. The outgoing trustee (the "***Outgoing Trustee***") shall, within thirty (30) days after the Outgoing Trustee's resignation takes effect, deliver to the successor trustee (the "***Successor Trustee***") all of the Trust Assets which were in the possession of the Outgoing Trustee along with a complete list of Trust Assets and a complete accounting of all transactions engaged by the Outgoing Trustee while serving as the Trustee.

7.1.2. Any Abuse Claimant may petition the Bankruptcy Court to remove the Trustee.

7.1.3. The Bankruptcy Court may remove a Trustee for cause, which cause shall include, but shall not be limited to, the factors listed in N.Y. Est. Powers & Trusts Law § 7-2.6 (2023). The removal will take effect upon the date the Bankruptcy Court specifies.

In the event of removal, the Outgoing Trustee shall, within thirty (30) days after such removal takes effect, or at some earlier date as the Bankruptcy Court may specify, deliver to the Successor Trustee all of the Trust Assets which were in the possession of the Outgoing Trustee along with a complete list of Trust Assets and a complete accounting of all transactions engaged in by the Outgoing Trustee while serving as the Trustee.

7.2. Outgoing Trustee Obligations. In the event of the resignation or the removal of the Trustee, the Outgoing Trustee, in addition to the duties imposed under Sections 7.1.1 or 7.1.2, shall:

a. execute and deliver by the effective date of the resignation or removal the documents, instruments, records, and other writings as may be reasonably requested by the Successor Trustee to effect the resignation or removal of the Outgoing Trustee and the conveyance of the Trust Assets to the Successor Trustee;

b. deliver to the Successor Trustee all documents, instruments, records, and other writings relating to the Trust Assets as may be in the possession or under the control of the Outgoing Trustee;

c. otherwise assist and cooperate in effecting the assumption of the Outgoing Trustee's obligations and functions by the Successor Trustee.

The Outgoing Trustee hereby irrevocably appoints the Successor Trustee (and any interim trustee) as the Outgoing Trustee's attorney-in-fact and agent with full power of substitution for the Outgoing Trustee and the Outgoing Trustee's name, place, and stead to do any and all acts that the Outgoing Trustee is obligated to perform under this Trust Agreement. The appointment of the Successor Trustee as the Outgoing Trustee's attorney-in-fact and agent shall not be affected by the subsequent disability or incompetence of the Outgoing Trustee. The Bankruptcy Court may also enter any order necessary to effect the termination of the appointment of the Outgoing Trustee and the subsequent appointment of the Successor Trustee.

7.3. Appointment of Successor Trustee. Any vacancy in the office of the Trustee shall be filled by the nomination of a majority of the members of the Committee (notwithstanding dissolution of the Committee on the Effective Date), subject to the approval of the Bankruptcy Court, after notice and a hearing. If at least two (2) members of the Committee do not participate in the nomination of the Successor Trustee within ten (10) days after the Outgoing Trustee resigns, is removed, or otherwise becomes unable to serve, Stinson LLP, bankruptcy counsel to the Committee, shall designate a successor after notice to Beneficiaries and the Reorganized Diocese and a hearing, the Bankruptcy Court may appoint a Successor Trustee.

7.4. Preservation of Record of Changes in Trustees. A copy of each instrument of resignation, removal, appointment, and acceptance of appointment shall be attached to an executed counterpart of this Trust Agreement.

## 8. TRUSTEE REPORTING AND DISCHARGE.

8.1. Annual Accountings. The Trustee shall prepare, at least annually, a written accounting of the administration of the Trust listing the current assets with fair market values and

detailing all transactions that occurred during the period covered by the accounting. Each accounting shall be filed with the Bankruptcy Court for as long as the Chapter 11 Case remains open and pending before the Bankruptcy Court. Following the entry of the entry of the final decree in the Chapter 11 Case copies of the accounting shall be available to the Beneficiaries upon request. However, the Trustee shall redact any and all confidential and personal identifying information from any and all accountings or reports filed with the Bankruptcy Court or provided to any Beneficiary, including, but not limited to, the individual award made to any individual Beneficiary.

8.2. Approval of Accountings and Discharge of the Trustee. At any time when the Chapter 11 Case is open, the Trustee may file with the Bankruptcy Court a motion for approval of any accounting described in Section 8.1 of this Trust Agreement. Upon the entry of an order of the Bankruptcy Court approving the accounting, the Trustee shall be discharged from all liability to the Trust, any Beneficiary, or any Person who has or may have a claim against the Trustee or Trust for acts or omissions in the Trustee's capacity as Trustee with respect to all assets listed and transactions detailed in the accounting.

