Lauren M. Macksoud, Esq.
**DENTONS US LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-5347
Facsimile:  (212) 768-6800
E-mail: lauren.macksoud@dentons.com

*Attorney for Travelers Insurance Company
Limited, Travelers Casualty and Surety
Company and Traveler's Indemnity Company*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese Of Syracuse,<br>New York,<br><br>                 Debtor. | Case No. 20-30663-5-wak<br><br>Chapter 11 |

**TRAVELERS INSURANCE COMPANY LIMITED, TRAVELERS CASUALTY AND
SURETY COMPANY, AND TRAVELER'S INDEMNITY COMPANY'S
OBJECTION TO DISCLOSURE STATEMENT IN SUPPORT OF FOURTH AMENDED
JOINT CHAPTER 11 PLAN OF REORGANIZATION**

Travelers Insurance Company Limited, Travelers Casualty and Surety Company and

Traveler's Indemnity Company ("Travelers"), by and through undersigned counsel, hereby files

this objection ("Objection") to the *Disclosure Statement in Support of Fourth Amended Joint

Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York Dated

September 13, 2024* (the "Amended Disclosure Statement") [Docket No. 2173] filed by The

Roman Catholic Diocese of Syracuse, New York (the "Diocese" or the "Debtor").

For the reasons set forth herein, the Amended Disclosure Statement in support of the

*Fourth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of*

*Syracuse, New York dated September 13, 2024* [Docket No. 2172] (the "Amended Plan")[1] should

not be approved because it fails to provide creditors and other interested parties with adequate

information pursuant to 11 U.S.C. § 1125, and supports a Fourth Amended Plan that remains

patently unconfirmable.

In opposition to the Amended Disclosure Statement, Travelers respectfully states as

follows:

## I.     PRELIMINARY STATEMENT

1.      The Plan Proponents' requested and received from the Court approximately two

months to rewrite their plan in accordance with the Supreme Court's recent decision in *Harrington*

*v. Purdue Pharma L.P.*, 144 S.Ct. 2071 (2024) ("*Purdue*"), specifically to address various non-

debtor releases.  The Plan Proponents' Fourth Amended Plan remains patently unconfirmable as

it authorizes non-debtor releases without affirmative consent.  For example, the Fourth Amended

Plan addresses only those holders of Abuse Claims, not any potential claims held by the Non-

Settling Insurers against non-debtors, leaving those potential claims held by Non-Settling Insurers

against non-debtors unaddressed.

2.      Moreover, the Debtor's Executive Summary for Survivors [Docket No. 2209]

admits that by default, Abuse Claimants are treated as Consenting Abuse Claimants, meaning they

are deemed to have released the Diocese and Participating Parties through the Fourth Amended

Plan's release provisions *unless* they affirmatively *opt out* of the release or object to the Fourth

Amended Plan.  This type of opt out release was recently rejected by the United States Bankruptcy

Court for the District of Delaware in *In re Smallhold, Inc.*, No. 24-10267 (CTG), 2024 WL

4296938 (Bankr. D. Del. Sept. 25, 2024*),* where Judge Goldblatt found that creditors can no longer

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Fourth Amended Plan.

be "defaulted" into giving releases.  The Court said after *Purdue*, *affirmative consent* is required. *Id.* at \*8.

3.      Travelers will primarily leave arguments pertaining to the releases of Abuse Claims to the U.S. Trustee.  However, Travelers objects to and does not consent to any proposed release contained in the Fourth Amended Plan that affects Travelers' rights under its Insurance Policies, particularly with respect to Insurer Contribution Claims, Inbound Contribution Claims and Channeled Claims.

4.      In addition, and as set forth in more detail below, the Amended Disclosure Statement remains unclear with respect to several issues that are both important to insurers and to Abuse Claimants.  First, sufficient disclosure has not been provided with respect to Participating Party contributions.  Under the currently proposed Fourth Amended Plan, the Participating Parties, which are non-debtor, third parties, are receiving certain exculpations and releases.  However, the Amended Disclosure Statement and Fourth Amended Plan do not indicate how much each Participating Party is contributing in exchange for their release.  This information is needed in order to determine whether adequate consideration is being provided to creditors in exchange for third party releases.

