UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 20-30663 |
| The Roman Catholic Diocese of Syracuse, New York, | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## PLAN PROPONENTS' JOINT OMNIBUS REPLY TO OBJECTIONS TO DISCLOSURE STATEMENT IN SUPPORT OF FOURTH AMENDED JOINT PLAN OF REORGANIZATION

The Roman Catholic Diocese of Syracuse, New York (the "Diocese") and the Official

Committee of Unsecured Creditors of The Roman Catholic Diocese of Syracuse, New York (the

"Committee" and together with the Diocese, the "Plan Proponents"), hereby file this joint

omnibus reply (the "Reply") to the objections to the *Disclosure Statement in Support of Fourth*

*Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of New York*

*Dated September 13, 2024* (together with all schedules and exhibits thereto, and as may be

modified, amended, or supplemented from time to time, the "Disclosure Statement") [Docket

No. 2173], including:

    i.   *London Market Insurers' Opposition to the Motion for Entry of an Order (I) Approving Disclosure Statement; (II) Approving Solicitation Packages and Distribution Procedures; (III) Approving the Forms of Ballots and Establishing Procedures for Voting on Fourth Amended Joint Plan and Consenting to Third Party Releases; (IV) Approving the Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Fourth Amended Joint Plan; and (VI) Granting Related Relief* [Docket No. 2258] (the "LMI Objection");[1]

---

[1] "LMI" has the meaning given to it in the LMI Objection. Although LMI filed the LMI Objection, it is also a signatory to the Certain Insurers' Objection.

ii.     *The Certain Insurers' Opposition to Disclosure Statement in Support of Fourth Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 2260] (the "<u>Certain Insurers' Objection</u>");[2]

iii.    *Omnibus Objection of the United States Trustee to Debtor's Motion for Entry of an Order (I) Approving Disclosure Statement; (II) Approving Solicitation Packages and Distribution Procedures; (III) Approving the Forms of Ballots and Establishing Procedures for Voting on Fourth Amended Joint Plan and Consenting to Third Party Releases; (IV) Approving the Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Fourth Amended Joint Plan; and (VI) Granting Related Relief* [Docket No. 2261] (the "<u>UST Objection</u>");

iv.     *The National Catholic Risk Retention Group, Inc.'s (I)Limited Objection to the Approval of Fourth Amended Disclosure Statement and (II) Joinder in Certain Insurers' Objections to Approval of the Fourth Amended Disclosure Statement* [Docket No. 2263] (the "<u>TNCRRG Objection</u>");[3]

v.      *Travelers Insurance Company Limited, Travelers Casualty and Surety Company, and Traveler's Indemnity Company's Objection to Disclosure Statement in Support of Fourth Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 2265] (the "<u>Travelers' Objection</u>");[4]

and respectfully submit as follows:

## <u>BACKGROUND</u>

1.      The Diocese filed the initial *Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York Dated December 6, 2023* (the "<u>First Disclosure Statement</u>") [Docket No. 1566] and a *Motion for Entry of an Order (i) Approving Disclosure Statement; (ii) Approving Solicitation Packages and*

---

[2] The Certain Insurers' Objection is signed by Interstate Fire and Casualty Company and Fireman's Fund Insurance Company ("<u>Interstate</u>"), LMI, and Hartford Fire Insurance Company ("<u>Hartford</u>").

[3] "<u>TNCRRG</u>" has the meaning given to it in the TNCRRG Objection. The TNCRRG Objection indicates it is a "joinder" to the LMI Objection and the Certain Insurers' Objection and is thus addressed herein in connection with the Plan Proponents' responses to the LMI Objection and the Certain Insurers' Objection.

[4] "<u>Travelers</u>" has the meaning given to it in the Travelers' Objection.

18613060.v5-10/25/24

*Distribution Procedures; (iii) Approving the Forms of Ballots and Establishing Procedures for Voting on Joint Plan; (iv) Approving the Form, Manner, and Scope of Confirmation Notices; (v) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Joint Amended Plan; and (vi) Granting Related Relief* (the "Initial Solicitation Procedures Motion") [Docket No. 1626]. The Insurers and the United States Trustee filed certain initial objections to the First Disclosure Statement and Initial Solicitation Procedures Motion (the "First Disclosure Statement Objections") [Docket Nos. 1636, 1637, 1639, 1640 and 1641].

2.      The Plan Proponents each filed separate responses to the First Disclosure Statement Objections. The Diocese filed its *Omnibus Reply of The Roman Catholic Diocese of Syracuse, New York to Disclosure Statement and Solicitation Objections of: (i) The Office of the United States Trustee; (ii) London Market Insurers; (iii) Travelers Insurance Company Limited, Travelers Casualty and Surety Company, and Traveler's Indemnity Company; (iv) the Interstate Insurers; and (v) the Parish Insurers* (the "First Diocese Reply") [Docket No. 1645]. The Committee filed its *Omnibus Reply in Support of Motion for Entry of an Order (i) Approving Disclosure Statement; (ii) Approving Solicitation Packages and Distribution Procedures; (iii) Approving the Forms of Ballots and Establishing Procedures for Voting on Joint Plan; (iv) Approving the Form, Manner, and Scope of Confirmation Notices; (v) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Joint Amended Plan; and (vi) Granting Related Relief* (the "First Committee Reply") [Docket No. 1646]. With respect to objections to the Disclosure Statement based on Fourth Amended Plan or Disclosure Statement provisions that were not altered after the Disclosure Statement Approval Order (defined herein) was entered, the Diocese and Committee respectively

18613060.v5-10/25/24

incorporate by reference and repeat applicable responses set forth in the First Diocese Reply and First Committee Reply as if such responses were restated herein.

