EXHIBIT B

TRANSCRIPT OF HEARING DATED APRIL 23RD, 2024

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

IN RE:                          .    Case No. 20-30663-WAK
                                .
THE ROMAN CATHOLIC              .    100 S. Clinton Street
DIOCESE OF SYRACUSE,            .    Syracuse, NY 13261
NEW YORK,                       .
                                .
            Debtor.             .    April 23, 2024
. . . . . . . . . . . . . ..         1:02 p.m.


TRANSCRIPT OF HEARING OF DOC. NO. 1566 - DISCLOSURE STATEMENT
IN SUPPORT OF JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE
ROMAN CATHOLIC DIOCESE OF SYRACUSE, NEW YORK;
DOC. NO. 1626 - MOTION FOR ENTRY OF AN ORDER (I) APPROVING
DISCLOSURE STATEMENT; (II) APPROVING SOLICITATION PACKAGES AND
DISTRIBUTION PROCEDURES; (III) APPROVING THE FORMS OF BALLOTS
AND ESTABLISHING PROCEDURES FOR VOTING ON JOINT PLAN; (IV)
APPROVING THE FORM, MANNER AND SCOPE OF CONFIRMATION NOTICES;
(V) ESTABLISHING CERTAIN DEADLINES IN CONNECTION WITH APPROVAL
OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE JOINT
AMENDED PLAN; AND (VI) GRANTING RELATED RELIEF;
DOC. NO. 1762 - SECTION 105(A) CONFERENCE
DOC. NO. 1812 - SECTION 105(A) CONFERENCE

BEFORE HONORABLE WENDY A. KINSELLA
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:            Bond Schoeneck & King, PLLC
                           By:  STEPHEN A. DONATO, ESQ.
                                GRAYSON WALTER, ESQ.
                                SARA TEMES, ESQ.
                                CHARLES J. SULLIVAN, ESQ.
                           One Lincoln Center
                           Syracuse, NY 13202

Audio Operator:            Colleen Johnson

Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:   jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 3 of 87

2

```
APPEARANCES (Cont'd):

For the Official         Stinson LLP
Committee of             By:  ROBERT T. KUGLER, ESQ.
Unsecured Creditors:          LOGAN KUGLER, ESQ.
                         50 South Sixth Street, Suite 2600
                         Minneapolis, MN 55402


For the U.S. Trustee:    Office of the U.S. Trustee
                         By:  ERIN CHAMPION, AUST
                         10 Broad Street, Room 105
                         Utica, NY 13501


For Certain Underwriters Duane Morris LLP
at Lloyd's, London,      By:  RUSSELL ROTEN, ESQ.
et al.:                  865 S. Figueroa Street, Suite 3100
                         Los Angeles, CA 90017


For Interstate Insurers: Parker, Hudson, Rainer & Dobbs LLP
                         By:  HARRIS WINSBERG, ESQ.
                         303 Peachtree Street, N.E. Suite 3600
                         Atlanta, GA 30308


For the Parish Steering  Woods Oviatt Gilman, LLP
Committee:               By:  TIMOTHY LYSTER, ESQ.
                         1900 Bausch & Lomb Place
                         Rochester, NY 14604


TELEPHONIC APPEARANCES:

For the Debtor:          Mackenzie Hughes
                         By:  STEPHEN HELMER, ESQ.
                         Mackenzie Hughes Tower
                         440 South Warren Street, Suite 400
                         Syracuse, NY 13202


For Certain Underwriters Clyde & Co. US LLP
at Lloyd's, London,      By:  BRIAN MICIC, ESQ.
et al.:                  30 South Wacker Drive, Suite 2600
                         Chicago, IL 60606


For Interstate Insurers: Parker, Hudson, Rainer & Dobbs LLP
                         By:  TODD JACOBS, ESQ.
                         Two N. Riverside Plaza, Suite 1850
                         Chicago, IL 60606
```

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 4 of 87

3

```
TELEPHONIC APPEARANCES (Cont'd):

For Hanover Insurance       Rivkin Radler LLP
Company:                    By:  BRIAN R. ADE, ESQ.
                            25 Main Street
                            Court Plaza North, Suite 501
                            Hackensack, NJ 07601

For Certain Personal        LaFave, Wein & Frament, PLLC
Injury Creditors:           By:  CYNTHIA S. LaFAVE, ESQ.
                            2400 Western Avenue
                            Guilderland, NY 12084

                            Jeff Anderson & Associates
                            By:  JEFF ANDERSON, ESQ.
                                 TAYLOR STIPPEL SLOAN, ESQ.
                                 MIKE FINNEGAN, ESQ.
                            366 Jackson Street, Suite 100
                            St. Paul, MN 55101

Special Insurance           Burns Bair
Counsel to the Official     By:  JESSE BAIR, ESQ.
Committee of Unsecured      10 E. Doty Street, Suite 600
Creditors:                  Madison, WI 53703

For the Parish Steering     Elsaesser Anderson, CHTD.
Committee:                   By:  J. FORD ELSAESSER, ESQ.
                            320 East Neider Avenue, Suite 102
                            Coeur d'Alene, ID 83815

For National Catholic       Womble Bond Dickinson (US) LLP
Risk Retention Group:       By:  EDWARD SCHNITZER, ESQ.
                            950 Third Avenue, Suite 2400
                            New York, NY 10022

For Catholic Mutual         ArentFox Schiff LLP
Relief Society of           By:  BRETT D. GOODMAN, ESQ.
America:                    1301 Avenue of the Americas
                            42nd Floor
                            New York, NY 10019

For Travelers:              Dentons US LLP
                            By:  LAUREN MACKSOUD, ESQ.
                            1221 Avenue of the Americas
                            New York, NY 10020

Committee Member:           ANN BOVAY
                                 - - -
```

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23   2024    Page 5 of 87

4

1          COURTROOM DEPUTY:  The Roman Catholic Diocese of

2     Syracuse, New York, Case Number 20-30663.

3          We have several matters on the calendar today, Docket

4     859, Section 105(a) status conference.

5          We also have Docket 1762, Section 105(a) conference

6     regarding application for entry of an order shortening time for

7     the notice of the Interstate Insurers' motion for entry of

8     scheduling order, Docket Number 1812, Section 105(a) conference

9     regarding application for an order -- entry of an order

10    shortening time for notice of London Market Insurers' renewed

11    motion.

12         There's also Docket Number 1626, motion for entry of

13    an order approving disclosure statement, approving solicitation

14    packages and distribution procedures, approving the forms of

15    ballots and establishing procedures for voting on joint plan,

16    approving form, manner and scope of confirmation notices,

17    establishing certain deadlines in connection with approval of

18    disclosure statement and confirmation of the joint amended

19    plan.  There's also Docket Number 1818, disclosure hearing.

20         May the parties in the courtroom please note your

21    appearances for the record.

22         MR. DONATO:  Good afternoon, Your Honor.  Steve

23    Donato, Grayson Walter, Sara Temes, Charles Sullivan for --

24    from Bond, Schoeneck & King for the Diocese of Syracuse.  Also

25    our litigation counsel Steve Helmer from Mackenzie is here, and

1  also our chancellor and chief financial officer is also in the

2  courtroom.

3         THE COURT:  Good afternoon.

4         MR. R. KUGLER:  Good afternoon, Your Honor.  From

5  Stinson LLP, Robert Kugler and Logan Kugler on behalf of the

6  Committee.

7         THE COURT:  Good afternoon.

8         MS. CHAMPION:  Good afternoon, Your Honor.  Erin

9  Champion on behalf of the United States Trustee.

10        THE COURT:  Good afternoon, Ms. Champion.

11        MR. ROTEN:  Good afternoon, Your Honor.  Russell

12 Roten from Duane Morris on behalf of London Market Insurers,

13 and also on the phone from Clyde & Co. is Brian Mimic who

14 covers the insurance issues.  Thank you.

15        THE COURT:  Good afternoon.

16        MS. BOVAY:  Good afternoon, Your Honor.  This is Ann

17 Bovay, and I am with the Debtor's Committee.

18        THE COURT:  Good afternoon.  We'll take the telephone

19 appearance in just one moment.

20        MR. WINSBERG:  Good afternoon, Your Honor.  Harris

21 Winsberg for Parker, Hudson, Rainer & Dobbs on behalf of

22 Interstate.  I believe on the phone Todd Jacobs, my partner, is

23 also on.

24        THE COURT:  Good afternoon, Mr. Winsberg.  We'll now

25 take the appearances on the phone, and I do note for those of

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23   2024    Page 7 of 87

6

1  you on the phone, please make sure your line is mute.  We've

2  already had some feedback, and it makes it very difficult to

3  hear, and it makes it very difficult to get a clear record.  So

4  with that said, why don't we note the appearance on the phone

5  next.

6            MR. ADE:  Judge, this is Brian Ade --

7            MS. LaFAVE:  Good afternoon.

8            MR. ADE:  -- from Rivkin Radler, and I represent

9  Hanover Insurance Company.

10            THE COURT:  Good afternoon.

11            MS. LaFAVE:  Good afternoon, Your Honor.  Cynthia

12  LaFave, LaFave, Wein & Frament.  I work with Jeff Anderson &

13  Associates, and we represent a number of the survivors who

14  brought suit against the Diocese.  Thank you.

15            THE COURT:  Good afternoon.

16            MR. ANDERSON:  Good afternoon, Your Honor.

17            MR. BAIR:  Good afternoon, Your Honor.

18            MR. ANDERSON:  Good afternoon.  This is Jeff

19  Anderson, also appearing as co-counsel with Ms. LaFave, and

20  also by phone are my colleague Taylor Sloan and Mike Finnegan.

21            THE COURT:  Good afternoon, counselors.

22            MR. BAIR:  Good afternoon, Your Honor.  This is Jesse

23  Bair from Burns Bair, special insurance counsel for the

24  Committee.

25            THE COURT:  Good afternoon.

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23   2024    Page 8 of 87

7

1          MR. LYSTER:  Good afternoon, Your Honor.  Tim Lyster

2 with Oviatt Gilman, and I believe also joining is my co-counsel

3 Ford Elsaesser from Elsaesser Anderson on behalf of the

4 parishes and certain other affiliate entities.

5          THE COURT:  Good afternoon.

6          MR. SCHNITZER:  Good afternoon, Your Honor.  Edward

7 Schnitzer from Womble Bond Dickinson on behalf of the National

8 Catholic Risk Retention Group.

9          THE COURT:  Good afternoon.

10          MR. GOODMAN:  Good afternoon, Your Honor.  Brett

11 Goodman, ArentFox Schiff, for Catholic Mutual.

12          THE COURT:  Good afternoon.

13          MS. MACKSOUD:  Good afternoon, Your Honor.  This is

14 Lauren Macksoud from Dentons US LLP on behalf of Travelers.

15          THE COURT:  Good afternoon.  Is there anyone else

16 who'd like their appearance noted on the phone?

17                    (No audible response)

18          THE COURT:  Okay.  Hearing none.  Why don't we hear

19 from the debtor.  These motions are all relatively mixed in, so

20 why don't get an overview from you, Mr. Donato, on the general

21 105(a) status conference, and then we'll figure out the best

22 order to proceed.

23          MR. DONATO:  Thank you, Your Honor.  Steve Donato

24 again for the Diocese of Syracuse.  Just by overview, we

25 complied with the request and the timing to file a further

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 9 of 87

8

1   amended plan and disclosure statement.  We filed a third

2   modified plan along with the disclosure statement.  We believe

3   we've addressed, you know, the issues.  We can get into the

4   substance.

5          The carrier did respond on Friday with some comments

6   concerning the insurance neutrality provisions.  You know, when

7   it's time to argue, we believe we've achieved insurance

8   neutrality at this point.  We're happy to work with the

9   carriers as we move forward towards confirmation.

10          We're hoping to emerge today with a schedule setting

11  a confirmation hearing date, obviously working back, to the

12  extent that you accord discovery rights, things like that,

13  which I know you've indicated you will.  That's what we're

14  hoping to do by the end of the day.

15          We do believe that we've complied with everything

16  that we need to do, and that at this stage 1125 is satisfied.

17  We're being requested to produce confirmation orders and things

18  like that, and, frankly, I haven't even thought about the

19  confirmation order.  I can barely get the disclosure statement

20  order done, which we did circulate.

21          So we can talk about that with the carriers, but

22  we're prepared to move forward.  We believe that as far as the

23  1125 that we've satisfied it in that we probably should now

24  think about moving towards the 1129 issues.

25          THE COURT:  Thank you.  And I believe this morning or

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23   2024    Page 10 of 87

9

1 yesterday there was an order granting the debtor's motion to

2 defer consideration of the pre-answer motions in the adversary.

3 That was submitted today, is that correct?

4          MR. DONATO:  Yes.

5          THE COURT:  Okay.  That was the only other thing that

6 the Court had on its otherwise update.  So with that, it

7 probably makes sense then to go right into the disclosure

8 statement issues because the other matters will kind of come

9 into play once we get through the remainder of those arguments

10 I think.

11          MR. DONATO:  Okay.  Thank you, Your Honor.  At this

12 stage with the third amended plan, with the extensive changes

13 that we have made, with the inclusion of significant insurance

14 neutrality language, which was adopted essentially in whole by

15 Judge Warren last Tuesday.  Let me make the qualification

16 Rochester is different because we have that other issue with

17 the SNA settlement administrative claim, but with the exception

18 of a tweak or a modification because of that, the language that

19 Judge Warren approved for the disclosure statement last week is

20 the same language that we put in our original -- not original,

21 in our last filing.  I'm sorry.  And we would submit at this

22 time we've achieved neutrality.

23          We'd also respectfully submit that our 1125

24 obligations are satisfied.  There's been more work on this

25 disclosure statement than in my 41 years practicing law.

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 11 of 87

10

1  That's fine.  I think we've done as -- frankly collective with

2  the carriers, I'm not excluding them, I think we've done an

3  excellent job of ensuring proper 1125 disclosure.

