UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | **For Publication (WO)** |
|  | Case No. 20-30663 |
| The Roman Catholic Diocese of Syracuse, New York, |  |
|  | Chapter 11 |
| Debtor. |  |

**MEMORANDUM DECISION AND ORDER ON (I) THE IMPACT OF *TRUCK INSURANCE EXCHANGE V. KAISER GYPSUM CO., INC.* ON CERTAIN INSURERS' STANDING AND (II) RELATED DISCOVERY DISPUTES**

Before the Court are disputes regarding standing and discovery demands pertaining to confirmation of the *Third Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York dated April 16, 2024* (the "Third Plan" at Doc. 1848).[1] An Amended Order Setting Confirmation Hearing Schedule was issued establishing discovery and other deadlines, which led to the current disputes between The Roman Catholic Diocese of Syracuse, New York (the "Diocese") and the Official Committee of Unsecured Creditors (the "Committee" with the Diocese, the "Plan Proponents"), along with the Parishes and certain other Catholic-affiliated entities ("Parishes") on one side, and certain insurers, Interstate Fire & Casualty Company and Fireman's Fund Insurance Company ("Interstate"), Certain Underwriters at Lloyd's, London, and London Market Companies ("LMI") and Travelers Insurance Company Limited,

---

[1] The Plan Proponents have since filed a *Disclosure Statement in Support of the Fourth Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York* (the "Disclosure Statement for Fourth Amended Plan" at Doc. 2173) and related *Fourth Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York dated September 13, 2024* (the "Fourth Amended Plan" at Doc. 2172). A subsequent *Disclosure Statement in Support of Fifth Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York dated November 27, 2024* (the "Disclosure Statement for Fifth Amended Plan" at Doc. 2338) and *Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York dated November 27, 2024* ("the Fifth Amended Plan" or the "Plan" at Doc. 2337) have been filed in response to the Court's *Order Denying Approval of the Disclosure Statement in Support of Fourth Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York dated September 13, 2024* (the "Order Denying Approval of Fourth Amended Disclosure Statement" at Doc. 2308). Despite the submission of amended plans, this Decision is appropriate as the issues decided herein remain relevant to the confirmation process.

Travelers Casualty and Surety Company, and Traveler's Indemnity Company ("Travelers",

collectively with Interstate and LMI,the "Certain Insurers") on the other.  Recognizing the

Supreme Court's recent decision, *Truck Insurance Exchange v. Kaiser Gypsum Company*, 602

U.S. 268 (2024) ("*Truck*") would impact the analysis of the Certain Insurers' standing to raise and

be heard on various issues which will in turn permeate the discovery and confirmation process, the

Court directed any interested party to file a memorandum of law regarding the impact of *Truck* on

the discovery disputes.[2]  Subsequently the Plan Proponents filed the Fourth Amended Plan and the

Disclosure Statement for Fourth Amended Plan to address the Supreme Court's ruling in

*Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024) finding non-consensual third party

releases impermissible in a chapter 11 plan.  The parties agreed the *Truck* standing issue and the

discovery disputes remained relevant to confirmation of the Fourth Amended Plan and filed a joint

status report to clarify the outstanding disputes after many meet and confer sessions.[3]  The Court

heard extensive oral argument on the matters on October 18, 2024 (the "Hearing").  Thereafter,

the Plan Proponents filed the Fifth Amended Plan and Disclosure Statement for Fifth Amended

---

[2] The following briefs were filed: *Hartford Fire Insurance Company's Brief Regarding The Impact Of* Truck Insurance Exchange v. Kaiser Gypsum Co., Inc. ("Hartford *Truck* Brief" at Doc. 2063); *The Interstate Insurers' Brief Regarding* Truck Insurance Exchange v. Kaiser Gypsum Co. ("Interstate *Truck* Brief" at Doc. 2066); *Brief On The Impact Of* Kaiser Gypsum *On Insurers' Standing To Seek Discovery And Object To The Joint Plan Filed By The Official Committee Of Unsecured Creditors* ("Unsecured Creditors' Committee *Truck* Brief" at Doc. 2068); *Declaration Of Robert T. Kugler In Support Of The Brief On The Impact Of* Kaiser Gypsum *On Insurers' Standing To Seek Discovery And Object To The Joint Plan Filed By The Official Committee Of Unsecured Creditors* ("Attorney Kugler's *Truck* Declaration" at Doc. 2069); *London Market Insurers' Brief Regarding The Impact Of* Kaiser Gypsum ("LMI *Truck* Brief" at Doc. 2070); *The Roman Catholic Diocese Of Syracuse, New York's Memorandum Of Law Regarding Non-Settling Insurer Participation In Plan Confirmation Proceedings* (the "Diocese *Truck* Memorandum" at Doc. 2077); *Memorandum Of Law Regarding The Effect Of* Truck Insurance Exchange *On The Pending Third Amended Joint Plan Of Reorganization And Confirmation Hearing* (the "Parish *Truck* Memorandum" at Doc. 2078); *Travelers Insurance Company Limited, Travelers Casualty And Surety Company, And Travelers Indemnity Company's Brief On The Impact Of* Truck Ins. Exchange v. Kaiser Gypsum Co. Inc. ("Travelers' *Truck* Brief" at Doc. 2082); (collectively the "Truck Briefs") (note that all citations to page numbers in these filings reference page numbers placed by parties).
[3] *Joint Status Report of the Plan Proponents and the Certain Insurers Regarding Discovery* (the "Joint Status Report" at Doc. 2238).  The Court appreciates the parties' continued participation in meet and confer sessions attempting to resolve issues before seeking judicial intervention.

Plan in accordance with this Court's Order Denying Approval of Fourth Amended Disclosure Statement.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of this matter is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### I.  Application of *Truck*

#### A.  The Arguments

The Plan Proponents and Parishes initially assert *Truck* may have limited application since, unlike the insurance company in *Truck*, the Certain Insurers here have not acknowledged or been found to be financially responsible for the survivors' claims. Even if *Truck* applies, they contend the Certain Insurers are still limited by constitutional and prudential standing requirements when engaging in discovery and pursuing confirmation objections. They argue an insurer may only raise objections to plan provisions where it can demonstrate that it will "suffer a concrete and particularized injury in fact that is actual and imminent, not speculative, as a result of plan confirmation," and may only assert objections "relevant to their legal rights and interests as insurers, and cannot object to confirmation on the ground that a plan infringes upon the rights of another non-objecting party." *See* Diocese *Truck* Memorandum, at 4–5.

The Certain Insurers counter that after *Truck*, traditional notions of Article III and prudential standing no longer limit their ability to participate in the confirmation proceedings. As parties in interest under § 1109(b) of the Bankruptcy Code,[4] they can raise and be heard on any issue because the Plan might impact them in several ways. *See* Interstate *Truck* Brief, at 14; LMI

---

[4] All references to Title 11 of the U.S. Code shall be referred to as the "Bankruptcy Code" or the "Code" and sections of the Code will be referred to as "§ [section number]."

3

*Truck* Brief, at 6–11.  *Truck* eliminates an issue-by-issue analysis and gives them unrestricted standing to seek discovery and object to all plan provisions regardless of whether the matter at issue directly impacts, or could directly impact, them.  Interstate *Truck* Brief, at 14; LMI *Truck* Brief, at 8–9.  If the Certain Insurers may be affected by the Plan as a whole, they argue demonstrating a specific adverse impact is unnecessary.

### B.  The *Truck* Decision

In *Truck,* the Supreme Court addressed whether an insurer is a party in interest under § 1109(b) with standing to raise and be heard on confirmation objections even if a reorganization plan is purportedly "insurance neutral." Section 1109(b) provides:  "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).  The term "party in interest" is not defined in the Code and has been the subject of debate among courts.  In *Truck*, the Supreme Court clarified the list of parties in § 1109(b) is not exhaustive, and entities that are potentially concerned with, or affected by, a proceeding, are "parties in interest" within its meaning.  *Truck*, 602 U.S. at 277. Insurers like Truck Insurance "with a financial responsibility for a bankruptcy claim is sufficiently concerned with, or affected by, the proceedings to be a 'party in interest' that can raise objections to a reorganization plan." *Id*. at 271.  "[W]here a proposed plan 'allows a party to put its hands into other people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate objections addressed.'" *Id.* at 281 (quoting *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 204 (3d Cir. 2011), *cert. denied* 565 U.S. 1014 (2011)).  "This conclusion aligns with this Court's belief that Congress uses the phrase 'party in interest' in bankruptcy provisions when

it intends the provision to apply broadly." *Truck*, 602 U.S. at 278 (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 7 (2000)).

The Supreme Court listed several ways the bankruptcy proceeding could have a financial impact on Truck Insurance, including impairing its contractual rights and altering its obligations. "An insurer with financial responsibility for bankruptcy claims can be directly and adversely affected by the reorganization proceedings in these and many other ways, making it a 'party in interest' in those proceedings." *Id*. at 281.  As a result, the Supreme Court found the lower courts' focus on Truck Insurance's alleged insurance neutral treatment under the plan to be inappropriate. "Conceptually, the insurance neutrality doctrine conflates the merits of an objection with the threshold party in interest inquiry."  *Id*. at 283.  The inquiry of whether an entity is a party in interest is "whether the reorganization proceedings might affect a prospective party, not how a particular reorganization plan actually affects that party."  *Id*.  Insurers such as Truck Insurance are therefore parties in interest under § 1109(b).  *Id*. at 284.

### C.  Applicability of *Truck*

At the outset, the Plan Proponents argue that *Truck* is not applicable to this case.  While Truck Insurance's liability for defending and paying on asbestos judgments was conclusively established in state court, the Certain Insurers here have not acknowledged liability or been adjudicated to be liable for survivors' claims under their policies.  The Court rejects this argument. It is undisputed that the Diocese asserts the Certain Insurers have financial responsibility for the survivors' claims, having commenced the Adversary Proceeding[5] alleging breach of contract and seeking declaratory judgment to establish the rights and obligations of the Diocese, the Parishes

---

[5] On January 15, 2021, the Diocese commenced an adversary proceeding in this Court captioned as *The Roman Catholic Diocese of Syracuse, New York, v. Arrowpoint Capital, et. al.*, Adv. Pro. No. 21-50002 (the "Adversary Proceeding").

and the Certain Insurers under the insurance policies.  The Diocese is also attempting to assign its interest in insurance claims and recoveries against the Certain Insurers to the Trust.  *See* Plan, Section 8.2.6.  Under these circumstances, the Court finds that liability does not need to be acknowledged or adjudicated before the teachings of *Truck* apply.

In rejecting that argument, the Court finds the *Truck* analysis employed by the Supreme Court to be directly on point.  The Certain Insurers are parties in interest in this case under § 1109(b) and *Truck*.

### D.  Standing in Bankruptcy

Concluding the Certain Insurers are parties in interest does not end the analysis.  Contrary to the Certain Insurers' position, neither § 1109(b) nor the *Truck* holding satisfies or replaces constitutional and prudential standing requirements.   In bankruptcy court, a party must satisfy (1) Article III Constitutional standing; (2) federal court prudential standing; and (3) the party in interest standing under § 1109(b).  *See In re Diocese of Camden*, No. 20-21257, 2022 Bankr. LEXIS 2244, at *8-9 (Bankr. D.N.J. Aug. 12, 2022); *Parker v. Motors Liquidation Co.* (*In re Motors Liquidation Co.*), 430 B.R. 65, 92 (S.D.N.Y. 2010) ("section 1109(b) of the Bankruptcy Code does not satisfy or replace the constitutional and prudential limitations on standing.  Rather, a party must establish both.") (citing *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992); *Southern Boulevard, Inc. v. Martin Paint Stores* (*In re Martin Paint Stores*), 207 B.R. 57, 61 (S.D.N.Y. 1997)); *cf. Savage & Assocs., P.C. v. K & L Gates LLP* (*In re Teligent, Inc.*), 640 F.3d 53, 60 n.3 (2d Cir. 2011) (holding that an analysis on whether a party could challenge a settlement agreement requires both a "party in interest" test, as well as constitutional and prudential standing).  Accordingly, the Certain Insurers must still demonstrate they satisfy general standing requirements

to engage in discovery and pursue certain objections. *Diocese of Camden*, 2022 Bankr. LEXIS 2244, at *8–10; *In re Quigley Co.*, 391 B.R. 695, 703 (Bankr. S.D.N.Y. 2008).

The Certain Insurers each argue the Supreme Court's failure to address constitutional and prudential standing in *Truck* is an implicit rejection of these requirements and to hold otherwise violates the broad rights conferred upon them. This Court disagrees. Silence is not rejection, and nothing in *Truck* suggests the Supreme Court intended to eliminate general standing requirements for insurers or any other party in interest. To hold otherwise would upend decades of firmly binding precedent, contrary to the Supreme Court's direction:

> *We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent.* We reaffirm that *if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.* Adherence to this teaching by the District Court and Court of Appeals in this litigation does not insulate a legal principle on which they relied from our review to determine its continued vitality. The trial court acted within its discretion in entertaining the motion with supporting allegations, but it was also correct to recognize that the motion had to be denied unless and until this Court reinterpreted the binding precedent.

