So Ordered.

Signed this 7 day of January, 2025.



_____

Wendy A. Kinsella
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

The Roman Catholic Diocese of Syracuse,
New York,

Debtor.

Case No. 20-30663

Chapter 11
(WO)
For Publication

**MEMORANDUM DECISION AND ORDER ON THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR CONTEMPT AGAINST AZRA**

Before the Court is *The Official Committee of Unsecured Creditors' Motion for Contempt* (the "Contempt Motion" at Doc. 1868), *Response To The Official Committee Of Unsecured Creditors' Motion For Finding Of Contempt* ("AZRA Response" at Doc. 2032), and related filings.[1] Pursuant to a letter dated October 4, 2024 (the "Pretrial Letter" at Doc. 2218), the Official

---

[1] *Letter Submitted by the Official Committee of Unsecured Creditors Dated* May 8, 2024 (Doc. 1869); *Stipulation Of Unsecured Creditors' Committee And Allianz Reinsurance America, Inc. As To Responsive Pleading And Hearing On Unsecured Creditors' Motion For Contempt* (Doc. 1984); *Letter Submitted by the Official Committee of Unsecured*

1

Committee of Unsecured Creditors (the "Committee") advised the Court "[a]t this time, the only relief the Committee seeks is an order from the Court (i) finding that AZRA[2] was in contempt for each instance in which AZRA provided confidential survivor information to ISO in violation of the Bar Date Order; and (ii) directing that survivors impacted by the improper disclosure be notified."

At the evidentiary hearing on October 17, 2024 (the "Hearing"), the parties agreed the survivors should be notified and they would work together to facilitate that process. As a result, the remaining dispute before the Court is whether AZRA's disclosures under the Bar Date Order and delay in notifying the Debtor and the Committee of such disclosures warrant a finding of contempt.[3]

### I. Factual Background

The Court assumes the parties' familiarity with this case and will recite only the facts relevant to the current issue before it. Soon after the Debtor filed chapter 11, the Court entered the *Bar Date Order Establishing April 15, 2021 as the Deadline for Filing Proofs of Claim and*

---

*Creditors Dated October 4, 2024* (Doc. 2218); *Allianz Reinsurance America, Inc.'s List Of Exhibits And Witnesses For Hearing On Unsecured Creditors' Motion For Contempt* (Doc. 2232); *The Official Committee Of Unsecured Creditors' Witness And Exhibit Lists For Hearing On Motion For Contempt* (Doc. 2233); *Stipulation Of Unsecured Creditors' Committee And Allianz Reinsurance America, Inc. As To Relevant, Undisputed Facts For Hearing On Unsecured Creditors' Motion For Contempt* ("Stipulation" at Doc. 2236); *Motion In Limine Of The Official Committee Of Unsecured Creditors To Exclude Azra's Untimely Exhibits* (Doc. 2244); *Allianz Reinsurance America, Inc.'s Objections To The Official Committee Of Unsecured Creditors' Exhibits Submitted For Hearing On Unsecured Creditors' Motion For Contempt* (Doc. 2245); *Allianz Reinsurance America, Inc.'s Opposition To The Official Committee Of Unsecured Creditors' "Motion In Limine To Exclude Azra's Untimely Exhibits"* (Doc. 2248); *Transcript Of Evidentiary Hearing For A Motion For Contempt Before The Honorable Wendy A. Kinsella Thursday, October 17, 2024; 1:03 P.M. Syracuse, New York* ("Transcript" Doc. 2285).

[2] Allianz Reinsurance America, Inc., dba Allianz Resolution Management will be referred to as "AZRA." The Court notes that Interstate Fire & Casualty Company ("Interstate"), National Surety Insurance Corporation ("National"), and Fireman's Fund Insurance Company ("FFIC") are affiliates of AZRA within the Allianz SE group of companies. Stipulation, at ¶ 7.

[3] The Committee has stated it only seeks a finding of contempt with an order for the notification and the costs that AZRA is required to pay in connection with the investigation and that finding, and that the Court keep separate any consideration regarding sanctions or remedy. *See* Transcript, at 4:24–5:13. AZRA has stated that findings of contempt and sanctions are intertwined, and that a decision regarding a finding of contempt necessitates consideration of case law addressing sanctions. *See id.* at 5:16–6:5.

