So Ordered.

Signed this 25 day of April, 2025.



_____

  Wendy A. Kinsella

  United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| | Case No. 20-30663 |
| The Roman Catholic Diocese of Syracuse, New York, | Chapter 11 |
| Debtor. | |

**JOINT PRETRIAL ORDER FOR THE PLAN CONFIRMATION HEARING**

Commencing April 28, 2025, this Court will hold a hearing (the "Confirmation Hearing") to consider confirmation of the *Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Dkt. No. 2337] (as it may be amended, modified or supplemented from time to time, the "Plan"),[1] filed jointly by The Roman Catholic Diocese of Syracuse, New York (the "Diocese") and the Official Committee of Unsecured Creditors (the "Committee," along with the Diocese, the "Plan Proponents").[2]

---

[1] Capitalized terms used but not otherwise herein defined shall have the meaning ascribed to such terms in the Plan.

[2] The Parties (defined below) reserve all rights regarding any topics not specifically addressed by this Order. For the avoidance of doubt, this Order is not intended to abrogate any rules of evidence or procedure.

1

This "Order" addresses, among other things, certain procedural issues related to the Confirmation Hearing and identifies the witnesses who will offer testimony related to the Confirmation Hearing and who will or may be called by one or more of the following parties (collectively, the "Litigation Parties"): (i) the Diocese; (ii) the Committee; (iii) Interstate Fire & Casualty Company and Fireman's Fund Insurance Company ("Interstate"); and (iv) Certain Underwriters at Lloyd's, London and London Market Companies ("LMI," together with Interstate, the "Litigating Insurers").

## I. INTRODUCTION

The Plan Proponents are seeking confirmation of the Plan and will put on evidence in support of confirmation pursuant to section 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Plan is also supported by the Parishes[3] (collectively with the Plan Proponents, the "Plan Supporting Parties").

The Litigating Insurers are opposing confirmation of the Plan and, along with certain other entities, have filed written objections to confirmation of the Plan, as follows:

### A. Objections Filed Timely

1. *United States Trustee's Objection to Confirmation of the Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Dkt. No. 2771], filed by William K. Harrington, United States Trustee, Region 2.

2. *Excelsior Insurance Company's Objection to Confirmation of the Plan* [Dkt. No. 2772], filed by Excelsior Insurance Company ("Excelsior").

3. *The Certain Insurers' Preliminary Objection to Confirmation of the Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Dkt. No. 2773], filed by Interstate and LMI.

---

[3] The "Parishes" include all parishes and affiliated entities described in the Amended Verified Statement Pursuant to Bankruptcy Rule 2019, dated September 17, 2024 [Dkt. No. 2179].

2

    4.    *Hartford Fire Insurance Company's Joinder in the Interstate Insurers' Preliminary Objection to Confirmation of the Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Dkt. No. 2774], filed by Hartford Fire Insurance Company ("Hartford").

**B.    Joinders Filed After the Deadline to File Objections to Plan Confirmation**

    1.    *TIG Insurance Company, North River Insurance Company, and U.S. Fire Insurance Company's Joinder in the Certain Insurers' Preliminary Objection to Confirmation of the Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Dkt. No. 2778], filed by TIG Insurance Company, North River Insurance Company, and U.S. Fire Insurance Company (collectively, the "North River Objectors").

    2.    *Catholic Mutual Relief Society of America's Joinder to the Certain Insurers' Preliminary Objection to Confirmation of the Fifth Amended Joint Chapter 11 Plan of Reorganization of The Roman Catholic Diocese of Syracuse, New York* [Dkt. No. 2807], filed by Catholic Mutual Relief Society of America ("Catholic Mutual").

    3.    *Joinder of Travelers Insurance Company Limited, Travelers Casualty and Surety Company, and Traveler's Indemnity Company's to Interstate Insurers' Preliminary Objection to Confirmation of the Fifth Amended Joint Chapter 11 Plan of Reorganization* [Dkt. No. 2808], filed by Travelers Insurance Company Limited, Travelers Casualty and Surety Company and Travelers Indemnity Company ("Travelers").

