UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                      :
In re                                                 :        Chapter 11
                                                      :
The Roman Catholic Diocese of                         :        Case No. 20-30663 (WAK)
Syracuse, New York,                                   :
                                                      :
                                        Debtor.       :
- - - - - - - - - - - - - - - - - - - - - - - - - -  :
                                                      x
```

**UNITED STATES TRUSTEE'S (1) OBJECTION TO
THE MOTION FOR ENTRY OF ORDERS PURSUANT TO
SECTIONS 363 AND 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 9019 APPROVING SETTLEMENT AGREEMENTS AND POLICY BUY-BACKS
WITH CERTAIN INSURERS AND GRANTING RELATED RELIEF AND
(2) SUPPLEMENTAL RESPONSE IN FURTHER SUPPORT OF THE UNITED STATES
TRUSTEE'S OBJECTION AND RESERVATION OF RIGHTS TO THE MOTION FOR
ENTRY OF AN ORDER APPROVING MODIFICATIONS TO THE FIFTH AMENDED
<u>JOINT CHAPTER 11 PLAN OF REORGANIZATION</u>**


Dated: Rochester, New York
     August 15, 2025


WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2


By:    /s/ Erin P. Champion, Esq.

TO:    THE HONORABLE WENDY A. KINSELLA,
       CHIEF UNITED STATES BANKRUPTCY JUDGE:

      William K. Harrington, the United States Trustee for Region 2 (the "United States

Trustee"), respectfully submits this Objection (the "Objection") and Reservation of Rights to the

Motion for Entry of Orders Pursuant to Sections 363 and 105(a) of the Bankruptcy Code, and

Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs With Certain

Insurers and Granting Related Relief (the "Sale Motion") [ECF No. 2946] and this Supplemental

Response in Further Support of the United States Trustee's Objection to the Motion for Entry of

an Order Approving Modifications to the Fifth Amended Joint Chapter 11 Plan of Reorganization

for the Roman Catholic Diocese of Syracuse, New York Dated November 27, 2024 (the "Motion

to Modify") [ECF No. 2924]. In support thereof, the United States Trustee respectfully states as

follows:

## I.    <u>PRELIMINARY STATEMENT</u>

      The Sale Motion should be denied because it inappropriately seeks authorization from

this Court to approve (1) the sale of nondebtor assets, without the authorization of those holding

an interest in such assets; (2) releases and injunction provisions that contravene applicable state

law and do not fall within section 363(f) and thus violate Supreme Court precedent; and (3) a bar

order that extends far beyond the authority granted to this Court pursuant to section 363(f) to sell

assets free and clear of claims and interest.  Moreover, the Debtor has not even disclosed all the

Settlement Agreements at issue in the Sale Motion.  Approval of the Sale Motion will cause

abuse claimants to lose important and valuable property rights without adequate notice.  It is the

Sale Motion that is dictating the terms of the Debtor's reorganization, not the Plan.

      The Motion to Modify should likewise be denied because it seeks authorization from this

Court to incorporate the terms of the Sale Motion into the Plan, which would materially modify

the Plan, without resolicitation of votes, altering the rights of creditors without proper solicitation or voting.  Notably, the Modified Plan strikes provisions from the Fifth Amended Plan regarding their rights under Insurance Settlement Agreement. *See e.g.,* Modified Plan § 5.7 (striking the provision that "[t]he rights of the parties under any Insurance Settlement Agreement shall be determined exclusively under the applicable Insurance Settlement Agreement, the Final Order approving such Insurance Settlement Agreement, the Plan, and the Confirmation Order").  Another example is the modified language at Section 12.4 of the Modified Plan.  The language in the Fifth Amended Plan provided that the Supplemental Settling Insurer Injunction barred actions against the Settling Insurer Policies, "but against no other person or thing."  Yet, the Modified Plan adds § 1.1.83, defining "Settling Insurer Releasee," which includes a limitless number of parties protected under the Settling Insurer Injunction.

Additionally, the Class 5 ballot contains no reference to the Settling Insurer Injunction or any Insurer Settlement Agreement and expressly limits the release and injunction elections to those provided in the Plan.  But the Settlement Agreements would expand the terms of the injunctions in the plan to bar creditors from suing additional parties, contain terms that override the plan provisions on which creditors voted, and introduce a completely new gatekeeping mechanism limiting where they can sue that <u>was not included</u> in the Fifth Amended Plan on which creditors voted.

Because the Motion to Modify and Sale Motion are closely intertwined, the United States Trustee submits this combined response.  For the reasons below, both the Sale Motion and Motion to Modify should be denied in their entirety.

## II.      FACTUAL BACKGROUND

### A. General Background

1.      On November 27, 2024, the Debtor filed its Fifth Amended Disclosure Statement in Support of the Fifth Amended Joint Plan of Reorganization ("Disclosure Statement") and a Fifth Amended Joint Chapter 11 Plan of Reorganization ("Fifth Amended Plan" or "Plan") [ECF Nos. 2337, 2338].

2.      On December 9, 2024, the United States Trustee filed a Supplemental Objection to the Disclosure Statement and Plan and Reservation of Rights on the basis that the Disclosure Statement and Plan continued to provide for nonconsensual third-party releases not authorized under the Bankruptcy Code, and reserving all rights, claims, arguments, defenses, and remedies with respect to confirmation of the Plan. [ECF No. 2355].

3.      On November 14, 2024, the Court entered an Order Denying Approval of the Disclosure Statement in Support of Fourth Amended Joint Chapter 11 Plan of Reorganization ("Order Denying Approval of Fourth Amended Disclosure Statement").  [ECF No. 2308].

4.      On December 23, 2024, the Court entered an Order Approving the Fifth Amended Disclosure Statement; Approving Solicitation Packages and Distribution; Approving the Forms of Ballots and Establishing Procedures for Voting on Fifth Amended Joint Plan and Consenting to Third Party Releases; Approving the Form Manner, and Scope of Confirmation Notices; Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of Fifth Amended Joint Plan; and Granting related Relief ("Order Approving Fifth Amended Disclosure Statement").  [ECF No. 2398].

5.      The Order Approving Fifth Amended Disclosure Statement established certain deadlines and dates relative to confirmation of the Plan, and scheduled a hearing on confirmation of the Plan on April 28, 2025 ("Confirmation Hearing").

