**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>DIOCESE OF SYRACUSE,<br><br>Debtor. | Chapter 11<br><br>Case No. 20-30663-WAK |

**THE INTERSTATE INSURERS' REPLY TO UNITED STATES TRUSTEE'S
(1) OBJECTION TO THE MOTION FOR ENTRY OF ORDERS PURSUANT TO
SECTIONS 363 AND 105(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 9019 APPROVING SETTLEMENT AGREEMENTS AND POLICY BUY-BACKS
WITH CERTAIN INSURERS AND GRANTING RELATED RELIEF AND
(2) SUPPLEMENTAL RESPONSE IN FURTHER SUPPORT OF THE UNITED STATES
TRUSTEE'S OBJECTION AND RESERVATION OF RIGHTS TO THE MOTION FOR
ENTRY OF AN ORDER APPROVING MODIFICATIONS TO THE FIFTH AMENDED
<u>JOINT CHAPTER 11 PLAN OF REORGANIZATION</u>**

Interstate Fire & Casualty Company, National Surety Corporation, and Fireman's Fund Insurance Company (collectively, the "Interstate Insurers"),[1] by and through their attorneys, hereby submit this "Reply" (i) to the Objection[2] of the United States Trustee ("UST") and (ii) in further support of the "Sale Motion" [Dkt. 2946] filed by the above-captioned debtor and debtor-in-possession (the "Debtor").  The Interstate Insurers further join the arguments related to the Sale Motion in the Debtor's supplemental briefing[3] in support of its motion to modify[4] the Plan.[5] In support hereof, the Interstate Insurers respectfully state as follows:

**INTRODUCTION**

The Sale Motion and policy buy-back agreed to therein mirrors the settlement structure that has been approved in *In re The Roman Catholic Diocese of Rochester* (the "DOR Case")[6] and *In re The Roman Catholic Diocese of Rockville Centre, New York* (the "DVRC Case")[7] and other non-diocesan bankruptcy cases.  Not only that, but Judge Warren and Judge Glenn approved the policy buy-back settlement structure *over nearly identical objections* lodged by the United States Trustee.[8]  Nevertheless, the UST repeats many of the same arguments it raised in the DOR and DRVC Cases.  The UST's Objection should be overruled again here, and for many of the same reasons.

---

[1] Capitalized terms used but not defined in this Reply have the meanings given to such terms in the Sale Motion or the *Settlement Agreement, Release, and Policy Buyback* (the "Interstate Settlement Agreement"), which is attached as Exhibit A to the Sale Motion.

[2] [Dkt. 3006] (the "Objection").

[3] [Dkt. 3007] (the "Supplemental Plan Modification Briefing").

[4] [Dkt. 2924] (the "Plan Modification Motion").

[5] [Dkt. 2337].

[6] *In re The Roman Catholic Diocese of Rochester*, Case No. 19-20905 (PRW) (W.D.N.Y).

[7] *In re The Roman Catholic Diocese of Rockville Centre, New York*, Case No. 20-12345-mg (S.D.N.Y.).

[8] *See also Objection of the United States Trustee to the Motion for Entry of Orders Pursuant to Sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs with Certain Insurers and Granting Related Relief* [DOR Case Dkt. 3169]; *see also* Transcript of Proceedings Held on June 18, 2025 (the "DOR Sale Hearing Tr."), [DOR Case Dkt. 3219].  A copy of the DOR Sale Hearing Tr. is attached as Exhibit "A".  *See also In re The Roman Catholic Diocese of Rockville Centre, New York*, 665 B.R. 71, 79-81 (Bankr. S.D.N.Y. 2024), *see also id.*, at 88-89.

1

Even aside from the overlap with the DOR Case and DRVC Case, the Objection lacks merit. This Court should disregard the UST's arguments, overrule the Objection, and enter an order approving the Sale Motion.

