UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

The Roman Catholic Diocese of Syracuse, New York,

                        Debtor.

The Roman Catholic Diocese of Syracuse, New York, *et al.*,[1]

                        Plaintiff,

v.

Arrowpoint Capital, *et al.*,

                        Defendants.

Case No. 20-30663 (WAK)

Chapter 11

Adv. Proc. No. 21-50002 (WAK)

**REPLY TO THE UNITED STATES TRUSTEE'S OBJECTION TO,
AND MEMORANDUM OF LAW IN FURTHER SUPPORT OF, THE DIOCESE'S
MOTION FOR ENTRY OF ORDERS PURSUANT TO SECTIONS 363 AND 105(A) OF
THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING
SETTLEMENT AGREEMENTS AND POLICY BUY-BACKS WITH
<u>CERTAIN INSURERS AND GRANTING RELATED RELIEF</u>**

The Roman Catholic Diocese of Syracuse, New York (the "<u>Diocese</u>"), by and through its undersigned counsel, hereby files this reply to the *United States Trustee's (1) Objection to the Motion for Entry of Orders Pursuant to Sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs with Certain Insurers and Granting Related Relief and (2) Supplemental Response in Further Support of the United States Trustee's Objection and Reservation of Rights to the Motion for Entry of an Order Approving Modifications to the Fifth Amended Joint Chapter 11 Plan of Reorganization* [Docket

---

[1] The caption of the adversary proceeding has been abbreviated pursuant to Federal Rule of Civil Procedure 10 and Federal Rule of Bankruptcy Procedure 7010. The full caption of this adversary proceeding is set forth in the Adversary Complaint found at Adv. Docket No. 1.

22171984.v3

No. 3006] (the "UST Submission") and memorandum in further support of the Diocese's *Motion for Entry of Orders Pursuant to Sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs with Certain Insurers and Granting Related Relief* [Docket No. 2946; Adv. Docket No. 340] (the "Settlement Motion").[2] As and for its reply to the UST Submission, and in further support of the Settlement Motion, the Diocese respectfully submits as follows:[3]

**Preliminary Statement**

1. The United State's Trustee ("UST") continues to take positions and raise objections in this Chapter 11 Case, ostensibly with the purpose of protecting the rights of Abuse Claimants, but which in reality (a) have not been advanced or joined by *any* Abuse Claimants, and (b) are *directly at odds* with the positions advocated by the Official Committee of Unsecured Creditors (the "Committee") which (i) is comprised solely of Abuse Claimants and, (ii) unlike the UST, is in regular communication with other Abuse Claimants and their attorneys.

2. The fact that the Diocese and the Committee were able to achieve settlements with eleven separate insurers, which unlock $76.14 million in additional Plan funding and resolve each and every confirmation objection raised by any party with an economic interest in this Chapter 11 Case, is a remarkable achievement. However, instead of supporting this development, the UST opposes the highly-negotiated terms of settlement in a misguided effort to expand the Supreme Court's ruling in *Purdue* well beyond its intended limited scope. The UST has raised similar, if not identical arguments and objections in multiple cases in the wake of *Purdue* and, insofar as the Diocese has been able to ascertain, those arguments and objections

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Settlement Motion.

[3] The Diocese also adopts and incorporates by reference herein the arguments set forth in the Interstate Insurers' reply to the UST Submission at Docket No. 3010.

2

22171984.v3

have been overruled by each court to have considered them, including by bankruptcy courts in both the Southern and Western Districts of New York. This Court should likewise reject the UST's contentions and grant the relief requested in the Settlement Motion to facilitate long-overdue compensation and closure for survivors.

## Reply

### I. The UST misstates and exaggerates the mandate in *Purdue.*

3. Courts have long recognized that insurance policies constitute property of a debtor's bankruptcy estate, and that third-party claims against an insurer may properly be enjoined where, absent such an injunction, such claims would impair the debtor's ability to settle its own coverage claims to fund creditor recoveries. *See*, *e.g.*, *MacArthur Co. v. Johns-Mansville Corp.*, 837 F.2d, 89, 92093 (2d Cir. 1988) (enjoining contribution claim that would impact the debtor's insurance coverage); *Munford v. Munford (In re Munford, Inc.)*, 97 F.3d 449, 453-55 (11th Cir. 1996) (enjoining contribution claims against settling insurer in aid of settlement).

