UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

The Roman Catholic Diocese of Syracuse, New
York,

                                    Debtor.

Case No.  20-30663 (WAK)

Chapter 11

The Roman Catholic Diocese of Syracuse, New
York, *et al*.,[1]

                                    Plaintiff,

v.

Arrowpoint Capital, *et al*.,

                                    Defendants.

Adv. Proc. No. 21-50002 (WAK)

## FOURTH SUPPLEMENT TO MOTION FOR
## ENTRY OF ORDERS PURSUANT TO SECTIONS 363 AND 105(A) OF
## THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING
## SETTLEMENT AGREEMENTS AND POLICY BUY-BACKS WITH
## CERTAIN INSURERS AND GRANTING RELATED RELIEF

The Roman Catholic Diocese of Syracuse, New York, by and through its undersigned

counsel, hereby files this supplement to its *Motion for Entry of Orders Pursuant to Sections 363*

*and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements*

*and Policy Buy-Backs With Certain Insurers and Granting Related Relief* [Docket No. 2946] (the

"Settlement Motion")[2] in accordance with paragraph 7 of the Court's *Order Approving the Form*

*and Manner of Notice of the Diocese's Motion to Approve Proposed Insurance Settlements*

[Docket No. 2955].

---

[1] The caption of the adversary proceeding has been abbreviated pursuant to Federal Rule of Civil Procedure 10 and
Federal Rule of Bankruptcy Procedure 7010.  The full caption of this adversary proceeding is set forth in the
Adversary Complaint found at Adv. Docket No. 1.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Settlement
Motion.

Attached as ***Exhibit 1*** is a copy of the Settlement Agreement with Hartford Fire Insurance Company.

Dated: August 26, 2025

                                        BOND, SCHOENECK & KING, PLLC


                                        By */s/ Grayson T. Walter*
                                        Stephen A. Donato (Bar Roll #101522)
                                        Charles J. Sullivan (Bar Roll #507717)
                                        Grayson T. Walter (Bar Roll #518237)
                                        Sara C. Temes (Bar Roll #514148)
                                        Justin S. Krell (Bar Roll #704364)
                                        One Lincoln Center
                                        Syracuse, NY 13202-1355
                                        Telephone: (315) 218-8000
                                        Fax: (315) 218-8100
                                        Emails:       sdonato@bsk.com
                                                      csullivan@bsk.com
                                                      gwalter@bsk.com
                                                      stemes@bsk.com
                                                      jkrell@bsk.com

                                        *Attorneys for The Roman Catholic Diocese
                                        of Syracuse, New York*

22188951.v1

## **Exhibit 1**

Settlement Agreement

## SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

This Settlement Agreement, Release, and Policy Buyback ("**Settlement Agreement**") is hereby made by, and between, and among The Roman Catholic Diocese of Syracuse, New York (the "**Diocese**" as further defined in Section 1.1.28 below), the other Diocese Parties (as defined in Section 1.1.29 below), and Hartford Fire Insurance Company ("**Hartford**"). Hartford, the Diocese, and the other Diocese Parties collectively are the "**Parties**" and each a "**Party**" to this Settlement Agreement.

## RECITALS:

WHEREAS, on June 19, 2020 (the "**Petition Date**"), the Diocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of New York (the "**Bankruptcy Court**") pending under Case No. 20-30663 (the "**Bankruptcy Case**");

WHEREAS, certain Persons (as defined in Section 1.1.54 below) have asserted or may hold Claims, including Abuse Claims, against the Diocese Parties (all as defined below);

WHEREAS, Hartford issued, allegedly issued, or may have issued the Subject Policies (as defined in Section 1.1.67 below) providing certain coverage to the Diocese Parties;

WHEREAS, asserted disputes between the Diocese and Hartford have arisen, and assertable disputes between the Diocese Parties and Hartford may arise in the future, concerning the scope and nature of Hartford's responsibilities, if any, to provide coverage to the Diocese Parties for Abuse Claims under the Subject Policies (the "**Coverage Claims**");

WHEREAS, on January 15, 2021, the Diocese filed Adversary Proceeding No. 21-50002 (the "**Adversary Proceeding**") against Hartford, certain of its affiliates and certain of the other Settling Insurers, seeking (among other things) declaratory judgment regarding Hartford's obligations under the Subject Policies;

WHEREAS, the Diocese Parties and Hartford, without any admission of liability or concession of the validity of the positions or arguments advanced by each other, now wish to compromise and resolve fully and finally any and all Coverage Claims and all other disputes between and among them and to release the Hartford Released Parties from any further obligations under the Subject Policies;

WHEREAS, through this Settlement Agreement, the Diocese Parties intend to provide the Hartford Released Parties (each as defined below) with the broadest possible release of all Claims with respect to the Subject Policies; and

WHEREAS, through this Settlement Agreement, as part of the compromise and resolution of the Coverage Claims, the Diocese Parties and Hartford also wish to effect a sale, pursuant to § 363(b), (f), and (m) of the Bankruptcy Code of the Subject Policies issued or allegedly issued by Hartford, along with the Extra-Contractual Claims (as defined below) of the Diocese Parties, to provide the Hartford Released Parties with the broadest possible release and buyback with respect

to the Subject Policies resulting in the Hartford Released Parties having no obligations now or in the future to the Diocese Parties, or any of their creditors with respect to the Subject Policies.

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants contained in this Settlement Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound subject to the approval of the Bankruptcy Court pursuant to Section 2 below, the Parties hereby agree as follows:

## 1.    DEFINITIONS

1.1    As used in this Settlement Agreement (as defined above), the following terms shall have the meanings set forth below.

1.1.1    "**Abuse**" means any actual or alleged:

a.    sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, hebephilia, ephebophilia, lascivious behavior, undue familiarity, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, or intimidation, any other sexual misconduct, or any conduct constituting a sexual offense, incest, or use of a child in a sexual performance (as such terms are defined in the New York Penal Law); or

b.    non-sexual assault, battery, corporal punishment and other non-sexual acts of physical, psychological, mental or emotional abuse, humiliation or intimidation (including physical abuse or bullying without regard to whether such physical abuse or bullying is of a sexual nature), and all other non-sexual tortious behavior of any type whatsoever.

For the avoidance of doubt, "Abuse" also includes (a) any conduct which would constitute (i) a sexual offense as defined in article one hundred thirty of the New York Penal Law, (ii) incest as defined in section 255.27, 255.26 or 255.25 of the New York Penal Law, or (iii) the use of a child in a sexual performance as defined in section 263.05 of the New York Penal Law, or a predecessor statute that prohibited such conduct at the time of the act, or (iv) any offense included in 18 U.S.C. §§ 2251, 2251A, 2252, 2252A, and 2260; and (b) sexually-related injuries, including those stemming from the use of photography, video, or digital media.

1.1.2    "**Abuse Claim**" means any Claim that has been or could be asserted against the Diocese or any Participating Party that is attributable to, arises from, is based upon, or results from, in whole or in part, directly, indirectly, or derivatively, Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or any other relief under any theory of liability, law, or equity whatsoever, including contribution, indemnity, vicarious liability, *respondeat superior*, conspiracy, fraud (including fraud in the inducement), any negligence-based or employment-based theory (including negligent hiring, supervision, retention, or misrepresentation), any other theory based upon misrepresentation, concealment, or unfair practice, public or private nuisance, or any other

2

theory (including any theory based upon public policy) or any act or failure to act by the Diocese or any Participating Party, or any other Entity for whose acts or failures to act the Diocese or any Participating Party is or was alleged to be responsible.

For the avoidance of doubt, "Abuse Claim" includes (a) all Unknown Abuse Claims, Late-Filed Abuse Claims, Child Abuse Claims (or any other Claim or cause of action described in the CVA) and Adult Abuse Claims (or any other Claim or cause of action described in the ASA) against the Diocese or any Participating Party and (b) any Claim against the Diocese or any Participating Party that is attributable to, arises from, is based upon, relates to, or results from Abuse that, as of the Petition Date is barred by any applicable statute of limitations, and in each case, irrespective of whether (x) such Claims also involve the conduct of Joint Tortfeasors, (y) such Claims arise under, or were revived pursuant to, the CVA, ASA, GMVA, or any future reviver law, statute, or binding precedential decision passed or issued on or after the Bankruptcy Plan Effective Date, or (z) a proof of claim has been Filed or an Abuse Action has been commenced with respect to such Claim.

1.1.3   "**Abuse Claimant**" means the holder of an Abuse Claim, the estate of a deceased individual who held an Abuse Claim, the personal executor or personal representative of the estate of a deceased individual who held an Abuse Claim, or the assignee of any of the foregoing, as the case may be.  For the avoidance of doubt, the holder of an Unknown Abuse Claim and/or Late-Filed Abuse Claim is an Abuse Claimant.

1.1.4   "**Abuse Action**" means a lawsuit asserting an Abuse Claim against the Diocese or any Participating Party.

1.1.5   "**Adult Abuse Claim**" means a Claim alleging Abuse perpetrated at a time when the Abuse Claimant was eighteen (18) years of age or older.

1.1.6   "**Adversary Proceeding**" has the meaning set forth in the Recitals.

1.1.7   "**Approval Motion**" means the motion filed in the Bankruptcy Court seeking approval of this Settlement Agreement as described in Section 2 of this Settlement Agreement.

1.1.8   "**Approval Order**" or "**Sale Order**" means the order granting the Approval Motion described in Section 2 of this Settlement Agreement and providing the relief described in Section 2 of this Settlement Agreement.

1.1.9   "**ASA**" means the New York Adult Survivors Act, which was codified in the New York Civil Practice Law & Rules §214-j.  The Adult Survivors Act created a one-year window from November 24, 2022 to November 23, 2023 for the revival of previously time-barred civil claims concerning Abuse that occurred after the claimant reached eighteen (18) years of age.

1.1.10  "**Banking Day**" means any day on which banks in New York City, New York (USA), are open to the public for banking functions.

1.1.11  "**Bankruptcy Case**" has the meaning set forth in the Recitals.

1.1.12 "**Bankruptcy Court**" has the meaning set forth in the Recitals; *provided, however*, that to the extent the reference under N.D.N.Y. L.R. 81.1 is withdrawn with respect to any proceeding arising from or related to the Bankruptcy Case or the Adversary Proceeding, the term "Bankruptcy Court" shall also include the District Court (as defined below).

1.1.13 "**Bankruptcy Plan**" or "**Plan**" refers to the First Modified Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York (and all exhibits thereto) Docket No. [_____] and any and all modifications or amendments thereto that are acceptable to Hartford, as approved and confirmed by Final Order of the Bankruptcy Court; it being understood that the proposed First Modified Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York, which is at Docket No. 2924-1, is acceptable to Hartford.

1.1.14 "**Bankruptcy Plan Effective Date**" means the date upon which a Bankruptcy Plan approved by the Bankruptcy Court that contains terms and conditions consistent with those required by this Settlement Agreement becomes effective.

1.1.15 "**Barred Claim**" means a Channeled Claim (specifically including, but not limited to, all Abuse Claims, Medicare Claims, and Extra-Contractual Claims), Non-Participating Abuse Claim, Coverage Claim, Tort Action, Unknown Abuse Claim, Related Insurance Claim, Insurer Contribution Claim, Inbound Contribution Claim, Direct Action Claim, and every other Claim that (a) is under, arises out of, relates (directly or indirectly) to, or connects in any way with an Abuse Claim or any of the Subject Policies or (b) is otherwise released herein. For the avoidance of doubt, "Barred Claim" includes all Claims exempted from the injunctions (including the Channeling Injunction) set forth in the Plan.

1.1.16 "**Channeled Claim**" means any Abuse Claim, Inbound Contribution Claim, Medicare Claim, Extra-Contractual Claim, or any other Claim against the Diocese or any Protected Party arising from or related in any way to an Abuse Claim or any of the Settling Insurer Policies, whenever and wherever arising or asserted, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, including without limitation all Claims by way of direct action, subrogation, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and other expenses, or for any equitable remedy; *provided, however*, that "Channeled Claims" shall not include: (a) a Claim against an individual who perpetrated an act of Abuse; (b) a Claim against any religious order, diocese (other than the Diocese), or archdiocese, unless such Entity is identified as a Participating Party on Schedule 1; (c) a Claim against Ace Property and Casualty Insurance Company, Insurance Company of North America, Westchester Fire Insurance Company, or Colonial Penn Insurance Company; or (d) a Claim exempted from the injunctions set forth in Sections 12.2.1 and 12.3 of the Plan pursuant to Sections 12.2.2.a and 12.2.2.b of the Plan; *provided further*, if any Claim identified in the foregoing proviso also asserts liability against a Protected Party, then such Claim shall be a Channeled Claim as to the Protected Party. For the avoidance of doubt (y) a Channeled Claim includes any Claim against a Protected Party based on allegations that it is an alter ego of a Person that is not a Protected Party or that the Protected Party's corporate veil should be pierced on account of Claims against a

4

Person that is not a Protected Party or based on any other theory under which the legal separateness of any Person and any other Person may be disregarded to impose liability for a claim on either such Person, and (z) a Claim asserted against a Non-Settling Insurer shall not be a Channeled Claim except as otherwise set forth in the Plan.

1.1.17  "**Channeling Injunction**" has the meaning set forth in Section 2.2.2.

1.1.18  "**Child Abuse Claim**" means a Claim alleging Abuse which occurred at a time when the Abuse Claimant was less than eighteen 18 years of age.

1.1.19  "**Claim**" means a "claim" as that term is defined in section 101(5) of the Bankruptcy Code and includes, without limitation: any claim, Action, assertion of right, complaint, cross-complaint, counterclaim, liabilities, obligations, rights, request, allegation, mediation, litigation, direct action, administrative proceeding, cause of action, Lien, encumbrances, indemnity, equitable indemnity, right of subrogation, equitable subrogation, defense, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission, trespass, variance damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution, attorney's fee, obligation, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, proof of claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, and/or liability whatsoever, whether past, present or (to the extent it arises prior to the Effective Date) future, known or unknown, asserted or  unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect or otherwise consequential, whether in law, equity, admiralty, under the Bankruptcy Code, or otherwise, whether currently known or unknown, whether compromised, settled or reduced to a consent judgment, that may exist now or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extracontractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise.

1.1.20  "**Claims Bar Date**" means April 15, 2021, at 11:59 p.m. (Eastern time), the deadline by which proofs of claim forms for prepetition Claims, including Abuse Claims, were required to be Filed against the Diocese pursuant to the Bankruptcy Court's Order entered on November 6, 2020 [Docket No. 214].

1.1.21  "**Committee**" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the United States Trustee pursuant to section 1102 of the Bankruptcy Code, as constituted from time to time, but does not mean the members of the Committee in their individual capacities.

22015797.v2

1.1.22 "**Conditional Payment**" means any payment made to an Abuse Claimant under the MMSEA, including any payment by a Medicare Advantage Organization (as defined in the MSPA).

1.1.23 "**Consenting Abuse Claim**" means an Abuse Claim held by a Consenting Abuse Claimant.

1.1.24 "**Consenting Abuse Claimant**" means any holder of an Abuse Claim who has consented to having their Claim(s) against the Protected Parties released and enjoined under the Channeling Injunction as set forth in the Plan.

1.1.25 "**Coverage Claims**" has the meaning set forth in the Recitals and further includes any Claim under or relating to the Subject Policies or the rights and obligations thereunder, or the breach thereof, including any Claim seeking insurance coverage.

