So Ordered.

Signed this 24 day of September, 2025.



_____

Wendy A. Kinsella

United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of Syracuse, New York,<br><br>　　　　　　　　　　　　　Debtor. | Case No.: 20-30663-5<br><br>Chapter 11<br><br>Hon. Wendy A. Kinsella |

**ORDER (I) APPROVING THE LONDON MARKET INSURERS' SETTLEMENT AGREEMENT AND RELEASE; (II) APPROVING THE SALE OF THE SUBJECT INSURANCE POLICIES FREE AND CLEAR; (III) ENJOINING CLAIMS AND <u>INTEREST; AND (IV) GRANTING RELATED RELIEF</u>**

Upon the *Motion for Entry of Orders Pursuant to Sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs With Certain Insurers and Granting Related Relief*, dated July 2, 2025, ("**Motion**")[1] of The Roman Catholic Diocese of Syracuse, New York, the debtor-in-possession in the captioned Chapter 11 case ("**Diocese**"), for entry of an order approving, inter alia, the Settlement Agreement

---

[1]　　Capitalized terms used in this Order that are not defined herein shall have the meanings given to those terms in the Agreement (as defined below).

1

and Release attached to the Motion as **Exhibit B** ("**Agreement**"), including[2] an insurance policy buyback free and clear of Claims and Interests, and an enforcing injunction, by and among the Diocese, the DOS Signatories, and the London Market Insurers, pursuant to 11 U.S.C. §§ 105 and 363, and Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") 2002(a)(2), 6004, and 9019, as set forth in the Agreement; and the Court having reviewed the Motion and the Agreement; and it appearing that the Diocese provided due and adequate notice of the Motion and Agreement to all Persons entitled thereto, and that no other or further notice need be given; the Court on August 27, 2025, at 10 a.m., held a hearing to consider the relief requested in the Motion ("**Sale Hearing**"); and upon consideration of the record of the Sale Hearing and after due deliberation, including, for the reasons stated by the Court on the record of the Sale Hearing, it appearing that the relief requested in the Motion and granted herein is in the best interests of the Diocese's estate, its creditors, and other parties in interest; and good and sufficient cause appearing therefor;

**THE COURT FINDS AND DETERMINES THAT:**

      A.      The Court has jurisdiction over the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (N). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

      B.      The predicates for the relief sought in the Motion are 11 U.S.C. §§ 105 and 363 and Bankruptcy Rules 2002, 6004, and 9019.

      C.      Proper, timely, adequate, and sufficient notice of the Sale Hearing and Motion and the relief requested therein, including to: (i) all Claimants, including Abuse Claimants, against the Diocese, any DOS Signatory, or any Participating Party, or their attorneys, if any, who are known to the Diocese or any DOS Signatory, including Claimants and co-defendants named in any proof of claim filed in the Bankruptcy Case or any Abuse Action, as set forth on Attachment N, and Attachment P of the Agreement; (ii) the Committee; (iii) the Unknown Claimants Representative; (iv) each DOS Signatory and each Participating Party; (v) all Persons listed in the Catholic Directory, as set forth on Attachment M, hereto; (vi) each Insurer; (vii) the Secretary of the Department of Health and Human Services; (viii) CMS; (ix) the United States Attorney for the Northern District of New York; (x) each Person who, in the opinion of any Party, might reasonably be expected to be affected by the transactions contemplated herein; (xi) all other Persons as directed by the Court; and (xii) all other Persons that must be served with written notice under Bankruptcy Rule 2002, including all Persons who have filed notices of appearance in the Bankruptcy Case. *See* (Dkt. Nos. 2964, 2978, 2985, 2995, 3004). Notice has also been given by publication in *Democrat & Chronicle, The Binghamton Press and Sun Bulletin, Times Union, The Observer Dispatch, The New York Times, The Post-Standard, North Country Catholic, The Evangelist, and The Catholic Sun*, between July 14, 2025, and July 30, 2025, as set forth in the Certificates of Publication (Dkt. No. 2996). The notices described above were good, sufficient,

---

[2]     The word "including", as used herein, in accordance with Section 102(3) of the Bankruptcy Code, is not limiting.

and appropriate under the circumstances, and no other notice of the Motion or Sale Hearing is required.

