So Ordered.

Signed this 24 day of September, 2025.



_____

Wendy A. Kinsella

United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

---------------------------------X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **THE ROMAN CATHOLIC DIOCESE OF SYRACUSE, NEW YORK** | : | Case No. 20-30663-WAK |
| | : | |
| Debtor. | : | Re: Doc. Nos. 2946, 2974 |
| | : | |

---------------------------------X

**ORDER (I) APPROVING THE INTERSTATE SETTLEMENT AGREEMENT, RELEASE AND BUYBACK, (II) APPROVING THE SALE OF THE INTERSTATE POLICIES FREE AND CLEAR, (III) ENJOINING CLAIMS, AND (IV) GRANTING RELATED RELIEF**

Upon the motion, dated July 2, 2025 ("**Motion**")[1] of The Roman Catholic Diocese of Syracuse, New York the debtor-in-possession in the above-captioned Chapter 11 case ("**Diocese**"), for entry of an order approving the settlement agreement, releases, insurance policy buyback, and related injunction-in-aid ("**Settlement**") by and among the Diocese, the other Diocese Parties, and Interstate Fire & Casualty Company, National Surety Corporation, and Fireman's Fund Insurance Company (collectively, "**Interstate**"), pursuant to Sections 105(a) and 363 of Title 11 of the United States Code ("**Bankruptcy Code**") and Rules 2002(a)(2), 6004, and 9019 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), in each case as

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement (as defined below).

described in the Motion and the Settlement Agreement, Release, and Policy Buyback attached to the Motion as **Exhibit A** (the "**Agreement**"); and the Court having reviewed the Motion and the Agreement; and it appearing that due and adequate notice of the Motion and Agreement having been given to all Persons entitled thereto, and that no other or further notice need be given; and the Court on August 27, 2025 at 10:00 AM having held a hearing (the "**Sale Hearing**") to consider the relief requested in the Motion; and upon the record of the Sale Hearing; and, after due deliberation, including, without limitation, for the reasons stated by the Court on the record of the Sale Hearing, it appearing that the relief requested in the Motion and granted herein is in the best interests of the Diocese's estate, its creditors, and other parties in interest; and good sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.   This Court has jurisdiction over the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.   The statutory predicates for the relief sought in the Motion are Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9019.

C.   Proper, timely, adequate and sufficient notice of the Sale Hearing and Motion and the relief requested therein, including, without limitation, the Settlement and the transactions described in the Agreement, including, without limitation, issuance of the injunction-in-aid referenced in the Agreement and the Motion (all such transactions being collectively referred to, for convenience, as the "**Sale Transaction**") has been provided in accordance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules to all interested Persons, including, without limitation: (a) all Abuse Claimants known to or reasonably ascertainable by any Diocese Party; (b) the Participating Parties; (c) the Committee; (d) the Unknown Claims Representative; (e) all other Persons that must be served with written notice under Bankruptcy Rule 2002, including, without limitation, all Persons who have filed notices of appearance in the Bankruptcy Case; (f) all Persons known or believed by any Diocese Party to have provided insurance to any of the Diocese Parties; (g) to the extent not captured in (f), all Non-Settling Insurers; and (h) the Persons set forth on Schedules 2 and 3 of the Agreement.  Notice of the Sale Transaction and the Sale Hearing was published in Democrat & Chronicle, The Binghamton Press and Sun Bulletin, Times Union, The Observer Dispatch, The New York Times, The Post-Standard, North Country Catholic, The Evangelist, and The Catholic Sun between July 14, 2025 and July 30, 2025, as set forth in the Certificates of Publication [Dkt. No. 2996].  The notices described above were good, sufficient, and appropriate under the circumstances, and no other notice of the Motion or Sale Hearing is required.

D.   The disclosures made by the Diocese concerning the Agreement, the Sale Transaction, and the Sale Hearing were good, complete, and adequate.

E.   A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested Persons.

F.   The Diocese has full corporate power and authority to consummate the Sale Transaction pursuant to the Agreement and all other documents contemplated thereby, and no

2

consents or approvals, other than those expressly provided for in the Agreement, are required for the Diocese to consummate the Sale Transaction.

G. Approval of the Agreement and consummation of the Sale Transaction are in the best interests of the Diocese's estate, its creditors (specifically including the Abuse Claimants), and other parties-in-interest, including because the proceeds of and from the Sale Transaction will benefit Abuse Claims.