## 9. SECTION 468B SETTLEMENT FUND.

9.1. Qualification. In accordance with the Plan, the Trustee shall take all reasonable steps to ensure that the Trust will qualify as, and remain, a "Designated" or "Qualified" settlement fund within the meaning of Section 468B of the Internal Revenue Code of 1986 (as amended, the "***Tax Code***") and the regulations promulgated pursuant the Tax Code (the "***Treasury Regulations***"). The Diocese shall be the "Transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "Administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3).

9.2. All Events Test and Economic Performance Requirement. It is intended that the transfer of the Trust Assets to the Trust shall satisfy the "All Events Test" and the "Economic Performance" requirement of Section 461(h)(1) of the Tax Code and Treasury Regulation Section 1.461-1(a)(2).

9.3. Employer Identification Number. Upon establishment of the Trust, the Trustee shall apply for an employer identification number for the Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

9.4. Relation-Back Election. If applicable, the Trustee and the Diocese shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2) to treat the Trust as coming into existence as a settlement fund as of the earliest possible date.

9.5. Filing Requirements. The Trustee shall cause to be filed, on behalf of the Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulation Section 1.468B-2(k)(1). The Diocese shall file an election statement satisfying the requirements of Treasury Regulation Section 1.468B-1(k)(2)(ii) so that the Trust is treated as a grantor trust under Section 671 of the Tax Code and the Treasury Regulations. The election statement shall be included with the Trust's first timely filed trust income tax return. The Diocese shall supply to the Trustee and to the Internal Revenue Service the statement described in Treasury

Regulation Section 1.468B-3(e)(2) no later than February 15 of the year following each calendar year in which the Diocese makes a transfer to the Trust.

9.6. Broad Powers of the Trustee. The Trustee is empowered to take all actions, including any action consistent with those expressly set forth in Article IX of this Trust Agreement, as the Trustee deems necessary to reasonably ensure that the Trust is treated as a "Designated" or "Qualified" settlement fund under Section 468B of the Tax Code and the Treasury Regulations. Further, the Trustee may, unilaterally and without order from the Bankruptcy Court, amend, either in whole or in part, any administrative provision of this Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with Article IX of this Trust Agreement.

## 10. BENEFICIARIES.

10.1. Register. The Trustee shall keep a register (the "***Register***") in which the Trustee shall at all times maintain the names and addresses of the Beneficiaries and the actual distributions made to the Beneficiaries pursuant to the Plan. The Trustee may rely upon the Register for the purposes of delivering distributions or notices. In preparing and maintaining this Register, the Trustee shall include the name and address of each Beneficiary as they are listed in the proof of claim filed Beneficiary. On the request of a Beneficiary, such request being communicated to the Trustee via a signed letter transmitted by mail or email, The Trustee shall modify the Beneficiary's name and address as requested. The Trustee shall be obligated to maintain the confidentiality of all names, addresses, and any and all other personally identifying information of the Beneficiaries provided to the Trustee.

10.2. Rights of Beneficiaries. The rights of a Beneficiary under this Trust Agreement shall, upon the death or incapacity of an individual Beneficiary, pass to the legal representative of the Beneficiary. A Beneficiary shall have no title to, right to, possession of, management of, or control of the Trust Assets, or any right to call for a partition or division of the Trust Assets. Title to all the Trust Assets shall be vested in the Trustee, and the sole interest of the Beneficiaries shall be the rights and benefits given to the Beneficiaries under this Trust Agreement, the Plan, the Confirmation Order, and the Survivor Claim Allocation Protocol.

10.3. Tax Identification Numbers. The Trustee shall require any Beneficiary to furnish to the Trustee the Beneficiary's employer or taxpayer identification number or social security number as assigned by the IRS, and other records or documents necessary to satisfy the Trustee's tax reporting obligations (including, but not limited to, certificates of non-foreign status). The Trustee shall condition the payment of any distribution to any Beneficiary upon receipt of the number and records or documents.

## 11. MISCELLANEOUS PROVISIONS.

11.1. Plan Incorporation. The terms of the Plan and the Confirmation Order are incorporated into this Trust Agreement. In the event of any conflict between the terms of this Trust Agreement and the Plan, the terms of the Plan shall govern.

11.2. Notices. All notices or deliveries required or permitted under this Trust Agreement shall be given as directed in the Plan, to the following:

*If to the Trust or Trustee*:

[DW Harrow & Assoc., LLC
1880 State Highway 309
Kerens, Texas 75144]

*If to a Beneficiary*:

Counsel who signed the Beneficiary's Proof of Claim or, for an unrepresented Beneficiary, to the address for the Beneficiary provided in the Proof of Claim.