5.      Second, the Amended Disclosure Statement does not clearly address how and under what circumstances a Distribution Claim will be tendered to Non-Settling Insurers for indemnity. The Amended Disclosure Statement should provide additional detail describing (i) the purpose for which the Trust intends to retain the right to pursue Non-Settling Insurers for extra-contractual causes of action and (ii) what will happen to any funds recovered by the Trust based on such a cause of action.

6.      Lastly, the Amended Disclosure Statement lacks sufficient disclosure on how and

3

under what circumstances the Fourth Amended Plan compromises or alters any Insurance Policy. Insurance Policies are contracts. The Debtor's bankruptcy filing cannot alter the terms or scope of those contracts, yet the Amended Disclosure Statement and Fourth Amended Plan contain numerous provisions and provisos that do just that.

7.      Each of these issues represents a material risk to confirmation of the Fourth Amended Plan and each should be better described and/or clarified by the Debtor in the Amended Disclosure Statement in order to satisfy the requirements of § 1125 of the Bankruptcy Code. For these reasons, the Court should decline to approve the Amended Disclosure Statement at this time.

## II.      BACKGROUND[2]

**A.      The Plan and Disclosure Statement**

8.      On December 6, 2023, the Debtor and the Official Committee of Unsecured Creditors (the "Committee") filed the *Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York dated December 6, 2023* (the "Plan") [Docket No. 1565] and the *Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York* (the "Disclosure Statement") [Docket No. 1566].

9.      On January 16, 2024, the Diocese filed the *Motion for Entry of an Order (I) Approving the Disclosure Statement; (II) Approving Solicitation Packages and Distribution Procedures; (III) Approving the Forms of Ballots and Establishing Procedures for Voting on the Joint Plan; (IV) Approving the Form, Manner, and Scope of Confirmation Notices; (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Joint Plan; and (VI) Granting Related Relief* ("Disclosure Statement Motion")

---

[2] Travelers incorporates by reference the background and legal arguments set forth in its *Objection to Disclosure Statement Motion and Joinder to LMI and Interstate Insurers' Objections* (the "Initial Disclosure Statement Objection") filed on January 30, 2024 [Docket No. 1640].

[Docket No. 1626].

10.    On January 30, 2024, four (4) insurers (including Travelers, which filed its Initial Disclosure Statement Objection), the Catholic Mutual Relief Society of America, and the UST filed objections to the Disclosure Statement Motion. *See* Docket Nos. 1637, 1639, 1640, 1641, 1653, and 1636. The Debtor and the Committee filed replies to the Objections. *See* Docket Nos. 1645 and 1644, respectively.

11.    The Court held a hearing on February 6, 2024 on the Disclosure Statement Motion and to address the adequacy of the Disclosure Statement. Docket Nos. 1657 and 1658. On February 8, 2024, the Court entered the *Order Denying Approval of the Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York Dated December 6, 2023 and Adjourning the Disclosure Statement Hearing* (the "Order"). Docket No. 1664. Among other things, the Order instructed the Debtor to file a redlined disclosure statement and any related documents that are amended by March 5, 2024 and adjourned the hearing on the Disclosure Statement to April 2, 2024 at 12:00 p.m.

12.    On March 5, 2024, the Diocese filed the *Amended Disclosure Statement* and the Disclosure Statement Redline. *See* Docket No. 1722 at Exhibit B.

13.    On April 5, 2024, the Diocese filed the *Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Docket No. 1787].

14.    On April 5, 2024, the Diocese filed the *Disclosure Statement in Support of Second Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Docket No. 1788].

15.    On May 2, 2024, the Diocese filed the *Third Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Docket No. 1848].

5

16.     On May 2, 2024, the Diocese filed the *Disclosure Statement in Support of Third Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Docket No 1849] (the "Third Amended Plan").  The Third Amended Plan provided for third party releases against several hundred non-debtor "Participating Parties", which include parishes, schools and other Catholic entities.  *See* List of Participating Parties filed at Docket No. 1817-1[3].

17.     On June 27, 2024, the Supreme Court of the United States issued its decision in *Purdue* holding that the Bankruptcy Code does not authorize any non-consensual third-party releases (other than regarding asbestos liabilities).  As a result of the *Purdue* decision, the Debtor and Committee advised the Court by letter dated July 24, 2024 that they would further amend their joint plan in order to address the treatment of non-debtor releases in light of the changes brought by *Purdue*.  *See* Letter at Docket. No. 2111].

18.     On September 13, 2024, the Diocese filed the *Fourth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Docket No. 2172].  The Fourth Amended Plan contains various injunctions and releases, which are described in detail in the Amended Disclosure Statement.

19.     On September 13, 2024, the Diocese filed the *Disclosure Statement in Support of Fourth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Docket No. 2173].

20.     On September 13, 2024, the Diocese filed the *Notice of Filing of Redlines*. *See* Docket No. 2174 at Exhibit B.

### III.    ARGUMENT

---

[3] No list of Participating Parties is attached to the Fourth Amended Plan.

21.     It is well established that a disclosure statement may be approved only if it provides

adequate information about the related plan. 11 U.S.C. § 1125(b).   Section 1125(a) of the

Bankruptcy Code defines "adequate information" as information "in sufficient detail, as far as is

reasonably practicable . . . that would enable [] a hypothetical investor . . . to make an informed

judgment about the plan." 11 U.S.C. § 1125(a)(1).   A determination of what is adequate

information is subjective and made on a case-by-case basis and is largely within the discretion of

the bankruptcy court. *In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 29 (Bankr. S.D.N.Y. 1995)

(quoting *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988)); *see also In re Copy*

*Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) ("What constitutes adequate

information is to be determined on a case-specific basis under a flexible standard that can promote

the policy of Chapter 11 towards fair settlement through a negotiation process between informed

interested parties.").

22.     The disclosure statement must provide adequate information so that creditors can

decide whether or not to approve the proposed plan treatment of their respective claims.  *In re*

*Duratech Indus., Inc.,* 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd,* 241 B.R. 283 (E.D.N.Y.

1999).  The information to be provided should be comprised of *all* factors presently known to the

plan proponent that bear upon the success or failure of the proposals contained in the plan. *In re*

*Stanley Hotel, Inc.,* 13 B.R. 926, 929 (Bankr. D. Colo. 1981) (emphasis added).  The burden of

proving that a disclosure statement contains adequate information falls on the proponent. *See In re*

*Am. Cap. Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012); *In re R & G Properties, Inc.*, No. 08-

10876, 2009 WL 2043873, at *5 (Bankr. D. Vt. July 6, 2009).

**A. The Amended Disclosure Statement Continues to Support a Patently Unconfirmable Plan.**

23.     As noted above, the proposed releases are non-consensual third party releases that

cannot be approved following the Supreme Court's decision in *Purdue*.  Travelers defers to the

U.S. Trustee's arguments on this issue and joins the *Interstate Insurers' Opposition to the*

*Amended Disclosure Statement* [Docket No. 2260] with respect to arguments set forth on the issue

of releases and injunctions relating to the Insurer Contribution Claims, Inbound Contribution

Claims and Channeled Claims.  Travelers also joins in the *London Market Insurers' Opposition to*

*the Motion for Entry of an Order Approving the Amended Disclosure Statement* [Docket No. 2258]

(the "LMI Opposition").  Because the Fourth Amended Plan is patently unconfirmable due to the

non-consensual third party releases sought therein, and for the other reasons cited in the LMI

Opposition, this Court should decline to approve the Amended Disclosure Statement.  *See In re*

*GSC, Inc.*, 453 B.R. 132, 157 n. 27 (Bankr. S.D.N.Y. 2011) ("An unconfirmable plan is grounds

for rejection of the disclosure statement; a disclosure statement that describes a plan patently

unconfirmable on its face should not be approved.") (citing *In re Quigley Co.*, 377 B.R. 110, 115

(Bankr. S.D.N.Y. 2007)).

**B.  The Amended Disclosure Statement Is Inadequate.**

24.    The Amended Disclosure Statement requires additional disclosure in at least three

areas.  First, the Participating Parties are non-debtors[4] who are slated to receive broad exculpations

and releases under the Fourth Amended Plan.  Post-*Purdue*, consent is required prior to imposing

a third party release.  Courts considering whether to impose third party releases look to basic

contract principles, including whether there is consideration being provided by the third party in

exchange for such releases.  *See e.g.*, *Smallhold*, 2024 WL 4296938, at *8 (applying a "contract

model" in determining whether third party releases were appropriate and noting that ordinarily,

---

[4] *See* Amended Plan at Section 1.1.131 ("Participating Party means all Parishes, all Schools, and those Other Catholic
Organizations, and other Persons and entities listed on Exhibit A attached hereto who contribute Insurance Claims to
the Trust and/or contribute funds to the DOS Entities' Cash Contribution. Neither the Reorganized Diocese nor any
Settling Insurer shall be a Participating Party.").

the offeree's silence does deem them to have consented to an agreement or arrangement) (following the reasoning in *In re Ebix, Inc.*, Bankr. N.D. Tex. No. 23-80004, Aug. 2, 2024 Hr'g Tr.); *see also In re Emerge Energy Servs. LP*, No. 19-11563 (KBO), 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019) (noting that the "Debtors must show under basic contract principles that the Court may construe silence as acceptance…"); *In re Tonawanda Coke Corp.*, 662 B.R. 220, 222 (Bankr. W.D.N.Y. 2024) (noting that post-*Purdue*, "any proposal for a non-debtor release is an ancillary offer that becomes a contract upon acceptance and consent. Not authorized by any provision of the Bankruptcy Code, any such consensual agreement would be governed instead by state law.").

25.     Under New York law, "[i]t is hornbook law that a contract which does not require performance by each party is unenforceable for lack of consideration." *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 500 (S.D.N.Y. 2022) (quoting *Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 730 F. Supp. 1209, 1219 (E.D.N.Y. 1990)); *Lebedev v. Blavatnik*, 193 A.D.3d 175, 183, 142 N.Y.S.3d 511, 517 (2021) ("[G]enerally, past consideration is no consideration and cannot support an agreement because the detriment did not induce the promise.") (internal citations omitted).  Here, the Amended Disclosure Statement does not indicate whether each Participating Party, individually, is offering consideration in exchange for its release.  The Amended Disclosure Statement indicates that "[t]he Diocese anticipates that it will fund approximately half of the Catholic Family Contribution, with the remaining portion to be funded by the other Participating Parties."  *See* Amended Disclosure Statement, Article I, p. 1. Even assuming the Participating Parties collectively contribute $50,000,000, it remains undisclosed how much and whether each Participating Party will contribute, and therefore whether they are contributing any consideration to this case warranting the valuable releases and

exculpations.

26.     Moreover, the Participating Parties are not debtors and their Insurance Policies are not property of the Estate.  Given these factors, the consideration by a Participating Party should be subject to heightened scrutiny.  As noted by the Supreme Court in *Purdue*, "the Sacklers have *not filed for bankruptcy* or *placed all their assets on the table* for distribution to creditors, *yet they seek what essentially amounts to a discharge*."  *See Purdue*, 144 S. Ct. at 2074.  Similarly, here, the Participating Parties seek to avail themselves of the benefits of bankruptcy, but have not themselves filed bankruptcy nor have they placed all their assets on the table – yet, they seek a discharge.  Therefore, to ensure the releases and exculpations are appropriate and comply with the Bankruptcy Code and New York contract law, more detail on the consideration being provided by each Participating Party must be provided.

27.     Second, the Amended Disclosure Statement fails to adequately describe the mechanics of how, when and why the Trust will exercise any right to pursue Non-Settling Insurers as set forth in Section 4.6.2 of the Fourth Amended Plan.  Under Section 4.6.2, the Trustee retains the right to pursue recovery from Non-Settling Insurers for the extra-contractual causes of action of Distribution Claimants.  A Distribution Claimant is slated to receive "**in full and final satisfaction and discharge of their Abuse Claim**, Distributions from the Trust in the amount determined as a result of the Abuse Claims Review's assessment of the Abuse Claimant's Abuse Claim pursuant to the Allocation Protocol."  *See* Amended Disclosure Statement at Section 4.3.1(a) (emphasis added).  Since the Distribution Claimant's recovery, based on points awarded at the *sole discretion* of the Abuse Claims Review, is in full and final satisfaction and discharge of the Distribution Claimant's Abuse Claim, the Amended Disclosure Statement should provide additional detail on (i) the purpose for which the Trust intends to retain the right to pursue Non-

Settling Insurers for extra-contractual causes of action and (ii) what will happen to any funds recovered by the Trust based on such a cause of action.

28.     Third, various provisions of the Fourth Amended Plan and Amended Disclosure Statement lack clarity on how Non-Settling Insurers' rights and defenses are affected and/or otherwise limited.  At best, these provisions require more disclosure, at worst, they render the Fourth Amended Plan unconfirmable.  For instance, Section 6.1 of the Fourth Amended Plan provides:

> If an Abuse Claim is liquidated through the Allocation Protocol or in any state or federal court as may be permitted by the Plan, the Allocation Protocol, or the Trust Agreement, then the Protected Parties, the Trust, and each Non-Settling Insurer shall retain the right to assert any and all rights and defenses of the Protected Parties with respect to such Abuse Claim and, *except as set forth in this Section*, all coverage defenses.

*See* Fourth Amended Plan Section 6.1 (emphasis added).  This passage suggests that the Fourth Amended Plan alters the Non-Settling Insurers' rights and defenses as expressed in the Insurance Policies.  Section 8.8.3 of the Fourth Amended Plan does the same as it limits the Non-Settling Insurers' remedies for any failure by the Diocese, the Reorganized Diocese, or any Participating Party to satisfy any Post-Effective Date Preconditions to Coverage to asserting any defenses to providing insurance coverage under the relevant insurance policy.  It goes on to strip Non-Settling Insurers of any right to seek affirmative relief.

29.     "The filing of a bankruptcy petition does not alter the scope or terms of a debtor's insurance policy." *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 194 (Bankr. S.D.N.Y. 2012).  If the Plan Proponents are intending to alter the Non-Settling Insurers Policies, then the Amended Disclosure Statement must provide a clear explanation of how and on what basis such policies are being altered, and on what may happen if this Court declines to alter Non-Settling Insurer rights

11

in this way or if the Fourth Amended Plan were overturned on appeal. Absent a more clear explanation, the Amended Disclosure Statement is inadequate and should not be approved.

30.     The Fourth Amended Plan is unconfirmable for the reasons set forth above, and as such, the Amended Disclosure Statement should not be approved at this stage.

## **RESERVATION OF RIGHTS**

31.     Travelers reserves its rights to supplement this Objection and participate in the hearing to consider the Amended Disclosure Statement.

## IV.     **CONCLUSION**

WHEREFORE, for the reasons set forth above, the Court should deny approval of the Amended Disclosure Statement.

Dated: October 18, 2024
New York, New York                                  Respectfully submitted,


                                                     By: */s/ Lauren Macksoud*
                                                     Lauren Macksoud
                                                     **DENTONS US LLP**
                                                     1221 Avenue of the Americas
                                                     New York, New York 10020
                                                     Telephone: (212) 768-5347
                                                     Facsimile:  (212) 768-6800
                                                     E-mail: lauren.macksoud@dentons.com

                                                     *Attorney for Travelers Insurance Company*
                                                     *Limited, Travelers Casualty and Surety*
                                                     *Company and Traveler's Indemnity*
                                                     *Company*