3.      The Court held a hearing on February 6, 2024 to consider the First Disclosure Statement, Initial Solicitation Procedures Motion, the First Disclosure Statement Objections, the First Diocese Reply and the First Committee Reply (the "First Disclosure Statement Hearing"). On February 8, 2024, this Court entered an *Order Denying Approval of the Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York Dated December 6, 2023* (the "Disclosure Statement Denial Order") [Docket No. 1664].

4.      After the First Disclosure Statement Hearing and the entry of the Disclosure Statement Denial Order, the Plan Proponents worked closely to revise their jointly proposed plan and the accompanying disclosure statement to address the concerns raised by the Court and other parties at the Initial Disclosure Statement Hearing and in the Disclosure Statement Denial Order.

5.      Subsequently, on March 5, 2024, the Diocese filed the *Disclosure Statement in Support of Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York Dated March 5, 2024* (the "Second Disclosure Statement") [Docket No. 1719]. The Insurers, the United States Trustee, and the Sisters of St. Francis of the Neumann Communities filed objections to the Second Disclosure Statement on March 22, 2024 (the "Second Disclosure Statement Objections") [Docket Nos. 1751, 1752, 1753, 1759, 1760, 1761, 1770].

6.      The Plan Proponents filed their *Joint Omnibus Reply of the Roman Catholic Diocese of Syracuse, New York and The Official Committee of Unsecured Creditors of the Roman Catholic Diocese of Syracuse, New York to Disclosure Statement Objections* (the "Plan

18613060.v5-10/25/24

Proponents' Reply to Second Disclosure Statement Objections") [Docket No. 1773] on March

29, 2024. With respect to objections to the Disclosure Statement based on Fourth Amended Plan

or Disclosure Statement provisions that were not altered after the Disclosure Statement Approval

Order (defined herein) was entered, the Plan Proponents hereby incorporate by reference and

repeat each of the responses set forth in the Plan Proponents' Reply to Second Disclosure

Statement Objections as if such responses were restated herein.

7.      The Court held a hearing on April 2, 2024 to consider the Second Disclosure

Statement, the Second Disclosure Statement Objections, and the Plan Proponents' Reply to

Second Disclosure Statement Objections (the "Second Disclosure Statement Hearing").

Following the hearing, the Court issued a text order at Docket No. 1781 directing, among other

things, the Plan Proponents to file a revised disclosure statement by April 5, 2024, the Insurers to

propose any counter-insurance neutrality language by April 8, 2024 at 12:00 p.m., and scheduled

a hearing to consider the revised disclosure statement on April 11, 2024.

8.      The Diocese filed the *Disclosure Statement in Support of Second Amended Joint

Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York

Dated April 5, 2024* (the "Third Disclosure Statement") [Docket No. 1788]. Interstate and LMI

filed a formal objection to the Third Disclosure Statement at Docket No. 1793. Interstate also

filed a letter raising objections to the Third Disclosure Statement at Docket No. 1794.

9.      The Court held a hearing on April 11, 2024 to address the Third Disclosure

Statement and Interstate and LMI's filings (the "Third Disclosure Statement Hearing"). The

hearing was adjourned to April 23, 2024 so that additional revisions discussed on the record

could be made to the plan and disclosure statement.

18613060.v5-10/25/24

10.     The Diocese filed the *Disclosure Statement in Support of Third Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York Dated April 16, 2024* (the "Fourth Disclosure Statement") [Docket No. 1818] on April 16, 2024. Interstate and LMI filed objections to the Fourth Disclosure Statement on April 19, 2024 (the "Fourth Disclosure Statement Objections") [Docket Nos. 1830 and 1831].

11.     The Court held a hearing on April 23, 2024 to address the Fourth Disclosure Statement and Interstate and LMI's objections (the "Fourth Disclosure Statement Hearing"). At the Fourth Disclosure Statement Hearing, the Court approved the Fourth Disclosure Statement. In doing so, the Court stated:

> The Court notes here there have been four disclosure statements filed in this case, and the debtor and the Committee have added a tremendous amount of information in those disclosure statements and corresponding plans to address the Court's and other party's concerns. Some of those issues may have been more appropriately dealt with at confirmation, but the Court sought to narrow the issues and streamline the process to ultimately reduce the discovery and time frames and corresponding expense from getting to confirmation.[5]

12.     On May 2, 2024 the Court entered an order approving the Initial Solicitation Procedures Motion and Disclosure Statement (the "Disclosure Statement Approval Order") [Docket No. 1859]. The Disclosure Statement Approval Order indicated that "[a]ny and all objections to [the Initial Solicitation Procedures Motion] not otherwise settled or withdrawn are hereby overruled." Disclosure Statement Approval Order at ¶ 2.

---

[5] TRANSCRIPT OF HEARING OF DOC. NO. 1566 - DISCLOSURE STATEMENT IN SUPPORT OF JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE ROMAN CATHOLIC DIOCESE OF SYRACUSE, NEW YORK; DOC. NO. 1626 - MOTION FOR ENTRY OF AN ORDER (I) APPROVING DISCLOSURE STATEMENT; (II) APPROVING SOLICITATION PACKAGES AND DISTRIBUTION PROCEDURES; (III) APPROVING THE FORMS OF BALLOTS AND ESTABLISHING PROCEDURES FOR VOTING ON JOINT PLAN; (IV) APPROVING THE FORM, MANNER AND SCOPE OF CONFIRMATION NOTICES; (V) ESTABLISHING CERTAIN DEADLINES IN CONNECTION WITH APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE JOINT AMENDED PLAN; AND (VI) GRANTING RELATED RELIEF; DOC. NO. 1762 - SECTION 105(A) CONFERENCE DOC. NO. 1812 - SECTION 105(A) CONFERENCE, attached hereto as **Exhibit B**, at 54:3-11.

18613060.v5-10/25/24

13.     On May 10, 2024, the Diocese served the Disclosure Statement Approval Order, the Fourth Disclosure Statement, and the *Third Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* (the "Third Amended Plan") [Docket No. 1859] in accordance with the Disclosure Statement Approval Order. *See* Docket. No. 1883.

14.     Following the Supreme Court's decision in *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S__, 144 S. Ct. 1414 (2024) ("*Kaiser Gypsum*"), the Court invited the Plan Proponents, the Insurers, and others to submit briefing on the impact of *Kaiser Gypsum* on the Insurers' standing to involve themselves in confirmation proceedings. On July 12, 2024, the Diocese filed *The Roman Catholic Diocese of Syracuse, New York's Memorandum of Law Regarding Non-Settling Insurer Participation in Plan Confirmation Proceedings* ("Diocese's Standing Brief") [Docket No. 2077], and the Committee filed its *Brief on the Impact of Kaiser Gypsum on Insurers' Standing to Seek Discovery and Object to the Joint Plan Filed by the Official Committee of Unsecured Creditors* ("Committee's Standing Brief") [Docket No. 2068]. The Plan Proponents hereby incorporate by reference and repeat each of the responses set forth in the Diocese's Standing Brief and Committee's Standing Brief as if such responses were restated herein. The Court subsequently heard argument on the *Kaiser Gypsum* filings on October 18, 2024. The Plan Proponents also incorporate by reference their arguments made during the *Kaiser Gyspum* hearing on October 18, 2024 as if such arguments were made herein.

15.     Although voting survivor creditors indicated near-unanimous support for the Third Amended Plan, the Plan Proponents indicated, via letter dated July 24, 2024 [Docket No. 2111], that they would be revising the Third Amended Plan to address the impacts of the

Supreme Court's decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. ___, 144 S.Ct. 2071 (2024) (5-4 decision) (Kavanaugh, J., dissenting) (the "Purdue Decision" or "*Purdue*").

16.    On September 16, 2024, the Diocese filed the (i) *Fourth Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York* (the "Fourth Amended Plan")[6] [Docket No. 2172]; (ii) the Disclosure Statement; and (iii) the *Motion for Entry of an Order (i) Approving Disclosure Statement; (ii) Approving Solicitation Packages and Distribution Procedures; (iii) Approving the Forms of Ballots and Establishing Procedures for Voting on the Fourth Amended Joint Plan and Consenting to Third Party Releases; (iv) Approving the Form, Manner, and Scope of Confirmation Notices; (v) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Fourth Amended Joint Plan; and (vi) Granting Related Relief* (the "Solicitation Procedures Motion") [Docket No. 2178].

## PLAN PROPONENTS' REPLY

17.    The Disclosure Statement contains adequate information and meets the criteria for approval pursuant to section 1125 of the Bankruptcy Code. Case law provides that the determination of what information is "adequate" depends on the facts and circumstances of each case. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988); *Cadle Co. v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("what constitutes 'adequate information' is subjective [and]…largely within the discretion of the bankruptcy court").

18.    The pending Disclosure Statement, updated solely to reflect revisions to the Fourth Amended Plan made as a result of the Purdue Decision, provides detailed information

---

[6] Terms undefined herein have the meanings given to them in the Fourth Amended Plan unless otherwise indicated.

18613060.v5-10/25/24

that more than meets the requirement that it be "reasonably practicable" to permit an "informed judgment" by creditors and interest holders as to whether to accept or reject a plan of reorganization. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994).

19.    To help distill the issues raised by the Insurers[7] and the United States Trustee, this Reply focuses solely on objections to the Disclosure Statement that do not relate to what constitutes "consent" for third-party releases post-*Purdue*.[8] Those non-consent objections, covered in this Reply, are addressed in turn below, and are summarized for the Court's convenience in **Exhibit A**, which is attached hereto.

## I.    <u>Disclosure Statement Objections Previously Overruled Should Be Overruled Again.</u>

20.    The LMI Objection, UST Objection, and Travelers Objection each include objections to the Disclosure Statement that the Court previously considered and overruled in issuing the Disclosure Statement Approval Order. Specifically, as detailed in the following table, LMI, the United States Trustee, and Travelers, reargue objections to Disclosure Statement and Fourth Amended Plan provisions that were not materially altered in the Fourth Amended Plan.

| Objection Location | Summary of Objection | Citation to Prior Objection[9] |
|---|---|---|
| LMI Objection at p. 17-20; Travelers' Objection at ¶¶ 6, 28-29. | The Plan is patently unconfirmable because it purports to rewrite the Debtor's obligations under the Insurers' policies. | Docket No. 1639 at ¶¶ 42-44; Docket No. 1759 at p. 6-8. |
| LMI Objection at p. 22-23. | The Plan is patently unconfirmable because the Trustee owes a fiduciary duty to Abuse Claimants but must also pay for the Debtor's and Participating Parties' defense of the abuse claims. | Docket No. 1637 at p. 16-18, 20-21; Docket No. 1759 at p. 8-9. |

---

[7] LMI, Interstate, Travelers, Hartford, and TNCRRG are referred to in this Reply as the "Insurers".

[8] The *Memorandum of Law in Support of Plan Proponents' Joint Omnibus Reply to Objections to Disclosure Statement in Support of Fourth Amended Plan of Reorganization* (the "<u>Purdue MOL</u>"), filed contemporaneously herewith, contains the Plan Proponents' reply to objections related to "consent" for third-party releases post-*Purdue*.

[9] The Insurers, and LMI in particular, have lodged these objections consistently throughout the plan confirmation process. The Plan Proponents have endeavored to identify each instance in which a specific objection has been lodged, but this list may be incomplete.

| LMI Objection at p. 23-24. | The Plan is patently unconfirmable because it requires the Court to approve the transfer of non-debtor property. | Docket No. 1637 p. 18-19; Docket No. 1759 at p. 9-10. |
|---|---|---|
| LMI Objection at p. 25-26. | The Plan is patently unconfirmable because it purports to assign the LMI policies to the Trust without assuming them, and without providing adequate assurance of future performance. | Docket No. 1637 p. 21-24; Docket No. 1759 at p. 15. |
| LMI Objection at p. 26. | The Plan is patently unconfirmable because it improperly delegates allowance of the Abuse Claims. | Docket No. 1639 at ¶¶ 45-51; Docket No. 1640 ¶¶ 3, 15. |
| LMI Objection at p. 27-28. | The Insurance Claims Assignment is confusing and ambiguous. | Docket No. 1637 p. 24-26; Docket No. 1759 at p. 13-14. |
| LMI Objection at p. 30. | The Disclosure Statement fails to alert creditors that the failure to satisfy the conditions precedent to coverage, set forth in the LMI policies, would void coverage. | Docket No. 1637 at p. 21; Docket No. 1759 at p. 10-11. |
| LMI Objection at p. 30-31. | The Disclosure Statement fails to alert creditors that the plan proposes to pay objectionable claims. | Docket No. 1639 at ¶¶ 45-51; Docket No. 1640 ¶¶ 3, 15. |
| LMI Objection at p. 31-32. | The Disclosure Statement fails to alert creditors that there is a risk that the Insurance Claims Assignment violates the LMI policies, which would void coverage. | Docket No. 1637 at p. 21; Docket No. 1759 at p. 10-11. |
| LMI Objection at p. 32-33. | The Disclosure Statement fails to disclose that the LMI policies are executory contracts that must be assumed, and that adequate assurance of future performance must be provided by any assignee before any interest thereunder could be assigned. | Docket No. 1637 p. 21-24; Docket No. 1759 at p. 15. |
| LMI Objection at p. 33. | The Disclosure Statement is inadequate because it does not state who will satisfy the conditions precedent under the LMI policies. | Docket No. 1637 at p. 21; Docket No. 1759 at p. 10-11. |
| Travelers' Objection at ¶¶ 5, 27. | The Amended Disclosure Statement does not address how a Distribution Claim will be tendered to the Non-Settling Insurers for indemnity, provide information regarding the purpose for which the Trust will be able to pursue Non-Settling Insurers for extra-contractual causes of action, and what will happen to any fund the Trust recoveries on such cause of action. | Docket No. 1753 at ¶ 26; Docket No. 1759 at p. 12-13; Docket No. 1760 at ¶¶ 3,13. |
| UST Objection at p. 39-41; Certain Insurers Objection at ¶¶ 55-59. | The Fourth Amended Plan's exculpation provision is too broad.[10] | Docket No. 1636 at p. 20-24; Docket No. 1751 at ¶ 4. |
| UST Objection at p. 41-43. | The Fourth Amended Plan improperly addresses the Debtor or Reorganized Debtor's obligation to pay quarterly fees. | Docket No. 1636 at p. 27-28; Docket No. 1751 at ¶ 6. |

---

[10] The Plan Proponents explain how *Purdue* does not impact the Court's previous order overruling this objection in Section III (C) of this Reply.

18613060.v5-10/25/24

21.     Neither LMI, the UST, nor Travelers indicate why the Court should reconsider its prior order overruling these objections. *See* Disclosure Statement Approval Order at ¶ 2.

22.     The Plan Proponents respectfully submit that these objections should not be reargued and should instead be overruled for a second time. *See Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) ("When a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages of the same case."); *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (stating that when a court had decided an issue, that decision should be adhered to unless compelling reasons require otherwise); *In re Grossinger's Assocs.*, 184 B.R. 429, 434 (Bankr. S.D.N.Y. 1995) (citations omitted) ("The [law of the case] doctrine applies to all issues decided expressly or by necessary implication."); *In re Schweiger*, 587 B.R. 469, 474 (Bankr. D. Md. 2018) (citing *Liona Corp. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 592 (2d Cir. 1991)) (the purpose of the law of the case doctrine is to provide judicial efficiency and consistency; "without it a court would be asked to continuously reconsider legal conclusions it had already made at every step of litigation.").

## II.     **Plan Proponents' Reply to LMI's New Objections.**

### A.     **The Fourth Amended Plan Does Not Require the Court to Adjudicate or Estimate Personal Injury Tort Claims in Violation of 28 U.S.C. § 157(b)(5).**

23.     The allocation provisions set forth in Section 4.4.4 of the Fourth Amended Plan do not require this Court to adjudicate or estimate personal injury claims, as LMI alleges.  LMI Objection at p. 16. On the contrary, the allocation of liability outlined in Section 4.4.4 is a component of a settlement between the Diocese and the Participating Parties memorialized as part of the Fourth Amended Plan and does not require the Court to reach any conclusion on the value of any individual claim or litigate a personal injury action or actions in violation of 28 U.S.C. §105(b)(5).    Moreover, the Fourth Amended Plan merely establishes a rebuttable

presumption on liability allocation.  Non-Consenting Abuse Claimants who disagree can object

and overcome this presumption by establishing by a preponderance of the evidence that a

different allocation should apply.

24.     Furthermore, LMI objects to the allocation provisions set forth in the Fourth

Amended Plan purely on the basis that such provisions may negatively impact the Abuse

Claimants, by alleging that, among other things, "[t]he Allocation of Liability also infringes on

the Non-Participating Abuse Claimants' Jury Trial Rights."  LMI Objection at p. 16. LMI cannot

use Non-Participating Abuse Claimants' rights as the basis for its objection because LMI does

not have standing to object to the allocation provisions in Section 4.4.4 of the Fourth Amended

Plan on behalf of another party. LMI's objection should be overruled on that basis alone. *See

generally*, Diocese's Standing Brief and Committee's Standing Brief.

**B.      The Fourth Amended Plan Does Not Improperly Classify Abuse Claimants.**

25.     LMI also contends that the Fourth Amended Plan is patently unconfirmable

because it improperly classifies Consenting Abuse Claimants and Non-Participating Abuse

Claimants, each a Class 5 Claimant.[11] LMI argues that Non-Participating Abuse Claimants are

treated differently from Consenting Abuse Claimants because they will be compensated from

different asset sources, and that Non-Participating Abuse Claimants thus do not have the same

opportunity for recovery.[12]

26.     LMI does not have standing to lodge a classification objection on behalf of Class

5 Claimants, and its objection should be overruled on that basis alone. *See generally*, Diocese's

Standing Brief and Committee's Standing Brief.

---

[11] LMI Objection at p. 20-21.

[12] *Id.*

18613060.v5-10/25/24

27.     Irrespective of LMI's lack of standing to raise this objection, the Fourth Amended

Plan properly classifies Consenting Abuse Claimants and Non-Participating Abuse Claimants in

Class 5. Bankruptcy Code § 1123(a)(4) requires that a plan "provide the same treatment for each

claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a

less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4).

28.     "Plan proponents have substantial flexibility in classifying claims, *In re Drexel

Burnham Lambert Group, Inc.,* 138 B.R. 723, 757 (Bankr. S.D.N.Y.1992), and 'classification is

constrained by two straight-forward rules: Dissimilar claims may not be classified together;

similar claims may be classified separately only for a legitimate reason.'" *In re Quigley Co. Inc.*,

377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007) (citing *In re Chateaugay Corp.,* 89 F.3d 942, 949 (2d

Cir. 1996)). "Claims are similar if they have 'substantially similar right *to the debtor's assets.*'"

*Id.* (citing *In re Drexel*, 138 B.R. at 757) (emphasis in original). "The fact that some members of

the class may also look to third parties for payment, while others in the class do not have the

same right, does not mandate separate classification." *Id.*

29.     The Fourth Amended Plan's classification of Class 5 Claims complies with 11

U.S.C. § 1123(a)(4) and prevailing authority. The Fourth Amended Plan classifies all Abuse

Claims as Class 5 Claims[13] and provides each Class 5 Claimant with the same *option* to be a

Consenting Abuse Claimant or a Non-Participating Abuse Claimant. Class 5 Claimants are thus

provided with an "equal opportunity to recover on their claims" regardless of the election they

choose. *See In re W.R. Grace & Co.*, 729 F.3d 311, 327-28 (3d Cir. 2013) (citing *In re Joint E. &

S. Dist. Asbestos Litig.,* 982 F.2d 721, 749 (2d Cir.1992), *opinion modified on rehearing, 993*

---

[13] Fourth Amended Plan at § 2.3.5.

F.2d 7 (2d Cir.1993)) ("Without question, the 'same treatment' standard of section 1123(a)(4) does not require that all claimants within a class receive the same amount of money.")

30.     LMI's objection ignores the Fourth Amended Plan's express language and should be overruled.

### C.     The Committee May Act as Attorney in Fact for Consenting Abuse Claimants.

31.     LMI does not have standing to raise this objection. *See generally*, Diocese's Standing Brief and Committee's Standing Brief. LMI also clearly misunderstands the provisions of the Fourth Amended Plan relating to the Committee's authority to act as attorney in fact for Consenting Abuse Claimants on the narrow issue of post-solicitation plan modifications.  *See* LMI Objection at p. 21-22. The Fourth Amended Plan does not seek to appoint the Committee to serve the Consenting Abuse Claimants in any separate capacity or provide counsel to any subset of creditors as its attorneys-at-law.[14]

32.     On the contrary, Section 2.3.5(h) of the Fourth Amended Plan provides that the Consenting Abuse Claimants appoint the Committee, which already serves as a Plan Proponent (in the interests of all Abuse Claimants in this Chapter 11 Case) and advocate in the interest of all creditors to achieve the confirmation of the Fourth Amended Plan, the ability to negotiate a resolution to allow for the confirmation of the Fourth Amended Plan if conditions precedent to the Effective Date set forth in Sections 11.1.2 through 11.1.14 cannot be satisfied. The ability of the Committee to serve in this role, and to make necessary modifications to the Fourth Amended Plan, is an effort to avoid the administrative cost and time that a further resolicitation would entail. Even if supported by the Committee as Plan Proponent on behalf of the Consenting Abuse

---

[14] *See* § 102:22. Attorneys-in-fact and attorneys-at-law, 4D N.Y.Prac., Com. Litig. in New York State Courts § 102:22 (5th ed.) (comparing an attorney-in-fact with an attorney-at-law).

18613060.v5-10/25/24

Claimants, any modifications to the Fourth Amended Plan would necessarily be presented to and approved by this Court.

> **D.    The Disclosure Statement Provides Adequate Information Regarding the Possibility of an Appeal.**

33.    LMI complains that "nowhere in the Disclosure Statement does the Debtor warn creditors there is a risk the [Fourth Amended Plan] will be overturned on appeal because it is patently unconfirmable" and proposes language for inclusion in the Disclosure Statement regarding the possibility of appeals.[15]

34.    The Plan Proponents believe LMI's proposal is a scare tactic designed to dissuade survivors from voting in favor of the Plan and do not believe such language needs to be included in the Disclosure Statement for purposes of its approval. The Plan Proponents, however, are willing to add the following "appeal" section to the Article XVIII – Risk Factors to Be Considered:

> L.    <u>The Plan May Be Appealed</u>
>
> Certain Non-Settling Insurers may appeal any order confirming the Plan on the basis that the Plan impermissibly alters their contractual rights, duties and obligations under their Insurance Policies, or otherwise fails to conform to applicable law. The Plan Proponents do not believe that an appeal of an order confirming the Plan would be successful.

**III.    <u>Plan Proponents' Reply to the Certain Insurers' Objection</u>.**

> **A.    The Fourth Amended Plan's Channeling Injunction and Release Provisions Do Not Violate *Purdue*.**

35.    The Insurers contend that the Fourth Amended Plan is patently unconfirmable because it releases and enjoins claims the Insurers hold against non-Debtors in violation of

---

[15] LMI Objection at p. 29.

18613060.v5-10/25/24

*Purdue*.[16] Specifically, the Insurers suggest that the Fourth Amended Plan enjoins them from asserting Inbound Contribution Claims and Insurer Contribution Claims they hold against the Participating Parties[17] and Channeled Claims they hold against the Protected Parties.[18] The Insurers also suggest that the Fourth Amended Plan requires them to release Protected Parties, including the Participating Parties and the Reorganized Diocese, from all Channeled Claims the Insurers hold, including Insurer Contribution Claims and Inbound Contribution Claims.[19]

36.      The Insurers' *Purdue*-based objections are based on the flawed assumption that the Insurers hold claims against non-Debtors that are being enjoined or released under the Fourth Amended Plan in the first place. Tellingly, the Insurers, while baldly claiming to hold Insurer Contribution Claims and Inbound Contribution Claims,[20] do not articulate why they hold such claims or how they would actually be impacted by the Fourth Amended Plan's treatment of such claims.[21]

37.      To the extent the Insurers contend that they hold or may hold Insurer Contribution Claims and/or Inbound Contribution Claims that could be asserted against other insureds under their policies, like the Diocese or Participating Parties, the Insurers have no such claims in the first place. Substantive insurance law precludes insurers from seeking to recover from their insureds.

---

[16] Certain Insurers' Objection at ¶¶ 29-50. The LMI Objection and Travelers' Objection separately raise the same objection. LMI Objection at p. 15; Travelers' Objection at ¶¶ 23-24. The Plan Proponents' reply to each of these objections in contained in Section II.A of this Reply.

[17] *Id.* at ¶¶ 34, 39.

[18] *Id.* at ¶ 37.

[19] *Id.* at ¶¶ 45-49.

[20] *Id.* at ¶ 48.

[21] *See generally, id.*

18613060.v5-10/25/24

38.     The Insurers contend that the Plan effectively terminates their Contribution Claims against the non-debtor Participating Parties.[22] The non-debtor Participating Parties include parishes, schools, and other entities associated with the Debtor, which are insureds under the Insurance Policies. In effect, the Insurers contend that, if they pay a claim on behalf of one insured, they may have the right to recoup their losses from another insured. This contention is inconsistent with applicable state law. Like most jurisdictions, New York recognizes the "anti-subrogation" rule.  The anti-subrogation rule provides that an insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered. *N. Star Reinsurance Corp. v. Cont'l Ins. Co.*, 82 N.Y.2d 281, 294 (1993) (applying anti-subrogation rule to prevent insurers from seeking common law indemnification from contractor). "In other words, an insurer may not step into the shoes of its insured to sue a third-party tortfeasor—if that third party also qualifies as an insured under the same policy—for damages arising from the same risk covered by the policy." *ELRAC, Inc. v. Ward,* 96 N.Y.2d 58, 76 (2001) (finding policy behind anti-subrogation rule barred rental company from asserting claims for indemnification against renters). In *North Star Reinsurance*, the New York Court of Appeals clarified that the party against whom recoupment is sought need not be insured under the same policy that paid the loss. 82 N.Y.2d at 294 ("application of [anti-subrogation rule] is warranted because the two policies are integrally related and indistinguishable from a single policy in any relevant way").

39.     The Insurers' policies provide coverage for the Diocese, parishes, schools and/or other affiliated entities for costs and liabilities arising out of bodily injury. LMI's and Interstate's policies have broad named insured provisions that provide coverage on a Diocese-wide basis.

---

[22] *Id.* at ¶ 34.

Hartford's policies may cover a parish and/or the Diocese. Whether an insurance policy covers the entire Diocese or a single parish, all the policies are intended to cover the constituent members of the Diocese for costs and liabilities arising from bodily injury. The insurance policies are thus integrally related and indistinguishable in any meaningful way. The anti-subrogation rule thus deprives the Insurers of any right of contribution against their insureds. Certain Insurers may not assert Contribution Claims against their own insureds.

40.     Moreover, the Fourth Amended Plan does not extinguish or reduce the Non-Settling Insurers' Insurer Contribution Claims and/or Inbound Contribution Claims. The Plan instead specifically addresses a hypothetical scenario in which a Non-Settling Insurer would actually have to litigate their apportionment of liability for the underlying Class 5 Claim. To the extent the Insurers hold (or may in the future hold) any other Insurer Contribution Claims or Inbound Contribution Claims (other than the supposed claims against Protected Parties), such claims are not being wholly released under the Fourth Amended Plan. Instead, such claims are being channeled to the Trust, so that they may be asserted by the Insurers against the Trust in any post-confirmation coverage litigation between the Trust and a Non-Settling Insurer. *See* Fourth Amended Plan at § 12.5.1.  The Certain Insurers' Objection fails to acknowledge that the Fourth Amended Plan already meaningfully protects the interests at issue associated with the Insurers' various contribution claims.

41.     Similarly, even in the event Insurer Contribution Claims are not channeled to the Trust, the Fourth Amended Plan provides for the full satisfaction of such claims through the judgment reduction provision (the "Judgment Reduction Provision") contained in § 12.5.2 of the Fourth Amended Plan. Fourth Amended Plan at § 12.5.2. The Judgment Reduction Provision

provides for a reduction of any judgment or award an Alleged Insured,[23] including the Trust, obtains with respect to an Insurance Claim against a Non-Settling Insurer in the amount, if any, "that such Settling Insurer is liable to pay such Non-Settling Insurer as a result of [the Non-Settling Insurer's] Insurer Contribution Claim." Joint Plan at § 12.5.2.b. The Judgment Reduction Provision further provides that, if the Action does not include a Settling Insurer, the Alleged Insured (*i.e.,* the Trust) "shall obtain a finding from the court or arbitrator(s), as applicable, establishing the Reduction Amount ***before*** obtaining an entry of judgment against such Non-Settling Insurer." *Id.* (emphasis added). In other words, the Judgment Reduction Provision provides for the full satisfaction of any Insurer Contribution Claim or Inbound Contribution Claim a Non-Settling Insurer may hold ***as a component part*** of the determination of the relevant Insurer's liability in the first instance. In other words, a Non-Settling Insurer could never be liable for any portion of a Class 5 Claim (or any other Channeled Claim) allocated to someone other than its insured.

42.    To summarize, regardless of whether Insurer Contribution Claims and Inbound Contribution Claims are channeled to the Trust, are subject to the Judgment Reduction Provision, or are released as against the Protected Parties or Participating Parties, the Fourth Amended Plan provides that any Non-Settling Insurer holding such claims will be fully satisfied. The Fourth Amended Plan thus comports with *Purdue*, which does not hold that a plan containing nonconsensual third-party releases of claims that are fully satisfied violates the Bankruptcy Code. *See Purdue* at 2088 ("Nor do we have occasion today to express a view . . . upon a plan that provides for full satisfaction of claims against a third-party nondebtor"); *id.* at 2108-2109

---

[23] "Alleged Insured" is defined in the Fourth Amended Plan as "the Diocese, a Participating Party, or the Trust . . .." Fourth Amended Plan at ¶ 12.5.2.b

(§ 1123(b)(6) authorizes nonconsensual releases of claims against third-party non-debtors that are fully satisfied by a plan of reorganization).

**B.      Section 8.3.3 of the Fourth Amended Plan Does Not Violate the Purdue Decision.**

43.      The Insurers also allege that Section 8.3.3 of the Fourth Amended Plan violates the *Purdue* Decision. This is also untrue. Section 8.3.3 of the Fourth Amended Plan does not act as a release of any claims held by the Non-Settling Insurers, with the exception of claims that arise from the conduct of the parties in the chapter 11 proceeding.  Section 8.8.3 provides that nothing in the Plan or acts or omissions of the Plan Proponents in the Chapter 11 Case shall serve as the basis for Non-Settling Insurers to be granted affirmative relief. Such provisions are squarely within the jurisdiction of this Court.  Pursuant to section 1334(b) of title 28 of the United States Code, bankruptcy jurisdiction includes "all civil proceedings arising under title 11, or arising in or related to cases under title 11."

44.      Additionally, Non-Settling Insurers requested modifications to prior versions of the Fourth Amended Plan to explicitly retain the ability to raise any and all issues they seek to raise in the context of coverage litigation, and the Plan Proponents incorporated those modifications in Section 8.8.2 of the Fourth Amended Plan.  Section 8.8.3 of the Plan provides only that Non-Settling Insurer actions against the Diocese and the Participating Parties for failure to satisfy Post-Effective Date Preconditions to Coverage are limited to coverage defenses under the applicable Non-Settling Insurer Policies.[24] The Insurers have not, and the Plan Proponents submit, cannot, articulate any principle under contract, insurance law or otherwise that would give rise to an insurer's right to sue its insured for money damages or seek other affirmative

---

[24] This summary of a provision of the Fourth Amended Plan is provided for convenience only; the full text of this provision is found in Section 8.8.3 of the Fourth Amended Plan.

18613060.v5-10/25/24

relief as a result of the insured's failure to satisfy requirements to coverage. The Insurers are not entitled to demand as part of the confirmation of the Fourth Amended Plan an *enhanced* set of rights under the Non-Settling Insurer Policies beyond what they could have been entitled to outside of chapter 11.[25]   To the extent the Insurers seek to preserve the right to pursue declaratory relief, and not money damages or affirmative injunctive relief (*i.e.* specific performance), the Plan Proponents would not oppose modifying language to address this issue.

## C.      The Exculpation Provision Does Not Violate the Purdue Decision.

45.      The Certain Insurers' Objection asserts that the Fourth Amended Plan is patently unconfirmable because the exculpation provision detailed in § 12.9 of the Fourth Amended Plan (the "Exculpation Provision") is impermissibly broad and exculpates the Exculpated Parties from various claims in violation of *Purdue*.[26] The United States Trustee similarly argues that the Disclosure Statement does not provide adequate information regarding the breadth of the Exculpation Provision, and thus should not be approved.[27]

46.      As an initial matter, the Certain Insurers have failed, despite their burden, to articulate or identify any claims that *they* hold that are subject to the Exculpation Provision, and thus do not have standing to raise this objection.[28]

47.      Regardless, the majority opinion in *Purdue* is silent as to the impact of its holding on exculpation provisions, which are authorized by 11 U.S.C. §§ 1103(c), 1125(b) and (e). To the extent there is any question on that point, the Plan Proponents revised the Exculpation Provision in the Fourth Amended Plan to comport with *Purdue*, by clarifying that Exculpated

---

[25] *Supra*, ¶¶ 36-38.

[26] Certain Insurers' Objection at ¶¶ 55-59.

[27] UST Objection at p. 39-40.

[28] *See* Diocese's Standing Brief and Committee's Standing Brief.

18613060.v5-10/25/24

Parties would not be released from claims arising from the conduct detailed in the Exculpation Provision.[29] Moreover, the Disclosure Statement contains a detailed discussion of the Exculpation Provision that explains the justification and legal standard that needs to be satisfied for its approval.[30]

48.    Objections related to the Exculpation Provision were previously raised by the United States Trustee pre-*Purdue*,[31] addressed by the Plan Proponents,[32] and overruled by the Court in its Disclosure Statement Approval Order. The Plan Proponents maintain that the Exculpation Provision complies with the Bankruptcy Code and Second Circuit authority on exculpation provisions and that the Disclosure Statement contains adequate information regarding the Exculpation Provision. The Plan Proponents submit that the Court should again overrule objections to the Disclosure Statement related to the Exculpation Provision.

## IV.    Plan Proponent's Reply to Travelers' New Objections.

49.    Travelers, in arguing that the releases of Participating Parties under the Fourth Amended Plan must be supported by consideration, suggests that that Disclosure Statement contains inadequate information regarding the consideration being provided by the Participating Parties for such releases.[33] Although Travelers acknowledges that the Disclosure Statement indicates the Participating Parties will be contributing $50,000,000 to the Trust in exchange for the releases contemplated by the Fourth Amended Joint Plan, Travelers—without authority—

---

[29] *See Notice of Filing of Redlines* [Docket No. 2174] at Ex. A, § 12.9.

[30] Disclosure Statement, Art. I.A, Art. XIII.I, and XVIII.G.

[31] *See* Docket No. 1636 at p. 20-24; Docket No. 1751 at ¶ 4.

[32] *See* First Diocese Reply at ¶¶ 31-33, First Committee Reply at p. 17, and Plan Proponents' Reply to Second Disclosure Statement Objection at ¶ 15.

[33] Travelers' Objection at ¶ 25.

18613060.v5-10/25/24

suggests that the Participating Parties' consideration "should be subjected to heightened scrutiny."[34]

50.    While Travelers may desire to place the adequacy of Participating Parties' consideration for releases at issue, applicable law does not impose that burden on the Plan Proponents. Stated differently, the consideration inquiry is binary: did the Participating Parties provide consideration or not. *See Kumpf v. New York State United Teachers*, 642 F.Supp.3d 294, 314 (N.D.N.Y. 2022) (citing *Hamer v. Sidway*, 124 N.Y. 538, 545, 27 N.E. 256 (1891)) ("[V]aluable consideration, in the sense of the law, generally consist[s] either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other.") (internal quotations omitted); *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 500 (S.D.N.Y. 2022) (Courts do not inquire into the adequacy of consideration "as long as the contract provides some consideration[,] . . . even a peppercorn.").

51.    There is no question that the Participating Parties are providing consideration for the releases under the Fourth Amended Plan. As detailed in the Disclosure Statement, the Participating Parties are collectively contributing $50,000,000 to the Trust and are each assigning their Insurance Claims and rights to recovery on their Insurance Claims to the Trust in exchange for a release from Abuse Claims held by Consenting Abuse Claims.[35] Lest this point be further muddled by Travelers or the other Insurers, the Participating Parties will not receive a release from Non-Participating Abuse Claimants, and thus the assets they are contributing to the Trust

---

[34] *Id.*

[35] Disclosure Statement, Art. I, Introduction.

will not be available to Non-Participating Abuse Claimants, and the consideration inquiry is irrelevant as between the Non-Participating Abuse Claimants and Participating Parties.[36]

52.     Furthermore, Travelers appears to be suggesting that the Plan Proponents should be held to the standard set forth under applicable case law prior to the *Purdue* Decision in which "substantial consideration" was required to effect non-consensual third party releases.  As set forth in greater detail in the accompanying *Purdue* MOL, the Plan Participants will seek confirmation of the Fourth Amended Plan with consensual third-party non-debtor releases and therefore the substantial consideration analysis previously required under *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141–43 (2d Cir. 2005) is not applicable.

53.     Travelers' objection on this issue should be overruled.

## CONCLUSION

**WHEREFORE**, the Plan Proponents respectfully request that the Court enter an order (i) approving the Disclosure Statement as containing adequate information pursuant to Bankruptcy Code section 1125; and (ii) granting such other and further relief as the Court deems just and proper.

---

[36] *See generally,* Fourth Amended Plan at § 4.4.

Dated: October 25, 2024
Syracuse, New York

BOND, SCHOENECK & KING, PLLC

By: _____/s/ Stephen A. Donato_____
Stephen A. Donato, Esq. (Bar Roll #101522)
Charles J. Sullivan, Esq. (Bar Roll #507717)
Sara C. Temes, Esq. (Bar Roll #514148)
Grayson T. Walter (Bar Roll #518237)
Justin S. Krell, Esq. (Bar Roll #704364)
One Lincoln Center
Syracuse, NY 13202-1355
Telephone: (315) 218-8000
Email: sdonato@bsk.com
       csullivan@bsk.com
       stemes@bsk.com
       gwalter@bsk.com
       jkrell@bsk.com

*Attorneys for The Roman Catholic Diocese of Syracuse, New York*

STINSON LLP

By: */s/     Robert T. Kugler_____*
Robert T. Kugler (MN #0194116)
Edwin H. Caldie (MN #0388930)
Andrew J. Glasnovich (MN #398366)
50 S 6th Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 335- 1500
Robert.Kugler@stinson.com
Ed.Caldie@stinson.com
Drew.Glasnovich@stinson.com

*Counsel to the Official Committee of Unsecured Creditors*

18613060.v5-10/25/24