4          At this stage -- and it is interesting, all the

5  issues that are raised by the carriers now, they're all

6  confirmation issues.  In fact, Andrew Rivera, one of our

7  younger lawyers, he said he did a little search of the papers

8  that were filed on Friday, and he doesn't think the word

9  disclosure statement was even mentioned.

10          So, clearly, the carriers are confirming that the

11  1125 issues are satisfied.  I know they still have issues,

12  potential issues with neutrality, but for today's hearing what

13  I'm trying to do is just get an 1125 approval.

14          We are happy to work with the carriers as we move

15  forward towards confirmation.  If they think that there's an

16  additional tweak or a modification that we can make to the

17  plan, which might alleviate a plan objection or things like

18  that, of course, we're happy to do that, and while we've had

19  some spirited issues, we have excellent cooperation between all

20  the professionals, the carriers, the Committee, et cetera.

21          So, I'm quite confident that we could attempt to

22  address some of the additional confirmation issues that were

23  raised on Friday well before we get to confirmation.

24          As I noted, essentially the same insurance

25  provisions, neutrality provisions were approved by Judge Warren

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23   2024    Page 12 of 87

11

1  last week, and I think at this stage I would respectfully

2  submit that as far as disclosure goes, we've complied with

3  1125.  We're happy to answer any questions that you may have,

4  but at this point we think it makes some sense to gain the 1125

5  approval, and let's set this up, let's get solicitation moving,

6  ballot deadlines, confirmation hearing, et cetera.

7         THE COURT:  Mr. Donato, before we hear from the other

8  parties, can you explain the rationale to the Court in terms of

9  removing the reorganized Diocese from the definition of

10  neutrality party and then the various other areas because if

11  the assignment of the claims isn't permissible, those remain

12  with the reorganized Diocese.  The obligations under the

13  contracts remain with the reorganized Diocese.  So the Court

14  was confused in terms of removing the reorganized Diocese from

15  those various provisions.

16         MR. DONATO:  Yes, I'm just grabbing the documents

17  here.

18         THE COURT:  And recognizing that may be at

19  confirmation, but that may be a patently --

20         MR. DONATO:  Oh, absolutely.

21         THE COURT:  -- unconfirmable problem to get through

22  1125 for the Court.

23         MR. DONATO:  Frankly, I think it's just a

24  miscommunication.  I think it's just a miscommunication, and I

25  will explain.  I can walk through the documents, but let me

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 13 of 87

12

1    just do the --

2            THE COURT:  Yes.

3            MR. DONATO:  -- general explanation first.  The

4    reorganized Diocese is defined in the plan as actually a new

5    entity that's going to be created post-confirmation.  That new

6    entity is going to take -- or, you know, handle future diocesan

7    operations.

8            There's no contract privity between the policies and

9    the reorganized debtor, the new entity, and, again, I got to

10   look at -- I'll work the definitions.  Maybe we weren't clear,

11   but what we have provided and also show where the obligation

12   for the Diocese to comply with the post-petition obligations,

13   it says Diocese or reorganized Diocese, comma, if any.

14   Specifically there's going to be two separate entities.

15           So, the old Diocese will stay in effect.  The old

16   Diocese is not going to be dissolved.  The old Diocese will

17   have its obligations under the policies, all that other -- you

18   know, all obligation post-confirmation, all of the insurers'

19   rights, even though they suggest it's not, respectfully, every

20   right that they have is completely preserved post-confirmation.

21   So that if they take the position that one of these entities

22   did not comply, right, they always have the right to assert

23   defenses.

24           You know, they've -- the arguments that have been

25   forwarded by the carriers seem to suggest that the Diocese has

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 14 of 87

13

1  a contractual -- has duties to the carriers, like contractual

2  obligations that they can somehow enforce; they can't.  These

3  are conditions precedent to coverage.

4       So if we don't do what we're supposed to -- I know

5  I'm blended now or Diocese -- but if we don't, every right --

6  they have every right to raise whatever issues they have,

7  including denial of coverage or any of that kind of stuff.

8       But the direct answer to you is the reorganized

9  entity is a new -- it doesn't exist now.  A new entity that

10 will be created at confirmation that will take -- that will

11 handle post-petition diocesan operations.  We were careful to

12 provide that that the duties applied to the Diocese, which

13 again will stay in existence, and the reorganize Diocese,

14 comma, if any.  We just wanted to be careful.

15      There is no contract relationship.  No insurance

16 policy relationship with the reorganized debtor.  So this might

17 have been our -- maybe we were confusing in the documents, but

18 when we read the carriers' response, we thought, oh, okay, you

19 know, we may -- maybe we weren't clear enough.

20      The reorganized entity is a new entity post-petition.

21 The old Diocese has to have -- you know, has those all

22 compliance obligation; they still do.  And if we screw it up,

23 you can be assured that the carriers will be raising their

24 defenses, which they have an absolute right.

25      So, that's the answer as to why the reorganized

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 15 of 87

14

1 Diocese was removed from the provision.

2        THE COURT:  Okay.  That answers that question.  Okay.
3 That was really the only other question that we had until we
4 hear from the others, again, recognizing some of these are
5 maybe tweaked between now and confirmation.  And does the
6 debtor have any objection to whatever insurance neutral
7 language to be included in the confirmation order?  That was
8 certainly raised by the insurance companies.

9        MR. DONATO:  It seems a little over the top
10 respectfully.  We're going to have a confirmation order, and
11 then they want to insert, you know, five pages.  We can just
12 cross reference.  I don't think it's a good idea.

13        The carriers presented to you as though this is the
14 way it's been done in every case, right?  There's no
15 discretion.  They're just telling you what you got to do.  I
16 read their papers.  They say you have no choice.  Respectfully,
17 you have lots of choices, and this has not been done in many
18 other cases.

19        They even wrote a note in here that somehow we -- a
20 change that we made could be construed that the carriers
21 consented to something, and I'm amazed, right?  Just read the
22 docket.  The carriers have -- there's no possibility that we
23 could somehow snooker them or something that they consented to
24 something, et cetera.

25        So, at this stage, I would respectfully submit that,

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 16 of 87

15

1  you know, these issues are sufficient.  I'm happy to address

2  any issues raised by the carriers, but what I respectfully

3  submit is that under 1125 we're there now.  We don't really

4  need to hear from the carriers on each of their little nits and

5  nats, et cetera, but obviously to the extent they will, we're

6  prepared to respond.

7          But I'm glad you brought up the reorganized debtor

8  because that's probably just -- that was maybe inartful on our

9  part because, again, there's no games, but reorganized debtors,

10  it's a brand new entity post-petition, so it doesn't have

11  policy, you know, issues.

12          THE COURT:  Well, but pursuant to Section 12.14 of

13  the plan, as of the effective date, all property of the debtor,

14  the estate, you know, shall vest with the reorganized debtor

15  free and clear.  So, that certainly is -- was concerning to the

16  Court if --

17          MR. DONATO:  Sure.

18          THE COURT:  -- this somehow created a, you know,

19  patently unconfirmable plan because we've now got a huge impact

20  on the insurance carriers, the insurance policy neutrality.

21  Okay.  Thank you.

22          MR. DONATO:  Thank you, Your Honor.

23          THE COURT:  Mr. Kugler, did you want to be heard

24  before the insurance companies?

25          MR. R. KUGLER:  Maybe just briefly.  So, it's my

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 17 of 87

16

1  perspective that we're here for a disclosure statement hearing.

2  We've complied.  We've been at it since December when we filed

3  the plan.  The survivors I know are excited to vote on a plan.

4  They're excited.  We get calls daily from survivors.  So we

5  want that -- we want the Court to approve the disclosure

6  statement.

7          And I would say this, that it appears to me, and I

8  think what Mr. Donato was saying is probably evidence of this,

9  that all the objections have either been satisfied or preserved

10 for the insurers.

11         We'll go forward to confirmation, and there is very

12 likely going to be a modification, a motion filed sometime

13 prior to confirmation where we will adopt some additional

14 language that will probably resolve further issues.

15         But for purposes of the disclosure we're there.  I

16 think it's time to approve it and move forward.  Thank you.

17         THE COURT:  Thank you, Mr. Kugler.  Mr. Winsberg or

18 --

19         MR. WINSBERG:  Good afternoon, Your Honor.  Harris

20 Winsberg on behalf of Interstate.

21         THE COURT:  Good afternoon.

22         MR. WINSBERG:  Your Honor, I'm happy to go focus on

23 what you just wanted to address, I guess starting with just the

24 disclosure statement.  There was a proposed solicitation order

25 that was circulated this morning.

1        There were a couple of comments of ours that I didn't

2   think were controversial that were not taken.  I would suspect

3   that -- we would be hopeful the Diocese would take them.  One,

4   for example, was both the notices, the confirmation notice and

5   the publication notice didn't mention the supplemental insurer

6   injunction.  And to the extent there's ever a settling insurer

7   in this case, I'm not aware of one yet, but to the extent there

8   is one, it would be a shame that all the work that went into

9   notice ended up being deficient.

10        There was a case in <u>Boy Scouts</u> where Judge

11   Silverstein ruled that a claim had even been anew at the

12   bankruptcy didn't get notice of the confirmation and

13   specifically the insurance injunction and held it was

14   unenforceable.

15        So, I just -- I didn't it's controversial, but it

16   wasn't in -- it was in our objection that it wasn't in the

17   proposed order we saw this morning.

18        The only one that was I believe contested, they

19   didn't take was the 1127 issue, Your Honor, and I would just --

20   1127(a) talks about the plan -- proponent of a plan may modify

21   the plan anytime prior to confirmation, and then after that

22   there's rules under 1125(a) and (b) about how you would go

23   about a modification depending on whether it would have to be

24   resolicited or not.

25        And we would just note, Your Honor, that the proposed

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 19 of 87

18

1 language they had in the solicitation order which we had

2 objected to the last go around had language in there that was

3 broader than that.  They talked about that you could modify it

4 without notice even as a result of the confirmation hearing,

5 which is broader than 1127(a) provides.

6        And then the other provision, Your Honor, that I

7 would point you to is the provision in the disclosure -- their

8 proposed solicitation order.  It actually conflicts with a

9 provision under the plan.

10       If you go to 14.1 of the plan, and I was looking at

11 the redline, I was looking at Mr. Donato's redline, which is

12 Docket 1819, that was the most current one that was filed, but

13 Your Honor may have another one, but on that one it was on Page

14 84 or 93 of 101.  So, if you look at 14.1, it -- this is much

15 more consistent with what the 1129(a) speaks to, that you can

16 modify at any time prior to the confirmation hearing in

17 accordance with 1127(a), but after the confirmation date, which

18 is actually a defined term in 1.1.44, which is they have it

19 defined as when the order is entered, when Your Honor confirms

20 a plan, should you confirm a plan, and prior to its

21 consummation, then you have to go look at the rules of 1127(b).

22       And so, our only objection here was we're not trying

23 to prejudice the Diocese or Committee rights, but that should

24 be -- if there is a modification, it should be brought in front

25 of Your Honor and adjudicated at that time.  It shouldn't be

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 20 of 87

19

1 prejudged how to interpret the statute, and I think that was

2 the only substantive issue for the solicitation order that I

3 was aware of, and maybe Mr. Donato can clarify the other minor

4 points we had.

5         As far as the disclosure statement is concerned, Your

6 Honor, we have our objections on it.  The idea, as I

7 understood, for today what we were really trying to do was

8 through this exercise Your Honor ordered us to go through was

9 to try to find ways to streamline the plan.

10        And, admittedly, some of the neutrality arguments,

11 you know, are plan confirmation objections we do have are

12 patently unconfirmable, and we reserve our rights on that, but

13 they really are going to be adjudicated either with a full

14 discovery schedule or some modified version, whatever Your

15 Honor decides in connection with the plan.

16        I would just want to point out a couple of things,

17 Your Honor.  Mr. Donato mentioned Judge Warren's ruling.  I was

18 at that hearing that the redlines were sent the night before

19 the disclosure statement.  I don't believe, and he can correct

20 me, I don't believe CNA had an opportunity to file a response

21 like Your Honor gave us, so I don't think Judge Warren had the

22 opportunity to consider the arguments that we're going to be

23 presenting to Your Honor today.

24        So, I just -- you know, Judge Warren did enter that -

25 - he is going to approve that disclosure statement, and there's

Case 20-30663-5-wak Doc 2281-2 Filed 10/25/24 Entered 10/25/24 17:58:39 Desc
Exhibit B- Transcript of Hearing Dated April 23 2024 Page 21 of 87

20

1 going to be a disclosure -- I think a confirmation hearing on

2 the 3rd of September, but I don't believe it was considered

3 with the opposition. So, I just wanted to make Your Honor

4 aware of that.

5 And Your Honor picked up on -- and we can take it in

6 the order, and I'll be happy to address it later, but Your

7 Honor did pick up on the reorganized debtor. Just a couple of

8 other points on that, and then we -- I can -- I'm happy to cede

9 the podium and -- or go whatever order you want to go in, Your

10 Honor.

11 But the reorganized debtor under 6.3.1 is obligated

12 to perform post-effective date obligations, and I had in my

13 notes 12.14. Your Honor found it before I did, which talks

14 about the vesting of property out of the Diocese into the

15 reorganized Diocese.

16 The way the reorganized Diocese is defined, it's

17 either the Diocese after the effective date or like a new

18 entity. I've never seen a situation where a reorganized entity

19 comes out, it comes out as the reorganized debtor with --

20 behind the force of a discharge, and the injunction that goes

21 with it. I'm not aware of leaving the estate open, so to

22 speak, in a reorganized Chapter 11 case.

23 And, actually, what Your Honor pointed to was the

24 same provision I looked at, it doesn't exist. There's no

25 possibility of it. The Diocese is gone. It's a shell.

1   I'd also note, Your Honor, that the trust takes all

2   the protective party liabilities, and that's found in certain

3   provisions of the plan, including 2.3.5(b).  The trust retains

4   the right to sue on behalf of that protected party liability.

5   That's in 4.3.3.

6   And the reorganized Diocese is one of the protected

7   parties under 1.1.145.  It's the reorganized Diocese is the one

8   that's going to be exiting the bankruptcy and not having a part

9   of the neutrality provision, it leaves a huge hole.

10   And I'd also note, Your Honor, and Your Honor may

11   have been thinking about this, but this issue kind of

12   highlights the problems with the assignment.  The Diocese is a

13   shell post-effective date, and it's being asked to perform the

14   obligation under the policies.

15   The non-debtor parishes, they're protected by the

16   channeling injunction should Your Honor enter that, and they're

17   absolved from the consequences of their actions.  They've got

18   no incentive to perform.  They've got their injunction.

19   They've got no financial interest in pursuing because their

20   liability has been capped.

21   In fact, that was the question that Justice Sotomayor

22   asked at the oral argument in Purdue Pharma.  Well, isn't after

23   the discharge isn't it the case these debtors, they have no

24   financial incentive to do anything anymore, which is true, they

25   don't, and here you have it all so with the non-debtors, and

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 23 of 87

22

1  you couple that with the trust taking the benefit of the

2  policies, and they're only taking select burdens.  They're take

3  the SIR, but they're not taking anything else.

4          And so, I'm just not aware of any circumstance where

5  an assignment has been sliced and diced this way.  We have a

6  contract.  It's either executory or not, but either way, I'm

7  not aware of a circumstance where you could lead -- the

8  reorganized Diocese comes out.  It has obligations, according

9  to its own plan.  It's being vested with its property interest,

10  and yet somehow our obligations magically sit back at the

11  Diocese and everybody's rights are preserved.  I haven't seen

12  it cut up like this before, and I'm not aware of a case that's

13  approved anything like this before, at least none that I've

14  actually argued or has been presented that I'm aware of.

15          So, I have other arguments on the neutrality, but I

16  just wanted to answer those specific questions that Your Honor

17  picked up on on the reorganized Diocese, and I'm happy to go in

18  any order you want to go to, Your Honor, or whatever you feel

19  is the best way to move forward.

20          THE COURT:  No, I mean go ahead and finish your

21  presentation, Mr. Winsberg, and however you'd like to do that.

22          MR. WINSBERG:  Okay.  Sure, Your Honor.  Well, it

23  kind of bleeds -- all bleeds together, as Your Honor noted.

24  Let's talk first about like the -- because all this really does

25  impact Your Honor has stated a preference to try to streamline

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23   2024    Page 24 of 87

23

1 this process and be as efficient as possible.  I'll start with

2 the confirmation order.  We have been asking for it since

3 February.  It's not been shared.  I heard Mr. Donato say it

4 hasn't been prepared yet, but it's a critical document we need

5 to look at to assess what are we doing with plan discovery.

6         And you don't have to look any further than 11.1 of

7 the plan.  11.1.1 talks about the confirmation order shall, and

8 then it lists some of the things we're going to talk about, but

9 it talks about, quote, at a minimum.  So, it's leaving open the

10 possibility there will be other findings that will be asked of

11 Your Honor in the confirmation order.  So, there's that

12 possibility that there would be provisions in the plan that

13 will be in the order that we haven't seen before and haven't

14 had a chance to object to or test in the discovery process, and

15 that's a problem because if we don't get the confirmation order

16 until after discovery closes or after the objection deadline,

17 you know, we won't have the opportunity to really effectively

18 address it.

19         And it's not a hypothetical.  That's what happened in

20 Camden.  There's a published decision on it, but a couple of

21 weeks before the trial the plan proponents there they docketed

22 the proposed confirmation order.  I think it may have been

23 amended, and for the first time, to my recollection, they

24 sought a good faith finding in the TDP in that proposed order.

25 And the judge -- as you know, Judge Poslusny denied, just as

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 25 of 87

24

1 Your Honor has indicated that you would deny a good faith

2 finding as to a TDP, but the prejudice was real.

3        Particularly here we have a provision 14.7 that's in

4 the plan that talks about controlling documents, and I've got

5 -- I don't know if you're going to work off the redline, that's

6 what I was working off of, I thought it was helpful, but like

7 Page 95 of 101, and 14.7 talks about that the confirmation

8 order controls over the plan.  So that's an issue that all this

9 ties back to obviously the neutrality as well.

10        And if you also look at 14.13, which is towards the

11 very back, and we've -- I've talked about this a little bit, I

12 addressed this with Your Honor a couple of different times,

13 that the plan is not a settlement, but the way I read 14.13 is

14 that we couldn't introduce the plan in any cause of action.  So

15 if we've got a neutrality provision in the plan and the

16 confirmation order takes precedent and we can't even introduce

17 the plan as evidence, we're not in a great place.

18        THE COURT:  And, Mr. Winsberg, isn't that issue

19 removed if there's an agreement to put in the neutrality

20 language in the confirmation order?

21        MR. WINSBERG:  It would not -- if we get an agreement

22 on neutrality, yes, Your Honor.

23        THE COURT:  Okay.

24        MR. WINSBERG:  Correct.  It's for these reasons, Your

25 Honor, we proposed, if you looked at our schedule that we

Case 20-30663-5-wak Doc 2281-2 Filed 10/25/24 Entered 10/25/24 17:58:39 Desc
Exhibit B- Transcript of Hearing Dated April 23 2024 Page 26 of 87

25

1 filed, our motion that we filed back on March 22nd, I don't

2 know if you have that in front of you, Your Honor --

3          THE COURT:  I do.

4          MR. WINSBERG:  -- but like on page I think it was 15

5 of 25, and we list out our schedule, it's the reason we asked

6 to see the proposed confirmation order before discovery started

7 so to be as efficient as possible, that like we wanted to see

8 what the proposed order, what the findings are.

9          To the extent that there is neutrality that works and

10 it's in the order, it would absolve the issue, but if we don't

11 have an agreement on neutrality, and as of today we do not,

12 that will be something that will be really important for us to

13 see, so we don't have a situation like we had in Camden, like

14 we're getting a proposed finding, you know, at a later date

15 that we can't address.

16          THE COURT:  And, Mr. Winsberg, how does that impact

17 all of the other extensive discovery?  Is there an expert

18 involved in some of that?  Can you --

19          MR. WINSBERG:  Yes, Your Honor.

20          THE COURT:  -- elaborate on that?

21          MR. WINSBERG:  Yes, Your Honor.  We outlined in our

22 papers because we thought it would helpful that we list out I

23 think six topics of fact discovery and listed some expert

24 topics, and we'll get to that because I've got -- there's some

25 other issues that tie as well, but if -- there are experts we

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23   2024    Page 27 of 87

26

1  have used in other -- in <u>Camden</u> and in <u>Boy Scouts</u> on things

2  like trust governance, how a trust should function, whether the

3  fiduciaries should be independent or not, as well as how the

4  TDP or here the allocation protocol functions.  And to the

5  extent that they're not seeking findings we have to take

6  discovery on, that would lessen the load.

7          So, it is possible, Your Honor, and depending on what

8  Your Honor decides, it is possible for the discovery to be

9  streamlined.  In fact, you asked at the last hearing where the

10 client stood on these issues.  I can represent that the

11 language we've presented forward in our letter that that will

12 have been accepted.  We may have a confirmation objection, but

13 there's no real discovery going on at that point what we

14 proposed in our letter, but --

15         THE COURT:  So, as it stands today, and, again, these

16 are all kind of mixed together, you believe that you still need

17 expert discovery?

18         MR. WINSBERG:  We do, Your Honor, and I can -- I'll

19 walk through and I can give some examples why.

20         THE COURT:  Okay.

21         MR. WINSBERG:  The second part about the schedule and

22 how this all is to get -- how this all ties together is we've

23 asked the plan proponents to give us a sense of what they

24 intent to bring forward, in fact, an expert witness, and that

25 obviously has a lot to do with the schedule.  If we're not

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 28 of 87

27

1  bringing anybody forward, well that impacts the schedule as

2  well.

3          I don't think we've received an answer from them

4  other than the Diocese I think indicated, I don't want to speak

5  for Mr. Donato, he didn't think experts were needed in this

6  case.  I don't think the Committee has spoken on this topic,

7  but they've got the burden under 1129 to show at confirmation

8  what they need to go forward to, particularly if they want to

9  try to do it on a shortened schedule.

10         We know the Diocese has to present some evidence.

11 The U.S. Trustee objected saying they needed to list out

12 contributions by participating parties, and Mr. Donato

13 successfully defeated that disclosure statement objection by

14 saying I'm going to have to put evidence up on it.  So we know

15 he's going to -- the Diocese is going to have to put up some

16 evidence on some of these points.

17         And another example would be in all these cases the

18 Committee hires this valuation expert, Ms. McNally.  I have no

19 idea whether the Committee would want to bring her forward in

20 this case.  I don't know what the relevance would be for her in

21 this case, but it certainly would impact the preparation of a

22 trial if we're going to have someone try to put on evidence as

23 to what the aggregate value of the claims are.  That's a

24 significant issue.  I would note that her verdict value

25 methodology was not adopted by Judge Poslusny in Camden.

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 29 of 87

28

1       So, those are two material points that we need

2   answers for that would help as Your Honor is thinking about a

3   schedule in our view.

4       As far as neutrality language, you've hit what we're

5   -- you've hit one of the big issue was reorganized debtor.  As

6   far as neutrality issues are concerned, Your Honor, it starts

7   with us, that the documentation should be I guess, Number 1,

8   internally consistent, that the plan, it's just like any other

9   contract, you know, it's got the force of law, you're going to

10  enter an order should you confirm it, but it should be

11  internally consistent, just like a contract should be, and if

12  it's not, it creates mischief, like the things we saw that we

13  already briefed to Your Honor in <u>Fuller-Austin</u>.  And we

14  shouldn't have to wait or hope that an appellate court can fix

15  that issue.  We should be able to fix that now and not have it

16  subject to a litigation risk.

17      So, we had internal cross references to the

18  neutrality language that were stricken from the plan.  Some of

19  those provisions we think are -- the neutrality language should

20  cross reference them so there's no dispute as to what's

21  fighting with each other.  It should be a consistent document,

22  and some of those -- they're in our letter, but we would just

23  point Your Honor to I think four or five, Section 4.1, 4.3.3,

24  6.5, 8.7.1, 12.2.4, and 12.13.

25      And so, we think the document should be internally

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 30 of 87

29

1 consistent.

2         MR. R. KUGLER:  Your Honor, could I object to that

3 request?  If we're just going to be rattling off section

4 numbers, shouldn't we go through them section by section so we

5 can understand what Mr. Winsberg is referring to?  He's just

6 rattling off numbers.

7         THE COURT:  Thank you, Mr. Kugler.  I have kind of a

8 different question --

9         MR. WINSBERG:  Okay.

10        THE COURT:  -- that might bypass that which is --

11        MR. R. KUGLER:  Okay.

12        THE COURT:  -- why I -- if the language is added back

13 on the preemptory and supervening, doesn't that take care of

14 those concerns?

15        MR. WINSBERG:  It does, Your Honor, except for one

16 provision that we'll talk about.

17        THE COURT:  Okay.

18        MR. WINSBERG:  And that would be the finding in

19 11.1.1(a).

20        THE COURT:  I'll have to take a look at that.  And

21 you're referencing the plan, not the --

22        MR. WINSBERG:  The plan, Your Honor.  So, if you look

23 at that provision -- I don't know if you have that.

24        THE COURT:  I'm there.

25        MR. WINSBERG:  Yeah, so we've talked about -- we've

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23    2024    Page 31 of 87

30

1  touched on this provision before.  This talks about the

2  confirmation order shall at a minimum contain findings that the

3  assignment of the claims, insurance claims are (indiscernible)

4  the retention, following by confirmation by the Diocese and the

5  other participating parties, as contemplated by the plan as

6  authorized by and does not conflict with any provision of the

7  Bankruptcy Code or any other applicable law.

8      So, just a couple of points there, one is the -- I

9  think the Court has to find that the assignment complies or

10 doesn't with 363 or 365.  So, I'm not sure what conflict with

11 means.  It either complies with those provisions or it doesn't,

12 but also it has the other applicable law, and that has to mean

13 state law.

14      And so with that provision, Your Honor, as we've

15 noted in our papers, our concern is that the Trustee or other

16 parties are going to be free to say that this Court signed off

17 on the future conduct of the plaintiff controlled trust and its

18 process for allowing claims under New York law.  It's

19 essentially seeking declaratory relief from this Court, and we

20 don't think there's a bankruptcy purpose for it.  We don't

21 think it's needed to confirm this plan.  It should be decided

22 in the coverage case, which is subject to a motion of

23 withdrawal of the reference.

24      And it's also, most importantly, contrary to the

25 insurance neutrality.  I mean, it's a provision that directly

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 32 of 87

31

1 conflicts with the neutrality provision, and even with the

2 supervening language, Your Honor, I still think the plan should

3 be -- just like any other contract, should read consistently so

4 people don't come up with creative arguments three, four, five

5 years from now.

6         Your Honor touched on the second point I was going to

7 make on these provisions was neutrality language should take

8 precedence.  You've already touched on that, Your Honor, with

9 the supervening language they struck.

10        We would just note that the language in addition to

11 supervening language the new provisions they added, 8.7.3 and

12 8.7.4, we don't think those are appropriate, and they're

13 certainly -- and we've outlined that in our papers, and they're

14 certainly not in line with the teachings of <u>Combustion</u>

15 <u>Engineering</u>, and we can walk through those provisions if you

16 want, Your Honor, but they are in the redline, the redline

17 plan.  They're on Page 64 of 101 or Page 55, or you have the --

18 if you have the chart up -- the cheat sheet.

19        So, 8.7.3 talks about cabining the non-settling

20 insurers' sole and exclusive remedy as a coverage defense.  I

21 would note that unlike above on the neutrality clause the

22 reorganized debtor is protected in this provision in here, and

23 our point is that's for a coverage court to decide.

24        The whole idea of neutrality is that everyone's

25 rights are preserved, and Mr. Bair a couple of hearings ago

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 33 of 87

32

1  artfully stood up and said, we may have all different times of

2  claims, and I think he said something to the effect that the

3  insurers may think we're off our rocker, but we have those

4  rights.  And just in this case the opposite is true.  They may

5  think we're off our rocker, but we have our rights, too, and to

6  cabin us to adjudicating us essentially to a limited defense is

7  the antithesis of neutrality.

8          And then 8.7.4 and I just -- I always -- I read it

9  four or five different times, and I wasn't sure exactly what

10 they were trying to get to, but it starts with for the

11 avoidance of doubt, nothing set forth in 8.7.2 shall impair any

12 provision of the plan, and if -- and including -- it just

13 elaborates, but if you put a period right there, that basically

14 eviscerates the neutrality.  I mean if I read English, like if

15 -- for the avoidance of doubt, nothing set forth in the

16 neutrality provision shall impair any provision of the plan.

17 So all the other provisions of the plan that may contradict

18 with the neutrality, you know, they may be in play.

19         And I just didn't understand, and maybe it's inartful

20 drafting.  If what they're really getting at is they want to

21 make sure that the injunctions and the discharge are respected,

22 and that may be what they're getting at.  I would note like in

23 Boy Scouts we filed a motion in front of Judge Silverstein

24 asking for permission for relief from the injunctions to

25 continue our prebankruptcy coverage case, and she granted that

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23   2024    Page 34 of 87

33

1  in the confirmation order.

2         So, our point is if the litigation is going to

3  continue post-effective, and it sounds like it is, that

4  everybody's rights are reserved, and there's going to have to

5  be a carveout so that litigation can go forward, otherwise I

6  mean we'd be in violation of the injunction.

7         So, whether it's done here or in the confirmation

8  order, we can come up with language, but if that's the concern,

9  we have to be able to defend ourselves, and that includes if we

10 want to bring a counterclaim, our own claim that we're not

11 stepping -- we're not in a contempt proceeding in front of Your

12 Honor.

13        So, we would typically -- either we address it as

14 part of the plan process or we'd file a motion, but if that's

15 what they're getting at, they're -- we're going -- they're

16 going to have those issues.  If they're going to pursue

17 litigation, there's going to have to be carveouts for the

18 injunctions and the discharge to allow that litigation to go

19 forward.  So, we don't really think that 8.7.4 was proper.

20        The third thing on the neutrality is it shouldn't be

21 subject to carveouts, and I'll just highlights three for Your

22 Honor.  The neutrality clause limited its provisions to actions

23 against the non-settling insurers.  I was kind of surprised to

24 see that.  Like we're dealing with non-debtors here.  Like we

25 could bring our dec action for some reason down the road, or we

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 35 of 87

34

1  could bring a counterclaim and a dec action.  The neutrality

2  provision should apply, whether it's a lawsuit against us or by

3  us.  It really shouldn't matter, and so I don't know why that

4  was frankly an edit they put in.  Maybe they can try to explain

5  it, but it's the antithesis of neutrality.  It should apply in

6  all circumstances of litigation that's authorized by Your

7  Honor.

8          THE COURT:  So, isn't that an easy fix by or against

9  a --

10         MR. WINSBERG:  Yeah.

11         THE COURT:  -- non-settling insurer?

12         MR. WINSBERG:  Agreed.

13         We've talked about the removal of the reorganized

14  debtor already.

15         The third one I wanted to talk about was the removal

16  of the good faith and other protections, and those were mainly

17  cabined in (iv) through (vi) which deals with allowance and

18  payments of claims, and this gets back to 11.1.1(a).  If you

19  remove those provisions, it leaves open the possibility they

20  can use 11.29.(a)(3) finding of good faith and not by any means

21  forbidden by law to argue exactly what neutrality which should

22  prohibit, which is a leg up.

23         So, if you were -- they struck out good faith and

24  other provisions in there, which risk opening up the good faith

25  finding, particularly if Your Honor were to entertain the

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23   2024    Page 36 of 87

35

1  finding in Section 11 that we've talked about, and that's a

2  concern with us.

3          Another example I'd give with respect to why the

4  language we put in there is important is the trust, as I

5  understand it, it has to consult with the litigation claimant,

6  the Diocese and participating parties before authorizing a

7  litigation claimant to proceed with a litigation claim, and

8  they talk about that mechanism in 4.3.1(b).  I can show Your

9  Honor that.  That's on Pages 43 of 101.  And it does that in

10  Subpart (i) under (b).

11          And then in (ii) in Subsection (c) on the -- it's

12  Page 34 of 43 of 101, it talks about the trust has the sole

13  discretion to make final decisions relating to the management

14  and timing of litigation against litigation claimants.  And

15  there's a provided, however, they've got to consider the

16  Diocese's interest with that.

17          But notably absent from that list is the non-settling

18  insurers, and our contract rights include things like we have

19  the right to associate and to the defense or settlement of a

20  claim.  And this is a confirmation objection, but I'm trying to

21  explain why the neutrality language doesn't work, and that's

22  another example of a -- without the robust language, that

23  someone could argue, well, Your Honor said it wasn't by any

24  means forbidden by law, therefore you don't have a right to

25  associate it to the defense or settlement of those claims,

36

1  those litigations claims.  So, it's just another example that I
2  would point to Your Honor.

3        And then the final, Your Honor, we -- the last thing
4  I would point to, and we talked about this provision before in
5  Section 4.4, and that's Page 45 of 101, and this was -- you
6  know, the plan proponents did -- they did add what Your Honor
7  ordered, you know, and so -- and we've acknowledged that, that
8  they added that the trust won't present a non-settling insurer
9  with a demand for payment for a distribution.

10        We had suggested -- and this does get to the point
11  about discovery and experts, we had suggested in the addition
12  that they won't -- we won't be submitted for a demand for a
13  abuse claim that is solely treated as a distribution claim
14  because right now it's still a possibility.  I mean it's not
15  exactly -- I know there's been a lot of back and forth on this
16  point, and why does that -- if the potential for us to be sued
17  for a distribution claim exists, like why does that matter for
18  purposes of neutrality?  I was trying to think about how Your
19  Honor would look at this issue.  I went and looked at Section
20  2.2.3.5(g) which is on -- I should have written the page down
21  for that one, which is on Page 40 of 101, and --

22        THE COURT:  Go ahead.

23        MS. WINSBERG:  Yeah, and this provision, as I read
24  it, says only the Trustee can object to claims to the exclusion
25  of others, and our rights as a non-settling insurers our rights

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23    2024    Page 38 of 87

37

1  are limited to contesting litigation claims, and that the

2  distribution claimants, so claims only that are going to get

3  distribution under an allocation protocol, they're not subject

4  to any review by anyone else, including Your Honor.  It's all

5  going to be done by the abuse claim reviewer.

6         So, if we can be sued for a distribution claim, then

7  we've lost our right, just like I talked about earlier, our

8  right to associate and to the defense for the settlement or the

9  ability to object to the claims.  And so that's why we wanted

10 the clarifying language because if we don't have it, then we

11 have the same issue with distribution claims that we have with

12 litigation claims.

13        And why does that matter?  Because the distribution

14 claims are really where most of the action is at if there's an

15 impairment.  Those are claims where we have no ability to do

16 anything with them.  They're adjudicated by individuals

17 selected by the Creditors' Committee.

18        And so all the indicia of things that we would have

19 objections to, those really focus on those claims.  The

20 litigation claims, there are issues we have with them, but

21 they're not nearly the same magnitude and don't involve the

22 same due process concerns because they're going to go to the

23 tort system where there's going to be an independent fact

24 finder.

25        And so that was -- I just wanted to give -- I respect

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23    2024    Page 39 of 87

38

1  Your Honor's decision, but I did want to tell Your Honor that

2  they did do what you said for them to do, but I just wanted to

3  explain why we -- I wanted you to explain why we asked for the

4  additional language.

5          And so with that, Your Honor, those were the

6  highlights.  There are other provisions I could go through I

7  have questions with, but you have our brief, and I think our

8  brief and LMI's brief cover them, but I just wanted to give

9  some color to them.

10          The last thing I would note, Your Honor, whatever

11  Your Honor decides to do with a discovery schedule is to just -

12  - we put forward, we just want to avoid that.  The whole idea

13  of all this is, we want -- we filed the motions, we didn't want

14  to be subject to trial by ambush.  We want to know who their

15  witnesses are.  We want to know who their experts are.  We want

16  to know what the findings they're going to be seeking from the

17  Court, so we can adequately defend ourselves should we cannot

18  come to an agreement on neutrality language, and I'm happy to

19  answer any questions Your Honor has.

20          THE COURT:  No, I think you covered it, Mr. Winsberg.

21          MR. WINSBERG:  Thank you, Your Honor.

22          THE COURT:  Thank you.

23          MR. ROTEN:  Good afternoon again, Your Honor.

24  Russell Roten for London Market Insurers.  So we joined in

25  Interstate's brief, and we I think in our brief made all the

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 40 of 87

39

1 points that Interstate made, and so we join in all of Mr.

2 Winsberg's remarks, and I won't be too long.  There are a few

3 points I'd like to make.

4        First, in response to some of the comments from my

5 good friend Mr. Donato, in the <u>Rochester</u> case Mr. Winsberg

6 addressed the facts in that case that the Court didn't really

7 review that language.  It's also important for us that London

8 Market Insurers and Interstate have settled in that case, and

9 so we're not focusing on those kinds of issues because we no

10 longer have any dispute.

11        The second thing I'd like to mention about that, Your

12 Honor, and I think it's very important to understand this, I

13 agree with Mr. Donato's characterization of the things that are

14 important to us and the insurance policies as conditions

15 precedent.  If those conditions precedent are not met, then

16 there's no coverage under the policies.

17        The Committee, the trust, the debtor may take a

18 different point of view, and that may end up being litigated in

19 the state court somewhere, but I'm pretty sure that if they

20 don't defend these cases and they go to judgment, they're not

21 going to have any coverage for those cases.

22        So, the use of the word "obligations" is correct.

23 The debtor has the obligation to perform those conditions

24 precedent or to see that those conditions precedent occur, and

25 if the debtor doesn't do that, the conditions precedent have

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 41 of 87

40

1  failed.  So, I don't want to get hung up on semantics.  I just

2  want the working relationship of these conditions precedent to

3  be clear.

4       I personally haven't seen the solicitation order.  I

5  know it came out this morning 9:30 or 9:45 or something, but

6  I've been tied up on other things all day, and I haven't -- I

7  haven't see it yet.  I'll have a look at it as quick as I can.

8       A few points on the insurance neutrality language.

9  Mr. Winsberg dealt with almost all those points and actually

10 probably all of them, but there's a few things I'd like to say

11 about it.

12      The <u>Combustion Engineering</u> case is an old 524(g)

13 asbestos case tried many years ago.  I was in that trial, and

14 the -- Judge Fitzgerald invented the what was called the super

15 preemptory language, and when it went up on appal, the

16 appellate court referred to it as super preemptory language.

17 And somehow it got changed into insurance neutrality language

18 over the years, and I don't know how that happened, but the

19 point of that wording was that that wording protecting insurers

20 had precedence over every other thing in the world that

21 happened in this case, whether it's -- the debtor and the

22 Committee want to just restrict that to the confirmation order,

23 but that's not how it works.  If it's super preemptory, if it's

24 in the TDP, if it's a solicitation package, whatever it is, the

25 INL trumps it, and that's a very important point.

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 42 of 87

41

1         Another problem I think that Mr. Winsberg did not

2   answer was that there's the phrase in the INL referring to the

3   district court and the documents issued, orders and so forth,

4   and we had put in issued or affirmed by the district court, and

5   we don't know why they deleted that wording.

6         It could be argued that then the -- if the district

7   court affirms a plan of reorganization because affirming was

8   struck, then the INL does not apply to that order confirming --

9   affirming the plan.  So, we think that wording should go back

10  in.  It should stay in, and there's absolutely no harm to

11  having it there whatsoever.

12        Another problem, Your Honor, is this <u>UNR</u> case.  This

13  is a really, really old case.  It must be 30 some years old

14  now, and it was a Seventh Circuit case that came out of the

15  Northen District of Illinois, and it was a very bizarre and

16  unusual case.  But,, basically, what that Court ruled was that

17  if there's a settlement between the debtor and the trust of any

18  amount of money, a trillion dollars, then that is the loss, and

19  the insurers then are bound by that loss.

20        And we've objected to that in every case we've been

21  in.  We've never had it imposed on us anywhere, and in

22  particular here with the policies we have, these are indemnity

23  policies, and there's no loss until the assured actually pays

24  that claim.

25        And so, this wording is extremely obnoxious to us,

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23    2024    Page 43 of 87

42

1  and we think the -- we should have the strict limitation that

2  they cannot do an <u>UNR</u> finding in this case, and we've asked for

3  that, and they took it out, which when they take it out, that

4  means they intended to do it.  So, that's a big problem for us.

5        They also deleted the phrase negotiation proposals,

6  solicitation or approval of the plan in the INL, and my good

7  friend Mr. Donato sort of belittled our objection to that

8  saying they know we haven't consented.  Well, let's just say we

9  haven't consented.  Let's just make it clear and leave all

10  those words in there.  There's no point in taking them out and

11  leaving them in makes it clear that we've not consented to any

12  of that.  No harm to the Committee.  No harm to the debtor.

13        Your Honor, one of the -- one real problem here is

14  the deletion of the enforcement mechanism.  That's a real

15  problem for us.  The -- what they've basically done is to take

16  the enforcement of this INL away from this Court and get it

17  into the state court.  So, the INL that we propose protects the

18  enforcement of that right by us or by any other neutrality

19  party.

20        So, the neutrality parties, there's a lot of them,

21  there's the Diocese, the participating parties, the Committee,

22  the Trustee, abuse claimants, abuse claimants reviewer and non-

23  settling insurers.  There are a lot of them.  So, if any of

24  those entities, such as an abuse claimant, sues LMI or

25  Interstate or any of the other insurers, then they would be

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 44 of 87

43

1   stuck with this language.

2        But what has happened actually in asbestos cases over

3   the years is despite the fact that it says it's super

4   preemptory, tort lawyers have gone into the courts and says,

5   well, it says super preemptory over here, but over here it says

6   something else, and my understanding, I haven't tried it, but I

7   know a lot of people who have, my understanding is that there

8   have been state court judges who said, oh, yeah, well, I don't

9   really find it super preemptory.

10        And so the -- they had a remedy under the asbestos

11   code, under 524(g), they had a remedy.  All they had to do was

12   go back to the district court and ask the district court to do

13   that because that's in the statute.  It gives them the right to

14   do that.  So one can imagine that a very favorable asbestos

15   claimants goes into state court, presents an excellent case,

16   wants to use the INL and the trial judge is maybe willing to

17   let that happen.  Then the insurers are not protected by this

18   wording.

19        The only way to do that is for this Court to enforce

20   this language, and that's what we want.  We want -- if they do

21   that, if there's an abuse claimant, if the Committee does it,

22   whoever goes in and tries to argue that, well, INL, doesn't

23   really apply here, we want to be able to come to this Court and

24   get an order and say, oh, yes, it does.  That's important to

25   us.  It's crucially important.

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 45 of 87

44

1          We do think the INL should be in the confirmation

2  order, but, again, we've not seen a confirmation order.  We

3  don't know what it's going to say.

4          We agree with Mr. Winsberg's comments on the two

5  additions 8.7.3 and 8.7.4, and I think he fully explained 8.7.4

6  from our point of view.  I did have one additional comment on

7  8.7.3.  That is a coverage finding this Court should not make,

8  but it goes further than that.  It's rewriting state law on the

9  remedies for breach of the insurance contract, and I'm

10 confident this Court won't go there, but nonetheless, I point

11 that out.

12         So, Your Honor, those are all my comments on the

13 insurance neutrality language.  Your Honor asked us for

14 comments, and so that's what we've done.  They may or may not

15 be exclusively related to the plan, but those are our comments.

16         I do have some more general comments in line with

17 some of the things Mr. Winsberg said.  It's been our experience

18 in these contested confirmations that there will be expert

19 witnesses, and one area of expert testimony is going to be how

20 do these insurance policies work, what is an indemnity policy,

21 how's it different from a liability policies, and that's very

22 important because almost all of the case law on the

23 assignability of insurance policies and whether they're

24 executor or not executory dealt with the liability policies,

25 and we don't have liability policies.

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 46 of 87

45

1          It's already been argued in the case, the plan

2    proponents have already cited cases that were only liability

3    policies, and they've said it applies to policies here, and it

4    doesn't because it's a totally different contract.

5          If you have a life insurance policy and your house

6    burns down, you don't get to collect from the house burning

7    down.  Those are two different kinds of policies, and we'll

8    have expert testimony on that.  We had that in -- I believe we

9    had that in Camden.

10         We don't know if they'll use Ms. McNally again or

11   not.  I don't think the total aggregate --

12         MR. R. KUGLER:  I'm going to object to the continual

13   reference to Ms. McNally.  We haven't even put her up as a

14   witness.  They're already impeaching her assuming she's going

15   to be there.  It's inappropriate.

16         THE COURT:  Objection sustained.  Thank you, Mr.

17   Kugler.

18         MR. ROTEN:  Well, he objected to something --

19         THE COURT:  We're moving into the scheduling issues

20   without -- we don't need names or anything in terms of who's

21   being used, but let's stick with the disclosure statement

22   because the Court is going to take a recess after we hear from

23   everyone, and then that will move into your application

24   shortening time, as well as the scheduling issue once we get

25   through that, so.

Case 20-30663-5-wak Doc 2281-2 Filed 10/25/24 Entered 10/25/24 17:58:39 Desc
Exhibit B- Transcript of Hearing Dated April 23 2024 Page 47 of 87

46

1          MR. ROTEN:  Yes, well, there was one -- Mr. -- I

2   wasn't going to address what the objection was, but I won't go

3   there anyway.  I did want to talk about the scheduling that

4   issues that Mr. Winsberg raised, and that's why I was going

5   into the need for experts.  I think we will have experts.  They

6   will almost certainly have experts, and we will have to --

7          MR. R. KUGLER:  I'm going to object to that again.

8   There's no evidence we're going to have any experts.  They're

9   presuming hypotheticals that aren't before the Court.  It's

10  crazy.

11         THE COURT:  Thank you, Mr. Kugler.

12         MR. ROTEN:  Oh, it's not crazy.  It's relevant.  They

13  --

14         THE COURT:  Mr. Roten, right now we're on the

15  disclosure statement.  We do have the 105(a) in terms of the

16  application from Interstate for a scheduling order that we

17  haven't been able -- we can't address because we don't have

18  anything to schedule yet --

19         MR. ROTEN:  Right.

20         THE COURT:  -- at this juncture.  So, let's back up

21  and stick with the disclosure statement.

22         MR. ROTEN:  Okay.  Well, then I was just going to

23  address the time period between -- assuming the Court does

24  approve the disclosure statement and then when confirmation

25  begins, I was going to address the time period between those

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 48 of 87

47

1  periods of time.  Does the Court wish me not to do that?  I

2  won't do that.

3          THE COURT:  Let's do that after we get through the

4  remaining of the disclosure statement issues because I don't

5  know if there's anyone on the phone that needs to be heard on

6  those as well.

7          MR. ROTEN:  Okay.

8          THE COURT:  Obviously, these are all so intermixed

9  that they've -- all the motions have kind of run into each

10 other.

11          MR. ROTEN:  Yes.

12          THE COURT:  But let's stick with the disclosure

13 statement right now.

14          MR. ROTEN:  Okay.  Well, we've already made all of

15 our other disclosure statement objections.  The Court has got

16 them, and we'll stick with them.  Thank you.

17          THE COURT:  Thank you.  Before we hear from the

18 phone, Ms. Champion.

19          MS. CHAMPION:  Thank you, Your Honor.  Erin Champion

20 for the United States Trustee.  Just very briefly, Your Honor.

21 I just want to reiterate a couple of points that the United

22 States Trustee has raised in previous objections, just so they

23 don't get lost or bogged down in all the arguments on insurance

24 neutrality.

25          You know, as the Court recalls, the United States

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 49 of 87

48

1   Trustee asked the Court to deny the disclosure statement and

2   the amended disclosure statements absent additional disclosures

3   as to the respective contributions of participating parties and

4   how the plan is being funded exactly, as well as the third

5   party release, and all the related relief that the United

6   States Trustee submitted to the Court that made the plan

7   patently unconfirmable, which of course, you know, we're

8   raising all of those issues with respect to confirmation.

9        The reason I wanted to get this on the record now

10  because it does appear that we're getting closer to possible

11  approval of the disclosure statement and there were certain

12  provisions in the proposed order approving the disclosure

13  statement that the United States Trustee takes issue with.

14       I haven't seen any circulated disclosure statement

15  other than what was attached to the amended plan, but one of

16  them is specifically ordered Paragraph Number 5, which provides

17  that the notice of the injunction exculpation and release

18  provisions in the joint plan comply with Bankruptcy Rule

19  3016(c).

20       Your Honor, the reason why that's an issue for the

21  U.S. Trustee is because we don't -- we submit that it does not

22  comply because it doesn't describe in specific and conspicuous

23  language all the acts to be enjoined and sufficiently identify

24  the entities that would be subject to the injunction, and

25  that's the language of Rule 3016.

49

1          And the reason why, Your Honor, it doesn't comply is

2   because we don't know yet if certain parties are subject to the

3   injunction because we don't know if they're even entitled to

4   those protections because we don't know if there's a

5   contribution, and all of those other facts that have come

6   through the confirmation hearing.

7          Your Honor, so at a minimum, I would just ask that,

8   you know, the United States Trustee sees any draft order for

9   approving the disclosure statement and that it makes clear that

10  the U.S. Trustee's rights are reserved with respect to the

11  issues raised in the U.S. Trustee's objections to the

12  disclosure statement that weren't already otherwise resolved.

13         Your Honor, in addition, in the section that was

14  addressing procedures for balloting and voting, I would ask

15  that there be language included that the debtor will provide or

16  make available copies of the signed ballots for the U.S.

17  Trustee to review.  I know that's something that was raised at

18  the initial hearing on the disclosure statement back in

19  February, and I think the Court was in agreement with that.

20         It's, especially, important given that the amount of

21  discretion that the plan contemplates for the debtor and the

22  Committee to determine what ballots are sufficiently filled

23  out, if there's discrepancies and that kind of thing, and, you

24  know, given the important role of the U.S. Trustee, that's

25  exactly why we're here to ensure the, you know, fairness and

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 51 of 87

50

1  transparency of that process, and we would just like to have

2  that information available for us.

3        And then, finally, Your Honor, just one thing that

4  came up today I just want to put on the record is that, you

5  know, as far as the reorganized Diocese is concerned, the

6  United States Trustee doesn't concede that point with respect

7  to post-confirmation obligations to file reports and quarterly

8  fees and that type of thing.  So, I just wanted to preserve

9  that issue as well.

10        And I think that's all I have, Your Honor, for now.

11        THE COURT:  Thank you.

12        MS. CHAMPION:  Thank you.

13        THE COURT:  Before we hear from the debtor, is there

14  anyone on the phone who wishes to be heard to add anything that

15  has not already been added?

16        MS. MACKSOUD:  Yes, Your Honor, very briefly.  This

17  is Lauren Macksoud from Dentons on behalf of Travelers.  We

18  just wanted to note for the record, Your Honor, that we also

19  joined the Interstate brief.  We share the concerns that were

20  discussed previously by Mr. Winsberg and Mr. Roten regarding

21  the insurance neutrality language and the timing for

22  confirmation.  Without the neutrality language as requested by

23  the insurers, we would ask the Court for sufficient time to

24  conduct broad discovery on a variety of issues that will then

25  exist in the case.  Thank you.

51

1          THE COURT:  Thank you, Ms. Macksoud.  Does the debtor

2    wish to respond?

3          MR. DONATO:  Thank you very much, Your Honor.  I

4    think frankly just by their own actions I think everyone is

5    confirming that we're talking about plan issues and not the

6    disclosure statement.  So, at this point I would respectfully

7    request the Court consider entering an 1125 order approving the

8    solicitation proposals, et cetera.  I know the Court is going

9    to take a break on this, but everything -- I didn't hear one

10   word about the disclosure statement, I don't think.

11         So, Ms. Champion's issues are easily resolved.  Of

12   course, Ms. Champion would see the order.  You know, we'll

13   settle the order with everyone of course.  There will be no

14   issues there.

15         We believe we understand our duties under <u>Purdue</u> in

16   regard to channeling injunction consideration, things like

17   that.  And we have no issues with the U.S. Trustee's request to

18   look at ballots.  I should have probably clear that with that

19   Committee, but I -- the Committee has no issues either.

20         So, as far as the U.S. Trustee concerns, I think

21   we're checking the boxes on all of the concerns, and of course

22   Ms. Champion would sign off or have the opportunity to sign off

23   on the disclosure statement order.

24         THE COURT:  And, Mr. Donato, Mr. Winsberg made a

25   particular point that got the Court's attention with respect to

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 53 of 87

52

1  the channel -- the solicitation -- I guess he called it the

2  solicitation order in terms of the injunction wasn't specific

3  enough to withstand scrutiny, I'm going by chicken scratch

4  notes here, in terms of the channeling injunction.

5          MR. DONATO:  Your Honor, I'm sorry.  We are fine with

6  that language, and I believe the Committee is, as well.

7          THE COURT:  Okay.

8          MR. DONATO:  The supplemental injunction piece, is

9  that --

10          THE COURT:  Correct.

11          MR. DONATO:  Correct.

12          THE COURT:  The Court just doesn't want to --

13          MR. DONATO:  You know, we're fine with that.

14          THE COURT:  -- as he correctly points out, go through

15  all of that and just wants to make sure that that's obviously a

16  notice issue that we need to do at this juncture.

17          MR. DONATO:  Absolutely, and we did send, it was just

18  this morning because we were negotiating the order, but it is

19  in that proposed draft.  We put that language in for the

20  carriers, just so the Court is aware.

21          THE COURT:  Thank you.

22          MR. DONATO:  Thank you very much, Your Honor.

23          THE COURT:  Okay.  The Court is going to take a 15-

24  minute recess, and we will reconvene at 2:30.

25          COURTROOM DEPUTY:  All rise.  The Court will take a

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 54 of 87

53

1  short recess.  The parties should reconnect in 15 minutes or

2  stay on the line.

3                         (Recess)

4             COURTROOM DEPUTY:  All rise.  You may be seated.

5             THE COURT:  Continuing with the one o'clock in the

6  Roman Catholic Diocese of Syracuse, New York.  The matter

7  that's currently before the Court is the approval of the

8  disclosure statement and associated solicitation procedures.

9             It is well-established that a Chapter 11 disclosure

10 statement must provide adequate information enabling claim

11 holders entitled to vote on a plan to make an informed judgment

12 about the plan, 11 U.S.C. Section 1125(a)(1).  Stated

13 differently, the information in a disclosure statement must be

14 reasonably practical to allow voting creditors to make this

15 informed judgment, see In re Momentum Manufacturing Corp., 25

16 F.3d 1132.

17            A disclosure statement must contain all pertinent

18 information bearing on the success or failure of the proposals

19 in the plan of reorganization.  A disclosure statement should

20 likewise contain all material information relating to the risks

21 posed to creditors and equity interest holders under the

22 proposed plan of reorganization.

23            The disclosure statement on the other hand should not

24 be burdened with overly technical and extremely numerous

25 additions where such information would serve only to diminish

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23  2024   Page 55 of 87

54

1  the understanding of a typical creditor or investor or interest

2  holder.

3      The Court notes here there have been four disclosure

4  statements filed in this case, and the debtor and the Committee

5  have added a tremendous amount of information in those

6  disclosure statements and corresponding plans to address the

7  Court's and other party's concerns.  Some of those issues may

8  have been more appropriately dealt with at confirmation, but

9  the Court sought to narrow the issues and streamline the

10  process to ultimately reduce the discovery and time frames and

11  corresponding expense from getting to confirmation.

12      The Court thanks all of the parties for their

13  tremendous efforts to meet and confer and resolve as many

14  issues as practical and possible pursuant to the Court's

15  direction.

16      Based on the record before it today, the Court

17  approves the disclosure statement dated April 16th, 2024 at

18  Docket 1818 concluding that adequate information is being

19  provided within the meaning of 1125(a)(1) of the Bankruptcy

20  Code.  As a result, the Court overrules the remaining

21  disclosure statement objections, including those objections

22  that the joint plan of reorganization is patently

23  unconfirmable.

24      The Court notes it will only consider confirmation of

25  a plan that is insurance neutral with any such provisions being

55

1 supervening and included in a confirmation order.  The Court

2 notes the concerns that were raised on the record today, in

3 particular concerning Section 8.7.3 of the plan.

4         The Court recognizes that all parties reserve their

5 rights to raise objections to confirmations, and the debtor and

6 the Committee have a heavy burden to achieve confirmation.

7         The Court also notes that process may be

8 significantly impacted by the impending decisions from the

9 Supreme Court in <u>Purdue</u> and <u>Truck v. Kaiser Gypsum</u>.

10        With that said, the Court will look to the debtor for

11 an order which we will need to discuss dates and scheduling

12 which is the next motion that we will deal with before we get

13 to the application to shorten time on the claims objections.

14        So, with that said, Mr. Donato, you have had an

15 opportunity, the debtor has an opportunity for quite some time

16 since March 22nd to review the Interstate and LMI motion in

17 terms of scheduling.  Obviously the impact of the insurance

18 neutrality language was going to significantly determine that

19 schedule.  I believe that the matter in the <u>Diocese of</u>

20 <u>Rochester</u> is September 3rd, and that's without I believe expert

21 testimony, but you can certainly correct me if I'm wrong.  What

22 is the debtor's position in terms of scheduling experts, et

23 cetera?

24        MR. DONATO:  The debtor and the Committee both

25 believe no experts are necessary.

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 57 of 87

56

1          THE COURT:  From the debtor's perspective.

2          MR. DONATO:  From the debtor and the Committee's

3    perspective.  This is a straight 1129 confirmation hearing.

4    There's none of the extra issues that existed in Camden or in

5    the Diocese of Rochester, things like this.  This is just

6    straightforward 1129(a) requirements.

7          I would submit that if discovery is going to be

8    accorded to the carriers, that they have to stay within the

9    confines of 1129(a).  I frankly don't think they have any right

10   to discovery as I think we have achieved insurance neutrality,

11   but I realize you're not making that determination today.

12         So, what we would propose is this.  We of course have

13   the five-month whatever it is, five-month schedule that we got

14   from the carriers, which of course was well before we added all

15   the extra information that you've -- that you referred to and

16   well before Mr. Winsberg advised everybody that if we put

17   insurance neutrality language in that would reduce any kind of

18   required discovery.

19         So, our initial position is is that the plan is

20   insurance neutral and the carriers don't have a right to

21   discovery.  If the Court is inclined to grant them discovery,

22   this is our proposal, and we understand that we are -- we may

23   be impacting on the Court's schedule, and we fully understand

24   if proposed dates are not available and things like that.

25         Also, you did observe Rochester, and in addition to

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23   2024    Page 58 of 87

57

1   the confirmation hearing being set for the first week of

2   September, we have an evidentiary hearing the last week of

3   July, July 29, which deals with the alleged administrative

4   claim held by the CNA.  We also have a court-ordered mediation

5   during the week of July 15.  So that we just -- we have quite

6   few things going on in <u>Rochester</u>, so you aware of that.

7        When we looked at the carrier's proposal, we looked

8   at it and we made several observations, (1) we don't think any

9   experts are needed, and, frankly, the carriers don't need

10  experts, too.  You can read the plan and determine whether it's

11  insurance neutral.  You don't need an expert to tell you

12  whether something is insurance neutral.

13       As far as the trust issues, they talked about

14  fiduciary duties or talking to the fiduciaries.  There's no

15  need to do, as well.  The carriers' rights are so protected.

16  It's just whatever issues they might have, they're reserved.

17  So that as far as any -- and what do they want?  You know, we

18  believe they are -- want to continue to delay.

19       And so this is what we would propose.  We propose

20  that the disclosure statement order obviously gets negotiated

21  and submitted to you.  We provide that -- we send out the

22  solicitation package on May 10, so it's two and a half weeks

23  from now.  Clearly, we've got to settle the disclosure

24  statement order.  So, I'm just, you know, observing and kind of

25  being optimistic, I think we will.  As indicated by one of the

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23   2024    Page 59 of 87

58

1  carrier's counsels, we did add the provisions that they were

2  referring to this morning.

3        So, my instincts are we would have to work with the

4  U.S. Trustee as well, but I think we could get that resolved

5  pretty quickly, and we would submit it to you.

6        So, what we're proposing, and, again, we understand

7  if the Court can't do this, but we -- you know, the Committee

8  has asked us because of the timing in four years, and if

9  there's any chance to get this done for the survivors, et

10 cetera, so this is what we propose.  The solicitation package

11 goes out on May 10th.  The balloting deadline is June 28th.  We

12 are asking for a confirmation hearing two days, and we don't

13 even think we need two days, but two days, and the first

14 request that we're asking is July 10 and July 11.

15       We believe there's -- in our mind there's no question

16 that discovery can be concluded between July 10 and today, and,

17 again, we understand that the Court may not have those dates

18 available.

19       We also understand that if we did two days at some

20 point and we couldn't finish, we could just agree to come back,

21 you know, when it's convenient, a couple of weeks kind of a

22 thing to finish up or another day of whatever is necessary to

23 move forward.

24       So, we're proposing I'd say as our initial approach,

25 just what I said, 5/10 is service date.  The ballot would be

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 60 of 87

59

1 June 28th.  We could of course build in objection deadlines for

2 plan, you know, plan objections and things like that.  And then

3 the idea would be to possibly have a two-day confirmation

4 hearing in July on July 10 and 11.

5          As far as the actual discovery, I'm looking at their

6 proposed -- their meaning the carriers, excuse me, as you -- if

7 you have it, they were proposing plus 140 days, which I think

8 is about five months, and that's just not necessary.

9          But if you look at what they did, they have quite a

10 bit of time in there concerning experts, and we don't think

11 experts are necessary.  And I believe that their rights to

12 discovery are limited.  I think they're limited to 1129(a)

13 issues.  What are those issues?  As far as questions of fact, I

14 think there's only two.  Good faith and feasability.  The rest

15 of the provisions I believe, I can pull the statute, but I was

16 reviewing it before I came in are more determinations that you

17 would make, you know, does the plan comply with Title 11

18 provisions, things like that.

19          But, feasability, I think that creditors -- I don't

20 agree that the carriers have this right, but creditors have a

21 right to probe on feasability.  A simple question, do you have

22 the money?  We think that that's reasonable for a creditor to

23 ask.

24          And of course good faith, it's always, you know,

25 there's some discussions about whether a good faith

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23    2024    Page 61 of 87

60

1 determination by Your Honor under 1129 somehow impacts

2 insurance neutrality.  I can't get the connection.  We have an

3 absolute right as the debtor to seek and secure all of the

4 protections that are accorded under Title 11, so we absolutely

5 have a right to, assuming we prove it, an 1129 good faith

6 standard, but that doesn't hurt the carriers.

7        Maybe they've been involved in cases where people

8 just made things up, but as I had indicated earlier, there's no

9 chance that anybody could prevail in another court on these

10 issues because all you got to do is look at what happened, as

11 you just said, four disclosure statements, 5,000 pages of

12 objections.  I mean, they're not hurt.

13        So, we think that we can get the discovery done.  We

14 can get -- we can do everything we need to do and prepare for

15 the hearing on confirmation, and, again, I know that this is

16 probably earlier than you were anticipating, July 10, if that

17 -- and July 11.  If that doesn't work, we have a couple of days

18 proposed in August, and then as a third backup we do have we

19 would propose the third week of September.  The idea being

20 there is we have the first week with Judge Warren.  We would

21 like to have a week to prepare for the Syracuse confirmation

22 hearing, and then it would be that following week.

23        THE COURT:  A couple of questions, Mr. Donato, and

24 then we'll circle back.  When you say August, what was August

25 dates?

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23    2024    Page 62 of 87

61

1          MR. DONATO:  Oh, I'm sorry.  August 21 and 22.   We

2  know that you had given us some dates and they don't line up

3  necessarily, so we fully understand that.  We just --

4          THE COURT:  Well, that's -- the Court has regular

5  motions that have already been published --

6          MR. DONATO:  Of course.

7          THE COURT:  -- on Thursdays.  So, the ones that

8  you've thrown out are Thursdays, and obviously the Court has

9  other matters on, as well.

10          MR. DONATO:  Of course.

11          THE COURT:  So, with that said, did the -- do you

12  anticipate having any survivors testify for an hour or two to

13  --

14          MR. R. KUGLER:  Absolutely, Your Honor.  There's

15  going to be interest in folks being able to share their impact

16  statements, and people have been waiting patiently, but they're

17  very interested in doing so.

18          THE COURT:  And do we think two hours, limiting that

19  to two hours within the time frame of what seems reasonable?

20  That seems something that's been done in other cases.

21          MR. R. KUGLER:  I don't know.  I think that's

22  probably right.  I'll tell you my experience in Baltimore was

23  that we had six survivors speak for an hour a couple of weeks

24  ago who have another hearing set aside for eight more survivors

25  to speak, and there's additional interest beyond that.  So, I

62

1  don't know where that will go.  I don't know that that's the

2  case here, but I don't know until we kind of set it and I start

3  hearing from folks that they have interest.

4          So, I think a couple of hours is a good start.

5          THE COURT:  Okay.  Well, I mean Mr. Donato is kind of

6  definitely proposing an expedited time frame for scheduling as

7  well an expedited two-day hearing.  If half a day is going to

8  be taken up by survivors, we need to understand how that's

9  going to impact and make sure everyone else has an opportunity

10 to be heard and fully argued.

11         MR. R. KUGLER:  Yeah, and we could always --

12 certainly the Committee does not want impact statements to get

13 in the way of confirmation.  To the extent that it was

14 appropriate, we could continue it over to a substantive date

15 after the confirmation hearing, but let me put it this way, the

16 Committee is flexible.

17         THE COURT:  All right.

18         MR. R. KUGLER:  Whatever is available

19 (indiscernible).

20         THE COURT:  Thank you, Mr. Kugler.  Okay.  I think

21 that that's certainly -- Mr. Donato, thank you for weighing in

22 on that.  And now I'd like to hear from the insurance companies

23 in terms of Interstate and LMI's and their original motion at

24 Docket 1755 that went through the 140 days and where they

25 believe that you now stand with that.

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23    2024    Page 64 of 87

63

1          MR. WINSBERG:  Yes, Your Honor.  I guess what I would

2    start with is the Diocese has every right to present its case

3    and seek whatever findings it seeks to find under 1129, but

4    there is a consequence to that, and if you have a plan that has

5    things in it that there are in addition to what's needed in

6    1129, like 11.1.1(a), we have an -- we have a right of due

7    process to take discovery on that.  We don't think it's needed,

8    and I'm kind of disappointed they didn't offer to delete it

9    today, but we are where we are.  And there doesn't appear to be

10   any changes, and so we're left with a plan which we believe is

11   insurance prejudicial.  The distribution claims has not been --

12         MR. DONATO:  I'm so sorry because I can help.  I can

13   help.  I think -- I'm very sorry to interrupt.  Counselor is

14   referring to that applicable law provision.  During the break I

15   asked the Committee, and the Committee confirmed we will take

16   that out.  We will make that change.  We'll leave it just -- I

17   think -- I don't have it in front of me, but it didn't violate

18   the Bankruptcy Code.  We'll take out the applicable law.  We

19   will do that and file a fourth amended joint plan, but I just

20   wanted -- and I'm sorry, I should have told you that during the

21   break to make that easier.  Excuse me.

22         MR. WINSBERG:  Well --

23         THE COURT:  Thank you.  It's an ongoing developing --

24         MR. DONATO:  I'm sorry.

25         THE COURT:  -- situation, and I appreciate that, and

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 65 of 87

64

 1 I do appreciate everyone's efforts in identifying these issues

 2 and working through them before the Court.

 3        MR. WINSBERG:   Okay.   So, Your Honor, with that, and,

 4 again, I got to look at the provision and see what it says.

 5 We're moving on the fly.   The idea was is that we put a

 6 schedule out there because we were and are concerned about

 7 being jammed, so to speak.   It's helpful to hear they're not

 8 going to have any experts.

 9        If there is an issue with distribution claims somehow

10 being asked for us to foot the bill with them, then there is

11 going to be some expert discovery on that -- on those points,

12 on the trust -- we would seek to have expert discovery and have

13 experts on things like trust governance and how the allocation

14 protocol proceeds because they could impact our rights.   It's

15 not foreclosed.

16        It's helpful what Mr. Donato said about the insurance

17 assignment.   We'll have to look at it.   We've outlined the

18 provisions and our concerns with the neutrality provisions and

19 as well as with the insurance assignment.   We've outlined those

20 in our papers and again today we share those with Your Honor.

21        Your Honor obviously controls your docket, and we are

22 and we have tried to be I hope -- you know, sensitive and not

23 engage in delay.   We really have worked very hard to try to

24 move this along.

25        As far as discovery, Your Honor, we are going to need

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 66 of 87

65

1  some discovery.  I don't think essentially like a month and a

2  half of discovery is realistic here.  Just the practicalities

3  of getting discovery in and out the door, even if everyone

4  cooperates, I don't think that's a sufficient amount of time,

5  nor is a two-day trial.  I mean I am fast and efficient, but

6  I'm not sure I'm that fast and efficient to get through it that

7  quickly.  We'll do everything we can, but Mr. Donato said he

8  needs a week to prepare for the trial.  That's what he just

9  said.  So I mean he kind of -- like which is it?  Is it simple

10 or is it not?

11         And so Your Honor gave dates, and I -- Your Honor,

12 what I wrote down, there were four weeks you had given the last

13 hearing.  You had given July 21 week, July 29, August 26th, and

14 September 9th.  I think those were the dates, the weeks you had

15 given out from my notes.

16         And Mr. Donato is correct, the CNA admin claim trial

17 in Rochester is the 29th I believe, so I think that's why he

18 removed it.  The other ones were I think he has a trial on

19 September 3rd.  I was looking at the September 9th date Your

20 Honor had given us as a date that would be acceptable for us.

21 We could also do Your Honor, if we had to, we'll do whatever

22 Your Honor (indiscernible).  We could also do August 26.

23         I would note that there was a notice that went out

24 about mediation dates in Albany, I think everybody is in this

25 case, is that week as well, but this trial takes precedent.

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23    2024    Page 67 of 87

66

1    So, that would be a week we could work backwards from.

2         We would ask as part of that and we could -- we'll

3    move as fast as we can, that we do see -- we'd ask them, the

4    plan proponents to prepare the confirmation order to look at it

5    to make sure -- I would hope based upon the statements today

6    we're not going to see any surprises in it, but, you know, we

7    have had that experience before, and that's not to say anything

8    that these professionals would do that, but we just have to

9    make sure there's nothing in addition to what we're dealing

10   with that's other than what's in the plan.

11        So, we would ask that the trial be the week of the

12   26th or September 9th.  Those dates would work for us and will

13   give us time to develop the factual record that we think we

14   need to move this case forward.

15        THE COURT:  And, Mr. Winsberg, in terms of discovery,

16   I'm confused as to what -- if they don't have experts, and the

17   Court's reading of the language with a few perhaps tweaks that

18   you can discuss behind is insurance neutral, that if they are

19   not handing you the bill for the distributions from the trust,

20   explain to me the discovery you need with respect to the trust

21   and the allocation protocol.

22        MR. WINSBERG:  Yeah, so, one is the language that we

23   suggested and now 4.4, they haven't accepted.  So, I think it

24   -- the idea that they can present distribution claims is alive

25   and well.  So, I don't think it's been foreclosed by the

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 68 of 87

67

1  language that they put into 4.4 that Your Honor had dictated,

2  and we had made the suggestion to an addition.  If that

3  addition was made, Your Honor, I think you're right.  I think

4  you're right.  I think that the idea of expert discovery on

5  trust governance and on the TDP goes away.  And I can refer

6  Your Honor to -- there was -- our filing, Your Honor, was at

7  Docket 1831.

8            THE COURT:  Which paragraph?

9            MR. WINSBERG:  And it was the paragraph at the top of

10  Page 12.

11            THE COURT:  Well, the Court isn't going to put the

12  debtor on the spot for that, unless the debtor wants to weigh

13  in on that.

14            MR. DONATO:  Well, I mean we're prepared to weigh in.

15  I mean it's -- I completely and totally -- the second piece, or

16  any abuse claim that is treated solely as a distribution claim,

17  they're actually looking for you to make a determination that

18  the trust is waiving some right.  I mean it's always amazing to

19  me because you spent so much time on not hurting --

20            THE COURT:  Yes.

21            MR. DONATO:  -- the carriers, and the carriers put in

22  a provision like this, and they specifically want the trust to

23  waive something.  And with the upmost respect, it's completely

24  inappropriate.  This document couldn't be clearer.  We've heard

25  from Mr. -- I'm sorry, counsel for months, they're going to

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 69 of 87

68

1 | hand me the bill, they're going to hand me the bill.  We have

2 | language in here that says the Trustee will not -- I cannot

3 | believe that we're discussing this.  It is absolutely clear to

4 | me that the distribution -- the Trustee cannot take a

5 | distribution claim and just hand it and tend to it to the

6 | carriers, and even if they did, the carriers have every right

7 | to deny it because all their rights are being preserved.

8 |         MR. WINSBERG:  Yeah.

9 |         MR. DONATO:  So, I don't get this piece, but that is

10 | a substantive waiver proposed by the carriers, and I frankly

11 | don't think it's appropriate, especially in view of the fact we

12 | spent four months trying to make sure we don't impact their

13 | rights.

14 |         MR. WINSBERG:  It's --

15 |         THE COURT:  Thank you.

16 |         MR. WINSBERG:  I guess two points.  I'm sorry, Your

17 | Honor.  Go --

18 |         THE COURT:  No.

19 |         MR. WINSBERG:  Just two points.  One, that's exactly

20 | what they tried to do with 8.7.3.  So, you know, for them to

21 | accuse us of asking for something that they put into their

22 | plan, which is exactly the same type of provision, they're

23 | asking us not to have any sort of affirmative claim.  So that's

24 | the same kind of ask.  And so I find that kind of, you know,

25 | not really consistent.

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 70 of 87

69

1          The second point is if it's true we're not going to
2  be handed the tab, then I don't see what the objection is, but
3  it's their plan.  I mean, the idea -- if -- the idea is is this
4  is for discovery purposes, and it's their plan.  If they don't
5  want this language, then they're free not to go forward with
6  it, and then we have a right then because it's clear, at least
7  to us, that there's a possibility that the allocation protocol
8  plans are going to be somehow tendered to us or sought payment
9  for, then there are real concerns we have with who these
10 fiduciaries are, how they were selected.  They didn't provide
11 Your Honor like Rule 2014 statements.

12         Like what's in the disclosure statement is just kind
13 of, well, like we have relationships with certain state court
14 counsel.  There's not the detail type of disclosures you would
15 have --

16         MR. R. KUGLER:  I'm going to object to that
17 characterization.  That's not what it says at all.

18         MR. WINSBERG:  It actually does.  We can pull it out.

19         THE COURT:  Well, please proceed with your proposal
20 for discovery.

21         MR. WINSBERG:  Yeah, so, Your Honor, just briefly,
22 like we do think there is some expert discovery that we're
23 going to have.  We are going to seek -- we're going to have
24 experts on how the trust and the trust fiduciaries impact our
25 rights.  And we think the current plan, even as changed, still

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 71 of 87

70

1   has some of that in it.

2           I would note that this original proposal we had was

3   140 plus days to a confirmation.  That's going to be shortened

4   now, and we're willing to accept that to move it forward, but

5   there is some discovery we're going to need on the fiduciaries

6   and the allocation protocol, as well as how -- some of these

7   findings in the plan that -- and we went over some of the other

8   ones earlier today, such as how that assignment works.  Like

9   it's not clear in our mind at least how that's going to work,

10  and someone has got to be able to testify as to how this

11  complies with either 363 or 365.  I would imagine -- if they

12  don't have any testimony on it, then so be it, but I would

13  think they'd want to have testimony on that.

14          So, we think there is some discovery that needs to be

15  done, and I don't think it can be done realistically in, you

16  know, 30 to 45 days.  We're not asking for a long period of

17  time.

18          The other point I would make to Your Honor is the

19  July 10th date, that's -- assuming we get the Supreme Court

20  decisions at the end of the term, that's not a lot of time

21  between those decisions coming out and the Court starting the

22  trial.

23          And depending on what -- and if the Supreme Court

24  affirms Purdue and affirms Kaiser, well, then there's nothing

25  really for us to say about or do about it, but if they do

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 72 of 87

71

1  anything other than that, I'm sure that's going to have some

2  impact or we imagine may have some impact on this plan.

3          So, just from a scheduling standpoint, I don't think

4  giving the parties, you know, basically a week or two to digest

5  it and for Your Honor to digest it, whether it matters to this

6  case, I think a little more time and thought would be helpful

7  here.  So that would be my only other point there.

8          THE COURT:  Thank you.  One more question, Mr.

9  Winsberg.  So how much -- how many days did you think needed to

10  be reserved for this?

11          MR. WINSBERG:  Your Honor, our experience it's

12  certainly not going to be 14, and I don't think it would go

13  more than a week.  It may be shorter, but I think in -- I think

14  to be safe -- and we can always lose days, but to be safe, you

15  had mentioned a week block off when you -- I guess when Your

16  Honor gave the dates, and we thought that was appropriate.  And

17  if it's shorter, it's shorter, and we give everybody their time

18  back.

19          But I think two days is awfully, awfully tight,

20  particularly if you're letting people get up and there's -- the

21  standard objections to every -- I mean these things, just as

22  Your Honor sat through trials, they just take longer than

23  everybody thinks they are, but I think no more than five days

24  is appropriate.

25          THE COURT:  And, Mr. Winsberg, you're also -- all

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 73 of 87

72

1  counsel is in the <u>Rochester Diocese</u> and the <u>Albany</u> meeting.

2  We're all talking to the same parties.  So --

3          MR. DONATO:  Except for Committee counsel.

4          THE COURT:  Thank you.

5          MR. WINSBERG:  In <u>Rochester</u> we're on the happy side

6  of that, and we'd be happy to be here, too, if we could -- we'd

7  be willing to go back to mediation.  I've said that off the

8  record, and I'll say it on the record.

9          THE COURT:  Thank you, Mr. Winsberg.

10          MR. WINSBERG:  Thank you.

11          THE COURT:  There's some additional dates, and,

12  again, the Court had looked at the motion at, you know, Docket

13  1755.  The Court isn't ruling on expert discovery, to the

14  extent that there's a dispute, whether that's necessary or not.

15          I'm reading that the disclosure statement and plan

16  that they will not hand you the bill and that won't have any

17  impact, but obviously counsel for the insurance companies has

18  had significant other matters pending where things have not

19  been interpreted that same way.

20          And I'm sorry, Mr. Roten, I didn't mean to cut you

21  off.  I know you're also a party to that motion at --

22          MR. ROTEN:  Well, you didn't cut me off.

23          THE COURT:  Let's hear from you in terms of what your

24  expectation is on the scheduling.

25          MR. ROTEN:  Yes, it's Russ Roten for London Market

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23   2024    Page 74 of 87

73

1   Insurers again, Your Honor.  Thank you.  Just a few

2   observations, if I could.  In every case I've been in the plan

3   proponents or the debtor has a very pollyannaish view of how

4   things are going to go.  They want to have quick discovery.

5   They want to have a short plan, and then everything is over,

6   and everything is happy, and then we go to reality.  So, that

7   when we want to take discovery, they resist, and they say we

8   can't have that person most knowledgeable testimony or the --

9   this guy is not available on a certain date, and we get into a

10  fight over discovery and timing of discovery.

11          Well, they may not have any experts, but we're going

12  to have experts.  If they don't want to depose our experts,

13  that's fine.  My guess is when we have experts, they're going

14  to have counter experts because they're not going to come to

15  trial here on those issues and let you hear only our expert's

16  view of things.  They're going to hire their own experts.

17  Let's be adults about this.

18          So, they want to depose our expert.  We want to

19  depose their expert.  We need to look at Rule 26 and see how

20  that's going to work because those rules don't always fit in

21  under the -- as Your Honor knows, under the Bankruptcy Rules.

22          So, I don't know right now how many experts we're

23  going to have, but I think we'll probably have three or four

24  experts is my best guess about that, and I expect that they

25  will have three or four experts to counter our experts, and

74

1 there will be depositions and there may be documents involved,

2 and there may be document productions involved in the

3 discovery.

4 So, you know, Your Honor, we're involved in a lot of

5 these cases. We've got something like 10 or 11 or 12 of these

6 cases going right now, and we're working all the time, and it's

7 very difficult. Even if all the discovery was just going to go

8 perfectly, and they're not ever going to have any expert, it's

9 difficult to wedge this in to July or August.

10 I think that Mr. Winsberg said September the 9th

11 would work for him, but I think my good faith Mr. Donato said

12 the third week in September. Well, what's going to happen,

13 Your Honor, is if we don't get some sort of pretrial order in

14 place that has a reasonable time frame for discovery, for a

15 reasonable method of authenticating documents and get them into

16 the record and doing a proper pretrial order, each side

17 discloses all their witnesses, whether they're experts or not

18 experts, until we do that, we'll just have chaos.

19 And so what will happen is, we'll start sprinting

20 toward August the 21st or August the 26th, and we won't have

21 any of this stuff done, and then we'll all have to come in and

22 have a motion to continue the case, and then we'll do the

23 order.

24 So, what we should do is we should sit down and do a

25 pretrial order now, put in discovery issues now. We really

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 76 of 87

75

1  need to see their proposed confirmation order to see what

2  findings of fact they want, so we can see what discovery we

3  need to do.  We need that.  That's really sort of the beginning

4  of this process.

5          So, if we take a mature attitude to this and try to

6  control this, we can get it done by September, but we can't get

7  it done before September, and if it's September the 9th or if

8  it's September the 23rd or whatever the third week in September

9  is, that's not of great importance to us, but I would just ask

10 the Court, Your Honor, to consider the practicalities of this

11 and what happens in discovery and how things change, so that we

12 can -- we don't get started down a path and then we have to

13 come back in here and ask Your Honor to reschedule everything.

14         You know, the expert we hired, they're busy.  They

15 have a lot of work to do, and they need documents before they

16 can given an opinion.  They need to see the facts, and we need

17 to know what it is we want them to testify about.  That takes

18 them time.  They can't just quit what they're doing and jump in

19 here.

20         So, we can't get all this done by July or August.

21 It's just not possible.  Thank you, Your Honor.

22         THE COURT:  Thank you, Mr. Roten.  Is there anyone on

23 the phone who wishes to be heard on the scheduling matters?

24                 (No audible response)

25         THE COURT:  Hearing none.  We obviously have a

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23    2024    Page 77 of 87

76

1  conflict in terms of how long and what's going to be done, and

2  the Court isn't ruling on whether any document discovery or

3  experts or any of that is appropriate or not appropriate, but

4  the Court has always made it clear that it would certainly

5  provide the insurance companies with a full and fair

6  opportunity to be heard.

7         It sounds like four days may be sufficient, and I

8  think a couple of the time frames that the Court pulled and the

9  Court is certainly cognizant of everyone, even though there may

10  be multiple professionals within the firm that could handle

11  trials, that these are kind of all hands on deck types of

12  matters.

13         The Court also has some additional -- working from

14  the proposed motion filed by Interstate and LMI at Docket 1755,

15  there's actually a detailed schedule in Paragraph 14 that the

16  Court had referred back and forth to at various -- hoping to

17  eliminate a couple of those entries, but at this point

18  apparently we're just not there.

19         And the Court also has other dates in terms of when

20  it needs, you know, original plus three copies of documents to

21  be admitted, and if there's any objections, you know, to

22  admission and things like that.

23         What the Court is inclined to do is to keep a August

24  26th date as the -- to work off of backwards, and then to also

25  ask, recognizing that this is an imposition, that we also keep

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 78 of 87

77

1  the week of that September 16th available in the event that we

2  need to -- if there's discovery disputes or other things or

3  something that we need to continue or for survivor testimony or

4  whatever we need to do to bring this matter to a conclusion.

5          The Court does have -- I don't think I've issued

6  September things yet, so the Court can do the -- you know, the

7  26th let's say through the 29th.

8          MR. DONATO:  Your Honor, I'm very sorry, but that --

9          THE COURT:  Certainly.

10          MR. DONATO:  I'm sorry to interrupt.

11          THE COURT:  Yes.

12          MR. DONATO:  That won't work.  That last week will

13  not work.  We had proposed earlier -- I know it's probably not

14  going to work, but it's not going to work for me.  I have a

15  family commitment in the middle of the week I have to be at,

16  and it's out of town.  Because of that, I apologize, I didn't

17  mean to interrupt you, but I --

18          THE COURT:  No, thank you.  Thank you.  Well, then

19  the Court -- we're inclined to go -- Mr. Roten is going to get

20  his way then for September 16th, and I believe that gave you

21  your week off.  That was one of the dates originally proposed

22  by the Court as something that we could work with.  That gives,

23  as indicated, an opportunity to digest whatever Supreme Court

24  cases are issued by that.

25          And, obviously, to the extent that you can meet and

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 79 of 87

78

1  confer on these other matters, I just -- I don't see what the

2  Court -- the Court has multiple obligations throughout July and

3  throughout August as well that simply -- it's at a scheduling

4  situation as well.  And I just don't think -- I don't think

5  early August is the only other opportunity, and I just don't

6  think that that's enough time.  I think we're just going to

7  wind up issuing an order that's going to be reissued multiple

8  times in light of the various deadlines as well.

9       So, with a September 16th date, we're going to need

10 to back into these dates and issue -- the Court will certainly

11 issue a pretrial discovery -- a scheduling order, and the Court

12 can also include in that its various dates in terms of

13 witnesses, the witness list deadlines, objections, you know,

14 copies of all the exhibits and the originals and things like

15 that, but also recognizing the Court needs sufficient time to

16 properly digest all of those filings as well and can't be under

17 the gun to be rushed into such an important proceeding without

18 having proper time to prepare.

19      So, with that said, some of these deadlines in your

20 motion may not apply if you are able to resolve some language

21 between now and then.

22      I guess what the Court will do -- what the Court will

23 propose because there's still so many moving parts within this,

24 the Court will put together a proposed order on dates, and why

25 don't we file that as a proposed order, and then we can have a

Case 20-30663-5-wak    Doc 2281-2    Filed 10/25/24    Entered 10/25/24 17:58:39    Desc
Exhibit B- Transcript of Hearing Dated April 23   2024    Page 80 of 87

79

1  105(a) to confirm, recognizing you all have many other cases,

2  and I don't want to issue a final order that somehow creates

3  undue problems for the parties, but also recognizing that if

4  one party has a conflict, we'll need to work forward and make

5  sure that we're proceeding without trying to herd cats.

6  Scheduling is a difficult concept when we have so many people

7  who will be here for this matter.

8         So, why don't we -- let's see what we have going on

9  here.  So we are already at April 23rd.  We have a May 9th

10  Chapter 12 and 13 calendar.  The Court would propose May 9th at

11  one o'clock by telephone, and it doesn't make any sense for

12  people -- I'm sorry.

13         COURTROOM DEPUTY:  I have this calendared 7/11 and

14  May 9th.

15         THE COURT:  Oh, even better.  We are already going to

16  be her on May 9th for 7/11.  You are correct.  So that gives us

17  two weeks, gives the Court two weeks to issue a proposed order,

18  and then the parties, to the extent that there's tweaks or

19  things that need to be eliminated or added to that, we can

20  certainly do that, which I think, in essence, resolves the LMI,

21  Interstate motion for expedited -- for a scheduling order in

22  connection with the confirmation.

23         MR. DONATO:  I'm interrupting you again.  I

24  apologize.  Steve Donato.  Both Mr. Sullivan and I are

25  traveling, but as long as we could call in on that May 9 date.

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 81 of 87

80

1              THE COURT:  Yes.

2              MR. DONATO:  But we wouldn't be able to come and

3    actually appear, just so the Court is aware.

4              THE COURT:  I believe we currently have a motion for

5    --

6              MR. DONATO:  I think we do.  I think that's --

7              THE COURT:  -- May 9th.  That is Mr. --

8              MR. DONATO:  Mr. Roten.

9              THE COURT:  -- Roten's motion.  So, let's -- just

10   before we turn to that, in concept does that make sense to all

11   of the parties?

12             MR. DONATO:  Yes.

13             MR. WINSBERG:  Yes, Your Honor.  Just -- I'll still

14   appear by telephone on May 9th?

15             THE COURT:  Yes.

16             MR. WINSBERG:  Okay.

17             THE COURT:  Yes.

18             MR. WINSBERG:  Thank you, Your Honor.

19             THE COURT:  And it may be that everyone says the

20   order is fine and there's no issues.  It may be -- hopefully

21   would be two minutes, but the Court hesitates to issue just

22   deadlines and have to -- then parties have to file a letter

23   saying, oh, this doesn't work for me.  So, I'm just trying to

24   work with so many moving parts.  Mr. Roten?

25             MR. ROTEN:  That works for us.  Thank you.

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23  2024   Page 82 of 87

81

1            THE COURT:  Perfect.  Mr. Kugler?

2            MR. R. KUGLER:  That works for us, Your Honor.

3            THE COURT:  Ms. Champion?

4            MS. CHAMPION:  Yes, thank you, Your Honor, that

5    works.

6            THE COURT:  Okay.  So, the Court will do that, and

7    then we will turn to -- so I believe that that resolves, in

8    essence -- we'll continue the 105(a), and Ms. Johnson will work

9    with you on the note for the calendar on the -- for the

10   scheduling order.  Docket let's see 1762, we'll adjourn that to

11   May 9th at one o'clock for phone only on that particular

12   matter, and I'll issue those instructions, specifically, in the

13   text order saying in person is not an option on that one.

14           So, I believe that that addresses everything and

15   brings us to the motion at Docket 1812, the 105 conference for

16   the application for an order shortening time for notice of

17   LMI's renewed motion for an order approving claim objection

18   procedures and approving discovery procedures and granting

19   related relief.

20           MR. ROTEN:  Yes, thank you, Your Honor.  Russell

21   Roten again.  If I understand it correctly, we had asked to

22   shorten time on the claims objections procedures to today, and

23   the debtor had objected, and we understand they didn't have

24   time to object, prepare and so forth.  So, we're not going to

25   try to make that heard today.

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 83 of 87

82

1          And I think it would -- it's now scheduled for May

2   the 9th, I believe it's when it's scheduled for, so I think

3   that dispenses with that motion.

4          THE COURT:  Thank you, sir.

5          MR. ROTEN:  Thank you.

6          THE COURT:  And so to the extent that that motion if

7   people -- people always have the opportunity right now to

8   either be in person or by phone.  So, the extent that people

9   were already planning on being here in person for that, that's

10  fine.  To the extent that that's by phone, that's as well.  I

11  just -- we're just trying to accommodate all counsel with busy

12  schedules.

13         MR. ROTEN:  Thank you.

14         THE COURT:  Thank you.  So, with that said, Mr.

15  Donato, do you have a proposed -- going back to the disclosure

16  statement order, I understand something was circulated this

17  morning, and I guess we need to back into some dates from that.

18         MR. DONATO:  Right, and you're saying just to have

19  several days to settle the order, is that what you're asking?

20         THE COURT:  Is that -- yes.  I --

21         MR. DONATO:  Yeah.  Right, so we sent -- got the

22  Committee approval this morning or last night and this morning

23  on the order, sent it to the carriers.  We will send it to Ms.

24  Champion as well and anyone else that should be receiving it.

25  Let's have them take a look at it.

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 84 of 87

83

1          Based on what we heard from the carriers since we

2   added those provisions, I think we should be close.  We have to

3   of course respect Ms. Champion's issues, as well, but we'll

4   send that out today to the U.S. Trustee, and then have a couple

5   of days to settle the order and --

6          THE COURT:  Well, that order is going to require

7   various deadlines in that for balloting and things like that.

8   So with the confirmation date just put out --

9          MR. DONATO:  Okay.

10          THE COURT:  -- let's see --

11          MR. DONATO:  So, we'd like to --

12          THE COURT:  I guess --

13          MR. DONATO:  Oh, sorry.

14          THE COURT:  Oh, I was just going to say we almost

15   need to wait then until May 9th until everybody signs off on

16   the proposed scheduling order that the Court will enter on the

17   docket in order to get those deadlines for ballots and backing

18   into all of those dates.

19          MR. DONATO:  I guess that's accurate.  I'm just

20   thinking out loud.

21          THE COURT:  Yes.

22          MR. DONATO:  The litigation schedule of course is a

23   scheduling order.  I wonder if we could pick a ballot date and

24   a service date because I -- I don't have the order in front of

25   me, but I think those are the two key -- and objection dates.

Case 20-30663-5-wak  Doc 2281-2  Filed 10/25/24  Entered 10/25/24 17:58:39  Desc
Exhibit B- Transcript of Hearing Dated April 23  2024  Page 85 of 87

84

1          THE COURT:  Yes, objection deadlines and -- we have

2  memorandums in support, we -- although that wouldn't be

3  necessarily in the --

4          MR. DONATO:  Exactly.  So, I'm thinking that if we

5  could pick a ballot date, and we had proposed June 28th, it

6  doesn't have to be that date, but --

7          THE COURT:  Give me just --

8          MR. DONATO:  No, I guess it's not going to work.  I'm

9  sorry.  I'm a little slow today because we're going to be back

10  here -- I guess if we could do the disclosure statement order

11  without what we have to do on September 9, which I think we

12  can, we can work backwards on the disclosure statement order,

13  set the confirmation hearing as -- you know, as you ordered in

14  September.  Back out two weeks prior for objections or three

15  weeks, that's kind of a thing.

16          We would like to get the ballots though.  I don't

17  want to -- I don't think it's good practice to have -- you

18  know, give 90 days for ballots.  I think that, you know, we

19  should stay in the 55, 60-day range.  Also balloting will give

20  us guidance.

21          THE COURT:  I agree.  I agree with that.  Well, why

22  don't you take a crack at those dates.  I would ask that -- and

23  send that version to Ms. Griffith with Word.  The Court may

24  tweak those a little bit --

25          MR. DONATO:  Of course.

Case 20-30663-5-wak   Doc 2281-2   Filed 10/25/24   Entered 10/25/24 17:58:39   Desc
Exhibit B- Transcript of Hearing Dated April 23   2024   Page 86 of 87

85

1          THE COURT:  -- certainly.  So, the Court notes that

2     -- I think, you know, we need to (indiscernible) date and --

3     this is an actual scheduling orders, yes, that's the scheduling

4     order -- that the Court have at least two weeks prior to review

5     all surreplies, everything --

6          MR. DONATO:  Got it.

7          THE COURT:  -- and also ballot certification,

8     confidential ballot certification, which obviously will be

9     accessible to Ms. Champion for the ballots and things like

10    that.  So you can back into that.  And then the Court can issue

11    a separate scheduling order for the parties who are litigating

12    here with final telephonic pretrials and things like that.

13         MR. DONATO:  Okay.  So, we'll do that.  We'll

14    recirculate the order.  We'll get input from our colleagues.  I

15    would expect a couple of days, and then we can advise the

16    Court.  Obviously if we have the order, wonderful; if we don't,

17    then we may have to come back.

18         THE COURT:  Certainly.  And then the Court will issue

19    its own separate scheduling order for the purposes of the

20    litigation with all of those dates that don't need to be in the

21    order approving the disclosure statement, and then we will just

22    issue a text order adjourning that 105 to May 9th at one

23    o'clock.

24         MR. DONATO:  Okay.

25         THE COURT:  Does anyone have any questions for the

86

1  Court?

2          MR. DONATO:  Thank you, Your Honor.

3          THE COURT:  Thank you.

4          COURTROOM DEPUTY:  All rise.  Court is adjourned.

5                        * * * * *

6

7                **C E R T I F I C A T I O N**

8          I, COLETTE MEHESKI, court approved transcriber,

9   certify that the foregoing is a correct transcript from the

10  official electronic sound recording of the proceedings in the

11  above-entitled matter, and to the best of my ability.

12

13

14  /s/ Colette Meheski

15  COLETTE MEHESKI

16  J&J COURT TRANSCRIBERS, INC.       DATE:  July 15, 2024

17

18

19

20

21

22

23

24

25