*Agostini v. Felton*, 521 U.S. 203, 237–38 (1997) (quotation marks and citations omitted, emphasis added).

In the absence of a clear rejection of precedential doctrine, the Second Circuit has found that *stare decisis* is maintained. *See, e.g.*, *Carr v. Senkowski*, No. 01-CV-689, 2007 WL 3124624, at *20 (W.D.N.Y. Oct. 23, 2007) (citing to *Agostini* when holding that in the absence of a clear overruling of early precedent, courts are to look at "the Second Circuit's clear directive."); *Sellan v. Kuhlman*, 63 F. Supp. 2d 262, 271 (E.D.N.Y. 1999) ("In the absence of a *definitive, contrary* Supreme Court ruling on this issue, it would appear that district courts must look directly to the law as established by the Supreme Court") (emphasis added), *aff'd*, 261 F.3d 303 (2d Cir. 2001);

7

*see United States v. Pettibone Corp.* (*In re Pettibone Corp.*), 251 B.R. 335, 338 (recognizing order

of precedential review); *Spartz v. Cornell* (*In re Cornell*), 178 B.R. 45, 48 (Bankr. D. Conn. 1995).

Here, with a lack of Supreme Court guidance directly on point, this Court must follow the existing

Second Circuit precedent which not only requires party in interest standing, but constitutional and

prudential standing as well. *Cf. Teligent*, 640 F.3d at 60 n.3. The Second Circuit has held:

> *The current Bankruptcy Code prescribes no limits on standing beyond those
> implicit in Article III of the United States Constitution* . . . for practical reasons this
> Court and others have "adopted the general rule, loosely modeled on the former
> Bankruptcy Act, that in order to have standing to appeal from a bankruptcy court
> ruling, an appellant must be 'a person aggrieved'—a person 'directly and adversely
> affected pecuniarily' by the challenged order of the bankruptcy court" . . . An
> appellant like Sprint, therefore, must show not only "injury in fact" under Article
> III but also that the injury is direct and financial.

*Dish Network Corp. v. DBSD N. Am., Inc.* (*In re DBSD N. Am., Inc.*), 634 F.3d 79, 88–89 (2d Cir.

2011) (citation omitted and emphasis added); *see Gordon v. Gazes* (*In re 22 Fiske Place, LLC*),

No. 21 CIV. 8087 (KPF), 2022 WL 2819093, at *8 (S.D.N.Y. July 18, 2022) (holding that

"1109(b) does not automatically grant statutory standing to the parties listed therein; a party must

still demonstrate a pecuniary interest in the order being challenged in order to have standing."),

*aff'd*, No. 22-1788, , 2023 WL 4278189 (2d Cir. June 30, 2023).

The Court finds additional support for its conclusion in the *Truck* record. It is notable that

the Fourth Circuit's decision was based "on both § 1109(b) grounds and Article III grounds,"

*Truck*, 60 F.4th 73, 77 (4th Cir. 2023), but the Question Presented and decided by the Supreme

Court was more narrow: "Whether an insurer with financial responsibility for a bankruptcy claim

is a party in interest that may object to a Chapter 11 plan of reorganization." Petition for a Writ of

Certiorari at (i), *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268 (2024) (No. 22-1079). In

8

addition, despite several discussions regarding Article III standing during oral argument,[6] the *Truck* decision is void of any reference to Article III and prudential standing.  In declining to address standing, the ruling in *Truck* is simply an answer to the narrow Question Presented and a clarification of who may be a party in interest under § 1109(b)—and not an implicit rejection of the requirement that a party must have prudential and statutory standing with a direct interest to engage in discovery and be heard on certain confirmation issues.

This reasoning aligns with the Supreme Court's recognition that "[t]he general theory behind [11 U.S.C. § 1109(b)] is that anyone holding a direct financial stake in the outcome of the case should have the opportunity (either directly or through an appropriate representative) *to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest*." *Truck*, 602 U.S. at 277–78 (quoting 7 Collier on Bankruptcy ¶ 1109.01 (16th Ed. 2023)) (emphasis added).  It does not overturn well established precedent recognizing that while "'[a] party in interest may object to confirmation of a plan, 11 U.S.C. §1128(b), it cannot challenge portions of the plan that do not affect its direct interests.'" *Quigley*, 391 B.R. at 703 (quoting *Greer v. Gaston & Snow* (*In re Gaston & Snow*), No. 93 Civ. 8517 (JGK), 1996 WL 694421, at *7 (S.D.N.Y. Dec. 4, 1996)); *see In re AbitibiBowater Inc.*, No. 09-11296 (KJC), 2010 Bankr LEXIS 3987, at *28–29 (Bankr. D. Del. Nov. 22, 2010).

The Second Circuit has recognized that "[b]ankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing

---

[6] *See, e.g.*, Transcript of Oral Argument at 9–10, *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268 (2024); *Id.* at 20.

> JUSTICE SOTOMAYOR: I'm assuming if we reach it on the government's theory or in your theory, that directly and adversely means an --is a party in interest -- that should be heard, that we don't have to reach the creditor issue or the Article III issue?
> MS. HO: That's correct, Your Honor.

*Id.* at 21–22.

himself.  Third-party standing is of special concern in the bankruptcy context where, as here, one constituency before the court seeks to disturb a plan of reorganization based on the rights of third parties who apparently favor the plan." *Kane v Johns-Manville Corp.*, 843 F.2d 636, 644 (2d Cir. 1988) (overruling creditor's challenge to voting procedures).   The Third Circuit has noted "[b]ankruptcy proceedings 'typically involve a 'myriad of parties . . . indirectly affected by every bankruptcy court order,'' so in the absence of [ ] a stringent standing rule, collateral appeals could proliferate and unduly slow the emergence of the filer from the proceedings." *In re Imerys Talc Am., Inc. v. Cyprus Hist. Excess Insurers*, 38 F.4th 361, 370–71 (3d Cir. 2022) (quoting *Travelers Ins. Co. v. H.K. Porter Co., Inc.*, 45 F.3d 737, 741 (3d Cir. 1995); *see Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988)); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 215 (3d Cir. 2004).

"Congress did not intend to grant all parties in interest standing to be heard . . . on every single aspect of the reorganization proposal and the effects of its consummation." *In re A.P.I. Inc.*, 331 B.R. 828, 860 (Bankr. D. Minn. 2005), *aff'd sub nom. OneBeacon America Ins. Co. v. A.P.I., Inc.*, 2006 U.S. Dist. LEXIS 34297 (D. Minn. 2006).   "The limits on standing are vital in bankruptcy where clouds of persons indirectly affected by the acts and entitlements of others may buzz about, delaying final resolution of cases." *In re Deist Forest Prods., Inc.*, 850 F.2d 340, 341 (7th Cir. 1988) (citing *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 641–46 (2d Cir. 1988)). Although the above precedent predates *Truck*, it is consistent with the Supreme Court's stated intention to allow the Certain Insurers a full and fair opportunity to be heard without allowing them to derail the confirmation process.  *Truck*, 602 U.S. at 284 ("§1109(b) provides parties in interest only an opportunity to be heard - not a vote or a veto in the proceedings.").

### i. Constitutional Standing

Days after *Truck* was issued, the Supreme Court reiterated the importance of Article III's

constitutional standing requirements:

> Article III standing is a "bedrock constitutional requirement that this Court has applied to all manner of important disputes." *United States* v. *Texas*, 599 U.S. 670, 675, 143 S. Ct. 1964, 216 L. Ed. 2d 624 (2023) . . . .

> For a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a "personal stake" in the dispute. *TransUnion*, 594 U.S. at 423, 141 S. Ct. 2190, 210 L. Ed. 2d 568 . . . .

> The fundamentals of standing are well-known and firmly rooted in American constitutional law. To establish standing, as this Court has often stated, a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief. *See Summers v. Earth Island Institute*, 555 U.S. 488, 493, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009); *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Those specific standing requirements constitute "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560.

> The second and third standing requirements—causation and redressability—are often "flip sides of the same coin." *Sprint Communications Co.* v. *APCC Services, Inc.*, 554 U.S. 269, 288, 128 S. Ct. 2531, 171 L. Ed. 2d 424 (2008). If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury. So the two key questions in most standing disputes are injury in fact and causation.

*FDA v Alliance for Hippocratic Medicine*, 602 U.S. 367, 378–81 (2024).[7]

Under the case or controversy requirement of Article III of the Constitution, a party "'must

have a personal stake in the outcome of the controversy' to have standing." *In re SVB Fin. Grp.*,

662 B.R. 53, 63 (Bankr. S.D.N.Y. 2024) (quoting *Breeden v. Kirkpatrick & Lockhart, LLP*, 268

B.R. 704, 708 (S.D.N.Y. 2001), *aff'd sub nom. Breeden v. Kirkpatrick & Lockhart LLP* (*In re*

---

[7] While the case involved standing of four pro-life medical associations and several doctors to challenge the FDA's action regarding the regulation of mifepristone, the guiding principles still apply.

*Bennett Funding Grp.*), 336 F.3d 94 (2d Cir. 2003)).  "A party seeking constitutional standing must demonstrate an 'injury in fact' that is 'concrete,' 'distinct and palpable,' and 'actual or imminent,' . . . [and that such] injury 'fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.'" *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990), *cert. denied*, 565 U.S. 1014 (2011)).

This standard is "very generous" and can be met as long as the party alleges a "specific, 'identifiable trifle' of injury," or a "personal stake in the outcome of [the] litigation." *Id.* (citing *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982)).  "Generally, a 'party in interest' with respect to a particular issue will also meet the requirement for Article III standing with respect to that issue.  Thus, the inquiries overlap." *Savage & Assocs., P.C. v. Mandl* (*In re Teligent, Inc.*), 417 B.R. 197, 210 (Bankr. S.D.N.Y. 2009) (citations omitted); *see SVB*, 662 B.R. at 66.  In the confirmation context, a party wishing to object to a plan must satisfy Article III standing, which courts have held is effectively coextensive with the party in interest standing under § 1109. *See Glob. Indus. Techs., Inc.*, 645 F.3d at 211.

Here, the Certain Insurers allege the Plan and Plan Documents alter their rights and obligations under their policies in many specific ways, which actually causes, or may cause them injury, including, *inter alia*, releasing the Diocese from its Post-Effective Date Insurance Obligations once funds are depleted from the DOS Entities' Post-Effective Date Costs Reserve, authorizing the release of third-party claims without the Certain Insurers' affirmative consent, and authorizing the Insurance Claim Assignment in violation of the Bankruptcy Code. *See e.g.*, Certain Insurers' Omnibus Discovery Brief, at 74–75 (LMI listing various provisions purportedly affecting the LMI Policies).  These potential injuries can be traced to the challenged action—the approval

of the Plan—and could be redressed by a decision denying confirmation.  As a result, the Certain Insurers have demonstrated they have constitutional standing to obtain certain discovery in connection with the Plan.

### ii.  Prudential Standing

Turning to prudential standing, "[t]he prudential standing doctrine is not derived from Article III of the U.S. Constitution . . . . It is a judicially crafted doctrine." *Texas v. Penguin Group (USA) Inc.* (*In re Elec. Books Antitrust Litig.*), 14 F. Supp. 3d 525, 534 (S.D.N.Y. 2014).  The Supreme Court has stated that prudential standing principles rely on "[1] the general prohibition on a litigant's raising another person's legal rights, [2] the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and [3] the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (citations omitted).  Courts in the Second Circuit recognize that "[p]rudential limitations on standing are especially important in bankruptcy proceedings which often involve numerous parties who may seek to assert the rights of third parties for their own benefit."  *Staff Mgmt Sols., LLC v. Feltman* (*In re Corp. Res. Servs.*), 2020 U.S. Dist. LEXIS 159260, at *9-10 (S.D.N.Y. Sept. 1, 2020) (citing *In re Old Carco LLC*, 500 B.R. 683, 691 (Bankr. S.D.N.Y. 2013), *aff'd*, 849 Fed. Appx. 320 (2d Cir. 2021)).  Importantly, the doctrine of prudential standing is applied on an issue-by-issue basis.  *Quigley*, 391 B.R. at 705; *In re Fencepost Prods., Inc.*, 629 B.R. 289, 298 (Bankr. D. Kan. 2021).

In this case, the Certain Insurers assert *Truck* entitles them to discovery on all aspects of the Plan because it impacts their policy rights and obligations.  The Plan Proponents counter that the Certain Insurers cannot pursue discovery on certain topics that would only implicate the survivors' treatment under the Plan.  Thus, the Certain Insurers may not seek discovery to support

Plan objections implicating those third parties' rights for their own benefit to delay the confirmation process.

Given the issue by issue analysis required, the Court will address standing for each request in the attached discovery ruling chart (the "Ruling Chart").  In general, most of the Certain Insurers' discovery demands are relevant to confirmation issues that may directly impact them or are related to their coercion claims and objections based on lack of good faith.  While those topics are ripe for exploration, to the extent the demands seek information concerning the Survivor Claims Reviewer, the Allocation Protocol and related topics, they will be limited in scope as the Disclosure Statement and Plan clearly state the Certain Insurers will not be responsible for the Trust distributions on the survivors' claims nor will those allocations be binding on the Certain Insurers in any forum.[8]  *See* Insurer Distribution Protections.  As a result, where only the third-party survivors' rights are implicated, the Certain Insurers lack prudential standing as to those matters.

### iii.  Party in Interest Standing

Finally, a party must demonstrate statutory standing under § 1109(b).  As noted above and consistent with *Truck*, the Certain Insurers have statutory standing as parties in interest as they may be directly and adversely affected by the Plan.  *See Truck*, 602 U.S. at 277-78.

---

[8] "Under no circumstance shall the Abuse Claims Reviewer's review of an Abuse Claim or a Distribution to an Abuse Claimant have any effect on the rights, defenses, or obligations of any Non-Settling Insurer." Fifth Amended Plan at Section 4.2; Disclosure Statement for Fifth Amended Plan at 34 (saying the same). "The rights and obligations (if any) of the Protected Parties and every Non-Settling Insurer under the terms of the Non-Settling Insurer Policies and at law shall not be affected by the Allocation Protocol and shall be treated as if the determination by the Abuse Claims Reviewer had never occurred. Each Non-Settling Insurer shall be entitled to all rights and defenses as are provided under the terms of its Non-Settling Insurer Policies as if the determination by the Abuse Claims Reviewer had never occurred." Fifth Amended Plan at Section 6.1; Disclosure Statement for Fifth Amended Plan at 49. "Nothing in the Plan, the Confirmation Order, or any Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim, or grant to any Person any right to sue any Non-Settling Insurer directly, relating to an Abuse Claim. All such obligations with respect to Non-Settling Insurers shall be determined by and in accordance with the terms of the Non-Settling Insurer Policies and with applicable non-bankruptcy law." Fifth Amended Plan at Section 6.1; Disclosure Statement for Fifth Amended Plan at 50 (collectively the above provisions are the "Insurer Distribution Protections").

## II.    The Discovery Disputes

With the above standing parameters in mind, we now turn to the specific Discovery Disputes.[9]  Generally, the parties propounded discovery demands in connection with confirmation, and ask the Court to determine if they are relevant, overbroad and/or burdensome or otherwise in contravention of Rule 26.[10]  If the demands are found to be within the relevancy and scope constraints of Rule 26, the parties argue various privileges apply that prevent disclosure of the documents and communications sought.   Alternatively, the parties request a protective order affirming the adequacy and completeness of their discovery responses and prohibiting movants from making further demands.   The Court will broadly address the arguments, applicable rules, and privileges relating to certain discovery categories below and will further particularize its rulings on standing and each disputed demand on the attached Ruling Chart.

---

[9] The Roman Catholic Diocese of Syracuse, New York's Memorandum of Law in Opposition to Anticipated Insurance Carrier Motion(s) to Compel or, Alternatively, in Support of Motion for Protective Order ("Diocese Opposition to Motion to Compel" at Doc. 2064); Hartford Fire Insurance Company's Motion To Compel The Debtor And The Holy Family Parish, St. Francis Of Assisi Parish And St. Mary Of Mount Carmel/Blessed Sacrament Parish ("Hartford Motion to Compel" at Doc. 2065); Declaration of Attorney Brendan Sheehan ("Sheehan Declaration" at Doc. 2071); The Plan Proponents' Omnibus Motion To Compel Objecting Insurers To Answer, Respond, And Produce Discoverable Information And Documents ("Plan Proponents' Omnibus Motion to Compel" at Doc. 2072); The Official Committee Of Unsecured Creditors' Memorandum Of Law In Opposition To Anticipated Insurance Carrier Motion(s) To Compel Or, Alternatively, In Support Of Motion For Protective Order ("Committee's Memorandum in Opposition to Certain Insurers' Motion to Compel" at Doc. 2074); Declaration of Robert Kugler in Support of The Official Committee of Unsecured Creditors' Memorandum of Law in Opposition to Anticipated Insurance Carrier Motion(s) to Compel or, Alternatively, In Support of Motion for Protective Order ("Kugler Declaration" at Doc. 2075); Insurers' Omnibus Discovery Brief ("Certain Insurers' Omnibus Discovery Brief" at Doc. 2076); Motion To Quash Subpoenas For Document Production Pursuant To Fed. R. Civ. P. 45 Issued By: (I) Interstate Fire & Casualty Company, Certain Underwriters At Lloyds, London And Certain London Market Insurers, And Travelers Insurance Company Limited And Travelers Casualty And Surety Company And Traveler's Indemnity Company, And (II) Hanover Insurance Company; And For A Protective Order Pursuant To Rule 26(C)(1) To Prohibit Enforcement Of Rule 34 Document Demands Served By Hartford Fire Insurance Company Upon Non-Parties (the "Parish Motion to Quash Certain Insurers' Subpoenas" at Doc. 2080) and Exhibit YY to Declaration of Brian Micic in Support of Insurer's Omnibus Discovery Brief ("Ex YY" at Doc. 2083) (collectively the "Discovery Disputes").

[10] All references to the Federal Rules of Civil Procedure shall be referred to as the Rules, and all references to the Federal Rules of Bankruptcy Procedure shall be referred to as the Bankruptcy Rules.

### A.  The Joint Status Report

Before ruling on the Discovery Disputes, the Court must address the Joint Status Report which provided an update on the outstanding disputes in light of the Fourth Amended Plan and additional meet and confer sessions.  With respect to the Potentially Resolved or Deferred Disputes identified in the Joint Status Report, the Court approves the stipulations contained therein and further finds as follows:

Section I(A):  As discussed at the Hearing, the Court was requesting that the parties submit formal motions to compel under Rule 45(d)(2) *in this Court* on the Proposed Trust Fiduciary disputes. However, it is the Court's understanding that the proposed Trust Fiduciaries were not served with subpoenas or the discovery motions and they did not appear at the Hearing.  The Court will defer any specific rulings on the Trust Fiduciary related disputes until they are properly before the Court, but with the hope of limiting future disputes, the Court finds the Certain Insurers have limited standing to propound discovery regarding the Survivor Claims Reviewer and the Allocation Protocol in light of the Insurer Distribution Protections.  However, the Certain Insurers are entitled to discovery on the various parties' relationships with the Survivors Claims Reviewer to explore their potential coercion claims and possible distribution enhancements under the Allocation Protocol.

Section I(B):  Travelers shall amend their discovery responses utilizing the Plan Proponents' defined term of "Insurance Polic(ies)" where applicable with a full reservation of rights and will provide certified copies of Insurance Policies.

Section I(C):  The Plan Proponents reserve all rights to move to compel disclosure of the Certain Insurers' Reserve Information and the Certain Insurers reserve all rights with respect to same.

Section I(D):   The Plan Proponents' discovery demands related to the Certain Insurers' claim valuation and/or analysis of survivor claims should be pursued in the Adversary Proceeding or the claim specific litigation implicating coverage issues.

Section I(E):   The Certain Insurers' propounded discovery on the Diocese seeking information on treatment and payment of Abuse Claims has been tailored and the Diocese has agreed to review its records to determine whether any survivor who filed a Proof of Claim or who is a plaintiff in a pending CVA action received compensation through the Independent Reconciliation Compensation Program ("IRCP").   If there are none, the Diocese will inform the Certain Insurers and, if any such claimants are identified, the Diocese will notify the respective Insurer to which such claims have been tendered of that determination.   The Court finds any additional pre-petition IRCP and pre-petition litigation information irrelevant to confirmation and should be more appropriately pursued in the Adversary Proceeding or the claim specific litigation implicating coverage issues.

With respect to the Ongoing Disputes discussed in the Joint Status Report:

Section II(A):   The issues regarding the common interest and/or mediation privilege between the Diocese and the Committee have been narrowed, and the Committee is to provide additional information on its privilege log filed under seal to include the date and subject of certain entries and produce documents identified in lines 1256 and 3642 of its log. The Court further addresses those privileges below.

Section II(B):   With respect to the Certain Insurers' claims that discovery is protected through the common interest privilege, the Court directed them to produce a copy of their joint defense agreement for review *in camera,* discussed below.

Section III: The Supplemental Discovery on the Plan is premature. The Certain Insurers

also note their objections to confirmation of the Plan are not yet due and they continue to develop

their legal theories and arguments. Because the Discovery Disputes arose in connection with the

prior plan and the latest Disclosure Statement has not been approved, the procedural posture of the

discovery process is out of order. Accordingly, the Certain Insurers' position that discovery on

forthcoming objections is premature and corresponding reservation of rights is appropriate. The

Court cautions that any supplemental discovery should be limited in scope and relate only to new

issues created by the most recent Plan and legal arguments resulting from changes in case law and

precedent that has developed since the Discovery Disputes originally arose.

### B. The Scope of Discovery

The Court turns now to the Discovery Disputes, as narrowed by the Joint Status Report.

Rule 26[11] requires the disclosure of "any nonprivileged matter that is relevant to any party's claim

or defense and proportional to the needs of the case, considering the importance of the issues at

stake in the action, the amount in controversy, the parties' relative access to relevant information,

the parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Courts find the relevancy requirement acts as a gatekeeper and should be the first item of inquiry

when reviewing discovery disputes. *See United States v. Community Health Network, Inc.*, Case

No. 14-cv-01215-RLY-MKK, 2024 U.S. Dist. LEXIS 78823, at *11 (S.D. Ind. Apr. 10, 2024). If

---

[11] Bankruptcy Rule 7026 makes Rule 26 of the Federal Rules of Civil Procedure applicable in adversary proceedings, and Bankruptcy Rule 9014(c) makes Bankruptcy Rule 7026 applicable in contested matters. *In re Cooper*, 592 B.R. 469, 488 (S.D.N.Y. 2018); *In re Quigley Co.*, 437 BR 102, 149 (Bankr. S.D.N.Y. 2010); *In re Ascentra Holdings, Inc.*, 657 B.R. 339, 349 (Bankr. S.D.N.Y. 2023) ("Under Rule 9014 the [disputed discovery motion] constitutes a contested matter as it does not fall within the definition of adversary proceedings under Rule 7001. Additionally, and pursuant to Rule 9014, Rule 7026 applies to contested matters.") (citation omitted); *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("The well recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed.R.Bankr.P. 7026.").

the information is irrelevant, then there is no need to go any further in the analysis. *See, e.g.*, *Vaigasi v. Solow Mgmt. Corp.*, No. 11CIV5088RMBHBP, 2016 WL 616386, at *13 (S.D.N.Y. Feb. 16, 2016) ("Because plaintiff has served . . . irrelevant requests . . . his motion to compel is denied on the ground that the document requests do not seek relevant information").  Information is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Reynolds v. Cnty. of Onondaga*, No. 5:22-CV-1165 (BKS/TWD), 2024 WL 4025866, at *1 (N.D.N.Y. Aug. 7, 2024).

"[D]iscovery in federal court is broad and permissive." *In re Air Crash near Clarence Ctr., New York, on Feb. 12, 2009*, No. 09-CV-294S, 2013 WL 5936975, at *1 (W.D.N.Y. Nov. 4, 2013). However, "this permissive standard is not unfettered," and a court "*must* limit discovery if it finds that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . . [or] if it finds that the burden or expense of the requested discovery outweighs its likely benefit." *Id.* at *2 (citations omitted) (emphasis added).  Courts place great weight behind this balancing of proportionality, and such considerations are intended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 605 B.R. 617, 629 (Bankr. S.D.N.Y. 2019).

In connection with a plan confirmation process, "[t]he requesting party bears the initial burden of demonstrating any possibility of relevance sufficient to warrant discovery, but once that showing is made, the party resisting discovery bears the burden of demonstrating that the requests are irrelevant, or are overly broad, burdensome, or oppressive." *Id*.  The consequence for a failure to disclose is significant: "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence

19

. . . at a hearing, or at trial, unless the failure was substantially justified or is harmless." *In re Quigley Co.*, 437 B.R. 102, 150 (Bankr. S.D.N.Y. 2010) (quotation marks omitted).

Rule 37 states "[a] party seeking discovery may move for an order compelling an answer, designation, production or inspection." Fed. R. Civ. P. 37(a)(3)(B). "Because the Federal Rules . . . are to be construed liberally in favor of discovery, . . . the party resisting discovery bears the burden of showing why discovery should be denied." *In re Aggrenox Antitrust Litig.*, No. 3:14-CV-572(SRU), 2017 WL 5885664, at *1 (D. Conn. Nov. 29, 2017). Generally, "discovery is limited only when sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant, or when the examination is on matters protected by a recognized privilege." *Trilegiant Corp. v. Sitel Corp.,* 272 F.R.D. 360, 364 (S.D.N.Y. 2010) (citation and quotation marks omitted).

The Plan Proponents' Omnibus Motion to Compel seeks answers, supplements or revisions to certain interrogatories, requests for admission, and requests for document production, arguing the Certain Insurers have failed to provide sufficient responses. The Certain Insurers assert they have provided all information that is discoverable and responsive to the requests. They also argue they are not required to respond to discovery relating to how the Plan affects them or how it fails to satisfy the Bankruptcy Code requirements for confirmation.

The Certain Insurers' Omnibus Discovery Brief contains a request that the Court compel the production of documents and information identified in the Diocese's and Committee's privilege logs. The Certain Insurers assert the particular entries they have identified are not subject to a privilege, or the privilege has been waived.

Several of the Discovery Disputes result from differing views of which party carries the burden of proof at confirmation. The Certain Insurers argue the Plan Proponents cannot shift their burden to show the Plan is proposed in good faith under § 1129(a)(3), and they do not have any

obligation to prove good faith is lacking.  It is well settled that "[t]he plan proponent bears the burden of establishing the plan's compliance with each of the requirements set forth in § 1129(a), while the objecting parties bear the burden of producing evidence to support their objections." *In re Hercules Offshore, Inc.*, 565 BR 732, 766 (Bankr. D. Del. 2016) (quoting *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 598–99 (Bankr. D. Del. 2001); *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 221 (Bankr. D.N.J. 2000)) (citations omitted)); *see also In re Young Broadcasting Inc.*, 430 B.R. 99, 128 (Bankr. S.D.N.Y. 2010).  As a result, the Certain Insurers must provide discovery in those areas they intend to use in support of their objections and affirmative defenses to confirmation.

### C.  The Privileges

If the Court finds the requested discovery relevant and the scope appropriate under Rule 26, the parties assert various privileges prevent disclosure.  The privileges fall into one or more of these four categories, and frequently overlap: (1) mediation privilege, (2) attorney work product privilege, (3) attorney-client privilege, and (4) common interest privilege.

### 1.  Mediation Privilege

The Plan Proponents and Parishes argue certain communications and documents may not be discovered because they are protected by the mediation privilege.[12]  The Mediation Order provided:

> . . . (1) the mediator and the participants in mediation are prohibited from divulging, outside of the mediation, any oral or written information disclosed by the parties or by witnesses in the course of the mediation; (2) no person may rely on or introduce as evidence in any arbitral, judicial, or other proceedings, evidence pertaining to any aspect of the mediation effort, including but not limited to: (a) views expressed or suggestions made by a party with respect to a possible settlement of the dispute, (b) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator, (c) proposals made or views expressed by the mediator, (d) statements or admissions made by a party in the

---

[12] *See* Order Referring This Adversary Proceeding to Mediation (the "Mediation Order" at AP Doc. 59).

course of the mediation, and (e) documents prepared for the purpose of, in the course of, or pursuant to the mediation; (3) without limiting the foregoing, Rule 408 of the Federal Rules of Evidence and any applicable federal or state statute, rule, common law or judicial precedent relating to the privileged nature of settlement discussions, mediation or other alternative dispute resolution procedure shall apply; and (4) information otherwise discoverable or admissible in evidence does not become exempt from discovery, or inadmissible in evidence, merely by being used by a party in a mediation.

*See* Mediation Order.

The Diocese contends all communications and documents between it, the Committee and the Participating Parties relating to the subject matter of the mediation, and any documents prepared in the course of, or pursuant to the mediation prepared or exchanged from the commencement of mediation on April 11, 2021 through the date the settlement on April 26, 2023 are protected from disclosure.[13]   Diocese Opposition to Motion to Compel, ¶¶ 25–30.   The Committee adopted the arguments.  Committee's Memorandum in Opposition to Certain Insurers' Motion to Compel, at 6–7.

The Certain Insurers argue the Plan Proponents' widespread and indiscriminate assertion of the mediation privilege is inappropriate and is waived because they intend to put plan negotiation and formulation at issue during confirmation to satisfy the good faith finding requirements of § 1129(a)(3).  They assert "the disclosure of mediation materials" is "critical to establishing whether the Plan satisfies Section 1129(a)(3)."  Certain Insurers' Omnibus Discovery Brief, at 8.  Even if the mediation privilege applies, they argue the information should be disclosed because there is: "(1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality."  *Savage & Assocs. P.C. v. K&L Gates LLP* (*In re Teligent, Inc.*), 640 F.3d 53, 58

---

[13] The Plan Proponents contend any documents or communications prepared or exchanged on or after April 26, 2023 are protected by the common interest privilege discussed herein.

(2d Cir. 2011). The Certain Insurers assert they must be able to explore negotiations and drafting of the Plan to determine whether it is the "product of coercion and part of an effort to shift the Diocese's liability onto the insurers" and therefore have demonstrated a "special need" for that discovery; failure to require the production "would result in unfairness to the Certain Insurers." Certain Insurers' Omnibus Discovery Brief, at 9.

The *Dandong* court offered instructive insight into the mediation privilege:

> In addition to relying on a test calling for a "compelling need," the opinion's policy rationale is the promotion of the confidentiality of mediation. That rationale favors a high threshold to overturn a presumption of confidentiality. The Second Circuit's analogy to the compelling need standard and its policy basis shows that a special need is akin to a compelling need. *A compelling need is a very high bar to overcome . . . .* Defendants' need is *certainly particularized or specific, but it is not special or compelling. It is not an extraordinary case when plaintiffs enter mediation against some of all possible defendants, and the remaining defendants want to use material from that mediation to impeach plaintiffs*. So finding would discourage plaintiffs from entering into mediation with any defendants when they do not want to enter into mediation with all defendants.

*Dandong v. Pinnacle Performance Ltd.,* No. 10 CIV. 8086 LBS, 2012 WL 4793870, at *5–6 (S.D.N.Y. Oct. 9, 2012) (emphasis added).[14]

Importantly, the mediation privilege ensures that meetings between parties are protected, which are necessary for an efficacious running of the judicial system, and "promotes the free flow of information that may result in the settlement of a dispute." *Accent Delight Int'l Ltd. v. Sotheby's*, 505 F. Supp. 3d at 284 (quoting *Teligent*, 640 F.3d at 57–58). Therefore, when a court considers ordering the disclosure of information that is subject to a mediation privilege, it must balance the public policy impact such an act would have.

---

[14] There is some debate among courts in the Second Circuit regarding what standard applies to the disclosure of information when the mediation privilege is asserted, *see Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 394 F. Supp. 3d 461 (S.D.N.Y. 2019), but such debate occurs when the mediation confidentiality is not court ordered. *See Accent Delight Int'l Ltd. v. Sotheby's*, 505 F. Supp. 3d 281, 285 (S.D.N.Y. 2020); *see* Mediation Order, ¶ 5.

The heightened standard for a court to require disclosure of information despite the presence of a mediation privilege has, in the Second Circuit and elsewhere, rarely been satisfied by movants who attempt to uncover information disclosed during these protected meetings. *See Accent Delight Int'l Ltd. v. Sotheby's*, 505 F. Supp. 3d 285; *Teligent*, 640 F.3d at 58 (recognizing vigorous enforcement of confidentiality provisions of ADR program); *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 977 (6th Cir. 2003); *United States ex rel. Strauser v. Stephen L. Lafrance Holdings, Inc.*, No. 18-CV-673 (GKF) (FHM), 2019 WL 6012850, at *2 (N.D. Okla. Nov. 14, 2019); *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 423 (D.N.J. 2009); *Lesal Interiors, Inc. v. Resol. Tr. Corp.*, 153 F.R.D. 552, 562 (D.N.J. 1994). Recently, the Third Circuit found that there was "*no unfairness* as all parties knew of the confidential nature of mediation when entering and *there exists a significant public interest in maintaining the confidentiality of settlement and mediation discussions.* We hold that there was no abuse of discretion in making this determination." *In re Zohar III Corp.*, No. 23-2549, 2024 WL 1929021, at *5 (3d Cir. Apr. 23, 2024) (emphasis added).

Given that the parties have recently resumed mediation, the mediation privilege takes on additional significance. It is absolutely critical for the parties to be fully engaged in settlement negotiations and share information necessary to further those efforts without fear of that information being disclosed outside of the mediation forum. The Ruling Chart reflects that heightened sensitivity. The Court also does not find the Certain Insurers have demonstrated a compelling need for the confidential material, or that their "special need" outweighs the interest in maintaining confidentiality. However, if the Plan Proponents and Parishes intend to proffer the substance of mediation discussions and Plan negotiations to demonstrate good faith under § 1129(a)(3) but do not produce discovery due to the mediation or another privilege, they will be

precluded from offering that evidence at confirmation.  As Judge Silverstein aptly noted in *the Boy Scouts of America* case: "It cannot be the case that if a party relying on the very fact of mediation to meet its standard of proof, that discovery is prohibited regarding the bona fides of the mediation."  *See* Certain Insurers' Omnibus Discovery Brief, Ex. R, at 14–15 (Transcript of BSA Oct. 15, 2021 Hearing).  To hold to the contrary would allow a confirmation trial by ambush.  Accordingly, the Plan Proponents shall either produce the requested documents and information or be precluded from offering into evidence the *bona fides* of the mediation.

## 2.    Attorney Work Product Privilege

The attorney work-product privilege protects documents or materials prepared in anticipation of litigation or trial from disclosure.  Fed. R. Civ. P. 26(b)(3).  An exception exists for materials that are: (i) otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.  *Id.*  The work-product privilege is not absolute and may be waived by disclosure provided that the disclosure is either inconsistent with maintaining secrecy against opponents or will substantially increase the opportunity for a potential adversary to obtain the protected information.  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, AP Nos. 08-1789 and 10-4292 (SMB), 2017 Bankr. LEXIS 3638, at *9–10 (Bankr. S.D.N.Y. Oct. 17, 2017).  However, the work product privilege is not waived if the communications are disclosed to a party that is participating in a "common legal enterprise" with the holder of the privilege.  *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015).

"Courts in the Second Circuit have found that documents fall under this definition if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'" *In re*

*Residential Cap., LLC*, 575 B.R. 29, 42 (Bankr. S.D.N.Y. 2017) (emphasis in original) (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)). "[A] document prepared in anticipation of litigation that also serves an ordinary business purpose is not deprived of work-product doctrine protection." *Id.* To the contrary, documents that are prepared in the ordinary course of business, or "would have been created in essentially similar form irrespective of the litigation," are not protected. *United States v. Adlman*, 134 F.3d at 1202. Furthermore, "privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Gucci Am., Inc. v. Guess?, Inc.,* 271 F.R.D. 58, 70 (S.D.N.Y. 2010).

Notably, opinion work product is entitled to absolute privilege: "[i]f the court orders discovery of [material protected by the limited privilege of standard work product privilege], it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Notwithstanding their relevance, the documents may be withheld or produced in redacted form to the extent they are privileged. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2017 Bankr. LEXIS 3638, at *9.

### 3. Attorney-Client Privilege

The attorney-client privilege doctrine exists to ensure communications between the client and the attorney remain confidential to "encourage full and frank communication between attorneys and their clients." *United States v. Zolin*, 491 U.S. 554, 562 (1989). In order to establish that an attorney-client relationship exists and is applicable, a party must show "[t]he relationship of attorney and client, a communication by the client relating to the subject matter upon which professional advice is sought, and the confidentiality of the expression for which protection is

claimed . . . ." *Enron Broadband Servs., L.P. v. Travelers Cas. and Sur. Co. of Am.* (*In re Enron Corp.*), 349 B.R. 115, 126 (Bankr. S.D.N.Y. 2006); *see Pritchard v. Cnty of Erie* (*In re Cnty. of Erie*), 473 F.3d 413, 419 (2d Cir. 2007) ("A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice.").

A confidential communication is one wherein "the circumstances indicate that it was not intended to be disclosed to third persons other than (1) those to whom disclosure is in furtherance of the rendition of legal services to the client, or (2) those reasonably necessary for the transmission of the communication." *In re Asia Glob. Crossing, Ltd*., 322 B.R. 247, 255 (Bankr. S.D.N.Y. 2005). Advice is defined in the Second Circuit as "the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Cnty. of Erie*, 473 F.3d at 419. Courts ultimately construe the privilege narrowly, as it is "an obstacle to the investigation of truth." *Asia Glob. Crossing*, 322 B.R. at 255.

### 4. Common Interest Privilege

"The common interest doctrine is not a separate privilege but an extension of the attorney client privilege." *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.,* No. 19CIV9193PGGSLC, 2023 WL 315072, at *7 (S.D.N.Y. Jan. 19, 2023) (citation and quotation marks omitted). "The Second Circuit has cautioned that expansions of the attorney-client privilege under the common interest doctrine should be 'cautiously extended.'" *Id.* at *8 (quoting *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999)). "Although, at its core, the doctrine protects communications between multiple clients represented by the same attorney, the doctrine is not limited to such situations[] . . . . the weight of authority is that the common interest doctrine does extend at least to situations where a joint defense effort or strategy has been decided upon and

undertaken by the parties and their respective counsel." *Id.* (quotation marks and citations omitted). The parties need not be aligned on every single issue; instead, the "parties need only share 'a common interest about a legal matter.'" *Quigley*, 2009 Bankr. LEXIS 1352 at *9, fn. 3 (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)).

"There are two elements of the common interest rule: (1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought were designed to further that interest." *Id.* at *8-9 (quotation omitted). "[S]ome form of joint strategy is necessary to establish the existence of a joint defense agreement, which would then operate to protect evidence under the common interest rule. As in all claims of privilege arising out of the attorney-client relationship, the proponent must establish that the communication was given in confidence, and under circumstances that made it objectively reasonable for the client to believe that the communication was confidential." *Id.* at * 9 (citations omitted).

The Certain Insurers assert the Diocese, the Committee and Parishes have expanded the common interest privilege beyond the timeframe when such common interest might have arisen and beyond its intended scope to include matters where the parties' interests were not aligned. They claim there can be no common interest privilege "until it was 'objectively reasonable . . . to believe that the communication was confidential,' through the execution of a finalized plan support agreement or similar document." They also argue the Plan Proponents failed to demonstrate they had a common interest with respect to all the Plan Documents, including the Allocation Protocol. *See* Certain Insurers' Omnibus Discovery Brief, at 15–16.

At the Court's direction, the Diocese provided documents for *in camera* review which confirmed a settlement between the Diocese, the Committee and the Parishes was reached by April

26, 2023.  A joint effort and strategy for Disclosure Statement and Plan formulation to effectuate the settlement was decided upon and undertaken by the parties and their respective counsel as of that date.  The common interest privilege therefore protects communications and documents exchanged among the Plan Proponents and Participating Parties on or after April 26, 2023 as they shared a common legal interest and the statements for which protection is sought were designed to further that interest.

With respect to the Certain Insurers' claim of common interest privilege, the Diocese alleges they have not met their burden to establish that privilege exists.  At the Court's direction, the Certain Insurers provided their Common Interest and Joint Litigation Agreement for review *in camera*.  While that agreement was purportedly effective as of the petition date, it was not signed by the first insurer until September 26, 2023 and not executed by the second insurer until 7 months later on May 8, 2024 (others followed thereafter).  As a result, the Court concludes a joint strategy existed as of May 8, 2024.  The question then becomes what is the appropriate starting point to produce inter-insurer communications in light of the respective burdens of proof, overbroad and relevancy concerns.  The Court will require the Certain Insurers to produce discovery responses from the filing of the first Disclosure Statement and Plan on December 6, 2023 through May 8, 2024 when the common interest privilege arose.  To the extent discovery was withheld during that timeframe based on the common interest privilege, the Certain Insurers shall amend their responses and produce relevant non-privileged documents.

Given the volume of discovery that has already been exchanged, to the extent the parties are required under this Decision to provide additional privilege logs, the Court will allow categorical privilege logs with the parties reserving their rights to object and request further specification in accordance with the Rules.

III.    **The Discovery Devices: Interrogatories, Requests for Admission and Requests for Production of Documents**

The Court will now review the various discovery devices utilized by the parties as relevant to the findings more specifically set out in the Ruling Chart.

### A.    Interrogatories

Rule 33[15] governs interrogatories and parties may seek information on "any matter that may be inquired into under Rule 26(b)."  Fed. R. Civ. P. 33.  The Plan Proponents argue the Certain Insurers' responses to interrogatories were insufficient due to: (i) improper citations to pleadings and other documents in lieu of detailed responses; (ii) nonresponsive answers; and/or (iii) no response.  They assert several of the Certain Insurers' responses were insufficient because their answers referred to "case filings and oral argument of their counsel."  Plan Proponents' Omnibus Motion to Compel, at 5–6.  The answers must "*be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories.*" *Id.* at 6. (emphasis added).  The Plan Proponents argue that certain interrogatories were contention interrogatories that required proper responses; "[c]ontention interrogatories [are interrogatories] asking a party what it contended or to state all facts upon which it based a contention, are perfectly legitimate." *Id.* at 7.  Simple refusals do not qualify as sufficient responses because the Certain Insurers should provide factual bases and legal analysis for such responses.  *Id.*

Given the manner in which the pleadings were submitted as directed by the Court, the Certain Insurers did not directly address the arguments by the Plan Proponents that interrogatories must not cite outside filings.  Regardless, it is established "[a]nswers to interrogatories that incorporate other documents by reference are strongly disfavored." *Trueman v. New York State*

---

[15] Bankruptcy Rule 7033 makes Rule 33 applicable to adversary proceedings; Bankruptcy Rule 7036 makes Rule 36 applicable to adversary proceedings. Bankruptcy Rule 7034 makes Rule 34 applicable to adversary proceedings. Bankruptcy Rule 9014(c) makes, *inter alia*, Bankruptcy Rules 7033, 7034 and 7036 applicable to contested matters.

*Canal Corp.,* No. CIV.109-CV-049LEK/RF, 2010 WL 681341, at *3 (N.D.N.Y. Feb. 24, 2010).

Accordingly, "[d]ocuments and testimony are often subject to interpretation and they do not serve

the same purposes as interrogatories.  Only a full response to the interrogatories comports with the

requirements of the Federal Rules." *Pouliot v. Paul Arpin Van Lines, Inc*., No. 3:02 CV 1302(DJS),

2004 WL 1368869, at *2 (D. Conn. June 14, 2004).   "Reference to depositions, other answers to

the interrogatories, other document production, the complaint itself, or any other documents are

improper and thus unresponsive . . . . In order for an answer to be adequate it must be a complete

response to the interrogatory, specific as possible and not evasive." *Trueman v. New York State*

*Canal Corp.,* 2010 WL 681341, at *3; *Matalavage v. Sheriff of Niagara Cnty.*, No. 20-CV-

1254SK(F), 2023 WL 2043865, at *8 (W.D.N.Y. Feb. 16, 2023) ("Because interrogatory

responses may be used at trial and, thus, are akin to testimony, they must be specifically answered

by the party to whom they are directed and signed by such party under oath. Accordingly,

Defendants' responses to Plaintiff's First Set of Interrogatories that cross-reference other responses

are improper.") (citation omitted).

As more fully set out in the Ruling Chart, the Court directs the parties to amend their

interrogatory answers to remove outside references and supplement their responses accordingly,

subject to any other applicable privileges discussed herein.

### B.  Requests for Admission

Requests for Admission are governed by Rule 36(a)(1) and are designed to provide an

effective and straightforward method of obtaining admissions of matters to avoid requiring them

to be proven at trial.  They may relate to (A) facts, application of law to fact, or opinions about

either; and (B) the genuineness of any described documents.  The responding party may admit,

deny, admit in party and deny in part or explain why they are unable to answer.  If the party denies

the request for admission, such denial must provide specific detail. Fed. R. Civ. P. 36(a)(4). In addition, any party objecting to a request for admission must provide specific grounds and not object solely on the ground that the request presents a genuine issue for trial. Fed. R. Civ. P. 36(a)(5). The Eastern District of New York recognized:

> "Requests for Admissions are not a discovery device much like interrogatories, demand for documents, or depositions, nor are they to be considered substitutions for them." *Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003); *see T. Rowe Price Small—Cap Fund, Inc. v. Oppenheimer*, 174 F.R.D. 38, 42 (S.D.N.Y. 1997); *Pasternak v. Dow Kim*, No. 10 CIV. 5045, 2011 U.S. Dist. LEXIS 113998, 2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011) ("RFAs are not a discovery device at all, since [they] presuppose[ ] that the party proceeding under [Rule 36] knows the facts or has the document and merely wishes its opponent to concede their genuineness.") (internal quotations and citations omitted) (alterations in original) . . . .

> Instead, the "Requests and corresponding answers are expeditious, efficient resolutions of factual issues and may, to a considerable degree, when propounded early in the litigation, control the cost of discovery as well. More important, the binding effect of Admissions is intended to lend clarity to the presentation of disputed facts in the litigation." *Henry*, 212 F.R.D. at 77. Further, the burden rests with the requesting party to ensure that the requests are set forth "simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification." *Henry*, 212 F.R.D. at 77; *see Booth Oil Site Admin. Group v. Safety-Kleen Corp*, 194 F.R.D. 76, 79 (W.D.N.Y. 2000); *Diederich v. Department of the Army*, 132 F.R.D. 614, 619 (S.D.N.Y. 1990); *T. Rowe Price*, 174 F.R.D. at 42. Once propounded, the respondent is required to admit the truth of the request unless there is a disagreement as to its truth. *Henry*, 212 F.R.D. at 77. In that instance, the party must either deny or object as to the nature of the request and any denial "must be forthright, specific and unconditional." *Booth Oil*, 194 F.R.D. at 80; *see* Rule 36(a). Any objection interposed must be directed at and specifically related to a particular request. *Henry*, 212 F.R.D. at 78. Thus, "[g]eneral objections without any reference to a specific request to admit are meritless." *Id.* (quoting *Diederich*, 132 F.R.D. at 616.).

*Neogenix Oncology, Inc. v Gordon*, No. CV 14-4427 (JFB) (AKT), 2017 U.S. Dist LEXIS 155429, at *7-9 (E.D.N.Y. Sep. 22, 2017).

The Plan Proponents challenge the Certain Insurers' responses to particular requests for admission, wherein the Certain Insurers responses were denials. *See* Plan Proponents' Omnibus Motion to Compel, at 9–10.  The Plan Proponents argue: (a) such denials are inappropriate as they either (i) lacked good faith justification to deny; (ii) admitted or denied in part without specifying which admission they were referring to; or (iii) refused to admit or deny; and (b) such denials are so against logic that an explanation is necessary. *See, e.g.*, *id.* at 11; *id.* at 14 ("Objecting Insurers must, at the very least, explain why the circumstances of this case or the features of their respective contracts justify their denial of long-settled law.").

Likewise, the Certain Insurers argue that responses by the Plan Proponents, specifically responses by the Diocese, to Certain Insurers' requests for admissions are "troubling" and require greater explanation, and arguments by the Plan Proponents that the plan speaks for itself fail to adequately respond to the requests. *See, e.g.*, Certain Insurers' Omnibus Discovery Brief, at 39–40.  Certain Insurers also argue that several responses by the Diocese and the Committee are incompatible with one another.  *Id.*

The Court finds the Certain Insurers have not fully or properly provided responses and directs them to provide answers as more fully set out in the Ruling Chart.  The Court further finds that the disputed responses by Plan Proponents are sufficient and denies the motions to compel.

### C.  Requests for Production of Documents

Under Rule 34(a), "[a] party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party . . . to inspect, . . . any designated documents or electronically stored information . . . ." Fed. R. Civ. P. 34(a).  The response must produce the documents or specify the objection.  *See* Fed. R. Civ. P. 34(b)(2)(B).  A request for production maintains the same standards as other discovery requests, whereby requests for

production that are "irrelevant or unavailable" need not be produced. *See Factor v. Mall Airways, Inc.*, 131 F.R.D. 52, 54 (S.D.N.Y. 1990) (caveating an order to compel with such a standard).  When answering a request for production, it is generally allowed for a response to refer to another response in lieu of answering fully and specifically, if said response adequately and sufficiently complies with the request for production.  *See, e.g.*, *Napolitano v. Synthes USA, LLC*, 297 F.R.D. 194 (D. Conn. 2014).

The Plan Proponents argue that refusals by the Certain Insurers to produce certain documents based on privilege and relevance grounds pertaining to rights, claims, defenses and economic interests lack merit. *See* Plan Proponents' Omnibus Motion to Compel, at 17.  As to relevance defenses, the Plan Proponents argue the "Insurers have [] placed the issue of the existence of their rights, claims, defenses, and economic interests at issue, and so the Plan Proponents need discovery to address objections arising from these misguided theories." *Id.* at 18. As to privilege defenses, the Plan Proponents argue certain documents are non-privileged, and therefore the Certain Insurers should be compelled to produce said documents.

With regard to the requests for production by the Certain Insurers on the Plan Proponents, the Certain Insurers contend the privileges asserted by the respective Plan Proponents are improper.  The Certain Insurers reiterate the same defenses as they did for interrogatory and request for admission discovery requests.

Several of the defenses raised by parties are rejected for reasons elaborated in the Ruling Chart, and parties are directed to produce such documents as reflected therein.

### D.  The Parishes' Motion to Quash Subpoena

The Parishes request the Court quash the subpoenas issued by the Certain Insurers.  Rule 45(d)(3)(A) *requires the* court to quash or modify a subpoena that, *inter alia*: (iii) requires

disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.[16]  Fed. R. Civ. P. 45(d)(3)(A).

The Certain Insurers' requests fall into two categories: (i) information regarding the Parishes' contributions to the Trust; and (ii) discovery concerning abuse claims.  The Court concludes there are no grounds requiring the subpoenas to be quashed but finds there are grounds to modify the information to be produced.  The Certain Insurers are entitled to limited information regarding the Parishes' contributions to the Trust as a whole, as the amounts and ability to make those payments directly impacts plan feasibility.  The Parishes previously provided financial information, including statements of assets, or balance sheet and income statements for the fiscal year ending June 30, 2022.  *See* Parish Motion to Quash Certain Insurers' Subpoenas, at 3–4.  The Court directs the Parishes to provide updated financial information for the years ended June 30, 2023 and June 30, 2024 to the extent available.  The Parishes are not required to provide additional financial information.

The Certain Insurers' requests for documents and communications concerning abuse claims are not relevant to confirmation and may be appropriately addressed in the Adversary Proceeding or the claim specific litigation implicating coverage issues as appropriate.

Finally, the Court rejects all arguments that have been proffered by parties and which the Court has not specifically addressed, including issues raised by the Certain Insurers regarding the Court's equitable powers.

### Conclusion

With this Decision, the Court partially grants certain motions: to compel, for protective orders and to quash, and denies certain other relief requested.  These rulings are intended to

---

[16] Bankruptcy Rule 9016 makes Rule 45 applicable to cases under the Bankruptcy Code.

streamline discovery going forward, but the Court notes there are a large number of disputed issues and thousands of pages of documents involved; thus, the Decision may clarify many issues yet create additional disputes and interpretations of its rulings.  The Court expects any unresolved disputes will be narrow and capable of a prompt resolution, and directs the parties to continue with their meet and confer sessions to attempt to resolve those matters.

SO ORDERED.

Wendy A. Kinsella
United States Bankruptcy Judge

# Timeline of Privileges



**Certain Insurer's Discovery Requests on Plan Proponents[1]**

| Discovery Request | Certain Insurers on Plan Proponents | | |
| --- | --- | --- | --- |
| | Interrogatories | | |
| | Party | Standing | Ruling |
| **Interrogatory 1**<br>Identify all Persons who were responsible for negotiating, evaluating or preparing the Disclosure Statement, the Plan, the Trust Agreement, the Allocation Protocol or any of the other Plan Documents, including the preparation of any drafts. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| **Interrogatory 3**<br>Identify all defense counsel in the Underlying Litigation and the person or persons responsible at the Diocese for the handling, defense, and/or resolution of any Abuse Claims asserted in the Underlying Litigation. | Diocese | Yes | The Court holds that the response is sufficient. The request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| **Interrogatory 4**<br>Identify each case in the Underlying Litigation that was resolved prior to the Petition Date and, for each case identified identify how it was resolved and for what dollar amount. If any case identified in response to this Interrogatory was resolved through a settlement, identify the amount of the settlement and the type of abuse | Diocese | Yes | The Court holds that the response is sufficient. The request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |

---

[1] All references in this and subsequent charts to Sections 1, 2, 3, or 4 are references to this Decision's Article III, Section C, Heading 1, 2, 3, or 4, that discuss the mediation privilege, attorney work product privilege, attorney-client privilege, and common interest privilege respectively.

| | | | |
|---|---|---|---|
| alleged. Identify which, if any, of the Evaluation Factors, were used in deciding whether to settle any case and in determining the dollar amount of the settlement. | | | |
| Interrogatory 5<br>Identify the Diocese's role in selecting the Abuse Claims Reviewer, including who from the Diocese interviewed candidates for Abuse Claims Reviewer, what criteria were applied in the selection of the Abuse Claims Reviewer, and any prior relationship the Abuse Claims Reviewer had with any Person affiliated with the Diocese. | Diocese | Yes | The Diocese is directed to respond to the interrogatory subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| Interrogatory 6<br>Identify the Diocese's role in selecting the Trustee, including who from the Diocese interviewed candidates for Trustee, what criteria were applied in the selection of the Trustee, and any prior relationship the Trustee had with any Person affiliated with the Diocese. | Diocese | Yes | The Diocese is directed to respond to the interrogatory subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| Interrogatory 8<br>Identify what criteria the Trustee will use to grant authorization for any holder of an Abuse Claim to elect treatment as a Litigation Claimant and to make a final decision as to whether a Litigation Claim is pursued under Section 4.3.1(b) of the Plan. | Diocese | Yes | The Diocese is directed to amend the response to remove references to other filings and supplement as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| Interrogatory 11 Identify what criteria the Trustee will use to determine whether to request that the Abuse Claims Reviewer re-evaluate an Abuse Claim for the purpose of assigning an increased points score under Section 3.2(b) of the Allocation Protocol, including what "additional efforts and contributions resulting from such Survivor's pursuit of his or her Litigation Claim" would warrant increased points. | Diocese | Yes | The Diocese is directed to amend the response to remove references to other filings and supplement as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
|---|---|---|---|
| Interrogatory 12 Identify who will be responsible for the Post-Effective Date Insurance Obligations, and to the extent the Diocese, the Reorganized Diocese, or the Participating Parties are responsible for any Post-Effective Date Insurance Obligations, identify the Person who is responsible for each Post-Effective Date Insurance Obligation, and who will have decision making authority to act on behalf of such Person. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Interrogatory 13 Identify what You believe will be the total DOS Entities' Cash Contribution under the Plan, how that amount will be divided among the Diocese and the Participating Parties, and what financial projections were used by the Diocese to determine how | Diocese | Yes | The Diocese is directed to amend the response to remove references to other filings and supplement as necessary and identify the financial projections used; subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| | | | |
|---|---|---|---|
| the amount will be divided among the Diocese and the Participating Parties. | | | |
| Interrogatory 14<br>Identify which Person or Persons, if any, will be responsible for defending against Litigation Claims brought under the Plan and under what circumstances each such Person will be responsible for defending against such Litigation Claims. | Diocese | Yes | The Diocese is directed to amend the response to remove references to other filings and supplement as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| Interrogatory 17<br>Identify whether and how the Diocese consulted with plaintiffs regarding the management, timing, venue, or sequencing of the Underlying Litigation prior to the Petition Date. | Diocese | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| Interrogatory 18<br>Identify which, if any, of the Evaluation Factors, the Diocese used prior to the Petition Date when valuing Abuse Claims. | Diocese | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| Interrogatory 21<br>Identify and explain Your procedure for noticing claims and reporting claim developments to each Certain Insurer pertaining to the Underlying Litigation prior to the Petition Date. | Diocese | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |

| | | | |
|---|---|---|---|
| Interrogatory 22<br>Identify and explain Your procedure for each Certain Insurer in the Abuse Claims' defense strategy and resolution pertaining to the Underlying Litigation prior to the Petition Date. | Diocese | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| Interrogatory 23<br>Identify and explain Your procedure for seeking reimbursement of any settlement pertaining to the Underlying Litigation prior to the Petition Date from the Certain Insurer Policies. | Diocese | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |

| | Interrogatories Certain Insurers on Plan Proponents | | |
| Discovery Request | Party | Standing | Ruling |
| --- | --- | --- | --- |
| Interrogatory 1<br>Identify all Persons considered for the role of Trustee and identify who from the Committee and/or counsel for Abuse Claimants interviewed those candidates. | Committee | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Interrogatory 2<br>Identify all Persons considered for the role of Abuse Claims Reviewer and identify who from the Committee and/or counsel for Abuse Claimants interviewed those candidates. | Committee | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Interrogatory 3<br>Identify all Persons who were responsible for negotiating, evaluating or preparing the Disclosure Statement, the Plan, the Allocation Protocol, the Trust Agreement and/or any of the other Plan Documents, including the preparation of any drafts, and for each Person identify what portion(s) of the Disclosure Statement, the Plan, the Trust Agreement, the Allocation Protocol, and/or any of the other Plan Documents they were responsible for negotiating, evaluating or preparing. | Committee | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Interrogatory 8<br>To the extent that your responses to the Certain Insurers' First Requests for | Committee | Yes | The Committee is directed to amend the response to remove references to other filings and |

| | | |
|---|---|---|
| Admission are anything other than an unqualified admission, identify all facts and Documents that support an objection or a denial of any such Request for Admission. | | supplement as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| | **Requests for Production[2]** | | |
|---|---|---|---|
| | **Certain Insurers on Plan Proponents** | | |
| **Discovery Request** | **Party** | **Standing** | **Ruling** |
| Requests for Production to Diocese 1<br>All Documents that contain or relate to any Communications between You and/or Your counsel and the Committee and/or its counsel Concerning the Plan and/or the other Plan Documents. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 2<br>All Documents that contain or relate to any Communications between You and/or Your counsel and the Participating Parties and/or their counsel concerning the Plan and/or the other Plan Documents. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 3<br>All Documents and Communications relating to the negotiation of the Plan and/or the other Plan Documents. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 4<br>All Documents and Communications relating to the Diocese's principals' roles in negotiating, formulating, and drafting the Disclosure Statement, the Plan, the Trust, the Trust Agreement, the | Diocese | Yes | The Court holds that as it pertains to the Disclosure Statement, the Plan, and other Plan Documents, the response is sufficient in light of the common interest privilege. |

[2] The Joint Status Report lists all Requests for Production to Committee as disputed discovery requests, and listed as the cause the common-interest and mediation privilege. The Court does not address every single one of these requests in the belief that the clarification of these privileges in this Decision is enough to resolve the disputes between parties.

| Request | Party | Response | Holding |
|---|---|---|---|
| Allocation Protocol and/or the other Plan Documents. | | | The Court holds that as it pertains to the Trust, Trust Agreement, and Allocation Protocol, the Common Interest Privilege is not present, and the Diocese is directed to produce documents that it had withheld due to a common interest privilege, subject to the remaining privilege limitations in Sections 1, 2 and 3 of this Decision. |
| Requests for Production to Diocese 5 — All drafts of the Disclosure Statement, the Plan, the Trust, the Trust Agreement, the Allocation Protocol and/or the other Plan Documents. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 6 — All Documents and Communications relating to any settlement, termination, payment, satisfaction or resolution of any Abuse Claims, or other suits, claims, or potential claims based on Abuse against the Diocese or the Participating Parties, including but not limited to all settlement agreements and/or releases, claim information sheets, claim summaries, verdicts or judgments, dismissals, and dismissals that were refiled. | Diocese | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| Requests for Production to Diocese 7 — All Documents within the possession, custody, or control of the Diocese relating to its defense to claims asserted in the | Diocese | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim- |

| | | | |
|---|---|---|---|
| Underlying Litigation; the extent to which the Diocese consulted plaintiffs regarding the management, timing, venue, or sequencing of the Underlying Litigation prior to the Petition Date; any Documents the Diocese has Concerning suits, claims, or potential claims based on Abuse that were dismissed or otherwise resolved without payment, including any dismissal agreements, stipulations, orders, releases received, or other agreements entered into; or any payments made for the satisfaction, settlement, or resolution of any Abuse Claims or other potential claims based on Abuse, including but not limited to any claims payment database. | | | specific litigation. The Motion to Compel is denied. |
| Requests for Production to Diocese 8 All Documents exchanged with, or produced by or on behalf of, claimants with whom the Diocese and/or the Participating Parties have settled any Abuse Claims or other potential claims based on Abuse. | Diocese | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| Requests for Production to Diocese 9 All Documents and Communications relating to the creation, development, drafting, or proposed implementation of the Evaluation Factors relating to the Abuse Claims in connection with the Plan, the Trust, the Trust Agreement, the Allocation Protocol, and/or the other Plan | Diocese | No | The Motion to Compel is denied. |

| Request | Party | Compel | Decision |
|---|---|---|---|
| Documents between and/or among the Diocese, the Committee, or any holder of an Abuse Claim, including any Communications and Documents exchanged with any Person or entity that will be, or could become, a Participating Party. | | | |
| Requests for Production to Diocese 10<br>All Documents and Communications exchanged between and/or among the Diocese, the Participating Parties, the Committee, any Abuse Claimants, and any Person or entity that will be, or could become, a Participating Party, relating to the Diocese's analysis of the Abuse Claims. | Diocese | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| Requests for Production 11<br>All Documents and Communications exchanged between and/or among the Diocese, the Participating Parties, the Committee, or any Abuse Claimants relating to the Diocese's liquidation analysis. | Diocese | Yes | The Court finds that the request is overbroad. The Diocese is directed to produce pertinent documents and communications relating to the liquidation analysis, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| Requests for Production 12<br>All Documents and Communications relating to the Trust, the Trust Agreement, and/or the Trust Assets, including all Communications related thereto between and/or among the Diocese, the Participating Parties, the Committee, any | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |

| | | | |
|---|---|---|---|
| Abuse Claimant, any Persons or entities that will be, or could under the Plan become, a Participating Party and/or any of their respective counsel. | | | |
| Requests for Production 13<br>All Documents relating to the DOS Entities' Cash Contribution, including any analysis of the DOS Entities' Cash Contribution, and all Communications related thereto, between and/or among the Committee, the Diocese, the Participating Parties, any Abuse Claimant, and any Persons or entities that will be, or could under the Plan become, a Participating Party, or any of their respective counsel. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production 14<br>All Documents and Communications relating to the Allocation Protocol and/or valuing Abuse Claims against the Debtor and the Participating Parties, including without limitation all drafts of the Allocation Protocol, all documents reflecting the drafting history of the Allocation Protocol, and all documents reflecting the identities of the drafters of the Allocation Protocol. | Diocese | No | The Motion to Compel is denied. |
| Requests for Production 15<br>All Documents and Communications relating to any analysis or analyses regarding the impact to the Diocese's financial projections if the Participating | Diocese | Yes | The Diocese is directed to produce pertinent documents, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| | | | |
|---|---|---|---|
| Parties are excluded from the Channeling Injunction. | | | |
| Requests for Production 16<br>All Documents and Communications relating to each asset that is being contributed to the Trust under the Plan, including the value of any assets the Participating Parties are contributing to the Trust. | Diocese | Yes | The Court finds that the request is overbroad and unduly burdensome. The Court therefore holds the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 17<br>All Documents and Communications, including all Communications between or among any of the Committee, the Diocese, the Participating Parties, any Abuse Claimant, and any Persons or entities that will be, or could under the Plan become, a Participating Party and/or any of their respective counsel, Concerning the Insurance Claims Assignment including any drafts of proposed language for the Insurance Claims Assignment. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. The Diocese is directed to provide the proposed Insurance Claims Assignment to the Certain Insurers at least 45 days before any scheduled confirmation hearing. |
| Requests for Production to Diocese 18<br>All Documents and Communications Concerning what assets and liabilities will remain with the Diocese following the Effective Date of the Plan, including without limitation any employees, contracts, and/or rights or obligations under any Certain Insurer Policies. | Diocese | Yes | The Court finds that the request is overbroad and unduly burdensome. The Court therefore holds the response is sufficient. The Motion to Compel is denied. |

| Requests for Production to Diocese 19<br>All Documents and Communications Concerning what assets and liabilities will be held by the Reorganized Diocese following the Effective Date of the Plan, including without limitation any employees, contracts and/or rights and obligations under any Certain Insurer Policies. | Diocese | Yes | The Court finds that the request is overbroad and unduly burdensome. The Court therefore holds the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 20<br>All Documents and Communications Concerning the Diocese's Post-Effective Date Insurance Obligations, if any. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 21<br>All Documents and Communications Concerning the Participating Parties' Post-Effective Date Insurance Obligations, if any. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 22<br>All Documents and Communications Concerning the Reorganized Diocese's Post-Effective Date Insurance Obligations, if any. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 23<br>All Documents and Communications Concerning the process, if any, by which Distribution Claims and/or Claims held by Distribution Claimants may be submitted to any Certain Insurer for payment. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |

| Request | Party | Sufficient | Court Holding |
|---|---|---|---|
| Requests for Production to Diocese 24<br>All Documents and Communications Concerning the discretion granted to the Trustee including, without limitation, with respect to the estimation of the value of Abuse Claims, the extent to which the Trustee consults with the Diocese and the Participating Parties in responding to Litigation Claims, the management and timing of the handling of Litigation Claims, and the ability to adjust points awarded to Abuse Claims by the Abuse Claims Reviewer under the Allocation Protocol. | Diocese | Yes | The Court holds that movants have standing as it pertains to the extent to which the Trustee consults with the Diocese and the Participating Parties in responding to Litigation Claims, the management and timing of the handling of Litigation Claims. The Diocese is directed to produce pertinent documents, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| | | No | The Court holds that movants lack standing as it pertains to all documents and communications concerning discretion granted to the Trustee including, without limitation, with respect to the estimation of the value of Abuse Claims, as well as the ability to adjust points awarded to Abuse Claims by the Abuse Claims Reviewer under the Allocation Protocol. The Motion to Compel as it pertains to this aspect of the request is denied. |
| Requests for Production to Diocese 25<br>All Documents and Communications Concerning the process by which the Trustee will consult with counsel for the | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |

| | | | |
|---|---|---|---|
| Litigation Claimant, the Diocese, and/or any Participating Party against whom an Abuse Claim is asserted for the purpose of coordinating a mutually acceptable litigation schedule. | | | |
| Requests for Production to Diocese 26 All Documents and Communications Concerning how the Trustee will determine the order in which the Litigation Claims will be tried. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied |
| Requests for Production to Diocese 27 All Documents and Communications Concerning the Trust's Post-Effective Date Insurance Obligations. | Diocese | Yes | The Diocese is directed to produce pertinent documents, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision (if the motion to compel has not been previously withdrawn). |
| Requests for Production to Diocese 28 All Documents and Communications Concerning any diligence conducted in connection with the formulation of the Plan, the Trust, the Trust Agreement, the Allocation Protocol, and/or the other Plan Documents regarding the Diocese, the Reorganized Diocese, the Participating Parties, or the Trust's ability to comply with their respective Post-Effective Date Insurance Obligations. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 29 All Documents and Communications relating to the determination of which | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |

| | | | |
|---|---|---|---|
| parties would or could be included as Participating Parties. | | | |
| Requests for Production to Diocese 30<br>All Documents relating to any releases granted to any Participating Parties. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 31<br>All Documents relating to the valuation or analysis of any claims that are being released under the Plan, including any claims against the Participating Parties. | Diocese | Yes | The Court holds that the request is not relevant to confirmation as it pertains to survivors' claims, and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The balance of the Motion to Compel is denied. |
| Requests for Production to Diocese 32<br>All Documents supporting the Diocese's contention that any Participating Party under the Plan has made or will make a substantial contribution to the Diocese's reorganization. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 33<br>All Documents relating to the Channeling Injunction, including, but not limited to, all Communications between and/or among the Diocese, the Participating Parties, the Committee, any Abuse Claimant, and any Persons or entities that will be, or could under the Plan become, a Participating Party and/or any of their respective counsel. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |

| Request | | | Holding |
|---|---|---|---|
| Requests for Production to Diocese 34<br>All Documents and Communications relating to any potential candidate to serve as the Trustee or the selection or, and qualifications of the Trustee. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 35<br>All Documents and Communications relating to any potential candidate to serve as the Abuse Claims Reviewer or the selection of, and qualifications of the Abuse Claims Reviewer. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 36<br>All Documents and Communications between You and/or Your Counsel and the Trustee (or any other potential candidate) and/or the Abuse Claims Reviewer (or any other potential candidate) Concerning their potential roles under the Plan, the Trust, the Trust Agreement, the Allocation Protocol and/or the other Plan Documents. | Diocese | Yes | The Court holds that as it pertains to the Disclosure Statement, the Plan, and other Plan Documents, the response is sufficient.<br>The Court holds that as it pertains to the Trust, Trust Agreement, and Allocation Protocol, the Common Interest Privilege is not present, and the Diocese is directed to produce documents that it had withheld due to a common interest privilege, subject to the remaining privilege limitations in Sections 1, 2 and 3 of this Decision. |
| Requests for Production to Diocese 37<br>All Documents and Communications concerning any analysis of the feasibility of the Plan, including the feasibility of the Plan if any of the Participating Parties choose not to participate in the Plan. | Diocese | Yes | The Diocese is directed to produce pertinent documents, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| Requests for Production to Diocese 38 | Diocese | Yes | |
|---|---|---|---|
| All Documents and Communications relating to the amounts to be used from the $100 million payment from the Debtor and the Participating Parties to fund the Trust that would be attributable to, allocated to, or reserved for the payment of: (a) the self-insured retention obligations under the Certain Insurers' Policies; (b) loss that would not be covered by insurance due to lack of policies, insufficient coverage or insolvent insurers; (c) loss that would not be covered by insurance due to coverage defenses (including obligations for punitive damages); (d) the expenses to retain professionals to carry out the obligations of the Abuse Claims Reviewer and under the Trust Agreement as set forth in the Plan; (e) the expenses of pursing [sic] Litigation Claims against any of the Certain Insurers in respect of the Insurance Claims Assignment as set forth in the Plan; (f) the costs and expenses to defend and indemnify the Participating Parties against Abuse Claims, including the withholding of distributions to Abuse Claimants until after such claims are resolved and reimbursements from insurers (if any) are received by the Trust; and (g) the cost to conduct the Allocation Protocol as set forth in the Plan. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |

| | | | |
|---|---|---|---|
| Requests for Production to Diocese 39<br>All Documents and Communications Concerning the ability of the Diocese, the Reorganized Diocese, the Participating Parties, and/or the Trust to comply with their Post- Effective Date Insurance Obligations, including without limitation, with respect to any self-insured retentions and the payment of costs to defend against Abuse Claims. | Diocese | Yes | The Diocese is directed to produce pertinent documents, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| Requests for Production to Diocese 40<br>All Documents and Communications Concerning the anticipated amount of self-insured retentions and defense costs that would be paid by the Diocese, the Reorganized Diocese, the Participating Parties, and/or the Trust following the Effective Date of the Plan. | Diocese | Yes | The Diocese is directed to produce pertinent documents, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| Requests for Production to Diocese 41<br>All Documents or Communications from any of the Diocese's Boards relating in any way to the Plan, the Trust, the Trust Agreement, the Allocation Protocol, the Disclosure Statement, and/or any of the other Plan Documents. | Diocese | Yes | The Court finds that the request is overbroad. The Court therefore holds the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 42<br>All Documents provided to any of the Diocese's Boards relating in any way to the Plan, the Trust, the Trust Agreement, the Allocation Protocol, the Disclosure | Diocese | Yes | The Court finds that the request is overbroad. The Court therefore holds the response is sufficient. The Motion to Compel is denied. |

| | Diocese | Yes | |
|---|---|---|---|
| Statement, and/or any of the other Plan Documents. | | | |
| Requests for Production to Diocese 43<br>All minutes of any of the Diocese's Boards concerning the Plan, the Trust, the Trust Agreement, the Allocation Protocol, the Disclosure Statement, and/or any of the other Plan Documents. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 44<br>All Documents that any of the Diocese's Boards reviewed and/or relied upon in evaluating the Plan, the Trust, the Trust Agreement, the Allocation Protocol, the Disclosure Statement, and/or any of the other Plan Documents. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Requests for Production to Diocese 45<br>All Communications exchanged between members of any of the Diocese's Boards concerning the Plan, the Trust, the Trust Agreement, the Allocation Protocol, the Disclosure Statement, and/or any of the other Plan Documents. | Diocese | Yes | The Court finds that the request is overbroad and unduly burdensome. The Motion to Compel is denied. |
| Requests for Production to Diocese 48<br>All Documents and Communications pertaining to Your procedures for (i) noticing claims to each Certain Insurer pertaining to the Underlying Litigation prior to the Petition Date; (ii) reporting claim developments to each Certain | Diocese | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |

| | | | |
|---|---|---|---|
| Insurer pertaining to the Underlying Litigation prior to the Petition Date; (iii) seeking reimbursement of any settlement pertaining to the Underlying Litigation prior to the Petition Date; and (iv) involving each Certain Insurer in the Abuse Claims' defense strategy and resolution pertaining to the Underlying Litigation prior to the Petition Date. | | | |
| Requests for Production to Diocese 49<br>All Documents and Communications pertaining to the 80 settlements the Diocese paid to or for the benefit of Claimants totaling $12.7 million (including "just under $11 million paid in compensation to abuse victims") through the Diocese's Independent Reconciliation and Compensation Program as referenced in Paragraphs 10-11 of the Declaration. | Diocese | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| Requests for Production to Diocese 50<br>All Documents and Communications pertaining to the executory contracts in connection with the First Day Motions as referenced in Paragraph 67 and Section VII of the Declaration. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |

| Requests for Production Certain Insurers on Plan Proponents | | | |
|---|---|---|---|
| Discovery Request | Party | Standing | Ruling |
| Request for Production to Committee 6 All Documents and Communications relating to the selection of, and qualifications of the Trustee. | Committee | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Request for Production to Committee 8 All Documents and Communications between You and/or Your Counsel and the Trustee and/or the Abuse Claims Reviewer Concerning their potential roles under the Plan, the Trust, the Trust Agreement, and/or the other Plan Documents. | Committee | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Request for Production to Committee 13 All Documents and Communications relating to the creation, development, drafting, or proposed implementation of the Evaluation Factors in connection with the Plan, the Trust, the Trust Agreement, the Allocation Protocol, and/or the other Plan Documents, including all Communications related thereto between and/or among the Committee, the Diocese, the Participating Parties, any Abuse Claimant, and any Persons or entities that will be, or could under the Plan become, a Participating Party, or any of their respective counsel. | Committee | No | The Motion to Compel is denied. |

| | | | |
|---|---|---|---|
| Request for Production to Committee 23<br>All Documents and Communications Concerning the discretion granted to the Trustee including, without limitation, with respect to the estimation of the value of Abuse Claims, the extent to which the Trustee consults with the Diocese and the Participating Parties in responding to Litigation Claims, the management and timing of the handling of Litigation Claims, and the ability to adjust points awarded to Abuse Claims by the Abuse Claims Reviewer under the Allocation Protocol. | Committee | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Request for Production to Committee 24<br>All Documents and Communications Concerning the process by which the Trustee will consult with counsel for the Litigation Claimant, the Diocese, and/or any Participating Party against whom an Abuse Claimant's Claim is asserted for the purpose of coordinating a mutually acceptable litigation schedule. | Committee | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Request for Production to Committee 25<br>All Documents and Communications Concerning how the Trustee will determine the order in which the Litigation Claims will be tried. | Committee | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |

| | | | |
|---|---|---|---|
| Request for Production to Committee 36<br>All Documents supporting the contention that each Participating Party under the Plan has made or will make a substantial contribution to the Diocese's reorganization. | Committee | Yes | The Diocese is directed to produce pertinent documents, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| Request for Production to Committee 37<br>All Documents and Communications Concerning any analysis of the feasibility of the Plan, including the feasibility of the Plan if any of the Participating Parties choose not to participate in the Plan. | Committee | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |

## Requests for Production

### Hartford Insurance on Diocese and St. Francis of Assisi Parish

| Discovery Request | Party | Standing | Ruling |
|---|---|---|---|
| **Hartford Request for Production to Diocese 1** <br> Produce all Documents and Communications referring or relating to the proposed contributions by Holy Family Parish, St. Francis of Assisi Parish and/or St. Mary of Mount Carmel/Blessed Sacrament Parish to the trust set forth in the Plan, including the means by which such contributions or proposed contributions are calculated. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| **Hartford Request for Production to Diocese 2** <br> Produce all Documents and Communications referring to or relating to the proposed contributions by Holy Family Parish, St. Francis of Assisi Parish and/or St. Mary of Mount Carmel/Blessed Sacrament Parish in exchange for the releases, injunctions and any other benefits and/or protections provided in the Plan, including the means by which such contributions or proposed contributions are calculated. | Diocese | Yes | The Diocese is directed to produce pertinent documents that it intends to use at confirmation, subject to the privilege limitations in Sections 1, 2, 3, and 4 of this Decision. |
| **Hartford Request for Production to St. Francis of Assisi Parish 1** <br> Produce all Documents and Communications referring to or relating | St. Francis of Assisi Parish, Binghamton, NY | Yes | The Motion to Compel is denied. |

| | | |
|---|---|---|
| to the proposed contributions by Holy Family Parish, St. Francis of Assisi Parish and/or St. Mary of Mount Carmel/Blessed Sacrament Parish in exchange for the releases, injunctions and any other benefits and/or protections provided in the Plan, including the means by which such contributions or proposed contributions are calculated. | | |
| **Hartford Request for Production to St. Francis of Assisi Parish 2** Produce all Documents and Communications referring to, relating to or constituting any analysis, whether conducted by You or another, regarding Your proposed contribution to the Trust. | St. Francis of Assisi Parish, Binghamton, NY | Yes | The Parish is directed to produce pertinent documents, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| **Hartford Request for Production to St. Francis of Assisi Parish 3** Produce all Documents and Communications referring to, relating to, or regarding the employment, supervision, retention, transfer, and/or dismissal of Fr. Weber. | St. Francis of Assisi Parish, Binghamton, NY | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. |
| **Hartford Request for Production to St. Francis of Assisi Parish 4** Produce all Documents and Communications referring to, relating to, or regarding any allegation of child sexual abuse perpetrated by Fr. Weber. | St. Francis of Assisi Parish, Binghamton, NY | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. |

| | | |
|---|---|---|
| Hartford Request for Production to St. Francis of Assisi Parish 5<br>Produce all Documents and Communications referring to, relating to, or regarding Fr. Weber's assignment history. | St. Francis of Assisi Parish, Binghamton, NY | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. |
| Hartford Request for Production to St. Francis of Assisi Parish 6<br>Produce all personnel files and all employment records regarding or relating to Fr. Weber. | St. Francis of Assisi Parish, Binghamton, NY | Yes | The Court holds that the request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. |

| Requests for Admission Insurers on Plan Proponents | | | |
|---|---|---|---|
| Discovery Request | Party | Standing | Ruling |
| **Request for Admission to 1**<br>Admit that when Abuse Claims were filed against the Diocese prior to the Petition Date, the Diocese retained counsel to defend all such claims. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| **Request for Admission 2**<br>Admit that when Abuse Claims were filed against the Diocese prior to the Petition Date, the Diocese's defense counsel asserted defenses to such claims on behalf of the Diocese. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| **Request for Admission 3**<br>Admit that prior to the Petition Date the Diocese did allow the Abuse Claimants to decide the sequencing of litigation involving their Abuse Claims in connection with other Abuse Claims. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| **Request for Admission 4**<br>Admit that when valuing an Abuse Claim prior to the Petition Date, the Diocese did not consider whether other Abuse Claimants benefitted from the work and cost incurred by an Abuse Claimant who asserted the Abuse Claim against the Diocese and participated in the legal and factual development of their claim against the Diocese. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |

| | | | |
|---|---|---|---|
| Request for Admission 5<br>Admit that when valuing an Abuse Claim prior to the Petition Date, the Diocese did not consider an Abuse Claimant's efforts and contributions resulting from their pursuit of their Abuse Claim. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Request for Admission 6<br>Admit that prior to the Petition Date the Diocese's defense counsel filed motions to dismiss in response to some of the Abuse Claims filed against the Diocese. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Request for Admission 7<br>Admit that prior to the Petition Date some of the motions to dismiss filed by the Diocese's defense counsel in lawsuits asserting Abuse Claims against the Diocese were granted. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Request for Admission 8<br>Admit that prior to the Petition Date when Abuse Claims were filed against the Diocese, the Diocese's defense counsel conducted discovery. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Request for Admission 9<br>Admit that prior to the Petition Date when Abuse Claims were filed against the Diocese, the Diocese's defense counsel served requests for the production of documents. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |

| | | | |
|---|---|---|---|
| Request for Admission 10<br>Admit that prior to the Petition Date when Abuse Claims were filed against the Diocese, the Diocese's defense counsel served interrogatories. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Request for Admission 11<br>Admit that prior to the Petition Date when Abuse Claims were filed against the Diocese, the Diocese's defense counsel served requests for admission. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Request for Admission 12<br>Admit that prior to the Petition Date when Abuse Claims were filed against the Diocese, the Diocese's defense counsel took depositions. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| Request for Admission 13<br>Admit that prior to the Petition Date the Diocese's defense counsel filed motions for summary judgment, partial summary judgment, or summary adjudication in response to some of the Abuse Claims filed against the Diocese. | Diocese | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |

**Plan Proponents Discovery Requests on Insurers**

| Plan Proponents' Interrogatories to Certain Insurers | | | |
|---|---|---|---|
| **Interrogatory** | **Insurer** | **Standing** | **Ruling** |
| ROG No. 1 Identify any and all obligations You allege the Diocese or any Participating Party has under the Insurance Policies that are excused or altered pursuant to the Joint Plan. | Interstate | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| | LMI | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| | Travelers | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| ROG No. 2 Identify each and every way You allege the Joint | Interstate | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as |

| Plan alters Your quantum of liability. | | | |
|---|---|---|---|
| | LMI | Yes | necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| | | | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| | Travelers | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| | | | |
|---|---|---|---|
| ROG No. 3<br>Identify each and every way You contend the Insurance Claims Assignment or any other aspect of the Joint Plan limits or impairs Your potential coverage defenses with respect to Abuse Claims or otherwise alters or impairs your rights and remedies under the Insurance Policies. | Interstate | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| | LMI | Yes | Party is directed to amend its response to remove references to other filings, and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| | Travelers | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| ROG No. 4<br>Identify each and every way You contend the Insurance Claims Assignment or any other aspect of the Joint Plan violates the Bankruptcy Code or any other applicable law. | Interstate | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| ROG No. 5<br>Identify each and every way you contend that any of Your rights, remedies or interests are altered or impaired by any aspect of the Joint Plan and the | | | |
| --- | --- | --- | --- |
| | LMI | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| | Travelers | Yes | Party is directed to amend its response to remove references to other filings and supplement its answer as necessary. Party is further directed to respond to the interrogatory, all subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision |
| | Interstate | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| factual basis for such contention. | LMI | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| | Travelers | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| | | | |
|---|---|---|---|
| **ROG No. 6**<br>Identify each and every way You contend the Joint Plan is not proposed in good faith and the factual basis for such contention. | Interstate | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| | LMI | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1,2,3 and 4 of this Decision. |
| | Travelers | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| **ROG No. 7**<br>Identify each and every way You contend that the Joint Plan fails to satisfy one or more of the requirements for confirmation set forth in 11 U.S.C. § 1129(a) and | Interstate | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| the factual basis for such contention. | LMI | Yes | Party is directed to amend its answer to remove references to other filings and supplement its answer as necessary subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| | Travelers | Yes | Party is directed to amend its answer to remove references to other filings and supplement its answer as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| ROG No. 8 Identify each and every way You contend the Joint Plan purports to assign the Insurance Policies. | Interstate | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| | LMI | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| | Travelers | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| ROG No. 9 Identify each and every way You contend a distribution to an Abuse Claimant pursuant to the | Interstate | Yes | Party is directed to answer the interrogatory subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| Allocation Protocol triggers or vitiates insurance coverage under the Insurance Policies. | LMI | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
| | Travelers | Yes | Party is directed to amend its response to remove references to other filings and supplement its response as necessary, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| Plan Proponents' Requests for Production to Certain Insurers | | | |
|---|---|---|---|
| **Request for Production** | **Insurer** | **Standing** | **Ruling** |
| **RFP No. 3**<br>All Documents and Communications relating to Your asserted defenses to coverage of Abuse Claims under the Insurance Policies. | Interstate | Yes | The Request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| | Travelers | Yes | The Request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| **RFP No. 4**<br>All Documents and Communications relating to any determination by You regarding which Abuse Claims trigger, or potentially trigger, coverage under one or more of the Insurance Policies. | Interstate | Yes | The Request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| | Travelers | Yes | The Request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |

| RFP No. 5<br>All Documents and Communications relating to any allegedly unpaid or outstanding deductible or self-insured retention or any alleged exhaustion, erosion, or impairment of the limits of liability of the Insurance Policies. | Interstate | Yes | The Request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| | Travelers | Yes | The Request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |

| RFP No. 10 | Interstate | Yes | The Court holds that documents relating to communications about Abuse Claims are not relevant, and as it pertains to that portion of the request, the Motion to Compel is denied. |
| All Documents that contain or relate to any Communications between You and/or Your counsel and any other Insurer and/or its counsel Concerning the Abuse Claims, the Joint Plan and/or the other Plan Documents, including any prior iteration(s) of the Joint Plan and/or other Plan Documents. | | | The Court holds that documents relating to communications about the Plan and/or other Plan Documents are relevant. The party is directed to produce documents that respond to the request, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| LMI | Yes | The Court holds that documents relating to communications about Abuse Claims are not relevant, and as it pertains to that portion of the request, the Motion to Compel is denied. The Court holds that documents relating to communications about the Plan and/or other Plan Documents are relevant. The party is directed to produce documents that respond to the request, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |
|-----|-----|-----|
| | | |

| Travelers | Yes | The Court holds that documents relating to communications about Abuse Claims are not relevant, and as it pertains to that portion of the request, the Motion to Compel is denied. |
| | | The Court holds that documents relating to communications about the Plan and/or other Plan Documents are relevant. The party is directed to produce documents that respond to the request, subject to the privilege limitations in Sections 1, 2, 3 and 4 of this Decision. |

| Plan Proponents' Requests for Admission to Certain Insurers | | | |
|---|---|---|---|
| **Request for Admission** | **Insurer** | **Standing** | **Ruling** |
| RFA No. 2 Admit that You do not have any direct economic interest with respect to confirmation proceedings concerning the Joint Plan. | Travelers | Yes | Party is directed to supplement its answer with statements made at the Hearing. |
| RFA No. 3 Admit that confirmation of the Joint Plan does not limit or eliminate any potential defenses to coverage with respect to any Abuse Claim under an Insurance Policy. | Interstate | Yes | Party is directed to correct its response to the request, as it states that it "directs the Plan Proponents to its Response to Interrogatory No. 3," which appears to be an incorrect reference. |
| | LMI | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| | Travelers | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |

| | | | |
|---|---|---|---|
| RFA No. 4<br>Admit that the Insurance Policies are not executory contracts. | Interstate | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| | LMI | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| | Travelers | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| RFA No. 5<br>Admit that the Diocese and Participating Parties have no affirmative obligations under the Insurance Policies except to the extent that the Diocese and Participating Parties may be required to satisfy certain preconditions before You have an obligation to provide coverage under the Insurance Policies. | Travelers | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| | LMI | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |

| | | | |
|---|---|---|---|
| RFA No. 6<br>Admit that any failure on the part of the Diocese or any Participating Party to satisfy any preconditions to coverage under the Insurance Policies does not entitle You to any remedy beyond the right to assert a defense to coverage under such Insurance Policies. | Interstate | Yes | The Request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| | LMI | Yes | The Request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| | Travelers | Yes | The Request is not relevant to confirmation and is reserved for future litigation in the Adversary Proceeding or claim-specific litigation. The Motion to Compel is denied. |
| RFA No. 7<br>Admit that the Insurance Claims Assignment is an assignment of claims and rights of action arising under the Insurance Policies or related to any Abuse Claim and not an assignment of the Insurance Policies themselves. | Interstate | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |
| | LMI | Yes | The Court holds that the response is sufficient. The Motion to Compel is denied. |