2

*Approving the Form and Manner of Notice Thereof* (the "Bar Date Order" at Doc. 214). The Bar Date Order contained a Confidentiality Protocol (the "Confidentiality Protocol") which limited access to survivors' proofs of claim (the "Survivors' Claims") to Authorized Parties (as defined in paragraph 11(c) the Bar Date Order) only after the respective Authorized Party executed an Authorized Party Confidentiality Agreement Regarding Sexual Abuse Proofs of Claim (the "Confidentiality Agreement" attached to Bar Date Order as Schedule 2). Authorized Parties are prohibited from using or disclosing information in the Survivors' Claims to parties who are not Authorized Parties. *See* Bar Date Order, at ¶ 11(d) ("[n]otwithstanding the designation of Authorized Parties [ ], no person or entity may obtain copies of any Sexual Abuse Proof of Claim prior to the execution of a confidentiality agreement substantially in the form attached hereto as Schedule 2"). The Confidentiality Agreement also provides that if a breach of the provisions occurred, the Authorized Party who had committed the breach was to "promptly report any disclosure of Confidential Information in violation or breach of [the Confidentiality] Agreement to the Debtor and the Committee and shall cooperate with efforts to recover and secure any such Confidential Information and/or to mitigate the effects of any such disclosure." Confidentiality Agreement, at ¶ 7.

AZRA executed the Confidentiality Agreement and became an Authorized Party on June 29, 2021. Stipulation, at ¶ 12. In spite of the prohibitions on disclosure, on or around May 2, 2023, AZRA discovered that it had been disclosing certain Survivors' Claims information to Insurance Services Office, Inc. ("ISO"). *Id.* at ¶ 15.

By letter dated September 28, 2023 Interstate and FFIC (as affiliates of AZRA) advised the Court for the first time of the improper disclosure (the "Disclosure Letter" at Doc. 1439). In response to the Disclosure Letter, the Committee filed a *Motion for Entry of an Order (i) Pursuant*

*to Bankruptcy Rule 2004 Authorizing the Committee to Issue Subpoenas Regarding the Disclosure of Confidential Survivor Information; and (ii) Directing AZRA and ISO to Immediately Secure, Segregate and Preserve All Information Relating to Survivor Claims or the Transmission and Receipt of Related Data* (the "2004 Motion" at Doc. 1445) which was granted by Order entered October 11, 2023 (the "2004 Order" at Doc. 1485).  The 2004 Order directed, *inter alia*, Interstate and AZRA to "reimburse all reasonable fees and expenses incurred by Committee and Debtor professionals for services provided with regard to the investigation and resolution of Interstate's and AZRA's disclosure [in the Disclosure Letter], subject to this Court's review and approval of such fees and expenses under the Bankruptcy Code and Bankruptcy Rules and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Members of Official Committees* entered in this case at Dkt. No. 117." *See* 2004 Order, at ¶ 6.

After completion of its investigation under the 2004 Order, the Committee filed the Contempt Motion seeking an order holding AZRA in contempt for each violation of the Bar Date Order and an award of sanctions.  The undisputed facts confirmed disclosure to a non-Authorized Party occurred when AZRA's claim specialists input information from the Survivors' Claims into AZRA's databases, which automatically transferred that information to ISO's ClaimSearch Platform, a fraud detection and prevention system.  The Committee argued ISO was not an Authorized Party authorized to use the confidential information, so AZRA's disclosure to ISO through the ClaimSearch Platform was not permitted.  By making such unauthorized disclosure, AZRA violated the Bar Date Order, which was exacerbated by a nearly 5-month delay from when AZRA became aware of the violation and when it filed the Disclosure Letter.  The Committee

4

asserted that such delay was a further breach that warranted sanctions. *See* Contempt Motion, at ¶¶ 41–62.

While initially acknowledging the technical violation of the Bar Date Order, AZRA argued the disclosure was inadvertent. It contended the requested relief is not permissible, as civil contempt is only allowed to (a) coerce compliance or (b) compensate the complainant for past losses caused by the noncompliance. *See* AZRA Response, at 1–2. AZRA argued that a finding of civil contempt is not meant to be a punitive measure, and therefore no contempt should be found as (i) AZRA was no longer in violation of the Bar Date Order, (ii) it did not intend to violate the Bar Date Order, and (iii) there was no bad faith on the part of AZRA. *See id.* at 12–19. Since AZRA stopped transmitting the information to ISO and ISO signed a Confidentiality Agreement remedying the violation on September 19, 2023, there is no reason for a contempt finding. Additionally, AZRA has paid over $100,766.00 in fees to the Committee's counsel pursuant to the 2004 Order. *Id.* at 3. In light of these developments, AZRA asserted there is no current violation and no basis for additional compensatory sanctions, so any finding of contempt would be punitive and impermissible under case law. *Id.* at 22. In its closing arguments at the Hearing, AZRA further contended that the Bar Date Order was not clear and unambiguous, that proof of noncompliance was not clear or convincing, and that AZRA did in fact diligently attempt to comply in a reasonable manner after it was found to have breached the Bar Date Order. *See* Transcript, at 93:21–96:17.

## II. The Hearing

At the Hearing, Brooke Green ("Ms. Green"), the Chief Claims Officer of AZRA, testified. Ms. Green explained that ClaimSearch is an ISO product that provides a fraud detection and prevention service to limited types of registered users such as insurers, police and some

5

government agencies. AZRA's claim information was automatically transferred to the ISO system where algorithms were used to analyze the survivors' claims to detect indicators of fraud. A match report is generated and sent to the entities with matching claims. *Id.* at 16:15–17:17. AZRA is not able to search in the ClaimSearch system, the match report is auto-generated. *Id.* at 17:17–19.

AZRA's predecessor, San Francisco Re, entered into the original agreement with ISO that was later modified to include AZRA. *Id.* at 19:1–15. Ms. Green testified that under the most recent agreement between AZRA and ISO, the information provided to ISO was to be kept confidential. *Id.* at 20:17–22.

Ms. Green reviewed Exhibit 13 identified as the "List of Claimants Whose Information Was Sent to ISO – Redacted" and testified about the level of detail entered into the ClaimSearch Platform, which encompassed, *inter alia*, the survivor claimant's name, the identity of the person notifying AZRA of the claim and the incident description. *Id.* at 23:23–39:2. That information was obtained from the Survivors' Claims but only data fields were completed; no forms, notes or documents were uploaded to ISO's ClaimSearch Platform. *Id.* at 38:4–39:3.

Ms. Green testified that in early May 2023, Deborah Sons, the account manager handling sexual abuse claims in this case, realized that Survivors' Claims information that was subject to the Confidentiality Agreement was being fed into the ClaimSearch Platform in violation of the agreement. *Id.* at 40:4–19. Notably, Ms. Sons was the party who actually executed the Confidentiality Agreement in this case. Stipulation, at ¶ 12. Ms. Green further testified that upon learning of the disclosure, she personally engaged in an extensive process to determine what information was transmitted and the extent of the transmission, and directed ISO to remove any record relating to abuse or "harassment-sexual." Transcript, at 41:6–43:1. In analyzing the extent of the breach, she erroneously believed all claim matches were sent to parties outside of ISO. This

error required her to start her analysis over, which contributed to the 5-month delay in notifying the parties. *Id.* at 50:4–53:8. The volume of information that had to be analyzed and concerns about disclosing potentially incorrect data to the Court also contributed to the delay. *Id.* at 50:19–52:24.

Ms. Green detailed the measures that AZRA then took to prevent further transmission of information consistent with the Confidentiality Agreement, including additional training for AZRA employees with access to sensitive claims, but acknowledged no such protections were put in place when the Confidentiality Agreement was first executed. *Id.* at 40:17–53:8. She testified that no information pertaining to the Survivors' Claims in this case was disclosed to any third-party beyond ISO. *Id.* at 50:3–14. Finally, she testified AZRA had promptly paid all Committee's legal fees under the 2004 Order totaling $100,766.58 to date and she believed that payment process would continue. *Id.* at 56:11–57:16.

At the close of the Hearing, the Committee and AZRA advanced their arguments, and the Court took the matter on submission.

### III. Analysis

Section 105(a) authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . and tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). This authority includes the power to issue findings of civil contempt, as recently confirmed by the Supreme Court. *See Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019); *Bruce v. Citigroup Inc.*, 75 F.4th 297, 303 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 565, 217 L. Ed. 2d 300 (2024). The Second Circuit has also recognized that bankruptcy courts have inherent authority to sanction parties, as well as statutory authority under 11 U.S.C. §

7

105(a). *See Rosellini v. United States Bankr. Court* (*In re Sanchez*), 941 F.3d 625, 627 (2d Cir. 2019) (inherent sanctioning power of bankruptcy court derived from nature as a judicial function).

In *Taggart,* the Supreme Court concluded a bankruptcy court may hold a creditor in civil contempt for violating the discharge injunction "where there is *no fair ground of doubt* as to whether the order barred the [party's] conduct." *Taggart*, 587 U.S. at 557 (emphasis in original). "Civil contempt may be appropriate, if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id.* Accordingly, the test for holding a party in contempt for violating a discharge injunction is objective. *Id.* at 561. The Second Circuit recently confirmed *Taggart's* standard applies to contempt actions under § 105(a), holding "we see no reason why *Taggart's* objective standard should not apply equally to a civil contempt action for violation of the automatic stay provision." *Windstream Holdings, Inc. v. Charter Communications Operating, LLC* (*In re Windstream Holdings, Inc.*), 105 F.4th 488, 495 (2d Cir. 2024).

In analyzing the elements required for a finding of contempt, the Second Circuit held:

> '[a] contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict.' *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *see also Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799, 204 L. Ed. 2d 129 (2019) ("[A] court may hold a creditor in civil contempt for violating a [bankruptcy court's] order if there is no fair ground of doubt as to whether the order barred the creditor's conduct."). Therefore, to demonstrate contempt, 'a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'

*Worms v Rozhkov* (*In re Markus*), 78 F.4th 554, 566 (2d Cir. 2023) (quoting *King*, 65 F.3d at 1058).[4]

---

[4] Noting as well that "a court need not always find bad faith before sanctioning pursuant to its inherent powers . . . . [only] when an attorney's misconduct falls within her 'role as an advocate for ... her client,' as opposed to her role 'as an officer of the court,' [is] a finding of bad faith [] required to sanction pursuant to inherent authority." 78 F.4th at 566 (quoting *United States v. Seltzer*, 227 F.3d 36, 40 (2d Cir. 2000)).

In addition to these elements, AZRA argues that a finding of bad faith is necessary when a court is using its inherent power, instead of statutory power, to find civil contempt. *See, e.g.,* Transcript, 92:13–23. However, this argument adds a requirement that does not exist in Second Circuit case law. Recently, the Southern District of New York found: "[t]he Supreme Court has clarified that when a court uses its civil contempt power (including in the bankruptcy context when invoked in conjunction with sections 105(a) and 524 of the Bankruptcy Code), an additional finding of bad faith or willfulness is not required." *In re Avianca Holdings S.A.*, 648 B.R. 358, 362 (Bankr. S.D.N.Y. 2023) (citing *Taggart*, 587 U.S. at 565). The Court agrees with this holding and will not add a bad faith element to the analysis.

### IV. Conclusion

The Court concludes the Committee has met its burden and satisfied the requirements for a contempt finding. The Bar Date Order is clear and unambiguous, and the proof of noncompliance is clear and convincing. There is no fair ground of doubt to conclude the disclosure to ISO prior to ISO executing the Confidentiality Agreement might be lawful. Moreover, AZRA's argument that it diligently attempted to comply in a reasonable manner is unconvincing. Protections against disclosure should have been in place upon signing the Confidentiality Agreement, and the breach should have been promptly reported to the Debtor and the Committee in accordance with its terms. Simply stated, 149 days is not prompt.[5] *See Citibank, N.A. v. Brigade Cap. Mgmt., LP*, 49 F.4th 42, 69 (2d Cir. 2022) (discussing prompt notice, and defining it as "without delay," "immediately," or "at once."). While the Court found Ms. Green to be a credible witness regarding the steps taken upon discovery of the breach and takes into consideration Ms. Green's explanation for the delay in notification to the Court, the late notice resulted in an additional breach of the Bar Date Order.

---

[5] The Court also notes Interstate's counsel was in person in Court with counsel for the Debtor and the Committee the day the Disclosure Letter was filed, and never mentioned it to the Court.

The Court has broad discretion to shape appropriate sanctions including in the form of legal fees and costs incurred by a party seeking to enforce the terms of an order. *See In re Ditech Holding Corp.*, Case No. 19-10412, 2021 Bankr. LEXIS 2274, at *38 (Bankr. S.D.N.Y. Aug. 20, 2021) (awarding sanctions against creditor that are increasingly harsh for continuing noncompliant behavior in violation of Plan injunction). However, the Court recognizes any sanction must only be compensatory or coercive and may not be punitive. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014). In this case, the Committee is not pursuing sanctions at this time. Transcript, at 4:24–5:13. In light of the corrective measures that were taken and Ms. Green's testimony regarding the safeguards implemented to preserve the survivors' confidentiality, the Court finds AZRA is now in compliance with the Bar Date Order so no additional measures to coerce compliance are necessary. AZRA has also demonstrated it has complied with its obligations under the 2004 Order to pay the legal fees incurred by Committee Counsel in investigating the breach and ensuring compliance with the Bar Date Order, and shall continue to do so.

As previously authorized by the Court, the parties may notify the 99 impacted survivors of the improper disclosure and educate them on the breach and corrective measures taken to ensure their confidentiality is preserved going forward. The Court remains available to assist in that process if necessary.

###