The Litigating Insurers will present evidence in opposition to confirmation of the Plan at the Confirmation Hearing. They, together with the United States Trustee, Travelers, Excelsior, Hartford, the North River Objectors, and Catholic Mutual, are collectively referred to herein as the "Objecting Parties" and, together with the Plan Supporting Parties, are the "Parties."

**II.    THE PARTIES AND THEIR COUNSEL**

    **A.    Diocese**

        Counsel:    Bond, Schoeneck & King PLLC
                      Mackenzie Hughes, LLP
                      Blank Rome, LLP

**B.**    **Committee**

    Counsel:     Stinson LLP
                        Burns Bair LLP
                        Saunders Kahler, L.L.P.

**C.**    **Parishes**

    Counsel:     Woods Oviatt Gilman LLP
                        Elsaesser Anderson Chtd.

**D.**    **Interstate**

    Counsel:     Parker, Hudson, Rainer & Dobbs LLP
                        White & Williams LLP

[*Continued*]

**E.**    **LMI**

    Counsel:     Skarzynski Marick & Black LLP
                        Clyde & Co US LLP

**F.**    **United States Trustee**

    Counsel:     Office of the United States Trustee, Erin P. Champion, Esq.

**G.**    **Travelers**

    Counsel:     Dentons US LLP

**H.**    **Excelsior**

    Counsel:     Choate, Hall & Stewart LLP
                        Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

**I.**    **Hartford**

    Counsel:     Ruggeri Parks Weinberg LLP
                        Sugarman Law Firm, LLP

**J.**    **North River Objectors**

    Counsel:     Kennedys CMK LLP
                        IFRAH Law PLLC

    **K.**    **Catholic Mutual**

        Counsel:    ArentFox Schiff LLP

**III.**    **STIPULATED UNDISPUTED FACTS**

The following facts shall be deemed stipulated into evidence in the Confirmation Hearing:

    1.    On June 19, 2020, the Diocese filed a voluntary chapter 11 petition with the Court.

    2.    On June 24, 2020, the Court approved the retention of Stretto as claims and noticing agent. [Dkt. No. 32].

    3.    On July 9, 2020, the Office of the United States Trustee appointed the Committee pursuant to sections 1102(a) and 1102(b) of the Bankruptcy Code. [Dkt. No. 38].

    4.    The Committee is comprised of individuals who hold Abuse Claims, as that term is defined in the Plan, against the Diocese.

    5.    On September 18, 2020, the Court approved the retention of Stretto as administrative advisor [Dkt. No. 115].

    6.    On January 15, 2021, the Diocese, among other plaintiffs, commenced Adversary Proceeding No. 21-50002-5-mcr (the "<u>Insurance Adversary Proceeding</u>") against certain of the Objecting Parties (not including the United States Trustee), among others.

    7.    On April 12, 2021, the Court referred to mediation the plaintiffs and defendants in the Insurance Adversary Proceeding and deemed the Committee a party to such mediation for all purposes. [Insurance Adv. Pro. Dkt. No. 59]. The Honorable United States Bankruptcy Judge Judith K. Fitzgerald was selected as mediator.

    8.    On May 6, 2022, Judge Fitzgerald reported that, among other things: she "had numerous mediation communications including e-mails, telephone calls and remote mediation

sessions with either all Parties[4] or select Parties" that "mediation sessions were held on March 7 and 8, 2022 and May 2 and 3, 2002[;]" that "some progress was made toward a resolution with individual Parish insurers and with certain Diocesan insurers," but "certain of the Parties remain[ed] unshakably wedded to positions that [we]re not conducive to reaching resolution[;]" and that "[p]roductive settlement discussions [we]re not progressing and [we]re impaired by the wide disparity in the positions of the ]Parties." [Dkt. No. 889].

9. On July 8, 2022, the Court removed Judge Fitzgerald as mediator and appointed Paul Van Osselaer as substitute mediator. [Insurance Adv. Dkt. No. 125].

10. Between April 12, 2021 and October 20, 2023, the Diocese, the Committee, and various insurer-defendants attended mediation sessions. Travelers, in a motion to terminate the stay applicable to the Insurance Adversary Proceeding, represented to the Court that various insurers "appeared at no fewer than eight in-person and seven virtual mediation sessions." [Insurance Adv. Dkt. No. 141, ¶ 1]. LMI joined in Travelers' motion. [Insurance Adv. Dkt. No. 142].

11. On December 6, 2023, the Plan Proponents filed the *Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York* [Dkt. No. 1565], the disclosure statement in support [Dkt. No. 1566] (the "First DS"), and the Child Protection Protocols for the Roman Catholic Diocese of Syracuse, New York [Dkt. No. 1567].

12. On February 8, 2024, the Court denied approval of the First DS, noting various "deficiencies" that had to "be addressed before the adequate information requirements of 11 U.S.C. § 1125" could be "satisfied." [Dkt. No. 1664].

---

[4] "Parties" is defined in Judge Fitzgerald's report to include "the Diocese, the Diocesan Insurers, the Parishes, the insurers of the Parishes and the Official Committee of Unsecured Creditors." Dkt. No. 889 ¶ 3.

13. The Plan Proponents subsequently filed: the *Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York* and disclosure statement in support [Dkt. Nos. 1718, 1719]; the *Second Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York* and disclosure statement in support [Dkt. Nos. 1787, 1788]; the *Third Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York* and disclosure statement in support (such disclosure statement, the "Third Amended DS"), along with revised versions of each [Dkt. Nos. 1817, 1818, 1848, 1849]; and the *Fourth Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York* and disclosure statement in support [Dkt. Nos. 2172, 2173] (such disclosure statement, the "Fourth Amended DS").

14. On October 22, 2024, the Court noted that the "Diocese and Committee have been unable to reach a resolution with most of the defendants" in the Insurance Adversary Proceeding, removed Mr. Van Osselaer as mediator (except in a limited, unrelated capacity), and at the request of Interstate and LMI appointed as co-mediators Judge Shelley C. Chapman and Mr. Paul A. Finn.  [Insurance Adv. Pro. Dkt. No. 302].

15. On November 14, 2024, the Court denied approval of the Fourth Amended DS, stating (among other things) that: (i) "[t]he Committee, as a representative, has the authority to bind absent class members, subject to those members receiving individual notice and being afforded the opportunity to opt out," and that "the opt-out mechanism proposed [by the Plan Proponents] does not run afoul of *Purdue Pharma*[;]"and (ii) the "[e]xculpation and [r]elease [p]rovisions [of the plan described by the Fourth Amended DS] [we]re too broad and [could not] extend to the 'related persons of the Persons and Entities'" or "cover post-effective date activity," and that the "[e]xculpation [p]rovision should be limited to estate fiduciaries and their

7

professionals, the Committee and its members, the mediators, and [the Diocese's] officers and directors who participated in the Chapter 11 process from the Petition Date to the Effective Date."  [Dkt. No. 2308].

16. On November 27, 2024, the Plan Proponents filed the Plan [Dkt. No. 2337]; the accompanying *Plan Supplement*, comprised of Exhibits 1-11 to the Plan [Dkt. No. 2340] (the "Plan Supplement"); and the *Disclosure Statement* in support of the Plan [Dkt. No. 2338] (the "Disclosure Statement").

17. On December 9, 2024, the Court issued its *Memorandum Decision and Order on (I) the Impact of Truck Insurance Exchange v. Kaiser Gypsum Co., Inc. on Certain Insurers' Standing and (II) Related Discovery Disputes* [Dkt. No. 2358]. The order, which was issued in the context of a discovery dispute over the existence of a common interest between the Plan Supporting Parties, stated that certain documents provided by the Plan Supporting Parties for the Court's *in camera* review at the Court's direction "confirmed a settlement between the Diocese, the Committee and the Parishes was reached by April 26, 2023."  [Dkt. No. 2358].  The Court simultaneously determined that the Litigating Insurers "lack prudential standing as to" any matters "where only … third-party survivors' rights are implicated" and limited the Litigating Insurers' ability to seek discovery and raise objections accordingly.  [*Id*.]

18. On December 20, 2024, the Court entered its *Order Setting Confirmation Hearing Schedule for the Fifth Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York* entered [Dkt. No. 2397], which was subsequently amended and superseded by the *Second Amended Order Setting Confirmation Hearing Schedule for the Fifth Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York* entered [Dkt. No. 2572], and the *Third Amended Order Setting Confirmation Hearing*

8

*Schedule for the Fifth Amended Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York* [Dkt. No. 2799] (the "Scheduling Order").

19. On December 23, 2024, the Court approved the Disclosure Statement as containing "adequate information" pursuant to Section 1125(b) of the Bankruptcy Code and approved certain procedures for soliciting and tabulating votes on the Plan. [Dkt. No. 2398] (the "Disclosure Statement Order").

20. On January 2, 2025, the Diocese filed a certificate of service stating that Stretto by December 30, 2024 had served Solicitation Packages (including Ballots) on holders of Claims (each as defined in the Disclosure Statement Order) entitled to vote on the Plan.

21. On January 13, 2025, the Diocese filed a Modified Liquidation Analysis and Financial Projections [Dkt. No. 2430], which modified and updated the Liquidation Analysis and Financial Projections originally filed as Exhibits B and C to the Third Amended DS, respectively.

22. On March 21, 2025, the Diocese filed the *Declaration of Alexa Westmoreland Regarding the Solicitation and Tabulation of Votes on the Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse* [Dkt. No. 2668, with the sealed version containing confidential claimant information entered as Dkt. No. 2677], which was later amended on April 14, 2025, by the *Amended Declaration of Alexa Westmoreland Regarding the Solicitation and Tabulation of Votes on the Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse* [Dkt. No. 2766, corrected at 2767, with the sealed version containing confidential claimant information entered as Dkt. No. 2769], to include the vote of the Unknown Claimant Representative] (the "Voting Certification").

23. The Plan designates Claims in Class 1, 2, 4, and 5 (the Secured Claim of NBT Bank, Secured Claim of KeyBank, General Unsecured Claims, and Abuse Claims) (the "<u>Voting Classes</u>") as Impaired and entitled to vote on the Plan. December 20, 2024 was the Voting Record Date (as defined in the Disclosure Statement Order) for determining which holders of Claims were entitled to receive Solicitation Packages and, where applicable, vote on the Plan.

24. The Voting Certification states that Stretto served the Solicitation Packages (including the Ballots) on the Voting Classes, and the Non-Voting Packages on the Non-Voting Classes (as those terms are defined in the Voting Certification), by December 30, 2024.

25. On January 22, 2025, the Diocese filed a certificate [Dkt. No. 2445] stating that the Publication Notice (as defined in the Disclosure Statement Order) had been published as follows: in the North Country Catholic on January 15, 2025; and in The New York Times (National Edition), The Post-Standard, Democrat & Chronicle, The Observer Dispatch, The Binghamton Press and Sun Bulletin, Times Union, The Catholic Sun, and The Evangelist, on January 16, 2025.

26. February 28, 2025 at 5:00 p.m. (prevailing Eastern Time) was the deadline by which all Ballots were to have been received by Stretto to be counted as a valid vote to accept or reject the Plans (the "<u>Voting Deadline</u>").

27. Stretto tabulated the Ballots received by the Voting Deadline, *see* Voting Certification ¶¶ 11-12, and reported the following results:

   a. The sole claimant in Class 1, KeyBank, voted to accept the Plan.

   b. 100% of tabulated Class 4 General Unsecured Claim ballots voted to accept the Plan.

   c. 100% of tabulated Class 5 Abuse Claimant ballots voted to accept the Plan.

28. On March 28, 2025, the Court extended the Voting Deadline for the Unknown Claimant Representative. [Dkt. No. 2691].

29. On March 28, 2025, the Court granted *Interstate's Request for Judicial Notice in Support of Objection to Plan Confirmation* [Dkt. No. 2690].

30. The Unknown Claimant Representative voted to accept the Plan. [Dkt. No. 2767].

## IV. STIPULATIONS

1. On February 26, 2025, the Court so-ordered the *Stipulation and Agreed Order of Plan Proponents and Certain Insurers as to Plan Proponents' Notices of Rule 30(b)(6) Depositions to Insurers (Interstate & Travelers)* [Dkt. No. 2553] (the "Interstate & Travelers Stipulation").

2. On February 26, 2025, the Court so-ordered the *Stipulation and Agreed Order of Plan Proponents and Certain Insurers as to Admissibility of Declarations Submitted by Proposed Trust Fiduciaries* [Dkt. No. 2554].

3. On February 26, 2025, the Court so-ordered the *Stipulation and Agreed Order of Plan Proponents and Certain Insurers as to Official Committee of Unsecured Creditors' Fact Witness(es) to be Offered in Connection with the Confirmation Hearing* [Dkt. No. 2556].

4. On February 27, 2025, the Court so-ordered the *Stipulation and Agreed Order of Plan Proponents and LMI as to Plan Proponents' Notice of Rule 30(b)(6) Depositions to LMI and Extending the Time for LMI to Produce a Privilege Log* [Dkt. No. 2560] (the "LMI Stipulation").

5.      On March 28, 2025, the Court so-ordered the *Stipulation and Agreed Order of Parishes, Diocese, Committee, and Certain Insurers as to Certain Insurers' Notices of Deposition and Parishes' Objections Thereto* [Dkt. No. 2688].

6.      In accordance with the Interstate & Travelers Stipulation and the LMI Stipulation, the following facts are hereby stipulated and agreed to:

   a. The Insurance Policy(ies) issued by Interstate to the Diocese and/or any Participating Parties speak for themselves; such Insurance Policy(ies) expired on the expiration dates identified therein; and, subject to the foregoing, Interstate is not in possession of any evidence suggesting any of its Insurance Policy(ies) were unexpired as of June 19, 2020. Interstate is not in possession of any evidence suggesting that there are unpaid premiums with respect to any Insurance Policy(ies) that Interstate issued to the Diocese or any Participating Parties. To the extent such information still exists, it would be in the possession of the Diocese, the Participating Parties, or the Diocese's or Participating Parties' respective insurance broker(s).

   b. The Insurance Policy(ies) issued by Travelers to the Diocese and/or any Participating Parties speak for themselves; such Insurance Policy(ies) expired on the expiration dates identified therein; and, subject to the foregoing, Travelers is not in possession of any evidence suggesting any of its Insurance Policy(ies) were unexpired as of June 19, 2020. Travelers is not in possession of any evidence suggesting that there are unpaid premiums with respect to any Insurance Policy(ies) that Travelers issued to the Diocese or any Participating Parties. To the extent such information still exists, it would be in the possession of the Diocese, the Participating Parties, or the Diocese's or Participating Parties' respective insurance broker(s).

   c. The Insurance Policy(ies) issued by LMI to the Diocese and/or any Participating Parties speak for themselves; such Insurance Policy(ies) expired on the expiration dates identified therein; and, subject to the foregoing, LMI is not in possession of any evidence suggesting any of its Insurance Policy(ies) were unexpired as of June 19, 2020. LMI is not in possession of any evidence suggesting that there are unpaid premiums with respect to any Insurance Policy(ies) that LMI issued to the Diocese or any Participating Parties. To the extent such information still exists, it would be in the possession of the Diocese, the Participating Parties, or the Diocese's or Participating Parties' respective insurance broker(s).

7. In accordance with the agreement between the Committee and Interstate, the facts set forth in the below ¶ 7.a. are hereby stipulated and agreed to, subject to the reservation set forth in ¶ 7.b.:

   a. Interstate, LMI, and Travelers served the Committee with fifty-three (53) document production requests. In response, the Committee timely produced certain non-privileged documents, but also produced a privilege log that initially identified 4,265 documents as withheld on the basis of various privileges. The Committee amended the privilege log to remove twenty-one (21) of those documents, which documents were subsequently produced to Interstate, LMI, and Travelers.

   b. The Committee reserves all rights to object to admission into evidence of the stipulated facts set forth in ¶ 7.a. on the ground that the facts are not relevant to the Confirmation Hearing or that their prejudicial nature outweighs their probative value, but the Committee will not object to admission on any other basis.

## V. OPENINGS AND CLOSINGS

Each of the Plan Supporting Parties, the Litigating Insurers, Excelsior, Hartford, and the UST may make an opening argument prior to the presentation of evidence. There shall be closing arguments at the end of the Confirmation Hearing in accordance with the terms herein and directions to be provided by the Court. The Parties shall use their best efforts in both openings and closings to coordinate with the other Parties with which they are aligned so as to avoid duplication of argument to the greatest extent feasible.

## VI. RULES AND PROTOCOLS FOR TRIAL WITNESSES

All witnesses shall testify live unless specific approval is given in advance by the Court on notice to all Parties.

Any Party that intends to question a witness during the Confirmation Hearing must be present in the courtroom.

## VII. PRESENTATION OF WITNESSES

The Litigation Parties are free to determine the order in which to call their witnesses; however, the Litigating Insurers' case-in-chief will not begin until after 12:00 p.m. on Tuesday, April 29, and the Litigating Insurers' first witness will be Dr. Eileen Treacy (expert).

## VIII. RESERVATION OF RIGHTS

Unless expressly agreed otherwise in a stipulation of which the Court has taken judicial notice in relation to the Confirmation Hearing, the rights of all parties to object to the calling of any witness or to any testimony offered or elicited from any such witness are preserved.

## IX. EXHIBITS AND INTRODUCTION OF DOCUMENTARY EVIDENCE

Pursuant to the Scheduling Order, the Parties are to submit an Exhibit List on or before April 25, 2025 at 12:00 p.m. prevailing Eastern time. The Parties shall share electronically copies of all trial exhibits listed on their respective Exhibit Lists by no later than 5:00 p.m. prevailing Eastern time on April 25, 2025.

The Parties shall work in good faith to determine which exhibits will be admitted into evidence by consent. Any Party intending to introduce an exhibit into evidence at the Confirmation Hearing shall provide the Court three (3) copies of each such exhibit and shall make each such exhibit available electronically for all Parties. All Parties reserve the right to seek leave of the Court to identify additional exhibits after the April 25, 2025 (noon) deadline. Additionally, all Parties reserve all rights with respect to the assertion of evidentiary objections concerning trial exhibits included within any Exhibit List submitted to the Court prior to the Confirmation Hearing. As such, the inclusion of any trial exhibit on any Exhibit List submitted by the Parties shall not preclude any Party from opposing its admission or otherwise asserting any objection that they would otherwise be able to assert.

Exhibits that any Party seeks to introduce into evidence for impeachment during cross-examination or on rebuttal do not need to be included on the Exhibit List. Objections to exhibits offered during cross-examination or rebuttal shall be made at the time the exhibit is offered.

Exhibits that any Party seeks to admit into evidence may be offered in accordance with the applicable rule(s).

Any Party that intends to use or introduce into evidence any demonstrative (including charts, graphs, or other exhibits reflecting analytical work product of experts) during the Confirmation Hearing must provide such demonstrative(s) to all other Parties by **no later than 9:00 p.m.** prevailing Eastern time the day before the demonstrative(s) is/are intended to be used or introduced, unless such deadline is waived in advance by the consent of the opposing Party or Parties. For the avoidance of doubt, non-evidentiary demonstratives to be used in connection with opening and closing statements are excluded from this requirement.

**IT IS ORDERED** that this Pretrial Order shall control throughout the Confirmation Hearing unless modified at the Confirmation Hearing, or prior thereto, to prevent manifest injustice or for good cause shown. Any request to modify or amend this Pretrial Order may be made either on application of counsel for any Party or by the Court.

###