6.      On April 15, 2025, the United States Trustee filed an objection to the Plan ("United States Trustee's Plan Objection"). [ECF No. 2771]. The United States Trustee incorporates by reference all arguments and authorities as set forth in the United States Trustee's Plan Objection, as if fully set forth herein.

7.      The Confirmation Hearing did not conclude on April 28, 2025. The Court adjourned the Confirmation Hearing to July 2, 2025, and then further adjourned it to August 27, 2025.

8.      On June 10, 2025, the Debtor filed the Motion to Modify. [ECF No. 2924].

9.      The United States Trustee filed an objection to the Motion to Modify ("United States Trustee's Objection to Motion to Modify") on June 25, 2025. [ECF No. 2935]. The United States Trustee incorporates by reference all arguments as set forth in the United States Trustee's Objection to Motion to Modify, as if fully set forth herein.

10.     The Motion to Modify seeks to modify the Plan to, among other things, "effectuate the Insurer Settlements."[1] [ECF No. 2924]. The proposed order attached to the Motion to Modify included, among other things, a provision confirming that the Fifth Amended Plan as modified (the "Modified Plan") did not require resolicitation.

11.     A hearing was held on the Motion to Modify on July 2, 2025 ("Motion to Modify Hearing"), the same day that the Sale Motion was filed. Accordingly, no party had the benefit of

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning ascribed to them in the Motion to Modify or the Sale Motion.

4

reviewing the Insurer Settlements (of which only two were provided) prior to the Motion to

Modify Hearing.

12.    At the conclusion of the Motion to Modify Hearing, the Court requested that the

United States Trustee … "**explain the arguments that claimants were not aware of the**

**releases and injunctions when they voted in favor of the plan.  In light of that clear**

**disclosure presented to claimants, how do the proposed modifications materially and**

**adversely impact claimants such that they would re-consider their vote.  If it is the case that**

**then future releases were already contemplated and included in the plan then the court is**

**very wary of requiring re-solicitation that the UST has argued as necessary …. .**" (Motion

to Modify Hearing July 2, 2025 at 36:38).

13.    The Court adjourned the Motion to Modify to August 27, 2025 for further

consideration, and to be heard concurrently with the Sale Motion, in accordance with its July 7,

2025 Order Approving the Form and Manner of Notice of the Diocese's Motion to Approve

Proposed Insurance Settlements.  [ECF No. 2955].

### B.  The Sale Motion Key Terms and Definitions

14.    The Sale Motion seeks the approval of ten sale orders tied to four Settlement

Agreements with ten insurers.  The Debtor has thus far disclosed <u>only two</u> Settlement

Agreements and just one proposed order (the "Approval Order" or "Sale Order") referenced in

Exhibit A of the Interstate Settlement Agreement.  The attached Settlement Agreements are

unsigned.

15.    According to the Sale Motion, "[t]he settlement and sale and buy-back of the

Subject Policies, and payment of the Settlement Proceeds, is in each instance contingent upon

confirmation of the Plan and the issuance of certain injunctions channeling claims to the Trust

and barring their assertion against the Settling Insurers to ensure finality for both the Settling

Insurers and the DOS Entities with respect to any potential liability for Abuse Claims." [ECF No.

2946].

16.    Like the Motion to Modify (as noted in the United States Trustee's Objection to

Motion to Modify [ECF No. 2935]), the Sale Motion introduces key definitions that do not

appear in the Fifth Amended Plan – or modifies and expands existing definitions.

17.    Moreover, the scope and language vary between the Settlement Agreements. For

example, Section 1.1.30 of the unsigned Interstate Settlement Agreement attached to the Sale

Motion as Exhibit A defines "Diocese Parties" as:

> 1.1.30 "**Diocese Parties**" means, collectively, (a) the Diocese; (b)
> Participating Parties; (c) any (i) Other Catholic Organization and (ii)
> other Person covered or alleged to be covered under the Diocese
> Policies, in each of clause (i) and (ii), with respect to which the
> Diocese has authority to release Claims by a Final Order pursuant to
> sections 105(a) or 363(f) of the Bankruptcy Code or confirming a
> chapter 11 plan; and (d) each of their respective Related Persons,
> including without limitation the past, present, and future holding
> companies, merged companies, related companies, divisions,
> and  acquired companies of the foregoing Persons.

18.    The unsigned London Markets Insurance ("LMI") Settlement Agreement attached

to the Sale Motion as Exhibit B ("LMI Agreement"), however, does not contain a definition of

"Diocese Parties."[2]

19.    Section ff. of the unsigned LMI Settlement Agreement defines "Enjoined Parties"

as:

> The term "**Enjoined Parties**" means all Persons who have held,
> hold, or may hold Claims that have been released, discharged, or
> are subject to exculpation, the Channeling Injunction or the Settling

---

[2] The United States Trustee has not performed a side by side, line by line analysis of the two
unsigned Settlement Agreements, but as shown herein, not only is each agreement styled
differently, but they contain different terms.

Insurer Injunction, pursuant to the Plan, the Confirmation Order, or
the Approval Order.

20.     However, the unsigned Interstate Settlement Agreement does contain a definition of

"Enjoined Parties."

21.     Section 1.1.37 of the unsigned Interstate Settlement Agreement defines "Extra-

Contractual Claim" as:

> "**Extra-Contractual Claim**" means any Claim against any
> Interstate Released Party seeking any type of relief, other than
> coverage or benefits, under or with respect to the Diocese
> Policies. Extra-Contractual Claims include Claims for
> compensatory, exemplary, or punitive damages, or attorneys' fees,
> interests, costs, or any other type of relief, alleging any of the
> following with respect to (a) any Diocese Policy; (b) any Claim
> allegedly or actually covered under a Diocese Policy; or (c) the
> conduct of any Interstate Released Party with respect to (a) or (b):
> (i) bad faith; (ii) failure to provide insurance coverage under any
> Diocese Policy, including any failure to investigate or to provide
> a defense or adequate defense; (iii) failure or refusal to compromise
> and settle any Claim insured under any Diocese Policy; (iv) failure
> to act in good faith; (v) violation or breach of any covenant or duty
> of good faith and fair dealing, whether express, implied, or
> otherwise; (vi) violation of any state insurance codes, state surplus
> lines statutes or similar codes or statutes; (vii) violation of any
> unfair claims practices act or similar statute, regulation or code,
> including any statute, regulation, or code relating to unlawful,
> unfair, or fraudulent competition, business, or trade practices,
> and/or untrue or misleading advertising; (viii) any type of
> misconduct; or (ix) any other act or omission of any type by any
> Interstate Released Party for which the claimant seeks relief other
> than coverage or benefits under a Diocese Policy. "Extra-
> Contractual Claims" further include all Claims relating to any
> Interstate Released Party's (x) handling of any Claims under the
> Diocese Policies, (y) conduct in negotiating this Settlement
> Agreement and/or the Plan, and (z) conduct in the settlement of
> any Claims. For the avoidance of doubt, Extra-Contractual Claims
> of the Diocese Parties are included within the property Interstate
> is purchasing hereunder. For the further avoidance of doubt, ISO
> Exception claims are not Extra- Contractual Claims.

22.     These definitional expansions significantly broaden the categories of claims barred

by the settlements and the range of parties protected.  They also introduce provisions that were

neither disclosed nor finalized at the time of Plan solicitation.

23.    The Interstate Settlement Agreement also includes provisions requiring that:

a.  The Plan incorporate the settlements and their releases by reference (§2.2.5).

b.  The Channeling Injunction, Supplemental Injunction, and Gatekeeper Injunction

appear in substantially in the form as attached in Exhibit B-1, Exhibit A, and

Exhibit B-2, respectively (§§ 2.2.2-2.2.4).

c.  The terms of the Settlement Agreements control over any conflicting Plan term

and the terms of any Approval Order control over conflicting Confirmation Order

(§ 2.2.8).

24.    The "Controlling Document" (§ 2.2.8) structure means that the provisions under the

Settlement Agreement, filed after solicitation, would override previously approved Plan terms.

Abuse Claimants did not receive these agreements or the proposed Sale Orders with their ballots

and had no opportunity to vote on them.

### C.  Injunction Provisions

25.    Both the Interstate and LMI Settlement Agreements contain extensive injunction

provisions that significantly exceed those in the Fifth Amended Plan, broadening the categories

of barred claims, further restricting claimants' abilities to pursue an action, vastly increasing the

number of parties shielded under the newly added terms.

26.    Attached to the Interstate Settlement Agreement as Exhibit B-2 and the LMI

Settlement Agreement as Attachment J, is the following injunction provision:

**Form of Gatekeeper Injunction**

To the extent permitted by law, and subject in all respects to Section
12 of the Plan, no Enjoined Party may commence or pursue against
any Protected Party (a) an Abuse Claim or (b) any other Claim or

8

cause of action that arose, arises from, or is related to an Abuse Claim, the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind-down or reorganization of the business of the Diocese, the administration of the Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or cause of action represents a colorable Claim against a Protected Party and (ii) subject in all respects to the Channeling Injunction and Settling Insurer Injunction, specifically authorizing such Enjoined Party to bring such Claim or cause of action against any such Protected Party. The Bankruptcy Court will have jurisdiction to determine whether a Claim or cause of action is colorable and, to the extent legally permissible and as provided for in Section 14 of the Plan, have jurisdiction to adjudicate the underlying colorable Claim or cause of action.

For the avoidance of doubt, the Gatekeeper Injunction in this Section of the Plan does not apply to Claims commenced for the purpose of seeking recovery from Non-Settling Insurers.

27.    The Gatekeeping provision effectively bars third parties from litigating in their chosen forum without Bankruptcy Court permission, even after case closure. This gatekeeping mechanism was not included in the Fifth Amended Plan sent to creditors to vote. This is a key provision that clearly alters the rights of parties. For example, if a claimant wished to commence a suit in California, they would be required to return to the Bankruptcy Court in New York. This imposes an added restriction on the ability to sue non-debtors, along with additional time and expense to initiate such litigation, none of which was disclosed.

28.    Section cccc. of the LMI Settlement Agreement[3] contains a "Settling Insurer Injunction" that permanently enjoins "all Barred Claims" against Settling Insurers. The injunction prohibits a wide range of actions, including lawsuits, enforcement of judgments, and creations of liens by any party who has held or may hold such claims, including Abuse Claimants, government entities, and unknown claim holders.

---

[3] There is no proposed sale order attached to the LMI Settlement Agreement.

29.     The Interstate Settlement Agreement adopts a similar injunction (§ 2.2.3) directing parties to Paragraph 19 of the Sale Order.  This injunction likewise bars a broad array of claims – Abuse Claims, Medicare Claims, Direct Action Claims, and other "Barred Claims" against Interstate and its related persons, regardless of whether such claims were previously disclosed.

30.     The Modified Plan does not set forth these injunctions in full.  Instead, it states that:

**THIS PLAN HEREBY INCORPORATES BY REFERENCE, ADOPTS, AND RATIFIES (AND THE CONFIRMATION ORDER SHALL ADOPT AND RATIFY) THE SETTLING INSURER INJUNCTION SET FORTH IN THE SALE ORDER(S) IN ALL RESPECTS.**

31.     This means that the full scope of these injunctions, which are material to claimants' rights, appears only in the later filed Sale Motion and its exhibits, not in the Plan on which creditors voted.  Indeed, the Class 5 ballot contains no reference to the Settling Insurer Injunction or any Insurer Settlement Agreement, and expressly limits the release and injunction election to those provided in the Plan.

32.     At the Motion to Modify Hearing, the Court questioned whether the proposed modifications would materially and adversely affect claimants such that they might reconsider their votes in light of clear disclosure made to claimants.  The reason that materially and adversely affects them is because the modifications were not disclosed.  For example, the Class 5 ballot contained no actual reference to the Settling Insurer Injunction or to any insurer settlement agreement.  Indeed, the ballot does not even direct the Abuse Claimant to the specific provision in the Fifth Amended Plan (§ 12.4) addressing the Supplemental Settling Insurer Injunction  —an injunction that is further expanded under the Modified Plan.  The United States Trustee further addresses the Court's inquiry in more detail below.

33.     In short, claimants never received disclosure that the Debtor intended to seek approval of entirely new injunctions and to broaden the scope of the parties being released and

10

terms that override Plan provisions.

## IV.  <u>ARGUMENT</u>

### A.  *The Modified Plan's Expanded Release and Injunction Provision Constitute Material and Adverse Changes Requiring Resolicitation Under Bankruptcy Rule 3019(a)*

The Debtor claims that the proposed modifications to be incorporated from the Sale Motion merely "clarify" existing provisions in the Plan.  The record shows otherwise.  As noted in the United States Trustee's Objection to Motion to Modify, the Modified Plan introduces new definitions and broadens existing injunctions and releases to capture categories of claims and parties not covered in the Fifth Amended Plan.  These changes significantly alter claimants' rights.

For example, this request by the Debtor will result in an *expansion* of released parties set forth in the Plan because the definition of "Diocese Parties" in the Sale Motion is an added term. Section 1.1.30 of the unsigned Interstate Settlement Agreement attached to the Sale Motion as Exhibit A defines "Diocese Parties" as:

> 1.1.29 "**Diocese Parties**" means, collectively, (a) the Diocese; (b) the Reorganized Diocese; (c) Participating Parties; (d) any (i) Other Catholic Organization and (ii) other Person covered or alleged to be covered under the Diocese Policies, in each of clause (i) and (ii), with respect to which the Diocese has authority to release Claims by a Final Order pursuant to sections 105(a) or 363(f) of the Bankruptcy Code or confirming a chapter 11 plan; and *(e) each of their respective Related Persons, including without limitation the past, present, and future holding companies, merged companies, related companies, divisions, and acquired companies of the foregoing Persons, but excluding, however, any Excluded Parties.*

This definition is not included in the Modified Plan.

Additionally, the Sale Motion provides for the following overriding provisions of the Plan:

> 2.2.2   The Plan shall include an injunction in substantially the form attached as <u>Exhibit B-1</u> to this Settlement Agreement (the

11

"Channeling Injunction"), with only such modifications as are acceptable to the Settling Insurers and the Diocese Parties, pursuant to sections 105 and 1123 of the Bankruptcy Code*, barring and permanently enjoining all Persons who have held or asserted, or may in the future hold or assert, Claims from taking any action, directly or indirectly for purposes of asserting, enforcing,* or attempting to assert or enforce against any Protected Party any Channeled Claim and channeling such Channeled Claims to the Trust as the sole and exclusive source of payment of any such Channeled Claims.

2.2.3 *The Plan shall ratify an injunction in substantially the form included in Paragraph 19 of the attached* <u>*Exhibit A*</u> *to this Settlement Agreement (the "Supplemental Injunction") to this Settlement Agreement*, with only such modifications as are acceptable to the Settling Insurers, pursuant to sections 105(a), 363(b), (f), and (m) of the Bankruptcy Code, barring and permanently enjoining all Persons or Entities who have held or asserted, or may in the future hold or assert, Claims from taking any action, directly or indirectly for purposes of asserting, enforcing, or attempting to enforce any Barred Claim against any Interstate Released Parties, any of Interstate's Related Persons, or the property or assets of each.

2.2.5 *The Plan shall incorporate this Settlement Agreement and the releases contained herein by reference and make the Settlement Agreement part of the Plan as if set forth fully within the Plan.*

Sale Motion, §§ 2.2.2-2.2.5.

The above provisions are particularly troublesome because the Fifth Amended Plan, along with its Disclosure Statement, transmitted to Abuse Claimants for their vote and election regarding third-party releases and injunctions, did not include the third-party releases and injunctions now being forced upon them without their consent.

Further, the Class 5 ballot directed Abuse Claimants to review the "Disclosure Statement and Joint Plan" in their entirety before voting but made no reference to a sale motion or agreement with insurance carriers. Abuse Claimants (in fact all creditors) did not receive the Sale Motion before they voted and made an election regarding releases and injunctions, even though the releases and injunctions in the Sale Motion supersede those in the Plan.

Finally, the proposed order approving the sale contains the following provision:

> Without limiting the generality of the foregoing: (i) non-Diocese parties with Interests in or with respect to the Purchased Property who did not object, or who withdrew their objections to the Sale Transaction or the Motion have waived their right to object to the sale of the Purchased Property free and clear of such non-Diocese parties' Interests in the Purchased Property pursuant to Section 363(f)(2) of the Bankruptcy Code; and (ii) non-Diocese parties with Interests in or with respect to the Purchased Property who objected to the Motion and did not withdraw any such objection (a) are the holders of Interests subject to *bona fide* dispute under Bankruptcy Code Section 363(f)(4) and/or (b) can be compelled to accept a monetary satisfaction of their Interests within the meaning of Section 363(f)(5) of the Bankruptcy Code.

Sale Order, ¶ Q, p. 250 of 481.

The above paragraph implies that Abuse Claimants that do not object to the Sale Motion have waived their rights regardless of whether they elected to "opt-out"[4] under the Plan, thus nullifying the "opt-out."

The test for whether a modification is material, thus requiring resolicitation, is not whether the plan language contemplated some possibility of change, but whether the proposed modification changes substantive rights in a way that is materially adverse to creditors. *In re Celsius Network LLC*, 656 B.R. 327 (Bankr. S.D.N.Y. 2023) (citing *In re Ionosphere Clubs, Inc.,* 208 B.R. 812, 816 (S.D.N.Y. 1997). Because the proposed modifications to the Plan impact both the nature of claimant's recoveries and fundamental rights (including litigation rights against third parties), they are the type of adverse changes that should require a new disclosure statement and resolicitation. As set forth below, the Modified Plan's expanded releases and injunctions are inextricably tied to the proposed Insurer Settlement Agreements and Sale Motion. The

---

[4] The United States Trustee maintains the position that consent cannot be based on a failure to opt out; rather, affirmative consent is required.

settlements require claimants to release broad categories of claims – not only against the Diocese and DOS Entities, but also against Settling Insurers and their related parties, without those agreements having been fully approved or finalized at the time of solicitation.  At the time claimants voted on the Fifth Amended Plan, the Insurance Settlement Agreements were not disclosed.  Claimants therefore could not have understood the full extent of their rights they were surrendering or the precise scope of the injunctions.  By materially changing the terms of the Plan without giving claimants an opportunity to vote, the claimants' fundamental rights are altered.  Moreover, without an opportunity to vote, the claimants do not have the opportunity to consent to the newly added releases.

Rule 3019(a) does not require objecting parties to prove that the modifications would have changed the outcome of the vote; rather, it asks whether the changes adversely affect claim treatment.  If they do, resolicitation is required.  Here, the changes unquestionably alter both the substantive rights being released and the procedural means by which consent is withheld, satisfying the standard under Rule 3019 on this basis alone.  Mere speculation that claimants would have cast the same votes on the Modified Plan is irrelevant under Rule 3019(a).

Moreover, the premise underlying the Court's inquiry – that claimants' prior votes included valid and informed consent to the third-party release and injunctive provisions – is flawed because the original opt-out procedure was itself defective and inconsistent with applicable law regarding consent.  Claimants were never given the opportunity to affirmatively consent to the releases but instead were only allowed to opt out.  Even as to the opt out, the United States Trustee previously objected to the Plan's structure, which conditioned the right to a distribution on granting third-party releases, thereby creating a coercive dynamic that could have pressured claimants to not opt out of releases they might have otherwise rejected.  By adding

14

even broader release language and new injunctive relief on an already coercive framework, the

Modified Plan compounds the defects noted by the United States Trustee's Plan Objection.

**B. The Sale Motion Should not be Approved Because Debtor Impermissibly Seeks to Impose Releases of Claims Held by Third Parties Against Nondebtors**

The Supreme Court held in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), that

the Bankruptcy Code does not permit bankruptcy courts to involuntarily alter relationships

between non-debtors by imposing nonconsensual releases of, or injunctions barring, claims

between them. In *Purdue*, the Supreme Court observed:

> The Sacklers have not filed for bankruptcy and have not placed virtually all their assets on the table for distribution to creditors, yet they seek what essentially amounts to a discharge. They hope to win a judicial order releasing pending claims against them brought by opioid victims. They seek an injunction "permanently and forever" foreclosing similar suits in the future. 1 App. 279. And they seek all this without the consent of those affected. The question we face thus boils down to whether a court in bankruptcy may effectively extend to *nondebtors* the benefits of a Chapter 11 discharge usually reserved for *debtors*.

*Id.*, at 215.

The Sale Motion closely parallels the situation in *Purdue* in that numerous nondebtor

third parties that have not filed for bankruptcy are seeking a judicial order releasing pending

claims against them brought by Abuse Claimants. In *Purdue,* the Supreme Court held "the

bankruptcy code does not authorize a release and injunction that, as part of a plan of

reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor

without the consent of affected claimants." *Id.*, at 227. As set forth herein, the Sale Motion and

the Sale Order are attempting to use section 363 as an end-run around *Purdue* to impose

nonconsensual third-party releases and injunctions—but these provisions go beyond what section

363 allows and thus are not statutorily authorized.

*Purdue* held there is no authority in the Bankruptcy Code, other than the provisions under section 524(g) for asbestos cases, for imposing nonconsensual third-party releases in an order confirming a chapter 11 plan. Parties cannot evade *Purdue* by attempting to impose nonconsensual releases in other types of bankruptcy orders.[5] As stated above, the Sale Motion and Sale Order incorporate the nonconsensual third-party releases in the Modified Plan. But in addition, the Sale Order itself contains nonconsensual third-party releases that, as discussed herein, do not fall within section 363(f), and the Debtor cannot achieve through a section 363 sale what it cannot get at plan confirmation. Any relief granted in the Sale Order should be limited to that which the Debtor is entitled under section 363.

    <u>First</u>, the Settling Insurer Injunction, which is referenced in the Modified Plan, but is

---

[5] Even prior to the issuance of *Purdue*, courts recognized the limits of Section 363(f) and declined to interpret Section 363(f) to permit nonconsensual nondebtor injunctions and releases under the guise of sales of insurance policies free and clear of non-debtors' "interests in" the policies. *See In re Adelphia Communications Corp.*, 364 B.R. 518, 528 (Bankr. S.D.N.Y. 2007) (permitting the debtor to sell its rights under insurance policies to the insurers but refusing to "authorize invocation of section 363(f)" or limit the rights of certain objecting parties to bring claims against the purchasing insurers and refusing to issue the "channeling injunction" barring claims against the purchasing insurers); *In re Fraser's Boiler Service, Inc.*, 2019 WL 1099713, at *8 (W.D. Wash. March 8, 2019) (reversing decision that approved the sale of insurance policies free and clear of claims between insurance companies because claims by non-settling insurance companies against the settling insurance companies were not an "interest" in the debtor's property and the bankruptcy court had no authority to release those third-party claims); *Overton's, Inc. v. Interstate Fire & Cas. Ins. Co. (In re Sportstuff, Inc.)*, 430 B.R. 170, 178 (B.A.P. 8th Cir. 2010) (overturning a bankruptcy court's approval of an insurance settlement because it did not have "jurisdiction or authority to impair or extinguish independent contractual rights" belonging to third parties, including the right to defense and reimbursement of defense costs); *In re SoyNut Butter Co.*, 2018 WL 3689549, at *4 (Bankr. N.D. Ill. August 1, 2018) (holding that a Section 363(f) sale of an insurance policy that released the claims of additional insureds against the issuing insurance company could not be approved because the debtor could not sell the additional insureds' rights in the policy or their legal claims since those rights and claims were not part of the estate); *In re Forty-Eight Insulations, Inc.*, 133 B.R. 973, 980 (Bankr. N.D. Ill. 1991), aff'd, 149 B.R. 860 (N.D. Ill 1992)) (holding that Section 363(f) sale of a debtor's rights in an insurance policy could not support a release and injunction against the debtor's parent corporation that was an additional insured and had its own rights under the policy).

independently sought in the Sale Motion, provides, among other things, that numerous third

parties are permanently barred from pursuing claims that they have against other nondebtor third

parties. More specifically the Settling Insurer Injunction states:

> Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, and in consideration of the undertakings of Interstate pursuant to the Agreement, including Interstate's purchase of the Purchased Property free and clear of all Claims and Interests pursuant to Section 363(f) of the Bankruptcy Code as provided herein, any and all Persons and Entities that have held, now hold, or who may in the future hold any Claims or Interests (including without limitation all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Abuse Claimants, perpetrators, Covered Parties, any other additional insureds or assureds or named insureds or assureds, Non-Settling Insurers, the Diocese Parties, and all others holding Claims or Interests of any kind or nature whatsoever, including, without limitation, those Claims released or to be released pursuant to the Agreement), which Claims or Interests are under, arise out of, relate to, or connect in any way with an Abuse Claim or any of the Purchased Property, including, without limitation, (a) Abuse Claims (whether Consenting Abuse Claims or Non- Participating Abuse Claims), Unknown Abuse Claims, Coverage Claims, Inbound Contribution Claims, Insurer Contribution Claims, Related Insurance Claims, Direct Action Claims, Tort Actions, and all other Channeled Claims, (b) the payment of any of the Claims identified previously, including, without limitation, Medicare Claims, and (c) all other Barred Claims or Interests, are, to the maximum extent permitted by law, hereby permanently stayed, enjoined,
> barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Claim or Interest against any of (x) the Interstate Released Parties or Interstate's Related Persons, (y) the assets or property of any Interstate Released Parties or any of Interstate's Related Persons, or (z) the Purchased Property.

Sale Order, ¶ 19.

To summarize, under the Sale Motion, "all Persons and Entities" are permanently barred

from taking any action to assert or enforce any Claim against certain nondebtor third parties if

the claim *relates to or is connected in any way with* any of the Purchased Property. Such broadly

17

worded injunction goes beyond claims against the Purchased Property, but rather any action that "relates to" the Purchase Property. *See California Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.,* 519 U.S. 316, 335, 117 S. Ct. 832, 136 L. Ed.2d 791 (1997) (Scalia, J., concurring) ("[A]pplying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else") *cited with approval in Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 149 (2009).

These claims of third parties against nondebtor third parties do not belong to the Debtor and thus cannot be sold pursuant to section 363. The Abuse Claimants are not parties to the agreements that the Debtor seeks to approve in the Sale Motion, and the Debtor cannot release the claims without the consent of the affected claimant—which consent it does not have here.

Second, the Sale Order contains additional offending provisions, including:

> Without limiting the generality of the foregoing, Interstate: (i) is not assuming and ***shall have no liability for any Claims arising from or relating to Abuse, the Purchased Property, or the Bankruptcy Case.***

Sale Order, ¶ O.

These additional provisions provide that nondebtors—namely Interstate (and perhaps the other "settling insurers" once they file their settlement agreements and proposed orders), will have no liability for "any Claims" that are "relating to Abuse, the Purchased Property, or the Bankruptcy Case." These are classic third-party non-consensual releases that do not fall within the ambit of a section 363 sale and as to which the Debtor has not even pretended to seek consent.

Third, the Sale Order contains other offending provisions, including:

18

This Order shall be binding in all respects upon: (a) the Diocese and its Related Persons; (b) the Diocese's estate; (c) the other Diocese Parties; (d) all creditors (including without limitation all Abuse Claimants); (e) all holders of Interests whether known or unknown (including but not limited to any Non-Settling Insurers and Covered Parties) against or on all or any portion of the Purchased Property; (f) the Interstate Released Parties and Interstate's Related Persons; (g) the Purchased Property; (h) the Unknown Claims Representative; (i) any trustee that may be subsequently appointed in the Bankruptcy Case, whether pursuant to any plan of reorganization or liquidation (including without limitation the Trustee appointed under the Plan), under Section 1104 of the Bankruptcy Code, or upon a dismissal or conversion of this Bankruptcy Case under Chapter 7 of the Bankruptcy Code; and (j) all Persons and Entities receiving notice (or deemed to have received notice pursuant to this Order) of the Motion or the Sale Hearing. The Agreement shall be binding in all respects upon: (x) the Diocese, its Related Persons, and its estate; (y) the Diocese Parties; and (z) any trustee that may be subsequently appointed in the Bankruptcy Case, whether pursuant to any plan of reorganization or liquidation (including without limitation the Trustee appointed under the Plan), under Section 1104 of the Bankruptcy Code, or upon a dismissal or conversion of this Bankruptcy Case under Chapter 7 of the Bankruptcy Code.

*Id.*, ¶ 10.

This provision binds parties with Interests "whether known or unknown" and "all Persons and Entities receiving notice (or deemed to have received notice pursuant to this Order)." This is hardly a consensual provision. While section 363(f) offers limited protections for purchasers of a debtor's assets in bankruptcy, it does not permit sweeping nondebtor releases that shield a purchaser from all claims.

Section 363(f) provides limited authority for a debtor or a trustee to sell property of the estate free and clear of interest in that property, but that subsection does not permit a court to release or enjoin claims between third parties that are not property of the debtor and that are not directed against the estate property being sold. Neither section 105 nor Bankruptcy Rule 9019 can extend the Court's limited authority under section 363(f), and section 363(f) cannot be used as an

end run around *Purdue's* holding that nonconsensual releases are not permitted by the Bankruptcy Code.

Here, the Sale Order (and Modified Plan) provide for relief beyond that authorized under section 363(f) by enjoining or releasing claims outside the bounds of that section.

### C. *The Gatekeeper Injunction is Improper*

The "Gatekeeper Injunction" (which was not a term of the Fifth Amended Plan, but rather, added to the Modified Plan) provides the bankruptcy court with exclusive jurisdiction over numerous claims involving only nondebtors. The basic jurisdictional statute for bankruptcy provides district courts "original *but not exclusive* jurisdiction of all civil proceedings arising under title 11, or arising in or relates to cases under title 11." 28 U.S.C. § 1334(b) (emphasis added); *Matter of Brady, Texas Mun. Gas Corp.*, 936 F.2d 212, 218 (5th Cir. 1991). This provision strips courts of jurisdiction and places exclusive jurisdiction in the Bankruptcy Court to determine if claims by nondebtors against other nondebtors can proceed.  And it bars these third parties from pursuing their claims in their preferred forum without their consent.

The gatekeeping injunction is improper because the bankruptcy court lacks both jurisdiction and statutory authority to enter such an injunction and there has been no showing that injunctive relief is warranted.

The "Gatekeeper Injunctions" prohibits "enjoined parties"[6] from commencing or pursuing a protected party a claim without the Bankruptcy Court "first determining, after notice and a hearing, that such Claim or cause of action represents a colorable Claim" and provides that

---

[6] The term **"Enjoined Party"** was also added vis a vis the Modified Plan (Section 1.1.77) and means all Persons who have held, hold, or may hold Claims that have been released or discharged or are subject to exculpation, the Channeling Injunction, or the Settling Insurer Injunction, pursuant to the Plan, the Confirmation Order, or the Sale Orders.

the Bankruptcy Court will have "jurisdiction to determine wither a Claim or cause of action is

colorable… ."   The gatekeeping injunction would apply even after the Debtor's bankruptcy case

has been closed, which would require a nondebtor seeking to pursue a claim against another

nondebtor to first move to reopen the bankruptcy case.

This provision represents an inappropriate burden on Abuse Claimants and contemplates

the bankruptcy court's post-confirmation adjudication of claims for which the bankruptcy court

lacks jurisdiction. *See*, *e.g.*, *In re Park Ave. Radiologists, P.C.*, 450 B.R. 461, 468 (Bankr.

S.D.N.Y. 2011) ("Broadly speaking, the proceeding must affect some aspect of the plan—its

meaning, its implementation or its consummation—to come within the Court's post-confirmation

jurisdiction."); *Resorts Int'l Fin., Inc. v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*,

372 F.3d 154, 168 (3d Cir. 2004) ("As stated, the jurisdiction of the non-Article III bankruptcy

courts is limited after confirmation of a plan."); *Bank of Louisiana v. Craig's Stores of Texas,

Inc. (In re Craig's Stores of Texas, Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001) ("After a debtor's

reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction,

ceases to exist, other than for matters pertaining to the implementation or execution of the

plan.");  *Omega Corp. v IRS (In re Omega Corp.)*, 173 B.R. 830 (Bankr. D. Conn. 1994) (court

retains jurisdiction post-confirmation only over matters "involving the execution,

implementation, or interpretation of the plan's provisions, and to disputes requiring the

application of bankruptcy law.")

Finally, the gatekeeper injunction is not warranted by the traditional factors that support

injunctive relief. A party seeking an injunction "must demonstrate: (1) that it has suffered an

irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate

to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

21

and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (noting that an injunction is an "extraordinary remedy" and should issue "only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'" (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919))).

The procedure proposed by the gatekeeping provision—which is akin to the procedure followed prior to suing a bankruptcy trustee under *Barton v. Barbour*, 104 U.S. 126 (1881) —is unnecessary and burdensome and should not be permitted. The defense of "release" is an affirmative defense that cannot be adjudicated prior to the filing of the action to which it relates. *See, e.g.,* Fed. R. Civ. P. 8(c)(1), incorporated in Fed. R. Bankr. P. 7008. There is no reason why the court in which the relevant action has been filed cannot determine whether the non-debtor claim was released under the Plan.

A similar provision was rejected by Judge Owens in the Bankruptcy Court for the District of Delaware in *In re Gulf Coast Health Care, LLC*, where she noted "the plan says what it says, and other courts should be entitled to exercise their authority to interpret it," and "imposing such a requirement could also impose an unnecessary administrative hurdle and cost the parties when these cases are closed." *Gulf Coast Health Care, LLC*, No. 21-11336 (KBO) (Bankr. D. Del. 2021), ECF No. 1236, Transcript of May 4, 2022, Confirmation Hearing at 30:18-23.

Accordingly, this provision should be modified to allow Abuse Claimants who are outside the scope of the release to pursue their claims against third parties without the requirement of seeking bankruptcy court approval.

22

**D.  The Relief in the Sale Motion is More Expansive than the Relief Requested in the Already Solicited Fifth Amended Plan**

Not only does the Sale Motion seek relief that has no statutory basis, but it also impermissibly seeks relief outside of the parameters of the Fifth Amended Plan, which was solicited and voted on prior to the filing of the Sale Motion and Motion to Modify.  Particularly when dealing with a plan of such complexity and important survivor claims, the plan should be crystal clear as to how claimants rights will be impacted.

For example, as discussed above, the Sale Motion provides that not only do the terms of the Sale Motion supersede the terms and provisions of the Fifth Amended Plan, but also that the releases in any agreements with respect to the Sale Motion shall be incorporated as part of the Plan as if set forth fully within the Plan.  *Interstate Settlement Agreement*, § 2.2.5.  This includes the "new entities" seeking releases in the Sale Motion referring to the "Diocese Parties," *i.e.*, "each of their respective Related Persons, including without limitation the past, present, and future holding companies, merged companies, related companies, divisions, and acquired companies of the foregoing Person." The Debtor seeks this expansive relief—without any notice nor election by Abuse Claimants on the ballot.

Moreover, the Settlement Agreements may be modified <u>without</u> Court approval.

> 8.6 This Settlement Agreement may be modified only by a written amendment signed by all of the Parties, and no waiver of any provision of this Settlement Agreement or of a breach thereof shall be effective unless expressed in a writing signed by the waiving Party. The waiver by any Party of any of the provisions of this Settlement Agreement or of the breach thereof shall not operate or be construed as a waiver of any other provision or breach. Any change or modification of this Agreement that would result in a material adverse change to the rights of the Abuse Claimants or Trust shall require the consent of the Committee (if at the time of the proposed change or modification a Trustee has not been appointed) or Trustee (if at the time of the proposed change or modification a Trustee has been appointed and approved), as

23

applicable, which consent shall not be unreasonably withheld.

*Id.*, § 8.6.

And, the most objectional decretal paragraph in the Sale Order with respect to the

Settlement Agreements is the following:

> The Agreement and any related agreements, documents, or other
> instruments may be modified, amended, or supplemented by the
> Parties, in a writing signed by the applicable Parties, and in
> accordance with the terms thereof, without further order of this
> Court; *provided* that such modification, amendment, or supplement
> does not constitute a material change to the relief sought in the
> Motion and approved by this Order.

Sale Order, ¶ 36.

But more importantly, creditors are not entitled to vote on the Sale Motion. By separating

the relief sought in the Sale Motion from that sought in the Plan, the proponents are denying

claimants the right to vote on critical elements of the Plan. *See, e.g.*, *In re Diocese of Camden*,

653 BR 722, 745 (Bankr. D.N.J. 2023) (denying approval of a similar insurance motion because

inter alia "[t]he Insurance Settlement was originally intended to be part of a plan that was never

put to a vote, so the Court cannot look to any voting returns to find whether creditors are in favor

of the Insurance Settlement.").

### E.  The Sale Motion Has Other Deficiencies, All of Which Warrant Its Denial

The Sale Order provides that those who do not object to the Sale Motion, "waive their

right to object to the sale of the Purchased Property." Sale Order, ¶ Q.  Those who are holders of

interests subject to bona fide dispute under section 363(f)(4) or (b) can likewise be compelled to

accept a monetary satisfaction under section 363(f)(5). *Id*.

Additionally, the proposed Sale Order provides that objections are overruled and anyone

who objected or reserved rights "is enjoined from taking any action against the Interstate

Released Parties or Interstate's Related Persons. . . ."[7] *See* Sale Order, ¶ 3. Such language could

be read as enjoining objections to confirmation, whether by the United States Trustee or other

claimants and parties in interest. Further, the Debtor is asking the Court to make a good faith

finding under section 363(m). *Id.*, at ¶ 28.  Such language could be interpreted to enjoin parties

from appealing.

Also, because the Settling Insurer Injunction is in the Sale Order, and the Sale Order

would still be in effect even if the Plan does not go effective without the need for the claimants

to sign a release at all, approval of the Sale Order would allow the Insurers to receive relief that

they would not get in the Plan as filed, without modifications. To be sure, even though the

Settlement Agreements contain a condition precedent of having the Plan Confirmation Order

entered, *see* Interstate Settlement Agreement at § 8.20, there is no condition precedent in the

Interstate Sale Order that the *Plan* go effective.[8] In other words, with respect to the Interstate

Settlement Agreement, the Sale Order and the Settlement Agreements can be effective regardless

of whether the Fifth Amended Plan becomes effective. The other settlement agreements have not

been filed, and thus it is impossible to know what they provide on this issue.

Finally, because the Settlement Agreement states that it "is effective on the date that the

Approval Order becomes a Final Order," approval of the releases contained in the Sale Order and

Settlement Agreements can even occur prior to the hearing on confirmation. Thus, the proposed

Sale Order would deprive the United States Trustee and other parties in interest of their right to

---

[7] There are no proposed sale orders regarding the other insurers. Upon information and belief,
the same provisions would be contained in those orders.

[8] It appears that the LMI Settlement Agreement requires that the Plan must go effective. *See* § g.
In addition to the nonconsensual relief sought by the Debtor, the conflicting relief sought
throughout the Sale Motion, Settlement Agreements, and Sale Order render them ungraspable.
Accordingly, the Sale Motion must be denied or amended.

object at confirmation because such releases will have been decided in the approval of the Sale

Motion.

Moreover, the Motion to Modify incorporates these deficiencies into the Modified Plan

and the United States Trustee objects to same for the reasons stated above.

### F.   The Issue of U.S. Trustee Fees Payable Pursuant to 28 U.S.C. § 1930(a)(6) Must be Addressed

With respect to quarterly fees payable to the United States Trustee pursuant to 28 U.S.C.

§ 1930(a)(6), the United States Trustee incorporates by reference its continuing objection first

made in the United States Trustee's Objection to the Debtor's Motion to Approve Disclosure

Statement and other related relief [ECF No. 2261] regarding the treatment of U.S. Trustee

Quarterly Fees well as interest thereon under 31 U.S.C. § 3717.  In the Court's Order Denying

Approval of the 4th Amended Disclosure Statement, the Court indicated it "will consider the

issue regarding what constitutes a disbursement—whether it is only Debtor's $50M contribution

or the $100M contribution by Debtor and Participating Parties—at the confirmation stage …."

The issue of what constitutes a disbursement remains an issue before the Court.

The Debtor has an obligation to pay Chapter 11 Quarterly Fees based on *all* post-

Effective Date disbursements made pursuant to the Plan, regardless of how the disbursements are

accomplished.  Accordingly, the United States Trustee submits that all payments to the Trust,

including from the Diocese, Participating Parties, and Settling Insurers should be considered

disbursements.  The United States Trustee submits that the Plan should include language

consistent with that adopted in the confirmed plan in the *In re Norwich Roman Catholic

Diocesan Corporation* case, as follows:

> All fees due and payable under 28 U.S.C. § 1930 and not paid before
> the Effective Date shall be paid on and after the Effective Date when
> due and payable to the extent due under applicable law. After the

26

Effective Date, the Reorganized Debtor shall pay quarterly fees to the U.S. Trustee to the extent due under applicable law until the Bankruptcy Case is closed, and a Final Decree is entered. In addition, the Reorganized Debtor shall file post Confirmation Date reports in conformance with the U.S. Trustee guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which will be deemed Administrative Claims against the Diocese. All parties' rights to raise any and all issues with respect to the calculation and assessment of fees pursuant to 28 U.S.C. § 1930(a)(6) are hereby reserved.

## V.  **RESERVATION OF RIGHTS**

The United States Trustee reserves his rights to supplement this Objection, and to object to other deficiencies and/or amendments, including supplemental disclosures and documents.

## VI.  **CONCLUSION**

In sum, the Sale Motion and Motion to Modify together seek to impose sweeping, nonconsensual third-party releases and injunctions that were not disclosed to, or approved by, the claimants whose rights they extinguish.  These provisions violate Supreme Court precedent, exceed the Court's statutory authority, adversely altering creditors' rights without the resolicitation required under Rule 3019(a).  Neither can the Debtor use a § 363 Sale Order to circumvent the requirements of the Bankruptcy Code or the limitations established under *Purdue*.  Approval of these motions would strip claimants of valuable property and litigation rights, bind them to undisclosed settlement terms, and protect nondebtors from liability, without their consent.

**WHEREFORE**, the United States Trustee respectfully requests that the Court deny both the Sale Motion and Motion to Modify in their entirety, and grant such other relief as the Court deems just and proper.

Dated: Rochester, New York
      August 15, 2025

                          WILLIAM K. HARRINGTON
                          UNITED STATES TRUSTEE, REGION 2

By:    /s/ Erin P. Champion, Esq.
       Erin P. Champion
       Assistant United States Trustee
       Office of the U.S. Trustee
       100 State Street
       Rochester, NY 14614
       (315) 793-8127
       erin.champion@usdoj.gov