## **REPLY**

The UST opposes[9] the Sale Motion on several legal and factual grounds that can be boiled down to the following arguments: (a) the Court lacks authority to approve the releases and injunctions under both *Harrington v. Purdue Pharma, L.P.*[10] and Section 363 of the Bankruptcy Code; (b) the Gatekeeper Injunction improperly vests exclusive post-confirmation jurisdiction with the bankruptcy court; and (c) the Sale Motion would grant the Interstate Insurers broader relief than under the Plan, and otherwise contains "deficiencies" that warrant its denial.[11] None of the UST's arguments have merit.

### A. Section 363 Authorizes the Settling Insurer Injunction

As a gating issue, the UST ignores the fact that nearly identical settlement and policy buy-back structures have been approved in several other cases,[12] including two other diocesan bankruptcy cases in this Circuit.[13] Those two cases (*Rockville Centre* and *Rochester*) each involved a Section 363(f) policy buy-back with an accompanying injunction-in-aid that was

---

[9] The Interstate Insurers in this Reply address only the UST's arguments relating to the Sale Motion and Interstate Settlement Agreement.

[10] 603 U.S. 204 (2024).

[11] Objection at 15-26.

[12] *See, e.g.*, *In re Commercial Express*, 670 B.R. 573, 584-585 (Bankr. M.D. Fla. 2025) ("*Purdue* did not address sales of estate property and did not involve injunctive relief necessary to a settlement involving estate property" which is "expressly authorize[d]" by Section 363(f)"); *In re Hopeman Bros., Inc.*, 667 B.R. 101, 106-108 (Bankr. E.D. Va. 2025) (noting that "the Court has not found, and has not been pointed to, any decision extending *Purdue*'s decision to § 363 sales"); *In re Bird Global, Inc.*, Case No. 23-bk-20514-CLC (Bankr. S.D. Fla. Aug. 2, 2024) (approving bar order and channeling injunction related to insurance settlement and policy buy-back) *aff'd sub nom Wright v. Bird Global, Inc.*, Case No. 24-cv-23086, 2025 WL 1662962 (S.D. Fla. June 11, 2025).

[13] *In re Roman Catholic Diocese of Rockville Centre, New York*, 665 B.R. 71, 88-89 (Bankr. S.D.N.Y. 2024); DOR Sale Hearing Tr., [Dkt. 3219], pp. 54:16-55:25; *see also* Rochester *and* Rockville Centre *Objection Chart*, attached as Exhibit "B".

2

subsequently ratified by the debtor's plan – the precise relief requested here – along with almost identical objections to such relief from the UST, and the UST's attempts to derail the transaction succeeded in neither. In fact, Judge Warren in *Rochester* expressly concluded that the Section 363(f) sale and accompanying injunction (the terms of which served as a template for the Interstate Settlement Agreement here[14]) was "not an attempt to avoid *Purdue*" but was instead "very faithful to what the majority said, which is that [*Purdue*] is limited to [Sections] 1123(a)(6) and 105."[15]

This makes good sense. As Judge Warren and several other courts have recognized, *Purdue* does not state that nonconsensual third-party injunctions are always and everywhere impermissible;[16] it provides only that **Section 1123(a)(6)** does not authorize nonconsensual third-party releases or injunctions in Chapter 11 plans.[17] On that basis, courts have held repeatedly that a third-party injunction issued as part of a transaction under Section 363 – which authorizes sales "free and clear of *any* interest … of an entity other than the estate"[18] – does not offend *Purdue*.[19]

The same reasoning applies here. The Interstate Insurers entered into an agreement to purchase the Diocese Policies and related claims from the Debtor, who requested Court approval of the transaction pursuant to Section 363.[20] But because the sale proceeds will be distributed pursuant to the terms of the Plan, the Plan ratifies the Settling Insurer Injunction to ensure that it is carried forward in that context.[21] This does not implicate *Purdue* any more than the proposed

---

[14] [Dkts. 2853].
[15] DOR Sale Hearing Tr., at 55:16-18.
[16] Objection at 15-16.
[17] *See* 603 U.S. at 222-227; *see also id.* at 222 (noting that Section 524(g) "authorize[s] courts to enjoin claims against third parties without their consent" in asbestos bankruptcies).
[18] 11 U.S.C. § 363(f) (emphasis added).
[19] *See, e.g.*, *In re Hopeman Bros.*, 667 B.R. 101, 108-109 (Bankr. E.D. Va. 2025) (citing cases); *see also id.* at 108 ("Nothing in [the *Purdue*] opinion suggests that the protections afforded a buyer pursuant to § 363, including the ability of the purchaser to obtain the asset free of the claims of the debtor's creditors, were intended to be abrogated.").
[20] *See* Sale Motion, at 16-24.
[21] *See* Plan, § 12.4; *see also* Redline of Proposed Modified Plan, § 12.4 [Dkt. 2924-1].

3

sale itself does; Section 363 provides the requisite statutory authority for the Settling Insurer Injunction in each instance.[22] As a result, the UST's claim that the Settling Insurer Injunction violates *Purdue* is without merit and should be rejected.

The UST then argues that, *Purdue* aside, Section 363(f) does not authorize the Settling Insurer Injunction[23] because that injunction purportedly exceeds the bounds of the "limited" protection Section 363 affords to purchasers.[24] The UST is incorrect. Section 363(f) permits a trustee (or debtor-in-possession) to sell property of the estate "free and clear" of claims and interests when certain conditions are satisfied.[25] Courts have interpreted this provision to include "the power to enjoin creditors from pursuing the purchaser of such property"[26] to further maximize the value of the property being sold.[27] Here, the Settling Insurer Injunction only enjoins claims related to the Purchased Property,[28] and the Diocese Parties (the sole parties with an undisputed interest in the Diocese Policies) have consented to the sale and settlement. The Settling Insurer Injunction, moreover, applies only "to the maximum extent permitted by law."[29] In overruling the UST's same objection in the DOR Case, Judge Warren found that this limiting language "gets the

---

[22] *See, e.g.*, *Hopeman Bros.*, 667 B.R. at 108-109.

[23] Objection at 19. The UST also asserts that the Interstate Settlement Agreement improperly releases claims "of third parties against nondebtor third parties [that] do not belong to the Debtor," arguing that these claims "cannot be sold" free and clear under Section 363(f) (and therefore cannot be released). *Id.* at 16. This contention lacks any basis in fact. The only releases in the Interstate Settlement Agreement are as between the Interstate Insurers and the signatory **Diocese Parties** (along with certain Diocese Party related entities, as and to the extent permitted by law); there are *no* non-consensual releases of the Interstate Parties in the Interstate Settlement Agreement.

[24] Objection at 19. The cases cited in footnote 5 of the UST Objection are all readily distinguishable from the case at bar in that the non-debtor additional insureds in those cases objected to the settlements. That is not the case here – in fact, the additional insured entities are signatories to the Interstate Settlement Agreement.

[25] 11 U.S.C. § 363(f); *see also* Sale Motion at 18 (explaining that the policy buy-backs satisfy Section 363(f)).

[26] *See, e.g.*, *Hopeman Bros.*, 667 B.R. at 106 (quoting *In re Dow Corning Corp.*, 198 B.R. 214, 245 (Bankr. E.D. Mich. 1996)).

[27] *See, e.g.*, *Commercial Express*, 670 B.R. at 585 n.18.

[28] Interstate Settlement Agreement, at Exhibit A (the "Sale Order"), ¶ 19; *see also id.*, ¶ H, n. 2 (defining "Purchased Property").

[29] Sale Order, ¶ 19.

4

job done correctly."[30] Even putting this limiting language aside, the UST's objection is meritless because it has failed to articulate any direct claims that an Abuse Claimant may have against a Settling Insurer.[31]

Finally, the UST argues that the Sale Motion should be denied because approval of the Sale Motion would impose releases and injunctions "without any notice"[32] or opportunity to vote.[33] This fails on two fronts. At the outset, the UST conflates the requirements for approval of the Sale Motion and confirmation of the Plan; solicitation and voting is a prerequisite only for the latter.[34] But more to the point, there is no legitimate question as to whether stakeholders received notice[35] of the relief requested in the Sale Motion and Plan: they did. All parties in the Debtor's bankruptcy case received notice (whether directly or via publication) of the Sale Motion – and that notice contained details of the settlement agreements and policy buy-backs, including the injunctive and other relief provided for therein, as well as the hearing date and deadline to object.[36] All parties also received notice of the proposed modifications to the Plan.[37] This robust campaign provided

---

[30] [Dkt. 3007-1], at p. 41 of 58, lines 19-21 [DOR Confirmation Hearing Tr.].

[31] DOR Sale Hearing Tr., at p. 56:17-19 ("I'll also note that under New York law, my understanding of the insurance laws, the victims don't have direct claims against the carriers.").

[32] This assertion has no basis in reality, particularly since the UST already raised the same objections to the same settlement structure in its confirmation objection filed in April 2025. [Dkt. 2771] at 36-38; *see id.* at 36 ("The Plan Improperly Enjoins Claims Outside the Scope of Section 363(f)"). Evidently the policy buy-back settlement structure was explained sufficiently in the solicited Plan if the UST objected to it on the same grounds as in this Objection. No other creditor or Abuse Claimant objected to the Plan on this basis.

[33] Objection at 1 ("Approval of the Sale Motion will cause abuse claimants to lose important and valuable property rights without adequate notice."); *see also id.* at 23 ("The Debtor seeks this expansive relief [under Section 363]— without any notice nor election by Abuse Claimants on the ballot.").

[34] *Compare* 11 U.S.C. 1126 (describing the classes of creditors that may vote on a plan), *with In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138, 1144 (2d Cir. 1993) (explaining that due process for a settlement motion is satisfied when the parties are "apprise[d] … of the terms of a proposed settlement and the options available in connection with the judicial proceeding"). Importantly, however, stakeholders had the undisputed opportunity to voice their opinions on the Sale Motion by lodging objections to it – ***and no party has done so*** (aside from the UST).

[35] *See generally Drexel Burnham*, 995 F.2d at 1144.

[36] *See* [Dkts. 2933, 2964, 2978, 2985, 2995]; *see also* [Dkt. 2996] [Certificate of Publication].

[37] *See* [Dkts. 2950, 2977, 2985, 2995].

5

more than adequate notice of the Sale Motion (and all modifications to the Plan), and no claimant or other creditor has contended otherwise or objected to the Sale Motion or the Plan Modification Motion for any other reason.

Based on the foregoing, the UST's Objection should be overruled.

### B. The Gatekeeper Injunction Is Proper

The UST primarily opposes the Gatekeeper Injunction[38] on the grounds that it purports to grant "exclusive jurisdiction" to the bankruptcy court for the threshold determination of the validity of a claim brought against the Protected Parties following Plan confirmation.[39] The UST is wrong. Nowhere in the Gatekeeper Injunction is the phrase "exclusive jurisdiction."[40] The Gatekeeper Injunction provides that the Court "will have jurisdiction" to make that determination.[41] This means that the Court is vested with ***concurrent*** – not exclusive – jurisdiction alongside any other court of competent jurisdiction.[42]

Equally meritless are the UST's remaining contentions related to the purported burden imposed by the Gatekeeper Injunction. Courts have repeatedly approved similar gatekeeping provisions, finding that the burden imposed is "minimal" and in any event beneficial because it reserves the initial claim allowance determination for the court most knowledgeable of the plan and confirmation order.[43] Moreover, Judges Glenn and Warren overruled the UST's (essentially

---

[38] Interstate Settlement Agreement, at Exhibit B-2 ("[T]he Bankruptcy Court will have jurisdiction to determine whether a Claim or cause of action is colorable…").

[39] Objection at 20.

[40] Interstate Settlement Agreement, at Exhibit B-2.

[41] *Id.*

[42] *Id.*

[43] Judge Michael Kaplan has also approved similar injunctions in the Bed Bath & Beyond, Inc. and BlockFi, Inc. bankruptcy cases. *See* Transcript of Proceedings Held on September 12, 2023, *In re Bed Bath & Beyond, Inc., et al.*, Case No. 23-13359-VFP, [Dkt. 2280], at pp. 41:1-42:24 (approving the gatekeeper injunction because it is a minimal burden and would prevent "a disservice" to claimants and released parties that would result from "courts across this country constru[ing] and interpret[ing] the language of a plan and confirmation order in inconsistent

6

identical) objections to the gatekeeper injunctions in the DRVC and DOR Cases, respectively.[44] For these reasons, the UST's objections to the Gatekeeper Injunction should be overruled.

### C. The UST's Remaining Objections Are Factually Inaccurate

The UST argues that the Sale Motion exceeds the relief permitted by the Plan and contains other "deficiencies" that, in its view, warrant denial of the Sale Motion.[45] None of these contentions have merit.

According to the UST, the Interstate Settlement Agreement "supersede[s] the terms and provisions of the Fifth Amended Plan."[46] It does not. The Plan and Interstate Settlement Agreement make clear that the terms of the Interstate Settlement Agreement control over the terms of the Plan only in the event of a ***conflict*** between the two[47] – and the parties have gone to great lengths to prevent any such conflict from arising in the first instance. Indeed, that was the entire point of modifying the Plan. As the Debtor explains in its Supplemental Plan Modification Briefing, which is incorporated by reference herein, the requested modifications "mirror the provisions of the Insurer Settlements" and "serve to harmonize the Plan and the Insurance Settlement Agreements" to prevent "confusion through inconsistent terms and structure."[48] Further, that the Interstate Insurers required modifications to the Plan as part of the settlement with

---

fashion"). A copy of the Bed Bath & Beyond, Inc. transcript is attached as <u>Exhibit "C"</u>. *See also* Transcript of Proceedings Held on September 26, 2023, *In re BlockFi, Inc.*, *et al.*, Case No. 22-19361-MBK, [Dkt. 1621], at pp. 111:18-113:16 (finding that the gatekeeper injunction memorializes common practice of asking the bankruptcy court to interpret confirmation plans and orders, finding that it is "not burdensome" and is beneficial because "[i]t makes no sense to urge parties to make contributions to a [c]hapter 11 case and in return secure releases … that will be undercut by then having to defend their position all across the country … with inconsistent results"). A copy of the transcript in the BlockFi, Inc. case is attached as <u>Exhibit "D"</u>.

[44] [Dkt. 3007-1], at pp. 37-38 of 58; *see also Diocese of Rockville Centre*, 665 B.R. at 89 n.8.
[45] Objection at 23-24; *see also id.* at 24-25.
[46] Objection at 23; *see also id.* at 8 ("[P]rovisions under the Settlement Agreement … would override previously approved Plan terms.").
[47] Interstate Settlement Agreement, at ¶ 2.2.8 (providing that the Interstate Settlement Agreement controls "in the event of a conflict"); *see also* Redline of Proposed Modified Plan, § 5.1 [Dkt. 2924-1].
[48] [Dkt. 3007], at ¶¶ 6 &7.

the Debtor is not a surprise. On May 30, 2025, the Debtor filed a letter explaining that Plan modifications would be required as part of the insurance settlement agreements.[49]

The UST then continues its parade of horribles by asserting that the Sale Order contains language that bars confirmation objections or appeals of the Sale Order.[50] The UST is mistaken. Paragraph 3 of the Sale Order plainly states that "nothing in this Paragraph … shall be interpreted to enjoin any party's right, if any, to appeal this Order."[51] Plus, the Interstate Insurers for obvious reasons lack the ability to bar the UST (or any party) from objecting to confirmation – not least because the UST has already done so.[52] Nevertheless, the Interstate Insurers are prepared to modify the Sale Order as set forth on <u>Exhibit "E"</u> to clarify that the Sale Order does not by itself prohibit objections to confirmation of the Plan.

Finally, the UST imagines a scenario in which the Interstate Insurers receive the benefits of the Interstate Settlement Agreement (including the Settling Insurer Injunction) even in the absence of an approved Plan.[53] The terms of the Sale Order and Interstate Settlement Agreement prove otherwise. Under Paragraph 21 of the Sale Order, the Settling Insurer Injunction is not effective (and therefore does not protect the Interstate Insurers) until satisfaction of the following conditions precedent: (1) all parties to the Interstate Settlement Agreement have executed it; (2) the Sale Order becomes final and non-appealable; (2) the Plan Confirmation Order becomes final and non-appealable; (3) the Trust is created under the confirmed Plan; and (4) the Interstate Insurers pay the Settlement Amount to the Trust pursuant to the Interstate Settlement Agreement.[54]

---

[49] [Dkt. 2892].
[50] Objection at 24-25.
[51] Sale Order, ¶ 3.
[52] [Dkt. 2771].
[53] Objection at 25.
[54] Interstate Settlement Agreement, at § 1.1.65 (Settlement Agreement Effective Date); *see also* Sale Order, at ¶ 21 ("The Settling Insurer Injunction shall be effective upon the occurrence of the Settlement [Agreement] Effective Date and Interstate's payment of the Settlement Amount to the Trust pursuant to the terms of the Agreement.").

8

Meantime, the Interstate Settlement Agreement cannot go effective until the first three conditions are satisfied.[55] As a result, there is no danger of the Interstate Insurers benefitting from the Settling Insurer Injunction without an approved Plan. The UST's argument should be rejected.

## CONCLUSION

Based on the foregoing, the UST's Objection lacks any factual or legal basis and must be overruled. Section 363 provides the requisite statutory authority to approve the Sale Motion and accompanying injunctive relief, and numerous other courts have reached the same conclusion. The UST's other objections are based on a fundamental misapprehension of the terms of the Interstate Settlement Agreement and Sale Order. The Objection should be overruled in its entirety.

WHEREFORE, the Interstate Insurers respectfully request entry of an order, substantially in the form of the Sale Order (as modified herein): (a) overruling the Objection; and (b) granting to the Interstate Insurers such other and further relief as is right and just.

*[Signature Follows]*

---

[55] Interstate Settlement Agreement, at § 1.1.65 (Settlement Agreement Effective Date).

Dated: August 20, 2025                  Respectfully submitted,

By: */s/ Harris B. Winsberg*
Harris B. Winsberg (admitted *pro hac vice*)
Matthew M. Weiss (admitted *pro hac vice*)
Matthew G. Roberts (admitted *pro hac vice*)
**PARKER, HUDSON, RAINER & DOBBS LLP**
303 Peachtree Street NE, Suite 3600
Atlanta, GA 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
hwinsberg@phrd.com
mweiss@phrd.com
mroberts@phrd.com

*-and-*

Todd C. Jacobs (admitted *pro hac vice*)
John E. Bucheit (admitted *pro hac vice*)
**PARKER, HUDSON, RAINER & DOBBS LLP**
Two N. Riverside Plaza, Suite 1850
Chicago, IL 60606
Telephone: (312) 281-0295
tjacobs@phrd.com
jbucheit@phrd.com

*-and-*

Siobhain P. Minarovich (Bar No. 704462)
**WHITE AND WILLIAMS LLP**
810 Seventh Avenue, Suite 500
New York, NY 10019
Telephone: (212) 631-4415
minarovichs@whiteandwilliams.com

*Counsel for the Interstate Insurers*