4. The UST now attempts to convince the Court that *Purdue* overruled this longstanding precedent asserting, wrongly, that "[t]he Supreme Court held in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), that **the Bankruptcy Code** does not permit bankruptcy courts to involuntarily alter relationships between non-debtors by imposing nonconsensual releases of, or injunctions barring, claims between them." *See* UST Submission at p. 15 (emphasis added). However, the Diocese respectfully submits that the holding in *Purdue* is not nearly as sweeping as the UST suggests. The majority opinion, joined by only five justices, confines its analysis almost entirely to the permissible scope of plan provisions authorized by section 1123(b)(6) of the Bankruptcy Code, and ultimately concludes only that **section 1123(b)(6)** does not provide a statutory basis for imposing nonconsensual third-party

22171984.v3

releases in general aid of a debtor's reorganization **in a chapter 11 plan**. *Purdue*, 603 U.S. at 215-221.[4] The majority acknowledges in a footnote that section 105 of the Bankruptcy Code allows bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, but finds, as the debtor in *Purdue* conceded, that section 105, standing alone, cannot justify nonconsensual third-party releases because it serves only to "carry out" authority otherwise expressly conferred elsewhere in the Bankruptcy Code. *Id*. at 216 n.2.

5. Conspicuously absent from the *Purdue* opinion is any analysis as to whether other provisions of the Bankruptcy Code may provide statutory support for nonconsensual third-party releases.[5] Indeed, in the wake of *Purdue*, courts addressing the issue have held that bankruptcy courts can continue to issue injunctive relief to protect asset purchasers, including non-debtor insurers, from third party claims in conjunction with orders approving settlements where such a settlement involves a sale "free and clear" of claims or other interests pursuant to section 363(f) of the Bankruptcy Code. *See*, *e.g.*, *In re Commercial Express*, 670 B.R. 573, 584-85 (Bankr. M.D. Fla. May 22, 2025) ("*Purdue* did not address sales of estate property and did not involve injunctive relief necessary to a settlement involving estate property . . . . Section 363(f) expressly authorizes sales free and clear of any interest if such interest is in bona fide dispute, § 363(f)(4), or if the holder of the interest could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest, § 363(f)(5)."); *In re Hopeman Bros., Inc.*, 667 B.R. 101, 106-108 (Bankr. E.D. Va. 2025) (citing *Markland v. Davis (In re Centro Grp., LLC)*, 2021 U.S. App.

---

[4] The conclusion that *Purdue's* holding should be construed as narrowly as possible is further buttressed by the extensive dissent issued by the four other Justices who argue persuasively that, consistent with longstanding practice and in appropriate circumstances, chapter 11 plans may include provisions for nonconsensual third-party releases.

[5] Moreover, as set forth below the Diocese does not believe the Settlement Agreements, as proposed, contain any nonconsensual third-party releases.

4

22171984.v3

LEXIS 32962 (11th Cir. Nov. 5, 2021) in distinguishing injunctions that are integral to the settlement and buy-back of insurance policies from general injunctions in aid of a debtor's reorganization and noting that "the Court has not found, and has not been pointed to, any decision extending *Purdue's* decision to § 363 sales"); *In re Roman Catholic Diocese of Rockville Centre*, 665 B.R. 71, 88-89 (Bankr. S.D.N.Y. 2024) (noting that courts routinely grant injunctive relief without requiring an adversary proceeding as part of a "free and clear" sale); *In re Bird Global, Inc.*, Case No. 23-bk-20514-CLC (Bankr. S.D. Fla. Aug. 2, 2024) (approving bar order and channeling injunction related to insurance settlement and policy buy-back) *aff'd sub nom Wright v. Bird Global, Inc.*, Case No. 24-cv-23086, 2025 U.S. Dist. LEXIS 111111 (S.D. Fla. June 11, 2025); *see also*.

6. Indeed, Judge Warren overruled nearly identical objections raised by the UST in the Diocese of Rochester's chapter 11 case only a few weeks ago:

> The objections by the U.S. Trustee are the same, similar, if not identical to those raised in the *Diocese of Rockville* case and other cases including the *Commercial* case down in Florida from last month. And I'm prepared to overrule them with respect to the 363 sale.
>
> * * *
>
> [*Commercial Express* and *Hopeman Bros.*] convinced me that this is not an attempt to avoid *Purdue*. If anything, it's very faithful to what the majority said, which is that case is limited to 1123(a)(6) and 105.

*In re The Diocese of Rochester*, Case No. 19-20905 (PRW) (Bankr. W.D.N.Y.) Transcript of Proceedings Held on June 18, 2025 [Docket No. 3219] 54:25-55:18.

7. Here, as in *Rochester*, *Commercial Express*, *Hopeman Bros.*, *Rockville Centre*, and *Bird Global*, the injunctive relief that the Diocese seeks for the benefit of the Settling Insurers is a critical component of the negotiated settlement of the Diocese's insurance coverage

5

claims and sale of its policies back to the Settling Insurers, and nothing in *Purdue* restricts this Court's ability to fashion such relief.

8.  The Diocese further submits that the requested injunctive provisions are appropriate for at least two additional reasons: First, all creditors were provided with notice of the Settlement Motion, no creditor or other party that has asserted a claim against the Diocese, the Participating Parties, or any of the Settling Insurers, has objected to the requested relief. Hence, all such creditors can be deemed to have consented. *See Commercial Express*, 2025 Bankr LEXIS 1261 at * 23.

9.  Second, the Court can enjoin Abuse Claimants from asserting Abuse Claims (or claims related to Abuse Claims) against the Settling Insurers because none of the Abuse Claimants have a direct right of action against the Settling Insurers. New York law does not generally allow personal injury plaintiffs to proceed directly against an alleged tortfeasor's insurer. *Lang v. Hanover Ins. Co.*, 3 N.Y. 3d 350 (N.Y. 2004). Such direct actions may only be brought to derivatively enforce the rights of the insured for coverage once a plaintiff obtains a judgment, serves the defendant with notice of entry of such judgment, and the judgment remains unsatisfied for thirty days. N.Y. INSURANCE LAW § 3420(b)(1); *D'Arata v. New York Cent. Mur. Fire Ins. Co.*, 76 N.Y. 2d 659 (N.Y. 1990) (plaintiff proceeding under § 3420(b)(1) "'stands in the shoes of the insured' . . . . as subrogee of the insured's rights. . . ."). None of the Abuse Actions against the Diocese or other Participating Parties have progressed to the point of judgment, much less gone unsatisfied for thirty days. Accordingly, the only parties that hold an "interest" in the coverage claims that are being settled, and in the policies that are being sold, are the Diocese and the Participating Parties, all of whom have agreed to the releases in the Settlement Agreements and the injunctive relief sought in the Settlement Motion. Alternatively,

6

22171984.v3

to the extent any Abuse Claimant could be said to have an "interest" in such claims or the underlying policies, such an inchoate, non-assertable interest is either (i) subject to bona fide dispute and/or of a nature where the Abuse Claimant could be compelled to accept a money satisfaction, in which case the Court may authorize a sale to the Settling Insurers free and clear pursuant to section 363(f), or (ii) has a zero value and can be enjoined as "fully satisfied" consistent with *Purdue*. 603 U.S. at 206 (expressing no opinion "upon a plan that provides for the full satisfaction of claims against a third-party nondebtor.").

II. **The relief requested in the Settlement Motion is no more expansive than what was always contemplated in the Fifth Amended Plan.**

10. The *Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* (the "Fifth Amended Plan") [Docket No. 2337] received unanimous approval from all Abuse Claimants who responded to the Diocese's solicitation. To the extent the UST attempts to argue that the Fifth Amended Plan and accompanying disclosure statement did not adequately apprise Abuse Claimants of the possibility that the Diocese and Committee would enter into insurance settlement agreements, or that those settlement agreements would include comprehensive releases and other protections for settling insurers, the Diocese respectfully submits the UST is simply wrong.

11. The Fifth Amended Plan specifically contemplated an injunction for the benefit of Settling Insurers:

> **PURSUANT TO SECTIONS 105(a), 363, AND 1129 OF THE BANKRUPTCY CODE . . . ANY AND ALL PERSONS WHO HAVE HELD, NOW HOLD OR WHO MAY IN THE FUTURE HOLD ANY CHANNELED CLAIMS ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, TO ASSERT, ENFORCE, OR ATTEMPT TO ASSERT OR ENFORCE**

7

22171984.v3

**ANY SUCH CLAIM AGAINST THE SETTLING INSURERS OR SETTLING INSURER POLICIES.**

Fifth Amended Plan at § 12.4.

12. "Channeled Claim" is defined expansively to include:

> [A]ny **Abuse Claim**, Inbound Contribution Claim, **Medicare Claim**, **Extra-Contractual Claim**, or **any other Claim** against the Diocese or any Protected Party **arising from or related in any way to an Abuse Claim or any of the Settling Insurer Policies**, whenever and wherever arising or asserted, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, including without limitation all Claims by way of **direct action**, subrogation, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and other expenses, or for any equitable remedy . . . .

Fifth Amended Plan at § 1.1.30 (emphasis added).

13. Moreover, the definitions of "Insurer" and "Settling Insurer" make it clear that the scope of parties to be protected by this injunctive relief is broad and consistent with what is proposed to be included in the Sale Orders pursuant to the Settlement Motion:

> *Insurer* means a Person that has, or is alleged to have, issued, subscribed any interest in, assumed any liability for, or underwritten any risk in an Insurance Policy, whether or not a regulated insurance company, **including all of such Person's reinsurers and retrocessionaires and all of its affiliates, successors, and assigns, and all Agents of the foregoing**.

Fifth Amended Plan at § 1.1.98 (emphasis added).

> *Settling Insurer* means any Insurer that is party to an Insurance Settlement Agreement with the consent of the Committee and the Diocese. **A Settling Insurer's predecessors, successors, and assigns shall receive the benefits and protections afforded to a Settling Insurer under the Plan**, but only to the extent that: (i) such predecessor's liability was assumed by the Settling Insurer, and not independent of the liability of such Settling Insurer; and (ii) such successor's or assign's liability is derivative of the liability of the Settling Insurer and not independent of the liability of the Settling Insurer.

8

Fifth Amended Plan at § 1.1.171 (emphasis added).

14. For comparison, the "Interstate Released Parties" who will receive the benefit of the Settling Insurer Injunction under the Interstate Settlement Agreement are defined as:

> Interstate Fire & Casualty Company, National Surety Corporation, and Fireman's Fund Insurance Company and each of their past and present parents, subsidiaries, affiliates, and divisions **solely in their respective capacities as such**; each of the foregoing Persons' respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; each of the foregoing Persons' respective past and present directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators **solely in their respective capacities as such**; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, **solely in their capacities as such**, and all Persons acting on behalf of, by, through, or in concert with them. "Interstate Released Party" further includes the reinsurers and retrocessionaries of Interstate, **solely in their capacities as such, with respect to the Diocese Policies**.

Interstate Settlement Agreement at § 1.1.44 (emphasis added).

15. Contrary to the UST's suggestion, there are no "'new entities' seeking releases in the Sale Motion." UST Submission at p. 23.[6] While the Settling Insurers may have insisted on including language in the Settlement Agreements that is more detailed and precise than the more generic language used in the Fifth Amended Plan, the Settlement Agreements do not expand the substance of the releases and injunctions contemplated in the Fifth Amended Plan which was approved unanimously by Abuse Claimants.

---

[6] To the extent the UST complains about the addition of a definition of "Diocese Parties" in the Interstate Settlement Agreement, the Diocese respectfully submits that such "Diocese Parties" are receiving in that agreement only bi-lateral releases from Interstate and its Related Parties – neither the Settlement Agreement nor the Sale Order contemplates any release or injunction of third party claims against the "Diocese Parties."

16. Moreover, even if the injunctions contemplated in the Settlement Agreements were broader than those specifically contemplated in the Fifth Amended Plan (they are not), as set forth above, the Court may approve the Settlement Agreements and issue the contemplated injunctive relief under section 363(f) of the Bankruptcy Code, even in the absence of affirmative consent from Abuse Claimants and without violating *Purdue*.

### III. The Court should disregard the UST Submission to the extent the UST exceeded the page limit for supplemental briefing on the Diocese's Plan Modification Motion.

17. At the July 2, 2025 hearing on the Diocese's motion to approve certain modifications to the Fifth Amended Plan [Docket No. 2924] (the "Plan Modification Motion") the Court requested supplemental briefing "with a maximum of ten pages" from both the Diocese and the UST. *See* Audio Transcript of July 2, 2025 hearing at 34:10.

18. Consistent with the Court's directive, on August 15, 2025, the Diocese submitted a supplemental memorandum of law in further support of the Plan Modification Motion, limited, as directed by the Court, to ten pages in length [Docket No. 3007] (the "Diocese Supplemental MOL").

19. Rather than submitting a ten-page supplemental brief as directed by the Court, the UST filed the UST Submission which runs to twenty-seven substantive pages in length and combines both additional arguments in opposition to the Plan Modification Motion and opposition to the Settlement Motion.

20. Other than noting that the UST Submission fails to address the Court's request for further explanation of how the proposed modifications to the Fifth Amended Plan actually **materially and adversely impact** the interests of Abuse Claimants, especially in light of the injunctions and releases that were already included in the Fifth Amended Plan, the Diocese

10

intends to rely upon the Diocese Supplemental MOL with respect to the Plan Modification Motion.

21. The UST, however, should not be allowed to achieve a litigation advantage over the Diocese, and to circumvent the page restriction that this Court imposed, by combining its supplemental briefing with objections to the Settlement Motion. Accordingly, for purposes of this Court's consideration of the Plan Modification Motion, the Diocese respectfully submits that the Court should disregard all of the UST Submission except the first ten pages thereof.

**IV. The Court should disregard the UST Submission to the extent it advances untimely confirmation objections, which lack merit in any event.**

22. This Court entered several orders setting, then reaffirming, April 15, 2025 as the deadline for parties in interest to file objections to confirmation of the Fifth Amended Plan. *See* Docket Nos. 2397, 2398, 2452, 2572.

23. The UST timely filed a thirty-nine page objection to confirmation of the Fifth Amended Plan [Docket No. 2771] (the "UST Confirmation Objection"). The UST Confirmation Objection raises several issues, primarily focused on the UST's *Purdue* arguments, however it does not engage at all with the Fifth Amended Plan's treatment of quarterly fees payable pursuant to 28 U.S.C. §1930 ("UST Fees").[7]

24. Now, four months after the deadline to file confirmation objections has passed, and after the Court has already held several hearings on confirmation, the UST apparently seeks to contest the basis for calculating UST Fees.

25. The UST attempts to gloss over the untimeliness of its fee objection by asserting that it is "incorporating by reference its continuing objection first made in the United States Trustee's Objection to the Debtor's Motion to Approve Disclosure Statement and other related

---

[7] The Plan Modification Motion does not propose any modifications to the Fifth Amended Plan's treatment of UST Fees.

relief." UST Submission at p. 26. But the record belies that suggestion. First, the prior objection to which the UST refers, was not directed at the disclosure statement for the Fifth Amended Plan, but instead a disclosure statement relating to a prior iteration of the Diocese's plan. Second, the deadline to incorporate an earlier disclosure statement objection into a confirmation objection expired on April 15, 2025.

26. The Diocese respectfully submits that, when it did not raise the fee issue in the UST Confirmation Objection, the UST abandoned and waived any arguments and objections relating to the treatment of UST Fees. Accordingly, the Diocese requests that the Court disregard the UST Submission and overrule the UST's objections with respect to the treatment of UST Fees under the Fifth Amended Plan (as it may be modified in accordance with the Plan Modification Motion).

27. The Diocese respectfully submits that existing precedent in this Chapter 11 Case requires that the UST's untimely objection be overruled, notwithstanding that the UST may have made similar arguments in opposition to the approval of a prior disclosure statement. The Court will no doubt recall that, like the UST, Travelers filed an objection to a prior iteration of the Diocese's disclosure statement that forecasted prospective confirmation objections by Travelers. *See* Docket No. 2265. Travelers did not, however, file an objection to confirmation of the Fifth Amended Plan prior to the April 15, 2025 confirmation objection deadline. On April 18, 2025, Travelers submitted a late joinder to plan objections filed by other insurers. *See* Docket No. 2809. At the initial confirmation hearing on April 28, 2025, the Court declined to hear Travelers' confirmation objections, overruling them as untimely. *See* Transcript of April 28, 2025 hearing at 13:1-16:15. The Diocese submits that the UST's position concerning the fee calculation should be dismissed as untimely.

22171984.v3

28.     Even if the Court were to engage with the UST's late objections, they should be overruled because, in addition to being untimely, they also lack merit.

29.     Section 2.1.5 of the Fifth Amended Plan provides that all UST Fees payable under 28 U.S.C. § 1930 not paid prior to the Effective Date will be paid as soon as practicable after the Effective Date. It goes on to clarify, however, that payments made to the Trust by Persons other than the Diocese, and payments by the Trust to any Person, shall not be considered to be a "disbursement" for purposes of calculating UST Fees under § 1930. Judge Sontchi's analysis in *Paragon* is apt:

> The word "disbursements" is commonly understood in this context to apply to payments made with the funds generated from the liquidation of the debtor's assets. Although courts have taken different approaches to interpreting section 1930(a)(6), the common thread that appears to bind many of those decisions together is the fact that the debtor had some interest in, or control over, the money disbursed.

*In re Paragon Offshore PLC*, 629 B.R. 227, 230-31 (Bankr. D. Del. 2021) (internal quotations omitted.

30.     The UST asserts that, in addition to the $50 million being contributed to the Trust from the Diocese, UST Fees should also be assessable against contributions to the Trust coming from non-debtor entities, including $50 million being contributed by the Participating Parties and over $76 million from Settling Insurers.[8]

---

[8] While not stated explicitly in the recent UST Submission, the prior disclosure statement objection upon which the UST attempts to rely also indicates that the UST may also improperly seek to tax post-Effective Date payments by the Trust. *See* Docket No. 2261 at p. 42. This would be precisely the kind of "double-dipping" that Judge Sonchi held to be impermissible in *Paragon*:

> By distributing the corpus of the Litigation Trust Pro Rata to the beneficiaries of the Litigation Trust, the Trust is not paying expenses on behalf of any debtors. Rather, all "disbursements" related to any of the Debtors' obligations to the Trust beneficiaries and the claims against Noble occurred at the Effective Date in 2017.

13

31. The Diocese has no equitable interest in any of the funds coming from the Participating Parties and the Settling Insurers which funds are being contributed by those parties to the Trust in exchange for the settlement of their own independent liabilities. Accordingly, no UST Fees should be assessed against such transfers.

32. In *Rochester,* Judge Warren recently overruled the UST's objection on similar grounds. *See In re The Diocese of Rochester*, Case No. 19-20905 (PRW) (Bankr. W.D.N.Y.) Transcript of Proceedings Held on July 29, 2025 at 43:4-7 ("I agree with the *Paragon* decision . . . . The fees are based on the money that the Diocese controls and the Diocese pays in."). Judge Warren also recognized that, even if parish funds were to be funneled through the diocese for administrative convenience and the diocese could be said to temporarily "control" such funds, as a practical matter there would be no increase in UST Fees payable because all trust funding will occur contemporaneously and the disbursements being made by the Rochester diocese alone would incur the maximum quarterly fee of $250,000. *Id*. at 43:12-22 ("So they're going to be paid at the same time as the Diocese . . . . Once you hit 250[,000], it doesn't matter, you've maxed out. The money being paid by the carriers is going to be paid directly to the Trust and not through the Diocese . . . . Those monies are not taxable . . . . To the extent that objection's related to the insurance proceeds, that objection's overruled."). Here too, the $50 million being contributed by the Diocese is more than sufficient to trigger the maximum quarterly UST Fee of $250,000.

33. The Diocese respectfully submits that, if the Court entertains the UST's late objection, it should follow *Paragon* and *Rochester* in holding that the UST is not entitled to

---

*Paragon*, 629 B.R. at 231.

22171984.v3

assess a fee on payments originating from non-debtor parties and in which the Diocese holds no equitable interest.

WHEREFORE, for the reasons set forth above, the Diocese respectfully submits that the Court should overrule the UST's opposition to the Settlement Motion and disregard the UST Submission to the extent it (i) exceeds the page limit set by the Court for further briefing with respect to the Plan Modification Motion and (ii) raises untimely confirmation objections.

| | |
|---|---|
| Dated: August 25, 2025 | BOND, SCHOENECK & KING, LLC |
| | |
| | By */s/ Grayson T. Walter* |
| | Stephen A. Donato (Bar Roll #101522) |
| | Charles J. Sullivan (Bar Roll #507717) |
| | Grayson T. Walter (Bar Roll #518237) |
| | Sara C. Temes (Bar Roll #514148) |
| | Justin S. Krell (Bar Roll #704364) |
| | One Lincoln Center |
| | Syracuse, NY 13202-1355 |
| | Telephone: (315) 218-8000 |
| | Fax: (315) 218-8100 |
| | Emails:    sdonato@bsk.com |
| |             csullivan@bsk.com |
| |             gwalter@bsk.com |
| |             stemes@bsk.com |
| |             jkrell@bsk.com |
| | |
| | *Attorneys for The Roman Catholic Diocese of Syracuse, New York* |

15

22171984.v3