1.1.26 "**Covered Party**" means, collectively, the following Persons: (a) the Diocese; (b) the Participating Parties; (c) any other Person that is a "Named Assured" or "named insured" under the Subject Policies and all other Persons that may claim to be an "Assured," an "Additional Assured," an "insured," an "additional insured," or otherwise entitled to insurance coverage under the Subject Policies, including any Other Catholic Organization; and (d) with respect to each of the foregoing Persons in clauses (a) through (c), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, advisory board members, advisory committee members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, and such Persons' respective heirs, executors, estates, and nominees.

1.1.27 "**CVA**" means New York Child Victim's Act, which was codified in the New York Civil Practice Law & Rules §214-g. The CVA created a one-year window from August 14, 2019 to August 13, 2020 for the revival of previously time-barred civil claims related to childhood sexual abuse, which was subsequently extended to August 13, 2021.

1.1.28 "**Diocese**" means The Roman Catholic Diocese of Syracuse, New York, which is the diocesan corporation formed pursuant to N.Y. Religious Corporation Law § 90, and its bankruptcy estate pursuant to section 541 of the Bankruptcy Code, together with the public juridic person of The Roman Catholic Diocese of Syracuse, New York as now constituted or as it may have been constituted, and their respective predecessors, successors, and assigns.

1.1.29 "**Diocese Parties**" means, collectively, (a) the Diocese; (b) Participating Parties; (c) any (i) Other Catholic Organization and (ii) other Person covered or alleged to be covered under the Subject Policies, in each of clause (i) and (ii), with respect to which the Diocese has authority to release Claims by a Final Order pursuant to sections 105(a) or 363(f) of the Bankruptcy Code or confirming a chapter 11 plan; and (d) each of their respective Related Persons, including without limitation the past, present, and future

22015797.v2

holding companies, merged companies, related companies, divisions, and acquired companies of the foregoing Persons.

1.1.30 "**Direct Action Claim**" means any Claim by any Entity against Interstate that is similar or identical to any Abuse Claim, in that it seeks to recover from Hartford damages based on actual or alleged Abuse by the Diocese or a Participating Party, whether arising by contract, in tort or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer.

1.1.31 "**District Court**" means the United States District Court for the Northern District of New York.

1.1.32 "**Entity**" has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

1.1.33 "**Estate**" means the estate created in the Bankruptcy Case under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case.

1.1.34 "**Estate Causes of Action**" means Claims, including Coverage Claims and Related Insurance Claims, owned, held, or capable of being asserted by or on behalf of the Diocese, its Estate, or any Person asserting currently or in the future by, under, through or on behalf of the Diocese or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Diocese or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including avoidance actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise. Without limiting the generality of the foregoing, Estate Causes of Action further include: (a) Claims that on or after the Petition Date may be exclusively asserted by or on behalf of the Diocese or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Diocese on its own behalf under applicable law; (b) Claims or theories for recovery or remedies that seek to impose liability for a Claim against the Diocese or any non-debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Diocese and can be asserted by the Diocese under applicable law; and (c) all other Claims that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Diocese.

1.1.35 "**Extra-Contractual Claim**" means any Claim against any Hartford Released Party seeking any type of relief, other than coverage or benefits, under or with respect to the Subject Policies. Extra-Contractual Claims include Claims for

compensatory, exemplary, or punitive damages, or attorneys' fees, interests, costs, or any other type of relief, alleging any of the following with respect to (a) any Diocese Policy; (b) any Claim allegedly or actually covered under a Diocese Policy; or (c) the conduct of any Hartford Released Party with respect to (a) or (b): (i) bad faith; (ii) failure to provide insurance coverage under any Diocese Policy, including any failure to investigate or to provide a defense or adequate defense; (iii) failure or refusal to compromise and settle any Claim insured under any Diocese Policy; (iv) failure to act in good faith; (v) violation or breach of any covenant or duty of good faith and fair dealing, whether express, implied, or otherwise; (vi) violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; (vii) violation of any unfair claims practices act or similar statute, regulation or code, including any statute, regulation, or code relating to unlawful, unfair, or fraudulent competition, business, or trade practices, and/or untrue or misleading advertising; (viii) any type of misconduct; or (ix) any other act or omission of any type by any Hartford Released Party for which the claimant seeks relief other than coverage or benefits under a Diocese Policy.  "Extra-Contractual Claims" further include all Claims relating to any Hartford Released Party's (x) handling of any Claims under the Subject Policies, (y) conduct in negotiating this Settlement Agreement and/or the Plan, and (z) conduct in the settlement of any Claims.  For the avoidance of doubt, Extra-Contractual Claims of the Diocese Parties are included within the property Hartford is purchasing hereunder.

1.1.36  "**Final Order**" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such appeal, review, or petition for a writ has been taken, (a) it has been resolved and no longer remains pending, or (b) an appeal or review has been taken timely but such order has not been stayed and the Parties have mutually agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order within the meaning of this Settlement Agreement.

1.1.37  "**GMVA**" means the Gender-Motivated Violence Act, New York City, N.Y. Code §10-1104; Int. 2372-2021.

1.1.38  "**Gatekeeper Injunction**" has the meaning set forth in Section 2.2.4.

1.1.39  "**Hartford Released Party**" means Hartford Fire Insurance Company, and each of its past and present parents, subsidiaries, affiliates, and divisions solely in their respective capacities as such; each of the foregoing Persons' respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; each of the foregoing Persons' respective past and present directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators solely in their respective capacities as such; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, solely in their capacities as such, and all Persons acting on behalf of, by, through, or in concert with them.  "Hartford Released Party" further includes the reinsurers and

8

retrocessionaries of Hartford, solely in their capacities as such, with respect to the Subject Policies.

1.1.40  "**Inbound Contribution Claim**" means any Claim against the Diocese or a Participating Party for contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, allocation or reallocation, or reimbursement, or any other indirect or derivative recovery, arising from or related to any Abuse Claim.

1.1.41 "**Insurer Contribution Claim**" means any Claim, most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other indirect or derivative recovery against a Settling Insurer, by an insurer (including any Non-Settling Insurer) for the payment of money, where such insurer contends that it has paid more than its equitable or proportionate share of a Claim against a Covered Party.

1.1.42  "**Interests**" means all Claims, "interests" as that term is used in 11 U.S.C. §363, and other rights of any nature, whether at law or in equity, including all interests or other rights under New York or any other applicable law.

1.1.43  "**Joint Tortfeasor**" means any Person, other than the Diocese or a Participating Party, who is alleged to be a joint tortfeasor with the Diocese and/or any Participating Party in connection with the Abuse or alleged Abuse giving rise to an Abuse Claim.

1.1.44  "**Late-Filed Abuse Claim**" means an Abuse Claim for which the Abuse Claimant filed a proof of Claim after the Claims Bar Date and/or filed an Abuse Action after the CVA revival window closed.

1.1.45  "**Medicare Claims**" means any and all Claims relating to Abuse Claims by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor Entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under MSPA, including Conditional Payments, Claims for reimbursement of payments made to Abuse Claimants who recover or receive any distribution from the Trust, and Claims relating to reporting obligations.

1.1.46  "**MMSEA**" means section 111 of the "Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173)" which imposes reporting obligations on those Persons with payment obligations under the MSPA.

1.1.47  "**MSPA**" means 42 U.S.C. §1395y et seq., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto, including the regulations promulgated thereunder, found at 42 C.F.R. §411.1 et seq.

1.1.48  "**Non-Participating Abuse Claim**" means an Abuse Claim held by a Non-Participating Abuse Claimant.

9

1.1.49 "**Non-Participating Abuse Claimant**" means the holder of an Abuse Claim who affirmatively withholds their consent to having their Claim(s) enjoined under the Channeling Injunction and/or released in the manner set forth in the Plan, and who has not, prior to entry of the Plan Confirmation Order, agreed in writing to provide such consent, to grant such releases, and to be treated as a Consenting Abuse Claimant for all purposes.

1.1.50 "**Non-Settling Insurer**" means any insurer that is not a Settling Insurer.

1.1.51 "**Other Catholic Organization**" means any Person (a) who is, or allegedly is, an insured or assured (as a named insured, additional insured, or otherwise) under any of the Subject Policies and/or (b) who has actually or allegedly acquired or been assigned the right to make a claim for coverage under any of the Subject Policies, excluding, however, the Diocese, any Parish or School, the Trust, or any Abuse Claimant.

1.1.52 "**Parishes**" means all past and present parishes of or in the Diocese, or under the authority of the Bishop of the Diocese, in their capacity as public juridic persons, including any current parish of or in any other diocese or archdiocese, or under the authority of another diocesan or archdiocesan bishop that was previously a parish of or in the Diocese, or under the authority of the Bishop of the Diocese, together with each corresponding parish corporation formed pursuant to N.Y. Religious Corporations Law § 90 and their respective predecessors, successors, or assigns.

1.1.53 "**Participating Party**" or "**Diocese Participating Party**" means all Parishes, all Schools, and all Other Catholic Organizations and other Persons listed on **Schedule 1** attached hereto. Neither the Diocese nor any Settling Insurer is a "Participating Party."

1.1.54 "**Parties**" has the meaning set forth in the first paragraph of this Settlement Agreement.

1.1.55 "**Person**" means an individual, any corporation, corporation sole, partnership, association, limited liability company, joint stock company, proprietorship, unincorporated organization, joint venture, trust, estate, executor, legal representative, or any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency, department, board or instrumentality thereof, any other Entity, and any successor in interest, heir, executor, administrator, trustee, trustee in bankruptcy, or receiver of any Entity and also has the meaning set forth in section 101(41) of the Bankruptcy Code. For the avoidance of doubt, an Entity is a "Person", as is each of the Protected Parties.

1.1.56 "**Petition Date**" has the meaning set forth in the Recitals.

1.1.57 "**Plan Confirmation Order**" has the meaning set forth in Section 2.3 of this Settlement Agreement.

1.1.58 "**Protected Parties**" means Hartford, all other Settling Insurers, any Settling Insurer Covered Persons, and the Diocese Parties. For the avoidance of doubt, the Hartford Released Parties and Hartford's Related Parties are Protected Parties.

1.1.59 "**Related Insurance Claim**" means:

a.        all Claims, causes of action and enforceable rights against any Hartford Released Party or any of Hartford's Related Persons, whether sounding in contract, tort, or otherwise, including equity and bad faith, held by the Diocese, any Participating Party, or any Abuse Claimant (whether a Consenting Abuse Claimant or a Non-Participating Abuse Claimant) for any reason related to any Abuse Claim asserted or alleged against the Diocese or any Participating Party (whether a Consenting Abuse Claim or a Non-Participating Abuse Claim), including those for (i) indemnity and payment of any such Abuse Claim; (ii) any failure or refusal to provide insurance coverage for any such Abuse Claim under any Diocese Policy; (iii) any tortious or wrongful claims handling including the failure or refusal to timely compromise and settle any such Abuse Claims against the Diocese or any Participating Party pursuant to any Diocese Policy; (iv) to the extent not otherwise encompassed by section (iii) above, failure or refusal to reasonably settle such Abuse Claims; and (v) the interpretation or enforcement of the terms of any Diocese Policy as it pertains to any of the foregoing;

b.        all Extra-Contractual Claims, against any Hartford Released Party or any of Hartford's Related Persons; and

c.        all other Claims and causes of action against any Hartford Released Party or any of Hartford's Related Persons that are under, arise out of, relate (directly or indirectly) to, or connect in any way with the Diocese.

1.1.60 "**Related Person**" means, with respect to any Person, such Persons' predecessors, successors, assigns, and present and former shareholders, members, affiliates, subsidiaries, employees, agents, brokers, adjusters, managing agents, claims agents, underwriting agents, administrators, officers, directors, trustees, partners, attorneys, financial advisors, accountants, and consultants, each in their capacities solely as such.

1.1.61 "**School**" means a past or present Catholic school owned by the Diocese or any Participating Party, including those identified as such on **Schedule 1** hereto.

1.1.62 "**Settlement Amount**" means the sum of Ninety Thousand Dollars and Zero Cents ($90,000) to be paid by Hartford after satisfaction of all conditions precedent herein. The Settlement Amount shall be paid by wire transfer in immediately available US funds to the Trust established by the Plan.

1.1.63 "**Settlement Agreement Effective Date**" means the day following the date on which all of the following have occurred: (a) all Parties have executed this Settlement Agreement; (b) the Approval Order shall have become a Final Order; (c) the Plan Confirmation Order shall have become a Final Order; and (d) the Trust shall have been created pursuant to the Plan.

11

1.1.64  "**Settling Insurer**" means Interstate, LMI, Catholic Mutual, Utica Mutual, National Catholic, Nationwide, TIG, Hanover, Excelsior, Travelers (each as defined in the Plan), Hartford, and any other insurer that is party to an insurance settlement agreement with the consent of the Committee and the Diocese.  A Settling Insurer's Related Persons and a Settling Insurer's Released Parties shall receive the benefits and protections afforded to a Settling Insurer under the Plan, and Hartford's Related Persons and Hartford's Released Parties shall receive the benefits and protections afforded to Hartford under this Agreement; *provided*, *however*, that if such Related Person is a Related Person by virtue of being a predecessor, successor, and assign of a Settling Insurer, such Related Person shall only receive the benefits and protections afforded to a Settling Insurer under the Plan (or, as applicable, afforded to Hartford under this Agreement) to the extent that: (a) such predecessor's liability was assumed by the Settling Insurer, and not independent of the liability of such Settling Insurer; and (b) such successor's or assign's liability is derivative of the liability of the Settling Insurer and not independent of the liability of the Settling Insurer.

1.1.65  "**Settling Insurer Policies**" means, collectively, (a) the Subject Policies and (b) all other insurance policies (or coverage parts of those policies) that are canceled, settled, or sold back to a Settling Insurer pursuant to one or more insurance settlement agreements with the Settling Insurers.

1.1.66  "**Settling Insurer Covered Person**" means any Person that has or may have a Claim to insurance coverage under a Settling Insurer Policy.

1.1.67  "**Subject Policies**" means any and all known and unknown contracts, binders, certificates, or policies of insurance, in effect on or before the Settlement Agreement Effective Date,  that were issued, allegedly issued, or may have been issued by any Hartford Released Party or any of their predecessors to or for the benefit of, or that otherwise actually, allegedly, or potentially insure one or more of the Diocese Parties.

1.1.68  "**Supplemental Injunction**" or "**Settling Insurer Injunction**" has the meaning set forth in Section 2.2.3 of this Settlement Agreement.

1.1.69  "**Tort Action**" means any lawsuit brought by any Abuse Claimant as plaintiff against any Person seeking judgment and/or damages relating in any way to alleged Abuse, including, without limitation, any Abuse Action.

1.1.70  "**Tort Defendant**" means any Person who is named as a defendant in any Tort Action.

1.1.71  "**Trust**" means any trust to be established pursuant to the Plan to which the Channeled Claims are channeled.

1.1.72  "**Trust Documents**" means the agreement establishing the Trust and its exhibits and attachments, any trust distribution or claims resolution procedures or protocols, instruments, and other documents that are reasonably necessary or desirable in order to implement the provisions of the Plan that relate to the creation, administration, and funding of the Trust.

1.1.73 "**Trustee**" means the individual appointed by the Bankruptcy Court to act as the initial trustee of the Trust pursuant to the terms of the Trust Documents, along with any successor trustee appointed in accordance with the Trust Documents.

1.1.74 "**Unknown Abuse Claim**" means any Claim asserted against the Diocese and/or a Participating Party, or otherwise presented to the Trust based upon Abuse that occurred prior to the Petition Date and which is not (a) filed with the Bankruptcy Court by the Claims Bar Date, (b) a timely Abuse Action commenced on or before the Bankruptcy Plan Effective Date, or (c) otherwise deemed timely filed as of the Bankruptcy Plan Effective Date pursuant to the Plan or by order of the Bankruptcy Court. For the avoidance of doubt and notwithstanding anything to the contrary herein, "Unknown Abuse Claim" includes Abuse Claims that are revived pursuant to any law, statute, or binding precedential decision passed or issued on or after the Bankruptcy Plan Effective Date.

1.1.75 "**Unknown Claims Representative**" means Michael R. Hogan, in his capacity as the "Unknown Claims Representative" (as defined and set forth in the *Order Approving Employment and Retention of Michael R. Hogan as Unknown Claims Representative* [Dkt. No. 2484]), or any duly appointed successor.

1.2 Capitalized terms not defined in this Section 1 or elsewhere in this Settlement Agreement shall have the meanings given to them in the Bankruptcy Code or the Plan.

## 2. THE BANKRUPTCY CASE AND PLAN OF REORGANIZATION

2.1 On July 1, 2025, the Diocese filed a motion in the Bankruptcy Court (the "**Approval Motion**") seeking the entry of an order in substantially the form attached as **Exhibit A** to this Settlement Agreement (the "**Approval Order**"), that: (a) approves, among others, this Settlement Agreement, including Hartford's buyback of the Subject Policies and the Extra-Contractual Claims of the Diocese Parties free and clear of all Interests, and otherwise authorizes the Parties to undertake the settlement and the transactions contemplated by this Settlement Agreement, in each case pursuant to sections 363(b), (f), and (m) of the Bankruptcy Code and any other applicable provisions of the Bankruptcy Code; (b) contains the Supplemental Injunction and, subject to and conditioned upon the Settlement Agreement Effective Date, bars all Barred Claims against the Hartford Released Parties, Hartford's Related Persons, and the property and assets of each; (c) provides that this Settlement Agreement is binding on the Diocese Parties, any Trust created in the Bankruptcy Case(s), and any successors of the foregoing; and (d) provides, subject to and conditioned upon the Settlement Agreement Effective Date, that the Approval Order is binding on all Persons (including, for the avoidance of doubt, all Persons set forth in the foregoing (c) and all other Diocese Parties).

2.1.1 The Diocese shall provide written and publication notice of the Approval Motion in accordance with the terms of the *Order Approving the Form and Manner of Notice of the Diocese's Motion to Approve Proposed Insurance Settlements* [Dkt. No. 2955].

2.1.2 If any Person files an objection to the Approval Motion, the Diocese shall take commercially reasonable steps to defend against any objection, appeal, petition,

motion, or other challenge to the Bankruptcy Court's entry of the Approval Order. Hartford will cooperate with the Diocese, including making commercially reasonable submissions.

2.2     Any amendments or modification to the Bankruptcy Plan, including all exhibits, schedules, and related documents, shall be in all respects consistent with this Settlement Agreement and shall not deprive any Hartford Released Party of any right or benefit under this Settlement Agreement or otherwise adversely affect the Interests of any Hartford Released Party under this Settlement Agreement without Hartford's written consent.    Without limiting the foregoing, the Bankruptcy Plan shall at least provide the following:

2.2.1    The Plan shall create a Trust which shall be responsible for making any and all payments to the Abuse Claimants entitled to receive payment under the Plan and which shall assume all liability for Channeled Claims.

2.2.2    The Plan shall include an injunction in substantially the form attached as **Exhibit B-1** to this Settlement Agreement (the "**Channeling Injunction**"), with only such modifications as are acceptable to the Settling Insurers and the Diocese Parties, pursuant to sections 105 and 1123 of the Bankruptcy Code, barring and permanently enjoining all Persons who have held or asserted, or may in the future hold or assert, Claims from taking any action, directly or indirectly for purposes of asserting, enforcing, or attempting to assert or enforce against any Protected Party any Channeled Claim and channeling such Channeled Claims to the Trust as the sole and exclusive source of payment of any such Channeled Claims.

2.2.3    The Plan shall ratify an injunction in substantially the form included in Paragraph 19 of the Approval Order (the "**Supplemental Injunction**") to this Settlement Agreement, with only such modifications as are acceptable to the Settling Insurers, pursuant to sections 105(a), 363(b), (f), and (m) of the Bankruptcy Code, barring and permanently enjoining all Persons or Entities who have held or asserted, or may in the future hold or assert, Claims from taking any action, directly or indirectly for purposes of asserting, enforcing, or attempting to enforce any Barred Claim against any Hartford Released Parties, any of Hartford's Related Persons, or the property or assets of each.

2.2.4    The Plan shall include an injunction in substantially the form attached as **Exhibit B-2** to this Settlement Agreement (the "**Gatekeeper Injunction**"), with only such modifications to the Gatekeeper Injunction as are acceptable to the Settling Insurers, pursuant to sections 105(a) and 1123 of the Bankruptcy Code, requiring all Persons that seek to assert against any Protected Party a Channeled Claim, Barred Claim, or any other Claim arising out of or relating to Abuse to move the Bankruptcy Court for (a) a determination that such Claim is colorable and (b) authorization to pursue such Claim.

2.2.5    The Plan shall incorporate by reference this Settlement Agreement, and the releases contained herein and shall make this Settlement Agreement part of the Plan as if set forth fully within the Plan.

14

2.2.6   The Plan and the Trust Documents shall provide that as a condition to receiving payment from the Trust, all Abuse Claimants shall provide a written release in favor of the Protected Parties from (a) all Channeled Claims and (b) with respect to the Hartford Released Parties, all Barred Claims, which release shall be in form and substance acceptable to the Settling Insurers and shall be effective as to the Hartford Released Parties upon the later to occur of (i) the date the such release is signed by an Abuse Claimant and (ii) the Settlement Agreement Effective Date.  Once the Settlement Agreement Effective Date occurs, signed copies of such releases shall be provided to Hartford upon its request.

2.2.7   The Plan shall provide that the Trust shall defend, indemnify, and hold harmless the Hartford Released Parties and Hartford's Related Persons from all Channeled Claims and Barred Claims, subject to the limitations set forth in Section 7.2 of this Settlement Agreement.

2.2.8   The Plan shall provide that (collectively, as follows, the "**Controlling Document Provision**") in the event of a conflict between (a) the Settlement Agreement, on the one hand, and (b) the Plan, on the other, the terms of the Settlement Agreement shall control and govern; and in the event of a conflict between (y) the Approval Order, on the one hand, and (z) the Plan Confirmation Order, on the other, the terms of the Approval Order shall control and govern.

2.2.9   The Plan shall provide that, by no later than ten (10) days after occurrence of the Settlement Agreement Effective Date and Hartford's payment of the Settlement Amount, the Diocese or the Trust (as applicable) shall dismiss Hartford and any other Hartford Released Party from the Adversary Proceeding with prejudice.

2.3   The Diocese shall seek and obtain entry of an order from the Bankruptcy Court, which order shall be in form and substance acceptable to the Settling Insurers, that: (a) approves the Plan pursuant to section 1129 of the Bankruptcy Code and any other applicable provision of the Bankruptcy Code; (b) contains the Channeling Injunction; (c) ratifies the Supplemental Injunction; (d) contains the Gatekeeper Injunction; (e) provides that this Settlement Agreement is binding on any Trust created in the Bankruptcy Case, the Diocese Parties, and any successors of the Trust or the Diocese; (f) provides all protections to the Hartford Released Parties against Channeled Claims and Barred Claims that are afforded to other Settling Insurers under the Plan; (g) contains the Controlling Document Provision; and (h) provides that the Bankruptcy Court shall (i) not grant relief from the automatic stay for any Claims that actually, allegedly, or potentially implicate any of the Settling Insurer Policies, and (ii) reinstate the automatic stay if the automatic stay had previously been lifted for any Claims that actually, allegedly, or potentially implicate any of the Settling Insurer Policies, unless and until the confirmation order is reversed, and such reversal becomes a Final Order (the "**Plan Confirmation Order**").

2.3.1   The Plan and the Plan Confirmation Order must be in all respects consistent with this Settlement Agreement and must not contain any provisions that diminish or impair the benefit of this Settlement Agreement to the Hartford Released Parties without Hartford's written consent.

2.3.2    In seeking to obtain the Plan Confirmation Order, the Diocese must: (a) seek a confirmation hearing on an appropriately timely basis; (b) urge the Bankruptcy Court to overrule any objections and confirm the Plan; and (c) take reasonable steps to defend against any objection, appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Plan Confirmation Order.

2.3.3    Prior to entry of the Plan Confirmation Order, the Diocese shall oppose any motion to lift any stay pursuant to section 362 of the Bankruptcy Code as to any Abuse Claim that (a) is asserted against any Diocese Party and (b) implicates, or is reasonably likely to implicate, any Subject Policies (including by alleging Abuse that took place during any policy period of any Diocese Policy).  If, prior to the Plan Confirmation Order becoming a Final Order, the Bankruptcy Court allows any Person to prosecute any such Abuse Claim, the Diocese Parties shall defend themselves against such Abuse Claims and comply with the terms of any order of the Bankruptcy Court, and Hartford's rights and obligations relating to such litigation shall be determined by, and subject to, the terms and conditions of the Subject Policies, this Settlement Agreement, and any applicable orders of the Bankruptcy Court.

2.4    The Trust Documents shall require the Trust to register as a Responsible Reporting Entity under the reporting provisions of §111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110- 173) ("**MMSEA**").

2.5    The Trust Documents shall require the Trust, at its sole expense, to timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated and to follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

2.6    The Trust Documents shall require the Trust to obtain, prior to remittance of funds to claimants' counsel, or to the claimant, if pro se, in respect of any Abuse Claim, a certification from the claimant to be paid that said claimant (or said claimant's authorized representative) has or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. §1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Abuse Claim.

2.7    The Diocese Parties will undertake commercially reasonable actions to cooperate with Hartford in connection with responding to any inquiry from Hartford's regulators, auditors, reinsurers, or retrocessionaires.

2.8    From and after the execution date of this Settlement Agreement, unless otherwise terminated, the Diocese and Hartford shall cease all litigation activities (and shall not initiate any new litigation activity) against each other in the Bankruptcy Case, including that Hartford will not object to any proposed Plan consistent with this Settlement Agreement, nor serve or compel any discovery in connection with the Bankruptcy Case, the Adversary Proceeding, or any other potential adversary proceedings and contested matters; *provided that*: (y) neither the Diocese nor

the Committee shall include any provision in any Plan that adversely affects the rights or benefits of the Hartford Released Parties or Hartford's Related Persons under this Settlement Agreement, or that otherwise violates, or is contrary to, the agreements and covenants contained in this Settlement Agreement without Hartford's written consent; and (z) neither the Diocese nor the Committee shall act, or fail to act, in such a way that otherwise violates, or is contrary to, the agreements and covenants contained in this Settlement Agreement, without Hartford's written consent, *provided, however*, that the Committee will not be required to object or otherwise respond to any pleading filed by or on behalf of an Abuse Claimant individually and without the involvement of the Committee.  Notwithstanding the foregoing, the Hartford Released Parties (and Hartford's Related Persons) may participate in the Bankruptcy Case for the purpose of supporting or enforcing any of the terms of this Settlement Agreement and protecting their rights.

2.9    The Parties shall each bear, as to each other only, their own costs, expenses, and counsel and professional fees in the Bankruptcy Case.

2.10    The Parties covenant not to sue each other until the earlier of: (a) the occurrence of (i) the Settlement Agreement Effective Date and (ii) Hartford's remittance of the Settlement Payment, at which time this covenant is superseded by the releases provided in Section 4; and (b) the date on which this Settlement Agreement is terminated.

2.11    Upon the occurrence of the Settlement Agreement Effective Date and Hartford's payment of the Settlement Amount, Hartford and the Hartford Released Parties shall have no obligation to pay, handle, object, or otherwise respond to any Claim against the Diocese Parties; and the Diocese Parties (i) will withdraw, and shall be deemed to have withdrawn, all outstanding tenders of Claims to the Hartford Released Parties for defense and indemnity; (ii) will not tender any Claims to the Hartford Released Parties; and (iii) will not request that the Hartford Released Parties fund any judgments, settlements, or defense costs.

2.12    By no later than ten (10) days after occurrence of the Settlement Agreement Effective Date and Hartford's payment of the Settlement Amount, the Diocese or the Trust (as applicable) shall dismiss Hartford and any other Hartford Released Party from the Adversary Proceeding with prejudice.

## 3.    PAYMENT OF THE SETTLEMENT AMOUNT

3.1    By no later than thirty (30) days after the Settlement Agreement Effective Date, Hartford shall pay the Settlement Amount to the Trust; *provided, however*, if the 30th day following the Settlement Agreement Effective Date is not a Banking Day, then Hartford shall pay the Settlement Amount to the Trust on the next day that is a Banking Day.

3.2    The delivery of the Settlement Amount to the Trust shall be in full and final settlement of all responsibilities under and arising out of the Subject Policies, and in consideration of the amendment(s) of the Subject Policies as set forth in Section 3.3 below, the sale of the Subject Policies and the Extra-Contractual Claims of the Diocese Parties back to Hartford free and clear of all Claims and Interests of any Person, and the other releases provided herein.

3.3     Subject to the occurrence of the Settlement Agreement Effective Date, the Parties agree: (a) the Settlement Amount is the total amount that Hartford or any Hartford Released Party is obligated to pay on account of any and all Claims under, arising out of, relating to, or in connection with the Subject Policies (including Channeled Claims, Barred Claims, and any reimbursement obligations for Conditional Payments under the MSPA); (b) under no circumstance will the Hartford Released Parties ever be obligated to make any additional payments to or on behalf of anyone in connection with the Subject Policies, including any payments in connection with amounts allegedly owed under the MSPA or in connection with any Claims, including any Channeled Claims and Barred Claims; (c) under no circumstance will the Hartford Released Parties ever be obligated to make any additional payments to or on behalf of the Diocese Parties or any Abuse Claimants in connection with the Subject Policies or otherwise with respect to any Claims that, directly or indirectly, arise out of, relate to, or are in connection with any Abuse Claims or any of the Subject Policies, including any Channeled Claims and Barred Claims; and (d) all limits of liability of the Subject Policies, regardless of how the Subject Policies identify or describe those limits, including all per person, per occurrence, per claim, "each professional incident," per event, per accident, total, and aggregate limits, shall be deemed fully and properly exhausted.  The Parties further agree that the Settlement Amount includes the full purchase price of the Subject Policies and Extra-Contractual Claims of the Diocese Parties and consideration for the releases and other protections afforded by this Settlement Agreement.

3.4     The Parties represent and agree that (a) the consideration to be provided by Hartford pursuant to this Settlement Agreement constitutes a fair and reasonable compromise and exchange for the consideration granted to the Hartford Released Parties in this Settlement Agreement (including the releases set forth below), and (b) the consideration to be provided by the Diocese Parties to the Hartford Released Parties pursuant to this Settlement Agreement (including the releases set forth below) constitutes a fair and reasonable compromise and exchange for the consideration granted to the Diocese Parties in this Settlement Agreement.  The Hartford Released Parties are not acting as volunteers, and the Settlement Amount reflects potential liabilities and obligations to the Diocese Parties of the amount Hartford allegedly is obligated to pay.

3.5     Each of the Participating Parties: (i) consents to the sale of the Subject Policies and the Extra-Contractual Claims of the Diocese Parties free and clear of all Interests and Claims of all Persons, including, without limitation, the Participating Parties in accordance with the terms of this Settlement Agreement, and (ii) agrees and acknowledges that the contribution of the proceeds from such sale and settlement to the Trust, as provided in the Plan and this Settlement Agreement, is a fair and reasonable compromise and exchange for value and constitutes reasonable and adequate consideration for any Interest or Claim the Participating Parties may have in the Subject Policies.

3.6     The Parties further agree that they have attempted to resolve the matters set forth herein in compliance with both state and federal law and believe that the settlement terms adequately consider CMS's interest and do not reflect any attempt to shift responsibility for payment of medical expenses to CMS pursuant to 42 U.S.C. § 1395y(b).  The Parties acknowledge, understand, and agree that any present or future action or decision by CMS, including actions regarding an Abuse Claimant's eligibility or entitlement to receive Medicare or Medicare payments, will not render this Settlement Agreement (including the releases set forth in it) void or ineffective, or in any way affect the finality of this Settlement Agreement.  The Trust is responsible

18

for all future medical payments, including any and all claims by CMS and/or CMS contractors that have been or may be in the future arising out of, relating (directly or indirectly) in any way to, or in connection with this Settlement Agreement.

## 4.     RELEASES AND SALE FREE AND CLEAR

4.1     Upon the occurrence of the Settlement Agreement Effective Date and Hartford's payment of the Settlement Amount, with no further action being required, the Diocese Parties fully, finally, and completely remise, release, acquit, and forever discharge the Hartford Released Parties and Hartford's Related Persons from any and all past, present, and future: (a) Claims that, directly or indirectly, are under, arise out of, relate to, or connect with the Subject Policies or Claims that are covered or alleged to be covered under the Subject Policies, including any Channeled Claims, Barred Claims, reimbursement obligations for Conditional Payments under the MSPA, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Abuse Claims or the Bankruptcy Case; and (b) Estate Causes of Action.  The Diocese Parties further acknowledge, stipulate, and agree that (y) the releases in this Section 4.1 specifically include all Unknown Abuse Claims and demands that are based in whole or in part on Unknown Abuse Claims and (z) **with respect to all Claims released under this Section 4.1, the Diocese Parties waive any and all provisions, rights, and benefits conferred by Cal. Civ. Code 1542 or any law of any state of the United States, or any principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code 1542, which provides: "a general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."**

4.2     Upon the occurrence of the Settlement Agreement Effective Date and Hartford's payment of the Settlement Amount, and with no further action being required, Hartford shall fully, finally, and completely remise, release, acquit, and forever discharge the Diocese Parties from any and all past, present, and future Claims that, directly or indirectly, arise out of, relate to, or are in connection with the Subject Policies, including any Channeled Claims, Barred Claims, and reimbursement obligations for Conditional Payments under the MSPA, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Abuse Claims or the Bankruptcy Case.

4.3     Upon the occurrence of the Settlement Agreement Effective Date and Hartford's payment of the Settlement Amount, none of the Diocese Parties shall assert against the Hartford Released Parties any Claim with respect to any matter, conduct, transaction, occurrence, fact, or other circumstance that, directly or indirectly, arises out of, relates to, or is in connection with any of the Subject Policies, any Channeled Claim, any Barred Claim, or any other matter released pursuant to Sections 4.1 and 4.2 above.

4.4     Upon the occurrence of the Settlement Agreement Effective Date and Hartford's payment of the Settlement Amount, and following the amendment(s) of the Subject Policies as set forth in Section 3.3 above, Hartford hereby buys back the Subject Policies and Extra-Contractual Claims of the Diocese Parties, free and clear of all Claims and Interests of all Persons, including all Claims and Interests of: the Diocese Parties and any other Person claiming coverage by, through, or on behalf of any of the Diocese Parties; any Covered Party; any other insurer (including

19

Non-Settling Insurers); and any Abuse Claimant (whether a Consenting Abuse Claimant or Non-Participating Abuse Claimant), Tort Defendant, Joint Tortfeasor, or any other holder of a Barred Claim.  This sale is pursuant to section 363(b), (f), and (m) of the Bankruptcy Code.  The Parties acknowledge and agree, and the Approval Order shall find and conclude, that upon the occurrence of the Settlement Agreement Effective Date and Hartford's payment of the Settlement Amount: (i) Hartford is a good faith purchaser of the Subject Policies and Interests therein, including the Extra-Contractual Claims of the Diocese Parties, within the meaning of section 363(m) of the Bankruptcy Code; (ii) the consideration exchanged constitutes a fair and reasonable settlement and compromise of the Parties' disputes and of their respective rights and obligations relating to the foregoing Subject Policies and Interests therein (including the Extra-Contractual Claims of the Diocese Parties) and constitutes reasonably equivalent value; (iii) the releases in this Settlement Agreement and the policy buyback comply with the Bankruptcy Code and applicable nonbankruptcy law; (iv) the Subject Policies and Interests therein shall be terminated and of no further force and effect; (v) Hartford's payment of the Settlement Amount constitutes full and complete performance of any and all obligations under the Subject Policies, including any performance owed to the Diocese Parties, and exhausts all limits of liability of the Subject Policies; (vi) all Claims or Interests the Diocese Parties may have had, may presently have, or in the future may have in the Subject Policies are released pursuant to the terms of this Settlement Agreement; and (vii) the Diocese Parties accept the Settlement Amount in full and complete compromise and satisfaction of all Hartford's past, present, and future obligations, including any obligations to any of the Diocese Parties under such Subject Policies or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever that are under, arise out of, relate (directly or indirectly) to, or connect in any way with the Subject Policies (including without limitation Coverage Claims and Related Insurance Claims), whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such Claims arise from, relate to, or are in connection with the Abuse Claims, Channeled Claims, Barred Claims, the Bankruptcy Case, or otherwise.

4.5    Notwithstanding anything in this Settlement Agreement, nothing in this Settlement Agreement is intended to or shall be construed to apply to or have any effect on the Hartford Released Parties' right to reinsurance recoveries under any reinsurance treaties, certificates, or contracts that cover losses arising under or in connection with the Subject Policies or any other binder, certificate, or policy of insurance issued by Hartford.

4.6    Notwithstanding anything in this Settlement Agreement, nothing in this Settlement Agreement is intended to or shall be construed to release any Claims that any Hartford Released Party has or might have against any Non-Settling Insurer, except that, to the extent such other insurers have agreed or in the future agree to release any Claims against the Hartford Released Parties arising out of or related in any way to the Abuse Claims, then the Hartford Released Parties also release such Claims against such other insurers to the same extent.

4.7    This Section 4 is not intended to, and shall not be deemed or construed to, release, waive, relinquish, or otherwise affect the Parties' rights and obligations under this Settlement Agreement.

## 5.    TERMINATION OF AGREEMENT

5.1     The Parties may terminate this Settlement Agreement by mutual agreement in writing.

5.2     Each of the Diocese or Hartford may terminate this Settlement Agreement upon thirty (30) days written notice to the other Party in the event of any of the following occurs prior to the Settlement Agreement Effective Date:  (a) the Approval Order and the Plan Confirmation Order are not entered within six (6) months from the date on which the Settlement Agreement is executed by all the Parties; (b) the Bankruptcy Court enters an order that becomes a Final Order that (i) denies the Approval Motion or (ii) is contrary to or inconsistent with the Approval Order or the Plan Confirmation Order; (c) a plan (other than the Plan at Docket No. [____]) that is contrary to or inconsistent with this Settlement Agreement is confirmed; or (d) the Bankruptcy Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

5.3     Each of the Diocese or Hartford may terminate this Settlement Agreement upon fifteen (15) days' written notice to the other if the Plan at Docket No. [____] is withdrawn or revoked by the Diocese or the Committee before the Plan Confirmation Order is entered by the clerk of the Bankruptcy Court on the Court's docket.

5.4     Hartford may terminate this Settlement Agreement upon fifteen (15) days written notice to the Diocese if the Diocese or the Committee files a plan contrary to or inconsistent with the Plan at Docket No. [____] or this Settlement Agreement.

5.5     In the event of termination pursuant to this Section 5, unless the Parties agree otherwise in writing, all Parties shall retain all of their Interests, rights, and obligations relating to the Subject Policies as if this Settlement Agreement never existed.

## 6.    REPRESENTATIONS AND WARRANTIES OF THE PARTIES

6.1     The Parties separately represent and warrant as follows:

6.1.1   To the extent it is a corporation, including a non-profit, religious, or charitable corporation, or other legal entity, each Party has the requisite power and authority to enter into this Settlement Agreement and to perform the obligations contemplated by this Settlement Agreement, subject only to approval of the Bankruptcy Court; and

6.1.2   This Settlement Agreement has been thoroughly negotiated and analyzed by counsel to the Parties and executed and delivered in good faith pursuant to arm's length negotiations and for value and valuable consideration.

6.2     The Diocese Parties represent and warrant that they have not assigned, and will not assign, any Interests or Claims in the Subject Policies to any Person.

6.3     The Diocese Parties represent and warrant that, to the best of their knowledge, the Diocese Parties are the owners of the Subject Policies, and that no other Person has legal title to the Subject Policies.

6.4     The Diocese Parties represent and warrant that, except with respect to any actions they may have previously undertaken in connection with the Bankruptcy Case, the Adversary Proceeding, or their participation in mediation ordered by the Bankruptcy Court, they have not in any way assisted, and shall not in any way assist, any Person in the establishment or pursuit of any Claim, including any Channeled Claim or Barred Claim, against the Hartford Released Parties.

6.5     Nothing in this Settlement Agreement, including the Schedules or Exhibits hereto, shall be construed as or deemed to be an admission or evidence that any binder, certificate, or policy of insurance was in fact issued or affords coverage in connection with any Abuse Claims.

## 7.     ACTIONS INVOLVING THIRD PARTIES

7.1     For purposes of supporting the releases granted in Section 4 and the extinguishment of any and all rights under the Subject Policies resulting from the purchase and sale thereof contemplated by this Settlement Agreement, the Parties hereby agree as follows:

7.1.1     From and after (i) the occurrence of the Settlement Agreement Effective Date, and (ii) Hartford's payment of the Settlement Amount, if any other insurer of the Diocese obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from any Hartford Released Party as a result of a claim for contribution, subrogation, indemnification, or other similar Claim for an Hartford Released Party's alleged share or equitable share, or to enforce subrogation rights, if any, with respect to the defense or indemnity obligation of any Hartford Released Party for any Claims or reimbursement obligations for Conditional Payments released or resolved pursuant to this Settlement Agreement, the Diocese Parties, and the Trust shall voluntarily reduce any judgment or Claim against, or settlement with, such other insurers to the extent necessary to satisfy such contribution, subrogation, indemnification, or other Claims against such Hartford Released Party.  To ensure that such a reduction is accomplished, each Hartford Released Party shall be entitled to assert this Section 7 as a defense to any action against it brought by any other insurer for any such portion of the judgment or Claim and shall be entitled to request that the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect such Hartford Released Party from any liability for the judgment or Claim.  Moreover, if a Non-Settling Insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against any Hartford Released Party, such Claim may be asserted as a defense against a Claim by the Diocese Parties, or the Trust in any coverage litigation (and the Diocese Parties, and/or the Trust may assert the legal and equitable rights of such Hartford Released Party in response thereto); and to the extent such a Claim is determined to be valid by the court presiding over such action, the liability of such Non-Settling Insurer to the Diocese Parties or the Trust shall be reduced dollar for dollar by the amount so determined.

7.1.2     Unless this Settlement Agreement is terminated, Hartford shall not seek reimbursement for any payments it makes under this Settlement Agreement under theories of contribution, subrogation, indemnification, or similar relief from any other Settling Insurer unless that other insurer first seeks contribution, subrogation, indemnification, or similar relief from Hartford.  Notwithstanding the foregoing, nothing in this Settlement Agreement, the Approval Order or the Plan Confirmation Order shall be construed as

22

prohibiting Hartford from seeking recovery (including with respect to the Settlement Amount or otherwise) from its reinsurers or retrocessionaires in their capacity as such. The Diocese shall use commercially reasonable efforts to obtain from all Settling Insurers agreements substantially identical to those contained in this Section 7.1 and shall use commercially reasonable efforts to obtain similar agreements from any other insurer with which it settles in the future; *provided, however*, that the failure of the Diocese, despite its commercially reasonable efforts, to obtain such an agreement from any insurer with which it settles will not be a basis to terminate this Settlement Agreement or excuse Hartford from performing its respective obligations hereunder.

7.2    Subject to the occurrence of the Settlement Agreement Effective Date and Hartford's payment of the Settlement Amount, and pursuant to the terms of the Plan, the Trust shall defend, indemnify, and hold harmless the Hartford Released Parties and Hartford's Related Persons with respect to any and all of the following "**Indemnified Claims**": (a) Channeled Claims; (b) Barred Claims; and (c) any other Claim that (i) is under, arises out of, relates (directly or indirectly to), or connects in any way with the Subject Policies or (ii) was otherwise released herein, including all such Claims made by (x) any Person claiming to be an insured (as a named insured, additional insured, or otherwise) under any of the Subject Policies, (y) any Person who has made, will make, or can make an Abuse Claim or Related Insurance Claim, and (z) any Person who has actually or allegedly been acquired or been assigned the right to make a Claim under any of the Subject Policies.

7.2.1    The Hartford Released Parties shall have the right (but not the obligation) to defend any Indemnified Claims identified in this Section 7.2 and shall do so in good faith.  The Hartford Released Parties may (but are not required to) undertake the defense of any Indemnified Claim on receipt of such Indemnified Claim.  The Hartford Released Parties agree to notify the Trust as soon as practicable of any Indemnified Claims and of its choice of counsel.  If the Hartford Released Parties decline to defend any Indemnified Claim, the Trust shall undertake the defense of such Indemnified Claim.

7.2.2    The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by the Hartford Released Parties in defending Indemnified Claims.  The Hartford Released Parties may settle or otherwise resolve an Indemnified Claim only with the prior consent of the Trust, which consent shall not be unreasonably withheld.  The Trust may settle or otherwise resolve an Indemnified Claim only with the prior consent of the Hartford Released Parties, which consent shall not be unreasonably withheld.  The Hartford Released Parties' defense, settlement, or other resolution of any Indemnified Claims pursuant to this Section 7.2 shall not diminish the obligations of the Trust to indemnify the Hartford Released Parties for such Indemnified Claims, as set forth in this Section 7.2.

7.2.3    The Trust shall maintain a reserve with respect to its obligations relating to Indemnified Claims.  The reserve will be in an amount and structure set forth in the Trust Documents reasonably acceptable to Hartford and the Committee.

7.3    If any Person attempts to prosecute a Barred Claim against the Hartford Released Parties or any of Hartford's Related Persons before the Approval Order and Plan Confirmation

Order become Final Orders, then promptly following notice to do so from Hartford, the Diocese will file a motion and supporting papers to obtain an order from the Bankruptcy Court pursuant to sections 362 and 105(a) of the Bankruptcy Code protecting the Hartford Released Parties and Hartford's Related Persons from any such Claims until the Plan Confirmation Order has become a Final Order, the Bankruptcy Case is dismissed, or this Settlement Agreement is terminated under Section 5 hereof.

## 8.    MISCELLANEOUS

8.1    If any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party to this Settlement Agreement to invalidate, interpret, or prevent the validation or enforcement, or carrying out, of all or any of the provisions of this Settlement Agreement, the Parties mutually agree to cooperate fully in opposing such action or proceeding.

8.2    The Parties will take such steps and execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Settlement Agreement and to preserve its validity and enforceability.

8.3    The Parties shall cooperate with each other in connection with the Approval Motion, the Approval Order, the Plan, the Plan Confirmation Order, and the Bankruptcy Case. Such cooperation shall include consulting with each other upon reasonable request concerning the status of proceedings and providing each other with copies of reasonably requested pleadings, notices, proposed orders, and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof.

8.4    Notwithstanding any language to the contrary in this Settlement Agreement, under no circumstance will the Diocese be obligated to take any action that violates any obligation or duty owed by the Diocese to any other insurer, and if a court of competent jurisdiction determines that a term or condition in this Settlement Agreement does violate any obligation or duty owed by any of the Diocese to any other insurer, the Diocese shall be relieved of such term or condition, but the scope and finality of the releases and injunctions set forth in this Settlement Agreement shall not be affected or modified.

8.5    This Settlement Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between and among the Parties.

8.6    This Settlement Agreement may be modified only by a written amendment signed by all of the Parties, and no waiver of any provision of this Settlement Agreement or of a breach thereof shall be effective unless expressed in a writing signed by the waiving Party.  The waiver by any Party of any of the provisions of this Settlement Agreement or of the breach thereof shall not operate or be construed as a waiver of any other provision or breach. Any change or modification of this Agreement that would result in a material adverse change to the rights of the Abuse Claimants or Trust shall require the consent of the Committee (if at the time of the proposed change or modification a Trustee has not been appointed) or Trustee (if at the time of the proposed change or modification a Trustee has been appointed and approved), as applicable, which consent shall not be unreasonably withheld.

24

8.7     By entering into this Settlement Agreement, none of the Parties has waived or shall be deemed to have waived any rights, obligations, or positions they have asserted or may in the future assert in connection with any matter outside the scope of this Settlement Agreement.  No part of this Settlement Agreement, its negotiation, or its performance may be used in any manner in any action, suit, or proceeding as evidence of the rights, duties, or obligations of the Parties with respect to matters outside the scope of this Settlement Agreement.  All actions taken and statements made by the Parties or by their representatives relating to this Settlement Agreement or participation in this Settlement Agreement, including its development and implementation, shall be without prejudice or value as precedent.

8.8     This Settlement Agreement represents a compromise of disputed Claims and shall not be deemed an admission or concession regarding liability, culpability, wrongdoing, or insurance coverage.  All related discussions, negotiations, and all prior drafts of this Settlement Agreement shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions, including NY CPLR § 4547.  Any evidence of the negotiations or discussions associated with this Settlement Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except that they shall be admissible to the extent they would have otherwise been admissible, absent this Section 8.8, in (i) an action or proceeding to enforce the terms of this Settlement Agreement, including any use as set forth in Section 7.1.1, or (ii) any possible action or proceeding between the Hartford Released Parties and any reinsurers or retrocessionaires.  This Settlement Agreement shall not be used as evidence or in any other manner, in any court or dispute resolution proceeding, to create, prove, or interpret the Hartford Released Parties' obligations under the Subject Policies or any other binder, certificate, or policy of insurance issued by Hartford.

8.9     None of the Parties shall make any public statements or disclosures (i) regarding another Party's rationale or motivation for negotiating or entering into this Settlement Agreement, or (ii) asserting or implying in any way that the Parties acted improperly or in violation of any duty or obligation, express or implied, in connection with any matter arising out of, relating to, or in connection with the Subject Policies or any other binder, certificate, or policy of insurance issued or allegedly issued by the Hartford Released Parties, including handling of or involvement in connection with the Barred Claims or the resolution of the Barred Claims.

8.10    Neither this Settlement Agreement nor the rights and obligations set forth in this Settlement Agreement shall be assigned without the prior written consent of the other Parties.

8.11    This Settlement Agreement was jointly drafted by the Parties, and the wording of this Settlement Agreement was reviewed by legal counsel for each of the Parties, and each of them had sufficient opportunity to propose and negotiate changes prior to its execution.  The language of all parts of this Settlement Agreement shall in all cases be construed as a whole according to its meaning and not strictly for or against any Party.

8.12    Section titles and headings contained in this Settlement Agreement are included only for ease of reference and shall have no substantive effect.

8.13 All notices, demands, or other communication to be provided pursuant to this Settlement Agreement shall be in writing and sent by e-mail and Federal Express or other overnight delivery service, costs prepaid, to the Parties at the addresses set forth below, or to such other Entity or address as any of them may designate in writing from time to time:

If to the Diocese:

The Roman Catholic Diocese of Syracuse, New York
240 East Onondaga Street
Syracuse, NY 13202
Attn: Stephen Breen, Chief Financial Officer

with copies to:

Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York 13202
Attn: Stephen A. Donato
Charles J. Sullivan
Grayson T. Walter

-and-

Blank Rome LLP
1825 Eye Street NW
Washington, D.C. 20006
Attn: James R. Murray
James S. Carter

If to a Participating Party:

As set forth on **Schedule 1** hereof.

If to Hartford or the Hartford Released Parties:

Hartford Fire Insurance Company

Christine Zdrojeski
The Hartford
One Hartford Plaza
Hartford, CT 06155
Christine.Zdrojeski@thehartford.com

With a copy to:

Ruggeri Parks Weinberg LLP
1875 K St NW, Ste. 800

Washington, DC 20006
Attn:   Joshua D. Weinberg
          Annette P. Rolain

8.14    This Settlement Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument.  This Settlement Agreement may be executed and delivered by facsimile, e-mail, or other electronic image, which facsimile, e-mail, or other electronic image counterparts shall be deemed to be originals.

8.15    Nothing contained in this Settlement Agreement shall be deemed or construed to constitute (a) an admission by the Hartford Released Parties that the Diocese Parties, or any other Entity, was or is entitled to any insurance coverage under the Subject Policies or any other binder, certificate, or policy of insurance issued by the Hartford Released Parties or as to the validity of any of the positions that have been or could have been asserted by the any of the Diocese Parties, (b) an admission by any of the Diocese Parties as to the validity of any of the positions or defenses to coverage that have been or could have been asserted by the Hartford Released Parties or any Claims that have been or could have been asserted by the Diocese Parties against the Hartford Released Parties, or (c) an admission by the Diocese Parties or the Hartford Released Parties of any liability whatsoever with respect to any of the Abuse Claims.

8.16    All of the Persons included in the definition of the Hartford Released Parties, Hartford's reinsurers or retrocessionaires solely in their capacity as such, Hartford's Related Parties, all of the Parties to this Agreement, and the Trust are intended beneficiaries of this Settlement Agreement.  Except as set forth in the preceding sentence or otherwise set forth in this Settlement Agreement, there are no third-party beneficiaries of this Settlement Agreement.

8.17    The Diocese Parties and the Hartford Released Parties shall each be responsible for their own fees and costs incurred in connection with the Bankruptcy Case, this Settlement Agreement, and the implementation of this Settlement Agreement.

8.18    The following rules of construction shall apply to this Settlement Agreement:

8.18.1  Unless the context of this Settlement Agreement otherwise requires: (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Settlement Agreement; and (iv) the words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation."

8.18.2  References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions regardless of whether specifically referenced in this Settlement Agreement.

8.18.3  The use of the terms "intend," "intended," or "intent," when describing the intention of the Parties, as the case may be, shall not be construed to create a breach of this Settlement Agreement when the stated intent is not achieved.

8.19    The Bankruptcy Court in the Bankruptcy Case shall retain jurisdiction to interpret and enforce the provisions of this Settlement Agreement, which shall be construed in accordance with New York law without regard to conflicts of law principles thereof.  The Hartford Released Parties do not, by virtue of this Section 8.19 or any other provision in this Settlement Agreement, consent to the Bankruptcy Court's jurisdiction as to any other matter.

8.20    This Settlement Agreement shall be effective on the Settlement Agreement Effective Date.  Subject to and conditioned upon the occurrence of the Settlement Agreement Effective Date, this Settlement Agreement and the Diocese's obligations under this Settlement Agreement shall be binding on the Diocese and shall survive the entry of the Plan Confirmation Order.

8.21    Nothing in this Settlement Agreement will prevent Hartford from allocating the Settlement Amount among the Subject Policies at Hartford's discretion.

8.22    If any provision of this Settlement Agreement, or the application thereof, shall for any reason or to any extent, be construed to be invalid or unenforceable, the remainder of this Settlement Agreement, and the application of such provision to other circumstances, shall be interpreted so as to best effect the intent of the Parties, unless such determination of invalidity or unenforceability deprives any Party of the substantial benefit of its bargain.

8.23    The Parties agree that all matters relating to the negotiation and terms of this Settlement Agreement (including by way of example and not limitation, all prior drafts, exchanges of terms, and related discussions or correspondence) shall be confidential and are not to be disclosed except by order of court or consent of the Parties in writing.  This Section 8.23 does not prevent or prohibit the Parties from publicly filing on the docket in the Bankruptcy Case the final, executed copy of this Settlement Agreement.

[*Signature Pages Follow*]

28

**IN WITNESS WHEREOF**, the Parties have executed this Agreement by their duly authorized representatives.

Signed: _____

The Roman Catholic Diocese of Syracuse, New York

Name Printed: _____

Title: _____

Date: _____ 2025


Signed: _____

Hartford Fire Insurance Company

Name Printed: _____

Title: _____

Date: _____ 2025

29

**SCHEDULE 1**
**Participating Party List**

# Parishes

| Parish Corporation Name: | City - Zip |
|---|---|
| St. Agnes Mission | Afton, NY 13730 |
| St. John the Evangelist | Bainbridge, NY 13733 |
| St. Augustine Roman Catholic Church, Baldwinsville, NY | Baldwinsville, NY 13027 |
| St. Elizabeth Ann Seton Church of the Town of Clay, NY | Baldwinsville, NY 13027 |
| St. Marys Church  of  Baldwinsville, NY | Baldwinsville, NY 13027 |
| St. Francis of Assisi a/k/a St. Catherine of Siena a/k/a St. Christopher and St. Rita | Binghamton, NY 13901 |
| *St. Christopher Roman Catholic Church [Town of Chenango, Broome County]* | *Binghamton, NY 13901* |
| *St. Catherine of Siena Roman Catholic Church* | *Binghamton,13901* |
| St. Mary of the Assumption (combined with St. Mary's Church) | Binghamton, NY 13901 |
| St. Paul's Church, Binghamton, NY | Binghamton, NY 13901 |
| *St. Andrew's Church of Binghamton* | *Binghamton, NY 13903* |
| The Church of Saints John & Andrew | Binghamton, NY 13903 |
| *St. John the Evangelist Church* | *Binghamton,13903* |
| Church of the Holy Trinity | Binghamton, NY 13905 |
| *Holy Trinity a/k/a St. Ann a/k/a St. Joseph and St. Stanislaus Kostka Church* | *Binghamton, NY 13905* |
| *St. Joseph's  Lithuanian Roman Catholic Church of Binghamton NY (merged in St. Ann)* | *Binghamton, NY 13905* |
| *St. Ann Catholic Church (renamed church of the Holy Trinity)* | *Binghamton13905* |
| Ss Cyril & Methodius Slovak Roman Catholic Church of Binghamton, NY | Binghamton, NY 13905 |
| St. Patrick's Catholic Church of Binghamton, NY | Binghamton, NY 13905 |
| St. Thomas Aquinas Church | Binghamton, NY 13905 |
| Christ Our Hope a/k/a St. Joseph a/k/a St. Patrick Mission a/k/a St. Mary of The Snows Oratory | Boonville, NY 13309 |
| St. Agnes Church | Brewerton, NY 13029 |
| Church of St. Francis of Assisi of Bridgeport, NY | Bridgeport, NY 13030 |
| St. John The Evangelist a/k/a St. Mary Devotional Chapel and St. Paul (Redfield) | Camden, NY 13316 |
| St. Joseph's Church of Camillus, NY | Camillus, NY 13031 |
| St. Agatha's Church | Canastota, NY 13032 |
| St. James | Cazenovia, NY 13035 |
| Divine Mercy Parish Roman Catholic Church | Central Square, NY 13036 |
| *Saint Michael's Roman Catholic Church* | *Central Square, NY 13036* |
| *St. Anthony of Padua's Church of Willowvale and Chadwicks* | *Chadwicks, NY 13319* |
| St. Patrick-St. Anthony Church of Chadwicks, New York | Chadwicks, NY 13319 |
| *St. Rita's Roman Catholic Church* | *Chenango Forks, NY 13746* |
| St. Patrick | Chittenango, NY 13037 |
| Our Lady of Perpetual Help Roman Catholic Church of Cincinnatus, NY | Cincinnatus, NY 13040 |
| The Church of the Sacred Heart | Cicero, NY 13039 |
| *St. Patrick's Church* | *Clayville, NY 13322* |
| *St. Mary of The Assumption a/k/a St. Mary's Oratory* | *Cleveland, NY 13042* |

| | |
|---|---|
| St. Mary's Roman Catholic Church, Clinton | Clinton, NY 13323 |
| The Church of Annunciation | Clinton, NY 13323 |
| Mission of St. Bernadette | Constantia, NY 13044 |
| St. Anthony of Padua | Cortland, NY 13045 |
| St. Mary's Church of Cortland | Cortland, NY 13045 |
| St. Joseph's Church, Deposit, NY | Deposit, NY 13754 |
| St. Lawrence Mission | *DeRuyter, NY* |
| Holy Cross Church, DeWitt, NY | DeWitt, NY 13214 |
| *St. Francis Church of Durhamville, NY* | *Durhamville, NY 13054* |
| St. Matthew's Church | E. Syracuse, NY 13057 |
| Our Lady of Good Counsel Church, Endicott, NY | Endicott, NY 13760 |
| St. Ambrose | Endicott, NY 13760 |
| St. Anthony of Padua Church | Endicott, NY 13760 |
| *St. Casimir Roman Catholic (Polish) Church of Endicott* | *Endicott, NY 13760* |
| *St. Joseph's Roman Catholic Church, Endicott, NY* | *Endicott, NY 13760* |
| *Church of Christ The King, Endwell , NY* | *Endwell, NY 13760* |
| *Our Lady of Angels Church of Endwell, NY* | *Endwell, NY 13760* |
| Church of the Holy Family | Endwell, NY 13760 |
| *St. Paul's Mission (mission of I.C. Pomep)Unincorporated, closed* | Fabius |
| Immaculate Conception | Fayetteville, Ny 13066 |
| St. Mary's Church, Florence, Oneida Co. | Florence, NY |
| St. Patrick Mission | Forestport, NY |
| St.Patrick's Church of Forestport | Forestport, NY 13338 |
| *The Holy Family Church of Fulton* | *Fulton, NY 13069* |
| *St. Michael 's Roman Catholic Polish Church* | *Fulton, NY 13069* |
| *Church of the Immaculate Conception of Fulton,NY* | *Fulton, NY 13069* |
| Church of the Holy Trinity | Fulton, NY 13069 |
| Church of the Immaculate Conception | Greene, NY 13778 |
| St. Mary | Hamilton, NY 13346 |
| Our Lady of The Rosary Church, Hannibal   NY | Oswego, NY 13126 |
| St. John Chrysostom Mission [served area near Forestport] | Hawkinsville, NY |
| *St. Ann Church of Hinckley, NY* | *Hinckley, NY 13352* |
| The Parish Community of St. Leo & St. Ann | Holland Patent, NY 13354 |
| St. Margaret's Catholic Church | Homer, NY 13077 |
| *St Mary's Devotional Chapel-[never inc]* | *Irish Ridge* |
| *St. Mary's Church, Jamesville, NY* | *Jamesville, NY 13078* |
| St. James Roman Catholic Church Lestershire, NY | Johnson City, NY 13790 |
| *The Church of the Blessed Sacrament* | *Johnson City, NY 13790* |
| St. Patrick | Jordan, NY 13080 |
| St. Mary's Church, Kirkwood | Kirkwood, NY 13795 |
| *Church of St. Frances Xavier Cabrini* | *Lacona [Pulaski, NY 13142]* |
| Church of the Nativity at St. Joseph's | LaFayette, NY 13084 |
| St. Joseph's Church | Lee Center, NY 13363 |
| *Our Lady of the Valley Mission* | *Leonardsville, NY,13364* |

| | |
|---|---|
| *St. Francis of Assisi Mission as The Trustees of St. Mary's Church of West Monroe* | *Little France, NY* |
| Epiphany | Liverpool, NY 13088 |
| Church of Immaculate Heart of Mary | Liverpool, NY 13088 |
| St. Joseph the Worker Liverpool, Onondaga Co. | Liverpool, NY 13088 |
| Christ the King Church, Liverpool, NY | Liverpool, NY 13090 |
| Pope John XXIII Roman Catholic Church | Liverpool, NY 13090 |
| *St. John Roman Catholic Church of Clay, NY* | *Liverpool, NY 13090* |
| Most Holy Rosary Roman Catholic Church of Maine, NY | Maine, NY 13802 |
| St. Ann's Church | Manlius, NY 13104 |
| St. Stephen's Church | Marathon, NY 13803 |
| St. Francis Xavier's Church | Marcellus, NY 13108 |
| St. Margaret's Church | Mattydale, NY 13211 |
| St. Jospeh's Church of McGraw, NY- originally titled to St. Mary-Corland | McGraw, NY |
| *St. Mary, Star of the Sea* | *Mexico, NY 13114* |
| St. Anne, Mother of Mary | Mexico, NY 13114 |
| Our Lady of Perpetual Help | Minetto |
| St. Mary of the Assumption | Minoa, NY 13116 |
| St. Joan of Arc Church of Morrisville, NY | Morrisville, NY 13408 |
| *St. Theresa of the Infant Jesus* | *Munnsville, NY 13409* |
| Church of St. Theresa of the Infant Jesus, New Berlin, NY | New Berlin, NY 13411 |
| Church of Our Lady of the Rosary, New Hartford, NY | New Hartford, NY 13413 |
| St. John the Evangelist Church | New Hartford, NY 13413 |
| St. Thomas | New Hartford, NY 13413 |
| *Holy Cross Church* | *New London* |
| Church of the Sacred Heart a/k/a St. Mary Our Lady | New York Mills, NY 13417 |
| *St. Mary's Church of Our Lady of Czestochowa* | *New York Mills, NY 13417* |
| *St. John Oratory and Cemetery* | *North Bay, NY* |
| *St. Mary' s Mission* | *North Brookfield,NY* |
| St. Rose of Lima Church | N. Syracuse, NY 13212 |
| St. Paul | Norwich, NY 13815 |
| St. Bartholomew | Norwich, NY 13815 |
| St. Joseph's German Catholic Church of Oneida | Oneida, NY 13421 |
| St. Patrick | Oneida, NY 13421 |
| St. Joseph | Oriskany Falls, NY 13425 |
| *Church of St. Stephen, Protomartyr* | *Oriskany, NY 13424* |
| *St. Louis* | *Oswego, NY 13126* |
| *St. Joseph Mission* | *Oswego, NY* |
| *St. Joseph's Church* | *Oswego, NY 13126* |
| *St. John The Evangelist* | *Oswego, NY 13126* |
| *St. Mary of the Assumption* | Oswego, NY 13126 |
| St. Paul | Oswego, NY 13126 |
| St. Peter's Church, Oswego | Oswego, NY 13126 |
| *St. Stephen Roman Catholic Church* | *Oswego, NY 13126* |
| St. Patrick's Church of Otisco, NY | Otisco, NY 13159 |

3

| | |
|---|---|
| Church of St. Mary of the Snows | Otter Lake, NY 13338 |
| St. Joseph's Church | Oxford, NY 13830 |
| *St. Anne's Church of Parish, NY a/k/a St. Anne Mother of Mary (Mexico)* | *Parish, NY 13131* |
| St. Stephen | Phoenix, NY 13135 |
| Church of The Nativity at Immaculate Conception | Pompey, NY 13138 |
| Christ Our Light a/k/a St. John The Evangelist | Pulaski, NY 13142 |
| *St. John the Evangelist Church Pulaski* | *Pulaski, NY 13142* |
| *St. Paul's Mission (mission of I.C. Pomep)Unincorporated, closed* | *Redfield* |
| St. John the Baptist | Rome, NY 13440 |
| *St. Mary's Church, Rome, NY* | *Rome, NY 13442* |
| St. Paul | Rome, NY 13440 |
| St.  Peter's Church, Rome | Rome, NY 13440 |
| Transfiguration | Rome, NY 13440 |
| St. Joseph | Sanitaria Springs, 13833 |
| Sacred Heart Church of Town of Scriba, Oswego | Scriba, NY 13126 |
| St. Malachy | Sherburne, NY 13460 |
| St. Helena | Sherrill, NY 13461 |
| St. Mary of the Lake Roman Catholic Church, Skaneateles, NY | Skaneateles, NY13152 |
| *St. Bridget Roman Catholic Church of Skaneateles Falls, NY* | *Skaneateles Falls, NY* |
| *St. Bridget's Church -[First a Mission of Oxford, then Cortland, then Truxton]* | *Solon, NY* |
| *St. Peter's Church of Split Rock* | *Syracuse, NY* |
| St. Cecilia's Church, Solvay, NY | Solvay, NY 13209 |
| *Corpus Christi Church of S. Onondaga County of Onondaga, State of  NY* | *Syracuse, NY 13159* |
| St. Mary's Church, Syracuse, NY d/b/a The Cathedral of the Immaculate Conception | Syracuse, NY 13202 |
| *St. John's Church, Syracuse, NY* | *Syracuse, NY 13202* |
| *Holy Trinity Church, Syracuse* | *Syracuse, NY 13203* |
| *St. Peter* | *Syracuse, NY 13203* |
| St. Vincent DePaul's Church | Syracuse, NY 13203 |
| Basilica of the Sacred Heart of Jesus, Syracuse, NY | Syracuse, NY 13203 |
| *St. Brigid & St. Joseph Church of Syracuse* | *Syracuse, NY 13204* |
| St. Lucy | Syracuse, NY 13204 |
| St. Patrick' s Church, Geddes | Syracuse, NY 13204 |
| *St. Stephen* | *Syracuse, NY 13204* |
| St. Anthony of Padua | Syracuse, NY 13205 |
| Our Lady of Hope f/k/a St. James | Syracuse, NY 13205 |
| Blessed Sacrament Church, Eastwood, NY | Syracuse, NY 13206 |
| Transfiguration Roman Catholic Church | Syracuse, NY 13206 |
| Most Holy Rosary | Syracuse, NY 13207 |
| *Our Lady of Lourdes Church Syracuse, NY* | *Syracuse, NY 13207* |
| Franciscan Church of the Assumption | Syracuse, NY 13208 |
| Church of Our Lady of Pompei - St. Peter | Syracuse, NY 13208 |
| St. Daniel | Syracuse, NY 13208 |
| St. John the Baptist | Syracuse, NY 13208 |
| St. Joseph (German) Church [FAD 1882] | Syracuse, NY |

4

| | |
|---|---|
| Church of Our Lady of Peace [ merged into St. Cecilia's Solvay as St. Marianne Cope] | Syracuse, NY 13209 |
| *Church of St. Andrew the Apostle of Syracuse, NY* | *Syracuse, NY 13210* |
| All Saints Church, Syracuse, NY [new name for St. Therese @ merger with OL Solace] | Syracuse, NY 13210 |
| Church of St. Therese The Little Flower of Jesus, Syracuse | Syracuse, NY 13210 |
| St. Michael's & St. Peter Church, Onondaga Hill | Syracuse, NY 13215 |
| Holy Family | Syracuse, NY 13219 |
| St. Ann's Church Syracuse, NY [name changed to St. Charles-St. Ann] | Syracuse, NY 13219 |
| St. Charles Borromeo Church | Syracuse, NY 13219 |
| *The Church of Our Lady of Solace [merged into St. Therese to become All Saints]* | *Syracuse, NY 13224* |
| *St. Anne -Glenmore [never inc]* | *Taberg, NY 13471* |
| St. Patrick's Church Taberg, NY | Taberg, NY 13471 |
| St. Patrick | Truxton,13158 |
| Church of the Nativity at St. Leo's | Tully, NY 13159 |
| *St. Agnes Church* | *Utica, NY 13501* |
| Historic Old St. John | Utica, NY 13501 |
| St. Francis de Sales | Utica, NY 13501 |
| St. Mary's Church Utica (South St.) | Utica, NY 13501 |
| Church of the Blessed Sacrament | Utica, NY 13501 |
| St. Maria di Monte Carmelo | Utica, NY 13501 |
| St. Stanislaus Roman Catholic Church | Utica, NY 13501 |
| Holy Trinity Church of Utica, NY | Utica, NY 13502 |
| Church of Our Lady of Lourdes | Utica, NY 13502 |
| Church of The Sacred Heart | Utica, NY 13502 |
| St. Joseph | Utica, NY 13502 |
| St. Patrick Church | Utica, NY 13502 |
| St. George Roman Catholic Church | Utica, NY 13502 |
| St. Mark | Utica, NY 13502 |
| St. Peter | Utica, NY 13502 |
| St. Anthony & St. Agnes Church, Utica, NY | Utica, NY 13504 |
| St. Mary of the Lake Mission | Verona Beach, NY 13162 |
| Holy Family | Vernon, NY 13476 |
| Our Lady of Good Counsel | Verona, NY 13478 |
| Our Lady of Sorrows | Vestal, NY 13851 |
| St. Vincent DePaul-Blessed Sacrament Church | Vestal, NY 13850 |
| Our Lady of Good Counsel | Warners, NY 13164 |
| St. Bernard's Catholic Church of Waterville, Oneida Co. | Waterville, NY 13480 |
| St. Anne's Roman Catholic Church, Whitesboro, NY | Whitesboro, NY 13492 |
| St. Paul's Church -St. Anne's-St. Stephen's, Whitesboro | Whitesboro, NY 13492 |
| The Catholic Community of St. Stephen-St. Patrick [merged into St. Patrick-Whitney Pt. | Whitney Point, 13862 |
| St. Patrick 's Church Williamstown [originally a mission of Parish, later Camden] | Williamstown, NY 13493 |
| Church of Our Lady of Lourdes of Windsor, NY | Windsor, NY 13865 |
| Our Lady of Hope | Syracuse, NY |
| Christ the Good Shepard | Oswego, NY |

5

| | |
|---|---|
| St. Marianne Cope Church | Solvay, NY 13209 |
| St. Michaels Church | Syracuse NY 13215 |
| St. Anthony of Padua Church | Utica NY 13501 |
| St. John's Church and Roman Catholic Society in the City of Utica a/k/a Historic Old St. John | Utica, NY 13501 |
| St. Mary Mt. Carmel- Blessed Sacrament Church | Utica, NY 13501 |
| Mary, Mother of Our Savior Church - new name for OLL | Utica, NY 13502 |
| St. Vincent de Paul Church | Vestal, NY 13850 |

# Schools

| | |
|---|---|
| All Saints Catholic School | Endicott |
| Bishop Cunningham High School | Oswego |
| Bishop Grimes Jr./Sr. High School | East Syracuse |
| Bishop Ludden Jr./Sr. High School | Syracuse |
| Cathedral Academy at Pompei | Syracuse |
| Catholic Schools of Broome County | Binghamton |
| Holy Family | Norwich |
| Notre Dame Elementary School | Utica |
| Notre Dame Jr. / Sr. High | Utica |
| Oswego Catholic High School | Oswego |
| Rome Catholic School | Rome |
| Seton Catholic Central | Binghamton |
| Seton Catholic High School | Endicott |
| Trinity Catholic School | Oswego |
| Utica Catholic Academy | |

# Other Catholic Organization

Associated Catholic Charities for Community Development at Broome Co., Inc.

Catholic Cemeteries of the Roman Catholic Diocese of Syracuse, Inc.

Catholic Charities of the Roman Catholic Diocese of Syracuse

Christopher Community, Inc.

Encompass Health Home, LLC

Heritage Campaign, Inc.

Jail Ministry of Onondaga County, Inc.

Joseph and Elaine Scuderi Foundation, Inc.

The Clerical Fund of the Roman Catholic Diocese of Syracuse

The Diocese of Syracuse Lay Pension Plan

The Foundation of the Roman Catholic Diocese of Syracuse, Inc.

The Robert L. McDevitt, K.S.G.K.C.H.S. and Catherine H. McDevitt, L.C.H.S. Foundation Inc.

The Syracuse Catholic Press Association, Inc.

The Syracuse Diocesan Investment Fund

The Syracuse House of Retreats

The St. Thomas Aquinas Fund, Inc.

Camp Nazareth

Lourdes Camp

Brady Faith Center

Brady Farm

Brady Market

Joseph and Elaine Scuderi Foundation, Inc.

Joseph T. O'Keefe Corporation

Newman Foundation of Binghamton

Newman Foundation of Cortland

Project Joseph

Propagation of Faith

Spiritual Renewal Center

St. Thomas More Catholic Campus Ministry

The Guardian Angel Society

The Robert L. McDevitt K.S.G., K.C.H.S. and Catherine H. McDevitt L.C.H.S Fund of
St. James Church of Lestershire, NY

The Robert L. McDevitt K.S.G., K.C.H.S. and Catherine H. McDevitt L.C.H.S Fund of
St. Patrick's Church of Binghamton, NY

The Robert L. McDevitt K.S.G., K.C.H.S. and Catherine H. McDevitt L.C.H.S Fund of
St. Thomas Aquinas Church

Holy Name Society, St. Margaret's Church. Mattydale, NY

St. Vincent DePaul Church Daycare

Windsor Human Development

7

## EXHIBIT A
### Approval Order

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **THE ROMAN CATHOLIC DIOCESE OF SYRACUSE, NEW YORK** | : | Case No. 20-30663-WAK |
| | : | |
| Debtor. | : | Re: Doc. No. [ ] |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## ORDER (I) APPROVING THE HARTFORD FIRE INSURANCE COMPANY SETTLEMENT AGREEMENT, RELEASE AND BUYBACK, (II) APPROVING THE SALE OF THE HARTFORD FIRE INSURANCE COMPANY POLICIES FREE AND CLEAR, (III) ENJOINING CLAIMS, AND (IV) GRANTING RELATED RELIEF

Upon the motion, dated July 1, 2025 [Dkt. No. 2946] ("**Motion**")[1] of The Roman Catholic Diocese of Syracuse, New York the debtor-in-possession in the above-captioned Chapter

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement (as defined below).

11 case ("**Diocese**"), for entry of an order approving the settlement agreement, releases, insurance policy buyback, and related injunction-in-aid ("**Settlement**") by and among the Diocese, the other Diocese Parties, and Hartford Fire Insurance Company ("**Hartford**"), pursuant to Sections 105(a) and 363 of Title 11 of the United States Code ("**Bankruptcy Code**") and Rules 2002(a)(2), 6004, and 9019 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), in each case as described in the Motion and the Settlement Agreement, Release, and Policy Buyback attached to the Motion as **Annex I** (the "**Agreement**"); and the Court having reviewed the Motion and the Agreement; and it appearing that due and adequate notice of the Motion and Agreement having been given to all Persons entitled thereto, and that no other or further notice need be given; and the Court on _____, 2025 at [   ] AM/PM] having held a hearing (the "**Sale Hearing**") to consider the relief requested in the Motion; and upon the record of the Sale Hearing; and, after due deliberation, including, without limitation, for the reasons stated by the Court on the record of the Sale Hearing, it appearing that the relief requested in the Motion and granted herein is in the best interests of the Diocese's estate, its creditors, and other parties in interest; and good sufficient cause appearing therefor, it is hereby

### FOUND AND DETERMINED THAT:

A.      This Court has jurisdiction over the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief sought in the Motion are Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9019.

C.      Proper, timely, adequate and sufficient notice of the Sale Hearing and Motion and the relief requested therein, including, without limitation, the Settlement and the transactions described in the Agreement, including, without limitation, issuance of the injunction-in-aid referenced in the Agreement and the Motion (all such transactions being collectively referred to, for convenience, as the "**Sale Transaction**") has been provided in accordance with the terms of the *Order Approving the Form and Manner of Notice of the Diocese's Motion to Approve Proposed Insurance Settlements* [Dkt. No. 2955]. Notice of the Sale Transaction and the Sale Hearing was published in [The New York Times/ USA Today and [    ]] on _____, 2025, as set forth in the publication notice attached to the Motion.  The notices described above were good, sufficient, and appropriate under the circumstances, and no other notice of the Motion or Sale Hearing is required.

D.      The disclosures made by the Diocese concerning the Agreement, the Sale Transaction, and the Sale Hearing were good, complete, and adequate.

E.      A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested Persons.

F.      The Diocese has full corporate power and authority to consummate the Sale Transaction pursuant to the Agreement and all other documents contemplated thereby, and no consents or approvals, other than those expressly provided for in the Agreement, are required for the Diocese to consummate the Sale Transaction.  Similarly, the other Diocese Parties have full corporate power and authority to consummate the Sale Transaction pursuant to the Agreement and all other documents contemplated thereby, and no consents or approvals, other than those expressly

provided for in the Agreement, are required for the Diocese Parties to consummate the Sale Transaction.

G.      Approval of the Agreement and consummation of the Sale Transaction are in the best interests of the Diocese's estate, its creditors (specifically including the Abuse Claimants), and other parties-in-interest, including because the proceeds of and from the Sale Transaction will benefit Abuse Claims.

H.      The Diocese has demonstrated (i) good, sufficient, and sound business purpose and justification and compelling circumstances for the Sale Transaction pursuant to Section 363(b) of the Bankruptcy Code and (ii) that the Sale Transaction is fair, reasonable, and in the best interests of the Diocese's estate and creditors pursuant to Bankruptcy Rule 9019. Among other things, the Diocese has demonstrated that: the Agreement, and closing thereon, is necessary and appropriate to realize the value of the Purchased Property$^2$ and maximize the value of the Diocese's estate; the probability of success for the Diocese's estate in litigation over the matters resolved by the Agreement, including, without limitation, the Adversary Proceeding, is uncertain; litigation of the matters resolved by the Agreement would be complex and costly to the Diocese's estate; and the Settlement Amount is within the reasonable range of potential litigation outcomes. The Sale Transaction constitutes a reasonable and sound exercise of the Diocese's business judgment and its powers and duties under applicable law and should be approved.

I.      The Agreement was negotiated, proposed, and entered into without collusion, in good faith, and from arm's length bargaining positions. Without limiting the foregoing, the Agreement resulted from a lengthy mediation that proceeded pursuant to a prior order of the Court. Hartford is not an "insider" or "affiliate" of the Diocese, as those terms are defined in the Bankruptcy Code. None of the Diocese Parties or Hartford have engaged in any conduct that would: (i) cause or permit the avoidance of the Agreement or the consummation of the Sale Transaction under Section 363(n) of the Bankruptcy Code; (ii) cause or permit the imposition of any costs or damages (including without limitation attorneys' fees or punitive damages) under Section 363(n) of the Bankruptcy Code; or (iii) prevent the application of Section 363(m) of the Bankruptcy Code.

J.      Hartford is a good faith purchaser of the Purchased Property under Section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby, in that, among other things: (i) all payments to be made by or to Hartford, and other agreements or arrangements entered into by Hartford, in connection with the Sale Transaction have been disclosed; (ii) Hartford neither induced nor caused the Diocese's Chapter 11 filing; (iii) the negotiation and execution of the Agreement and any other agreements or instruments related thereto was in good faith, the arm's length transaction between Hartford and the Diocese Parties was the product of mediation, and all Parties to the Agreement were, or had the opportunity to be, represented by counsel; and (iv) Hartford has not violated Section 363(n) of the Bankruptcy Code by any action or inaction. Hartford has at all times acted in good faith with respect to the Agreement and will continue to be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in closing the Sale Transaction.

---

$^2$ "**Purchased Property**" as used herein means both (i) the Subject Policies and (ii) the Extra-Contractual Claims of the Diocese Parties, all as defined in the Agreement.

K.      The terms and conditions of the Agreement are fair and reasonable.  The Settlement Amount provided by Hartford pursuant to the Agreement (i) is fair and reasonable; (ii) monetizes the Purchased Property at the highest and best amount; (iii) will provide a higher and more certain recovery for the Diocese's creditors than would be provided by any other practical available alternative (including, for the avoidance of doubt, litigation of the Adversary Proceeding) given the complexity, cost, and uncertainty of such alternatives; and (iv) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and Section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law.  The Settlement Amount is within the reasonable range of potential litigation outcomes, and the Diocese's determination to accept the Settlement Amount and otherwise enter into the Agreement is a valid and sound exercise of the Diocese's business judgment and consistent with the Diocese's fiduciary duties.

L.      Hartford: (i) is not a mere continuation of the Diocese or its estate, nor is there any continuity of enterprise between Hartford and the Diocese or Hartford and any of the other Diocese Parties; (ii) is not holding itself out to the public as a continuation of any of the Diocese Parties; and (iii) is not a successor to the Diocese, its estate, or any of the Diocese Parties for any purpose, and the Sale Transaction does not amount to a consolidation, merger, or *de facto* merger of Hartford and any of the Diocese Parties.

M.      The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  Neither Hartford nor any of the Diocese Parties are fraudulently entering into the Sale Transaction.

N.      The transfer of the Purchased Property to Hartford (i) does not constitute an avoidable transfer under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law and (ii) does not and will not subject Hartford to any liability whatsoever with respect to the Diocese's operation prior to the closing of the Sale Transaction (the "**Closing**").

O.      Hartford has agreed to purchase the Purchased Property pursuant to its Agreement and this Order; Hartford has not agreed to purchase, and is not purchasing, any other assets of the Diocese's estate.  Hartford has not agreed to assume, and after Closing shall have no obligations with respect to, any liabilities of the Diocese, its subsidiaries or affiliates, the other Diocese Parties, or any Covered Parties.  Without limiting the generality of the foregoing, Hartford: (i) is not assuming and shall have no liability for any Claims arising from or relating to Abuse, the Purchased Property, or the Bankruptcy Case; and (ii) is not assuming and shall have no liability with respect to the Diocese's, any Covered Party's, or any  other Diocese Party's obligations to Abuse Claimants, any other creditors, future claimants (including without limitation Unknown Abuse Claims), or the Diocese's, any Covered Party's, or any Diocese Party's employees, in each case, by reason of the purchase of the Purchased Property under the Agreement.

P.      The Purchased Property constitutes property of the Diocese's estate, and the Diocese is the lawful owner of the Purchased Property and holds good title thereto.  The transfer of the Purchased Property to Hartford pursuant to the Agreement will be a legal, valid, binding, and effective transfer of the Purchased Property, and will vest Hartford with all right, title, and interest of the Diocese and the Diocese Parties in and to the Purchased Property, in each case free and clear of all Interests (as defined below, and including, without limitation, any Interests of the

Diocese Parties, Covered Parties, other named or additional insureds or assureds, or those with direct action rights against the Purchased Property). After Closing, Hartford shall have no liability for any Claims against or liabilities of the Diocese, its estate, or the other Diocese Parties or Covered Parties. Without limiting any of the foregoing, the Diocese, the Diocese Parties, and Hartford have agreed that, upon the occurrence of the Settlement Agreement Effective Date and payment of the Settlement Amount by Hartford, the Purchased Property shall be deemed void *ab initio*, terminated, extinguished, and of no further force and effect.

Q. The Diocese may sell the Purchased Property free and clear of all, liens, interests, obligations, rights, encumbrances, pledges, mortgages, deeds of trust, security interests, Claims (including, without limitation, any "claim" as defined in Section 101(5) of the Bankruptcy Code), leases, possessory leasehold interests, charges, options, rights of first refusal or option to purchase any real property, easements, servitudes, transfer restrictions under any agreement, judgments, hypothecations, demands, licenses, sublicenses, assignments, debts, obligations, guaranties, options, contractual commitments, restrictions, environmental liabilities, options to purchase, and options, in each case of whatever kind, nature, or description in, against, or with respect to any of the Purchased Property, having arisen, existed or accrued prior to and through closing of the Sale Transaction, whether direct or indirect, absolute or contingent, choate or inchoate, fixed or contingent, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute, or otherwise and whether arising prior to, on, or after the Petition Date, including without limitation Abuse Claims, Coverage Claims, and all other Barred Claims (collectively, and including all "interests" as the term is used in Bankruptcy Code Section 363, "**Interests**"), because one or more of the standards set forth in Bankruptcy Code Section 363(f)(1) – (5) has been satisfied with regard to each such Interest. Without limiting the generality of the foregoing: (i) non-Diocese parties with Interests in or with respect to the Purchased Property who did not object, or who withdrew their objections to the Sale Transaction or the Motion have waived their right to object to the sale of the Purchased Property free and clear of such non-Diocese parties' Interests in the Purchased Property pursuant to Section 363(f)(2) of the Bankruptcy Code; and (ii) non-Diocese parties with Interests in or with respect to the Purchased Property who objected to the Motion and did not withdraw any such objection (a) are the holders of Interests subject to *bona fide* dispute under Bankruptcy Code Section 363(f)(4) and/or (b) can be compelled to accept a monetary satisfaction of their Interests within the meaning of Section 363(f)(5) of the Bankruptcy Code.

R. If the sale of the Purchased Property were not free and clear of Interests, or if the Hartford Released Parties and/or Hartford's Related Persons would, or in the future could, be liable for any of the Interests, Hartford would not have entered into the Agreement and would not consummate the Sale Transaction or pay the Settlement Amount, thus adversely affecting the Debtor, its estate, and its creditors (including, without limitation, the Abuse Claimants), as well as the other Diocese Parties.

S. Issuing a supplemental injunction under Section 105(a) of the Bankruptcy Code as provided herein is essential to give effect to the sale of the Purchased Property to Hartford and this Order's approval of such sale free and clear of Interests pursuant to Section 363(f) of the Bankruptcy Code. The Settling Insurer Injunction set forth in Paragraph 19 below not only is a necessary prerequisite for Hartford's assent to the terms and conditions of its Agreement, such that Hartford will not consummate the Sale Transaction or pay its Settlement Amount in the absence of such an injunction from this Court, but also is warranted to ensure compliance with this Order.

## NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

### General Provisions

1.      The Motion is granted and approved as set forth herein.

2.      The findings of fact set forth above and conclusions of law stated herein, in addition to any findings of fact and conclusions of law stated by the Court at the Sale Hearing, shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the Motion pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3.      Any and all objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are hereby overruled on the merits with prejudice, and in each case the Person asserting the objection or reservation of rights is enjoined from taking any action against the Hartford Released Parties or Hartford's Related Persons to recover any Claim which such objecting Person has solely against the Diocese, its estate, or any other Diocese Party or Covered Party.  Those parties who did not object or who withdrew their objections to the Motion are deemed to have consented to the relief granted herein, pursuant to Section 363(f)(2) of the Bankruptcy Code.

### Approval of the Agreements

4.      The Agreement is approved in its entirety, pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.  Without limiting the generality of the foregoing, the settlement and mutual release of Claims as set forth in the Agreement is hereby approved pursuant to Bankruptcy Rule 9019.  All factors set forth in *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007), either weigh in favor of the Agreement or do not apply.

5.      Pursuant to Section 363(b) of the Bankruptcy Code, the Diocese is authorized to consummate the Sale Transaction under and in accordance with the terms and conditions of the Agreement, and the Diocese shall at all times act in accordance with the terms thereof.

6.      The Parties are authorized to execute and deliver, and empowered to perform under, consummate, and implement the Agreement, together with all additional instruments and documents that may be reasonably necessary, convenient, or desirable to implement the Agreement and consummate the Sale Transaction pursuant thereto and effectuate the provisions of this Order and the transactions approved hereby, and to take all further actions as may be requested by Hartford for the purpose of assigning, transferring, granting, conveying, and conferring to Hartford or reducing to Hartford's possession, the Purchased Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

7.      Hartford is authorized and directed to pay the respective Settlement Amount to the Trust under and subject to the satisfaction of all terms and conditions of the Agreement.

8.      The Settlement Amount provided by Hartford for the Purchased Property constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code,

Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

9.      None of Hartford's Related Persons or any Hartford Released Party shall be required to seek or obtain relief from the automatic stay under Section 362 of the Bankruptcy Code to enforce any of its or their rights or remedies under the Agreement or any other document related to the Agreement or the Sale Transaction. The automatic stay imposed by Section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order; *provided*, *however*, that this Court shall retain jurisdiction over any and all disputes with respect thereto.

10.     This Order shall be binding in all respects upon: (a) the Diocese and its Related Persons; (b) the Diocese's estate; (c) the other Diocese Parties; (d) all creditors (including without limitation all Abuse Claimants); (e) all holders of Interests whether known or unknown (including but not limited to any Non-Settling Insurers and Covered Parties) against or on all or any portion of the Purchased Property; (f) the Hartford Released Parties and Hartford's Related Persons; (g) the Purchased Property; (h) the Unknown Claims Representative; (i) any trustee that may be subsequently appointed in the Bankruptcy Case, whether pursuant to any plan of reorganization or liquidation (including without limitation the Trustee appointed under the Plan), under Section 1104 of the Bankruptcy Code, or upon a dismissal or conversion of this Bankruptcy Case under Chapter 7 of the Bankruptcy Code; and (j) all Persons and Entities receiving notice (or deemed to have received notice pursuant to this Order) of the Motion or the Sale Hearing.   The Agreement shall be binding in all respects upon:  (x) the Diocese, its Related Persons, and its estate; (y) the Diocese Parties; and (z) any trustee that may be subsequently appointed in the Bankruptcy Case, whether pursuant to any plan of reorganization or liquidation (including without limitation the Trustee appointed under the Plan), under Section 1104 of the Bankruptcy Code, or upon a dismissal or conversion of this Bankruptcy Case under Chapter 7 of the Bankruptcy Code.

## Transfer of the Assets

11.     The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Diocese may sell the Purchased Property free and clear of any Interests therein.

12.     Pursuant to Sections 105 and 363(b) and (f) of the Bankruptcy Code, Bankruptcy Rule 9019, applicable New York State law, the Declarations in support of the Motion, and the record of the Sale Hearing, the Diocese has set forth the legal authority necessary to support this Court's findings herein.

13.     Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Property and the Diocese Parties' rights, title, and interest therein shall upon Closing be transferred to Hartford, free and clear of all Interests (including without limitation the Interests of the Diocese Parties and any Covered Parties), and all such Interests are unconditionally and forever released and extinguished as against the Purchased Property.  Without limiting the generality of the foregoing, the sale of the Purchased Property under the Agreement shall be free and clear of all Abuse Claims (whether Consenting Abuse Claims or Non-Participating Abuse Claims), Barred Claims, Coverage Claims, Inbound Contribution Claims, Insurer Contribution Claims, Medicare

Claims, Related Insurance Claims, Direct Action Claims, and any other Claims arising from or related in any way to an Abuse Claim or any portion of the Purchased Property.

14.    Upon Closing, all Persons (and their respective successors and assigns), including but not limited to all governmental, tax, and regulatory authorities, Diocese Parties, Entities, Covered Parties, Non-Settling Insurers, Abuse Claimants, and trade and other creditors, holding Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) against, in, or with respect to the Purchased Property, including, without limitation, such Interests arising or accruing under or out of, in connection with, or in any way relating to the transfer of the Purchased Property to Hartford, hereby are forever barred, estopped, and permanently enjoined from asserting such Person's or Entity's Interests against the Purchased Property, the Hartford Released Parties, or Hartford's Related Persons. Effective upon Closing none of the Hartford Released Parties or any of Hartford's Related Persons shall have any liability for any Claims (a) against the Diocese, its estate, or any of the Covered Parties or other Diocese Parties or (b) in respect of the Purchased Property.

15.    The transfer of the Purchased Property to Hartford pursuant to the Agreement constitutes a legal, valid, and effective transfer of the Purchased Property, and shall vest Hartford with all right, title, and interest of the Diocese and the Diocese Parties in and to the Purchased Property. Upon the occurrence of the Settlement Agreement Effective Date and payment of the Settlement Amount by Hartford, the Subject Policies shall be terminated and no longer in force or effect, exhausted in retrospect as to all coverages, and all Interests the Diocese or any other Person or Entity (including without limitation any of the other Diocese Parties or Covered Parties) may have had, may presently have, or may in the future have, in such Purchased Property are released and extinguished, and all such Persons (including without limitation the Diocese Parties and Covered Parties) and Entities hereby are forever barred, estopped, and permanently enjoined from asserting any such Interest against the Purchased Property, the Hartford Released Parties, and/or any of Hartford's Related Persons. Hartford's payment of the Settlement Amount constitutes full and complete performance of any and all obligations under the Purchased Property, including without limitation any performance owed to the Diocese Parties or Covered Parties, and exhausts all limits of liability of the Purchased Property.

16.    Upon occurrence of the Settlement Agreement Effective Date:

(a)    all Interests the Diocese Parties may have had, may presently have, or in the future may have in the Purchased Property, as applicable, are released pursuant to the terms of the Agreement; and

(b)    the Diocese Parties accept the Settlement Amount in full and complete satisfaction of Hartford's past, present, and future obligations, including, without limitation, any obligations to any of the Diocese Parties under such Purchased Property or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever arising out of or related in any way to such Purchased Property (including Coverage Claims), whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether such Claims arise from, relate to, or are in connection with the Abuse Claims, Barred Claims, or otherwise.

**No Successor Liability**

17.    The transfer of the Purchased Property to Hartford shall not result in any Hartford Released Parties, any of Hartford's Related Persons, or the Purchased Property having any of the following: (a) any liability or responsibility for Interests in or Claims against the Diocese or against an insider of the Diocese; (b) liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any Claims or Interests; or (c) any liability or responsibility to the Diocese except as is expressly set forth in the Agreement.

18.    Without limiting the generality of the foregoing, none of the Hartford Released Parties or any Hartford's Related Persons shall have any successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, successor or successor employer liability, *de facto* merger or joint venture, mere continuation or substantial continuity, whether known or unknown as of Closing, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between the Diocese and any non-debtor subsidiary or affiliate (including, without limitation, any Diocese Party), liabilities relating to or arising from any environmental laws, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Purchased Property prior to Closing.

**Settling Insurer Injunction**

19.    Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, and in consideration of the undertakings of Hartford pursuant to the Agreement, including Hartford's purchase of the Purchased Property free and clear of all Claims and Interests pursuant to Section 363(f) of the Bankruptcy Code as provided herein, any and all Persons and Entities that have held, now hold, or who may in the future hold any Claims or Interests (including without limitation all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Abuse Claimants, perpetrators, Covered Parties, any other additional insureds or assureds or named insureds or assureds, Non-Settling Insurers, the Diocese Parties, and all others holding Claims or Interests of any kind or nature whatsoever, including, without limitation, those Claims released or to be released pursuant to the Agreement), which Claims or Interests are under, arise out of, relate to, or connect in any way with an Abuse Claim or any of the Purchased Property, including, without limitation, (a) Abuse Claims (whether Consenting Abuse Claims or Non-Participating Abuse Claims), Unknown Abuse Claims, Coverage Claims, Inbound Contribution Claims, Insurer Contribution Claims, Related Insurance Claims, Direct Action Claims, Tort Actions, and all other Channeled Claims, (b) the payment of any of the Claims identified previously, including, without limitation, Medicare Claims, and (c) all other Barred Claims or Interests, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Claim or Interest against any of (x) the Hartford Released Parties or Hartford's Related Persons, (y) the assets or property of any Hartford Released Parties or any of Hartford's Related Persons, or (z) the Purchased Property, including by:

(i)      commencing or continuing in any manner any action or other proceeding of any kind against any Hartford Released Parties, any of Hartford's Related Persons, or against the property or assets of any of the foregoing;

(ii)      enforcing, attaching, collecting, or recovering, or seeking to accomplish any of the preceding, by any manner or means, any judgment, award, decree, or order against any Hartford Released Parties, any of Hartford's Related Persons, or against the property or assets of any of the foregoing;

(iii)      creating, perfecting, or enforcing, or seeking to accomplish any of the preceding, any lien of any kind against any Hartford Released Parties, any of Hartford's Related Persons, or against the property or assets of any of the foregoing;

(iv)      asserting, implementing, or effectuating any such Claim of any kind against: (A) any obligation due to any of the Hartford Released Parties or Hartford's Related Persons, (B) any of the Hartford Released Parties or Hartford's Related Persons, or (C) the property or assets of any of Hartford Released Parties or Hartford's Related Persons;

(v)      taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of this Order; and

(vi)      asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against an obligation due to any Hartford Released Parties, any of Hartford's Related Persons, or against the property or assets of any of the foregoing.

The actions described in this Paragraph 19 are "**Enjoined Actions**," and the injunction set forth herein is the "**Settling Insurer Injunction**."  The Settling Insurer Injunction shall be a permanent injunction against the Enjoined Actions and may not be modified, dissolved, or terminated.

20.      The Settling Insurer Injunction shall be effective upon the occurrence of the Settlement Agreement Effective Date and Hartford's payment of the Settlement Amount to the Trust pursuant to the terms of the Agreement.  The Settling Insurer Injunction bars pursuit of the above referenced Claims and/or Interests against the Hartford Released Parties, Hartford's Related Persons, or the property or assets of each (including, without limitation, the Purchased Property), but against no other person or thing.  In a successful action to enforce this Settling Insurer Injunction in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

21.      The Settling Insurer Injunction shall not enjoin (a) the right of any Person or Entity against the Trust or a Non-Settling Insurer, or (b) the Trustee from enforcing the Trust Documents.

## Reservation

22.      Nothing in this Order shall serve as a release of any claim or cause of action against Hartford, or any of its respective Related Persons regarding disclosure of any information from

any "Sexual Abuse Proof of Claim Form" (as defined in the Bar Date Order).  All parties' rights regarding such claims are reserved.

**Additional Provisions**

23.     From and after the date hereof, no Person or Entity shall take or cause to be taken any action that would adversely affect or interfere with the transfer of the Purchased Property to Hartford in accordance with the terms of the Agreements and this Order.

24.     This Court hereby retains jurisdiction, regardless of whether a Chapter 11 plan has been confirmed in the Bankruptcy Case and consummated and irrespective of the provisions of any such plan or order confirming such plan, to enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder, and of any agreement(s) executed in connection therewith in all respects, including but not limited to retaining jurisdiction to: (a) compel delivery of the Purchased Property to Hartford in accordance with the terms of the Agreement; (b) resolve any dispute, controversy, or claim arising under or related to the Agreement, or the breach thereof; and (c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto.

25.     Nothing contained in any plan confirmed in the Bankruptcy Case or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

26.     This Order shall not limit or preclude the entry or effectiveness of any additional releases or injunctions that may be granted protecting the Hartford Released Parties and/or Hartford's Related Persons in connection with, or as part of, any order confirming a Chapter 11 plan.

27.     The transactions contemplated by the Agreement are undertaken by Hartford in good faith, as that term is used in Section 363(m) of the Bankruptcy Code.  Hartford is a good faith purchaser of the Purchased Property and is entitled to all the protections afforded by Section 363(m) of the Bankruptcy Code.  Accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction to Hartford.

28.     Hartford has given substantial consideration under the Agreement for the benefit of the Diocese, its estate, and creditors, along with the other Diocese Parties and Covered Parties. Such consideration given by Hartford constitutes valid and valuable consideration for the Purchased Property and the releases set forth in the Agreement, including, without limitation, the extinguishment and release of all Interests pursuant to this Order.  The consideration provided by Hartford for the Purchased Property under the Agreement is fair and reasonable; accordingly, the purchase may not be avoided under Section 363(n) of the Bankruptcy Code.

29.     The terms and provisions of the Agreement and this Order shall be binding notwithstanding any subsequent appointment of any Trustee(s) or receiver(s) under any Chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such Trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Diocese, its estate, its creditors, or any examiner(s) or receiver(s).

22015797.v2

30.     The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement and the Parties' performance thereof be authorized and approved in its entirety.

31.     Pursuant to the provisions of the Agreement, each of the Diocese Parties and Hartford shall be authorized to take, or cause to be taken, all appropriate action to do, or cause to be done, all things necessary, proper, or advisable under applicable law or otherwise to consummate and make effective the transactions contemplated by the Agreement.

32.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33.     All obligations of the Diocese under the Agreement shall be deemed administrative expenses of the estate under Sections 503(b) and 507(a)(1) of the Bankruptcy Code.

34.     Each and every federal, state, and local governmental agency or department is hereby directed to accept this Order in lieu of any document necessary to consummate the transactions contemplated by the Agreement and this Order.

35.     The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the Parties, in a writing signed by the applicable Parties, and in accordance with the terms thereof, without further order of this Court; *provided* that such modification, amendment, or supplement does not constitute a material change to the relief sought in the Motion and approved by this Order.

### # # #

## EXHIBIT B-1
### Form of Channeling Injunction

IN CONSIDERATION OF THE UNDERTAKINGS OF THE PROTECTED PARTIES HEREIN, THEIR CONTRIBUTIONS TO THE TRUST, AND OTHER CONSIDERATION GIVEN, AND, WHERE APPLICABLE, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE DIOCESE AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE PROTECTED PARTIES, AND TO SUPPLEMENT WHERE NECESSARY THE INJUNCTIVE EFFECT OF THE DISCHARGE AS PROVIDED IN SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE:

A. ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST AND SHALL BE TREATED, ADMINISTERED, DETERMINED, AND RESOLVED UNDER THE PROCEDURES AND PROTOCOLS AND IN THE AMOUNTS ESTABLISHED UNDER THE PLAN, THE ALLOCATION PROTOCOL, AND THE TRUST AGREEMENT AS THE SOLE AND EXCLUSIVE REMEDY FOR ALL HOLDERS OF CHANNELED CLAIMS.

B. ALL PERSONS WHO HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIMS AGAINST THE PROTECTED PARTIES, INCLUDING:

(I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR AGAINST THE PROPERTY OF ANY OF THE PROTECTED PARTIES;

(II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES;

(III) CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, ANY LIEN OF ANY KIND RELATING TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF THE PROTECTED PARTIES;

      **(IV)    ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST:**

          **(A)    ANY OBLIGATION DUE ANY OF THE PROTECTED PARTIES;**

          **(B)    ANY OF THE PROTECTED PARTIES; OR**

          **(C)    THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

      **(V)    TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THE PLAN; AND**

      **(VI)    ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST AN OBLIGATION DUE TO ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

      **NOTWITHSTANDING ANYTHING TO THE CONTRARY IN SECTION 12 OF THE PLAN OR ELSEWHERE IN THE PLAN, LITIGATION CLAIMANTS AND THE TRUST SHALL BE PERMITTED TO NAME THE DIOCESE AND ANY PARTICIPATING PARTY IN ANY PROCEEDING TO RESOLVE WHETHER THE DIOCESE OR SUCH PARTICIPATING PARTY HAS LIABILITY FOR A LITIGATION CLAIM, AND THE AMOUNT OF ANY SUCH LIABILITY, FOR THE PURPOSE OF OBTAINING INSURANCE COVERAGE FROM NON-SETTLING INSURERS UNDER THE NON-SETTLING INSURER POLICIES, AND FOR THE PURPOSE OF PURSUING ANY AND ALL INSURANCE CLAIMS AGAINST THE NON-SETTLING INSURERS. ANY SUCH JUDGMENTS OR AWARDS WILL BE TURNED OVER TO THE TRUST FOR DISTRIBUTION IN ACCORDANCE WITH SECTION 4.6 OF THE PLAN. FOR THE AVOIDANCE OF DOUBT, RECOURSE WITH RESPECT TO ANY AND ALL LITIGATION CLAIMS IS EXPRESSLY LIMITED TO THE PROCEEDS OF NON-SETTLING INSURER POLICIES AND ALL OTHER COSTS AND/OR DAMAGES THAT MAY BE RECOVERABLE AGAINST ANY NON-SETTLING INSURERS, AS AND TO THE EXTENT PERMITTED BY THE PLAN.**

      **THE CHANNELING INJUNCTION IS AN INTEGRAL PART OF THE PLAN AND IS ESSENTIAL TO THE PLAN'S CONSUMMATION AND IMPLEMENTATION.  IT IS INTENDED THAT THE CHANNELING OF THE CHANNELED CLAIMS AS PROVIDED IN SECTION 12.3 OF THE PLAN SHALL INURE TO THE BENEFIT OF THE PROTECTED PARTIES.  IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF SECTION 12.3 OF THE PLAN IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.**

## EXHIBIT B-2
## Form of Gatekeeper Injunction

To the extent permitted by law, and subject in all respects to Section 12 of the Plan, no Enjoined Party may commence or pursue against any Protected Party (a) an Abuse Claim or (b) any other Claim or cause of action that arose, arises from, or is related to an Abuse Claim, the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind-down or reorganization of the business of the Diocese, the administration of the Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or cause of action represents a colorable Claim against a Protected Party and (ii) subject in all respects to the Channeling Injunction and Settling Insurer Injunction, specifically authorizing such Enjoined Party to bring such Claim or cause of action against any such Protected Party.  The Bankruptcy Court will have jurisdiction to determine whether a Claim or cause of action is colorable and, to the extent legally permissible and as provided for in Section 14 of the Plan, have jurisdiction to adjudicate the underlying colorable Claim or cause of action.

For the avoidance of doubt, the Gatekeeper Injunction in this Section of the Plan does not apply to Claims commenced for the purpose of seeking recovery from Non-Settling Insurers.