  D. The disclosures made by the Diocese concerning the Agreement and the Sale Hearing were good, complete, and adequate.

  E. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested Persons.

  F. The Diocese has the full corporate power and authority to consummate the Agreement, and all other documents contemplated thereby, and no consents or approvals, other than those expressly provided for in the Agreement, are required for the Diocese to consummate it.

  G. Approval of the Agreement and its consummation are in the best interests of the Diocese's estate, its creditors (specifically including the Abuse Claimants), and other parties-in-interest, as specified in Paragraph H.

  H. The Diocese has demonstrated (i) good, sufficient, and sound business purpose and justification and compelling circumstances to enter into the Agreement pursuant to 11 U.S.C. 363(b) and (ii) the Agreement is fair, reasonable, and in the best interests of the Diocese's estate and creditors pursuant to Bankruptcy Rule 9019. Among other things, the Diocese has demonstrated that: the proceeds of the Agreement will benefit Abuse Claimants; the Agreement is necessary and appropriate to realize the value of the Purchased Property and maximize the value of the Diocese's estate; the probability of success for the Diocese's estate in litigation over the matters resolved by the Agreement, including the Insurance Coverage Action, is uncertain; litigation of the matters resolved by the Agreement would be complex and costly to the Diocese's estate; and the Settlement Amount is within the reasonable range of potential litigation outcomes. The Agreement constitutes a reasonable and sound exercise of the Diocese's business judgment and merits approval.

  I. The Agreement was negotiated, proposed, and entered without collusion, in good faith, and from arm's length bargaining positions. The Agreement resulted from a lengthy mediation that proceeded pursuant to an order of the Court. The London Market Insurers are not insiders or affiliates of the Diocese, as those terms are defined in 11 U.S.C. §101. None of the Diocese, the DOS Signatories, or the London Market Insurers have engaged in any conduct that would: (i) cause or permit the avoidance of the Agreement under 11 U.S.C. § 363(n); (ii) cause or permit the imposition of any costs or damages (including attorneys' fees or punitive damages) under 11 U.S.C. § 363(n); or (iii) prevent the application of 11 U.S.C. § 363(n).

  J. The London Market Insurers are good faith purchasers of the Purchased Property under Section 363(m) of the Bankruptcy Code and, as such, are entitled to all of the protections afforded thereby, in that, among other things: (i) all payments to be made by or to the London Market Insurers, and other agreements or arrangements entered into by the London Market Insurers, in connection with the Agreement have been disclosed; (ii) the London Market Insurers neither induced nor caused the Diocese's Chapter 11 filing; (iii) the negotiation and execution of the Agreement and any other agreements or instruments related thereto was in good faith, the arm's

length transaction between the London Market Insurers, and the Diocese and the DOS Signatories was the product of mediation, and all Parties were, or had the opportunity to be, represented by counsel; and (iv) the London Market Insurers have not violated Section 363(n) of the Bankruptcy Code by any action or inaction. The London Market Insurers have at all times acted in good faith with respect to the Agreement and will continue to act in good faith, within the meaning of Section 363(m) of the Bankruptcy Code, in performing their obligations under the Agreement.

K. The terms and conditions of the Agreement are fair and reasonable. The Settlement Amount provided by the London Market Insurers pursuant to the Agreement (i) is fair and reasonable; (ii) monetizes the Purchased Property at the highest and best amount; (iii) will provide a higher and more certain recovery for the Abuse Claimants than would be provided by any other practical available alternative (including litigation of the Insurance Coverage Action) given the complexity, cost, and uncertainty of such alternatives; and (iv) constitutes reasonably equivalent value (as those terms are defined in the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and Section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law. The Settlement Amount is within the reasonable range of potential litigation outcomes, and the Diocese's determination to accept the Settlement Amount and otherwise enter into the Agreement is a valid and sound exercise of the Diocese's business judgment and consistent with the Diocese's fiduciary duties.

L. The London Market Insurers are not: (i) mere continuations of the Diocese or its estate, or any of the DOS Signatories, nor is there any continuity of enterprise between the London Market Insurers and the Diocese or the DOS Signatories; (ii) holding the London Market Insurers out to the public to be a continuation of the Diocese or any of the DOS Signatories; and (iii) successors to the Diocese, its estate, or any of the DOS Signatories, for any purpose, and the Agreement does not amount to a consolidation, merger, or *de facto* merger of the London Market Insurers and DOS, or any of the DOS Signatories.

M. The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. None of the London Market Insurers, the Diocese, or any of the DOS Signatories are fraudulently entering into the Sale Transaction.

N. The transfer of the Purchased Property to the London Market Insurers (i) does not constitute an avoidable transfer under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law; and (ii) does not and will not subject the London Market Insurers to any liability whatsoever with respect to the Diocese's operation prior to the Settlement Payment Date or thereafter.

O. The London Market Insurers have agreed to purchase the Purchased Property pursuant to their Agreement and this Order; the London Market Insurers have not agreed to purchase, and are not purchasing, any other assets of the Diocese's estate. The London Market Insurers have not agreed to assume, and after the Full Payment Date shall have no obligations with respect to, any liabilities of the Diocese, its subsidiaries or affiliates, or the DOS Signatories. The London Market Insurers are not assuming and shall have no liability for: (i) any Claims arising from or relating to Abuse, the Purchased Property, or the Bankruptcy Case; and (ii) the Diocese's

22305524.v2

and any DOS Signatories' obligations to (a) Abuse Claimants, or any other creditors (including Unknown Abuse Claims), or (b) the Diocese's, or any DOS Signatories' employees.

P. The Purchased Property constitutes property of the Diocese's estate, and the Diocese holds good title to the Purchased Property. The transfer of the Purchased Property to the London Market Insurers pursuant to the Agreement will be a legal, valid, binding, and effective transfer of the Purchased Property, and will vest the London Market Insurers with all right, title, and interest of the Diocese and the DOS Signatories in and to the Purchased Property, in each case free and clear of all Interests (including any Interests of the Diocese and the DOS Signatories, other named or additional insureds, or those with direct action rights against the Purchased Property). Upon the Full Payment Date, the London Market Insurers shall have no liability for any Claims against or liabilities of the Diocese, its estate, or the DOS Signatories. Upon the Full Payment Date, the Purchased Property (i) shall be amended to include the Sexual Abuse Exclusion, Time-Bar Exclusion and Cancellation Endorsement; and (ii) immediately thereafter shall be deemed terminated, extinguished, and of no further force and effect.

Q. The Diocese may sell the Purchased Property free and clear of all Interests, of whatever kind, nature, or description in, against, or with respect to any of the Purchased Property, including Abuse Claims, Coverage Claims, and Extra-Contractual Claims, and all other Barred Claims, because one or more of the standards set forth in Bankruptcy Code Sections 363(f)(1) – (5) has been satisfied with regard to each such Interest, including: (i) Persons with Interests in or with respect to the Purchased Property who did not object, or who withdrew their objections to the Agreement or the Motion have waived their right to object to the sale of the Purchased Property free and clear of such Persons' Interests in the Purchased Property pursuant to Section 363(f)(2) of the Bankruptcy Code; and (ii) Persons with Interests in or with respect to the Purchased Property who objected to the Motion and did not withdraw any such objection (a) are the holders of Interests subject to *bona fide* dispute under Bankruptcy Code Section 363(f)(4) and/or (b) can be compelled to accept a monetary satisfaction of their Interests within the meaning of Section 363(f)(5) of the Bankruptcy Code.

R. If the sale of the Purchased Property were not free and clear of Interests, or if the LMI Entities and/or the LMI Related Persons would, or in the future could, be liable for any of the Interests, the London Market Insurers would not have entered into the Agreement or agreed to pay the Settlement Amount, thus adversely affecting the Diocese, its estate, and its creditors (including the Abuse Claimants), and the DOS Signatories.

S. Issuing an injunction under Section 105(a) of the Bankruptcy Code is essential to give effect to the sale of the Purchased Property to the London Market Insurers and this Order's approval of such sale free and clear of Interests pursuant to Section 363(f) of the Bankruptcy Code. The Settling Insurer Injunction, set forth in Paragraph 19 below, not only is a necessary prerequisite for the London Market Insurers' assent to the terms and conditions of the Agreement, such that the London Market Insurers would not consummate the Sale Transaction or pay the Settlement Amount in the absence of such an injunction from this Court, but also is warranted to ensure compliance with this Order.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

22305524.v2

## General Provisions

1.      The Motion is granted and approved as set forth herein.

2.      The findings of fact set forth above and conclusions of law stated herein, in addition to any findings of fact and conclusions of law stated by the Court at the Sale Hearing, shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the Motion pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3.      Any and all objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are hereby overruled on the merits with prejudice, and in each case the Person asserting the objection or reservation of rights is enjoined from taking any action against the LMI Entities or the LMI Related Persons to recover any Claim which such objecting Person has against the Diocese, its estate, or any DOS Signatory. Those Persons who did not object or who withdrew their objections to the Motion are deemed to have consented to the relief granted herein, pursuant to Section 363(f)(2) of the Bankruptcy Code. For the avoidance of doubt, nothing in this Paragraph shall be interpreted to enjoin any Person's right, if any, to appeal this Order.

## Approval of the Agreements

4.      The Agreement is approved in its entirety, pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019. The settlement and mutual release of Claims set forth in the Agreement is hereby approved pursuant to Bankruptcy Rule 9019. All factors set forth in *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007), either weigh in favor of the Agreement or do not apply.

5.      Pursuant to Section 363(b) of the Bankruptcy Code, the Diocese is authorized to perform its obligations under and in accordance with the terms and conditions of the Agreement, and the Diocese shall always act in accordance with the terms thereof.

6.      The Parties are authorized to execute and deliver, and empowered to perform under, consummate, and implement the Agreement, together with all additional instruments and documents that may be reasonably necessary, convenient, or desirable to implement the Agreement and effectuate the provisions of this Order and the transactions approved hereby, and to take all further actions as may be requested by the London Market Insurers for the purpose of assigning, transferring, granting, conveying, and conferring to the London Market Insurers or reducing to the London Market Insurers' possession, the Purchased Property, or as may be necessary or appropriate to the perform the obligations contemplated by the Agreement.

7.      The London Market Insurers are authorized and directed to pay the Settlement Amount to the Trust, under, and subject to, the terms and conditions of the Agreement.

8.      The Settlement Amount provided by the London Market Insurers for the Purchased Property constitutes reasonably equivalent value and fair consideration under the Bankruptcy

22305524.v2

Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

9. No LMI Entity or LMI Related Person shall be required to seek or obtain relief from the automatic stay under Section 362 of the Bankruptcy Code to enforce any of its rights or remedies under the Agreement or any other document related to the Agreement. The automatic stay imposed by Section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order; *provided, however*, that this Court shall retain jurisdiction over all disputes with respect thereto.

10. This Order and the Agreement shall be binding in all respects upon: (a) the Diocese and the DOS Signatories; (b) the Diocese's estate; (c) all Claimants; (d) all holders of Interests whether known or unknown (including any Non-Settling Insurers) in, to, or against all or any portion of the Purchased Property; (e) the LMI Entities and LMI Related Persons; (f) the Purchased Property; (g) the Unknown Claimant Representative; (h) any trustee that may be appointed in the Bankruptcy Case, whether pursuant to any plan of reorganization or liquidation (including the Trustee), under Section 1104 of the Bankruptcy Code, or upon a conversion of this Bankruptcy Case under Chapter 7 of the Bankruptcy Code; and (i) all Persons receiving notice (or deemed to have received notice pursuant to this Order) of the Motion or the Sale Hearing.

**Transfer of the Assets**

11. The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Diocese may sell the Purchased Property free and clear of any Interests.

12. Pursuant to Sections 105 and 363(b) and (f) of the Bankruptcy Code, Bankruptcy Rule 9019, applicable New York State law, the *Declaration of Stephen Breen in Support of the Diocese's Motion for Entry of Orders Pursuant to Sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs with Certain Insurers and Granting Related Relief* (Dkt. No. 3019), the *Declaration of James R. Murray in Support of the Diocese's Motion for Entry of Orders Pursuant to Sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs with Certain Insurers and Granting Related Relief* (Dkt. No. 3020), and the record of the Sale Hearing, the Diocese has set forth the factual predicates, and the legal authority, necessary to support this Court's findings and conclusions herein.

13. Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Property and the Diocese's and the DOS Signatories' rights, title, and interest therein shall upon the Full Payment Date be transferred to the London Market Insurers, free and clear of all Interests, and all such Interests in, to, and against the Purchased Property are unconditionally and forever released and extinguished. The sale of the Purchased Property under the Agreement shall be free and clear of all Interests of all Persons, including Abuse Claims, Barred Claims, Coverage Claims, Inbound Contribution Claims, Insurer Contribution Claims, Medicare Claims, Related Insurance Claims, Direct Action Claims, and any other Claims arising from or relating to, in any way, an Abuse Claim or any portion of the Purchased Property.

7

22305524.v2

14. Upon the Full Payment Date, all Persons (and their respective successors and assigns), holding Interests of any type or nature whatsoever against, in, or with respect to the Purchased Property, including such Interests arising or accruing under or out of, in connection with, or in any way relating to the transfer of the Purchased Property to the London Market Insurers, hereby are forever barred, estopped, and permanently enjoined from asserting such Interests against the Purchased Property, the LMI Entities, or LMI's Related Persons. Effective upon the Full Payment Date none of the LMI Entities or LMI Related Persons shall have any liability for any Claims (a) against the Diocese, its estate, or any of the DOS Signatories, including Abuse Claims; or (b) in respect of the Purchased Property.

15. The transfer of the Purchased Property to the London Market Insurers pursuant to the Agreement constitutes a legal, valid, and effective transfer of the Purchased Property, and shall vest the London Market Insurers with all right, title, and interest of the Diocese and the DOS Signatories in and to the Purchased Property. Contemporaneous with the Full Payment Date and payment of the Settlement Amount, the Subject Insurance Policies shall be amended to include the Sexual Abuse Exclusion, Time-Bar Exclusion, and Cancellation Endorsement; immediately thereafter, the Subject Insurance Policies shall be terminated and no longer in force or effect, exhausted as to all coverages, and all Interests in the Purchased Property, that the Diocese or any other Person may have had, presently have, or in the future have, are released and extinguished, and all such Persons hereby are forever barred, estopped, and permanently enjoined from asserting any such Interest against the Purchased Property, the LMI Entities, and/or any of the LMI Related Persons. The London Market Insurers' payment of the Settlement Amount constitutes full and complete performance of any and all obligations under the Purchased Property, including any performance owed to the Diocese and the DOS Signatories, and exhausts all limits of liability of the Purchased Property.

16. Upon occurrence of the Full Payment Date:

   a. all Interests the Diocese or the DOS Signatories may have had, presently have, or in the future have in the Purchased Property, as applicable, are released pursuant to the terms of the Agreement; and

   b. the Diocese and the DOS Signatories accept the Settlement Amount in full and complete satisfaction of the London Market Insurers past, present, and future obligations, including any obligations under such Purchased Property or arising therefrom, as to any and all Coverage Claims or policy benefits, of any nature whatsoever, arising out of or related in any way to the Purchased Property and any Extra-Contractual Claims, of any type or nature whatsoever.

**No Successor Liability**

17. The transfer of the Purchased Property to the London Market Insurers shall not result in any LMI Entity, any LMI Related Person, or the Purchased Property having any of the following: (a) any liability or responsibility for Interests in or Claims against the Diocese, DOS Signatories, or against an insider of the Diocese; (b) liability whatsoever with respect to or be

8

required to satisfy in any manner any Claims or Interests; or (c) any liability or responsibility to the Diocese or DOS Signatories except as is expressly set forth in the Agreement.

18.    No LMI Entity or LMI Related Person shall have any successor or vicarious liabilities of any kind or character, whether known or unknown as of the Settlement Payment Date.

19.    **Settling Insurer Injunction**

PURSUANT TO SECTIONS 105(A), AND 363 OF THE BANKRUPTCY CODE, AND IN CONSIDERATION OF THE UNDERTAKINGS OF THE LONDON MARKET INSURERS PURSUANT TO THE SETTLEMENT AGREEMENT, INCLUDING THE SETTLING LONDON MARKET INSURERS' PURCHASE OF THE SUBJECT INSURANCE POLICIES FREE AND CLEAR OF ALL CLAIMS AND INTERESTS PURSUANT TO SECTION 363(F) OF THE BANKRUPTCY CODE, ANY AND ALL PERSONS WHO HAVE HELD, NOW HOLD, OR WHO MAY IN THE FUTURE HOLD ANY CLAIMS OR INTERESTS (INCLUDING, WITHOUT LIMITATION, ALL DEBT HOLDERS, ALL EQUITY HOLDERS, GOVERNMENTAL, TAX AND REGULATORY AUTHORITIES, LENDERS, TRADE AND OTHER CREDITORS, ABUSE CLAIMANTS, HOLDERS OF UNKNOWN CLAIMS, PERPETRATORS, NON-SETTLING INSURERS, THE DIOCESE, THE PARTICIPATING PARTIES, AND ALL OTHERS HOLDING INTERESTS OF ANY KIND OR NATURE WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THOSE CLAIMS RELEASED OR TO BE RELEASED PURSUANT TO THE SETTLEMENT AGREEMENT) AGAINST ANY OF THE PROTECTED PARTIES, WHICH CLAIMS ARISE UNDER OR RELATE (DIRECTLY OR INDIRECTLY) TO ANY OF THE SUBJECT INSURANCE POLICIES, INCLUDING, WITHOUT LIMITATION, (A) ABUSE CLAIMS, UNKNOWN CLAIMS, CLASS 5 CLAIMS, INBOUND CONTRIBUTION CLAIMS, ALL OTHER CHANNELED CLAIMS, AND RELATED INSURANCE CLAIMS, (B) THE PAYMENT OF ANY OF THE CLAIMS IDENTIFIED PREVIOUSLY INCLUDING, WITHOUT LIMITATION MEDICARE CLAIMS, AND (C) EXTRA-CONTRACTUAL CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, TO ASSERT, ENFORCE OR ATTEMPT TO ASSERT OR ENFORCE ANY SUCH CLAIM OR INTEREST AGAINST THE LMI ENTITIES, LMI RELATED PERSONS, ANY OF THE LMI ENTITIES' OR ANY OF THE LMI RELATED PERSONS' ASSETS, OR PROPERTY, OR ANY OF THE SUBJECT INSURANCE POLICIES, INCLUDING, WITHOUT LIMITATION, BY:

(I)    COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY OF THE LMI ENTITIES OR LMI RELATED PERSONS OR AGAINST THE PROPERTY OF ANY OF THE LMI ENTITIES OR LMI RELATED PERSONS;

(II)    ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST ANY OF

22305524.v2

THE LMI ENTITIES, LMI RELATED PERSONS, OR THE PROPERTY OF ANY OF THE LMI ENTITIES OR LMI RELATED PERSONS;

(III) CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, ANY LIEN OF ANY KIND AGAINST ANY OF THE LMI ENTITIES, LMI RELATED PERSONS, OR THE PROPERTY OF THE LMI ENTITIES OR LMI RELATED PERSONS;

(IV) ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY SUCH CLAIM OF ANY KIND AGAINST:

    (A) ANY OBLIGATION DUE ANY OF THE LMI ENTITIES OR LMI RELATED PERSONS;

    (B) ANY OF THE LMI ENTITIES OR LMI RELATED PERSONS; OR

    (C) THE PROPERTY OF ANY OF THE LMI ENTITIES OR LMI RELATED PERSONS.

(V) TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THE SETTLEMENT AGREEMENT; AND

(VI) ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST AN OBLIGATION DUE TO ANY OF THE LMI ENTITIES, LMI RELATED PERSONS, OR THE PROPERTY OF ANY OF THE LMI ENTITIES OR LMI RELATED PERSONS.

THE SETTLING INSURER INJUNCTION WILL BE EFFECTIVE WITH RESPECT TO THE LMI ENTITIES OR LMI RELATED PERSONS ONLY AS OF THE FULL PAYMENT DATE, PURSUANT TO THE TERMS OF THE SETTLEMENT AGREEMENT. THE SETTLING INSURER INJUNCTION BARS PURSUIT OF THE ABOVEREFERENCED CLAIMS AND/OR INTERESTS AGAINST THE LMI ENTITIES OR LMI RELATED PERSONS, THE SUBJECT INSURANCE POLICIES, BUT AGAINST NO OTHER PERSON OR THING; PROVIDED, HOWEVER, NOTHING IN THIS SETTLING INSURER INJUNCTION SHALL LIMIT, OR BE DEEMED OR OTHERWISE INTERPRETED TO LIMIT, THE SCOPE OF THE DISCHARGE OR CHANNELING INJUNCTION IN FAVOR OF THE PROTECTED PARTIES.

THE FOREGOING INJUNCTIVE PROVISIONS ARE AN INTEGRAL PART OF THE PLAN AND ARE ESSENTIAL TO ITS IMPLEMENTATION. THE SETTLING INSURER INJUNCTION SHALL NOT APPLY TO A NON-SETTLING INSURER.

20. The Settling Insurer Injunction bars pursuit of the above referenced Claims and/or Interests against the LMI Entities, the LMI Related Persons, and the property or assets of each (including the Purchased Property), but against no other Person or thing. In a successful action to

enforce this Settling Insurer Injunction in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

21.     The Settling Insurer Injunction shall not enjoin (a) the right of any Person against the Trust or a Non-Settling Insurer; or (b) the Trustee from enforcing the Trust Documents.

### Additional Provisions

22.     From and after the date hereof, no Person shall take or cause to be taken any action that would adversely affect or interfere with the transfer of the Purchased Property to the London Market Insurers, in accordance with the terms of the Agreement and this Order.

23.     This Court hereby retains jurisdiction, regardless of whether a Chapter 11 plan has been confirmed in the Bankruptcy Case and consummated and irrespective of the provisions of any such plan or order confirming such plan, to enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder, and of any agreement(s) executed in connection therewith in all respects, including retaining jurisdiction to: (a) compel delivery of the Purchased Property to the London Market Insurers in accordance with the terms of the Agreement; (b) resolve any dispute, controversy, or Claim arising under or related to the Agreement, or the breach thereof; and (c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto.

24.     Nothing contained in any plan confirmed in the Bankruptcy Case or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

25.     This Order shall not limit or preclude the entry or effectiveness of any additional releases or injunctions that may be granted protecting the LMI Entities and/or the LMI Related Persons in connection with, or as part of, any order confirming a Chapter 11 plan.

26.     The transactions contemplated by the Agreement are undertaken by the London Market Insurers in good faith, as that term is used in Section 363(m) of the Bankruptcy Code. The London Market Insurers are good faith purchasers of the Purchased Property and are entitled to all the protections afforded by Section 363(m) of the Bankruptcy Code. Accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the Agreement shall not affect the validity of the Agreement.

27.     The London Market Insurers are giving substantial consideration under the Agreement for the benefit of the Diocese, its estate, and creditors, and the DOS Signatories. Such consideration given by the London Market Insurers constitutes valid and valuable consideration for the Purchased Property and the releases set forth in the Agreement, including the extinguishment and release of all Interests pursuant to this Order. The consideration provided by the London Market Insurers for the Purchased Property under the Agreement is fair and reasonable; accordingly, the purchase may not be avoided under Section 363(n) of the Bankruptcy Code.

22305524.v2

28. The terms and provisions of the Agreement and this Order shall be binding notwithstanding any subsequent appointment of any Trustee(s), examiner(s), or receiver(s) under any Chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such Trustee(s), examiner(s), and receiver(s) and shall not be subject to rejection or avoidance by the Diocese, its estate, its creditors, or any Trustee(s), examiner(s), or receiver(s).

29. The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement and the Parties' performance thereof be authorized and approved in its entirety.

30. Pursuant to the provisions of the Agreement, each of the London Market Insurers and the Diocese shall be authorized to take, or cause to be taken, all appropriate action to do, or cause to be done, all things necessary, proper, or advisable under applicable law or otherwise to consummate and make effective the transactions contemplated by the Agreement.

31. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

32. All obligations of the Diocese under the Agreement shall be deemed administrative expenses of the estate under Sections 503(b) and 507(a)(1) of the Bankruptcy Code.

33. Each and every federal, state, and local governmental agency or department is hereby directed to accept this Order in lieu of any document necessary to consummate the transactions contemplated by the Agreement and this Order.

34. The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the Parties, only by a writing signed by the applicable Parties, and in accordance with the terms thereof, without further order of this Court; provided that such modification, amendment, or supplement does not constitute a material change to the relief sought in the Motion and approved by this Order.

**IT IS SO ORDERED.**

### 

12

22305524.v2