H. The Diocese has demonstrated (i) good, sufficient, and sound business purpose and justification and compelling circumstances for the Sale Transaction pursuant to Section 363(b) of the Bankruptcy Code and (ii) that the Sale Transaction is fair, reasonable, and in the best interests of the Diocese's estate and creditors pursuant to Bankruptcy Rule 9019. Among other things, the Diocese has demonstrated that: the Agreement, and closing thereon, is necessary and appropriate to realize the value of the Purchased Property[2] and maximize the value of the Diocese's estate; the probability of success for the Diocese's estate in litigation over the matters resolved by the Agreement, including, without limitation, the Adversary Proceeding, is uncertain; litigation of the matters resolved by the Agreement would be complex and costly to the Diocese's estate; and the Settlement Amount is within the reasonable range of potential litigation outcomes. The Sale Transaction constitutes a reasonable and sound exercise of the Diocese's business judgment and its powers and duties under applicable law and should be approved.

I. The Agreement was negotiated, proposed, and entered into without collusion, in good faith, and from arm's length bargaining positions. Without limiting the foregoing, the Agreement resulted from a lengthy mediation that proceeded pursuant to a prior order of the Court. Interstate is not an "insider" or "affiliate" of the Diocese, as those terms are defined in the Bankruptcy Code. None of the Diocese Parties or Interstate have engaged in any conduct that would: (i) cause or permit the avoidance of the Agreement or the consummation of the Sale Transaction under Section 363(n) of the Bankruptcy Code; (ii) cause or permit the imposition of any costs or damages (including without limitation attorneys' fees or punitive damages) under Section 363(n) of the Bankruptcy Code; or (iii) prevent the application of Section 363(m) of the Bankruptcy Code.

J. Interstate is a good faith purchaser of the Purchased Property under Section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby, in that, among other things: (i) all payments to be made by or to Interstate, and other agreements or arrangements entered into by Interstate, in connection with the Sale Transaction have been disclosed; (ii) Interstate neither induced nor caused the Diocese's Chapter 11 filing; (iii) the negotiation and execution of the Agreement and any other agreements or instruments related thereto was in good faith, the arm's length transaction between Interstate and the Diocese Parties was the product of mediation, and all Parties to the Agreement were, or had the opportunity to be, represented by counsel; and (iv) Interstate has not violated Section 363(n) of the Bankruptcy Code by any action or inaction. Interstate has at all times acted in good faith with respect to the Agreement and will continue to be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in closing the Sale Transaction.

---

[2] "**Purchased Property**" as used herein means both (i) the Diocese Policies and (ii) the Extra-Contractual Claims of the Diocese Parties, all as defined in the Agreement.

3

22305620.v2

K.    The terms and conditions of the Agreement are fair and reasonable. The Settlement Amount provided by Interstate pursuant to the Agreement (i) is fair and reasonable; (ii) monetizes the Purchased Property at the highest and best amount; (iii) will provide a higher and more certain recovery for the Diocese's creditors than would be provided by any other practical available alternative (including, for the avoidance of doubt, litigation of the Adversary Proceeding) given the complexity, cost, and uncertainty of such alternatives; and (iv) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and Section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law. The Settlement Amount is within the reasonable range of potential litigation outcomes, and the Diocese's determination to accept the Settlement Amount and otherwise enter into the Agreement is a valid and sound exercise of the Diocese's business judgment and consistent with the Diocese's fiduciary duties.

L.    Interstate: (i) is not a mere continuation of the Diocese or its estate, nor is there any continuity of enterprise between Interstate and the Diocese or Interstate and any of the other Diocese Parties; (ii) is not holding itself out to the public as a continuation of any of the Diocese Parties; and (iii) is not a successor to the Diocese, its estate, or any of the Diocese Parties for any purpose, and the Sale Transaction does not amount to a consolidation, merger, or *de facto* merger of Interstate and any of the Diocese Parties.

M.    The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither Interstate nor any of the Diocese Parties are fraudulently entering into the Sale Transaction.

N.    The transfer of the Purchased Property to Interstate (i) does not constitute an avoidable transfer under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law and (ii) does not and will not subject Interstate to any liability whatsoever with respect to the Diocese's operation prior to the closing of the Sale Transaction (the "**Closing**").

O.    Interstate has agreed to purchase the Purchased Property pursuant to its Agreement and this Order; Interstate has not agreed to purchase, and is not purchasing, any other assets of the Diocese's estate. Interstate has not agreed to assume, and after Closing shall have no obligations with respect to, any liabilities of the Diocese, its subsidiaries or affiliates, the other Diocese Parties, or any Covered Parties, except for the ISO Exception (as and to the extent expressly provided in the Agreement). Without limiting the generality of the foregoing, Interstate: (i) is not assuming and shall have no liability for any Claims arising from or relating to Abuse, the Purchased Property, or the Bankruptcy Case; and (ii) is not assuming and, excluding only the ISO Exception (as and to the extent expressly provided in the Agreement), shall have no liability with respect to the Diocese's, any Covered Party's, or any other Diocese Party's obligations to Abuse Claimants, any other creditors, future claimants (including without limitation Unknown Abuse Claims), or the Diocese's, any Covered Party's, or any Diocese Party's employees, in each case, by reason of the purchase of the Purchased Property under the Agreement.

P.    The Purchased Property constitutes property of the Diocese's estate, and the Diocese is the lawful owner of the Purchased Property and holds good title thereto. The transfer of the Purchased Property to Interstate pursuant to the Agreement will be a legal, valid, binding, and effective transfer of the Purchased Property, and will vest Interstate with all right, title, and

22305620.v2

interest of the Diocese and the Diocese Parties in and to the Purchased Property, in each case free and clear of all Interests (as defined below, and including, without limitation, any Interests of the Diocese Parties, Covered Parties, other named or additional insureds or assureds, or those with direct action rights against the Purchased Property) except (as and to the extent specifically provided in the Agreement) for the ISO Exception.  After Closing, Interstate shall have no liability for any Claims against or liabilities of the Diocese, its estate, or the other Diocese Parties or Covered Parties, except for the ISO Exception (as and to the extent specifically provided in the Agreement).  Without limiting any of the foregoing, the Diocese, the Diocese Parties, and Interstate have agreed that, upon the occurrence of the Settlement Agreement Effective Date and payment of the Settlement Amount by Interstate, the Purchased Property (i) shall, immediately prior to the buyback, be amended to include the Sexual Abuse Exclusion, Time-Bar Exclusion and Cancellation Endorsement and (ii) immediately thereafter shall be deemed void *ab initio*, terminated, extinguished, and of no further force and effect.

Q. The Diocese may sell the Purchased Property free and clear of all, liens, interests, obligations, rights, encumbrances, pledges, mortgages, deeds of trust, security interests, Claims (including, without limitation, any "claim" as defined in Section 101(5) of the Bankruptcy Code), leases, possessory leasehold interests, charges, options, rights of first refusal or option to purchase any real property, easements, servitudes, transfer restrictions under any agreement, judgments, hypothecations, demands, licenses, sublicenses, assignments, debts, obligations, guaranties, options, contractual commitments, restrictions, environmental liabilities, options to purchase, and options, in each case of whatever kind, nature, or description in, against, or with respect to any of the Purchased Property, having arisen, existed or accrued prior to and through closing of the Sale Transaction, whether direct or indirect, absolute or contingent, choate or inchoate, fixed or contingent, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute, or otherwise and whether arising prior to, on, or after the Petition Date, including without limitation Abuse Claims, Coverage Claims, and all other Barred Claims (collectively, and including all "interests" as the term is used in Bankruptcy Code Section 363, "**Interests**"), except for the ISO Exception as and to the extent expressly provided in the Agreement, because one or more of the standards set forth in Bankruptcy Code Section 363(f)(1) – (5) has been satisfied with regard to each such Interest.  Without limiting the generality of the foregoing: (i) non-Diocese parties with Interests in or with respect to the Purchased Property who did not object, or who withdrew their objections to the Sale Transaction or the Motion have waived their right to object to the sale of the Purchased Property free and clear of such non-Diocese parties' Interests in the Purchased Property pursuant to Section 363(f)(2) of the Bankruptcy Code; and (ii) non-Diocese parties with Interests in or with respect to the Purchased Property who objected to the Motion and did not withdraw any such objection (a) are the holders of Interests subject to *bona fide* dispute under Bankruptcy Code Section 363(f)(4) and/or (b) can be compelled to accept a monetary satisfaction of their Interests within the meaning of Section 363(f)(5) of the Bankruptcy Code.

R. If the sale of the Purchased Property were not free and clear of Interests, or if the Interstate Released Parties and/or Interstate's Related Persons would, or in the future could, be liable for any of the Interests, Interstate would not have entered into the Agreement and would not consummate the Sale Transaction or pay the Settlement Amount, thus adversely affecting the Debtor, its estate, and its creditors (including, without limitation, the Abuse Claimants), as well as the other Diocese Parties.

22305620.v2

S.  Issuing a supplemental injunction under Section 105(a) of the Bankruptcy Code as provided herein is essential to give effect to the sale of the Purchased Property to Interstate and this Order's approval of such sale free and clear of Interests pursuant to Section 363(f) of the Bankruptcy Code.  The Settling Insurer Injunction set forth in Paragraph 19 below not only is a necessary prerequisite for Interstate's assent to the terms and conditions of its Agreement, such that Interstate will not consummate the Sale Transaction or pay its Settlement Amount in the absence of such an injunction from this Court, but also is warranted to ensure compliance with this Order.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### General Provisions

1.  The Motion is granted and approved as set forth herein.

2.  The findings of fact set forth above and conclusions of law stated herein, in addition to any findings of fact and conclusions of law stated by the Court at the Sale Hearing, shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the Motion pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3.  Any and all objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are hereby overruled on the merits with prejudice, and in each case the Person asserting the objection or reservation of rights is enjoined from taking any action against the Interstate Released Parties or Interstate's Related Persons to recover any Claim which such objecting Person has solely against the Diocese, its estate, or any other Diocese Party or Covered Party.  Those parties who did not object or who withdrew their objections to the Motion are deemed to have consented to the relief granted herein, pursuant to Section 363(f)(2) of the Bankruptcy Code. For the avoidance of doubt, nothing in this Paragraph 3 shall be interpreted to enjoin any party's right, if any, to appeal this Order.

### Approval of the Agreements

4.  The Agreement is approved in its entirety, pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.  Without limiting the generality of the foregoing, the settlement and mutual release of Claims as set forth in the Agreement is hereby approved pursuant to Bankruptcy Rule 9019.  All factors set forth in *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007), either weigh in favor of the Agreement or do not apply.

5.  Pursuant to Section 363(b) of the Bankruptcy Code, the Diocese is authorized to consummate the Sale Transaction under and in accordance with the terms and conditions of the Agreement, and the Diocese shall at all times act in accordance with the terms thereof.

6. The Parties are authorized to execute and deliver, and empowered to perform under, consummate, and implement the Agreement, together with all additional instruments and documents that may be reasonably necessary, convenient, or desirable to implement the Agreement and consummate the Sale Transaction pursuant thereto and effectuate the provisions of this Order and the transactions approved hereby, and to take all further actions as may be requested by Interstate for the purpose of assigning, transferring, granting, conveying, and conferring to Interstate or reducing to Interstate's possession, the Purchased Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

7. Interstate is authorized and directed to pay the respective Settlement Amount to the Trust under and subject to the satisfaction of all terms and conditions of the Agreement.

8. The Settlement Amount provided by Interstate for the Purchased Property constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

9. None of Interstate's Related Persons or any Interstate Released Party shall be required to seek or obtain relief from the automatic stay under Section 362 of the Bankruptcy Code to enforce any of its or their rights or remedies under the Agreement or any other document related to the Agreement or the Sale Transaction. The automatic stay imposed by Section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order; *provided*, *however*, that this Court shall retain jurisdiction over any and all disputes with respect thereto.

10. This Order shall be binding in all respects upon: (a) the Diocese and its Related Persons; (b) the Diocese's estate; (c) the other Diocese Parties; (d) all creditors (including without limitation all Abuse Claimants); (e) all holders of Interests whether known or unknown (including but not limited to any Non-Settling Insurers and Covered Parties) against or on all or any portion of the Purchased Property; (f) the Interstate Released Parties and Interstate's Related Persons; (g) the Purchased Property; (h) the Unknown Claims Representative; (i) any trustee that may be subsequently appointed in the Bankruptcy Case, whether pursuant to any plan of reorganization or liquidation (including without limitation the Trustee appointed under the Plan), under Section 1104 of the Bankruptcy Code, or upon a dismissal or conversion of this Bankruptcy Case under Chapter 7 of the Bankruptcy Code; and (j) all Persons and Entities receiving notice (or deemed to have received notice pursuant to this Order) of the Motion or the Sale Hearing. The Agreement shall be binding in all respects upon: (x) the Diocese, its Related Persons, and its estate; (y) the Diocese Parties; and (z) any trustee that may be subsequently appointed in the Bankruptcy Case, whether pursuant to any plan of reorganization or liquidation (including without limitation the Trustee appointed under the Plan), under Section 1104 of the Bankruptcy Code, or upon a dismissal or conversion of this Bankruptcy Case under Chapter 7 of the Bankruptcy Code.

### Transfer of the Assets

11. The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Diocese may sell the Purchased Property free and clear of any Interests therein.

22305620.v2

12. Pursuant to Sections 105 and 363(b) and (f) of the Bankruptcy Code, Bankruptcy Rule 9019, applicable New York State law, the Declarations in support of the Motion, and the record of the Sale Hearing, the Diocese has set forth the legal authority necessary to support this Court's findings herein.

13. Except as and to the extent expressly provided in the Agreement with respect to the ISO Exception, pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Property and the Diocese Parties' rights, title, and interest therein shall upon Closing be transferred to Interstate, free and clear of all Interests (including without limitation the Interests of the Diocese Parties and any Covered Parties), and all such Interests are unconditionally and forever released and extinguished as against the Purchased Property. Without limiting the generality of the foregoing, the sale of the Purchased Property under the Agreement shall be free and clear of all Abuse Claims (whether Consenting Abuse Claims or Non-Participating Abuse Claims), Barred Claims, Coverage Claims, Inbound Contribution Claims, Insurer Contribution Claims, Medicare Claims, Related Insurance Claims, Direct Action Claims, and any other Claims arising from or related in any way to an Abuse Claim or any portion of the Purchased Property.

14. Except as and to the extent expressly provided in the Agreement with respect to the ISO Exception, upon Closing, all Persons (and their respective successors and assigns), including but not limited to all governmental, tax, and regulatory authorities, Diocese Parties, Entities, Covered Parties, Non-Settling Insurers, Abuse Claimants, and trade and other creditors, holding Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) against, in, or with respect to the Purchased Property, including, without limitation, such Interests arising or accruing under or out of, in connection with, or in any way relating to the transfer of the Purchased Property to Interstate, hereby are forever barred, estopped, and permanently enjoined from asserting such Person's or Entity's Interests against the Purchased Property, the Interstate Released Parties, or Interstate's Related Persons. Except as and to the extent expressly provided in the Agreement with respect to the ISO Exception, effective upon Closing none of the Interstate Released Parties or any of Interstate's Related Persons shall have any liability for any Claims (a) against the Diocese, its estate, or any of the Covered Parties or other Diocese Parties or (b) in respect of the Purchased Property.

15. The transfer of the Purchased Property to Interstate pursuant to the Agreement constitutes a legal, valid, and effective transfer of the Purchased Property, and shall vest Interstate with all right, title, and interest of the Diocese and the Diocese Parties in and to the Purchased Property. Upon the occurrence of the Settlement Agreement Effective Date and payment of the Settlement Amount by Interstate, the Diocese Policies shall, immediately prior to the buyback, be amended to include the Sexual Abuse Exclusion, Time-Bar Exclusion, and Cancellation Endorsement; immediately thereafter, the Diocese Policies shall be terminated and no longer in force or effect, exhausted in retrospect as to all coverages, and all Interests the Diocese or any other Person or Entity (including without limitation any of the other Diocese Parties or Covered Parties) may have had, may presently have, or may in the future have, in such Purchased Property are released and extinguished, and all such Persons (including without limitation the Diocese Parties and Covered Parties) and Entities hereby are forever barred, estopped, and permanently enjoined from asserting any such Interest against the Purchased Property, the Interstate Released Parties, and/or any of Interstate's Related Persons; *provided, however*, that the ISO Exception (as and to the extent provided in the Agreement) is not released, barred, estopped, or enjoined.

Interstate's payment of the Settlement Amount constitutes full and complete performance of any and all obligations under the Purchased Property, including without limitation any performance owed to the Diocese Parties or Covered Parties, and exhausts all limits of liability of the Purchased Property.

16. Upon occurrence of the Settlement Agreement Effective Date:

(a) all Interests the Diocese Parties may have had, may presently have, or in the future may have in the Purchased Property, as applicable, are released pursuant to the terms of the Agreement; and

(b) excluding only the ISO Exception as and to the extent provided in the Agreement, the Diocese Parties accept the Settlement Amount in full and complete satisfaction of Interstate's past, present, and future obligations, including, without limitation, any obligations to any of the Diocese Parties under such Purchased Property or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever arising out of or related in any way to such Purchased Property (including Coverage Claims), whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether such Claims arise from, relate to, or are in connection with the Abuse Claims, Barred Claims, or otherwise.

## No Successor Liability

17. The transfer of the Purchased Property to Interstate shall not result in any Interstate Released Parties, any of Interstate's Related Persons, or the Purchased Property having any of the following: (a) any liability or responsibility for Interests in or Claims against the Diocese or against an insider of the Diocese; (b) liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any Claims or Interests; or (c) any liability or responsibility to the Diocese except as is expressly set forth in the Agreement.

18. Without limiting the generality of the foregoing, none of the Interstate Released Parties or any Interstate's Related Persons shall have any successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, successor or successor employer liability, *de facto* merger or joint venture, mere continuation or substantial continuity, whether known or unknown as of Closing, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between the Diocese and any non-debtor subsidiary or affiliate (including, without limitation, any Diocese Party), liabilities relating to or arising from any environmental laws, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Purchased Property prior to Closing.

## Settling Insurer Injunction

19. Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, and in consideration of the undertakings of Interstate pursuant to the Agreement, including Interstate's

9

purchase of the Purchased Property free and clear of all Claims and Interests pursuant to Section 363(f) of the Bankruptcy Code as provided herein, any and all Persons and Entities that have held, now hold, or who may in the future hold any Claims or Interests (including without limitation all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Abuse Claimants, perpetrators, Covered Parties, any other additional insureds or assureds or named insureds or assureds, Non-Settling Insurers, the Diocese Parties, and all others holding Claims or Interests of any kind or nature whatsoever, including, without limitation, those Claims released or to be released pursuant to the Agreement), which Claims or Interests are under, arise out of, relate to, or connect in any way with an Abuse Claim or any of the Purchased Property, including, without limitation, (a) Abuse Claims (whether Consenting Abuse Claims or Non-Participating Abuse Claims), Unknown Abuse Claims, Coverage Claims, Inbound Contribution Claims, Insurer Contribution Claims, Related Insurance Claims, Direct Action Claims, Tort Actions, and all other Channeled Claims, (b) the payment of any of the Claims identified previously, including, without limitation, Medicare Claims, and (c) all other Barred Claims or Interests, are, to the maximum extent permitted by law, hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Claim or Interest against any of (x) the Interstate Released Parties or Interstate's Related Persons, (y) the assets or property of any Interstate Released Parties or any of Interstate's Related Persons, or (z) the Purchased Property, including by:

   (i)   commencing or continuing in any manner any action or other proceeding of any kind against any Interstate Released Parties, any of Interstate's Related Persons, or against the property or assets of any of the foregoing;

   (ii)  enforcing, attaching, collecting, or recovering, or seeking to accomplish any of the preceding, by any manner or means, any judgment, award, decree, or order against any Interstate Released Parties, any of Interstate's Related Persons, or against the property or assets of any of the foregoing;

   (iii) creating, perfecting, or enforcing, or seeking to accomplish any of the preceding, any lien of any kind against any Interstate Released Parties, any of Interstate's Related Persons, or against the property or assets of any of the foregoing;

   (iv)  asserting, implementing, or effectuating any such Claim of any kind against: (A) any obligation due to any of the Interstate Released Parties or Interstate's Related Persons, (B) any of the Interstate Released Parties or Interstate's Related Persons, or (C) the property or assets of any of Interstate Released Parties or Interstate's Related Persons;

   (v)   taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of this Order; and

   (vi)  asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against an obligation due to any Interstate Released Parties, any of Interstate's Related Persons, or against the property or assets of any of the foregoing.

22305620.v2

The actions described in this Paragraph 19 are "**Enjoined Actions**," and the injunction set forth herein is the "**Settling Insurer Injunction**."  The Settling Insurer Injunction shall be a permanent injunction against the Enjoined Actions and may not be modified, dissolved, or terminated.

20. Notwithstanding anything to the contrary in the foregoing, the Settling Insurer Injunction does not apply the ISO Exception (as and to the extent provided in the Agreement).

21. The Settling Insurer Injunction shall be effective upon the occurrence of the Settlement Agreement Effective Date and Interstate's payment of the Settlement Amount to the Trust pursuant to the terms of the Agreement.  The Settling Insurer Injunction bars pursuit of the above referenced Claims and/or Interests against the Interstate Released Parties, Interstate's Related Persons, or the property or assets of each (including, without limitation, the Purchased Property), but against no other person or thing.  In a successful action to enforce this Settling Insurer Injunction in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

22. The Settling Insurer Injunction shall not enjoin (a) the right of any Person or Entity against the Trust or a Non-Settling Insurer, or (b) the Trustee from enforcing the Trust Documents.

### Reservation

23. Nothing in this Order shall serve as a release of any claim or cause of action against Fireman's Fund Insurance Company, National Surety Corporation, Interstate Fire & Casualty Company, Allianz Resolution Management, Insurance Services Office, or any of their respective Related Persons regarding disclosure of any information from any "Sexual Abuse Proof of Claim Form" (as defined in the Bar Date Order).  All parties' rights regarding such claims are reserved.

### Additional Provisions

24. From and after the date hereof, no Person or Entity shall take or cause to be taken any action that would adversely affect or interfere with the transfer of the Purchased Property to Interstate in accordance with the terms of the Agreements and this Order.

25. This Court hereby retains jurisdiction, regardless of whether a Chapter 11 plan has been confirmed in the Bankruptcy Case and consummated and irrespective of the provisions of any such plan or order confirming such plan, to enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder, and of any agreement(s) executed in connection therewith in all respects, including but not limited to retaining jurisdiction to: (a) compel delivery of the Purchased Property to Interstate in accordance with the terms of the Agreement; (b) resolve any dispute, controversy, or claim arising under or related to the Agreement, or the breach thereof; and (c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto.

26. Nothing contained in any plan confirmed in the Bankruptcy Case or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

22305620.v2

27. This Order shall not limit or preclude the entry or effectiveness of any additional releases or injunctions that may be granted protecting the Interstate Released Parties and/or Interstate's Related Persons in connection with, or as part of, any order confirming a Chapter 11 plan.

28. The transactions contemplated by the Agreement are undertaken by Interstate in good faith, as that term is used in Section 363(m) of the Bankruptcy Code. Interstate is a good faith purchaser of the Purchased Property and is entitled to all the protections afforded by Section 363(m) of the Bankruptcy Code. Accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction to Interstate.

29. Interstate has given substantial consideration under the Agreement for the benefit of the Diocese, its estate, and creditors, along with the other Diocese Parties and Covered Parties. Such consideration given by Interstate constitutes valid and valuable consideration for the Purchased Property and the releases set forth in the Agreement, including, without limitation, the extinguishment and release of all Interests pursuant to this Order. The consideration provided by Interstate for the Purchased Property under the Agreement is fair and reasonable; accordingly, the purchase may not be avoided under Section 363(n) of the Bankruptcy Code.

30. The terms and provisions of the Agreement and this Order shall be binding notwithstanding any subsequent appointment of any Trustee(s) examiner(s) or receiver(s) under any Chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such Trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Diocese, its estate, its creditors, or any examiner(s) or receiver(s).

31. The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement and the Parties' performance thereof be authorized and approved in its entirety.

32. Pursuant to the provisions of the Agreement, each of the Diocese Parties and Interstate shall be authorized to take, or cause to be taken, all appropriate action to do, or cause to be done, all things necessary, proper, or advisable under applicable law or otherwise to consummate and make effective the transactions contemplated by the Agreement.

33. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

34. All obligations of the Diocese under the Agreement shall be deemed administrative expenses of the estate under Sections 503(b) and 507(a)(1) of the Bankruptcy Code.

35. Each and every federal, state, and local governmental agency or department is hereby directed to accept this Order in lieu of any document necessary to consummate the transactions contemplated by the Agreement and this Order.

36. The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the Parties, in a writing signed by the applicable

12

Parties, and in accordance with the terms thereof, without further order of this Court; *provided* that such modification, amendment, or supplement does not constitute a material change to the relief sought in the Motion and approved by this Order.

# # #

22305620.v2