To the Diocese or the Reorganized Diocese:

Stephen A. Donato, Esq.
Charles J. Sullivan, Esq.
Grayson T. Walter, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York 13202
Email: donatos@bsk.com
sullivc@bsk.com
walterg@bsk.com

11.3. Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Trust Agreement shall affect the right or remedy or constitute a waiver by the party of any right or remedy pursuant to this Trust Agreement. Resort to one form of remedy shall not constitute a waiver of alternative remedies.

11.4. Reimbursement of Costs. If the Trustee or the Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Trust Agreement or the enforcement of a provision of this Trust Agreement, the Trustee or the Trust, as the case may be, shall be entitled to collect from the non-prevailing party any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, incurred in connection with the dispute or enforcement action.

11.5. Entirety of Trust Agreement. This Trust Agreement supersedes any and all prior oral discussions and agreements with respect to the subject matter in this Trust Agreement. This Trust Agreement, together with the Plan and the Confirmation Order, contain the sole and entire Trust Agreement and understanding with respect to the matters addressed in the Trust Agreement. It is acknowledged that there are no communications or oral understandings that are contrary to, or that in any way restrict, this Trust Agreement and that all prior agreements or understandings within the scope of the subject matter of this Trust Agreement are, upon execution and delivery of this Trust Agreement, superseded, null, and void.

11.6. Counterparts. This Trust Agreement may be executed in two or more counterparts, with the same effect as if all signatures on the counterparts appeared on one document, each of which shall be deemed an original, but all of which together shall constitute one and the same

instrument. Facsimile signatures or signatures delivered by any other electronic means shall have the same force and effect as original signatures.

11.7. Captions. The captions of Articles and Sections are included for convenience only and are to be disregarded in interpreting this Trust Agreement.

11.8. Representation. It is acknowledged that each of the parties to this Trust Agreement has reviewed this Trust Agreement and has consulted counsel, or knowingly chose not to consult counsel, before executing this Trust Agreement. Each of the parties to this Trust Agreement relied upon its own judgment and that of its counsel in executing this Trust Agreement and has not relied on, or been induced by, any representation, statement, or act by any party that is not referred to in this instrument. It is specifically acknowledged and understood that this Trust Agreement has not been submitted to, nor reviewed or approved by, the Internal Revenue Service or the taxing authorities of any state or territory of the United States of America. Each of the parties entered into this Trust Agreement voluntarily, with full knowledge of its significance, and the Trust Agreement is, in all respects, complete and final.

11.9. Interpretation. This Trust Agreement has been reached through negotiations between the parties to this Trust Agreement. Each of the parties to this Trust Agreement acknowledges that the party has participated in the drafting of this Trust Agreement and reviewed the terms of the Trust Agreement and, as such, no rule of construction shall apply which might result in this Trust Agreement being construed in favor or against any of the parties, including without limitation, any rule of construction to the effect that ambiguities ought to be resolved against the drafting party. The parties to this Trust Agreement have used their own judgment in entering into this Agreement.

11.10. Savings Clause. If any clause or provision of this Trust Agreement shall for any reason be held invalid or unenforceable by the Bankruptcy Court or any other court with competent jurisdiction, such invalidity or unenforceability shall not affect any other clause or provision in this Trust Agreement, but this Trust Agreement shall be construed, insofar as reasonable to effectuate the purpose of this Trust Agreement, as if the invalid or unenforceable provision had never been contained in the Trust Agreement.

11.11. Applicable Law. To the extent not inconsistent with the Bankruptcy Code, the Trust Agreement shall be administered under, governed by, and enforced according to the laws of the State of New York applicable to contracts and trust agreements made and to be performed in this Trust Agreement, except that all matters of federal tax law. The Trust's compliance with Section 468B of the Tax Code and any Treasury Regulations shall be governed by federal tax law and all matters of federal bankruptcy law shall be governed by the Bankruptcy Code and federal bankruptcy law.

**[SIGNATURE PAGES FOLLOW]**

**IN WITNESS WHEREOF,** the Diocese, Reorganized Diocese, and the Trustee execute this Trust Agreement as of the ___ day of ____________________, 2024.

**TRUSTEE:**

_________________________________
By:
Title:

**DIOCESE:**

_________________________________
By:
Title:

**REORGANIZED DIOCESE:**

_________________________________
By:
Title: