So Ordered.

Signed this 26 day of September, 2025.



_____

Wendy A. Kinsella

United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 20-30663 |
| The Roman Catholic Diocese of Syracuse, New York, | ) |
| | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND ORDER CONFIRMING FIRST MODIFIED FIFTH
AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
FOR THE ROMAN CATHOLIC DIOCESE OF SYRACUSE, NEW YORK**

The Roman Catholic Diocese of Syracuse, New York ("Diocese") having filed a

voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, §§ 101 *et*

*seq.*, as amended (the "Bankruptcy Code") on June 19, 2020 (the "Petition Date"); and the

Diocese, along with the along with the Official Committee of Unsecured Creditors (the

"Committee", and with the Diocese, the "Plan Proponents") having filed their *First Modified*

*Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of*

*Syracuse, New York* dated September 24, 2025 [Docket No. 3068] (the "Joint Plan"); and the

Court having approved the Diocese's proposed solicitation and voting procedures [Docket No. 2398] (the "Disclosure Statement Order") and the adequacy of the information contained in the *Disclosure Statement in Support of Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* dated November 27, 2024 (the "Disclosure Statement"); and the Court having held hearings on April 28, 2025, June 2, 2025, July 2, 2025, and August 27, 2025 to consider confirmation of the Joint Plan pursuant to section 1129 of the Bankruptcy Code (collectively, the "Confirmation Hearing"); and the Court having reviewed the *Declaration of Alexa Westmoreland, a Director at Stretto, Inc. Regarding the Solicitation and Tabulation of Ballots Cast on the Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Docket No. 2668] and the *Amended Declaration of Alexa Westmoreland, a Director at Stretto, Inc. Regarding the Solicitation and Tabulation of Ballots Cast on the Fifth Amended Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York* [Docket No. 2767] (collectively, the "Ballot Certification"); and all required notice of the foregoing having been given by the Diocese [Docket Nos. 2411, 2441, 2445, 2455, 2456, 2458, 2487, and 2488]; and upon the record of the proceedings throughout the Diocese's chapter 11 proceeding (the "Chapter 11 Case") and at the Confirmation Hearing; and the Court having heard and considered the statements of counsel at the Confirmation Hearing supporting and objecting to confirmation of the Joint Plan, along with all testimony presented and evidence admitted at the Confirmation Hearing; and the Court having taken judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Chapter 11 Case, including, without limitation, the hearing to

consider the adequacy of the Disclosure Statement; and with the Court finding, after due deliberation, that (a) all objections to confirmation of the Joint Plan have been withdrawn, resolved or overruled, including the objections [Docket Nos. 2772, 2773, 2774, 2778] of certain Settling Insurers (as defined in the Joint Plan) that were withdrawn in accordance with the terms of the settlements in principle described in various letters to the Court [Docket Nos. 2837, 2848, 2849, 2852, 2853, 2854], (b) notice of the Confirmation Hearing, and the opportunity provided to all parties in interest to object and be heard, was adequate and appropriate as to all parties affected by the Joint Plan, and (c) that the legal and factual bases set forth at the Confirmation Hearing and as set forth in this Confirmation Order establish just cause for the relief granted in this Confirmation Order; and upon due deliberation and sufficient cause appearing therefor,

## THE COURT HEREBY FINDS AND DETERMINES THAT:

### I.    Findings of Fact and Conclusion of Law

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any finding of fact shall later be determined to be a conclusion of law it shall be so deemed and vice versa.  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Joint Plan.

### II.    Jurisdiction and Venue

B.    This Court has jurisdiction over the Joint Plan and Confirmation of the Joint Plan pursuant to 28 U.S.C. §§ 157 and 1334.  Confirmation of the Joint Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).  Venue of the Chapter 11 Case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This Confirmation Order shall be a final order of this Court.  Solely

to the extent the District Court or any higher appellate court determines that this Court lacks jurisdiction to enter a final order on any matter addressed herein, this Confirmation Order shall constitute the Court's proposed findings of fact and conclusions of law in accordance with 28 U.S.C. § 157(c)(1) and Bankruptcy Rule 9033.

### III.    Bankruptcy Rule 3016

C.    The Joint Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).   The Diocese appropriately filed the Disclosure Statement and the Joint Plan with this Court, thereby satisfying Bankruptcy Rule 3016(b).

### IV.    Solicitation and Notice

D.    In accordance with Bankruptcy Rule 3017(d) and the Disclosure Statement Order, copies of the (i) the Disclosure Statement Order (excluding exhibits); (ii) a Ballot to accept or reject the Joint Plan, with instructions and a return envelope; and (iii) the Disclosure Statement and Joint Plan; and (iv) the notice of the Confirmation Hearing (collectively, the "Solicitation Package") were transmitted to holders of Claims in Classes 1, 2, 4, and 5 under the Joint Plan (collectively, the "Voting Classes").  Such transmittal and the Solicitation Package, and the time periods and dates provided therein and employed in connection therewith, were timely, sufficient and adequate and no other or further notice or action is required.

E.    In accordance with the Disclosure Statement Order, the applicable sections of the Bankruptcy Code and the Bankruptcy Rules, including, but not limited to, Bankruptcy Rules 2002, 3017 and 3020, due notice of the Confirmation Hearing and the opportunity to object to confirmation of the Joint Plan was given to the Diocese's creditors and all other parties in interest, including holders of Claims or Interests in non-voting Classes or unclassified Claims.

22164819.v4

Such notice of the Confirmation Hearing and the opportunity to object to confirmation of the

Joint Plan was timely, sufficient and adequate, and no other or further notice is required.

### V.    Ballot Certification and Creditor Consent

F.    The Plan designates Claims in Class 1, 2, 4, and 5 as Impaired and entitled the

Holders of such Claims and Interests to vote on the Plan.  As set forth in the Ballot Certification:

(a) 100% of voting creditors in Classes 1, 4, and 5 voted to accept the Joint Plan; and (b) Class 2

did not vote on the Joint Plan.[1]  Accordingly, Classes 1, 4, and 5 voted to accept the Plan in the

number and amount required by section 1126 of the Bankruptcy Code, and Class 2 has accepted

the Plan by submitting a late ballot.

G.    For the reasons set forth in the Court's *Order Denying Approval of the Disclosure*

*Statement in Support of Fourth Amended Joint Chapter 11 Plan of Reorganization for The*

*Roman Catholic Diocese of Syracuse, New York dated September 13, 2024*, 667 B.R. 628

(Bankr. N.D.N.Y. 2024), the Court's Disclosure Statement Order approved an opt-out

mechanism as the appropriate method, under the facts and circumstances of this Chapter 11

Case, for determining whether holders of Class 5 Claims have consented to the Joint Plan's

third-party release and injunction provisions.  No holder of a Class 5 Claim who submitted a

ballot indicated an intention to withhold consent to such release and injunction provisions, nor

did any holder of a Class 5 Claim otherwise raise any objections to confirmation of the Joint

Plan.  On April 10, 2025, the Unknown Claimant Representative elected to treat all Unknown

Abuse Claims as Consenting Abuse Claims [Docket No. 2758].  Accordingly, each and every

holder of a Class 5 Claim is deemed to consent to the injunctions and releases set forth in the

Joint Plan and in this Confirmation Order.

---

[1] Pursuant to the letter filed by counsel for NBT, the only Class 2 Claimant, NBT has accepted the Plan and filed a late Class 2 Ballot. *See* Docket No. 2844 attaching a copy of the Class 2 Ballot accepting the Plan.

22164819.v4

H.      All procedures used by Stretto, Inc. to distribute to the applicable holders of Claims in the Voting Classes and to tabulate the Ballots as set forth in the Ballot Certification, were fair and appropriate and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court, the Disclosure Statement Order and all other applicable rules, laws and regulations.

### VI.      Good Faith Solicitation

I.      Based upon the record before this Court in this Chapter 11 Case, the Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with all their respective activities relating to the solicitation of acceptances to the Joint Plan and their participation in the activities described in section 1125 of the Bankruptcy Code.  Without limiting the generality of the foregoing, votes for acceptance or rejection of the Joint Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the applicable provisions of the Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations.  Accordingly, the Exculpated Parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in the Joint Plan on the terms set forth therein.

### VII.      Plan Supplement

J.      The documents identified in the Plan Supplement are integral to the Joint Plan and were filed as required.  Notice of such documents was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and complied with the provisions of the Joint

22164819.v4

Plan, the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  No other

or further notice is required with respect to the Plan Supplement.

**VIII.    Modifications to Joint Plan**

K.      Pursuant to, and in compliance with, section 1127 of the Bankruptcy Code, the

Plan Proponents have proposed certain "Modifications" to the Joint Plan as reflected therein and

as described in the *Motion for Entry of an Order Approving Modifications to the Fifth Amended*

*Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New*

*York Dated November 27, 2024* [Dkt. No. 2924].  In accordance with Bankruptcy Rule 3019, the

Modifications do not: (a) constitute material modifications of the Joint Plan under section 1127

of the Bankruptcy Code; (b) cause the Joint Plan to fail to meet the requirements of sections

1122 or 1123 of the Bankruptcy Code; (c) materially or adversely affect or change the treatment

of any Claims; (d) require re-solicitation of any Holders of Claims; or (e) require that any such

Holders be afforded an opportunity to change previously cast acceptances or rejections of the

Joint Plan.  Under the circumstances, the form and manner of notice of the Modifications were

adequate, and no other or further notice of the Modifications is necessary or required.

L.      In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule

3019, all Holders of Claims that voted to accept the Joint Plan or that are conclusively presumed

to have accepted the Joint Plan, as applicable, are deemed to have accepted the Joint Plan as

modified by the Modifications.  No Holder of a Claim that has voted to accept the Joint Plan

shall be permitted to change its acceptance to a rejection as a consequence of the Modifications.

M.      To the extent this Confirmation Order contains further modifications to the Joint

Plan, such modifications were made to address objections and informal comments received from

various parties-in-interest.  These and all other modifications to the Joint Plan and/or the Plan

22164819.v4

Supplement since the entry of the Disclosure Statement Order are consistent with all applicable provisions of the Bankruptcy Code.  The disclosure of any modifications prior to or on the record at the Confirmation Hearing, with an opportunity to be heard with respect to such modifications at the Confirmation Hearing, constitutes due and sufficient notice of such modifications.  The Joint Plan as modified constitutes the Joint Plan submitted for Confirmation.

### IX.    Insurance Settlements

N.    The Insurance Settlement Agreements with the Settling Insurers are the result of long-term negotiations amongst the parties.

O.    Each Settling Insurer, as a condition precedent to such Settling Insurer's entry into its Insurance Settlement Agreement and payment of the Insurance Settlement Amount thereunder, required that the Diocese obtain for such Settling Insurer the benefit of the Channeling Injunction, Settling Insurer Injunction, and Gatekeeper Injunction.  The Channeled Claims and Barred Claims that are subject to the Channeling Injunction and Settling Insurer Injunction, respectively, are within the jurisdiction of this Court because such Claims could affect the estate.  *See In re Commercial Express*, 670 B.R. 573, 2025 Bankr. LEXIS 1261 at *14 (Bankr. M.D. Fla. May 22, 2025) ("Because a bankruptcy court's 'related to' jurisdiction supplied by 28 U.S.C. § 1334 extends to any controversy having a conceivable impact upon a bankruptcy estate, the bankruptcy court had subject matter jurisdiction to grant injunctive relief.") (citing *Munford v. Munford (In re Munford, Inc.)*, 97 F.3d 449, 453 (11th Cir. 1996)).

P.    The Purchased Property described in each Insurance Settlement Agreement is subject to the *in rem* jurisdiction of the Bankruptcy Court over the Diocese's bankruptcy estate.  Each Settling Insurer has purchased or is purchasing its Purchased Property pursuant to the terms of that Settling Insurer's Insurance Settlement Agreement; none of the Settling Insurers is

purchasing any other assets of the Diocese or Participating Parties, nor is any Settling Insurer a continuation of the Diocese or Participating Parties.

Q.     No Settling Insurer is, nor shall any Settling Insurer be deemed to be, a successor to the Diocese or any of the Participating Parties by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in such Settling Insurer's Insurance Settlement Agreement, the Joint Plan, or otherwise.  No Settling Insurer shall assume, nor shall any Settling Insurer be deemed to have assumed, any liabilities or other obligations of the Diocese or Participating Parties.

R.     Notwithstanding anything to the contrary in the Joint Plan, and as a result of the settlement it has entered into with the Diocese (*see* Docket No. 3065), Travelers Insurance Company Limited, Travelers Casualty and Surety Company and Travelers Indemnity Company, Travelers Casualty & Surety Company, formerly known as Aetna Casualty & Surety Company, St. Paul Fire & Marine Insurance Company, and St. Paul Surplus Lines Insurance Company (collectively "Travelers") is, and shall be deemed in all respects to be, a "Settling Insurer" for purposes of the Joint Plan and this Confirmation Order.

**X.     Trust**

S.     Upon entry of this Confirmation Order and due execution of the Trust Agreement, the Trust shall be established.  DW Harrow & Assoc., LLC shall be appointed as the Trustee of the Trust and Roger L. Kramer shall be appointed as the Abuse Claims Reviewer. The Trustee, the Abuse Claims Reviewer and any professionals retained by the Trustee or the Abuse Claims Reviewer shall be Authorized Parties pursuant to the terms of the *Bar Date Order Establishing April 15, 2021 as the Deadline for Filing Proofs of Claim and Approving the Form*

22164819.v4

*and Manner of Notice Thereof* [Docket No. 214].   The Trust shall be administered and implemented by the Trustee as provided in the Trust Documents and Joint Plan.

T.    The Trustee shall implement the Allocation Protocol in accordance with the terms of the Trust Documents.  The Allocation Protocol was developed by the Committee and was not developed by, or submitted for the approval of, any of the Settling Insurers, nor are the Settling Insurers deemed to have accepted or acquiesced in the adoption of the Allocation Protocol.  For the avoidance of doubt, the Insurance Settlement Agreements do not indicate the Settling Insurers' support for the Allocation Protocol, and no party shall argue in any proceeding that the Settling Insurers agreed to or acquiesced in the terms or use of the Allocation Protocol; the Settling Insurers take no position on the use of the Allocation Protocol in this case.

### XI.    Burden of Proof

U.    The Diocese and Committee, as the proponents of the Joint Plan, have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard in this Court for Confirmation of the Joint Plan.

### XII.    Plan Compliance with the Bankruptcy Code

V.    The Joint Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

### XIII.    Compliance with Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))

W.    As required by section 1129(a)(1) of the Bankruptcy Code, the Joint Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123.

X.    ***Proper Classification, Specificity, and Treatment (11 U.S.C. §§ 1122 and 1123(a)(1)-(a)(4))***.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Section 2 of the Joint Plan designates separate classes of Claims, each of which contains only Claims that are substantially similar to the other Claims within that Class.  Valid business, factual and legal reasons exist for separately classifying the various classes of Claims contained in the Joint Plan, and such Classes do not unfairly discriminate among holders of Claims.  Pursuant to sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code, Section 2 of the Joint Plan identifies each Class that is Impaired and each Class that is Unimpaired under the Joint Plan, and specifies the treatment provided to each Class.  Pursuant to section 1123(a)(4) of the Bankruptcy Code, Section 2 of the Joint Plan provides for the same treatment of each Claim in a particular Class, except to the extent the Holder of such a Claim agrees to less favorable treatment.  The Joint Plan, therefore, satisfies sections 1122 and 1123(a)(1)-(a)(4) of the Bankruptcy Code.

Y.    ***Implementation of the Plan (11 U.S.C. § 1123(a)(5))***.  The Joint Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the Joint Plan's implementation, including, without limitation: (a) consummation of the Insurance Settlement Agreements; (b) funding for distributions under the Joint Plan; (c) creation of the Trust; and (d) resolution of Abuse Claims.  The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

Z.    ***Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))***.  The organizational documents of the Diocese do not provide for the issuance of non-voting equity securities.  The Joint Plan, therefore, satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

AA.    ***Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))***.  Section 12.16 of the Joint Plan identifies the members and trustees of the Diocese and the persons proposed to

11

serve as officers of the Diocese post-confirmation, which are the same persons holding such roles during the pendency of the Chapter 11 Case.   The Joint Plan, therefore, satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

BB.    ***Discretionary Contents of the Plan (11 U.S.C. § 1123(b))***.  The other provisions of the Joint Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.  The Joint Plan, therefore, satisfies the requirements of section 1123(b) of the Bankruptcy Code.   The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order, or the Joint Plan.

### a)      Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))

CC.    Except as otherwise set forth in the Joint Plan, this Confirmation Order, or any Insurance Settlement Agreement, each executory contract or unexpired lease of the Diocese that was not previously assumed or rejected pursuant to an order of the Bankruptcy Court, and that has not expired by its own terms before the Effective Date, shall be deemed to be assumed by the Diocese on the Effective Date.  Section 9.7 of the Joint Plan governing assumption and rejection of executory contracts and unexpired leases satisfies the requirements of section 365(b) of the Bankruptcy Code.

### b)      Exculpation, Injunctions, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3))

CC.    The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the discharge, compromises, exculpations and injunctions set forth in the Joint Plan, including Section 12 of the Joint Plan.  Sections 105(a), 363, 1123(b), and 1125(e) of the Bankruptcy Code permit the issuance of the injunctions and approval of the exculpations, and injunctions set forth in the Joint Plan and the Confirmation Order.

12

DD.    Based upon the record of the Chapter 11 Case, the evidence proffered or adduced at the Confirmation Hearing, and the specific facts and equities of this Chapter 11 Case, the Court finds that the discharge, compromises, exculpations, releases, and injunctions set forth in the Joint Plan and the Confirmation Order (including the Channeling Injunction, Settling Insurer Injunction, Gatekeeper Injunction and other injunctions, exculpations, and releases detailed in the Joint Plan): (a) are integral components of the Joint Plan and are critical to the successful implementation and confirmation of the Joint Plan; (b) were conspicuously identified in the Diocese's solicitation materials and were overwhelmingly accepted by the Holders of Claims in Classes affected by such provisions; (c) are appropriate in scope, within the standards of the Second Circuit, and necessary to effectuate the Joint Plan; and (d) are consistent with the Bankruptcy Code and applicable law.

EE.    Without limiting the generality of the foregoing, the Diocese and relevant Participating Parties insured under the Settling Insurer Policies would not sell or release their Interests in such Settling Insurer Policies (or other Purchased Property) unless they obtained the benefits of the Channeling Injunction, because to do so would have left them exposed to Abuse Claims, whether or not such Claims are valid and/or coverage exists for such Claims.  The Channeling Injunction therefore is necessary to facilitate the consummation of the Insurance Settlement Agreements (and payment to the Trust of the Insurance Settlement Amounts), which in turn is necessary to the Joint Plan; the Insurance Settlement Agreements provide good and valuable consideration to the Diocese's bankruptcy estate and enable distributions to Abuse Claimants.  As such, and in light of the narrow tailoring of the Channeling Injunction, which requires that only Channeled Claims against the Protected Parties be brought against the Trust, the Channeling Injunction is necessary to the Joint Plan.  For these reasons, the discharge,

compromises, exculpations, and injunctions set forth in the Joint Plan and the Confirmation

Order are approved and authorized in their entirety.

FF.    In addition, the provisions of the Joint Plan regarding the retention of, and right to

enforce, sue on, settle or compromise (or to refuse to do any of the foregoing with respect to)

certain claims or causes of action against third parties, to the extent not waived or released under

the Joint Plan or any Insurance Settlement Agreement, are appropriate.    The assignment of

Insurance Claims against Non-Settling Insurers, or alternatively, the retention and prosecution of

such claims following confirmation by the Diocese and other Participating Parties as

contemplated in the Joint Plan is not prohibited by the Bankruptcy Code.

### XIV.    The Plan Proponents' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))

GG.    The Plan Proponents have complied with the applicable provisions of the

Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code.    Specifically, the

Diocese is a proper debtor under section 109(d) of the Bankruptcy Code and the Plan Proponents

are proper proponents of the Joint Plan under section 1121(a) of the Bankruptcy Code.

Throughout the Chapter 11 Case and, specifically, in transmitting the Solicitation Package and

notice of the Confirmation Hearing, and in soliciting and tabulating votes on the Joint Plan, the

Diocese has complied with the applicable provisions of the Bankruptcy Code and the Bankruptcy

Rules, including as provided or permitted by Orders of this Court.

### XV.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))

HH.    The Joint Plan has been proposed in good faith and not by any means forbidden

by law.    In determining that the Joint Plan has been proposed in good faith, this Court has

examined the totality of the circumstances surrounding the filing of the Chapter 11 Case.    The

Chapter 11 Case was filed, and the Joint Plan was proposed, with the legitimate and honest

22164819.v4

purposes of restructuring the Diocese's assets and liabilities and maximizing the recovery to
Claim Holders under the Joint Plan.

 II. The Plan Proponents, and their respective present officers, directors, employees,
affiliates, and attorneys, along with the Settling Insurers and their respective counsel and
advisors: (a) have acted in good faith, and have satisfied their duties to all third-parties, as
applicable, in connection with the formulation, negotiation, proposal and implementation of the
Joint Plan and every contract, instrument, document, or other agreement related thereto, and all
actions related to the Chapter 11 Case; and (b) will be acting in good faith in (i) consummating
the Joint Plan and the agreements, compromises, transactions, transfers, and documentation
contemplated by the Joint Plan, and (ii) taking any actions authorized, directed, or contemplated
by this Confirmation Order.  Accordingly, section 1129(a)(3) of the Bankruptcy Code has been
satisfied.

### XVI. Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))

 JJ. Any payment made or to be made by the Diocese for services, or for costs and
expenses, in or in connection with the Chapter 11 Case, or in connection with the Joint Plan and
incident to the Chapter 11 Case that are incurred through the Effective Date, including
administrative expense claims under sections 503 and 507 of the Bankruptcy Code, has been
approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby
satisfying section 1129(a)(4) of the Bankruptcy Code.

### XVII. Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))

 KK. The Plan Proponents have complied with section 1129(a)(5) of the Bankruptcy
Code by disclosing the identity of the officers, directors, and insiders continuing to serve in such
roles.  The continuance of the proposed officers and directors in such roles for the Diocese is

22164819.v4

consistent with the interests of the estate and with public policy. Therefore, the Joint Plan

satisfies section 1129(a)(5) of the Bankruptcy Code.

### XVIII. No Rate Change (11 U.S.C. § 1129(a)(6))

LL.    The Joint Plan does not provide for any change in rates over which a

governmental regulatory commission has jurisdiction. Accordingly, section 1129(a)(6) of the

Bankruptcy Code is either satisfied by or inapplicable to the Joint Plan.

### XIX.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7))

MM.    The Disclosure Statement and Joint Plan establish that each holder of an Impaired

Claim either has accepted the Joint Plan or will receive or retain under the Joint Plan, on account

of such Claim, property of a value, as of the Effective Date, that is not less than the amount that

such holder would receive or retain if the Diocese were liquidated under chapter 7 of the

Bankruptcy Code on such date. Therefore, the Joint Plan satisfies section 1129(a)(7) of the

Bankruptcy Code.

### XX.    Acceptance by Certain Classes (11 U.S.C. §1129(a)(8))

NN.    Section 1129(a)(8) of the Bankruptcy Code requires that for each Class of Claims

or Interests under the Joint Plan, such Class has either accepted the Joint Plan or is not Impaired

under the Joint Plan. Impaired Classes 1, 2, 4, and 5 have voted to accept the Joint Plan.

However, Impaired Class 6 is deemed to have rejected the Joint Plan, therefore the Court must

consider the confirmation of the Joint Plan over the nonacceptance of Class 6 as an Impaired

class pursuant to section 1129(b) of the Bankruptcy Code. Holders of Administrative Claims,

Priority Tax Claims, Non-Tax Priority Claims, Professional Fee Claims, U.S. Trustee Fee

Claims, and Pass-Through Claims are unimpaired under the Joint Plan and, pursuant to section

22164819.v4

1126(f) of the Bankruptcy Code, the votes of such holders have not been solicited as such Classes are conclusively presumed to have accepted the Joint Plan.

### XXI. Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9))

OO.    The treatment of Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Professional Fee Claims, and U.S. Trustee Fee Claims pursuant to Section 2 of the Joint Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.

### XXII. Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))

PP.    The Joint Plan has been accepted by Impaired Classes 1, 2, 4, and 5, and therefore, the Joint Plan has been accepted by at least one class of Impaired Claims entitled to vote on the Joint Plan, determined without including any acceptances of the Joint Plan by any insider, in compliance with section 1129(a)(10) of the Bankruptcy Code.

### XXIII. Feasibility of the Plan (11 U.S.C. § 1129(a)(11))

QQ.    The evidence proffered or adduced at the Confirmation Hearing (a) is persuasive and credible, (b) has not been controverted by other evidence, and (c) established that the Joint Plan is feasible, and has a reasonable likelihood of success, in that, after the Effective Date, the Diocese should have adequate capital to fund its ongoing business operations and the Trust should have adequate capital to effect the payments required under the Joint Plan, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

### XXIV. Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12))

RR.    The Joint Plan, as amended by this Confirmation Order, provides for the payment of all fees payable pursuant to section 1930 of title 28 of the United States Code on or before the

22164819.v4

Effective Date, or as soon as practicable after the Effective Date, in compliance with section 1129(a)(12) of the Bankruptcy Code.

### XXV.  Retiree Benefits; Other Sections (11 U.S.C. §§ 1129(a)(13)-(15))

SS.    Section 1129(a)(13) has been satisfied, as the Joint Plan provides for the continuation of retiree benefits.    Sections 1129(a)(14)-(15) of the Bankruptcy Code are inapplicable as the Diocese (i) has no domestic support obligations (1129(a)(14)), and (ii) is not an individual (1129(a)(15)).

### XXVI. Nonprofit Corporation (11 U.S.C. § 1129(a)(16))

TT.    Section 1129(a)(16) requires that any transfers of property by a not-for-profit corporation shall be made in accordance with any applicable provisions of nonbankruptcy law. All transfers pursuant to the Joint Plan are in accordance with any applicable provisions of nonbankruptcy law, thus satisfying 1129(a)(16) of the Bankruptcy Code.  To the extent approval for any transfer contemplated in the Joint Plan may be required under section 511 or 511-a of the New York State Not-For-Profit Corporation Law, the Bankruptcy Court has jurisdiction to approve, and does hereby approve such transfers, and no further approval of, or authorization from, the New York State Attorney General or the Supreme Court of the State of New York is required.

### XXVII. Confirmation of Plan Over Nonacceptance of Impaired Classes (11 U.S.C. § 1129(b))

UU.    Class 6 has been presumed to reject the Joint Plan. Class 6 Inbound Contribution Claims are contingent claims for contribution, which are subject to mandatory disallowance under section 502(e)(1)(B) of the Bankruptcy Code, and no junior class of claimants or interest holders is receiving or retaining any property under the Joint Plan.  Furthermore, the Joint Plan satisfies all of the requirements of Bankruptcy Code section 1129(a) except section 1129(a)(8),

18

does not discriminate unfairly against the Class 6 Claimants, and is fair and equitable with respect to Class 6 Claims. The Joint Plan, therefore, satisfies section 1129(b) of the Bankruptcy Code.

### XXVIII. Only One Plan (11 U.S.C. § 1129(c))

VV.    Other than the Joint Plan, no plan has been filed or is capable of confirmation in the Chapter 11 Case.  The Joint Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

### XXIX. Principal Purpose of the Plan; Not a Small Business Case (11 U.S.C. §§ 1129(d), 1129(e))

WW.    The principal purpose of the Joint Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e), and the Chapter 11 Case is not a small business case.    The Joint Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code, and section 1129(e) of the Bankruptcy Code is inapplicable.

### XXX.   Satisfaction of Confirmation Requirements

XX.    Based upon the foregoing, the Joint Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code and the Joint Plan should be confirmed.

### XXXI. No Successor Liability

YY.    Except as otherwise provided in the Joint Plan or Insurance Settlement Agreements, the post-confirmation Diocese shall not be liable for Claims against or liabilities of the Diocese arising prior to the Petition Date, or any Claims against or liabilities of the Participating Parties, including under any theory of successor liability.

### XXXII. Retention of Jurisdiction

22164819.v4

ZZ.    This Court may properly retain jurisdiction over all matters set forth in the Joint

Plan, this Confirmation Order, and section 1142 of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED
THAT:**

1.    The Joint Plan, a copy of which is attached hereto as ***Exhibit A***, complies with all

applicable provisions of the Bankruptcy Code and applicable Bankruptcy Rules relating to

confirmation.  The Joint Plan, all provisions thereof, and all exhibits and schedules thereto, are

hereby approved and confirmed as having satisfied all of the requirements of chapter 11 of the

Bankruptcy Code.  For the avoidance of doubt, all modifications or amendments to the Joint Plan

since the solicitation thereof (specifically including the Modifications) are approved pursuant to

section 1127(a) of the Bankruptcy Code and do not require additional disclosure or

re-solicitation under Bankruptcy Rule 3019.  The terms of the Joint Plan are incorporated in this

Confirmation Order by reference and are an integral part of this Confirmation Order.

2.    Pursuant to sections 1123(a), 1141(a), and 1142 of the Bankruptcy Code and the

provisions of this Confirmation Order, but subject to the occurrence of the Effective Date, the

terms of the Joint Plan (including the exhibits and schedules to, and all documents and

agreements created pursuant to, the Joint Plan) and Plan Supplement shall be and hereby are,

valid, binding, and enforceable notwithstanding any otherwise applicable non-bankruptcy law.

The Plan Proponents may modify, amend, or enter into, as necessary, all documents arising in

connection with the Joint Plan, without further order of the Court, subject to and in accordance

with the provisions of the Joint Plan (specifically including Section 14.1 thereof).

3.    All Claims and Interests shall be, and hereby are, classified and treated as set forth

in the Joint Plan.  The Joint Plan's classification scheme shall be, and hereby is, approved.

22164819.v4

4.      The classifications set forth in connection with voting on the Joint Plan: (i) were set forth on the ballots solely for purposes of voting to accept or reject the Joint Plan; (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Joint Plan for distribution purposes; (iii) may not be relied upon by any holder of a Claim as representing the actual classification of such Claims under the Joint Plan for distribution purposes; and (iv) shall not bind the Diocese or the Trust.

5.      The treatment of Claims and Interests provided in the Joint Plan is approved.

6.      All Holders of Claims are precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Joint Plan.

*Objections*

7.      Any objections to confirmation of the Joint Plan (including any reservations of rights contained therein) that (a) have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, (b) are not cured by the relief granted herein, or (c) have not been otherwise resolved as stated by the Diocese on the record of the Confirmation Hearing, hereby are overruled on the merits and in their entirety.

*Further Action*

8.      The Plan Proponents, along with their respective professionals, are authorized to take or cause to be taken all actions necessary or appropriate to implement all provisions of, and to consummate, the Joint Plan and to execute, enter into, or otherwise make effective all documents arising in connection therewith, prior to, on and after the Effective Date.  All such actions taken or caused to be taken shall be, and hereby are, authorized and approved by the Court such that no further approval, act or action need to be taken under any applicable law, order, rule or regulation, including, without limitation, (a) the incurrence of all obligations

22164819.v4

contemplated by the Joint Plan and the making of distributions, and (b) the implementation of all settlements and compromises, as set forth in or contemplated by the Joint Plan.

9.      Without limiting the generality of the foregoing, Stretto, Inc., the Court-appointed claims agent in the Chapter 11 Case, is authorized and directed to make such revisions to the official claims register as are necessary to reflect the relief granted in this Confirmation Order.

*Plan Supplement*

10.     The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Diocese at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Diocese are authorized when they are finalized, executed, and delivered.  Without further order or authorization of this Court, but subject, if applicable, to the prior approval of the Settling Insurers, the Plan Proponents are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Joint Plan and Insurance Settlement Agreements.  Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby.

11.     The Diocese shall adopt, institute, and enforce the Child Protection Protocols attached to the Plan Supplement as Exhibit 6.

22164819.v4

*Establishment of Trust; Payment Authorized*

12.     Establishment of the Trust in accordance with the Joint Plan and Trust Documents is hereby approved.  DW Harrow & Assoc., LLC is hereby appointed to serve as Trustee for the Trust.  On and after the Effective Date, the Trust shall be funded with the Trust Assets subject to and in accordance with the terms of the Joint Plan.  The Diocese and Participating Parties, as applicable, are authorized to and shall make payments pursuant to the terms of the Joint Plan at such times as are set forth in the Joint Plan.

13.     Upon the occurrence of the Effective Date, all right, title and interest of the Diocese and the Participating Parties in and to any Insurance Settlement Amount to be paid pursuant to any of the Insurance Settlement Agreements shall be transferred to and vest solely and exclusively in the Trust, and neither the Diocese nor the Participating Parties shall have or retain any interest therein.  Each Settling Insurer will pay to the Trust the Insurance Settlement Amount set forth in such Settling Insurer's Insurance Settlement Agreement pursuant to the terms and conditions thereof.

14.     Except as otherwise provided in this Confirmation Order, the Joint Plan, the Insurance Settlement Agreements, or the Sale Orders, on the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all property of the Estate or otherwise dealt with by the Joint Plan is vested in the Trust and the Diocese, as applicable, as set forth in the Joint Plan, free and clear of all Liens, Interests, and Claims of Creditors.

*Insurance Settlement Agreements*

15.     The terms and provisions of each Insurance Settlement Agreement approved pursuant to a Sale Order entered prior to, or contemporaneously with, this Order are incorporated herein as though fully set forth herein.  The terms and provisions of any Insurance Settlement

Agreement approved by subsequent order of this Court shall also be deemed to be incorporated herein, except as may be expressly provided in the Sale Order approving such Insurance Settlement Agreement.

16.        The Insurance Settlement Agreements approved by this Court (including, without limitation, the releases set forth therein) are binding in all respects upon the Diocese and its Related Persons, the Participating Parties and their Related Persons, the estate, the Trust, the successors of any of the foregoing, and all of the other Diocese Parties (as defined in the Sale Orders), in each case, as set forth in the applicable Insurance Settlement Agreements and Sale Order(s) approving same.  The Trustee is hereby ordered to perform the obligations imposed upon the Trustee by such Insurance Settlement Agreements.

17.    Without limiting the generality of the foregoing, subject to and upon the occurrence of the Effective Date: (a) the releases in each Insurance Settlement Agreement that has been fully consummated and effectuated in accordance with the terms and conditions therein are hereby fully adopted and ratified in all respects; and (b) such releases shall be binding upon the Diocese, Participating Parties, all other Diocese Parties, and the Trust, as and to the extent set forth in the Joint Plan and applicable Insurance Settlement Agreement.

### *Indemnification Provisions*

18.    The indemnification and reimbursement provisions in the Joint Plan, including, without limitation, Section 8.14, are hereby approved and are binding (including upon the Trust and Trustee) in all respects.

### *Discharge*

19.    Pursuant to section 1141(d)(1) of the Bankruptcy Code, except as otherwise set forth in the Joint Plan, confirmation of the Joint Plan will discharge the Diocese from any debt

that arose before the Petition Date whether or not (a) a proof of claim based on such debt was filed or deemed filed under section 501 of the Bankruptcy Code, (b) such claim is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such claim has accepted the Joint Plan.

20.     Nothing in the Joint Plan discharges the Diocese from its obligations under the NBT Secured Debt Documents, with the exception of NBT's release of the NBT Lien against the assets of the Diocese pursuant to Section 2.3.2 of the Joint Plan.

21.     Nothing in the Joint Plan or this Confirmation Order discharges, releases, exculpates, excuses, or otherwise frees the Diocese or any Participating Party from its obligations under any Insurance Settlement Agreement.

22.     Nothing in the Joint Plan or this Confirmation Order discharges, releases, exculpates, excuses, or otherwise frees the Diocese or any Participating Party from any liability they may have to any Person with respect to Abuse that occurred, or is alleged to have occurred, on or after the Petition Date.

### *Injunctions, Exculpation, and Related Provisions*

23.     The injunctions, releases, and exculpations set forth in the Joint Plan, including those detailed in Section 12 thereof: (a) are fair and equitable and were given for valuable consideration; (b) are in the best interests of the Diocese and all parties-in-interest; (c) are appropriate and consistent with the Bankruptcy Code and applicable law; (d) are hereby approved and authorized in all respects; and (e) shall be, and hereby are, immediately effective and binding on all Persons and Entities on and after the Effective Date, as and to the extent set forth in the Joint Plan, without further order or action of this Court or any other party.

24.     Channeling Injunction.  The Channeling Injunction set forth in Section 12.3 of the Joint Plan is hereby approved.

In consideration of the undertakings of the Protected Parties, their contributions to the Trust, and other consideration given, and, where applicable, pursuant to their respective settlements with the Diocese and to further preserve and promote the agreements between and among the Protected Parties, and to supplement where necessary the injunctive effect of the discharge as provided in sections 524 and 1141 of the Bankruptcy Code, and pursuant to sections 105 and 363 of the Bankruptcy Code:

(1) any and all Channeled Claims are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts established under the Joint Plan, the Allocation Protocol, and the Trust Agreement as the sole and exclusive remedy for all holders of Channeled Claims; and

(2) all Persons who have held or asserted, hold or assert, or may in the future hold or assert any Channeled Claims are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim against the Protected Parties, including: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any of the Protected Parties or against the property of any of the Protected Parties; (b) enforcing, attaching, collecting or recovering, or seeking to accomplish any of the preceding, by any manner or means, any judgment, award, decree, or order with respect to any Channeled Claim against any of the Protected Parties; (c) creating, perfecting, or enforcing, or seeking to accomplish any of the preceding, any lien of any kind relating to any Channeled Claim against any of the Protected Parties, or the property of the Protected Parties; (d) asserting, implementing, or effectuating, any Channeled Claim of any kind against: (i) any obligation due any of the Protected Parties; (ii) any of the Protected Parties; or (iii) the property of any of the Protected Parties; (e) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Joint Plan; and (f) asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against an obligation due to any of the Protected Parties or the property of any of the Protected Parties.

Notwithstanding anything to the contrary in Section 12 of the Joint Plan or otherwise in the Joint Plan, Litigation Claimants and the Trust shall be permitted to name the Diocese and any Participating Party in any proceeding to resolve whether the Diocese or such Participating Party has

22164819.v4

liability for a Litigation Claim, and the amount of any such liability, for the purpose of obtaining insurance coverage from Non-Settling Insurers under the Non-Settling Insurer Policies, and for the purpose of pursuing any and all Insurance Claims against the Non-Settling Insurers. Any such judgments or awards will be turned over to the Trust for distribution in accordance with Section 4.6 of the Joint Plan. For the avoidance of doubt, recourse with respect to any and all Litigation Claims is expressly limited to the proceeds of Non-Settling Insurer Policies and all other costs and/or damages that may be recoverable against any Non-Settling Insurers, as and to the extent permitted by the Joint Plan.

25.    <u>Settling Insurer Injunction</u>.  The Settling Insurer Injunction set forth in each Sale Order, and referenced in Section 12.4 of the Plan, is hereby adopted and ratified in all respects.

Pursuant to sections 105(a), 363, and 1123 of the Bankruptcy Code, and in consideration of the undertakings of the Settling Insurers pursuant to the Insurance Settlement Agreements, including the Settling Insurers' purchase of the Purchased Property free and clear of all Claims and Interests pursuant to section 363(f) of the Bankruptcy Code, and as and to the extent set forth in the Sale Orders, any and all Persons who have held, now hold, or who may in the future hold any Claims or Interests (including all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Abuse Claimants, perpetrators, Covered Parties, any other additional insureds or assureds or named insureds or assureds, Non-Settling Insurers, the Diocese, the Participating Parties, and all others holding Claims or Interests of any kind or nature whatsoever, including, without limitation, those Claims released or to be released pursuant to the Insurance Settlement Agreements), which Claims or Interests are under, arise out of, relate to, or connect in any way with an Abuse Claim or any of the Purchased Property, including, without limitation, (a) Abuse Claims (whether Consenting Abuse Claims or Non-Participating Abuse Claims), Unknown Abuse Claims, Insurance Claims, Inbound Contribution Claims, Insurer Contribution Claims, Related Insurance Claims, Released Insurance Claims, Direct Action Claims, Abuse Actions, GMVA Claims, and all other Channeled Claims, (b) the payment of any of the Claims identified previously, including, without limitation, Medicare Claims, and (c) all other Barred Claims or Interests, are, to the maximum extent permitted by law, hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Claim or Interest against any of (x) the Settling Insurer Releasees or any Settling Insurer Related Persons, (y) the assets or property of any Settling Insurer Releasee or any Settling Insurer Related Person, or (z) the Purchased Property, including by:

22164819.v4

(1) commencing or continuing in any manner any action or other proceeding of any kind against any Settling Insurer Releasee or any Settling Insurer Related Person, or against the property or assets of any of the foregoing;

(2) enforcing, attaching, collecting, or recovering, or seeking to accomplish any of the preceding, by any manner or means, any judgment, award, decree, or order against any Settling Insurer Releasee or any Settling Insurer Related Person, or against the property or assets of any of the foregoing;

(3) creating, perfecting, or enforcing, or seeking to accomplish any of the preceding, any lien of any kind against any Settling Insurer Releasee or any of Settling Insurer Related Person, or against the property or assets of any of the foregoing;

(4) asserting, implementing, or effectuating any such Claim of any kind against: (A) any obligation due to any Settling Insurer Releasee or any Settling Insurer Related Person, (B) any Settling Insurer Releasee or any Settling Insurer Related Person, or (C) the property or assets of any Settling Insurer Releasee or any Settling Insurer Related Person;

(5) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of this Order; and

(6) asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against an obligation due to any Settling Insurer Releasee, any Settling Insurer Related Person, or against the property or assets of any of the foregoing.

26.     Notwithstanding anything to the contrary in the foregoing, the Settling Insurer Injunction does not apply to ISO Exception claims, as and to the extent provided in the Interstate Insurance Settlement Agreement.

27.     The Settling Insurer Injunction will be effective with respect to a Settling Insurer only as of the date that the Trust receives the Insurance Settlement Amount from that Settling Insurer pursuant to the terms of that Settling Insurer's Insurance Settlement Agreement. The Settling Insurer Injunction bars pursuit of the above-referenced Claims and actions against the

28

Settling Insurer Releasees, Settling Insurer Related Persons, and property or assets of each (including the Purchased Property), but against no other person or thing; provided, however, nothing in this Settling Insurer Injunction shall limit, or be deemed or otherwise interpreted to limit, the scope of the discharge or Channeling Injunction in favor of the Protected Parties.  The foregoing injunctive provisions are an integral part of the Joint Plan and are essential to the Joint Plan's consummation and implementation.  It is intended that the channeling of Channeled Claims as provided in Section 12.3 of the Joint Plan shall inure to the benefit of the Protected Parties.  In a successful action to enforce the provisions of Section 12.3 of the Joint Plan in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

28.    Exculpation.  The exculpation provision set forth in Section 12.9 of the Joint Plan is hereby approved.  From and after the Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party shall be released from, any claim by any other Exculpated Party, by any Holder of a Claim, or by any other Party in Interest, for any act or omission (a) that occurred from the Petition Date through the Effective Date in connection with this Chapter 11 Case or (b) in connection with the preparation and filing of this Chapter 11 Case, the formulation, negotiation, or pursuit of confirmation, of a Joint Plan, the consummation of the Joint Plan, and the administration of the Joint Plan or the property to be distributed under the Joint Plan, except for claims arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any Exculpated Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to

22164819.v4

its duties and responsibilities (if any) under the Joint Plan.  Without limiting the generality of the foregoing, the Committee, the Diocese, the Participating Parties, and their respective officers, trustees, boards, committee members, employees, attorneys, financial advisors, experts, expert witnesses, and other professionals shall be entitled to and granted benefits of section 1125(e) of the Bankruptcy Code and the Channeling Injunction.  For the avoidance of doubt, this paragraph 28 does not (and shall not be deemed to) exculpate or release the Diocese, any Participating Party, the Trustee, or the Trust, from any obligations under the Insurance Settlement Agreements.

29.     <u>Gatekeeper Injunction</u>.  The Gatekeeper Injunction set forth in Section 12.10 of the Joint Plan is hereby approved.

30.     To the extent permitted by law, and subject in all respects to Section 12 of the Joint Plan, no Enjoined Party may commence or pursue against any Protected Party (a) an Abuse Claim or (b) any other Claim or cause of action that arose, arises from, or is related to an Abuse Claim, the Chapter 11 Case, the negotiation of the Joint Plan, the administration of the Joint Plan or property to be distributed under the Joint Plan, the wind-down or reorganization of the business of the Diocese, the administration of the Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or cause of action represents a colorable Claim against a Protected Party and (ii) subject in all respects to the Channeling Injunction and Settling Insurer Injunction, specifically authorizing such Enjoined Party to bring such Claim or cause of action against any such Protected Party. The Bankruptcy Court will have jurisdiction to determine whether a Claim or cause of action is colorable and, to the extent legally permissible and as provided for in Section 13 of the Joint Plan, have jurisdiction to adjudicate the underlying colorable Claim or cause of action.  For the

avoidance of doubt, this Gatekeeper Injunction does not apply to Claims commenced for the purpose of seeking recovery from Non-Settling Insurers.

31.    For avoidance of doubt, the Gatekeeper Injunction shall not enjoin the prosecution of claims with respect to Abuse that occurred, or is alleged to have occurred, on or after the Petition Date.

32.    <u>Releases</u>.    Except as otherwise expressly provided in the Joint Plan or this Confirmation Order, and to the fullest extent authorized by applicable law, all Holders of Claims, including Abuse Claims (the "<u>Releasing Parties</u>"), shall be deemed to provide a full release to the Released Parties and their respective property from any and all Claims relating to the Diocese, the Participating Parties, the Estate, the conduct of the Diocese's and the Protected Parties' businesses, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement or Joint Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement, the Joint Plan, the filing and prosecution of the Chapter 11 Case, the pursuit of confirmation and consummation of the Joint Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Joint Plan, the business or contractual arrangements among the Releasing Parties and any Released Party, or any other act or omission, transaction, agreement, event, or other occurrence taking place before the Effective Date.   For the avoidance of doubt, this paragraph 32 does not (and shall not be deemed to) release the Diocese, any Participating Party, the Trustee, or the Trust from any obligations under the Insurance Settlement Agreements. The foregoing release shall be effective upon the occurrence of the Effective Date, except that, solely with respect to any Abuse Claim they may hold, each Abuse Claimant will release the Diocese or any Participating Party upon the

occurrence of the Abuse Claim Discharge Date applicable to such Abuse Claim.  For the further

avoidance of doubt, prior to the occurrence of the applicable Abuse Claim Discharge Date and

subject to the limitations set forth in the Joint Plan, a duly authorized Litigation Claimant may

name the Diocese or any Participating Party in a case or proceeding to adjudicate whether the

Diocese or any Participating Party has liability for an Abuse Claim and the amount of any such

liability, but that Litigation Claimant's recourse in such case or proceeding shall be limited to the

proceeds of any non-Settling Insurer Policies and all other costs and/or damages that may be

recoverable against any Non-Settling Insurers.   Under no circumstance may a Litigation

Claimant or the Trust name, or otherwise pursue, any Settling Insurer Releasees or any Settling

Insurer Related Person (in any action or otherwise) for or on account of a Channeled Claim or

Barred Claim following such Settling Insurer's payment of the applicable Insurance Settlement

Amount.

### *Limitations*

33.     Notwithstanding anything to the contrary herein or in the Joint Plan, the following

shall apply to Non-Settling Insurers: (a) a Claim by an Abuse Claimant against a Non-Settling

Insurer shall not be a Channeled Claim as against such Non-Settling Insurer, *provided* that any

Claims that assert liability against a Non-Settling Insurer in conjunction with a Protected Party

shall be Channeled Claims as to the Protected Party; (b) a Claim by an Abuse Claimant against a

Non-Settling Insurer shall not be released as against the Non-Settling Insurer by operation of the

Joint Plan; (c) Non-Settling Insurers shall not be beneficiaries of, or protected by, the Settling

Insurer Injunction, and the Settling Insurer Injunction shall not enjoin any Claim against a

Non-Settling Insurer, *provided* that any Claims which assert liability against a Non-Settling

Insurer in conjunction with a Settling Insurer Releasee or Settling Insurer Related Person shall be

22164819.v4

subject to the Settling Insurer Injunction as to the Settling Insurer Releasee and Settling Insurer

Related Person; (d) the injunctions provided in Section 12.1 and 12.2 of the Joint Plan, and the

Gatekeeper Injunction in Section 12.10, shall not enjoin Claims by any Abuse Claimant against a

Non-Settling Insurer; and (e) all Claims by any Abuse Claimant against a Non-Settling Insurer

are preserved as against the Non-Settling Insurer and are not affected by the terms of the Joint

Plan.

### *Neutrality*

34.     As set forth in Section 8.8.2 of the Joint Plan:

Nothing in the Joint Plan, the Allocation Protocol, the Trust Documents, the Plan Documents, any Confirmation Order (including any provision in the Confirmation Order), or any judgment, order, finding of fact, conclusion of law, determination or statement (written or verbal, on or off the record) made by the Bankruptcy Court, the District Court, or entered by any other court exercising jurisdiction over the Bankruptcy Case, including in any judgment, order, writ or opinion entered on appeal from any of the foregoing, shall in any Action brought by or against a Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding:

        a.     constitute an adjudication, judgment, trial, determination on the merits, finding, or conclusion of law establishing:

        (i)     or liquidating the liability (in the aggregate or otherwise) of (a) the Diocese, the Participating Parties, or the Trust, with respect to any Abuse Claims; or (b) any Non-Settling Insurer with respect to any Insurance Claim;

        (ii)     the liability or obligation of the Diocese, Participating Parties, or Trust with respect to any Abuse Claim;

        (iii)     that the aggregate value of the Abuse Claims is equal to the amount to be paid by the Diocese and/or the Participating Parties into the Trust;

        (iv)     that it is reasonable, in good faith, or consistent with the terms and conditions of any Non-Settling Insurer Policy for any of the Diocese, the Participating Parties, or the Trust, to settle, allow, assign any value to, liquidate, and/or pay (or present to any Non-Settling Insurer for payment) any Abuse Claim on any terms or conditions contemplated by the Joint Plan, the Allocation Protocol (including any procedures, matrices or criteria used or considered in valuing, estimating or allowing Abuse

Claims thereunder), any other Plan Documents, or any other document or agreement;

(v)    that the Joint Plan, any other Plan Document, or any other document or agreement (including any procedures, matrices or criteria used or considered in valuing, estimating or allowing Abuse Claims thereunder) are reasonable or consistent with any procedures that were used to evaluate, settle, or pay Abuse Claims against the Diocese and the Participating Parties before the Petition Date or under the terms and conditions of any Non-Settling Insurer Policy or applicable nonbankruptcy law;

(vi)    that the conduct of the Diocese, Participating Parties, the Committee, or the Abuse Claimants, in connection with the negotiation, development, settlement and/or implementation of the Joint Plan (including the aggregate value or amount of the DOS Entities' Cash Contribution), the other Plan Documents, or any related documents or agreements was, is, or will be consistent with the terms and conditions of any Non-Settling Insurer Policy or applicable nonbankruptcy law;

(vii)    that any Non-Settling Insurer was invited to participate in or participated in, consulted on, negotiated, and/or consented to the Allocation Protocol, the Trust Documents and other Plan Documents; and

b.    have any res judicata, collateral estoppel or other preclusive effect with respect to any matter set forth in Section 8.8.2(a) of the Joint Plan, or otherwise prejudice, diminish, impair, or affect (under principles of waiver, estoppel, or otherwise) any defense, Claim or right any Non-Settling Insurer may have under any Non-Settling Insurer Policy or applicable non-bankruptcy law with respect thereto. Without limiting the foregoing, but subject to Section 8.8.4 of the Joint Plan, it is expressly agreed by all Neutrality Parties that the Neutrality Parties are not litigating any issue set forth in Section 8.8.2(a) of the Joint Plan or any other Non-Settling Insurer coverage defenses, rights, obligations, or other coverage issue of any kind in the Chapter 11 Case.

c.    constitute a decision on any matter at issue or which may be raised as an issue in any Action by or against a Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding. Thus, any judgment, order, finding of fact, conclusion of law, determination or other statement of the Bankruptcy Court or issued or affirmed by the District Court in this Bankruptcy Case, or entered by any other court exercising jurisdiction over the bankruptcy case, including any Confirmation Order or the Allocation Protocol and/or other Plan Documents and any finding, conclusion or determination entered in connection therewith, is not intended – and shall not be construed – to constitute a finding, conclusion or determination regarding any matter set forth in Section 8.8.2(a) of the Joint Plan or any other issue for any insurance coverage purpose whatsoever, and the

34

Neutrality Parties shall not contend otherwise in any Action by or against a Non-Settling Insurer;

d.      subject to Section 8.8.4 of the Joint Plan, impair any Non-Settling Insurer's legal, equitable, or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims, or any policyholder's legal, equitable or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims.  The Neutrality Parties shall retain, and be permitted to assert, in any Action against any Non-Settling Insurer, all Claims and/or defenses, including any coverage defenses related to the Abuse Claims, the Insurance Claims and/or the Non-Settling Insurer Policies, notwithstanding any provision of the Joint Plan, Allocation Protocol, the Trust Documents, the other Plan Documents, the Confirmation Order, any findings of fact and/or conclusions of law with respect to the confirmation of the Plan, or any Final Order or opinion entered on appeal from the Confirmation Order; or

e.      subject to Section 8.8.4 of the Joint Plan, impair any Non-Settling Insurer's Insurer Contribution Claims, which may be asserted as a defense or counterclaim against the Diocese, the Participating Parties or the Trust (as applicable) in any Action by or against any Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding.  To the extent the Insurer Contribution Claims of a Non-Settling Insurer are determined to be valid, the liability (if any) of such Non-Settling Insurer to the Trust shall be reduced by the amount of such Insurer Contribution Claims.  For avoidance of doubt, and notwithstanding anything to the contrary in Section 8.8.2 of the Joint Plan, all Insurer Contribution Claims shall be channeled to the Trust in accordance with Section 12.5.1 of the Joint Plan and no Insurer Contribution Claim shall be the basis for any affirmative recovery against the Diocese or any Protected Party.

No Neutrality Party shall assert anything to the contrary of Section 8.8.2 of the Joint Plan in any Action against a Non-Settling Insurer.  Each Neutrality Party shall be entitled to enforce Section 8.8.2 of the Joint Plan.

*Judgment Reduction*

35.    Section 12.5.2 of the Joint Plan is specifically approved and authorized by the Court as necessary and appropriate.

*Provisions Related to Litigation Claims*

36.     The Plan Proponents, Trust, and Trustee are authorized to implement immediately all terms of the Joint Plan necessary to allow Litigation Claims to proceed with litigation in accordance with the Joint Plan.

37.     In furtherance of the foregoing, but subject in all respects to the terms of paragraph 38 hereof, the automatic stay arising under section 362(a) of the Bankruptcy Code hereby is modified as and to the limited extent necessary to permit Designated Litigation Claims (as defined below) to proceed prior to the Effective Date but otherwise in accordance with the terms of the Joint Plan.  Any expenses reasonably incurred by the Diocese, the Estate, or the Participating Parties, in connection with the foregoing, will act as a credit against, and shall be deducted from, the DOS Entities' Cash Contribution.  For the avoidance of doubt, the Diocese will have no obligation to fund the Trust prior to the Effective Date.

38.     For purposes of this Confirmation Order, "Designated Litigation Claim" means any Litigation Claim that, at the request of the Committee and on terms acceptable to the Diocese, the Trustee authorizes to proceed pursuant to Section 4.3.1 of the Joint Plan; *provided, however*, that no Litigation Claim shall be so authorized unless the Holder thereof executes an agreement, in form and substance acceptable to the Diocese and Committee, setting forth the terms and conditions upon which the Designated Litigation Claim shall be allowed to proceed, including any limitations to be imposed upon such Designated Litigation Claim prior to the occurrence of the Effective Date or in the event the Effective Date does not occur.

39.     Notwithstanding anything to the contrary in paragraphs 36-38, the automatic stay arising under section 362 of the Bankruptcy Code shall not be lifted or otherwise modified with respect to any Claim that actually, allegedly, or potentially implicates a Settling Insurer Policy, nor shall any such Claim be eligible for selection as a Designated Litigation Claim or otherwise

36

authorized to proceed as a Litigation Claim prior to the Effective Date. To the extent the automatic stay has previously been lifted for a Claim that actually, allegedly, or potentially implicates any Settling Insurer Policy, the automatic stay hereby is reinstated as to such Claim.

### *Dismissal of Pending Actions*

40.     As soon as reasonably practicable following the Effective Date, and in accordance with Section 4.10 of the Joint Plan, all Holders of Channeled Claims must dismiss, with prejudice, any pending actions against the Diocese and/or Participating Parties, which are based on Channeled Claims, to the extent a Settling Insurer provides, or is alleged to provide, insurance coverage for such Claims and such Settling Insurer has paid the applicable Insurance Settlement Amount; *provided, however*, that such pending actions against the Diocese and/or a Participating Party need not be dismissed to the extent that a Non-Settling Insurer also provides, or is alleged to provide, insurance coverage for such Claims; *provided further* that the continuation of such Claims or actions is subject in all respects to the provisions of the Joint Plan, the Insurance Settlement Agreements, the Sale Orders, and this Confirmation Order.

41.     Without limiting the generality of the foregoing, any currently pending Abuse Action, the continuation of which would violate Sections 12.1, 12.2, 12.3, or 12.4 of the Joint Plan or the releases provided for under the Joint Plan or the Insurance Settlement Agreements, shall be dismissed with prejudice following the Trustee's receipt of an Abuse Claim Release Agreement executed by the applicable Abuse Claimant; *provided* that Litigation Claims (or Abuse Claims that may become Litigation Claims) will be released as against the Diocese and Participating Parties upon the applicable Abuse Claim Discharge Date in accordance with Sections 12.2.3 and 12.7 of the Joint Plan. For the avoidance of doubt, the Holder of a Litigation Claim (or an Abuse Claim that may become a Litigation Claim) may not, under any

22164819.v4

circumstance, name, or otherwise pursue, any Settling Insurer Releasee or Settling Insurer
Related Person (in any such Abuse Action or otherwise) for or on account of a Channeled Claim
or Barred Claim following such Settling Insurer's payment of the applicable Insurance
Settlement Amount.

### *Certification Required*

42.    Counsel for Abuse Claimants shall certify to the Trustee that counsel's fees
charged to such Abuse Claimants comply with Rule 1.5 of the New York Rules of Professional
Conduct and 22 NYCRR 1015.15.  Specifically, counsel for Abuse Claimants shall certify to the
Trustee that counsel's fee as to each Abuse Claimant, as a percentage, does not exceed 33 and
1/3 percent of any sum obtained by the Abuse Claimant pursuant to the Joint Plan.

43.    To the extent any counsel for an Abuse Claimant does not provide the
certification described in paragraph 42 of this Confirmation Order to the Trustee, such counsel's
fee shall be reviewed by a retired New York State Supreme Court Justice selected by the Trustee.
The cost of such review shall be borne by counsel for the Abuse Claimant who does not provide
the certification described in paragraph 42 of this Confirmation Order.  Following the review, the
Justice shall issue and provide to the Trustee a determination of whether such Abuse Claimant's
counsel's fee is reasonable under the circumstances of each case.

44.    The Trustee is not authorized to make distributions to Abuse Claimants
represented by counsel until the Trustee receives (a) the certification described in paragraph 42
of this Confirmation Order; or (b) as provided for in paragraph 43 of this Confirmation Order, a
determination by a retired New York State Supreme Court Justice that an Abuse Claimant's
counsel's fee is reasonable.

### *Immediate Effect; Waiver of Stay*

45.     Notwithstanding the stay contemplated by Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, or otherwise, and except as otherwise provided in section 1141(d) of the Bankruptcy Code, immediately after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the Joint Plan and this Confirmation Order shall be immediately effective, enforceable, and binding upon (a) the Diocese and all successors thereto (specifically including the Trust and Trustee), the Participating Parties, and all of their respective Related Persons and/or Agents, (b) all Persons or Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Joint Plan, (c) any and all non-debtor parties to Executory Contracts or Unexpired Leases with the Diocese, (d) all present and former Holders of Claims and Interests, and (e) all other Persons or Entities affected in any manner by the Joint Plan, in each case regardless of whether such Person or Entity (i) receives or retains any property or interest in property under the Joint Plan, (ii) holds a Claim or Interest that is Impaired under the Joint Plan, (iii) has accepted the Joint Plan, (iv) has failed to vote to accept or reject the Joint Plan or voted to reject the Joint Plan, (v) is entitled to a distribution under the Joint Plan, or (vi) has filed a Proof of Claim in the Chapter 11 Case.

46.     For the avoidance of doubt, this Confirmation Order shall be effective and enforceable immediately upon entry; pursuant to, and in accordance with, Bankruptcy Rules 3020(e), 6004(h), 6006(d), and/or 7062, the Court hereby "orders otherwise" (*e.g.*, FED. R. BANKR. P. 3020(e)) and waives in its entirety the stay(s) contemplated by such rules.

### *Notice of Effective Date; Dissolution of Committee*

47.     Within ten (10) days after the Effective Date, or as soon as practicable thereafter, the Diocese or its authorized agent shall serve notice of the entry of this Confirmation Order and the occurrence of the Effective Date (the "Notice of Effective Date"). Notwithstanding the

foregoing, no service of the Notice of Effective Date shall be required to be made upon any Person to whom the Diocese mailed a (a) notice of the meeting of Creditors under section 341 of the Bankruptcy Code, (b) notice of the bar date for filing Proofs of Claim, or (c) a solicitation package or other solicitation-related notice and, in each instance, received such notice or materials returned by the United States Postal Service marked "undeliverable as addressed," "moved – left no forwarding address," "forwarding order expired," or other similar marking or reason, unless the Diocese has been informed in writing by such person of that Person's new address.  Service of the Notice of Effective Date as provided herein shall constitute good and sufficient notice pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) of entry of this Confirmation Order and of the relief granted herein and, except as otherwise set forth in this Confirmation Order, no other or further notice need be given.

48.     On the Effective Date, the Committee shall be dissolved and its members shall be deemed released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from or in connection with the Chapter 11 Case or the Joint Plan and its implementation, and the retention and employment of the Committee's attorneys, financial advisors and other agents shall terminate, except with respect to (a) applications filed under sections 330 and 331 of the Bankruptcy Code, (b) any motions seeking the enforcement of the provisions of the Joint Plan or this Confirmation Order, and (c) any appeals of this Confirmation Order.

### *No Further Approval Required; Exemption from Certain Taxes and Fees*

49.     This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Joint Plan and any documents,

22164819.v4

instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Joint Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

50.     Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Joint Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and all state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation instruments or other documents without the payment of any such tax or governmental assessment.

### *United States Trustee Fees*

51.     All fees due and payable under 28 U.S.C. § 1930 and not paid before the Effective Date shall be paid on and after the Effective Date when due and payable to the extent due under applicable law.  After the Effective Date, the Diocese shall pay quarterly fees to the U.S. Trustee to the extent due under applicable law.  All parties' rights to raise any and all issues with respect to the calculation and assessment of fees pursuant to 28 U.S.C. § 1930(a)(6) are hereby reserved.

### *Claim Objections and Designation of Pass-Through Claims*

52.     In accordance with Sections 1.1.40 and 9.1 of the Joint Plan, the Diocese may object to Non-Abuse Claims at any time prior to the applicable Claims Objection Deadline.

53.     In accordance with Section 2.3.3 of the Joint Plan, the Diocese may designate any Claim as a Pass-Through Claim by filing notice of such election on the Bankruptcy Court's docket not later than 60 days after the occurrence of the Effective Date.

*Miscellaneous*

54.     The failure to specifically include any particular provision of the Joint Plan in this Confirmation Order will not diminish the effectiveness of such provision, it being the intent of the Court that the Joint Plan is confirmed in its entirety and incorporated in this Confirmation Order by reference.

55.     Unless otherwise agreed to in writing, no distribution on account of any Claim, whether allowed on or after the Effective Date, shall be deemed to waive the rights of the Diocese's Estate or the Trustee in connection with any Causes of Action, Avoidance Actions, or other claim against the holder of any Claim receiving such distribution.

56.     The Diocese shall have the right, subject to Section 14.1 of the Joint Plan and in accordance with section 1127 of the Bankruptcy Code, to modify the Joint Plan after the Confirmation Date and prior to substantial consummation, by filing a motion on notice as required under the applicable Bankruptcy Rules, and the solicitation of all Creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court.

57.     Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order and the Joint Plan shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

58.     Each term and provision of the Joint Plan, as it may have been altered or interpreted by this Court, is valid and enforceable pursuant to its terms.

59.     If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent Order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Joint Plan prior to the Diocese's receipt of written

22164819.v4

notice of any such order. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Joint Plan and all documents executed pursuant thereto or any amendments or modifications thereto.

60.     Subject in all respects to the satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Section 11.1 of the Plan, the Diocese is authorized to consummate the Joint Plan at any time.

61.     To the extent of any inconsistency between the provisions of the Joint Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern. Notwithstanding anything to the contrary in the foregoing, in the event or to the extent of a conflict between the terms of (a) any Insurance Settlement Agreement, on the one hand, and (b) the Joint Plan (or any document in the Plan Supplement), on the other, the terms of the applicable Insurance Settlement Agreement shall control and govern; and in the event or to the extent of a conflict between (y) any Sale Order, on the one hand, and (z) this Confirmation Order, on the other, the terms of the applicable Sale Order shall control and govern. The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further Order of this Court.

62.     This Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Joint Plan to the fullest extent permitted by law and as long as necessary for the purposes of sections 105(a), 1127, 1142(a) and 1144 of the Bankruptcy Code. Without limiting the generality of the foregoing, the Court shall retain jurisdiction over all

22164819.v4

matters set forth in Section 13.1 of the Joint Plan, subject to the limitations and provisions set

forth therein.

# # #

22164819.v4

## Exhibit A

Confirmed Joint Plan

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

In re:

The Roman Catholic Diocese of Syracuse,        Case No. 20-30663 (WAK)
New York,
                                                Chapter 11 Case

                        Debtor.

---

**FIRST MODIFIED FIFTH AMENDED JOINT CHAPTER 11 PLAN**
**OF REORGANIZATION FOR THE ROMAN CATHOLIC DIOCESE**
**OF SYRACUSE, NEW YORK**

**DATED SEPTEMBER 24, 2025**

**BOND, SCHOENECK & KING, PLLC**
Stephen A. Donato, Bar Roll No. 101522
Charles J. Sullivan, Bar Roll No. 507717
Grayson T. Walter, Bar Roll No. 518237
Sara C. Temes, Bar Roll No. 514148
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
Email: donatos@bsk.com
        sullivc@bsk.com
        walterg@bsk.com
        stemes@bsk.com

*Counsel to The Roman Catholic*
*Diocese of Syracuse, New York*

**STINSON LLP**
Robert T. Kugler *(admitted pro hac vice)*
Edwin H. Caldie *(admitted pro hac vice)*
50 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657
Email: robert.kugler@stinson.com
        ed.caldie@stinson.com

*Counsel to the Official Committee*
*of Unsecured Creditors*

# Table of Contents

**Page**

INTRODUCTION ......................................................................................................... 1

**SECTION 1.    DEFINITIONS AND INTERPRETATION** ................................... 3

    **1.1**    Definitions ........................................................................................ 3
    **1.2**    Interpretation:  Application of Definitions and Rules of Construction ............. 27
    **1.3**    Exhibits. .......................................................................................... 28
    **1.4**    Time Periods. .................................................................................... 28

**SECTION 2.    TREATMENT OF CLAIMS** ........................................................ 28

    **2.1**    Unclassified Claims. .......................................................................... 28
    **2.2**    Classification and Specification of Treatment of Claims. ................................ 30
    **2.3**    Classes of Claims. ............................................................................. 31

**SECTION 3.    ACCEPTANCE OR REJECTION OF THE PLAN** ..................... 36

    **3.1**    Impaired Classes Vote. ...................................................................... 36
    **3.2**    Presumed Acceptance of the Plan. ...................................................... 36
    **3.3**    Presumed Rejection of the Plan. ......................................................... 36
    **3.4**    Voting Classes. ................................................................................. 36
    **3.5**    Modification of Treatment of Claims. .................................................. 37
    **3.6**    Elimination of Vacant Classes. ........................................................... 37

**SECTION 4.    ABUSE CLAIMS.** ....................................................................... 37

    **4.1**    Trust Liability for Abuse Claims. ........................................................ 37
    **4.2**    Assessment of Abuse Claims. ............................................................. 37
    **4.3**    Treatment of Consenting Abuse Claims. .............................................. 37
    **4.4**    Treatment of Non-Participating Abuse Claims ...................................... 39
    **4.5**    Unknown Claimant Treatment ............................................................ 41
    **4.6**    Trust's Rights Against Non-Settling Insurers with Respect to Abuse
        Claims. ............................................................................................ 42
    **4.7**    Legal Effect of Estimation of Claims and Distributions Under the
        Allocation Protocol. .......................................................................... 43
    **4.8**    Release and Discharge of Abuse Claims. ............................................. 44
    **4.9**    Distributions to Abuse Claimants. ...................................................... 45
    **4.10**   Dismissal of Pending Litigation ......................................................... 48
    **4.11**   Claim Withdrawal. ............................................................................ 48
    **4.12**   Medicare Procedures. ........................................................................ 48

**SECTION 5.    SETTLING INSURERS** .............................................................. 50

    **5.1**    Insurance Settlement Agreements ........................................................ 50
    **5.2**    Sale Free and Clear of Interests of Settling Insurer Policies. ......................... 50
    **5.3**    Resolution of Claims Involving Settling Insurers .................................. 50

i

| | | |
|---|---|---|
| 5.4 | The Settling Insurer's Payments. | 51 |
| 5.5 | Further Assurances; Non-Material Modifications. | 51 |
| 5.6 | Waiver/Consent. | 51 |
| 5.7 | [Reserved] | 51 |
| 5.8 | Timing. | 51 |

**SECTION 6.    MATTERS RELATING TO NON-SETTLING INSURERS ..... 52**

| | | |
|---|---|---|
| 6.1 | Preservation of Rights and Obligations. | 52 |
| 6.2 | Estimations/Assessments of Abuse Claims Are Not Binding. | 52 |
| 6.3 | Post-Effective Date Preconditions to Coverage. | 53 |
| 6.4 | Trust Powers With Respect to Abuse Claims and Non-Settling Insurers. | 53 |
| 6.5 | Insurance Coverage Adversary Proceeding. | 54 |

**SECTION 7.    MEANS FOR IMPLEMENTATION OF PLAN ..... 54**

| | | |
|---|---|---|
| 7.1 | Plan Implementation. | 54 |
| 7.2 | Corporate Action. | 54 |
| 7.3 | Payments Effective Upon Tender. | 54 |
| 7.4 | Agreements, Instruments, and Documents. | 54 |
| 7.5 | Continuation of Insurance Policies. | 55 |
| 7.6 | Bar Date for Professional Fee Claims. | 55 |
| 7.7 | Bar Date for Other Administrative Claims. | 56 |
| 7.8 | Exit Financing. | 56 |

**SECTION 8.    THE TRUST ..... 56**

| | | |
|---|---|---|
| 8.1 | Establishment of Trust. | 56 |
| 8.2 | Funding of the Trust. | 56 |
| 8.3 | Vesting of Trust Assets. | 59 |
| 8.4 | Child Protection Protocols. | 60 |
| 8.5 | Appointment of the Trustee. | 60 |
| 8.6 | Rights and Responsibilities of Trustee. | 60 |
| 8.7 | Unknown Claimant Representative. | 61 |
| 8.8 | Trust Pursuit of Insurance Claims. | 61 |
| 8.9 | Investment Powers; Permitted Cash Expenditures. | 65 |
| 8.10 | Tax Matters. | 65 |
| 8.11 | DOS Entities' Post-Effective Date Costs Procedures. | 65 |
| 8.12 | Participating Party Unknown Abuse Claim Costs. | 67 |
| 8.13 | No Recourse Against Trustee. | 68 |
| 8.14 | Indemnification by Trust. | 68 |
| 8.15 | Trust Liability. | 69 |
| 8.16 | Termination. | 69 |

**SECTION 9.    GENERAL CLAIMS ADMINISTRATION ..... 69**

| | | |
|---|---|---|
| 9.1 | Objections to Non-Abuse Claims. | 69 |
| 9.2 | Determination of Claims. | 70 |
| 9.3 | No Distributions Pending Allowance. | 70 |

| 9.4 | Claim Estimation. | 70 |
| 9.5 | Treatment of Contingent Claims. | 71 |
| 9.6 | Controversy Concerning Impairment. | 71 |
| 9.7 | Treatment of Executory Contracts and Unexpired Leases. | 71 |

**SECTION 10.    PROVISIONS GOVERNING DISTRIBUTIONS ................................... 72**

| 10.1 | Disbursing Agents. | 72 |
| 10.2 | Manner of Payment. | 72 |
| 10.3 | Distribution Only to Holders of Allowed Claims. | 72 |
| 10.4 | Disputed Claim Reserve. | 72 |
| 10.5 | Transmittal of Distributions. | 72 |
| 10.6 | Timing of Distributions. | 73 |
| 10.7 | Time Bar to Check Payments. | 73 |
| 10.8 | No Professional Fees or Expenses. | 74 |
| 10.9 | No Interest on Claims. | 74 |
| 10.10 | Saturday, Sunday or Holiday. | 74 |
| 10.11 | Withholding Taxes. | 74 |
| 10.12 | Setoffs and Recoupment. | 74 |
| 10.13 | No *De Minimis* Distributions. | 74 |
| 10.14 | Prepayment. | 75 |

**SECTION 11.    EFFECTIVE DATE ................................................................................ 75**

| 11.1 | Conditions Precedent to Effective Date. | 75 |
| 11.2 | Waiver of Conditions. | 77 |
| 11.3 | Occurrence of Effective Date. | 77 |
| 11.4 | Notice of Effective Date. | 77 |
| 11.5 | Effect of Non-Occurrence of Condition. | 77 |

**SECTION 12.    EFFECTS OF PLAN CONFIRMATION AND EFFECTIVE DATE ........ 78**

| 12.1 | General Injunction and Discharge. | 78 |
| 12.2 | Injunction and Discharge of Abuse Claims and Inbound Contribution Claims. | 79 |
| 12.3 | Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties. | 83 |
| 12.4 | Settling Insurer Injunction. | 85 |
| 12.5 | Litigation/Settlement of Certain Claims. | 85 |
| 12.6 | Injunction Against Interference with Plan. | 88 |
| 12.7 | Release by Holders of Channeled Claims. | 88 |
| 12.8 | Mutual Releases. | 89 |
| 12.9 | Exculpation; Limitation of Liability. | 89 |
| 12.10 | Gatekeeper Injunction | 90 |
| 12.11 | Releases in Insurance Settlement Agreements. | 91 |
| 12.12 | Injunctions in Full Force and Effect. | 91 |
| 12.13 | Injunctions and Releases Integral. | 91 |
| 12.14 | Timing. | 91 |
| 12.15 | Non-Settling Insurers. | 91 |

**12.16**     Title to and Vesting of Assets. ................................................................. 92
**12.17**     Continued Corporate Existence. .............................................................. 92
**12.18**     Identity of Trustees and Officers. ............................................................ 92
**12.19**     Authority to Effectuate Plan. ................................................................... 92
**12.20**     Binding Effect. ......................................................................................... 93
**12.21**     Dissolution of Committee. ....................................................................... 93

**SECTION 13.**     **RETENTION OF JURISDICTION** ................................................. **93**

**13.1**     By the Bankruptcy Court. ........................................................................ 93
**13.2**     By the District Court. ............................................................................... 95
**13.3**     Actions to Enforce the Plan. .................................................................... 95
**13.4**     Case Closure. ........................................................................................... 96

**SECTION 14.**     **MISCELLANEOUS PROVISIONS** .................................................. **96**

**14.1**     Amendment or Modification of this Plan. ............................................... 96
**14.2**     Revocation or Withdrawal of this Plan. .................................................. 96
**14.3**     Reports. .................................................................................................... 96
**14.4**     Notices. .................................................................................................... 97
**14.5**     Severability. ............................................................................................ 97
**14.6**     Validity and Enforceability. ..................................................................... 98
**14.7**     Controlling Documents. ........................................................................... 98
**14.8**     Filing of Additional Documents. ............................................................. 98
**14.9**     Direction to a Party. ................................................................................. 98
**14.10**     Certain Actions. ....................................................................................... 98
**14.11**     Waiver of Subordination. ......................................................................... 99
**14.12**     Reservation of Rights. ............................................................................. 99
**14.13**     Plan as Settlement Communication. ........................................................ 99
**14.14**     Governing Law. ....................................................................................... 99
**14.15**     Headings. ................................................................................................. 99
**14.16**     No Admissions. ........................................................................................ 99

## PLAN EXHIBITS

Exhibit A     List of Participating Parties

## PLAN SUPPLEMENT EXHIBITS

Exhibit 1     Allocation Protocol
Exhibit 2     Consenting Abuse Claim Release Agreement
Exhibit 3     Non-Participating Abuse Claim Release Agreement
Exhibit 4     Trust Agreement
Exhibit 5     List of Insurance Policies
Exhibit 6     Child Protection Protocols
Exhibit 7     List of Assumed Contracts and Leases
Exhibit 8     Litigation Claimant Agreement
Exhibit 9     Non-Participating Litigation Claimant Agreement

# INTRODUCTION

The Roman Catholic Diocese of Syracuse, New York, the above-captioned debtor and debtor in possession (the "Diocese"), and the Official Committee of Unsecured Creditors (the "Committee"), jointly propose the following Chapter 11 Plan of Reorganization (the "Plan") pursuant to chapter 11 of title 11 of the United States Code. The Diocese and the Committee are the proponents of this Plan (the "Plan Proponents") and the accompanying Disclosure Statement (the "Disclosure Statement") within the meaning of section 1129 of the Bankruptcy Code.

This Plan provides for the financial restructuring of the Diocese and the settlement of all, or substantially all, Claims against the Diocese, including, without limitation, the settlement of all Abuse Claims against the Diocese and the Participating Parties.

As set forth in more detail below, the Plan (i) provides for payment in full of all Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Professional Fee Claims, and U.S. Trustee Fee Claims, (ii) modifies the rights of holders of certain Allowed Secured Claims in accordance with section 1123(b)(2) of the Bankruptcy Code, (iii) leaves unimpaired any Pass-Through claims, (iv) provides deferred payments equal to the full Allowed amount of any General Unsecured Claims, and (v) establishes the Abuse Claims Settlement Fund to be held by the Trust to compensate holders of Abuse Claims. Inbound Contribution Claims against the Diocese are disallowed and extinguished pursuant to the Plan.

The Plan's treatment of Abuse Claims represents the culmination of more than 3 years of negotiation between the Diocese and the Committee in its capacity as an advocate on behalf of all Abuse Claimants and has been approved by the Committee in consultation with attorneys representing Committee members who collectively represent approximately forty-five percent (45%) of all Abuse Claimants who have asserted Abuse Claims against the Diocese ("State Court Counsel").

The Plan provides that funding for the Trust and the Abuse Claims Settlement Fund will be provided from, among other potential sources of recovery: (i) a monetary contribution by the Diocese and other Participating Parties in the aggregate amount of up to $100,000,000; and (ii) insurance settlement payments paid pursuant to the Insurance Settlement Agreements with various Settling Insurers. As of the date of this Plan, the Diocese and the Committee have agreed to accept a total of $61,140,000.00 in settlement payments from Settling Insurers – LMI, Catholic Mutual, Excelsior, TIG, Interstate, National Catholic, Utica Mutual, Nationwide, Hartford, and Hanover – in exchange for entering into Insurance Settlement Agreements with respect to their respective Insurance Policies and Related Insurance Claims.

Travelers, Merchants, and Arrowood are the only Non-Settling Insurers. To the extent the Diocese, Committee, and such Non-Settling Insurers can reach agreement on Insurance Settlement Agreements or other terms of settlement prior to confirmation of the Plan, the Plan provides that such Non-Settling Insurers may become Settling Insurers and for settlement proceeds resulting therefrom to be used to further supplement the Abuse Claims Settlement Fund. To the extent no settlement is achieved, the Plan provides for the assignment of Insurance Claims held by the Diocese or other Participating Parties to the Trust and establishes a framework for post-confirmation litigation of Insurance Claims and other Litigation Claims

seeking recovery from Non-Settling Insurers.  The Committee, in consultation with State Court Counsel representing approximately forty-five percent (45%) of all Abuse Claimants, has acknowledged and accepted the risk inherent in pursuing post-confirmation recovery from Non-Settling Insurers in the absence of a settlement.

All holders of Claims against the Diocese are encouraged to read this Plan and the Disclosure Statement and other Plan Documents in their entirety before voting to accept or reject this Plan.  Among other information, the Disclosure Statement contains discussions regarding the Diocese, events prior to and during the Chapter 11 Case, and a summary and analysis of the Plan.  No solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

The Plan Documents, once Filed, can be obtained free of charge by visiting the Diocese's case management website at https://case.stretto.com/dioceseofsyracuse, and shall also be available for review in the Office of the Clerk of the Bankruptcy Court during the Bankruptcy Court's normal hours of operation.  Holders of Claims may also obtain copies of the Plan Documents by contacting counsel for the Diocese in writing at the address on the cover page of the Plan.  Each Plan Document is an integral part of the Plan and is hereby incorporated by reference and made a part of the Plan.

## SECTION 1.    DEFINITIONS AND INTERPRETATION

### 1.1    Definitions.

The following terms used herein shall have the respective meanings defined below:

1.1.1    *Abuse* means any actual or alleged

a.    sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, hebephilia, ephebophilia, lascivious behavior, undue familiarity, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, or intimidation, any other sexual misconduct, or any conduct constituting a sexual offense, incest, or use of a child in a sexual performance (as such terms are defined in the New York Penal Law); or

b.    non-sexual assault, battery, corporal punishment and other non-sexual nonsexual acts of physical, psychological, mental or emotional abuse, humiliation or intimidation (including physical abuse or bullying without regard to whether such physical abuse or bullying is of a sexual nature), and all other non-sexual tortious behavior of any type whatsoever.

For the avoidance of doubt, "*Abuse*" also includes:  (i) any conduct which would constitute (a) a sexual offense as defined in article one hundred thirty of the New York Penal Law, (b) incest as defined in sections 255.27, 255.26 and 255.25 of the New York Penal Law, (c) the use of a child in a sexual performance as defined in section 263.05 of the Penal Law, or a predecessor statute that prohibited such conduct at the time of the act, or (d) any offense included in 18 U.S.C. §§ 2251, 2251A 2252, 2252A, and 2260; and (ii) sexually-related injuries, including those stemming from the use of photography, video, or digital media.

1.1.2    *Abuse Action* means a lawsuit asserting an Abuse Claim against the Diocese or any Participating Party.

1.1.3    *Abuse Claim* means any Claim that has been or could be asserted against the Diocese or any Participating Party that is attributable to, arises from, is based upon, or results from, in whole or in part, directly, indirectly, or derivatively, Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or any other relief under any theory of liability, law, or equity whatsoever, including contribution, indemnity, vicarious liability, *respondeat superior*, conspiracy, fraud (including fraud in the inducement), any negligence-based or employment-based theory (including negligent hiring, supervision, retention, or misrepresentation), any other theory based upon misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory (including any theory based upon public policy) or any act or failure to act by the Diocese or any Participating Party, or any other Person for whose acts or failures to act the Diocese or any Participating Party is or was alleged to be responsible.

3

For the avoidance of doubt, "***Abuse Claim***" includes (a) all Unknown Abuse Claims, Timely-Filed Abuse Claims, Late-Filed Abuse Claims, Child Abuse Claims (or any other Claim or cause of action described in the CVA), and Adult Abuse Claims (or any other Claim or cause of action described in the ASA) against the Diocese or any Participating Party and (b) any Claim against the Diocese or any Participating Party that is attributable to, arises from, is based upon, relates to, or results from Abuse that, as of the Petition Date is barred by any applicable statute of limitations, and in each case, irrespective of whether (x) such Claims also involve the conduct of Joint Tortfeasors, (y) such Claims arise under, or were revived pursuant to, the CVA or ASA, or any future reviver law, statute, or binding precedential decision passed or issued on or after the Effective Date, or (z) a proof of claim has been Filed or an Abuse Action has been commenced with respect to such Claim

      1.1.4     ***Abuse Claim Ballot*** means the ballot approved by the Court for Abuse Claimants to vote to accept or reject the Plan.

      1.1.5     ***Abuse Claim Discharge Date*** means the date on which the Diocese Discharge becomes effective with respect to an Abuse Claim, as determined in accordance with the provisions of Section 12.2.3 of the Plan.

      1.1.6     ***Abuse Claimant*** means the holder of an Abuse Claim, the estate of a deceased individual who held an Abuse Claim, the personal executor or personal representative of the estate of a deceased individual who held an Abuse Claim, or the assignee of any of the foregoing, as the case may be. For the avoidance of doubt, the holder of an Unknown Abuse Claim and/or Late-Filed Abuse Claim is an Abuse Claimant.

      1.1.7     ***Abuse Claims Reviewer*** means the Person, including the designee of such Person, who will assess Abuse Claims under the Allocation Protocol.

      1.1.8     ***Abuse Claims Settlement Fund*** means a fund established by the Trust from which Distributions to Class 5 Claims will be made.

      1.1.9     ***Action*** means any lawsuit, proceeding, or other action in a court, or any arbitration.

      1.1.10     ***Administrative Claim*** means a Claim against the Diocese for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to: (i) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Diocese; (ii) Professional Fee Claims; (iii) any Claim specified in section 503(b)(9) of the Bankruptcy Code; and (iv) any Claim arising from or related to any Abuse alleged to have first occurred after the Petition Date but prior to the Effective Date, unless the Diocese elects to treat such Claim as a Pass-Through Claim.

      1.1.11     ***Administrative Claims Bar Date*** means the deadline for filing requests for payment of Administrative Claims, as follows: (i) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (ii) with respect to Professional Fee Claims, shall be 60 days after the Effective Date.

1.1.12     **Adult Abuse Claim** means a Claim alleging Abuse which occurred at a time when the Abuse Claimant was 18 years of age or older.

1.1.13     **Agent** means any past and present employee; officer; director; managing agent or other agent; shareholder; principal; teacher; staff; member; board member; administrator; priest; deacon; brother, sister, nun, or other member of a religious order; clergy; Person bound by a monastic vow; volunteer; attorney; claim handling administrator; and representatives of a Person, in each case in their capacities as such.

1.1.14     **Alleged Insured** has the meaning ascribed to such term in Section 12.5.2.b. of the Plan.

1.1.15     **Allocation Protocol** or **Abuse Claim Allocation Protocol** means the protocol for allocation of the Abuse Claims Settlement Fund developed by the Committee, attached to the Plan Supplement as **Exhibit 1**, and incorporated into the Trust Agreement.

1.1.16     **Allowed** means, with respect to any Non-Abuse Claim or any portion thereof, a Claim or portion thereof:  (i) that has been allowed by a Final Order; (ii) which is included on the Diocese's Schedules as not disputed, not contingent and not unliquidated, for which no proof of claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline; (iii) as to which a proof of claim in a liquidated and non-contingent amount has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline or any objection has been settled or withdrawn, or has been denied by a Final Order; or (iv) that is expressly allowed by the terms of this Plan.

1.1.17     **Arrowood 2004 Motion** means the Committee's motion seeking authorization to issue subpoenas to Arrowood Indemnity Co., Filed in the Chapter 11 Case at Docket No. 1391.

1.1.18     **ASA** means the New York Adult Survivors Act, which was codified in the New York Civil Practice Law & Rules 214-j.  The Adult Survivors Act created a one-year window from November 24, 2022 to November 23, 2023 for the revival of previously time-barred civil claims concerning Abuse that occurred after the Claimant reached eighteen years of age.

1.1.19     **ASA Deadline** means November 23, 2023.

1.1.20     **Avoidance Action** means any (i) state law fraudulent transfer Claim; (ii) Claim pursuant to sections 502(d), 541-545, 547, 548, 549, 550, 551, 552(b), or 553 of the Bankruptcy Code against any Person; and (iii) Claim pursuant to section 510 N.Y. Business Corporation Law or any law of similar effect.

1.1.21     **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter applicable to the Chapter 11 Case.

1.1.22     **Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of New York and any Court having competent jurisdiction to hear appeals or *certiorari* proceedings therefrom, or any successor thereto that may be established by any act of

Congress, or otherwise, and which has competent jurisdiction over the Chapter 11 Case or the Plan.

1.1.23     ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as amended.

1.1.24     ***Bar Date*** means the deadline by which proofs of claim forms for prepetition Claims, including Abuse Claims, were required to be Filed against the Diocese.  The Bar Date for all Claims other than Adult Abuse Claims was April 15, 2021 at 11:59 p.m. (Eastern time), and the Bar Date for Adult Abuse Claims was January 17, 2023 at 11:59 p.m.

1.1.25     ***Barred Claim*** means all Channeled Claims (specifically including, but not limited to, Abuse Claims, Medicare Claims, and Extra-Contractual Claims), Non-Participating Abuse Claims, Non-Participating Insurance Claims, Released Insurance Claims, Unknown Abuse Claims, Related Insurance Claims, Insurer Contribution Claims, Direct Action Claims, GMVA Claims, and every other Claim that (a) is under, arises out of, relates (directly or indirectly) to, or connects in any way with an Abuse Claim or any of the Settling Insurer Policies or (b) is released pursuant to any Insurance Settlement Agreement.  For the avoidance of doubt, "***Barred Claim***" includes all Claims exempted from the injunctions set forth in Sections 12.2.1 and 12.3 of the Plan pursuant to Sections 12.2.2.a and 12.2.2.b of the Plan.  For the further avoidance of doubt, any ISO Exception claims are not Barred Claims.

1.1.26     ***Business Day*** means any day of the calendar week, except Saturday, Sunday, a "legal holiday", as defined in Bankruptcy Rule 9006(a), any day on which commercial banks are authorized or required by law to close in Syracuse, New York, and any day on which the Diocese's business offices are closed in observance of a religious holiday.

1.1.27     ***Cabrini Foundation*** means Mother Cabrini Health Foundation, Inc.

1.1.28     ***Cabrini Exempt Transfer*** means any transfer of funds or other assets of the Cabrini Foundation to the Diocese or any Participating Party, whether directly, indirectly, through an intermediary or not, to the extent such transfer is unrelated to Abuse Claims or consists of (a) grants consistent with those previously made by the Cabrini Foundation  in furtherance of its charitable mission; (b) assets transferred subject to a charitable restriction on use pursuant to applicable law; or (c) transfers made in exchange for fair consideration.

1.1.29     ***Cabrini Qualifying Proceeds*** means the proceeds of any transaction or series of transactions resulting in a transfer of funds or other assets of the Cabrini Foundation to the Diocese or any Participating Party whether directly, indirectly, through an intermediary or not, other than a Cabrini Exempt Transfer.

1.1.30     ***Cash*** means cash and cash equivalents including, without limitation, checks and wire transfers.

1.1.31     ***Catholic Mutual*** means The Catholic Mutual Relief Society of America.

1.1.32     ***Channeled Claim*** means any Abuse Claim, Inbound Contribution Claim, Medicare Claim, Extra-Contractual Claim, or any other Claim against the Diocese or any

6

Protected Party arising from or related in any way to an Abuse Claim or any of the Settling Insurer Policies, whenever and wherever arising or asserted, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, including without limitation all Claims by way of direct action, subrogation, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and other expenses, or for any equitable remedy; *provided, however*, that "***Channeled Claims***" shall not include:  (i) a Claim against an individual who perpetrated an act of Abuse; (ii) a Claim against any religious order, diocese (other than the Diocese), or archdiocese, unless such Entity is identified as a Participating Party on **Exhibit A**; (iii) a Claim against an Excluded Insurer; or (iv) a Claim exempted from the injunctions set forth in Sections 12.2.1 and 12.3 of the Plan pursuant to Sections 12.2.2.a and 12.2.2.b of the Plan; *provided further*, if any Claim identified in the foregoing proviso also asserts liability against a Protected Party, then such Claim shall be a Channeled Claim as to the Protected Party.  For the avoidance of doubt (i) a Channeled Claim includes any Claim against a Protected Party based on allegations that it is an alter ego of a Person that is not a Protected Party or that the Protected Party's corporate veil should be pierced on account of Claims against a Person that is not a Protected Party or based on any other theory under which the legal separateness of any Person and any other Person may be disregarded to impose liability for a claim on either such Person, and (ii) notwithstanding anything to the contrary herein, a Claim asserted against a Non-Settling Insurer shall not be a Channeled Claim prior to the occurrence of the applicable Abuse Claim Discharge Date; *provided*, *however*, upon the occurrence of such Abuse Claim Discharge Date, such Claim shall immediately and without further action become a Channeled Claim unless it is a Claim of the type specified in Sections 12.2.2.a or 12.2.2.b of the Plan.  For the further avoidance of doubt, ISO Exception claims are not Channeled Claims.

       1.1.33     ***Channeling Injunction*** means the injunction contained in Section 12.3 of this Plan.

       1.1.34     ***Chapter 11*** means chapter 11 of the Bankruptcy Code.

       1.1.35     ***Chapter 11 Case*** means the above-captioned bankruptcy case.

       1.1.36     ***Child Abuse Claim*** means a Claim alleging Abuse which occurred at a time when the Abuse Claimant was less than 18 years of age.

       1.1.37     ***Child Protection Protocols*** means the document entitled "Child Protection Protocols for The Roman Catholic Diocese of Syracuse, New York" and the related documents attached to the Plan Supplement as **Exhibit 6**.

       1.1.38     ***Claimant*** means any Person who alleges or alleged any Claim.

       1.1.39     ***Claim*** means a claim, as that term is defined in section 101(5) of the Bankruptcy Code, including, without limitation, any claim, Action, assertion of right, complaint, cross-complaint, counterclaim, liabilities, obligations, rights, request, allegation, mediation, litigation, direct action, administrative proceeding, cause of action, Lien, encumbrances, indemnity, equitable indemnity, right of subrogation, equitable subrogation, defense, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission,

trespass, variance, damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution, attorney's fee, obligation, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, proof of claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, and/or any liability whatsoever, whether past, present or (to the extent it arises prior to the Effective Date) future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect or otherwise consequential, whether in law, equity, admiralty, under the Bankruptcy Code, or otherwise, whether currently known or unknown, whether compromised, settled or reduced to a consent judgment, that may exist now or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extra-contractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise.

      1.1.40    ***Claims Objection Deadline*** means, with respect to any Non-Abuse Claim, the date which is 90 days after the latter of the Effective Date and the date such Claim is Filed.

      1.1.41    ***Class*** means a class or category of Claims as classified and described in Section 2 of this Plan.

      1.1.42    ***Class 1 Claim*** means the Secured Claim held by KeyBank.

      1.1.43    ***Class 2 Claim*** means the Secured Claim held by NBT Bank.

      1.1.44    ***Class 3 Claim*** means a Pass-Through Claim.

      1.1.45    ***Class 4 Claim*** means a General Unsecured Claim that is not an Abuse Claim.

      1.1.46    ***Class 5 Claim*** means an Abuse Claim.

      1.1.47    ***Class 6 Claim*** means an Inbound Contribution Claim.

      1.1.48    ***CMS*** means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services, located at 7500 Security Boulevard, Baltimore, MD 21244-1850 and/or any other Agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA for reimbursement of Medicare Claims.

      1.1.49    ***Committee*** means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the United States Trustee pursuant to section 1102 of the Bankruptcy Code, as constituted from time to time, but does not mean the members of the Committee in their individual capacities.

1.1.50    ***Confirmation Date*** means the date the Confirmation Order is entered by the clerk of the Court on the Court's docket.

1.1.51    ***Confirmation Hearing*** means the hearing on confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

1.1.52    ***Confirmation Order*** means the order entered by the Court confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code.

1.1.53    ***Consenting Abuse Claim*** means any and all Abuse Claims held by a Consenting Abuse Claimant.

1.1.54    ***Consenting Abuse Claimant*** means any holder of an Abuse Claim who has not either (i) affirmatively indicated on their Abuse Claim Ballot that they are withholding their consent to the Channeling Injunction and releases provided for in the Plan with respect to the Protected Parties; or (ii) Filed a timely objection to confirmation of the Plan indicating that they are withholding their consent to the Channeling Injunction and releases provided for in the Plan with respect to the Protected Parties.    After the Effective Date, a Non-Participating Abuse Claimant may become a Consenting Abuse Claimant by means of the procedure set forth in Sections 4.4.5 and 4.5.1.c of the Plan.

1.1.55    ***Consenting Abuse Claim Release Agreement*** means an agreement, in the form attached to the Plan Supplement as **Exhibit 2**, that (a) releases the Diocese and all other Protected Parties from any and all Abuse Claims held by a Consenting Abuse Claimant and (b) releases the Settling Insurer Releasees and each Settling Insurer's Related Persons from any and all Barred Claims (including Extra-Contractual Claims and Direct Action Claims) held by a Consenting Abuse Claimant, in each case in accordance with the terms of this Plan.    Each Consenting Abuse Claimant must execute a Consenting Abuse Claim Release Agreement as a condition to receiving any Distribution.

1.1.56    ***Court*** means the Bankruptcy Court, the District Court, or any court with appellate jurisdiction over any order entered by the Bankruptcy Court and/or the District Court in the Chapter 11 Case, as applicable.

1.1.57    ***Creditor*** means a holder of a Claim.

1.1.58    ***CVA*** means New York Child Victim's Act, which was codified in the New York Civil Practice Law & Rules 214-g.    The CVA created a one-year window from August 14, 2019 to August 13, 2020 for the revival of previously time-barred civil claims related to childhood sexual abuse, which was subsequently extended to August 13, 2021.

1.1.59    ***CVA Deadline*** means August 13, 2021.

1.1.60    ***Denial Order*** means an order of any court of competent jurisdiction determining that the Diocese and/or any Participating Party (as applicable) does not have any liability on account of a Litigation Claimant's Abuse Claim.

1.1.61    ***Diocese*** means The Roman Catholic Diocese of Syracuse, New York, the debtor and debtor in possession in this Chapter 11 Case.

1.1.62    ***Diocese Abuse Claims Settlement Sub-Fund*** means that portion of the Abuse Claims Settlement Fund consisting solely of those funds remaining from the Diocese Cash Contribution after the Trust Reserve has been fully funded in accordance with Section 8.2.1 of the Plan. For avoidance of doubt, no portion of any of (i) the Participating Parties' Cash Contribution, (ii) the Insurance Settlement Amounts paid by the Settling Insurers, (iii) any payment by a Settling Insurer pursuant to an Insurance Settlement Agreement, (iv) any Insurance Claim Proceeds, (v) proceeds of Litigation Awards, (vi) proceeds of Outbound Contribution Claims, or (vii) any other proceeds which the Trust may obtain pursuant to the terms of the Plan shall be included in the Diocese Abuse Claim Settlement Sub-Fund.

1.1.63    ***Diocese Cash Contribution*** means that portion of the DOS Entities' Cash Contribution funded by the Diocese.

1.1.64    ***Diocese Discharge*** means the complete extinguishment of the liability of the Diocese in respect to any Claim or debt, as and to the extent further described in Section 12 of the Plan.

1.1.65    ***Direct Action Claim*** means any Claim against a Settling Insurer that is similar or identical to an Abuse Claim, in that it seeks to recover from the Settling Insurer damages based on actual or alleged Abuse by the Diocese or a Participating Party, whether such Claim arises by contract, in tort, or under the laws of any jurisdiction, including any statute that gives a third-party a direct cause of action against an Insurer.

1.1.66    ***Disallowed*** means, with respect to a Claim, or any portion thereof, that such Claim or portion thereof: (i) has been disallowed by either a Final Order or pursuant to a settlement or stipulation between the Diocese and the holder of the Claim; or (ii)(a) is valued on the Diocese's Schedules at zero dollars ($0) or denominated as contingent, disputed or unliquidated, and (b) as to which a Bar Date has been established but no proof of claim has been Filed or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.

1.1.67    ***Disputed*** means, with respect to a Claim, or any portion thereof, that such Claim or portion thereof is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, all Abuse Claims and Inbound Contribution Claims together with any Non-Abuse Claim that: (i) is not included on the Diocese's Schedules or is reflected on the Schedules as being valued at zero dollars, or as contingent, unliquidated or disputed; or (ii) is the subject of an objection Filed in the Bankruptcy Court that has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

1.1.68    ***Disclosure Statement*** means the Disclosure Statement dated November, 27 2024, and approved by the Bankruptcy Court on December 23, 2024, as altered, modified or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.1.69    ***Distribution*** means any payment to the holder of a Claim as provided in this Plan.

1.1.70    ***Distribution Claim*** means any Abuse Claim held by a Distribution Claimant.

1.1.71    ***Distribution Claimant*** means an Abuse Claimant who is not a Litigation Claimant or a Non-Participating Abuse Claimant.

1.1.72    ***District Court*** means the United States District Court for the Northern District of New York.

1.1.73    ***Donor Restrictions*** means, with respect to any charitable assets in the Diocese's possession or control, any donor imposed restrictions upon the use of such assets.

1.1.74    ***DOS Entities' Cash Contribution*** means cash or cash equivalents in an amount not less than $85,000,000 and not more than $100,000,000, to be contributed by or on behalf of the Diocese and the Participating Parties to the Trust and used to fund the payment of Abuse Claims and Trust Expenses pursuant to the Plan and the Trust Agreement.

1.1.75    ***DOS Entities' Post-Effective Date Costs*** means all fees and expenses reasonably incurred by the Diocese or the Participating Parties in connection with performing any of their respective duties or obligations under the Plan with respect to any Abuse Claims or Insurance Claims, including, without limitation, in connection with:  (i) any attempt by the Trust to enforce or recover Insurance Claims against Non-Settling Insurers; (ii) responding to and defending against any legal action taken by any Litigation Claimants with respect to Litigation Claims; or (iii) upon request by the Trustee or the Abuse Claims Reviewer, assisting with the administration of the Allocation Protocol. For the avoidance of doubt, such costs include any costs and expenses incurred by the Diocese or the Participating Parties in connection with such efforts by the Trust or Consenting Abuse Claimants, or in connection with any depositions, discovery, or other litigation matters relating in any way to Consenting Abuse Claims or Insurance Claims, including, without limitation, any attorney's fees, expert fees, applicable self-insured retention obligations, if any, arising out of any Consenting Abuse Claim or under any Non-Settling Insurer Policy, and other costs and expenses, but shall not include costs associated with defending against, or paying any liability associated with, Non-Participating Abuse Claims, except to the extent necessary to satisfy the Diocese's applicable self-insured retention obligations, if any, with respect to a Non-Participating DOS Abuse Claim.

1.1.76    ***DOS Entities' Post-Effective Date Costs Procedures*** means the procedures set forth in Section 8.11 of the Plan for the payment of DOS Entities' Post-Effective Date Costs.

1.1.77    ***DOS Entities' Post-Effective Date Costs Reserve*** means a portion of the Trust Reserve held in a separate, segregated account established by the Trust exclusively for payment of DOS Entities' Post-Effective Date Costs, which shall be funded in the initial amount of not less than $3,000,000.

1.1.78    ***Effective Date*** means (i) the last Business Day of the month in which (a) all conditions to effectiveness of this Plan have been satisfied or waived in accordance with Sections 11.1 and 11.2 of the Plan, and (b) no stay of the Confirmation Order is in effect; *provided*, *however*, that if the first date on which all conditions to effectiveness or of the Plan

11

have been satisfied or waived occurs on or after the twentieth (20th) day of such month, the Effective Date shall occur on the last Business Day of the immediately following month; or (ii) such other date as may be mutually agreed by both Plan Proponents and all Settling Insurers.

1.1.79    ***Enjoined Party*** means all Persons who have held, hold, or may hold Claims or causes of action that have been released or discharged or are subject to exculpation, the Channeling Injunction, or the Settling Insurer Injunction, pursuant to this Plan, the Confirmation Order, or the Sale Order(s).

1.1.80    ***Entity*** has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

1.1.81    ***Estate*** means the estate of the Diocese created by the Diocese's Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.1.82    ***Excluded Insurer Claims*** means Claims, causes of action and enforceable rights of an Abuse Claimant, the Diocese and any Participating Party against an Excluded Insurer, whether sounding in contract, tort, or otherwise, including equity and bad faith.

1.1.83    ***Excluded Insurer*** means Ace Property and Casualty Insurance Company, Insurance Company of North America, Westchester Fire Insurance Company, and Colonial Penn Insurance Company.

1.1.84    ***Excluded Insurer Policy*** means any Insurance Policy that any Excluded Insurer issued, subscribed any interest in, or has underwritten any risk in.

1.1.85    ***Exculpated Parties*** means the Diocese, the Diocese's Professionals, the Committee, the Committee's Professionals, the Mediators, and the Participating Parties.

1.1.86    ***Exit Financing*** means any loan or other financing arrangement entered into by the Diocese (i) prior to the Effective Date to fund any portion of the DOS Entities' Cash Contribution.

1.1.87    ***Exit Financing Documents*** means any promissory note, credit agreement, security agreement, mortgage, or other documents required by any Exit Financing Lender in connection with their extension of Exit Financing to the Diocese.

1.1.88    ***Exit Financing Lender*** means any Person who provides Exit Financing to the Diocese.

1.1.89    ***Extra-Contractual Claim*** means any Claim against any Settling Insurer Releasee, in its capacity as an Insurer, seeking any type of relief other than coverage or benefits under, or with respect to, the Insurance Policies. Extra-Contractual Claims include Claims for compensatory, exemplary, or punitive damages, or attorneys' fees, interests, costs, or any other type of relief, alleging any of the following with respect to (i) any Insurance Policy; (ii) any Claim allegedly or actually covered under an Insurance Policy; or (iii) the conduct of a Settling Insurer with respect to (i) or (ii): (a) bad faith; (b) failure to provide insurance coverage under any Insurance Policy, including any failure to investigate or to provide a defense or adequate defense;

12

(c) failure or refusal to compromise and settle any Claim insured under any Insurance Policy; (d) failure to act in good faith; (e) violation or breach of any covenant or duty of good faith and fair dealing, whether express, implied, or otherwise; (f) violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; (g) violation of any unfair claims practices act or similar statute, regulation or code, including any statute, regulation, or code relating to unlawful, unfair, or fraudulent competition, business, or trade practices, and/or untrue or misleading advertising; (h) any type of misconduct; or (i) any other act or omission of any type by a Settling Insurer Releasee for which the claimant seeks relief other than coverage or benefits under an Insurance Policy.  Extra-Contractual Claims further include all Claims relating to any Settling Insurer Releasee's (x) handling of any Claims under the Insurance Policies, (y) conduct in negotiating the Insurance Settlement Agreements and/or the Plan, and (z) conduct in the settlement of any Claims.  For the avoidance of doubt, ISO Exception claims are not Extra-Contractual Claims.

1.1.90    ***File*** or ***Filed*** means (i) properly filed with the clerk of the Court in the Chapter 11 Case or any appeal therefrom, as reflected on the official docket of the clerk of the Court for the Chapter 11 Case or such appeal, or the actual delivery of proofs of claim in paper or electronic form to Stretto in accordance with the terms of the Bankruptcy Court's *Bar Date Order Establishing April 15, 2021 as the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 214] and *Order Establishing Supplemental Bar Date for Adult Claims* [Docket No. 1083]; or (ii) with respect to any Abuse Action, properly filed with the clerk of the court in which the Abuse Action is commenced, as reflected on the official docket of the clerk of that court.

1.1.91    ***Filed Abuse Claim*** means any Timely-Filed Abuse Claim or Late-Filed Abuse Claim.

1.1.92    ***Final Order*** means an order as to which the time to appeal, petition for *certiorari*, petition for review, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, review, reargue, or rehear shall have been waived in writing in form and substance satisfactory to each applicable litigant waiving such right and their respective counsel or, in the event that an appeal, *writ of certiorari*, petition for review, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* or review has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari,* petition for review, or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code, or Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure may be, but has not been, Filed with respect to such order shall not cause such order not to be a Final Order.

1.1.93    ***General Unsecured Claim*** means a Claim against the Diocese of any kind or nature including, without limitation, on account of trade credit, contract, personal injury (other than personal injury arising from or related to Abuse), or arising from the rejection of an executory contract or unexpired lease, that (i) is not secured by property of the Estate or otherwise

13

entitled to treatment as a secured claim under section 506 of the Bankruptcy Code; (ii) is not otherwise entitled to priority under sections 503 or 507 of the Bankruptcy Code; and (iii) is not otherwise an Abuse Claim, Administrative Claim, Professional Fee Claim, Claim for U.S. Trustee Fees, Priority Tax Claim, Non-Tax Priority Claim, Secured Claim, or Pass-Through Claim.

1.1.94    ***GMVA Claim*** means any Claim against the Diocese or any Participating Party that arises from, is based upon, or was revived by the Gender-Motivated Violence Act, New York City, N.Y. Code §10-1104; Int. 2372-2021.

1.1.95    ***Impaired*** means, with respect to any Class, that such Class is "impaired" under the Plan within the meaning of section 1124 of the Bankruptcy Code.

1.1.96    ***Inbound Contribution Claim*** means any Claim against the Diocese or any Participating Party asserting rights of contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other direct, indirect or derivative recovery, arising from or related to any Abuse Claim.

1.1.97    ***Indemnified Claims*** has the meaning ascribed to such term in Section 8.14.2 of this Plan.

1.1.98    ***Insurance Claims*** means all Claims, causes of action and enforceable rights against a Non-Settling Insurer that is not an Excluded Insurer, whether sounding in contract, tort, or otherwise, including equity and bad faith, held by:  (i) the Diocese or an Abuse Claimant for any reason related to any Abuse Claim asserted or alleged against the Diocese, including those for (a) indemnity and payment of any such Abuse Claim, (b) any Non-Settling Insurer's failure or refusal to provide insurance coverage for any such Abuse Claim under any Insurance Policy, (c) any Non-Settling Insurer's tortious or wrongful claims handling including the failure or refusal of any Non-Settling Insurer to timely compromise and settle any such Abuse Claims against the Diocese pursuant to any Insurance Policy, (d) to the extent not otherwise encompassed by section (c) above, any Non-Settling Insurer's failure or refusal to reasonably settle such Abuse Claims, and (e) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing; and/or (ii) any of the Participating Parties, Settling Insurers, or any Consenting Abuse Claimant for any reason related to any Consenting Abuse Claim against the Participating Party or Settling Insurer, whether independently or jointly liable with the Diocese on such Consenting Abuse Claim, including for (a) indemnity and payment of any such Consenting Abuse Claim, (b) any Insurer's failure or refusal to provide insurance coverage under any Insurance Policy for any such Consenting Abuse Claim against the Diocese, a Participating Party, (c) any Non-Settling Insurer's tortious or wrongful claims handling including the failure or refusal of any Non-Settling Insurer to timely compromise and settle any such Consenting Abuse Claims against a Participating Party pursuant to any Insurance Policy, (d) to the extent not otherwise encompassed by section (c) above, any Non-Settling Insurer's failure or refusal to reasonably settle such Consenting Abuse Claims, and (e) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing.  The term "Insurance Claim" also includes any Claims or causes of action for reimbursement of DOS Entities' Post-Effective Date Costs under any Insurance Policy, but only to the extent such DOS Entities' Post-Effective Date Costs are actually paid by the Trust.  For avoidance of doubt, the term "Insurance Claim" does not include any Non-Participating Insurance Claims.

14

1.1.99    ***Insurance Claims Assignment*** means the transfer or assignment of Insurance Claims to the Trust as set forth in Section 8.2.6, herein.  For the avoidance of doubt, Related Insurance Claims expressly are excluded from the Insurance Claims Assignment.

1.1.100    ***Insurance Claim Proceeds*** means any amount recovered by the Trust in respect of any Insurance Claims against Non-Settling Insurers assigned to the Trust pursuant to the Insurance Claims Assignment.

1.1.101    ***Insurance Coverage Adversary Proceeding*** means the adversary proceeding commenced by the Diocese before the Bankruptcy Court on January 15, 2021, captioned as *The Roman Catholic Diocese of Syracuse, New York v. Arrowpoint Capital, et. al*, Adv. Pro. No. 21-50002.

1.1.102    ***Insurance Policy*** means any known or unknown contract, binder, certificate, or policy of insurance or certificate of liability coverage that any Insurer issued, subscribed any interest in, or has underwritten any risk in, in effect on or before the Effective Date, which actually, allegedly, or potentially provides liability coverage for the Diocese, and/or any Participating Party, or any of their respective Related Persons.

1.1.103    ***Insurance Settlement Agreement*** means a settlement agreement among the Diocese and the applicable Participating Parties, with the Committee's consent or, following the Effective Date, the consent of the Trust, and a Settling Insurer, consistent with the terms of the Plan, to be included in the Plan Supplement or Filed with the Bankruptcy Court if entered into by the Trust after the Effective Date.  For the avoidance of doubt, subject to the entry of an order authorizing the Diocese to enter into such settlement agreements, the settlement agreements with each of LMI, Catholic Mutual, Excelsior, TIG, Interstate, National Catholic, Utica Mutual, Nationwide, Hartford, and Hanover are Insurance Settlement Agreements.

1.1.104    ***Insurance Settlement Amount*** means the settlement amount to be paid by each Settling Insurer pursuant to each Insurance Settlement Agreement to which it is a party.

1.1.105    ***Insurer*** means a Person that has, or is alleged to have, issued, subscribed any interest in, assumed any liability for, or underwritten any risk in an Insurance Policy, whether or not a regulated insurance company, including all of such Person's affiliates, successors, and assigns, and all Agents of the foregoing.

1.1.106    ***Insurer Contribution Claim*** means any Claim, including any Inbound Contribution Claim, held by an Insurer by which such Insurer may contend that it has paid more than its equitable or proportionate share of an Abuse Claim, whether expressed in terms of contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other direct, indirect, or derivative recovery.

1.1.107    ***Interests*** means all Claims, "interests" as that term is used in Section 363 of the Bankruptcy Code, and all other rights of any nature, whether at law or in equity, including all interests or other rights under New York law or any other applicable law.

1.1.108    ***Interstate*** means Interstate Fire & Casualty Company, National Surety Corporation, and Fireman's Fund Insurance Company.

15

1.1.109    ***ISO Exception*** has the meaning ascribed to such term in the Interstate Settlement Agreement.

1.1.110    ***Joint Tortfeasor*** means any Person, other than the Diocese or a Participating Party, who is alleged to be a joint tortfeasor with the Diocese and/or any Participating Party in connection with an Abuse Claim or the Abuse or alleged Abuse giving rise to an Abuse Claim.

1.1.111    ***Key Secured Debt Documents*** means the following documents:

(i)    Business Loan Agreement, together with Amendment No. 1 thereto, each dated as of March 16, 2020, pursuant to which KeyBank (a) made available to the Diocese a $7,300,000 revolving loan consisting of a $2,000,000 working capital line of credit and (b) a commitment to issue letters of credit on behalf of the Diocese in the aggregate not to exceed $5,300,000;

(ii)    Promissory Note in the original principal amount of $7,300,000 dated as of March 16, 2020 evidencing the Diocese's obligations to KeyBank;

(iii)    The KeyBank Letter of Credit;

(iv)    Commercial Pledge Agreement, together with Amendment 1 thereto, each dated as of March 16, 2020, pursuant to which the Diocese pledged all of its property in the possession of, or subject to the control of KeyBank including, without limitation, its interest in the KeyBank Blocked Accounts, to secure its obligations to KeyBank; and

(v)    Control Agreement and Acknowledgement of Pledge and Security Agreement dated as of March 16, 2020.

1.1.112    ***KeyBank*** means KeyBank, National Association.

1.1.113    ***KeyBank Blocked Accounts*** means the collateral investment accounts held by the Diocese at KeyBank with account numbers ending in (xx6734) and (xx6735)

1.1.114    ***KeyBank Blocked Collateral*** means all cash, securities and other investments or funds required to be held in the KeyBank Blocked Accounts pursuant to the Key Secured Debt Documents.

1.1.115    ***KeyBank Debt Amount*** means (i) any amounts actually due and owing to KeyBank pursuant to the Key Secured Debt Documents plus (ii) any undrawn commitment of KeyBank under the KeyBank Letter of Credit.

1.1.116    ***KeyBank Letter of Credit*** means that certain $5,300,000 Letter of Credit issued by KeyBank to the New York State Worker's Compensation Board to secure the Diocese's obligations under its self-insured worker's compensation program.

1.1.117    ***KeyBank Lien*** means any and all security interests or Liens of KeyBank with respect to any property of the Diocese.

1.1.118    ***Late-Filed Abuse Claim*** means any Child Abuse Claim Filed after the CVA Deadline, or any Adult Abuse Claim Filed after the ASA Deadline, but which in either case is Filed on or before the Effective Date.

1.1.119    ***Lien*** means any "lien" as defined in section 101(37) of the Bankruptcy Code.

1.1.120    ***Litigation Award*** means a judgment or verdict determining that the Diocese and/or any Participating Party is/are liable to a Litigation Claimant on account of a Litigation Claim.

1.1.121    ***Litigation Claim*** means any Abuse Claim held by a Litigation Claimant, to the extent the Trustee has (i) determined in good faith that such Abuse Claim is covered, in whole or in part, by one or more Non-Settling Insurer Policies, and (ii) authorized such Litigation Claimant to liquidate their Abuse Claim in accordance with the Plan, Allocation Protocol, and the Trust Agreement.

1.1.122    ***Litigation Claimant*** means any Abuse Claimant who elects to be treated as a Litigation Claimant pursuant to Section 4.3.1.b of the Plan or who is deemed to be a Litigation Claimant pursuant to the terms of Section 4.3.1.c of the Plan.

1.1.123    ***Litigation Claimant Agreement*** means an agreement, in the form attached as **Exhibit 8** to the Plan Supplement, pursuant to which each Litigation Claimant agrees and acknowledges that:  (i) if and when authorized by the Trustee to pursue a Litigation Claim, they may pursue such Litigation Claim solely for the purposes of (a) establishing whether the Diocese and/or any Participating Party may have any liability with respect to their Litigation Claim, (b) determining the amount of that liability, and (c) permitting the Trust to pursue Insurance Claims against Non-Settling Insurers; (ii) any Litigation Award obtained in respect of any Litigation Claim may not be enforced (a) against any Protected Party and/or any of the non-insurance assets of the Diocese or any Participating Party or (b) otherwise in any manner that violates the Settling Insurer Injunction; (iii) all Claims held by such Litigation Claimant against the Diocese or any Participating Party shall automatically and without further action be fully released and discharged upon the occurrence of the applicable Abuse Claims Discharge Date; (iv) if the Litigation Claimant obtains a judgment against the Diocese or any Participating Party, the Litigation Claimant shall take any action reasonably requested of them to enable the Diocese or any Participating Party (or any successor Person) to transfer, mortgage, or otherwise encumber any real or personal property free and clear of any judgment Lien, so long as such action does not have a material adverse effect on the Litigation Claimant's or Trustee's rights with respect to any Insurance Claim arising from the Litigation Claim; and (v) each of the Protected Parties is an intended third party beneficiary of such Litigation Claimant Agreement.

1.1.124    ***Mediators*** means the Hon. Judith K. Fitzgerald (Ret.), Mr. Paul J. Van Osselaer, Hon. Shelley C. Chapman (Ret.), and Mr. Paul A. Finn.

1.1.125    ***Medicaid*** means medical assistance provided under a state plan approved under title XIX of the Social Security Act.

1.1.126    ***Medicare*** means the health insurance program for the aged and disabled under title XVIII of the Social Security Act.

1.1.127    ***Medicare Beneficiary*** means an individual who is entitled to Medicare benefits and/or who has been determined to be eligible for Medicaid.

1.1.128    ***Medicare Claim*** means all Claims by CMS, and/or any Agent or successor of CMS charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA or pursuing Claims under MSPA, relating to any payments in respect of any Abuse Claims, including Claims for reimbursement of payments made to Abuse Claimants who recover or receive any Distribution from the Trust, and Claims relating to reporting obligations.

1.1.129    ***Medicare Eligible*** means an Abuse Claimant who is eligible to receive, is receiving, or has received Medicare benefits.

1.1.130    ***MMSEA*** means section 111 of the "Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173)" which imposes reporting obligations on those Persons with payment obligations under the MSPA.

1.1.131    ***MSPA*** means 42 U.S.C. § 1395y et seq., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto.

1.1.132    ***National Catholic*** means The National Catholic Risk Retention Group, Inc.

1.1.133    ***NBT Bank*** means NBT Bank, National Association.

1.1.134    ***NBT Blocked Account*** means that certain collateral investment account held by the Diocese at NBT Bank with an account number ending in (xxB561).

1.1.135    ***NBT Blocked Collateral*** means all cash, securities and other investments or funds required to be held in the NBT Blocked Account pursuant to the NBT Secured Debt Documents.

1.1.136    ***NBT Debt Amount*** means any amounts actually due and owing to NBT Bank pursuant to the NBT Secured Debt Documents.

1.1.137    ***NBT Lien*** means any and all security interests or Liens of NBT Bank with respect to any property of the Diocese.

1.1.138    ***NBT Secured Debt Documents*** means the following documents:

18

(i)     Loan Agreement dated as of February 25, 2020, pursuant to which NBT made two term loans to the Diocese, each in the original principal amount of $3,250,000, for a total loan amount of $6,500,000;

(ii)    Term I Loan Note dated February 25, 2020 in the original principal amount of $3,250,000;

(iii)   Term II Loan Note dated February 25, 2020 in the original principal amount of $3,250,000; and

(iv)    Specific Security Agreement (Pledged Account) dated February 25, 2020, pursuant to which the Diocese pledged its interest in the NBT Blocked Account and certain investment property held therein to secure its obligations to NBT.

1.1.139   ***Neutrality Parties*** means, collectively, (i) the Diocese; (ii) the Participating Parties; (iii) the Committee; (iv) the Trustee; (v) the Abuse Claimants; (vi) the Abuse Claims Reviewer; and (vii) all Non-Settling Insurers**.**

1.1.140   ***Non-Abuse Claim*** means any Claim against the Diocese that is not an Abuse Claim or Inbound Contribution Claim.

1.1.141   ***Non-Participating Abuse Claim*** means an Abuse Claim held by a Non-Participating Abuse Claimant.

1.1.142   ***Non-Participating Abuse Claimant means*** the holder of an Abuse Claim who affirmatively withholds their consent to the Channeling Injunction and releases provided for in the Plan with respect to Protected Parties other than the Diocese by (i) indicating as such on their Abuse Claim Ballot; or (ii) Filing an objection to the Plan indicating that they do not consent to the Channeling Injunction and releases provided for in the Plan with respect to Protected Parties other than the Diocese; and who has not, prior to entry of the Confirmation Order, agreed in writing to provide such consent, to grant such releases, and to be treated as a Consenting Abuse Claimant for all purposes. After the Effective Date, a Non-Participating Abuse Claimant may become a Consenting Abuse Claimant by means of the procedure set forth in Sections 4.4.5 and 4.5.1.c of the Plan.

1.1.143   ***Non-Participating Abuse Claim Release Agreement*** means an agreement, in the form attached to the Plan Supplement as Exhibit 3, releasing the Diocese from any and all Abuse Claims held by a Non-Participating Abuse Claimant in accordance with the terms of this Plan, to be executed by the Non-Participating Abuse Claimant as a condition of receiving any Distribution in respect of their Non-Participating Abuse Claim.

1.1.144   ***Non-Participating DOS Abuse Claim*** means that portion of any Non-Participating Abuse Claim for which the Diocese is, or is alleged to be, liable.

1.1.145   ***Non-Participating PP Abuse Claim*** means that portion of any Non-Participating Abuse Claim for which one or more Participating Parties are, or are alleged to be, liable.

19

1.1.146   ***Non-Participating Insurance Claim*** means all Claims, causes of action and enforceable rights against a Non-Settling Insurer, whether sounding in contract, tort, or otherwise, including equity and bad faith, held by any Participating Party or any Non-Participating Abuse Claimant for any reason related to any Non-Participating Abuse Claim asserted or alleged against a Participating Party, whether independently or jointly liable with the Diocese on such Non-Participating Abuse Claim, including for (i) indemnity and payment of any such Non-Participating Abuse Claim, (ii) any Non-Settling Insurer's failure or refusal to provide insurance coverage under any Insurance Policy for any such Non-Participating Abuse Claim against a Participating Party, (iii) any Non-Settling Insurer's tortious or wrongful claims handling including the failure or refusal of any Non-Settling Insurer to timely compromise and settle any such Non-Participating Abuse Claims against a Participating Party pursuant to any Insurance Policy, (iv) to the extent not otherwise encompassed by section (iii) above, any Non-Settling Insurer's failure or refusal to reasonably settle such Non-Participating Abuse Claims, and (v) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing.

1.1.147   ***Non-Participating Litigation Claimant Agreement*** means an agreement, in the form attached as **Exhibit 9** to the Plan Supplement, pursuant to which a Non-Participating Abuse Claimant agrees and acknowledges (i) that they may pursue their Non-Participating DOS Abuse Claim solely for purposes of establishing whether the Diocese may have any liability with respect to their Non-Participating DOS Abuse Claim and the amount, if any, of such liability; (ii) any judgment or verdict obtained in respect of such Non-Participating DOS Abuse Claim may not be enforced (a) against the Diocese or any Protected Party or (b) in any manner that violates the Settling Insurer Injunction, but may be presented to the Trustee to establish the Non-Participating Abuse Claimant's entitlement to additional Distributions from the Diocese Abuse Claims Settlement Sub-Fund solely as provided for in Section 4.4. of the Plan; and (iii) if the Non-Participating Abuse Claimant obtains a judgment against the Diocese, he or she shall take any action reasonably requested to enable the Diocese to transfer, mortgage or otherwise encumber any real or personal property free and clear of any judgment Lien.

1.1.148   ***Non-Settling Insurer*** means any Insurer that is not a Settling Insurer or an Excluded Insurer.

1.1.149   ***Non-Settling Insurer Policy*** means any Insurance Policy any Non-Settling Insurer issued, subscribed any interest in, or has underwritten any risk in.  For the avoidance of doubt, no Settling Insurer Policy is a Non-Settling Insurer Policy.

1.1.150   ***Non-Tax Priority Claim*** means a Claim against the Diocese, other than an Administrative Claim, Priority Tax Claim, or Professional Fee Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

1.1.151   ***Other Catholic Organization*** means a Person that (a) is, or allegedly is, insured or covered under a Settling Insurer Policy (as a named insured, additional insured, or otherwise) and/or (b) has actually or allegedly acquired or been assigned the right to make a Claim for coverage under a Settling Insurer Policy. For the avoidance of doubt, "Other Catholic Organization" does not include the Diocese, any Parish, or any School.

1.1.152    ***Outbound Contribution Claim*** means any Claim or cause of action related to a Consenting Abuse Claim that may be asserted by the Diocese or any Participating Party against any Person that is not a Protected Party.

1.1.153    ***Parish*** means any past or present Roman Catholic parish located within the geographical territory of the Diocese or subject to the canonical jurisdiction of the Bishop of Syracuse, together with any corporation or other entity recognized under civil law that holds title to temporal property for, or on behalf of, any such parish.

1.1.154    ***Participating Parties' Cash Contribution*** means that portion of the DOS Entities' Cash Contribution funded by Participating Parties, which shall be in the aggregate amount of $50,000,000.

1.1.155    ***Participating Party*** means all Parishes, all Schools, and those Other Catholic Organizations, and other Persons and entities listed on Exhibit A attached hereto who contribute Insurance Claims to the Trust and/or contribute funds to the DOS Entities' Cash Contribution.  Neither the Diocese nor any Settling Insurer shall be a Participating Party.

1.1.156    ***Participating Party Unknown Abuse Claims Reserve*** means, in the event Unknown Abuse Claims are treated as Non-Participating Abuse Claims under the Plan, a portion of the Trust Reserve held in a separate, segregated account established by the Trust exclusively for payment of Participating Party Unknown Abuse Claim Costs which shall be funded in an amount not less than $2,500,000.

1.1.157    ***Participating Party Unknown Abuse Claim Costs*** means, in the event Unknown Abuse Claims are treated as Non-Participating Abuse Claims under the Plan, all costs and expenses incurred by any Participating Party in (i) defending against an Abuse Action brought by an Unknown Abuse Claimant asserting a Non-Participating PP Claim; or (ii) in satisfying any judgment awarded in connection therewith.

1.1.158    ***Pass-Through Claim*** means any Disputed Non-Abuse Claim which the Diocese elects to treat as a Pass-Through Claim pursuant to the terms of the Plan.

1.1.159    ***Perpetrator(s)*** means the individual natural person(s) who perpetrated the acts of Abuse or alleged Abuse giving rise to any Abuse Claims.

1.1.160    ***Person*** means an individual, corporation, corporation sole, partnership, association, limited liability company, limited liability partnership, joint venture, association, joint stock company, proprietorship, trust, estate, unincorporated organization, governmental unit, quasi-governmental entity, or government (or agency or political subdivision thereof), including any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency, department, board or instrumentality thereof, any other entity, and any successor in interest, heir, executor, administrator, trustee, trustee in bankruptcy, or receiver of any entity, and also has the meaning set forth in Section 101(41) of the Bankruptcy Code.  For the avoidance of doubt, an Entity is a "***Person***," as is each of the Protected Parties.

1.1.161    ***Petition Date*** means June 19, 2020.

21

1.1.162    ***Plan*** means this Joint Chapter 11 Plan of Reorganization as it may be altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.1.163    ***Plan Documents*** means the Plan and the Disclosure Statement, all exhibits and schedules attached thereto, and all Plan Supplements, either in their present form or as each may be amended, supplemented or otherwise modified from time to time.

1.1.164    ***Plan Proponents*** means, collectively, the Diocese and the Committee.

1.1.165    ***Plan Supplement*** means one or more supplements to the Plan to be Filed with the Bankruptcy Court, which shall contain (a) the Allocation Protocol, a list of known Insurance Policies, the Child Protection Protocols, the form of Litigation Claimant Agreement, all in form and substance acceptable to each of the Plan Proponents in their respective sole discretion; (b) a list of all executory contracts and leases designated by the Diocese in its sole discretion to be assumed or assumed and assigned pursuant to the Plan; and (c) the form of Consenting Abuse Claim Release Agreement, the form of Non-Participating Abuse Claimant Agreement, the form of Trust Agreement, and each Insurance Settlement Agreement entered into prior to the Confirmation Date.

1.1.166    ***Post-Effective Date Preconditions to Coverage*** means those preconditions and contractual requirements (if any):  (a) which the Diocese and Participating Parties may be required to satisfy under Non-Settling Insurer Policies and applicable law as a predicate to the pursuit of an Insurance Claim, and (b) that the Non-Settling Insurer Policies and applicable law impose as a condition to providing coverage under such Non-Settling Insurer Policies, in each case to the extent required to be satisfied or performed following the Effective Date.

1.1.167    ***Preserved Coverage*** means the "Preserved Coverage" as defined in the Insurance Settlement Agreements with Catholic Mutual and National Catholic with respect to the Insurance Policies, including certificates of coverage, issued to the Debtor, in each case, subject to the limits, declarations, terms and conditions of such policies and certificates, as amended by such settlement agreements; provided, however, that Preserved Coverage shall not include coverage for (i) any and all Abuse Claims, (ii) any and all other Channeled Claims, or (iii) any and all Barred Claims, which coverage is settled, extinguished and excluded by such settlement agreements.

1.1.168    ***Priority Tax Claim*** means any Claim against the Diocese entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

1.1.169    ***Professional Fee Claim*** means a Claim for compensation for legal or other professional services and related reimbursement of expenses under sections 327, 328, 330(a), 331 or 503(b) of the Bankruptcy Code.

1.1.170    ***Professionals*** means all professionals employed in the Chapter 11 Case pursuant to sections 327, 328 or 1103 of the Bankruptcy Code.

1.1.171    ***Protected Parties*** means the Diocese, the Participating Parties, the Settling Insurers, and any Settling Insurer Covered Persons.

1.1.172    ***Purchased Property*** means the Settling Insurer Policies and all Claims purchased by, and sold to, a Settling Insurer pursuant to such Settling Insurer's Insurance Settlement Agreement.

1.1.173    ***Reduction Amount*** has the meaning ascribed to such term in section 12.5.2.b. of the Plan.

1.1.174    ***Related Insurance Claims*** means:

a.    all Claims, causes of action and enforceable rights against any Settling Insurer Releasee or any Settling Insurer's Related Persons, whether sounding in contract, tort, or otherwise, including equity and bad faith, held by the Diocese, any Participating Party, or any Abuse Claimant (whether a Consenting Abuse Claimant or a Non-Participating Claimant) for any reason related to any Abuse Claim asserted or alleged against the Diocese or any Participating Party (whether a Consenting Abuse Claim or a Non-Participating Abuse Claim), including those for (i) indemnity and payment of any such Abuse Claim; (ii) any Settling Insurer's failure or refusal to provide insurance coverage for any such Abuse Claim under any Insurance Policy; (iii) any Settling Insurer's tortious or wrongful claims handling including the failure or refusal of any Settling Insurer to timely compromise and settle any such Abuse Claims against the Diocese or any Participating Party pursuant to any Insurance Policy; (iv) to the extent not otherwise encompassed by section (iii) above, any Settling Insurer's failure or refusal to reasonably settle such Abuse Claims; and (v) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing; and

b.    all Extra-Contractual Claims against any Settling Insurer Releasee or any Settling Insurer's Related Persons; and

c.    all other Claims and causes of action against any Settling Insurer Releasee or any Settling Insurer's Related Persons that are under, arise out of, relate (directly or indirectly to) or connect in any way with the Insurance Policies, including, without limitation, any Direct Action Claims.

1.1.175    ***Related Person*** means, with respect to any Person, such Person's predecessors, successors, assigns, and present and former shareholders, members, affiliates, subsidiaries, employees, Agents, brokers, adjusters, managing agents, claims agents, underwriting agents, administrators, officers, directors, trustees, partners, attorneys, financial advisors, accountants, and consultants, each in their capacities solely as such.

1.1.176    ***Released Insurance Claims*** means all Claims purchased by the Settling Insurers and/or released by the Diocese and the Participating Parties pursuant to the Insurance Settlement Agreements.

1.1.177    ***Released Parties*** means (i) the Diocese; (ii) the Participating Parties; and (iii) each Settling Insurer, but only to the extent that such Settling Insurer's liability is under, arises out of, relates (directly or indirectly) to or connects in any way with the Settling Insurer Policies or otherwise from liabilities covered by the Settling Insurer Policies (including for the avoidance of doubt, Related Insurance Claims); *provided, however*, that "***Released Parties***" shall not include: (i) any Person who perpetrated an act of Abuse; or (ii) any religious order, diocese (other than the Diocese), or archdiocese, unless such Entity is identified as a Participating Party on **Exhibit A**.

1.1.178    ***Releasing Parties*** has the meaning ascribed to such term in Section 12.7 of the Plan.

1.1.179    ***Residual Assets*** means, after payment of the Diocese Cash Contribution, the Insurance Claims Assignment, and the transfer of Outbound Contribution Claims to the Trust, and except for (i) any Insurance Policies to be retained by the Diocese pursuant to Section 7.5 of this Plan and (ii) the Purchased Property and Released Insurance Claims, all residual property and assets of the Diocese and/or the Estate, including all charitable assets subject to Donor Restrictions, all property to which the Diocese holds legal title only, and all rights with respect to any Avoidance Actions or other causes of action belonging to the Diocese or its Estate.

1.1.180    ***Sale Order or Sale Orders*** means the order or orders approving the Insurance Settlement Agreements.

1.1.181    ***Schedules*** means the schedules of assets and liabilities and the statement of financial affairs Filed by the Diocese in this Chapter 11 Case on July 22, 2020 [Docket No. 48], as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended or supplemented through the Effective Date.

1.1.182    ***School*** means a past or present Catholic school owned by the Diocese or any Participating Party, including those identified as such on Exhibit A attached hereto.

1.1.183    ***Secured*** means, with respect to any Claim against the Diocese, a Claim to the extent (i) secured by a Lien on property of the Estate (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Diocese, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (ii) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code but, with respect to both of the foregoing clauses (i) and (ii), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

1.1.184    ***Settling Insurer*** means LMI, Catholic Mutual, Excelsior, TIG, Interstate, National Catholic, Utica Mutual, Nationwide, Hartford, and Hanover, and any Insurer that is party to an Insurance Settlement Agreement with the consent of the Committee and the Diocese, regardless of whether the Sale Order approving such Insurance Settlement Agreement is entered by the Bankruptcy Court before or after the Confirmation Date or Effective Date. A Settling Insurer's Related Persons shall receive the benefits and protections afforded to a Settling Insurer under the Plan; *provided*, that if such Related Person is a Related Person by virtue of being a predecessor, successor, or assign of the applicable Settling Insurer, then such Related

Person shall only receive the benefits and protections afforded to a Settling Insurer under the Plan to the extent that: (i) such predecessor's liability was assumed by the Settling Insurer, and not independent of the liability of such Settling Insurer; and (ii) such successor's or assign's liability is derivative of the liability of the Settling Insurer and not independent of the liability of the Settling Insurer.

1.1.185   ***Settling Insurer Covered Person*** means any Person that has or may have a Claim to insurance coverage under a Settling Insurer Policy.

1.1.186   ***Settling Insurer Policy*** means each Insurance Policy (or the coverage part(s) of such policy) that is canceled, settled, or sold back to a Settling Insurer pursuant to the Insurance Settlement Agreement with such Settling Insurer. For the avoidance of doubt, nothing in this Plan shall reduce, modify, restrict, or otherwise alter in any way the Preserved Coverage (as defined in, and amended by, any Insurance Settlement Agreement with Catholic Mutual and National Catholic) and the associated obligations, if any, of the Diocese and the Participating Parties with respect to such Preserved Coverage.

1.1.187   ***Settling Insurer Releasee*** means each Settling Insurer and each of its or their respective past, present, and future parents, subsidiaries, affiliates, and divisions; each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; each of the foregoing Persons' respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators, solely in their respective capacities as such; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, solely in their respective capacities as such, and all Persons acting on behalf of, by, through, or in concert with them. "***Settling Insurer Releasee***" further includes the reinsurers and retrocessionaires of each Settling Insurer, solely in their capacities as such with respect to a Settling Insurer Policy.

1.1.188   ***Stay Relief Motions*** means the motions Filed in the Chapter 11 Case at Docket No. 1395 by Abuse Claimants 34 and 124, and at Docket No. 1400 by Abuse Claimants 77 and 79, seeking modification of the Bankruptcy Code's automatic stay.

1.1.189   ***Stretto*** means Stretto, Inc., in its capacity as the claims and noticing agent for the Diocese.

1.1.190   ***Settling Insurer Injunction*** means the permanent injunction provided for in the Sale Order(s) and ratified in Section 12.4 of this Plan.

1.1.191   ***Target Policy*** means any Insurance Policy issued by a Non-Settling Insurer that is alleged to afford coverage for any Litigation Claim.

1.1.192   ***Timely Abuse Action*** means any Abuse Action which, at the time of its commencement, would not be subject to an affirmative defense by the Diocese and/or any Participating Party that such Abuse Action (i) is barred by the provisions of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court, or (ii) is otherwise untimely pursuant to N.Y. C.P.L.R. § 214 or any other statutes of limitation or repose under applicable law.

For avoidance of doubt, the failure of any Abuse Claimant to name the Diocese as a defendant in an Abuse Action because of the application of any stay arising pursuant to section 362 of the Bankruptcy Code, shall not prevent any Abuse Action that would otherwise qualify under this definition from being treated as a Timely Abuse Action.

   1.1.193 ***Timely-Filed Abuse Claim*** means any (i) Child Abuse Claim filed in a court of competent jurisdiction before the CVA Deadline; or (ii) Adult Abuse Claim filed in a court of competent jurisdiction before the ASA Deadline.

   1.1.194 ***Trust*** means the trust to be established pursuant to the Plan and the Trust Agreement for the satisfaction of all Abuse Claims.

   1.1.195 ***Trust Agreement or Trust Documents shall*** mean the trust agreement between and among the Diocese, the Committee and the Trustee establishing and governing the Trust, including the Allocation Protocol, as it may be amended, together with such additional documents as may be executed in connection with the Trust Agreement.

   1.1.196 ***Trust Assets*** means the Insurance Claims against Non-Settling Insurers assigned to the Trust pursuant to the Plan, Outbound Contribution Claims, and all other property transferred to the Trust pursuant to this Plan, or otherwise acquired by the Trust following the Effective Date, together with any proceeds thereof. For avoidance of doubt, the Trust Assets shall specifically exclude (i) all of the Residual Assets; and (ii) all Settling Insurer Policies, all Claims against Settling Insurers (including, for the avoidance of doubt, Extra-Contractual Claims) settled, sold and/or released pursuant to the Insurance Settlement Agreements, and all other Purchased Property and Related Insurance Claims.

   1.1.197 ***Trust Insurance Settlement*** means any Insurance Settlement Agreement entered into between the Trustee, on behalf of the Trust, and any Non-Settling Insurer, following the occurrence of the Effective Date.

   1.1.198 ***Trust Distribution*** means a Distribution by the Trust, in accordance with the provisions of the Plan, the Allocation Protocol, Trust Documents and the Confirmation Order. For the avoidance of doubt, the payment of Trust Expenses shall not be considered Trust Distributions.

   1.1.199 ***Trust Expenses*** means the costs of administering the Trust, including, without limitation, (i) payments to the Trustee and professionals retained to represent the Trust in accordance with the terms of the Trust Agreement; and (ii) the DOS Entities' Post-Effective Date Costs.

   1.1.200 ***Trust Reserve*** means a reserve to be established by the Trustee from the Diocese Cash Contribution, prior to making any Trust Distributions, sufficient to fund Trust Expenses (which shall include the DOS Entities' Post-Effective Date Costs Reserve), and the Unknown Abuse Claims Reserve and, if Unknown Claims are treated as Non-Participating Abuse Claims under the Plan, the Participating Party Unknown Abuse Claims Reserve, and which may be replenished or otherwise supplemented in the discretion of the Trustee in accordance with the provisions of the Trust Agreement.

1.1.201    ***Trustee*** means the trustee of the Trust, as identified in the Trust Agreement, and any successor trustee appointed pursuant to the terms of the Plan and/or Trust Agreement.

1.1.202    ***Unimpaired*** means, with respect to any Class, that such Class is not Impaired.

1.1.203    ***United States Trustee*** means the Office of the United States Trustee for Region 2, which includes the Northern District of New York.

1.1.204    ***Unknown Abuse Claim*** means any Abuse Claim asserted against the Diocese and/or a Participating Party that alleges Abuse that occurred prior to the Petition Date which is not (i) Filed on or before the Effective Date of the Plan or (ii) the subject of a Timely Abuse Action commenced on or before the Effective Date of the Plan.

1.1.205    ***Unknown Abuse Claimant*** means a holder of an Unknown Abuse Claim.

1.1.206    ***Unknown Claimant Representative*** means Michael R. Hogan, the representative appointed by the Bankruptcy Court to serve as legal representative for Unknown Abuse Claimants, any successor legal representative appointed by the Bankruptcy Court, or, on and after the Effective Date, any successor legal representative appointed in accordance with the Trust Agreement.

1.1.207    ***Unknown Abuse Claims Reserve*** means a portion of the Trust Reserve established by the Trust exclusively for payment of Unknown Abuse Claims, which shall be funded in the total amount of $3,000,000 if the Unknown Claimant Representative has elected to treat Unknown Abuse Claims as Consenting Abuse Claims or $500,000 if the Unknown Claimant Representative has elected to treat Unknown Abuse Claims as Non-Participating Abuse Claims.

1.1.208    ***U.S. Trustee Fees*** means all fees and charges assessed against the Estate of the Diocese under 28 U.S.C. § 1930 together with interest, if any, under 31 U.S.C. § 3717.

1.1.209    ***Voting Deadline*** means the deadline established by the Court for claimants entitled to vote on the Plan to submit ballots accepting or rejecting the Plan.

## 1.2    Interpretation:  Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein", "hereof", "hereto", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, Subsection, or clause contained therein.  A term used herein that is not defined herein shall have the meaning assigned to that term in, or exhibit to, the Plan, and if not defined therein, in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may

27

have been amended, restated, revised, supplemented or otherwise modified.  If a time or date is specified for any payments or other Distribution under the Plan, it shall mean on or as soon as reasonably practicable thereafter.  Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

### 1.3   Exhibits.

All exhibits to the Plan and any other Plan Documents are hereby incorporated by reference and made part of the Plan as if set forth fully herein.

### 1.4   Time Periods.

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

## SECTION 2.   TREATMENT OF CLAIMS

### 2.1   Unclassified Claims.

2.1.1   *Administrative Claims.*  Administrative Claims are Claims for costs or expenses incurred in the administration of the Diocese's Chapter 11 Case, which are Allowed pursuant to section 503(b) of the Bankruptcy Code.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and are treated as described in this Section 2.1 of the Plan.  Except as otherwise provided in the Plan, by written agreement of the holder of an Allowed Administrative Claim to accept different and less favorable treatment than provided under the Plan, or by order of the Bankruptcy Court, a Person holding an Allowed Administrative Claim will receive Cash equal to the unpaid portion of such Allowed Administrative Claim as soon as practicable after the later of:  (i) the Effective Date; or (ii) the date on which such Claim becomes an Allowed Administrative Claim.  Notwithstanding anything in the Plan to the contrary, the holder of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by the holder of an Allowed Administrative Claim and the Diocese.

With respect to any trade Claims arising after the Petition Date representing obligations incurred by the Diocese in the ordinary course of its business consistent with past practice, such trade Claims shall be paid in the ordinary course of business.  As to other Allowed Administrative Claims, except as otherwise provided in the Plan, each holder of an Allowed Administrative Claim:  (i) shall be paid by the Diocese as soon as reasonably practicable after the Effective Date or on the date the Order allowing such Administrative Claim becomes a Final Order; and (ii) shall receive, on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount thereof, unless the holder agrees to less favorable treatment of such Allowed Administrative Claim.

Administrative Claims representing obligations incurred by the Diocese after the date and time of the entry of the Confirmation Order shall not be subject to application to the

Bankruptcy Court and may be paid by the Diocese in the ordinary course of business and without Bankruptcy Court approval.

2.1.2    ***Priority Tax Claims.***    Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of:  (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (ii) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; *provided*, *however*, that the Diocese reserves the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium.  The holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising from, or in connection with any Priority Tax Claim and any demand for such penalty will be deemed Disallowed by the confirmation of the Plan.

2.1.3    ***Non-Tax Priority Claims***.    Unless the holder of an Allowed Non-Tax Priority Claim agrees to a different treatment, on, or as soon as reasonably practicable after, the later of:  (i) the Effective Date; or (ii) the date on which such Non-Tax Priority Claim becomes an Allowed Claim, each holder of such an Allowed Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, (a) Cash equal to the unpaid portion of such Allowed Claim or (b) such other less favorable treatment as to which the Diocese and the holder of such Allowed Claim shall have agreed upon in writing.  The Trust shall not be responsible for payment of Non-Tax Priority Claims.  Notwithstanding anything in the Plan to the contrary, the holder of an Allowed Non-Tax Priority Claim may be paid on such other date and upon such other terms as may be agreed upon by the holder of an Allowed Administrative Claim and the Diocese.

2.1.4    ***Professional Fee Claims.***    In accordance with section 1123(a)(1) of the Bankruptcy Code, Professional Fee Claims have not been classified and are treated as described herein.  All Professionals or other Persons requesting an award by the Bankruptcy Court of Professional Fee Claims shall:  (i) File their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is 60 days after the Effective Date; and (ii) be paid in full, in Cash, by the Diocese (a) as soon as practicable after the Effective Date or the date the order allowing such Administrative Claim becomes a Final Order, or (b) upon such terms as may exist pursuant to order of the Bankruptcy Court or as may be mutually agreed upon between the holder of such an Allowed Professional Fee Claim and the Diocese.  The Diocese is authorized to pay its Professionals for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

Professional Fee Claims of Professionals employed by the Committee, which are incurred prior to the Effective Date of the Plan in connection with the implementation and consummation of the Plan, shall be paid by the Diocese, after notice and a hearing in accordance with this Section 2.1.4; *provided*, *however*, the Diocese shall be responsible for paying no more than one-half of all Allowed Professional Fee Claims for Committee Professionals, up to a

maximum of $25,000, for services provided or expenses incurred relating to each of (i) the Arrowood 2004 Motion, and (ii) the Stay Relief Motions, with the balance of any such Allowed Professional Fee Claims to be paid by the Trust. For the avoidance of doubt, Professional Fee Claims of Professionals employed by the Diocese for services rendered prior to the Effective Date, shall not be paid by the Trust.

Neither the Diocese nor the Trust shall have any obligation to pay any Professional Fee Claim for services provided or expenses incurred by any Professional for the Diocese or the Committee relating to or arising out of the ISO Exception. All Allowed Professional Fee Claims (of the Diocese or Committee) arising from or relating to the ISO Exception are obligated to be paid by Interstate in accordance with the Bankruptcy Court's order at Docket No. 1485.

2.1.5   **U.S. Trustee Fees.**   U.S. Trustee Fees include all fees and charges assessed against the Diocese under 28 U.S.C. § 1930, together with interest, if any, under 31 U.S.C. § 3717. All U.S. Trustee Fees not paid prior to the Effective Date shall be paid by the Diocese as soon as practicable after the Effective Date. In no event shall the payments made to the Trust pursuant to Sections 2, 5, 7 or 8 of this Plan by any Person other than the Diocese be considered "disbursements" under 28 U.S.C. § 1930, nor shall any payment made by the Trust to any Person be considered a disbursement under 28 U.S.C. § 1930.

### 2.2    Classification and Specification of Treatment of Claims.

All Claims, except those described in Section 2.1, are placed in the following Classes of Claims, pursuant to section 1123(a)(1) of the Bankruptcy Code, which section specifies the treatment of such Classes of Claims and of their Impaired or Unimpaired status, pursuant to sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent that the Claim qualifies within the description of that different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, withdrawn, waived, or otherwise satisfied under this Plan. Unless this Plan expressly provides otherwise, when a Class includes a subclass, each subclass is a separate Class for all purposes under the Bankruptcy Code, including, without limitation, voting and Distribution.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the respective treatments set forth below. Unless otherwise provided herein, this Plan will not provide any Distribution on account of a Claim to the extent that such Claim has been Disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties. Except as specifically provided in this Plan, this Plan will not provide any Distribution on account of a Claim, the payment of which has been assumed by a third party. Except as otherwise specifically provided in this Plan or by further order of the Bankruptcy Court, all treatment, allowances, or payments of Claims which have been specified or otherwise fixed or required by order of the Bankruptcy Court shall not be Impaired by this Plan and the rights of the holders of such Claims as provided in such orders shall not be altered by this Plan. Any holder of any Claim in any Class may agree, pursuant to section 1123(a)(4) of the Bankruptcy Code, to

a treatment of such Claim that is less favorable (but not more favorable) than any other Claim in such Class.

The categories of Claims listed below classify Claims for all purposes, including voting, confirmation of the Plan, and Distributions pursuant to the Plan:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| N/A | Administrative Claims | No | Deemed to Accept |
| N/A | Priority Tax Claims | No | Deemed to Accept |
| N/A | Non-Tax Priority Claims | No | Deemed to Accept |
| N/A | Professional Fee Claims | No | Deemed to Accept |
| N/A | U.S. Trustee Fee Claims | No | Does Not Vote |
| 1 | Secured Claim of KeyBank | Yes | Entitled to Vote |
| 2 | Secured Claim of NBT Bank | Yes | Entitled to Vote |
| 3 | Pass-Through Claims | No | Deemed to Accept |
| 4 | General Unsecured Claims | Yes | Entitled to Vote |
| 5 | Abuse Claims | Yes | Entitled to Vote |
| 6 | Inbound Contribution Claims | Yes | Deemed to Reject |

### 2.3    Classes of Claims.

#### 2.3.1    *Class 1 – Secured Claim of KeyBank*

**Classification:**  Class 1 is composed of the Secured Claim held by KeyBank in connection with the Key Secured Debt Documents.

**Treatment:**  The Diocese is current with respect to all obligations due under the Key Secured Debt Documents.  Upon the occurrence of the Effective Date, the Line of Credit shall be cancelled, and KeyBank shall have no obligation to honor any request from the Diocese to draw upon such credit facility. On or as soon as reasonably practicable after the Effective Date, the Diocese will liquidate certain of the KeyBank Blocked Collateral in an amount equal to $5,885,000, or such greater amount as shall represent 110% of the KeyBank Debt Amount as of the Effective Date, the proceeds of which will be converted into one or more cash certificate(s) of deposit (collectively, the "KeyBank Replacement CD").  The KeyBank Lien shall attach to the KeyBank Replacement CD, to the same extent, validity and priority as it attached to the assets of the Diocese prior to the Petition Date, and the Diocese shall assume all obligations of the Diocese under the Key Secured Debt Documents, *except that*, notwithstanding anything to the contrary herein or in the Key Secured Debt Documents, except for the KeyBank Replacement CD which shall continue to be maintained in one of the KeyBank Blocked Accounts, the Diocese shall have no obligation to maintain any of the remaining KeyBank Blocked Collateral in the KeyBank Blocked Accounts, and shall be free to withdraw, liquidate, and/or transfer the same in its sole discretion.  The Diocese shall also pay KeyBank any reasonable fees, costs, or charges subject to and in accordance with section 506(b) of the Bankruptcy Code.  The Diocese shall execute and deliver such documents and instruments and perform such other acts that are reasonably necessary in connection with the KeyBank Replacement CD and KeyBank's treatment under the Plan.

31

**Voting:**  The Class 1 Claim is Impaired, and therefore, the holder of the Class 1 Claim is entitled to vote to accept or reject the Plan.

### 2.3.2    *Class 2 – Secured Claim of NBT Bank*

**Classification:**  Class 2 is composed of the Secured Claim held by NBT Bank, National Association in connection with the NBT Secured Debt Documents.

**Treatment:**  The Diocese is current with respect to all obligations due under the NBT Secured Debt Documents.  As of the Effective Date, NBT shall release the NBT Lien as against any assets of the Diocese, in exchange for collateral pledged by certain non-debtor affiliates of the Diocese valued at not less than the principal balance owing by the Diocese to NBT pursuant to the NBT Secured Debt Documents.

**Voting:**  The Class 2 Claim is Impaired, and therefore, the holder of the Class 2 Claim is entitled to vote to accept or reject the Plan.

### 2.3.3    *Class 3 – Pass-Through Claims.*

**Classification:**  Class 3 includes all Pass-Through Claims.

**Treatment:**  Upon the later to occur of the Effective Date and the date on which the Diocese designates a Claim as a Pass-Through Claim, the holder of such Pass-Through Claim shall be deemed to have been granted relief from the automatic stay with respect to its Pass-Through Claim, such Pass-Through Claim shall not be subject to the Diocese Discharge, and the parties shall retain their respective rights, remedies, claims, and defenses as they existed on the Petition Date.  The Diocese shall designate all Pass-Through Claims no later than sixty days after the Effective Date.

**Voting:**  Class 3 Pass-Through Claims are Unimpaired, and therefore, holders of Class 3 Claims are deemed to have accepted the Plan and are not entitled to vote.

### 2.3.4    *Class 4 – General Unsecured Claims.*

**Classification:**  Class 4 Claims include all General Unsecured Claims.

**Treatment:**  Except to the extent the holder of an Allowed General Unsecured Claim agrees in writing to accept less favorable treatment as proposed by the Diocese, the Diocese shall pay each holder of an Allowed General Unsecured Claim, Cash in two installments each equal to 50% of the Allowed amount of such General Unsecured Claim, with the first payment to occur on, or as soon as reasonably practicable after the later of:  (i) the Effective Date; and (ii) the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, and the second payment to occur on, or as soon as reasonably practicable after the date that is six months after the date of the first payment.  The foregoing payments shall be in full satisfaction, settlement, and release of, and in exchange for, such Allowed General Unsecured Claim.  Notwithstanding anything to the contrary set forth above, no payments shall be made to any Protected Party on account of any General Unsecured Claim and all Protected Parties shall be deemed to have withdrawn any General Unsecured Claim with prejudice as of

32

the Effective Date in consideration of the Channeling Injunction and release provisions provided in Article 12 of the Plan.

**Voting:** Class 4 General Unsecured Claims are Impaired, and therefore, each holder of a Class 4 Claim is entitled to vote to accept or reject the Plan.

2.3.5     *Class 5 – Abuse Claims.*

**Classification:** Class 5 Claims include all Abuse Claims.

**Treatment:**

a.     The Plan provides for the establishment of the Trust to fund Distributions to Class 5 Claimants. The Trust shall be funded as provided in Section 8 of the Plan. Distributions from the Trust shall be made to Class 5 Claimants on a fair and equitable basis, pursuant to and in accordance with Sections 4.4 and 4.9 of the Plan, the Trust Agreement, and the Allocation Protocol, which shall represent the sole recovery available to Class 5 Claimants in respect to any obligation owed by the Protected Parties; *provided*, *however*, that nothing in this Plan shall prevent Non-Participating Abuse Claimants from asserting their respective Non-Participating PP Abuse Claims against Participating Parties or any Non-Participating Insurance Claims they may have against any Non-Settling Insurer; *provided further*, that (i) all holders (including Class 5 Claimants) of Channeled Claims against the Settling Insurers are subject to the Channeling Injunction and (ii) all holders (including Class 5 Claimants) of Barred Claims against the Settling Insurers are subject to the Settling Insurer Injunction.

b.     As of the Effective Date of the Plan, and without any further order from the Bankruptcy Court or further action by any party, the Trust shall fully assume (i) the liability of the Diocese for all Class 5 Claims, the liability of the Participating Parties for all Class 5 Claims other than Non-Participating PP Abuse Claims, and the liability of the Settling Insurers for all Channeled Claims and Non-Participating Abuse Claims, in each case pursuant to the Channeling Injunction set forth in Section 12.3 of the Plan; and (ii) the liability (if any) of the Settling Insurers for any and all Barred Claims.  All Class 5 Claims shall be satisfied solely from the Trust as set forth in the Plan, the Trust Agreement, and the Allocation Protocol; *provided*, *however*, Distributions made by the Trust to holders of Class 5 Claims shall not prevent holders of Class 5 Claims that are also Litigation Claimants from asserting Litigation Claims to the extent provided for herein; and *provided further*, that nothing in this Plan shall prevent Non-Participating Abuse Claimants from asserting their respective Non-Participating PP Abuse Claims against Participating Parties or any Non-Participating Insurance Claims they may have against any Non-Settling Insurer. Notwithstanding the foregoing or anything herein to the contrary, the Channeling Injunction and Settling Insurer Injunction respectively prohibit any Person (including all Litigation Claimants and Non-Participating Abuse Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the property or assets of either of the foregoing (including Purchased Property).

c.     In addition to any other requirements set forth in this Plan, in any of the Plan Documents, or in the Confirmation Order that must be satisfied before a Class 5 Claimant is

eligible to receive a Distribution from the Trust, no Class 5 Claimant shall receive any Distribution until and unless he or she has executed and delivered to the Trust, as applicable based on their status as a Consenting Abuse Claimant or a Non-Participating Abuse Claimant, either a Consenting Abuse Claim Release Agreement or a Non-Participating Abuse Claim Release Agreement.  Notwithstanding the foregoing, to preserve coverage under Non-Settling Insurer Policies, and subject to the provisions of Section 8.2.6 and 12.2 of the Plan, Consenting Abuse Claimants specifically reserve, and do not release, any and all Claims that they may have against the Diocese or any Participating Party, to the extent that such Claims implicate coverage under Non-Settling Insurer Policies, but recourse is limited to the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable by the Trust from any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim, and any proceeds from such judgments or awards will be Distributed in accordance with Section 4.9 of the Plan. Consenting Abuse Claimants may not under any circumstance recover any Channeled Claim (including any Abuse Claim) or Barred Claim from any Settling Insurer Releasees, and Settling Insurer's Related Persons, or the property or assets of either of the foregoing (including Purchased Property); all such Claims are subject to the Channeling Injunction and Settling Insurer Injunction and are released as set forth herein.  The Trust must provide copies of all executed Consenting Abuse Claim Release Agreements and Non-Participating Abuse Claim Release Agreements to the (i) Protected Parties; and (ii) any Joint Tortfeasor, upon reasonable request and provision of an appropriate, executed non-disclosure or confidentiality agreement.

d.      Except with respect to Non-Participating PP Abuse Claims (which are preserved as against the Participating Parties under the Plan), Class 5 Claims will be released as against the Diocese and the Participating Parties upon the occurrence of the applicable Abuse Claim Discharge Date as provided in Sections 12.2.3 and 12.7 below. For the avoidance of doubt, nothing herein shall require a Consenting Abuse Claimant to release any Person that is not a Protected Party, Settling Insurer Releasee, or Settling Insurer Related Person.

e.      The Non-Settling Insurers remain fully liable for their obligations related in any way to the Class 5 Claims, and their obligations are not reduced by the Diocese being in bankruptcy or by the Trust Distributions Class 5 Claimants receive, or are entitled to receive, based on the Plan, Trust Agreement, or Allocation Protocol. For the avoidance of doubt, (i) determinations by the Abuse Claims Reviewer and/or any Distributions Abuse Claimants may receive from the Trust shall not constitute a determination of the Diocese's or any Participating Party's liability or damages for Class 5 Claims; and (ii) under no circumstances shall the Abuse Claims Reviewer's review of a Class 5 Claim affect, or be construed to affect, the rights of a Non-Settling Insurer. The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Class 5 Claims.  Any such recoveries by the Trust from Non-Settling Insurers will become Trust Assets to be distributed pursuant to Section 4.9 of this Plan and the Allocation Protocol.

f.      Nothing in this Plan affects, diminishes or impairs any Class 5 Claimant's rights against any Joint Tortfeasor, including with respect to that Joint Tortfeasor's comparative fault or independent and several liability for Abuse, if any.  In any litigation against a Joint Tortfeasor, nothing in this Plan or the Plan Documents shall be deemed an adjudication of a

Class 5 Claim for any purpose or a limitation on the recovery against such Joint Tortfeasor; *provided, however*, that the Channeling Injunction and Settling Insurer Injunction respectively bar any recovery of a Channeled Claim or Barred Claim from any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the property or assets of either (including the Purchased Property).

g.      No Person, other than the Committee or, following the Effective Date, the Trustee, may:  (i) object to any Abuse Claim; or (ii) challenge the merit, validity, or amount of any Abuse Claim, except that nothing in the Plan shall prevent the Diocese or any Participating Party, or with respect to any Abuse Claim implicating a Non-Settling Insurer Policy, a Non-Settling Insurer, from asserting any legal or factual defenses that the Diocese, Participating Party, and/or Non-Settling Insurer may have in response to any Litigation Claim or Non-Participating Abuse Claim.  Any objection or challenge to an Abuse Claim pending in the Chapter 11 Case as of the Effective Date is deemed withdrawn and shall not be refiled.  With the exception of the Trustee's objections or challenges to a Consenting Abuse Claim, or the adjudication or settlement of a Litigation Claim, Consenting Abuse Claims shall be treated in accordance with the Allocation Protocol and shall not be subject to any other review or judicial consideration. For the avoidance of doubt, nothing in the Plan shall in any way restrict the Diocese, any Participating Party, or any other Person from objecting to or otherwise contesting any Non-Participating Abuse Claim on any basis in any proceeding or action outside of the Chapter 11 Case.  Nothing in this Plan or the Plan Documents shall constitute an admission by any Protected Party as to the validity or amount of any Class 5 Claim, nor shall anything herein or therein (i) restrict the Diocese or the Participating Parties from satisfying any Post-Effective Date Preconditions to Coverage; or (ii) modify the terms of any Non-Settling Insurer Policy with respect to any failure of the Diocese or the Participating Parties to satisfy any Post-Effective Date Preconditions to Coverage.

h.      Subject to and conditioned upon entry of the Confirmation Order as contemplated in Section 11.1.1 of the Plan, Consenting Abuse Claimants in Class 5 shall automatically and without further action be deemed to irrevocably appoint the Committee as their attorney in fact and to grant to the Committee the authority to negotiate and agree to modifications of the treatment accorded to Class 5 Claims, and the Plan generally on their behalf, between the Confirmation Date and the Effective Date, to the extent such modifications are necessary to satisfy or obtain the waiver of any of the conditions precedent to the Plan's Effective Date set forth in Sections 11.1.2 through 11.1.13, subject to the Committee's fiduciary duties to act on behalf of all creditors.

i.      The Allocation Protocol was developed by the Committee; it was not developed by, or submitted for the approval of, any Settling Insurer, and the Settling Insurers have not (and shall not be deemed to have) accepted or acquiesced in the adoption of the Allocation Protocol.  For the avoidance of doubt, the Insurance Settlement Agreements do not indicate the Settling Insurers' support for the Allocation Protocol, and no party shall argue that the Settling Insurers agreed to or acquiesced in the terms or use of the Allocation Protocol in any proceeding; the Settling Insurers take no position on the Allocation Protocol.

**Voting:**  Class 5 Claims are Impaired, and each holder of a Class 5 Claim is entitled to vote to accept or reject the Plan.  Only for purposes of voting, each Class 5 Claim is deemed to be Allowed in the amount of $1.00.

### Class 6 – Inbound Contribution Claims.

**Classification:**  Class 6 Inbound Contribution Claims include any Claim asserted against the Diocese for indemnity, contribution, or reimbursement arising out of, or related to, the Claimant's liability to pay or defend any Abuse Claim.

**Treatment:**  Class 6 Claims shall be Disallowed and extinguished and there will be no Distributions to the holders of Class 6 Claims on account of such Class 6 Claims.

**Voting:**  Class 6 Inbound Contribution Claimants will not receive or retain any property under the Plan and therefore are deemed to have rejected the Plan.  Class 6 will not vote on the Plan.

## SECTION 3.    ACCEPTANCE OR REJECTION OF THE PLAN

### 3.1    Impaired Classes Vote.

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

### 3.2    Presumed Acceptance of the Plan.

Class 3 Claims are Unimpaired under the Plan and the holders of Class 3 Claims are presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

### 3.3    Presumed Rejection of the Plan.

Class 6 Claims will not receive or retain any property under this Plan.  Holders of Class 6 Clams are therefore deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Notwithstanding such presumed rejection, holders of Class 6 Claims will be deemed to consent to the injunctions and releases set forth in the Plan unless they File a timely objection to confirmation of the Plan in accordance with Section 12.2.2(b).

### 3.4    Voting Classes.

Class 1, Class 2, Class 4 and Class 5 are Impaired, and the holders of Claims in those Classes are entitled to vote to accept or reject this Plan.

**3.5**     **Modification of Treatment of Claims.**

The Diocese may modify the treatment of any Allowed Claim in any manner adverse only to the holder of such Claim at any time after the Effective Date upon the consent of the holder of the Claim whose Allowed Claim is being adversely affected, or as Allowed by Bankruptcy Court order prior to the Effective Date.

**3.6**     **Elimination of Vacant Classes.**

Any Class of Claims that does not have, as of the Confirmation Date, at least one Allowed Claim, or at least one Claim temporarily Allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of (i) voting on the acceptance or rejection of the Plan and (ii) determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

**SECTION 4.**     **ABUSE CLAIMS**.

**4.1**     **Trust Liability for Abuse Claims.**

On the Effective Date, the Trust shall automatically and without further act or deed assume: (i) all liability, if any, of the Protected Parties and Settling Insurers in respect of Channeled Claims and Barred Claims; (ii) the responsibility for preserving, managing and distributing Trust Assets pursuant to the Allocation Protocol and the Trust Agreement; and (ii) the right to pursue Insurance Claims against Non-Settling Insurers. Except as otherwise provided herein, the Trust shall only assume the liabilities of the Diocese and Participating Parties with respect to Abuse Claims upon the occurrence of the applicable Abuse Claim Discharge Date.

**4.2**     **Assessment of Abuse Claims.**

Abuse Claims will be assessed in accordance with the Allocation Protocol, which is designed to provide an expeditious, efficient, and inexpensive method for determining whether an Abuse Claimant is entitled to a Distribution from the Trust. The Diocese and the Participating Parties shall reasonably cooperate with the Abuse Claims Reviewer and the Trustee in connection with any inquiries by either related to the administration of the Allocation Protocol, but shall not be required to act in any way that prevents the satisfaction of any Post-Effective Date Preconditions to Coverage under any Non-Settling Insurer Policy, if any (including, if applicable, any Post-Effective Date Precondition to Coverage concerning cooperation with a Non-Settling Insurer). Under no circumstance shall the Abuse Claims Reviewer's review of an Abuse Claim or a Distribution to an Abuse Claimant have any effect on the rights, defenses, or obligations of any Non-Settling Insurer.

**4.3**     **Treatment of Consenting Abuse Claims.**

4.3.1     ***Consenting Abuse Claimant Treatment Election.*** No later than thirty (30) days after a Consenting Abuse Claimant is notified of the amount of their initial award under the Allocation Protocol, the Consenting Abuse Claimant shall elect in writing one of the following treatment alternatives:

a.     ***Treatment as a Distribution Claimant***. Any holder of a Consenting Abuse Claim who is not a Litigation Claimant pursuant to Sections 4.3.1.b and 4.3.1.c below, will receive, in full and final satisfaction and discharge of their Abuse Claim: Distributions from the Trust in the amount determined as a result of the Abuse Claims Reviewer's assessment of the Consenting Abuse Claimant's Abuse Claim pursuant to the Allocation Protocol. A Consenting Abuse Claimant who elects treatment as a Distribution Claimant must execute and deliver to the Trustee a Consenting Abuse Claim Release Agreement.

b.     ***Treatment as a Litigation Claimant***. Any holder of a Consenting Abuse Claim that elects treatment as a Litigation Claimant will receive, in full and final satisfaction and discharge of their Abuse Claim: (i) rights, to the extent set forth in the Plan and Allocation Protocol, to Distributions from the Trust; and (ii) the right, prior to the occurrence of the applicable Abuse Claim Discharge Date, and subject to the Trustee granting authorization to pursue a Litigation Claim in accordance with the provisions of this Plan, to liquidate his or her Consenting Abuse Claim for its full amount according to proof in order to determine the liability of the Diocese or any Participating Party (as applicable) for purposes of the Trust seeking recovery from any Non-Settling Insurer that is or may be liable on the Consenting Abuse Claim or any Insurance Claim arising therefrom, pursuant to Section 8.8 of this Plan. For the avoidance of doubt, the Settling Insurers shall not have any duties or obligations to any Person in connection with a Litigation Claim (including without limitation, any duty to defend or indemnify any Person). Further, under no circumstances will a Litigation Claimant or any other Person be able to obtain any recovery whatsoever against (i) any Settling Insurer Releasee, any Settling Insurer's Related Persons, or the property or assets of either (including Purchased Property), or (ii) any asset of the Diocese or the Participating Parties (except for collecting proceeds from any Non-Settling Insurer Policy or other amounts for which a Non-Settling Insurer is deemed to be liable), in connection with a Litigation Claim.

(i)     Prior to authorizing a Consenting Abuse Claimant that elects to be treated as a Litigation Claimant to proceed with their Litigation Claim, the Trustee shall (a) consult with counsel for the Litigation Claimant, and the Diocese and/or any Participating Party against whom such Abuse Claimant's Claim is asserted, to establish, among other things, a mutually acceptable litigation schedule; and (b) require the Litigation Claimant to execute and deliver a Consenting Abuse Claim Release Agreement and a Litigation Claimant Agreement.

(ii)     The Trustee shall provide a copy of each Consenting Abuse Claim Release Agreement and Litigation Claimant Agreement to the Diocese upon execution thereof, and to any other Protected Parties upon request. For the avoidance of doubt, the Trustee shall have the sole discretion to (a) authorize a Litigation Claimant to pursue their Litigation Claim; (b) make a final decision as to whether a Litigation Claim is

38

pursued; and (c) make final decisions relating to the management and timing of litigation relating to Litigation Claims; *provided, however*, that the Trust Agreement shall direct that in making such determinations, the Trustee shall take into consideration, and shall use reasonable efforts to minimize the cumulative impact of post-Effective Date litigation on, the business operations and legal and personnel resources of the Diocese and the Participating Parties.  For the further avoidance of doubt, nothing set forth in Section 4.3.1.b.ii(c) regarding the Trustee's discretion to make final decisions relating to the management and timing of litigation relating to Litigation Claims shall have any impact on the authority of any court overseeing the Litigation of a Litigation Claim.

c.    ***Default Election.*** If a Consenting Abuse Claimant does not make one of the elections in Section 4.3.1, the Consenting Abuse Claimant will be treated as a Litigation Claimant prior to the occurrence of the applicable Abuse Claim Discharge Date and subject to the Trustee's authorization to proceed on such Litigation Claim as set forth in Section 4.3.1.b, above.

4.3.2    ***Modification of Treatment Election for Consenting Abuse Claimants.***

a.    Upon written notice to the Trustee, a Consenting Abuse Claimant may rescind the election to be treated as a Litigation Claimant in favor of being treated as a Distribution Claimant.

b.    Upon written notice to the Trustee, and no later than ten (10) days after a Consenting Abuse Claimant makes an election to be treated as a Distribution Claimant, a Consenting Abuse Claimant may rescind such election in favor of being treated as a Litigation Claimant; *provided, however*, that such Consenting Abuse Claimant must first obtain the Trustee's authorization before prosecuting his or her Litigation Claim, in accordance with the provisions of Section 4.3.1.b of the Plan.

4.3.3    ***Reporting of Consenting Abuse Claimant Treatment Election***.  The Trustee shall report to the Diocese, on a quarterly basis, or upon reasonable request, (i) the date on which each Consenting Abuse Claimant is notified of their award under the Allocation Protocol, (ii) whether each Consenting Abuse Claimant has elected to be treated as Distribution Claimant or Litigation Claimant, and (iii) any modification made by any Consenting Abuse Claimant to their treatment status pursuant to Section 4.3.2.

### 4.4    Treatment of Non-Participating Abuse Claims.

4.4.1    ***Default Distribution.***  Each Non-Participating Abuse Claimant shall receive, in full and final satisfaction of their Non-Participating DOS Abuse Claim:   (i) a Distribution from the Diocese Abuse Claims Settlement Sub-Fund in the amount of $1,000; and (ii) the opportunity to establish an entitlement to further Distributions from the Diocese Abuse Claims Settlement Sub-Fund solely as provided for in this Section 4.4 of the Plan and the Allocation Protocol.

4.4.2    *Establishing Liability.*

a.    If a Non-Participating Abuse Claimant wishes to obtain a Distribution in excess of the default Distribution set forth in Section 4.4.1 above, he or she must first execute and deliver to the Diocese and Trustee a Non-Participating Litigation Claimant Agreement.

b.    Non-Participating Abuse Claimants who deliver to the Diocese an executed Non-Participating Litigation Claimant Agreement may, subject to the terms of this Plan and the other Plan Documents, litigate their Non-Participating DOS Abuse Claim in any court of competent jurisdiction.

c.    Notwithstanding any judgment or settlement obtained by a Non-Participating Abuse Claimant with respect to their Non-Participating DOS Abuse Claim, any recovery against the Diocese by such Non-Participating Abuse Claimant shall be limited to the Distributions provided for in this Plan and the Allocation Protocol.

4.4.3    *Additional Distribution Upon Successful Litigation.*

a.    Once a Non-Participating Abuse Claimant's Non-Participating DOS Abuse Claim is fully adjudicated or settled on a final and non-appealable basis, and if (i) as a result of such adjudication or settlement the Diocese is determined to be liable to such Non-Participating Abuse Claimant on their Non-Participating DOS Abuse Claim in an amount greater than the default Distribution provided in Section 4.4.1 above, and (ii) the Trust has not been terminated in accordance with the terms of the Trust agreement on or before the date on which the Non-Participating Abuse Claimant first presents their final and non-appealable judgment or settlement to the Trustee, such Non-Participating Abuse Claimant shall be entitled to a further Distribution from the Trust.

b.    Such further distribution shall be made on or before the date that is 120 days after the date on which the Non-Participating Abuse Claimant presents their final and non-appealable judgment or settlement to the Trustee and shall be in an amount equal to the lesser of (i) the amount of the Diocese's liability for the applicable Non-Participating DOS Abuse Claim as set forth in such judgment or settlement and (ii) the amount determined as a result of the Abuse Claim Reviewer's assessment of the Non-Participating Claimant's Non-Participating DOS Abuse Claim pursuant to the Allocation Protocol, in each case less the default Distribution previously paid pursuant to Section 4.4.1.

(i)    Distributions to Non-Participating Abuse Claimants pursuant to clause (ii) of Section 4.4.3(b) above shall be limited to the *pro-rata* portion of the Diocese Abuse Claims Settlement Sub-Fund allocable to such Non-Participating Abuse Claimant's Non-Participating DOS Abuse Claim, and holders of Non-Participating Abuse Claims shall not be entitled to receive any Distribution of any other Trust Assets, including,

40

without limitation, any Trust Assets consisting of (a) the Participating Parties' Cash Contribution, (b) Insurance Settlement Amounts paid by the Settling Insurers, (c) any payment by a Settling Insurer pursuant to an Insurance Settlement Agreement, (d) any Insurance Claim Proceeds, (e) proceeds of Litigation Awards, (f) proceeds of Outbound Contribution Claims, or (g) any other proceeds which the Trust may obtain pursuant to the terms of the Plan.

c.      Any funds held in the Diocese Abuse Claims Settlement Sub-Fund that are not distributable to Non-Participating Abuse Claimants pursuant to the Plan and the Allocation Protocol shall be Distributed to Consenting Abuse Claimants in accordance with Section 4.9.2.a of the Plan.

4.4.4      ***Retention of Non-Participating PP Abuse Claims and Non-Participating Insurance Claim.*** Each Non-Participating Abuse Claimant shall retain the right to assert any Non-Participating PP Abuse Claim they may have against any Participating Party and any Non-Participating Insurance Claim they may have against any Non-Settling Insurer, but only after the Non-Participating Abuse Claimant executes and delivers to the Diocese and Trustee a Non-Participating Litigation Claimant Agreement, and in all respects, in accordance with, and subject to, the terms and provisions of the Plan.

4.4.5      ***Option to Become a Consenting Abuse Claimant.*** A Non-Consenting Abuse Claimant may elect to become a Consenting Abuse Claimant by delivering to the Trustee a Consenting Abuse Claim Release Agreement (i) at any time prior to executing a Non-Participating Litigation Claimant Agreement, or (ii) with the consent of the Diocese and the Trustee.

4.4.6      ***No Recourse Against Settling Insurers***.  For the avoidance of doubt, and notwithstanding anything to the contrary herein, the Settling Insurer Injunction bars all Non-Participating Abuse Claimants from asserting, enforcing, or seeking to assert or enforce any Barred Claim (including, for the avoidance of doubt, any Non-Participating Abuse Claim, Non-Participating Insurance Claim, or judgment or settlement in respect thereof) against any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the property or assets of either of the foregoing (including Purchased Property).

## 4.5      Unknown Claimant Treatment.

4.5.1      The Unknown Claimant Representative, on April 26, 2025, Filed on the docket of the Chapter 11 Case [Dkt. No. 2850], written notice that Unknown Abuse Claimants will be treated as Consenting Abuse Claims under the Plan.  Except to the extent that a Unknown Abuse Claimant agrees to less favorable treatment of such Claim, each Unknown Abuse Claimant shall have the right to elect treatment as either a Distribution Claimant or a Litigation Claimant in accordance with Section 4.3.1 of the Plan, and in full and final satisfaction, settlement, release, and discharge of, and in exchange for, their respective Unknown Abuse Claim, each holder of a Unknown Abuse Claim shall receive Distributions from the Unknown Abuse Claims Reserve as provided in Section 4.9.2.c of the Plan and in the Trust Documents.

41

**4.6**      **Trust's Rights Against Non-Settling Insurers with Respect to Abuse Claims.**

       4.6.1      ***Trust's Rights with Respect to Litigation Claims.*** The Trust retains the right to pursue Non-Settling Insurers for the Diocese's and any other Protected Party's liability to Litigation Claimants.      To the extent that either a settlement is achieved with a Non-Settling Insurer as to any Target Policy or a Litigation Claimant obtains a judgment against the Diocese or any Participating Party and the Trust obtains a recovery from a Non-Settling Insurer as to such judgment, such recovery shall be added to the Abuse Claims Settlement Fund; *provided, however*, such recovery shall first go to reimburse the Trust or the Litigation Claimant, as the case may be, for all costs (including attorneys' fees) incurred in connection with pursuing the recovery against the Non-Settling Insurer(s) relating to the Litigation Claim, so long as such amounts are reasonable and were agreed to in advance by the Trust. Any amount remaining shall be distributed in a manner consistent with Section 4.9.2 of the Plan and the Allocation Protocol.

       4.6.2      ***Trust's Rights with Respect to Distribution Claims.*** The Trust retains the right to pursue recovery from Non-Settling Insurers with respect to Distribution Claims held by Consenting Abuse Claimants; *provided, however,* that such right shall be limited to the pursuit of extra-contractual causes of action, including, by way of example, claims for tortious or wrongful claims handling, bad faith, or statutory deceptive business practices under New York General Business Law Section 349.  The Trust cannot present Non-Settling Insurers with a demand for coverage or indemnification, or pursue an extra-contractual claim based upon Distributions made by the Trust to Abuse Claimants.

       4.6.3      ***Trust's Rights with Respect to Abuse Claims Implicating Insurance Policies Issued by Arrowood Indemnity Company.*** The Trust shall have the right to take any action, including but not limited to the execution and submission of documentation, on behalf of all Consenting Abuse Claimants as may be necessary to pursue any recoveries from (1) the liquidation of Arrowood Indemnity Company ("Arrowood"), which is under the supervision of the Insurance Commissioner of Delaware (and his successors) as the appointed receiver of Arrowood; (2) the New York Property/Casualty Security Fund administered by the New York Liquidation Bureau, which is part of the New York State Department of Financial Services, and the Supreme Court of the State of New York has appointed as an ancillary receiver of Arrowood; or (3) any other liquidator, liquidation bureau, guaranty association, or security fund that may provide recoveries in connection with Insurance Policies issued by Arrowood. Any recoveries obtained by the Trust or by Consenting Abuse Claimants will become Trust Assets to be distributed pursuant to the Allocation Protocol. The Consenting Abuse Claimants with Abuse Claims covered by Insurance Policies issued by Arrowood shall reasonably cooperate with the Trust in pursuing recoveries on such Claims. For the avoidance of doubt, the entities listed in items (1) through (3) of this paragraph 4.6.3 are included in the term Non-Settling Insurers with Arrowood.

       4.6.4      ***No Rights with Respect to Settled and Released Claims against Settling Insurers.*** Once a Settling Insurer pays to the Trust the Insurance Settlement Amount due from such Settling Insurer, the Trust shall neither have nor retain any right to take any action against, or pursue any recovery from, such Settling Insurer for any Claim settled, released, and/or sold pursuant to the Settling Insurer's Insurance Settlement Agreement (including without limitation, Released Insurance Claims and Related Insurance Claims).  For the avoidance of doubt, the Trust

may enforce its rights (if any) and/or each Settling Insurer's obligations under the applicable Insurance Settlement Agreement(s).

**4.7    Legal Effect of Estimation of Claims and Distributions Under the Allocation Protocol.**

The Abuse Claims Reviewer's determinations are for estimation and Distribution purposes only and shall not constitute findings as to, or the fixing of, facts or liability concerning the Abuse Claims with any binding legal effect. The determination of the Abuse Claimants' qualifications, the estimation of Abuse Claims, and Trust Distributions to Abuse Claimants shall not be construed as an admission of liability by the Diocese, any Participating Party, or the Trust with respect to any Abuse Claim and shall have no *res judicata* or collateral estoppel effect on the Diocese, any Participating Party, the Trust, or any Non-Settling Insurer.

The Trust's act of making a Distribution to an Abuse Claimant is immaterial to, and shall not be construed as, a determination or admission of the Diocese's, any Participating Party's, or any Non-Settling Insurers' liability for, or damages with respect to, any Abuse Claim, nor shall the Trust present any Non-Settling Insurer with a demand for payment of said Distribution. The determination of qualification, estimation of Abuse Claims, and the payment of Distributions is not a settlement, release, accord, or novation of any Abuse Claim and cannot be used by any Joint Tortfeasor as a defense to any alleged joint liability; *provided, however*, that the Channeling Injunction and Settling Insurer Injunction respectively prohibit any Person (including all Abuse Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the assets or property of either of the foregoing (including Purchased Property). The determination of qualification, estimation of claims, and payment of partial Distributions does not impair a Litigation Claimant's right to obtain a judgment, including a judgment based on joint and several liability, against the Diocese and/or a Participating Party or any Non-Settling Insurer, for purposes of establishing the Diocese's and/or a Participating Party's liability with respect to their Litigation Claim; *provided*, *however*, that (a) recourse on such judgment shall be limited to the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim or any Insurance Claim arising therefrom, and any proceeds from such judgments or awards will be Distributed in accordance with Section 4.6 of the Plan; and (b) the Channeling Injunction and Settling Insurer Injunction respectively shall prohibit any Person (including all Litigation Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any Settling Insurer Releasees, any Settling Insurer's Related Persons, or the assets or property of either of the foregoing (including Purchased Property). Neither the Abuse Claims Reviewer's review of an Abuse Claim and determination of qualification, nor the Trust's estimation of an Abuse Claim or the payment of Distributions shall:  (i) constitute a trial, an adjudication on the merits, or evidence of liability or damages in any litigation with the Diocese or the Participating Parties, Non-Settling Insurers, or any other Person, or (ii) constitute, or be deemed, a determination of the reasonableness of the amount of any Litigation Claim, either individually or in the aggregate with other Litigation Claims, in any coverage litigation with any Non-Settling Insurers.  The Trust's estimation of Abuse Claims and payment of Trust

Distributions does not create an admission of the fact of liability, or the extent of damages, on behalf of the Diocese and/or any Participating Parties.

### 4.8     Release and Discharge of Abuse Claims.

Notwithstanding anything to the contrary herein, each Abuse Claimant must, prior to receiving a Distribution from the Trust, execute and deliver to the Trustee (i) a Consenting Abuse Claim Release Agreement in the form attached to the Plan Supplement as **Exhibit 2** if such Abuse Claimant is a Consenting Abuse Claimant or (ii) a Non-Participating Abuse Claim Release Agreement in the form attached to the Plan Supplement as **Exhibit 3** if such Abuse Claimant is a Non-Participating Abuse Claimant; *provided, however,* to preserve coverage under Non-Settling Insurer Policies, Consenting Abuse Claimants specifically reserve, and do not release, subject to the occurrence of the applicable Abuse Claim Discharge Date, any and all Abuse Claims that they may have against the Diocese and/or any Participating Party that implicate coverage under Non-Settling Insurer Policies, but recourse on such Abuse Claims prior to their release is limited to any Trust Distributions as set forth in the Plan, the Trust Agreement, and the Allocation Protocol, and the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable by the Trust from any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim, and any such judgments or awards will be handled in accordance with the Plan.

Consenting Abuse Claims will be released or enjoined as against the Diocese and Participating Parties for any Abuse that may be covered under Non-Settling Insurer Policies only upon the occurrence of the applicable Abuse Claim Discharge Date, as set forth in Section 12.2.3 and 12.7.  Consenting Abuse Claimants will expressly reserve their rights against other Persons (other than Protected Parties, Settling Insurer Releasees, or Settling Insurer Related Persons), including Joint Tortfeasors, who will remain severally liable with respect to any Consenting Abuse Claims.  For the avoidance of doubt, neither the Channeling Injunction nor the Settling Insurer Injunction, nor any release of a Consenting Abuse Claim, shall be subject to any delayed effectiveness with respect to the Settling Insurers; each shall be immediately effective as to a Settling Insurer upon receipt by the Trust of that Settling Insurer's Insurance Settlement Amount.

Non-Participating DOS Abuse Claims will be released or enjoined as against the Diocese upon the occurrence of the applicable Abuse Claim Discharge Date, as set forth in Section 12.2.3 and 12.7.  All Barred Claims (including Non-Participating Abuse Claims) against the Settling Insurer Releasees, any Settling Insurer's Related Persons, or the property or assets of either (including Purchased Property) are subject to the Settling Insurer Injunction.

Any Person that is, or was alleged to be, a Joint Tortfeasor with the Diocese or any of the Participating Parties in connection with any Abuse Claim, or the Abuse or alleged Abuse that forms the basis of any Abuse Claim, shall not be liable for any share of causal liability or fault attributable to the Diocese or any Participating Party and neither the Diocese nor any Participating Party shall be liable for the share of causal liability or fault attributable to any Joint Tortfeasor or other Person.

44

For the avoidance of doubt, with respect to all Non-Abuse Claims, except as otherwise provided in the Plan, the Diocese's liability on account of such Claims shall be discharged pursuant to the provisions of 1141(d).

**4.9     Distributions to Abuse Claimants.**

4.9.1     ***Distributions Generally***.

a.     ***Tax Considerations.*** Any Distribution to an Abuse Claimant constitutes a payment for damages on account of a personal physical injury or sickness arising from an occurrence, within the meaning of section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

b.     ***Distribution Limitations.*** The Abuse Claimants' recoveries under the Plan shall be limited to their Trust Distributions, if any, as set forth in this Section 4.9, the Allocation Protocol, and the Trust Documents. Abuse Claimants shall not be entitled to collect personally, or otherwise, any additional amounts whatsoever from the Diocese, any Participating Party, or their respective assets, for any Abuse Claims that are Channeled Claims, even if they are denied a Trust Distribution.  Abuse Claimants shall not be entitled to collect any portion of a Channeled Claim or Barred Claim (including, for the avoidance of doubt, an Abuse Claim) from any Settling Insurer Releasee, any Settling Insurer's Related Persons, or the property or assets of either (including Purchased Property) under any circumstance.

c.     ***No Impact on Non-Settling Insurers***. Nothing in this Plan shall affect in any way the Non-Settling Insurers' rights to argue that any Abuse Claim (whether or not allowed by the Abuse Claims Reviewer for purposes of Distribution) is legally inviable, including by way of illustration and not limitation, the fact that (i) Abuse Claimants may receive Trust Distributions that are determined on the basis of when their claim was filed in relation to the CVA Deadline or the ASA Deadline; and (ii) holders of Disallowed Abuse Claims may be entitled to distribution pursuant to the Allocation Protocol.

For the avoidance of doubt, Trust Distributions made to Litigation Claimants shall have no impact on Litigation Claimants' rights to obtain a judgment, including a judgment based on joint and several liability, against the Diocese, any Participating Party, or any Non-Settling Insurer, but recourse is limited to any Trust Distributions as set forth in the Plan, the Trust Agreement, and the Allocation Protocol, and the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim or any Insurance Claim arising therefrom, and any proceeds from such judgments or awards will be Distributed in accordance with Section 4.6 of the Plan.

Neither the Trust's Distributions to Abuse Claimants, nor the Abuse Claims Reviewer's review of Abuse Claims, shall: (1) constitute a trial, an adjudication on the merits, or evidence of liability or damages, either individually or in the aggregate, in any litigation whatsoever, or (2) constitute, or be deemed, a determination of the reasonableness or unreasonableness of the amount of any Abuse Claim or any Insurance Claim, either individually or in the aggregate with other Abuse Claims, in any coverage litigation with any Non-Settling Insurers.

Any Trust Distribution to a Litigation Claimant that has obtained a judgment or settlement does not affect, diminish or impair the Trust's right to collect the policy proceeds in respect of such Litigation Claimant's Claim from any Non-Settling Insurer, nor does it affect, diminish or impair the Trust's right to bring any Insurance Claims against the Non-Settling Insurer that have been assigned to the Trust or that belong to the Trust by operation of law.

4.9.2    ***Distributions to Abuse Claimants***. An Abuse Claimant whom the Abuse Claims Reviewer determines to be entitled to a Distribution pursuant to the Allocation Protocol will receive a Distribution from the Trust in the amount(s) and at the time(s) provided for in this Section 4.9.2. Such Distributions may commence only after the entry of a final decree in this Chapter 11 Case.

a.      ***Distributions to Consenting Abuse Claimants***. Distributions to Consenting Abuse Claimants who, on or prior to the Effective Date, Filed an Abuse Claim, shall be made by the Trustee, in his or her discretion, upon determining the allocable portion of the Abuse Claims Settlement Fund available for Distribution to such Abuse Claimants in accordance with the Abuse Claims Reviewer's evaluation of Filed Abuse Claims pursuant to the Allocation Protocol, the Trust Agreement, and the Plan.

b.      ***Distributions to Non-Participating Abuse Claimants.*** Distributions to Non-Participating Abuse Claimants who, on or prior to the Effective Date, Filed an Abuse Claim, shall be made by the Trustee, in his or her discretion, upon determining the allocable portion of the Diocese Abuse Claims Settlement Sub-Fund available for Distribution to such Abuse Claimants in accordance with Section 4.4 of the Plan and the Abuse Claims Reviewer's evaluation of Filed Abuse Claims pursuant to the Allocation Protocol.

c.      ***Distributions to Unknown Abuse Claimants that are Consenting Abuse Claimants.*** Distributions to Unknown Abuse Claimants that are Consenting Abuse Claimants shall be made from the Unknown Abuse Claims Reserve as follows:

(i)      Upon the assertion of an Unknown Abuse Claim by an Unknown Abuse Claimant that is a Consenting Abuse Claimant, the Abuse Claims Reviewer shall evaluate and assign a score to such Unknown Abuse Claim pursuant to the Allocation Protocol and notify the Trustee of the same. The Trustee, then, but only after the Unknown Abuse

Claimant executes and delivers a Consenting Abuse Claim Release Agreement to the Trustee, shall make an initial Trust Distribution to the Unknown Abuse Claimant from the Unknown Abuse Claims Reserve in the amount of $10,000.

(ii)    Except as provided in Section 4.9.2.c.iii of the Plan, upon termination of the Trust, the Trustee shall, after accounting for any Distributions made to Unknown Abuse Claimants from the Unknown Abuse Claims Reserve, make a final, pro-rata Distribution to Unknown Abuse Claimants that are Consenting Abuse Claimants from the remaining Unknown Abuse Claims Reserve funds based on the score each Unknown Abuse Claimant's Unknown Abuse Claim was assigned by the Abuse Claims Reviewer pursuant to the Allocation Protocol; *provided, however*, that Unknown Abuse Claimants who are Consenting Abuse Claimants and who are either (a) Distribution Claimants or (b) Litigation Claimants who are not authorized by the Trustee to purse their Litigation Claim in accordance with Section 4.3.1.c of the Plan, shall be entitled to a maximum monetary Distribution in a dollar amount no greater than the amount a holder of a Timely-Filed Abuse Claim that elected treatment as a Distribution Claimant with the same score is entitled to receive from the Trust. If the Trustee determines that the funds held in the Unknown Abuse Claims Reserve exceed the amount distributable to Unknown Abuse Claimants pursuant to the Plan and the Allocation Protocol, any such excess funds will revert to the Abuse Claims Settlement Fund and shall be Distributed by the Trustee in accordance with Section 4.9.2.a above.

(iii)    To the extent that an Unknown Abuse Claimant is a Consenting Abuse Claimant who elects treatment as a Litigation Claimant and is authorized by the Trustee to pursue a Litigation Claim in accordance with Section 4.3.1.c of the Plan, and as a result of the prosecution of such Litigation Claim the Abuse Claims Reviewer, in his or her sole discretion, assigns an increased score to such Unknown Abuse Claimant's Unknown Abuse Claim pursuant to Section 3.2.b of the Allocation Protocol, Section 4.9.2.c.ii of the Plan shall not apply for purposes of the Trustee making subsequent Trust Distributions to such Unknown Abuse Claimant.  Instead, to the extent that the Abuse Claims Reviewer, in his or her sole discretion, assigns an increased score to a Litigation Claim held by an Unknown Abuse Claimant pursuant to the Section 3.2.b of the Allocation Protocol, the Trustee shall make subsequent Distributions to such Unknown Abuse Claimant from the Abuse Claims Settlement Fund pursuant to Section 4.9.2.a above.

d.    ***Distributions to Unknown Abuse Claimants that are Non-Participating Abuse Claimants.*** Unknown Abuse Claimants that are Non-Participating Abuse Claims shall receive, in full and final satisfaction of their Non-Participating DOS Abuse Claims, Distributions in accordance with the provisions of Section 4.4 of the Plan, except that (i) all such Distributions shall be

47

funded solely from the Unknown Abuse Claims Reserve and (ii) any additional Distributions payable to Unknown Abuse Claimants who successfully litigate their Claim in accordance with Section 4.4.3 of the Plan shall be paid on a pro-rata basis only upon the termination of the Trust.

> e.  *Replenishment of Unknown Abuse Claims Reserve*. If the Unknown Abuse Claims Reserve becomes depleted before the Trust is terminated, it will be replenished up to $500,000 a pro-rata basis, 50% of which would be contributed by the Diocese and 50% of which would be contributed from the Trust out of proceeds of insurance settlements.

> f.  *Limitation on Distributions to Unknown Abuse Claimants.* To the extent the Unknown Abuse Claims Reserve is depleted or the Trust is terminated prior to the date on which an Unknown Abuse Claim is first presented to the Trust, the holders of such subsequently asserted Unknown Abuse Claims shall not be entitled to any Distribution under the Plan.

## 4.10  Dismissal of Pending Litigation.

Upon the occurrence of the applicable Abuse Claim Discharge Date, as defined in Section 12.2.3, the subject Abuse Claim asserted in any lawsuit against any Protected Party pending in state or federal court shall be dismissed, with prejudice, and without fees and costs being recoverable against any Protected Party, except that nothing in the Plan shall require Non-Participating Abuse Claimants to dismiss their Non-Participating PP Abuse Claims against Participating Parties.

## 4.11  Claim Withdrawal.

An Abuse Claimant may withdraw his or her Abuse Claim at any time on written notice to the Trustee.  If withdrawn, the Abuse Claim will be withdrawn with prejudice and may not be reasserted, and such Abuse Claimant shall still be bound by the Diocese Discharge and all injunctive provisions of this Plan, including the Channeling Injunction to the same extent that such provisions applied to such Abuse Claimant's Abuse Claim prior to its withdrawal.

## 4.12  Medicare Procedures.

It is the position of the Diocese that none of the Protected Parties will have any reporting obligations in respect of their contributions to the Trust, or in respect of any payments, settlements, resolutions, awards, or other Claim liquidations by the Trust, under the reporting provisions of MSPA or MMSEA.  To that end, the following shall apply (and the Confirmation Order shall so provide):

> a.  The Trust shall register as a "Responsible Reporting Entity" under the reporting provisions of MMSEA.

> b.  With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any Medicare Claims.

48

c.      The Trust shall confirm whether the holder of any Abuse Claims that occurred after December 5, 1980, is enrolled in Medicare Parts A and B (fee-for-service), Part C (Medicare Advantage), or Medicare Part D (drug coverage). This includes implementing an appropriate process to gather the necessary information for querying CMS on such determination, including, the Claimant's first and last name, date of birth, gender, address, and social security number or health insurance claim number.

d.      The Trust shall timely submit all reports required under MMSEA because of any Abuse Claims that occurred after December 5, 1980, settled, resolved, paid, or otherwise liquidated by the Trust.  The Trust, as a Responsible Reporting Entity, shall follow all applicable guidance published by the CMS and/or any other agency or successor Person charged with responsibility for tracking, assessing, or receiving reports made under MMSEA to determine whether, and, if so, how, to report to such agency or agencies under MMSEA.

e.      For Abuse Claims that occurred after December 5, 1980, before remitting funds to any Person on account of an Abuse Claim, the Trustee shall obtain (i) a certification that said Person (or such Person's authorized representative) has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under the MSP provisions, or any related rules, regulations, or guidance, in connection with, or relating to, such Abuse Claim, and (ii) an agreement that such Person indemnify the Trust for any such obligations.  The failure by one or more holders of Abuse Claims to follow these provisions shall not delay or impair the payment by the Trust to any other holder of an Abuse Claim following these provisions.

f.      Upon request, the Trust shall provide to a Settling Insurer or the Diocese information sufficient to perform their own queries to CMS, to the extent they wish to do so, including a report setting forth (I) each Abuse Claimant whom the Trustee has determined to be a Medicare Beneficiary; (II) the amount of (a) all Conditional Payments to each such Medicare Beneficiary, (b) the amount of the reserve maintained by the Trust for each Medicare Claim based upon such Conditional Payments.

g.      The Trust shall submit reimbursement to the CMS relating to Abuse Claims.

h.      With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any potential reimbursements to the CMS in full and consider the potential future interests of the CMS.

i.      The Social Security Administration may change (or may have already changed) its processes and/or procedures in a manner that is inconsistent with the foregoing.  The Trustee shall make best efforts to comply meaningfully with the foregoing while adhering to the Social Security Administration's most recent processes, procedures, and requirements.

Nothing in the Plan shall imply, or constitute an admission, that the Protected Parties are "applicable plans" within the meaning of MMSEA, or that they have any legal obligation to report any actions undertaken by the Trust or contributions to the Trust under MMSEA or any other statute or regulation.

**SECTION 5.    SETTLING INSURERS**

**5.1    Insurance Settlement Agreements.**

Each Insurance Settlement Agreement is effective and binding upon the Trust, Trustee, all Persons who have notice (including constructive notice, to the extent applicable), and any of the foregoing Persons' successors and assigns, upon entry of the Sale Order approving such Insurance Settlement Agreement and satisfaction of all conditions precedent.  Payment to the Trust of a Settling Insurer's Insurance Settlement Amount, and the releases by the Diocese and Participating Parties of such Settling Insurer shall occur and/or be effective according to the terms of such Settling Insurer's Insurance Settlement Agreement.  The Insurance Settlement Agreements shall survive the confirmation, effectiveness, and consummation of the Plan.  The rights of the parties under any Insurance Settlement Agreement shall be determined exclusively under the applicable Insurance Settlement Agreement and those provisions of the Sale Order approving such Insurance Settlement Agreement, the Plan, and the Confirmation Order.  In the event of a conflict between (a) any Insurance Settlement Agreement, on the one hand, and (b) the Plan, on the other, the terms of the applicable Insurance Settlement Agreement shall control; and/or in the event of a conflict between (y) the Sale Order(s), on the one hand, and (z) the Confirmation Order, on the other, the terms of the Sale Order(s) shall control.  For the avoidance of doubt, but without limiting the generality of the foregoing, nothing in this Plan, any Plan Documents, or the Confirmation Order shall limit the parties' respective rights and obligations under the Insurance Settlement Agreements.

**5.2    Sale Free and Clear of Interests of Settling Insurer Policies.**

Each Settling Insurer shall purchase its Settling Insurer Policy(ies) and Claims related thereto free and clear of all Claims, Interests, and other rights of any nature, whether at law or in equity, pursuant to sections 105 and 363 of the Bankruptcy Code and the terms of such Settling Insurer's Insurance Settlement Agreement.

**5.3    Resolution of Claims Involving Settling Insurers.**

The Confirmation Order shall provide that the Diocese or the Trust, as the case may be, shall dismiss with prejudice their Claims in the Insurance Coverage Adversary Proceeding against each Settling Insurer, and each Settling Insurer shall dismiss with prejudice their respective Claims in the Insurance Coverage Adversary Proceeding against the Diocese (or, if applicable, the Trust), in accordance with the term(s) and timeline(s) set forth in such Settling Insurer's Insurance Settlement Agreement.  Each side will bear its own fees and costs.

**5.4**      **The Settling Insurer's Payments.**

Each Settling Insurer will pay to the Trust the Insurance Settlement Amount set forth in such Settling Insurer's Insurance Settlement Agreement, on the terms and within the time detailed therein.

**5.5**      **Further Assurances; Non-Material Modifications.**

From and after the Effective Date, the Diocese and the Settling Insurers shall be authorized to enter into, execute, adopt, deliver, or implement all notes, contracts, security agreements, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the Insurance Settlement Agreements without further order of the Bankruptcy Court.  The Diocese and a Settling Insurer may with the consent of the Committee make technical or immaterial alterations, amendments, modifications, waiver, or supplements to the terms of the Plan and/or such Settling Insurer's Insurance Settlement Agreement, subject to the requirements thereof.  A Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or supplemented under Section 14.1 of the Plan, if the proposed alteration, amendment, modification, or supplement does not materially and adversely change the treatment of the Claims within such Class.  An order of the Bankruptcy Court approving any amendment or modification made pursuant to Section 14.1 of the Plan shall constitute an order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

**5.6**      **Waiver/Consent.**

In consideration of the releases and Channeling Injunction and other covenants set forth herein, subject to the occurrence of the Effective Date and the satisfaction of the other conditions precedent to the effectiveness of the Insurance Settlement Agreements, each of the Protected Parties:  (a) ratifies the releases set forth in the Insurance Settlement Agreements; and (b) ratifies and further consents to the sale of the Purchased Property in accordance with the Insurance Settlement Agreements and to the contribution of the proceeds from such sale and settlement to the Trust, as provided in the Plan.  Nothing in Section 12 of the Plan shall be construed to bar either: (x) a Claim based on Abuse against a Person who is not a Protected Party, Settling Insurer Releasee, or Settling Insurer Related Person; or (y) a Claim by such Person for insurance coverage under a Non-Settling Insurance Policy.

**5.7**      **[Reserved]**

**5.8**      **Timing.**

The injunctions, releases, and discharges to which a Settling Insurer is entitled pursuant to its Insurance Settlement Agreement, the Plan, the Confirmation Order, the Sale Order, and the Bankruptcy Code shall become effective pursuant to the terms of such Settling Insurer's Insurance Settlement Agreement.

**SECTION 6.    MATTERS RELATING TO NON-SETTLING INSURERS**

    **6.1    Preservation of Rights and Obligations.**

If an Abuse Claim is liquidated through the Allocation Protocol or in any state or federal court as may be permitted by the Plan, the Allocation Protocol, or the Trust Agreement, then the Protected Parties, the Trust, and each Non-Settling Insurer shall retain the right to assert any and all rights and defenses of the Protected Parties with respect to such Abuse Claim and, except as set forth in this Section, all coverage defenses.  The rights, duties, and obligations of each Non-Settling Insurer under the Non-Settling Insurer Policies with respect to Abuse Claims are not affected in any way by the Diocese Discharge.

The rights and obligations (if any) of the Protected Parties and every Non-Settling Insurer under the terms of the Non-Settling Insurer Policies and at law shall not be affected by the Allocation Protocol and shall be treated as if the determination by the Abuse Claims Reviewer had never occurred.  Each Non-Settling Insurer shall be entitled to all rights and defenses as are provided under the terms of its Non-Settling Insurer Policies as if the determination by the Abuse Claims Reviewer had never occurred.

Nothing in the Plan, the Confirmation Order, or any Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim, or grant to any Person any right to sue any Non-Settling Insurer directly, relating to an Abuse Claim.  All such obligations with respect to Non-Settling Insurers shall be determined by and in accordance with the terms of the Non-Settling Insurer Policies and with applicable non-bankruptcy law.

    **6.2    Estimations/Assessments of Abuse Claims Are Not Binding.**

Estimations of Abuse Claims for purposes of determination, qualification, assignment of points pursuant to the Allocation Protocol, and payment of Trust Distributions:

    a.    shall not (i) constitute an admission of liability by any Person with respect to such Abuse Claims; (ii) have any *res judicata* or collateral estoppel effect on any Person; (iii) constitute a settlement, release, accord, satisfaction, or novation of such Abuse Claims; (iv) be used by any third-party as a defense to any alleged joint lability; or (v) otherwise prejudice any rights of the Trust, the Diocese, the Participating Parties, the Settling Insurers, the Non-Settling Insurers, or Consenting Abuse Claimants in any other contexts or forums;

    b.    shall be without prejudice to any and all rights of the Trust, the Non-Settling Insurers, and Consenting Abuse Claimants in any other contexts and forums; and

    c.    shall not be deemed to be a determination of liability of the Diocese or any Participating Party or a determination of whether, or the extent to which, such Abuse Claim is covered under any Non-Settling Insurer Policy.

**6.3**      <u>**Post-Effective Date Preconditions to Coverage.**</u>

       6.3.1      Notwithstanding the Insurance Claims Assignment, the Diocese and the Participating Parties shall, for purposes of preserving and maintaining as much insurance coverage as possible for the sole and exclusive benefit of the Trust, and subject to the Trust's payment of any DOS Entities' Post-Effective Date Costs in accordance with Section 8.11, comply with and satisfy all Post-Effective Date Preconditions to Coverage.

       6.3.2      If the Trust believes the Diocese or a Participating Party has failed to satisfy any Post-Effective Date Preconditions to Coverage, the Trust shall give the Diocese or the Participating Party (as applicable) written notice identifying with specificity the Post-Effective Date Preconditions to Coverage at issue and the action the Trust believes must be taken in order to satisfy the same. Subject to further order of the Court, the Diocese and the Participating Parties shall have at least 45 days following receipt of any such notice from the Trust to either (i) undertake the actions requested by the Trust or (ii) seek a determination from the Court as to whether the action requested by the Trust is required to satisfy any Post-Effective Date Preconditions to Coverage; *provided however*, that (a) any Non-Settling Insurer whose Non-Settling Insurer Policy may be implicated by such a request shall be provided notice of such request and shall be afforded the opportunity to participate in the adjudication of such dispute; and (b) that any such determination made by the Court shall not be binding upon any Non-Settling Insurer or the Trust in any coverage litigation related to the Non-Settling Insurer Policy at issue. The Court will retain jurisdiction to adjudicate such dispute or claim between the Trust, on the one hand, and the Diocese and/or the Participating Parties, on the other. Except in the case of willful misconduct by the Diocese and/or any Participating Party, the Trust's sole remedy for any failure to satisfy any Post-Effective Date Preconditions to Coverage shall be specific performance as ordered by the Court.

       6.3.3      Nothing in this Plan shall impair, and each Non-Settling Insurer expressly retains, all contractual defenses to coverage, if any, available under any Non-Settling Insurer Policy arising from or relating to any actual or alleged failure by the Diocese or any Participating Party to satisfy their respective Post-Effective Date Preconditions to Coverage, if any.

**6.4**      <u>**Trust Powers With Respect to Abuse Claims and Non-Settling Insurers.**</u>

       Solely as set forth in this Plan, the Allocation Protocol, or the Trust Agreement, the Trust may enter into a settlement of any Insurance Claim or any Abuse Claim, provided that nothing in this Section preempts or prevents a Non-Settling Insurer from raising any defense to such settlement or claim for coverage. For the avoidance of doubt, the Trustee may use the Trust Assets to prosecute any Insurance Claim. If the Trust successfully resolves an Insurance Claim or otherwise receives a recovery of insurance proceeds relating to any Abuse Claim from a Non-Settling Insurer, such proceeds shall become Trust Assets available for Distribution pursuant to the Allocation Protocol.

**6.5**      **Insurance Coverage Adversary Proceeding.**

As of the Effective Date, the Trust shall be substituted as the named plaintiff in the Insurance Coverage Adversary Proceeding and have all rights of the Diocese and the Participating Parties to pursue recoveries against any Non-Settling Insurers. For the avoidance of doubt, the Trust shall have no right to pursue recoveries in the Insurance Coverage Adversary Proceeding against any Settling Insurer Releasee or any Settling Insurer's Related Persons.

**SECTION 7.**      **MEANS FOR IMPLEMENTATION OF PLAN**

**7.1**      **Plan Implementation.**

All Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Secured Claims, General Unsecured Claims, and Pass-Through Claims will be paid by the Diocese. All Distributions to be made under the Plan on account of Abuse Claims will be paid solely from the Trust to be established for the purpose of receiving, liquidating, and distributing Trust Assets in accordance with this Plan, the Allocation Protocol, and the Trust Agreement. The Allocation Protocol is attached to the Plan Supplement as **Exhibit 1** and is incorporated into the Trust Agreement. The proposed Trust Agreement is attached to the Plan Supplement as **Exhibit 4**.

**7.2**      **Corporate Action.**

All matters provided under this Plan involving the corporate structure of the Diocese or corporate action to be taken by or required of the Diocese shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement or further approval by the Bankruptcy Court or any other governmental entity. For avoidance of doubt, to the extent any corporate action or other transaction contemplated under this Plan would otherwise require approval under section 511 or 511-a of the New York State Not-For-Profit Corporation Law, the entry of the Confirmation Order shall constitute such approval.

**7.3**      **Payments Effective Upon Tender.**

Whenever the Plan requires payment to be made to a Creditor, such payment will be deemed made and effective upon tender thereof by the Trustee or the Diocese to the Creditor to whom payment is due. If any Creditor refuses a tender, the amount tendered and refused will be held by the Trust, the Diocese for the benefit of that Creditor pending final adjudication of the dispute. However, when and if the dispute is finally adjudicated and the Creditor receives the funds previously tendered and refused, the Creditor will be obliged to apply the funds in accordance with the Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the Creditor will not have the right to claim interest or other charges or to exercise any other rights which would be enforceable by the Creditor if the Trust or the Diocese failed to pay the tendered payment.

**7.4**      **Agreements, Instruments, and Documents.**

All organizational agreements, charter documents, instruments, and documents required under this Plan to be executed or implemented, together with such others as may be necessary,

useful or appropriate in order to effectuate this Plan, shall be executed on or before the Effective Date or as soon thereafter as is practicable.

### 7.5     Continuation of Insurance Policies.

Any Insurance Policy or portion of any Insurance Policy that is neither (a) bought back under an Insurance Settlement Agreement nor (b) otherwise disposed of by the terms of the Plan shall, as applicable, either be deemed to be assumed by the Diocese, as amended by any applicable Insurance Settlement Agreement with a Settling Insurer, pursuant to sections 365, 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code to the extent such Insurance Policy is or was an executory contract of the Diocese, or continued in accordance with its terms pursuant to section 1123(a)(5)(A) of the Bankruptcy Code, to the extent such Insurance Policy is not an executory contract of the Diocese, such that each of the parties' contractual, legal, and equitable rights under each such Insurance Policy shall remain unaltered, except as amended by any applicable Insurance Settlement Agreement with a Settling Insurer.  For the avoidance of doubt, the portions of each Insurance Policy issued by Catholic Mutual and National Catholic relating to Preserved Coverage, as amended by the respective Insurance Settlement Agreement of such Settling Insurer, shall continue in effect for the benefit of the Diocese and the Participating Parties, notwithstanding confirmation of the Plan. A list of all known Insurance Policies is attached to the Plan Supplement as **Exhibit 5**. To the extent that any or all such Insurance Policies are considered to be executory contracts, then the Plan shall constitute a motion to assume such Insurance Policies in connection with the Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall approve such assumption pursuant to sections 365(a), 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code and include a finding by the Bankruptcy Court that each such assumption is in the best interest of the Diocese, the Estate, and all parties in interest in this Chapter 11 Case. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Diocese existing as of the Effective Date with respect to any Insurance Policy.  Subject to the terms of the Insurance Settlement Agreements, the Diocese reserves the right to seek rejection of any Insurance Policy or other available relief prior to the Effective Date.  Nothing in this Plan shall relieve the Diocese and Diocesan Associated Parties from their respective liabilities and obligations, if any, related to the Preserved Coverage.

### 7.6     Bar Date for Professional Fee Claims.

Each Professional retained or requesting compensation in the Chapter 11 Case, pursuant to sections 330, 331, or 503(b) of the Bankruptcy Code, must File with the Bankruptcy Court a final application requesting the allowance of a Professional Fee Claim no later than 60 days after the Effective Date.  All applications for the allowance of Professional Fee Claims that are not timely Filed shall be forever barred.  Objections to such applications may be Filed in accordance with the Bankruptcy Rules.  The Bankruptcy Court shall determine all such Professional Fee Claims.

**7.7**      **Bar Date for Other Administrative Claims.**

Except as provided for herein or in an order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Claims must File and serve on the Diocese requests for the payment of such Administrative Claims not previously Allowed by a Final Order in accordance with the procedures specified in the Confirmation Order, on or before the Administrative Claims Bar Date, or such Administrative Claims shall be automatically considered Disallowed Claims, forever barred from assertion, and unenforceable against the Diocese, the Estate, or their property without the need for any objection by the Diocese further notice to, or action, order, or approval of the Bankruptcy Court, and any such Administrative Claims shall be deemed fully satisfied, released, and discharged.

**7.8**      **Exit Financing.**

The Diocese may, in its respective discretion, obtain Exit Financing to assist in funding the DOS Entities' Cash Contribution, which financing may be secured by a security interest or Lien on any assets of the Diocese and any Residual Assets held by the Diocese, to the extent the granting of such security interest or Lien is not inconsistent with applicable non-bankruptcy law. Any security interest or Lien in collateral granted to an Exit Financing Lender in connection with Exit Financing provided to the Diocese shall, on and after the Effective Date, be enforceable against any interest the Diocese may have in such collateral, to the same extent it may have been enforceable against the Diocese prior to the Effective Date.

**SECTION 8.**      **THE TRUST**

**8.1**      **Establishment of Trust.**

On the Confirmation Date, or as soon as practicable thereafter, the Trust shall be established in accordance with the Trust Documents for the exclusive benefit of the holders of Abuse Claims. The Trust will assume all liability for and rights concerning all Channeled Claims, including the rights to settle the Channeled Claims. The Trust will make Distributions from the Abuse Claims Settlement Funds to Abuse Claimants pursuant to the terms of the Allocation Protocol, the Trust Agreement, the Plan, and the Confirmation Order. The Trustee shall establish and maintain a reserve for Trust Expenses, which shall be paid pursuant to the terms of the Trust Agreement.

**8.2**      **Funding of the Trust.**

        8.2.1     ***Diocese Cash Contribution.***    On or before the Effective Date, the Diocese shall cause the Diocese Cash Contribution to be paid to the Trust to establish the Trust Reserve, with any balance to be included in the Abuse Claims Settlement Fund. The Abuse Claims Settlement Fund may be supplemented from time to time from: (i) any payment by a Settling Insurer pursuant to an Insurance Settlement Agreement; (ii) any Insurance Claim Proceeds; (iii) proceeds of Litigation Awards; (iv) proceeds of Outbound Contribution Claims; and (v) any other proceeds which the Trust may obtain pursuant to the terms of the Plan.

8.2.2    ***Participating Parties' Cash Contribution.***  On or before the Effective Date, the Participating Parties shall cause the Participating Parties' Cash Contribution to be paid to the Trust for inclusion in the Abuse Claims Settlement Fund.

8.2.3    ***Cabrini Foundation.***

a.    If, prior to the termination of the Trust, the Cabrini Foundation enters into a settlement agreement or other arrangement whereby the Diocese and/or Participating Parties receive any Cabrini Qualifying Proceeds, the Diocese and/or Participating Parties shall transfer such Cabrini Qualifying Proceeds to the Trust as set forth in such settlement agreement or other arrangement.

b.    If, prior to the termination of the Trust, the Diocese and/or Participating Parties (as applicable) receive any Cabrini Qualifying Proceeds that are not transferred subject to a settlement agreement or other arrangement as contemplated by Section 8.2.3.a above, the recipient thereof shall hold such Cabrini Qualifying Proceeds in a separate segregated account (which may be an investment account) pending either (i) agreement among the Trustee, the Diocese and, if applicable, any recipient Participating Parties, as to the ultimate disposition of such Cabrini Qualifying Proceeds; or (ii) entry of an order by the Court directing such disposition, *provided*, *however*, that no party shall apply to the Court for judicial intervention until the parties have attempted to negotiate in good faith for at least six months, and *provided further*, that in the event judicial intervention is needed with respect to any issue related to the Cabrini Foundation, its assets, proceeds thereof, or the disposition thereof, all parties shall retain all rights and arguments (if any) they may have related to the Cabrini Foundation, its assets, proceeds thereof, or the disposition thereof.

c.    Any Cabrini Qualifying Proceeds that are transferred to the Trust pursuant to this Section 8.2.3 shall be included in the Abuse Claims Settlement Fund.

d.    For avoidance of doubt, nothing in the Plan shall limit or direct in any way the manner in which the Diocese or any Participating Parties may receive and utilize any Cabrini Exempt Transfer.

8.2.4    ***Reserved.***

8.2.5    ***Settling Insurers' Cash Contribution.***  Each Settling Insurer will pay to the Trust the Insurance Settlement Amount set forth in such Settling Insurer's Insurance Settlement Agreement pursuant to, and in accordance with, the terms of such Insurance Settlement Agreement.

8.2.6    ***Insurance Claims Assignment.***  Insurance Claims against any Non-Settling Insurer shall be transferred to the Trust as follows:

a.    On the Effective Date, and without further action by any party, (i) the Diocese and the Consenting Abuse Claimants will be deemed to have assigned

to the Trust their respective rights, if any, to all Insurance Claims and recoveries on account of such Insurance Claims against the Non-Settling Insurers; and (ii) each of the Participating Parties will assign to the Trust the Participating Parties' rights, if any, to all Insurance Claims against the Non-Settling Insurers and recoveries on account of such Insurance Claims. The foregoing transfer shall be effective to the maximum extent permissible under applicable law and shall not be construed: (i) as an assignment of any Insurance Policy; or (ii) to entitle any Person to insurance coverage other than those Persons entitled to coverage under the terms of the Non-Settling Insurer Policies. For the avoidance of doubt, the Trust shall be solely responsible for satisfying, to the extent required under applicable law, any self-insured retention obligations on account of any Consenting Abuse Claim or arising out of any Non-Settling Insurer Policy. To the extent that the Trust pays any self-insured retention in connection with any Consenting Abuse Claim, such amount shall be paid by the Trust from the DOS Entities' Post-Effective Date Costs Reserve, and the Trust shall contemporaneously contribute funds to the DOS Entities' Post-Effective Date Costs Reserve in an amount equal to such self-insured retention paid. To the extent the Diocese pays any self-insured retention, the Trust shall reimburse from the DOS Entities' Post-Effective Date Costs Reserve the Diocese for any amounts actually paid by the Diocese prior to making any Trust Distribution for the Abuse Claim for which the Diocese paid the self-insured retention, and the Trust shall contemporaneously contribute funds to the DOS Entities' Post-Effective Date Costs Reserve in an amount equal to such self-insured retention paid. Nothing herein shall obligate any Non-Settling Insurers to advance any self-insured retention, unless otherwise required by applicable law. Likewise, nothing herein shall obligate the Trust or the Diocese to pay any self-insured retention that is not otherwise required by applicable law.

b.      In the event that the Bankruptcy Court determines that the Insurance Claims Assignment is inconsistent with the Bankruptcy Code with respect to the Diocese, the Consenting Abuse Claimants and/or one or more Participating Parties, the Diocese, the Consenting Abuse Claimants, and each such Participating Party will retain their respective Insurance Claims against the Non-Settling Insurers.  In that case, the Diocese or a Participating Party will, to the extent reasonably requested by the Trust, assert and pursue any such retained Insurance Claims against any Non-Settling Insurer.  The Diocese or Participating Party will retain counsel acceptable to the Trustee to prosecute any retained Insurance Claims against any Non-Settling Insurer (subject to any defenses the Non-Settling Insurers may have under applicable state law) and the Trust shall pay all attorney's fees, expert fees, and other costs and expenses incurred by the Diocese or the Participating Party in prosecuting the Insurance Claims against any Non-Settling Insurer.  For avoidance of doubt, any efforts by the Diocese or a Participating Party to prosecute Insurance Claims against any Non-Settling Insurer shall be an accommodation to the Trust and any costs and expenses incurred in connection therewith shall be paid by the Trust in full and shall not be subject to the DOS Entities' Post-Effective Date Costs Procedures described below.  The Trust shall have a common interest with the Diocese in prosecuting

Insurance Claims against any Non-Settling Insurer, and may appear and be heard in connection with the prosecution of such claims, at its own expense, unconditionally, subject only to any limitations of law and equity.  The Diocese and the Participating Parties shall not settle any retained Insurance Claims against any Non-Settling Insurer without the prior written consent of the Trustee, which consent shall not be unreasonably delayed or denied.  As provided herein, the Trust shall pursue the Insurance Claims, if any, against any Non-Settling Insurer on behalf of the Consenting Abuse Claimants. All recoveries on account of retained Insurance Claims against any Non-Settling Insurer will be paid to the Trust, net of any unreimbursed or unpaid attorney's fees, expert fees and other costs and expenses associated with prosecuting such retained Insurance Claims.

c.    For the avoidance of doubt, except as specifically set forth in this Section 8.2.6 and in Section 6.3 with respect to satisfying Post-Effective Date Preconditions to Coverage, the Diocese, and the Participating Parties make no representations or warranties, and shall have no duty or obligations whatsoever, to the Trust with respect to the Insurance Claims.  The Trust shall assume all risks with respect to the litigation, liquidation and collection of the Insurance Claims.

d.    For the further avoidance of doubt, and notwithstanding anything to the contrary herein, Related Insurance Claims shall not be transferred to the Trust or retained by the Diocese or Participating Parties but instead shall be sold to the Settling Insurers and/or settled and released, in each case as set forth in the Insurance Settlement Agreements.

8.2.7    ***Outbound Contribution Claims.***  Outbound Contribution Claims shall be automatically, and without further act or deed, assigned to the Trust on the Effective Date.

8.2.8    ***ISO Exception Claims***. Any ISO Exception claims held by the Diocese or the Participating Parties shall be automatically, and without further act or deed, assigned to the Trust on the Effective Date.

8.2.9    ***Excluded Insurer Claims***.  Excluded Insurer Claims are not included in the Insurance Claims Assignment, or otherwise treated under this Plan, and any Holders of Excluded Insurer Claims shall retain whatever rights against Excluded Insurer Policies that they have under applicable law (subject to any defenses the Excluded Insurers may have under applicable law).

**8.3    Vesting of Trust Assets.**

On the Effective Date, all Trust Assets shall vest in the Trust, and the Protected Parties shall be deemed for all purposes to have transferred all of their respective right, title, and interest in the Trust Assets to the Trust.  On the Effective Date, or as soon as practicable thereafter, the Protected Parties, as applicable, shall take all actions reasonably necessary to transfer any Trust Assets to the Trust.  Upon the transfer of the Trust Assets in accordance with this paragraph, and subject to the Insurance Settlement Agreements, the Protected Parties shall have no further

59

interest in or with respect to any Trust Assets other than the DOS Entities' Post-Effective Date Costs Reserve.

**8.4    Child Protection Protocols.**

In order to further promote healing and reconciliation, and in order to continue efforts to prevent Abuse from occurring in the future, the Diocese agrees that, as of the Effective Date (unless a different date is provided in the Confirmation Order), it will use reasonable efforts to undertake and observe the Child Protection Protocols as agreed upon with the Committee and set forth as **Exhibit 6** in the Plan Supplement.

**8.5    Appointment of the Trustee.**

The Trustee is identified in the Trust Agreement.  The Trustee shall commence serving as the Trustee on the Effective Date; *provided*, *however*, that the Trustee shall be permitted to act in accordance with the terms of the Trust Agreement from such earlier date, as authorized by the Bankruptcy Court, and shall be entitled to seek compensation in accordance with the terms of the Trust Agreement and the Plan.

**8.6    Rights and Responsibilities of Trustee.**

The Trustee shall be deemed to be a fiduciary of the Trust under the terms of the Trust Agreement and shall have all rights, powers, authority, responsibilities, and benefits under New York law specified in this Plan and as reflected in the Trust Agreement, including commencing, prosecuting or settling causes of action, enforcing contracts, and asserting Claims, defenses, offsets and privileges.  If there is any inconsistency or ambiguity between the Confirmation Order and the Trust Agreement with respect to the Trustee's authority to act, the provisions of the Trust Agreement shall control but shall not take precedence over any contrary provision in any Insurance Settlement Agreement(s) or the Sale Order(s) (in which case, the Sale Order(s) and the applicable Insurance Settlement Agreement(s) shall control and govern, in that order).  Among other things, the Trustee:  (1) shall liquidate and convert to Cash the Trust Assets, make timely Distributions and not unduly prolong the duration of the Trust; (2) may request an expedited determination of taxes of the Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust; and (3) may retain professionals, including legal counsel, accountants, financial advisors, auditors, and other Agents on behalf of the Trust, and at the Trust's sole expense, as reasonably necessary and to carry out the obligations of the Trustee hereunder and under the Trust Agreement.

The Trust shall not make Trust Distributions to the Abuse Claimants until after a final decree is entered in the Diocese's Chapter 11 Case.  The Trust shall pursue Insurance Claims against any Non-Settling Insurers.  The Trust shall fund DOS Entities' Post-Effective Date Costs pursuant to the DOS Entities' Post-Effective Date Costs Procedures and may seek reimbursement from any Non-Settling Insurer.  The Trust shall not pursue any Related Insurance Claims against any Settling Insurer Releasee or any Settling Insurer's Related Persons, nor shall the Trust take any other action contrary to, or in violation of, the Insurance Settlement Agreements.

The Confirmation Order shall state that, absent permission of the Bankruptcy Court, no cause of action shall be commenced in any forum, other than the Bankruptcy Court, against the Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Trustee; *provided*, this limitation shall not apply with respect to any Claim or cause of action brought by a Settling Insurer for any actual or alleged (a) breach by the Trustee of such Settling Insurer's Settlement Agreement or (b) violation by the Trustee of any provision of the Sale Order(s).

**8.7     Unknown Claimant Representative.**

The Unknown Claimant Representative's services shall be limited to evaluating the adequacy and fairness of the Plan's treatment of Unknown Abuse Claims and making the election described in Section 4.5 of the Plan. The Unknown Claimant Representative will be compensated for his services to the extent set forth in the order approving the Unknown Claimant Representative's retention.

**8.8     Trust Pursuit of Insurance Claims.**

8.8.1     ***Trust's Rights to Pursue Insurance Claims Against Non-Settling Insurers.*** If the assignment contemplated in Section 8.2.6.a is approved, effective as of the Effective Date, the Insurance Claims against Non-Settling Insurers shall be assigned and transferred to the Trust.

a.     The Trust shall be entitled to (i) all recoveries on account of Insurance Claims against Non-Settling Insurers that are assigned to the Trust as set forth in the Plan and the Confirmation Order, including the proceeds of any such Insurance Claims relating to or arising out of any Litigation Claim, and (ii) to assert against Non-Settling Insurers on behalf of any Consenting Abuse Claimant or combination of Consenting Abuse Claimants, to the extent permitted by the Non-Settling Insurer Policies and applicable non-bankruptcy law, any and all Insurance Claims that currently exist or may arise in the future.

b.     The Trust shall also have the right to pursue Insurance Claims against Non-Settling Insurers related to the Diocese's and/or the Participating Parties' liability for Channeled Claims or the Non-Settling Insurers' obligations in respect of such Channeled Claims. The foregoing transfer shall not be construed to entitle any Person to insurance coverage other than those Persons entitled to such coverage from Non-Settling Insurers. For the avoidance of doubt, the Trust cannot present Non-Settling Insurers with a demand for Coverage or indemnification based upon Distributions made by the Trust to Abuse Claimants.

c.     The Trust may act in its own name, or in the name of any Consenting Abuse Claimant, the Diocese and/or a Participating Party to enforce any right, title, or interest of any such party in the Insurance Claims against Non-Settling Insurers assigned to the Trust.

d.     No limitations on recovery from Non-Settling Insurers shall be imposed by virtue of the fact the Diocese is in bankruptcy or by any Distribution from the Trust to an Abuse Claimant.

e. The Insurance Claims Assignment shall not affect any Non-Settling Insurer's duty to defend, but to the extent that the failure to defend or a separate agreement between the Diocese and/or a Participating Party and any Non-Settling Insurer gives rise to a monetary obligation to reimburse defense costs in lieu of a duty to defend, the Trust shall be entitled to the benefit of such monetary obligation or policy proceeds to the extent of any DOS Entities' Post-Effective Date Costs actually paid by the Trust.

f. Any recovery by the Trust on Insurance Claims against Non-Settling Insurers shall become a Trust Asset and shall be distributed as provided in the Allocation Protocol.

g. The Trust's pursuit of the Diocese and Participating Parties shall be limited to enforcing specific performance of the Insurance Claims Assignment and any other rights or interests expressly granted to the Trust under the Plan. Neither the Trust nor the Trustee may pursue any Settling Insurer for any Claim released, waived, sold, or relinquished under such Settling Insurer's Insurance Settlement Agreement (including, for the avoidance of doubt, Related Insurance Claims); *provided*, however, the Trust may enforce its rights (if any) and/or each Settling Insurer's obligations under the applicable Insurance Settlement Agreement(s)

h. The Trust shall have full access to coverage under the Non-Settling Insurer Policies as permitted by applicable non-bankruptcy law, and the Non-Settling Insurers shall retain any and all rights and defenses to coverage under the Non-Settling Insurer Policies and applicable non-bankruptcy law.

i. The Insurance Claims Assignment does not affect any right of the Diocese any Participating Party or any Non-Settling Insurer to contest any liability or the amount of damages in respect of any Abuse Claims.

8.8.2 **No Impact on Non-Settling Insurers.** Nothing in the Plan, the Allocation Protocol, the Trust Documents, the Plan Documents, any Confirmation Order (including any provision in the Confirmation Order), or any judgment, order, finding of fact, conclusion of law, determination or statement (written or verbal, on or off the record) made by the Bankruptcy Court, the District Court, or entered by any other court exercising jurisdiction over the Bankruptcy Case, including in any judgment, order, writ or opinion entered on appeal from any of the foregoing, shall in any Action brought by or against a Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding:

a. constitute an adjudication, judgment, trial, determination on the merits, finding, or conclusion of law establishing:

(i) the liquidated liability (in the aggregate or otherwise) of (a) the Diocese, the Participating Parties, or the Trust, with respect to any Abuse Claims; or (b) any Non-Settling Insurer with respect to any Insurance Claim;

(ii) the liability or obligation of the Diocese, Participating Parties, or Trust with respect to any Abuse Claim;

(iii)    that the aggregate value of the Abuse Claims is equal to the amount to be paid by the Diocese and/or the Participating Parties into the Trust;

(iv)    that it is reasonable, in good faith, or consistent with the terms and conditions of any Non-Settling Insurer Policy for any of the Diocese, the Participating Parties, or the Trust, to settle, allow, assign any value to, liquidate, and/or pay (or present to any Non-Settling Insurer for payment) any Abuse Claim on any terms or conditions contemplated by the Plan, the Allocation Protocol (including any procedures, matrices or criteria used or considered in valuing, estimating or allowing Abuse Claims thereunder), any other Plan Documents, or any other document or agreement;

(v)    that the Plan, any other Plan Document, or any other document or agreement (including any procedures, matrices or criteria used or considered in valuing, estimating or allowing Abuse Claims thereunder) are reasonable or consistent with any procedures that were used to evaluate, settle, or pay Abuse Claims against the Diocese and the Participating Parties before the Petition Date or under the terms and conditions of any Non-Settling Insurer Policy or applicable nonbankruptcy law;

(vi)    that the conduct of the Diocese, Participating Parties, the Committee, or the Abuse Claimants, in connection with the negotiation, development, settlement and/or implementation of the Plan (including the aggregate value or amount of the DOS Entities' Cash Contribution), the other Plan Documents, or any related documents or agreements was, is, or will be consistent with the terms and conditions of any Non-Settling Insurer Policy or applicable nonbankruptcy law;

(vii)    that any Non-Settling Insurer was invited to participate in or participated in, consulted on, negotiated, and/or consented to the Allocation Protocol, the Trust Documents and other Plan Documents; and

b.    have any res judicata, collateral estoppel or other preclusive effect with respect to any matter set forth in Section 8.8.2(a) hereof, or otherwise prejudice, diminish, impair, or affect (under principles of waiver, estoppel, or otherwise) any defense, Claim or right any Non-Settling Insurer may have under any Non-Settling Insurer Policy or applicable non-bankruptcy law with respect thereto. Without limiting the foregoing, but subject to Section 8.8.4 below, it is expressly agreed by all Neutrality Parties that the Neutrality Parties are not litigating any issue set forth in Section 8.8.2(a) hereof or any other Non-Settling Insurer coverage defenses, rights, obligations, or other coverage issue of any kind in this Chapter 11 Case.

c.      constitute a decision on any matter at issue or which may be raised as an issue in any Action by or against a Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding. Thus, any judgment, order, finding of fact, conclusion of law, determination or other statement of the Bankruptcy Court or issued or affirmed by the District Court in this Bankruptcy Case, or entered by any other court exercising jurisdiction over the bankruptcy case, including any Confirmation Order or the Allocation Protocol and/or other Plan Documents and any finding, conclusion or determination entered in connection therewith, is not intended – and shall not be construed – to constitute a finding, conclusion or determination regarding any matter set forth in Section 8.8.2(a) hereof or any other issue for any insurance coverage purpose whatsoever, and the Neutrality Parties shall not contend otherwise in any Action by or against a Non-Settling Insurer;

d.      subject to Section 8.8.4 below, impair any Non-Settling Insurer's legal, equitable, or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims, or any policyholder's legal, equitable or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims. The Neutrality Parties shall retain, and be permitted to assert, in any Action against any Non-Settling Insurer, all Claims and/or defenses, including any coverage defenses related to the Abuse Claims, the Insurance Claims and/or the Non-Settling Insurer Policies, notwithstanding any provision of the Plan, Allocation Protocol, the Trust Documents, the other Plan Documents, the Confirmation Order, any findings of fact and/or conclusions of law with respect to the confirmation of the Plan, or any Final Order or opinion entered on appeal from the Confirmation Order; or

e.      subject to Section 8.8.4 below, impair any Non-Settling Insurer's Insurer Contribution Claims, which may be asserted as a defense or counterclaim against the Diocese, the Participating Parties or the Trust (as applicable) in any Action by or against any Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding. To the extent the Insurer Contribution Claims of a Non-Settling Insurer are determined to be valid, the liability (if any) of such Non-Settling Insurer to the Trust shall be reduced by the amount of such Insurer Contribution Claims.  For avoidance of doubt, and notwithstanding anything to the contrary in this Section 8.8.2, all Insurer Contribution Claims shall be channeled to the Trust in accordance with Section 12.5.1 of the Plan and no Insurer Contribution Claim shall be the basis for any affirmative recovery against the Diocese or any Protected Party.

On and after the Confirmation Date, no Neutrality Party shall assert anything to the contrary of this Section 8.8.2 in any Action by or against a Non-Settling Insurer. Each Neutrality Party shall be entitled to enforce this Section 8.8.2.

8.8.3      ***Non-Settling Insurers' Remedies.***  Notwithstanding anything to the contrary in Section 8.8.2, the Non-Settling Insurers' remedies are limited to those available under

applicable law and nothing in the Chapter 11 Case shall enhance any right(s) a Non-Settling Insurer may have under applicable law.

8.8.4    ***Preservation of Plan Provisions.***    For the avoidance of doubt, the provisions of Section 8.8.2 above are intended solely to ensure that the Plan leaves intact and does not alter or affect any rights or interests of the Non-Settling Insurers with respect to the Non-Settling Insurer Policies.  Nothing set forth in Section 8.8.2 is intended to, nor shall it, impair the effectiveness of any provision of the Plan, including, without limitation, the Diocese Discharge, the Settling Insurer Injunction, Channeling Injunction, or any other release or injunctive provisions set forth in the Plan, as such Plan provisions relate to any rights, Claims, actions, defenses, interests, transactions or other dealings between or among (i) one or more Neutrality Parties who are not Non-Settling Insurers or (ii) any Neutrality Party who is not a Non-Settling Insurer and any Person who is not a Neutrality Party.

## 8.9    Investment Powers; Permitted Cash Expenditures.

All funds held by the Trust shall be held in Cash or invested in short-term highly-liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Trust Agreement.  The Trustee may expend such Cash in a manner consistent with the terms of the Trust Agreement.

## 8.10    Tax Matters.

The Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder.  The Diocese is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Trust Documents, including the Trust Agreement, are incorporated herein by reference. The Trust shall not be deemed to be the same legal entity as the Diocese, but only the assignee of certain assets of the Diocese and a representative of the Estate for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code.  The Trust is expected to be tax exempt.  The Trustee shall File such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 *et seq.*, as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 *et seq.*, and New York law and the regulations promulgated thereunder, and shall pay from the Trust all taxes, assessments, and levies upon the Trust, if any.  The Trustee, may in its discretion, establish a disputed claims reserve for the Trust, which shall be administered in accordance with applicable law.

## 8.11    DOS Entities' Post-Effective Date Costs Procedures.

8.11.1    ***DOS Entities' Post-Effective Date Costs Reserve.***    The Trust shall establish the DOS Entities' Post-Effective Date Costs Reserve, which shall be funded in an initial amount of not less than $3,000,000 from the Diocese Cash Contribution.  The Trustee shall provide the Diocese and all Participating Parties with a written statement as to the balance of the DOS Entities' Post-Effective Date Costs Reserve (a) on a quarterly basis, and (b) upon the reasonable request of the Diocese or any Participating Party.

The Trustee may increase the amount of, or replenish, the DOS Entities' Post-Effective Date Costs Reserve, in his or her sole and exclusive discretion. If the Trustee does not replenish the DOS Entities' Post-Effective Date Costs Reserve such that that the DOS Entities' Post-Effective Date Costs Reserve falls below $750,000, the Trustee shall immediately report the same to the Diocese and all Participating Parties, and such parties shall meet and confer regarding (i) the Trustee's expectations with respect to the continued prosecution of Litigation Claims, (ii) the balance of any DOS Entities' Post-Effective Date Costs that are incurred but outstanding, and (iii) the parties' collective expectations as to any additional DOS Entities' Post-Effective Date Costs that are likely to be incurred in order to satisfy any remaining Post-Effective Date Preconditions to Coverage.

If at any time the Trustee determines, in his or her discretion, not to replenish the DOS Entities' Post-Effective Date Costs Reserve before the balance of the DOS Entities' Post-Effective Date Costs Reserve falls below $500,000 (a "Non-Replenishment Determination"), the Trustee shall immediately (a) report the same to the Diocese, and (b) file an application with the Bankruptcy Court on an expedited basis (i) setting forth the basis for the Non-Replenishment Determination and (ii) requesting authority to implement the Non-Replenishment Determination. If the Bankruptcy Court denies the Trustee's request to implement the Non-Replenishment Determination, the Trustee shall, subject to available funds, replenish the DOS Entities' Post-Effective Date Costs Reserve to at least $750,000. If the Court approves the Trustee's request to implement the Non-Replenishment Determination, or if the Trustee lacks sufficient funds to maintain the balance of the DOS Entities' Post-Effective Date Costs Reserve above $500,000, the Diocese and the Participating Parties shall be irrevocably released from any further obligations they would otherwise have under the Plan with respect to any Insurance Claims and/or Abuse Claims, including, without limitation, any requirement that they satisfy or attempt to satisfy any Post-Effective Date Preconditions to Coverage or to assist in the administration of the Allocation Protocol. For the avoidance of doubt, the Trust shall remain responsible for the payment of all DOS Entities' Post-Effective Date Costs incurred within one year following the date of such notice which are submitted in accordance with these procedures to the extent any funds remain in the DOS Entities' Post-Effective Date Costs Reserve. For further avoidance of doubt, all Non-Settling Insurers shall retain any defenses to coverage they may have as a result of any failure of the Diocese or any Participating Party to observe and perform any Post-Effective Date Preconditions to Coverage.

Nothing herein shall be construed to address the rights of any Non-Settling Insurer or the Trust, as assignee of Insurance Claims against Non-Settling Insurers, upon any withdrawal of cooperation in defense of Claims by the Diocese and/or any Participating Party.

8.11.2    *DOS Entities' Post-Effective Date Costs.* Professionals representing the Diocese or any Participating Party in connection with their efforts to satisfy their respective Post-Effective Date Preconditions to Coverage, including, without limitation, their participation in any post-Effective Date discovery or litigation regarding Insurance Claims against Non-Settling Insurers or Abuse Claims, shall charge rates and expenses that are no higher than their usual and customary rates for similar work performed by such Professionals for clients generally at the time such services are provided, and such rates may be adjusted from time to time in accordance with the general practices of such Professionals.

Except to the extent that the Diocese and the Participating Parties are reimbursed directly by any Non-Settling Insurer for any DOS Entities' Post-Effective Date Costs contemporaneously as such DOS Entities' Post-Effective Date Costs are incurred, such DOS Entities' Post-Effective Date Costs shall be paid by the Trust from the DOS Entities' Post-Effective Date Costs Reserve. The Trust's advancement or reimbursement of the Diocese or any Participating Party for such DOS Entities' Post-Effective Date Costs, and any distributions made by the Trust to Abuse Claimants, will not affect, diminish or impair the Trust's right to bring any claims against any Non-Settling Insurers for refusing to defend and/or indemnify the Diocese or any Participating Party, including but not limited to claims for payment of policy proceeds, bad faith, wrongful failure to settle, and extra-contractual damages authorized by law.

8.11.3 **_DOS Entities' Post-Effective Date Costs Payment and Dispute Resolution._** All invoices for DOS Entities' Post-Effective Date Costs shall be submitted to the Trustee via email within 60 days following the end of the month in which DOS Entities' Post-Effective Date Costs are incurred (such submission, a "Fee Notice"). All Fee Notices provided to the Trustee may be redacted to prevent the disclosure of privileged information or trial strategy. The Trustee shall keep all Fee Notices confidential and shall not share any information contained in them (other than the amount of the fees) with any Litigation Claimant, or their respective individual counsel, or any professional whose firm previously represented the Committee in the Chapter 11 Case or represents the Trust in connection with the litigation or assertion of any Insurance Claim.

The Trustee shall inform the Diocese, the Participating Party, and any professional submitting a Fee Notice of any disputes regarding the requested fees and expenses within thirty days of submission of a Fee Notice or shall pay the requested fees within such time. If any such dispute cannot be resolved within thirty days or such other amount of time agreed upon by the parties, either may submit such dispute to the Bankruptcy Court, or, if the Chapter 11 Case has been closed, to any other court of competent jurisdiction located in Onondaga County, New York for adjudication upon at least fifteen days' notice, unless the parties mutually otherwise agree to resolve such dispute through mediation, arbitration, or other alternative dispute resolution procedures.

**8.12    Participating Party Unknown Abuse Claim Costs.**

If the Unknown Claims Representative elects to treat Unknown Abuse Claims as Non-Participating Abuse Claims, the Trust shall establish the Participating Party Unknown Abuse Claims Reserve, which shall be funded in the total amount of $2,500,000 from the Diocese Cash Contribution. At the request of any Participating Party, and subject to the consent of the Diocese, the Trust shall pay or reimburse any Participating Party Unknown Abuse Claim Costs actually incurred or paid by the requesting Participating Party from the Participating Party Unknown Abuse Claims Reserve; _provided, however_, that the Trust shall have no obligation to pay or reimburse Participating Party Unknown Abuse Claim Costs from any source other than the Participating Party Unknown Abuse Claims Reserve.

**8.13    No Recourse Against Trustee.**

No recourse shall ever be had, directly or indirectly, against the Trustee personally, or against any Agent retained in accordance with the terms of the Trust Agreement or the Plan by the Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Trustee in implementation of the Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Trustee under the Plan for any purpose authorized by the Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and Trust Agreements of the Trust whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets or such part thereof as shall under the term of any such Trust Agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets.  Notwithstanding the foregoing, the Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, breach of the fiduciary duty of loyalty, or fraud, and if liability on such grounds is established, recourse may be had directly against the Trustee.  The Trust shall not be covered by a bond.

None of the Protected Parties shall be liable for any acts or omissions by the Trust, the Trustee, or their respective Agents or Related Persons.

**8.14    Indemnification by Trust.**

8.14.1    The Trust shall defend, indemnify, and hold harmless the Trustee and its Agents to the fullest extent permitted under the laws of New York in the performance of their duties hereunder.  For the avoidance of doubt, the Diocese, the Participating Parties, and their respective Agents shall not be deemed to be Agents of the Trust unless specifically authorized as such in writing by the Trustee.

8.14.2    The Trust shall defend, indemnify, and hold harmless each Settling Insurer, as set forth in such Settling Insurer's Insurance Settlement Agreement, from each and every one of the following "***Indemnified Claims***": any and all Channeled Claims, Barred Claims, and Claims otherwise enjoined by or subject to the Settling Insurer Injunction and/or such Settling Insurer's Insurance Settlement Agreement, including all such Claims made by (i) any Person claiming to be an insured (as a named insured, additional insured, or otherwise) under any of the Settling Insurer Policies; (ii) any Person who has made, will make, or can make (a) a Related Insurance Claim or (b) an Abuse Claim; and (iii) any Person who has actually or allegedly acquired or been assigned the right to make a Claim under any of the Settling Insurer Policies. For the avoidance of doubt, to the extent this Section 8.14.2 (including the subsections immediately below) conflicts or is inconsistent with the provisions of any Insurance Settlement Agreement that relate to Indemnified Claims, the provisions of the applicable Insurance Settlement Agreement(s) will control and govern.

a.    Each Settling Insurer shall have the right (but not the obligation) to defend any Indemnified Claims brought or made against such Settling Insurer and shall do so in good faith.  Each Settling Insurer (i) may, upon receipt of an Indemnified Claim brought or made against such Settling Insurer, undertake the

defense of the Indemnified Claim but is not required to do so and (ii) agrees to notify the Trust as soon as practicable of such Indemnified Claim(s) and of the Settling Insurer's choice of counsel.  If a Settling Insurer declines to defend an Indemnified Claim brought or made against it, the Trust shall undertake the defense thereof.

b.      The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by each Settling Insurer defending an Indemnified Claim.  Such Settling Insurer may settle or otherwise resolve the Indemnified Claim only with the prior consent of the Trust, which consent shall not be unreasonably withheld.  The Trust may settle or otherwise resolve an Indemnified Claim only with the prior consent of the applicable Settling Insurer, which consent shall not be unreasonably withheld.  A Settling Insurer's defense, settlement, or other resolution of any Indemnified Claim brought or made against such Settling Insurer shall not diminish the obligations of the Trust to indemnify the Settling Insurer for the Indemnified Claim, as set forth in this Section 8.14.2.

c.      The indemnification and hold harmless undertaking set forth in this Section 8.14.2 also extends to and for the benefit of the other Settling Insurer Releasees, all of which are third-party beneficiaries of the terms hereof.

**8.15    Trust Liability.**

Upon the occurrence of the Effective Date, the Trust shall automatically and without further act or deed assume all responsibility for preserving, managing, and distributing Trust Assets.

Subject to and upon the occurrence of each applicable Abuse Claim Discharge Date, the Trust shall automatically and without further act or deed assume all liability, if any, of the Participating Parties in respect of all Abuse Claims (other than Non-Participating PP Abuse Claims), which shall become Channeled Claims in accordance with the terms of the Plan.  On the Effective Date, the Trust shall automatically and without further act or deed assume all liability, if any, of the Settling Insurers in respect of all Barred Claims and Channeled Claims.

**8.16    Termination.**

The Trust shall terminate after its liquidation, administration, and Distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth in the Trust Agreement.

**SECTION 9.    GENERAL CLAIMS ADMINISTRATION**

**9.1    Objections to Non-Abuse Claims.**

Prior to the Effective Date, the Diocese shall have the authority to pursue any objection to the allowance of any Non-Abuse Claim.  From and after the Effective Date, the Diocese will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making any Distributions with respect to Non-Abuse Claims (including those Non-

Abuse Claims that are subject to objection by the Diocese as of the Effective Date; *provided*, *however*, that nothing in this Section shall affect the right of any party in interest (including the Diocese and the Trustee) to object to any Non-Abuse Claim to the extent such objection is otherwise permitted by the Bankruptcy Code, the Bankruptcy Rules, and this Plan.  Unless otherwise provided in this Plan or by order of the Bankruptcy Court, objections to Non-Abuse Claims will be Filed and served not later than the Claims Objection Deadline.  The Claims Objection Deadline or any Bankruptcy Court-approved extension thereof, may be extended upon request by the Diocese by filing a motion without any requirement to provide notice to any Person, based upon a reasonable exercise of the Diocese's business judgment.  A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to this Plan.

### 9.2    Determination of Claims.

From and after the Effective Date, any Non-Abuse Claim as to which a proof of claim or motion or request for payment was timely Filed in this Chapter 11 Case, or deemed timely Filed by order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed, or amended, as to which determination (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired, (and as to which no appeal or petition for review or rehearing was Filed or, if Filed, remains pending)), liquidated pursuant to:  (i) an order of the Bankruptcy Court; (ii) applicable bankruptcy law; (iii) agreement of the parties without the need for Bankruptcy Court approval; (iv) applicable non-bankruptcy law; or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim Filed by the Diocese or any other party in interest on or prior to any applicable deadline for filing such objection or application with respect to such Claim.  Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with this Plan. Nothing contained in this Section shall constitute or be deemed a waiver of any Claims, rights, or causes of action that the Diocese may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157; *provided, however*, that any Claims against the Settling Insurers that the Diocese had, has, may have had, or may in the future have shall be waived and released in accordance with the terms of, and to the extent set forth in, the Settling Insurers' respective Insurance Settlement Agreements.

### 9.3    No Distributions Pending Allowance.

Except in the case of Abuse Claims paid pursuant to the Allocation Protocol, no Distribution will be made with respect to a Disputed Claim, or any portion thereof, unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

### 9.4    Claim Estimation.

To effectuate Distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 Case, with respect to Disputed Claims (except Abuse Claims), the Diocese, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an order of the Bankruptcy Court or the District

Court, pursuant to section 502(c) of the Bankruptcy Code, estimating or limiting the amount of: (i) property that must be withheld from or reserved for Distribution purposes on account of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; *provided*, *however*, that the Bankruptcy Court or the District Court, as applicable, shall determine: (y) whether such Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code, and (z) the timing and procedures for such estimation proceedings.

### 9.5    Treatment of Contingent Claims.

Except with respect to Abuse Claims, until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan.

### 9.6    Controversy Concerning Impairment.

If a controversy arises as to whether any Claim or any Class of Claims is Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before confirming the Plan.

### 9.7    Treatment of Executory Contracts and Unexpired Leases.

Subject to the requirements of section 365 of the Bankruptcy Code, all executory contracts and unexpired leases of the Diocese except (i) Insurance Policies that have not been assumed and retained by the Diocese pursuant to Section 7.5, or (ii) executory contracts and unexpired leases that have been rejected by order of the Bankruptcy Court or are the subject of a motion to reject pending on the Confirmation Date, will be deemed to be assumed by the Diocese on the Effective Date.  If any party to an executory contract or unexpired lease that is being assumed objects to such assumption and assignment, the Bankruptcy Court may conduct a hearing on such objection on any date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court.   All payments to cure defaults that may be required under section 365(b)(1) of the Bankruptcy Code will be made by the Diocese, except that the Trust shall pay any cure costs under any Insurance Policy assumed and retained by the Diocese pursuant to Section 7.5.  In the event of a dispute regarding the amount of any cure payments, or the ability of the Diocese to provide adequate assurance of future performance with respect to any executory contracts to be assumed by the Diocese, the Trust or the Diocese (as applicable) will make any payments required by section 365(b)(1) of the Bankruptcy Code after the entry of a Final Order resolving such dispute. The contracts and leases which will be assumed by the Diocese, and their respective cure costs, are identified in **Exhibit 7** attached to the Plan Supplement.  For the avoidance of doubt, except for the Preserved Coverage with respect to Insurance Policies issued by Catholic Mutual and National Catholic, none of the Settling Insurer Policies will be assumed or assigned to the Diocese.

# SECTION 10.   PROVISIONS GOVERNING DISTRIBUTIONS

### 10.1    Disbursing Agents.

The Diocese shall be the disbursing agent for all aspects of the Plan except for Distributions made from the Trust.  With respect to the Trust, the Trustee shall be the disbursing agent and be responsible for all Distributions made under the Trust.

### 10.2    Manner of Payment.

Unless otherwise agreed by the Diocese or the Trustee, as applicable, and the recipient of a Distribution under the Plan or the Plan Documents, all Distributions of Cash under the Plan may be made either by check via first class mail, postage prepaid, or by wire transfer from a domestic bank, at the option of the respective disbursing agent.

### 10.3    Distribution Only to Holders of Allowed Claims.

Except as otherwise provided in the Plan for Abuse Claims, Distributions under the Plan and the Plan Documents will be made only to the holders of Allowed Claims.  Until a Disputed Non-Abuse Claim becomes an Allowed Claim, the holder of that Disputed Non-Abuse Claim will not receive any Distribution otherwise provided to Non-Abuse Claimants under the Plan or the Plan Documents.  If necessary in determining the amount of a *pro rata* Distribution due to the holders of Allowed Claims in any Class, the Diocese will make the *pro rata* calculation as if all Disputed Non-Abuse Claims were Allowed Claims in the full amount claimed or in the estimated amount.  When a Disputed Non-Abuse Claim in any Class becomes an Allowed Claim, the Diocese will make a full or partial Distribution, as applicable, with respect to such Allowed Claim, net of any setoff contemplated by the order, if any, allowing such Claim and any required withholding of applicable federal and state taxes.

### 10.4    Disputed Claim Reserve.

Except with respect to Trust Distributions made to Abuse Claimants pursuant to the Allocation Protocol, to the extent that a disbursing agent makes a Distribution hereunder to a Class prior to the resolution of all Disputed Claims of such Class, the respective disbursing agent shall reserve an amount for any Disputed Claims in such Class equal to the amount that such holders of Disputed Claims in such Class would be entitled to receive under the Plan if such Disputed Claims were Allowed in the asserted amount of the Claim.

### 10.5    Transmittal of Distributions.

Except as otherwise provided in the Plan, in the Plan Documents, or in an order of the Bankruptcy Court, Distributions to be made under the Plan, Confirmation Order, or Trust Documents to Class 5 Claimants will be made by the Trust, and Distributions to all other Claimants will be made by the Diocese.  Distributions to Class 5 Claimants will be made:  (i) to the client trust account for the Claimant's attorney of record; or (ii) if the Class 5 Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of claim Filed with Stretto or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Trustee, as applicable, by such Claimant in writing; or (iii) if no such

proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Diocese or Trustee, as applicable, to the mailing address set forth in the Schedules Filed by the Diocese in this Chapter 11 Case. Distributions to Claimants holding Non-Abuse Claims will be made by wire transfer or by check via first class United States mail, postage prepaid, (i) to the latest mailing address set forth in a proof of claim Filed with Stretto or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Diocese, as applicable, by such Claimant in writing, or (ii) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Diocese, to the mailing address set forth in the Schedules Filed by the Diocese in the Chapter 11 Case. If a Claimant's Distribution is not mailed or is returned to the Diocese or to the Trustee because of the absence of a proper mailing address, the Diocese or the Trustee, as the case may be, shall make a reasonable effort to locate or ascertain the correct mailing address for such Claimant from information generally available to the public and from such party's own records, but shall not be liable to such Claimant for having failed to find a correct mailing address. The Trustee shall have no liability to a Class 5 Claimant on account of Distributions made to the client trust account of a Class 5 Claimant's attorney.

**10.6    Timing of Distributions.**

Unless otherwise agreed by the Diocese or the Trustee, as applicable, and the recipient of a Distribution under the Plan or the Plan Documents, whenever any payment to be made is due on a day other than a Business Day, such payment will instead be made on the next Business Day. Any Claimant that is otherwise entitled to an undeliverable Distribution and that does not, within thirty days after a Distribution is returned to the Diocese or to the Trustee, as applicable, as undeliverable or is deemed to be an undeliverable Distribution, provide the Diocese or the Trustee, as applicable, with a written notice asserting its Claim to that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any Claim to such undeliverable Distribution and will be forever barred from receiving such undeliverable Distribution or asserting any Claim against the Diocese, the Trust, the Trustee, or its property. Any undeliverable Distributions to be made by the Trust that are not claimed under this Section will become available for the Trust to distribute to other Abuse Claimants. Any other undeliverable Distributions shall be retained by the Diocese in accordance with the Plan. Nothing in the Plan requires the Diocese, the Trust, or the Trustee to attempt to locate any Claimant whose Distribution is undeliverable.

**10.7    Time Bar to Check Payments.**

If an instrument delivered as a Distribution to a Claimant by the Diocese or the Trust is not negotiated within 90 days after such instrument is sent to the Claimant, then the instrument shall be null and void, the Claimant shall be deemed to have waived such Distribution, and all Claims in respect of such voided check shall be discharged and forever barred. Any request for re-issuance of a check must be made on or before 90 days after issuance of a non-negotiated check. Except as otherwise provided herein, any Distribution under the Plan which is not negotiated after 90 days following issuance shall be forfeited, and such Distribution, together with any interest earned thereon, and shall return to and revest in the Diocese or to the Trust, as applicable.

**10.8    No Professional Fees or Expenses.**

No professional fees or expenses incurred by a Claimant will be paid by the Diocese or the Trust with respect to any Claim except as specified in the Plan or the Trust Documents.

**10.9    No Interest on Claims.**

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a post-petition agreement in writing between the Diocese and the holder of a Claim approved by an order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  In addition, and without limiting the foregoing or any other provision of the Plan, the Confirmation Order, or the Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

**10.10    Saturday, Sunday or Holiday.**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the following Business Day, but shall be deemed to have been completed as of the required date.

**10.11    Withholding Taxes.**

The Diocese shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  As a condition to making any Distribution under the Plan, the Diocese may require that the holder of an Allowed Claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

**10.12    Setoffs and Recoupment.**

Subject to the terms of this Plan and pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Diocese may, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Claims of any nature whatsoever the Diocese may have against the holder of such Claim.

**10.13    No *De Minimis* Distributions.**

Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan.  Cash (rounded to the nearest whole cent when and as necessary) will be issued to Claimants entitled to receive Distributions of Cash.  Any Distribution of less than $25.00 will be considered *de minimis*, and holders of Allowed Claims that are entitled to Distributions of less than $25.00 will not receive any Distribution.  Such funds will remain with, and revest in, the Diocese.  For avoidance of doubt, this Section 10.13 shall not

apply to any Distributions to be made by the Trust, which shall be governed solely by the Trust Documents.

**10.14    Prepayment.**

Except as otherwise provided in the Plan or the Confirmation Order, the Diocese shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

## SECTION 11.    EFFECTIVE DATE

**11.1    Conditions Precedent to Effective Date.**

The Effective Date shall not occur, and the Plan shall not be consummated, unless each of the following conditions are satisfied or waived as set forth in Section 11.2 below:

11.1.1    ***Confirmation Order.***    The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponents and the Settling Insurers, provided, however, that the findings and determinations set forth in the following clauses a. and b. of this Section 11.1.1. (or in any corresponding provision of the Confirmation Order) shall not be binding on the Settling Insurers.  Neither the Insurance Settlement Agreements nor any of the Settling Insurers' actions or inactions in this Chapter 11 Case shall be deemed as support for such findings and determinations, the Insurance Claims Assignment, and/or the Allocation Protocol, and no party shall argue that the Settling Insurers agreed to or acquiesced in such findings and determinations, the Insurance Claims Assignment, and/or Allocation Protocol in any proceeding; the Settling Insurers take no position on such findings and determinations, the Insurance Claims Assignment, or the Allocation Protocol.  Without limiting the generality of the foregoing, the Confirmation Order shall, at a minimum, contain findings by the Bankruptcy Court that:

a.    the assignment of Insurance Claims against the Non-Settling Insurers, or alternatively, the retention and prosecution of such Claims following confirmation by the Diocese and other Participating Parties as contemplated in the Plan is authorized by, and does not conflict with, any provision of the Bankruptcy Code, and is therefore approved;

b.    all of the requirements for confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code have been met and that the Plan should be confirmed; and

c.    the Confirmation Order contains appropriate provisions for the examination fees to be paid by Abuse Claimants to their legal counsel under New York law.

11.1.2    ***Channeling and Insurer Injunctions.***    The Confirmation Order shall approve and implement the Channeling Injunction set forth in Section 12 of the Plan and shall ratify the Settling Insurer Injunction set forth in the Sale Order(s) approving the respective Insurance Settlement Agreements.

11.1.3    **Plan Documents.**    Except for the Allocation Protocol, the Plan Documents shall be in form and substance acceptable to the Plan Proponents and the Settling Insurers.    The Allocation Protocol shall be in form and substance acceptable to the Plan Proponents only.

11.1.4    **Trust Formation.**    The Trust shall have been formed, the Bankruptcy Court shall have entered an order appointing the Trustee, and the Trustee and the Diocese shall have executed the Trust Agreement.

11.1.5    **The DOS Entities' Cash Contribution.**    The DOS Entities' Cash Contribution shall have been made to the Trust.

11.1.6    **Participating Parties Assignment.**    Each Participating Party shall assign its respective Insurance Claims against the Non-Settling Insurers, to the extent such Claims exist, by executing and delivering such agreements and instruments of assignment as the Trustee may reasonably request.

11.1.7    **Reserved.**

11.1.8    **Exit Financing.**    Each Exit Financing Lender shall have received their respective Exit Financing Documents, duly executed by the Diocese, and shall have fully funded, or irrevocably committed to fully funding, the Exit Financing contemplated therein.

11.1.9    **Insurance Settlement Agreements.**    Each Insurance Settlement Agreement agreed to prior to the Confirmation Date shall have been duly executed by all parties thereto and approved by the Bankruptcy Court, in each case in form and substance satisfactory to the Plan Proponents and applicable Settling Insurers.

11.1.10    **The Settling Insurers' Contribution.**    Each Settling Insurer shall have paid to the Trust the Insurance Settlement Amount due under such Settling Insurer's Insurance Settlement Agreement, except to the extent the terms of such Insurance Settlement Agreement expressly provide that the applicable Insurance Settlement Amount will be made at a later date.

11.1.11    **Consent of all Abuse Claimants.**    All holders of Abuse Claims including, for the avoidance of doubt, Unknown Abuse Claims, shall be Consenting Abuse Claimants.

11.1.12    **Final Orders.**    The Confirmation Order, the order appointing the Trustee, and the Sale Order(s) shall be Final Orders and no stay of any such orders shall then be in effect.

11.1.13    **No Material Amendments.**    The Plan shall not have been materially amended, altered, or modified as confirmed by the Confirmation Order, unless such material amendment, alternation, or modification has been made with consent of the Plan Proponents, each affected Settling Insurer, and any affected Participating Parties and Abuse Claimants; *provided, however*, that the Committee shall have authority to negotiate and agree to modifications to the treatment accorded to Class 5 Claims on behalf of all Consenting Abuse Claimants in accordance with Section 2.3.5.h of the Plan.

**11.2**     **Waiver of Conditions.**

Any condition to the occurrence of the Effective Date set forth in Section 11.1 of this Plan may be waived only by the mutual written consent of the Diocese and the Committee; *provided, however*, that each Settling Insurer must consent to a waiver of any condition affecting such Settling Insurer's rights or obligations, and each of the Participating Parties must consent to a waiver of any condition affecting such Participating Party's obligations, except that the Diocese may waive the condition set forth in Section 11.1.11 on behalf of the Participating Parties. For avoidance of doubt, none of the Diocese, the Committee, the Settling Insurers, or the Participating Parties shall have any obligation to waive any of the conditions set forth in Section 11.1, and each may withhold such consent in their sole and absolute discretion.

**11.3**     **Occurrence of Effective Date.**

11.3.1     Subject to the negotiation of definitive provisions in the Confirmation Order, after the entry of the Confirmation Order, but prior to the occurrence of the Effective Date, those terms of the Plan that are necessary to allow Litigation Claims to proceed regardless of whether the Confirmation Order is a Final Order shall be implemented. Such terms include (a) the establishment of the Trust, (b) approval of the Trust Agreement, (c) the appointment of the Trustee, (d) at the request of the Committee, waiver of the automatic stay with respect to any Litigation Claims the Trustee may authorize to proceed pursuant to Section 4.3.1 of the Plan; *provided*, *however*, that any expenses incurred by the Diocese, the Estate or the Participating Parties in connection with the foregoing will act as a credit against the DOS Entities' Cash Contribution.

11.3.2     If the Effective Date has not occurred within 90 days of the date on which the Confirmation Order becomes a Final Order, the Diocese or Committee may elect to withdraw the Plan in their respective sole and absolute discretion.

**11.4**     **Notice of Effective Date.**

The Diocese shall File a notice of Effective Date with the Bankruptcy Court and serve it on all Creditors and parties in interest, within five Business Days after the occurrence of the Effective Date. Such notice shall include all relevant deadlines put into effect by the occurrence of the Effective Date.

**11.5**     **Effect of Non-Occurrence of Condition.**

If substantial consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will: (i) constitute a waiver or release of any Claims by or against the Protected Parties; (ii) prejudice in any manner the rights of the Protected Parties or the Trust; (iii) constitute an admission, acknowledgment, offer, or undertaking by the Protected Parties in any respect, including but not limited to, in any proceeding or case against the Diocese or any Participating Party; or (iv) be admissible in any action, proceeding or case against the Protected Parties in any court or other forum. Notwithstanding the foregoing, each Insurance Settlement Agreement (including any release or waiver of Claims in accordance with the terms thereof) shall continue and survive, in accordance with its terms and to the extent set forth therein.

## SECTION 12.   EFFECTS OF PLAN CONFIRMATION AND EFFECTIVE DATE

### 12.1    General Injunction and Discharge.

12.1.1    *General Injunction*.   **EXCEPT WITH RESPECT TO ABUSE CLAIMS AND INBOUND CONTRIBUTION CLAIMS ADDRESSED IN SECTION 12.2 BELOW, AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, OR AS OTHERWISE PROVIDED IN ANY INSURANCE SETTLEMENT AGREEMENT OR SALE ORDER, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OF ANY KIND OR NATURE AGAINST THE DIOCESE, WHETHER KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE DIOCESE OR THE DIOCESE'S AGENTS, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASE, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF NON-ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(g), 502(h), AND 502(i) OF THE BANKRUPTCY CODE, WHETHER OR NOT (I) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE, (II) SUCH CLAIM IS ALLOWED UNDER THE PLAN; OR (III) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN, ARE PERMANENTLY ENJOINED, ON AND AFTER THE CONFIRMATION DATE, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM OR TAKING ANY ACT TO RECOVER SUCH CLAIM OUTSIDE OF THE CLAIMS ALLOWANCE PROCEDURE PROVIDED FOR IN THE PLAN AND THE BANKRUPTCY CODE AND BANKRUPTCY RULES, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM, (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DIOCESE OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE ON ACCOUNT OF ANY SUCH CLAIM.**

12.1.2    *General Discharge*.   Except as otherwise expressly provided in (a) the Plan, (b) the Confirmation Order, or (c) any Insurance Settlement Agreement or Sale Order, on the Effective Date, pursuant to section 1141(d) of the Bankruptcy Code, the Diocese and the Estate will be discharged from all liability for any and all Non-Abuse Claims.  For the avoidance of doubt and notwithstanding anything to the contrary herein, none of the Diocese and the Estate will be discharged from its or their respective responsibilities (and corresponding liabilities) under or with respect to any Insurance Settlement Agreement.

78

**12.2**    **Injunction and Discharge of Abuse Claims and Inbound Contribution Claims.**

12.2.1    *Injunction of Abuse Claims and Inbound Contribution Claims*. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN SECTION 12.2.2 BELOW OR IN THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE ALL PERSONS SHALL BE PERMANENTLY STAYED, ENJOINED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING, OR ATTEMPTING TO ASSERT OR ENFORCE AGAINST THE DIOCESE OR ANY PARTICIPATING PARTY, ANY ABUSE CLAIMS OR INBOUND CONTRIBUTION CLAIMS, KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE DIOCESE, ANY PARTICIPATING PARTY, OR THE DIOCESE'S OR ANY PARTICIPATING PARTY'S AGENTS, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASE, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(g), 502(h), AND 502(i) OF THE BANKRUPTCY CODE, WHETHER OR NOT: (I) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE; (II) SUCH CLAIM IS ALLOWED UNDER THE PLAN; OR (III) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN.

IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.

THE DISCHARGE AND INJUNCTIONS CONTAINED IN THE PLAN AND THE RELEASES PROVIDED UNDER THE PLAN DO NOT RELEASE OR IMPAIR AN ABUSE CLAIMANT'S RIGHT TO RECOVER ON ANY ABUSE CLAIM AGAINST ANY PERPETRATOR OF ABUSE FOR ACTS OF ABUSE THAT ARE INDEPENDENT OF THE LIABILITY OF THE DIOCESE OR ANY PARTICIPATING PARTY.

12.2.2    *Limited Exceptions to Injunctions*.

a.    Non-Participating PP Abuse Claims Excepted.  The injunctions set forth in Section 12.2.1 above, and Section 12.3 below, shall not apply to prevent a Non-Participating Abuse Claimant from pursuing or enforcing his or her Non-Participating PP Abuse Claim (if any) against a Participating Party.

b.    Certain Inbound Contribution Claims Excepted.  The injunctions set forth in Section 12.2.1 above, and Section 12.3 below, shall not apply to prohibit the pursuit or enforcement of an Inbound Contribution Claim against a Participating Party by any Person who affirmatively indicates, by Filing a timely written objection to confirmation of the Plan, that they will not consent to having such Inbound Contribution Claim (if any) enjoined as contemplated in the Plan. Any Person who holds an Inbound Contribution Claim against a Participating Party, whether or not Filed with the Bankruptcy Court or in any Abuse Action, and who fails to File a timely written objection to confirmation of the Plan shall be conclusively deemed to consent to the injunction set forth in Sections 12.2.1 and 12.3 and shall be bound thereby.

c.    Preservation of Insurance Claims.

(i)    To facilitate the pursuit of Insurance Claims against Non-Settling Insurers, the injunctions set forth in Section 12.2.1 above and 12.3 below shall not prevent the prosecution of Abuse Actions against the Diocese or any Participating Party (i) by one or more Litigation Claimants authorized by the Trustee to pursue their Litigation Claims, at such Litigation Claimants' expense, in any court of competent jurisdiction solely for the purpose of determining any liability that the Diocese and/or any Participating Party may have with respect to such Litigation Claimant's Litigation Claim, and the amount of that liability; (ii) as the Trustee may deem necessary in order to prosecute the Insurance Claims against Non-Settling Insurers; or (iii) as the Trustee may deem necessary in order to effectuate settlement of any Abuse Claims; *provided*, *however*, that all collection efforts against the Diocese and/or any Protected Party shall be enjoined and any Litigation Award obtained as a result of litigating such Abuse Actions shall be enforceable solely against Non-Settling Insurers and not against any Protected Party.  For avoidance of doubt, the limited exception set forth in this Section 12.2.2.c permits (subject to the terms hereof) only the prosecution of Abuse Actions against the Diocese and/or a Participating Party; all collection efforts against any Protected Party, Settling Insurer Releasee, or any Settling Insurer's Related Persons are permanently barred and enjoined, and any Litigation Award obtained as a result of litigating such Abuse Actions shall be enforceable solely against Non-Settling Insurers and not against any Protected Party, Settling Insurer Releasee, or any Settling Insurer's Related Persons (or any of their respective property or assets except for any Non-Settling Insurer Policy).

(ii)    To preserve coverage under any Non-Settling Insurer Policy, Abuse Claims will not be released or discharged as against the Diocese or any other Participating Party until the occurrence of the applicable Abuse Claim Discharge Date.  For the avoidance of doubt, prior to the occurrence of the applicable Abuse Claim Discharge Date and subject to the limitations set forth in the Plan, a duly authorized Litigation

Claimant or the Trust may name the Diocese or any Participating Party in a proceeding to adjudicate whether the Diocese or any Participating Party has liability for a Litigation Claim and the amount of any such liability, but recourse shall be limited to the proceeds of any Non-Settling Insurer Policies and all other damages that may be recoverable against any Non-Settling Insurers.

d.      Notwithstanding anything to the contrary herein:  (i) the Diocese shall have no liability whatsoever for any Abuse Claims or Inbound Contribution Claims and any act by any Person to collect or enforce any Abuse Claim or Inbound Contribution Claim against the Diocese shall be permanently enjoined; and (ii) subject to and upon payment of a Settling Insurer's Insurance Settlement Amount, such Settling Insurer shall have no liability whatsoever for any Channeled Claim or Barred Claim, and the Channeling Injunction and Settling Insurer Injunction prohibit any Person (including all Litigation Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim or Barred Claim against any such Settling Insurer, its corresponding Settling Insurer Releasees, its Related Persons, or the assets or property of any of the foregoing (including the Purchased Property of such Settling Insurer).

12.2.3      ***Discharge of Abuse Claims and Inbound Contribution Claims.***  Except as otherwise expressly provided in the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, the Diocese and its Estate will be discharged from:  (i) all liability for any and all Inbound Contribution Claims on the Confirmation Date; and (ii) all liability for any and all Abuse Claims upon the occurrence of the applicable Abuse Claim Discharge Date.

The Abuse Claim Discharge Date with respect to each Abuse Claim shall be determined as follows:

a.      With respect to any Filed Abuse Claim held by a Non-Participating Abuse Claimant, the Abuse Claim Discharge Date shall be the Effective Date.

b.      With respect to any Unknown Abuse Claim held by a Non-Participating Abuse Claimant (to the extent the Unknown Claim Representative elects to have Unknown Abuse Claims treated as Non-Participating Abuse Claims), the Abuse Claim Discharge Date shall be the date that such Non-Participating Abuse Claimant executes and delivers to the Diocese and Trustee a Non-Participating Abuse Claim Release Agreement or a Non-Participating Litigation Claimant Agreement.

c.      With respect to any Filed Abuse Claim held by a Consenting Abuse Claimant that elects treatment as a Distribution Claimant, the Abuse Claim Discharge Date shall be the date following the last date on which such Abuse Claimant could modify his or her election to become a Litigation Claimant pursuant to Section 4.3.2.b of the Plan.

d.      With respect to any Filed Abuse Claim held by a Consenting Abuse Claimant who elects treatment as a Litigation Claimant and who is authorized by the Trustee to liquidate his or her Litigation Claim on or before the first anniversary of the Effective Date, the Abuse Claim Discharge Date shall be the earlier of the date on which (a) all Litigation Claims asserted by such Litigation Claimant against the Diocese and/or any Participating Party have been fully adjudicated, settled or dismissed on a final and non-appealable basis and any Non-Settling Insurers' resulting liability with respect to such Litigation Claim, as determined by settlement or Final Order, has been fully satisfied by payment in accordance with the terms of such settlement or Final Order; (b) the Abuse Claimant withdraws his or her election to be a Litigation Claimant in accordance with Section 4.3.2.a of the Plan; or (c) the Trust enters into a settlement with respect to all Non-Settling Insurer Policies that are Target Policies of such Litigation Claim.

e.      With respect to any Filed Abuse Claim held by a Consenting Abuse Claimant who elects treatment as a Litigation Claimant but who is not authorized by the Trustee to liquidate his or her Litigation Claim on or before the first anniversary of the Effective Date, the Abuse Claim Discharge Date shall be the earlier of the date on which the Abuse Claimant withdraws his or her election to be a Litigation Claimant in accordance with Section 4.3.2.a of the Plan and the first anniversary of the Effective Date.

f.      With respect to any Unknown Abuse Claim held by a Consenting Abuse Claimant who elects treatment as a Distribution Claimant, the Abuse Claim Discharge Date shall be the date following the last date on which such Consenting Abuse Claimant could modify his or her election to become a Litigation Claimant pursuant to Section 4.3.2.b.

g.      With respect to any Unknown Abuse Claim held by a Consenting Abuse Claimant who elects treatment as a Litigation Claimant and is authorized by the Trustee to liquidate his or her Litigation Claim within 90 days after such Abuse Claimant is notified of the amount of their award under the Allocation Protocol, the Abuse Claim Discharge Date shall be the earlier of the date on which (a) all Litigation Claims asserted by such Litigation Claimant against the Diocese and/or any Participating Party have been fully adjudicated, settled or dismissed on a final and non-appealable basis and any Non-Settling Insurers' resulting liability with respect to such Litigation Claim has been fully satisfied by payment to the Trustee by all Non-Settling Insurers implicated by such Litigation Claimant's Litigation Claim; (b) the Abuse Claimant withdraws his or her election to be a Litigation Claimant in accordance with Section 4.3.2.a of the Plan; or (c) the Trust enters into a settlement with respect to all Non-Settling Insurer Policies that are Target Policies of such Litigation Claim.

h.      With respect to any Unknown Abuse Claim held by a Consenting Abuse Claimant who elects treatment as a Litigation Claimant but who is not authorized by the Trustee to liquidate his or her Litigation Claim within 90 days

after such Abuse Claimant is notified of the amount of their award under the Allocation Protocol, the Abuse Claim Discharge Date shall be the date which is 90 days after such Abuse Claimant is notified of the amount of their award under the Allocation Protocol.

   i.    For the avoidance of doubt, notwithstanding anything to the contrary in sub-sections 12.2.3.a through 12.2.3.h above:  (i) the Abuse Claim Discharge Date for any Abuse Claim shall be deemed to occur no later than the first day following the date on which the Trust has fully adjudicated, settled or dismissed on a final and non-appealable basis all Insurance Claims against any Non-Settling Insurers who issued Non-Settling Insurer Policies that are Target Policies of any Litigation Claimants' potential Litigation Claims, and (ii) the Abuse Claim Discharge Date for all Abuse Claims shall be deemed to occur no later than the first day following the earlier of (a) the date on which the Trust has fully adjudicated, settled or dismissed on a final and non-appealable basis all Insurance Claims against all Non-Settling Insurers and (b) the date on which the Trust is terminated.

   12.2.4    ***Preservation of Insurance Claims***.  The Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the fact that the Diocese is in bankruptcy or by the amount of any Distributions Abuse Claimants receive, or may be entitled to receive, based on the Allocation Protocol.  The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Abuse Claims as set forth in the Plan.  Any such recoveries by the Trust from Non-Settling Insurers will be added to the Abuse Claims Settlement Fund to be distributed pursuant to the terms of the Plan, the Allocation Protocol and the Trust Documents.  Nothing in this Plan shall be deemed to modify or abridge any rights of the Non-Settling Insurers under their respective Non-Settling Insurer Policies.

**12.3    <u>Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties.</u>**

**IN CONSIDERATION OF THE UNDERTAKINGS OF THE PROTECTED PARTIES HEREIN, THEIR CONTRIBUTIONS TO THE TRUST, AND OTHER CONSIDERATION GIVEN, AND, WHERE APPLICABLE, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE DIOCESE AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE PROTECTED PARTIES, AND TO SUPPLEMENT WHERE NECESSARY THE INJUNCTIVE EFFECT OF THE DISCHARGE AS PROVIDED IN SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE:**

   **1.    ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST AND SHALL BE TREATED, ADMINISTERED, DETERMINED, AND RESOLVED UNDER THE PROCEDURES AND PROTOCOLS AND IN THE AMOUNTS ESTABLISHED UNDER THIS PLAN, THE ALLOCATION PROTOCOL, AND THE TRUST**

**AGREEMENT AS THE SOLE AND EXCLUSIVE REMEDY FOR ALL HOLDERS OF CHANNELED CLAIMS.**

2.  **ALL PERSONS WHO HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIMS AGAINST THE PROTECTED PARTIES, INCLUDING:**

(I)      **COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR AGAINST THE PROPERTY OF ANY OF THE PROTECTED PARTIES;**

(II)      **ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES;**

(III)      **CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, ANY LIEN OF ANY KIND RELATING TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF THE PROTECTED PARTIES;**

(IV)      **ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST:**

(A)      **ANY OBLIGATION DUE ANY OF THE PROTECTED PARTIES;**

(B)      **ANY OF THE PROTECTED PARTIES; OR**

(C)      **THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

(V)      **TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THIS PLAN; AND**

(VI)      **ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST AN OBLIGATION DUE TO ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 12 OR OTHERWISE IN THE PLAN, LITIGATION CLAIMANTS AND THE TRUST SHALL BE PERMITTED TO NAME THE DIOCESE AND ANY PARTICIPATING PARTY IN ANY PROCEEDING TO RESOLVE WHETHER THE DIOCESE OR SUCH PARTICIPATING PARTY HAS LIABILITY FOR A LITIGATION CLAIM, AND THE AMOUNT OF ANY SUCH LIABILITY, FOR THE PURPOSE OF OBTAINING INSURANCE COVERAGE FROM NON-SETTLING INSURERS UNDER THE NON-SETTLING INSURER POLICIES, AND FOR THE PURPOSE OF PURSUING ANY AND ALL INSURANCE CLAIMS AGAINST THE NON-SETTLING INSURERS. ANY SUCH JUDGMENTS OR AWARDS WILL BE TURNED OVER TO THE TRUST FOR DISTRIBUTION IN ACCORDANCE WITH SECTION 4.6 OF THIS PLAN. FOR THE AVOIDANCE OF DOUBT, RECOURSE WITH RESPECT TO ANY AND ALL LITIGATION CLAIMS IS EXPRESSLY LIMITED TO THE PROCEEDS OF NON-SETTLING INSURER POLICIES AND ALL OTHER COSTS AND/OR DAMAGES THAT MAY BE RECOVERABLE AGAINST ANY NON-SETTLING INSURERS, AS AND TO THE EXTENT PERMITTED BY THIS PLAN.

THE CHANNELING INJUNCTION IS AN INTEGRAL PART OF THIS PLAN AND IS ESSENTIAL TO THE PLAN'S CONSUMMATION AND IMPLEMENTATION. IT IS INTENDED THAT THE CHANNELING OF THE CHANNELED CLAIMS AS PROVIDED IN THIS SECTION 12.3 OF THE PLAN SHALL INURE TO THE BENEFIT OF THE PROTECTED PARTIES.  IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.

### 12.4    Settling Insurer Injunction.

PURSUANT TO SECTIONS 105(a), 363, AND 1123 OF THE BANKRUPTCY CODE, AND IN CONSIDERATION OF THE UNDERTAKINGS OF THE SETTLING INSURERS PURSUANT TO THE INSURANCE SETTLEMENT AGREEMENTS, INCLUDING THE PAYMENT OF EACH SETTLING INSURER'S INSURANCE SETTLEMENT AMOUNT, AND THE SETTLING INSURERS' PURCHASE OF THE PURCHASED PROPERTY FREE AND CLEAR OF ALL CLAIMS AND INTERESTS PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE, THIS PLAN HEREBY INCORPORATES BY REFERENCE, ADOPTS, AND RATIFIES (AND THE CONFIRMATION ORDER SHALL ADOPT AND RATIFY) THE SETTLING INSURER INJUNCTION SET FORTH IN THE SALE ORDER(S) IN ALL RESPECTS.

### 12.5    Litigation/Settlement of Certain Claims.

12.5.1    Except as expressly set forth in Section 12.2.2 of the Plan, the Channeling Injunction shall channel all Inbound Contribution Claims and all Insurer Contribution Claims to the Trust; *provided, however,* that the channeling of Insurer Contribution Claims to the Trust shall not extinguish or reduce Insurer Contribution Claims held by Non-Settling Insurers.

85

For the avoidance of doubt, unless otherwise provided in the Plan, the Allocation Protocol, or Trust Documents, the channeling of an Inbound Contribution Claim or Insurance Contribution Claim does not entitle the holder of such Channeled Claim to a Trust Distribution.

   12.5.2  If, for any reason any court does not recognize the channeling of the Insurer Contribution Claims of any Non-Settling Insurers to the Trust, or such Insurer Contribution Claims are not channeled for any reason, then the following shall apply:

     a.  Settling Insurers shall retain their Insurer Contribution Claims; *provided*, *however*, that:

       (i)  Settling Insurers shall not pursue any Insurer Contribution Claim against any Non-Settling Insurer:  (A) that asserts an Insurer Contribution Claim solely against the Trust; (B) whose Insurer Contribution Claim is satisfied and extinguished entirely by the application of this Section 12.5; or (C) that does not assert an Insurer Contribution Claim against them;

       (ii)  If a Non-Settling Insurer asserts its Insurer Contribution Claim only against the Trust, then Settling Insurers shall assign any Insurer Contribution Claims they may hold against such Non-Settling Insurer to the Trust, and the Trust shall be free to assert such Insurer Contribution Claims against such Non-Settling Insurer;

       (iii)  If a Non-Settling Insurer releases its Insurer Contribution Claims, if any such exist, that it may have against Settling Insurers, then such released Settling Insurers shall release their Insurer Contribution Claims against such releasing Non-Settling Insurer.

     b.  In any Action, including the Insurance Coverage Adversary Proceeding, involving the Diocese, a Participating Party, or the Trust (collectively, the  "Alleged Insured") or an Abuse Claimant, as applicable, and one or more Non-Settling Insurers, where such Non-Settling Insurer could assert any Insurer Contribution Claim against any Settling Insurers, then any judgment or award obtained by such Alleged Insured or Abuse Claimant against such Non-Settling Insurer shall be automatically reduced by the amount, if any, that such Settling Insurer would be liable to pay such Non-Settling Insurer as a result of the Non-Settling Insurer's Insurer Contribution Claim (the "Reduction Amount"), so that the Non-Settling Insurer's Insurer Contribution Claim is thereby satisfied and extinguished entirely. To accomplish this reduction, the Alleged Insured or Abuse Claimant shall obtain a finding from that court or arbitrator(s), as applicable, establishing the Reduction Amount before obtaining an entry of judgment against such Non-Settling Insurer. The Settling Insurer(s) allegedly responsible for the Non-Settling Insurer's Insurer Contribution Claim shall upon request and at the sole expense of the Trust cooperate in good faith with the Alleged Insured to take reasonable steps to aid the Alleged Insured in defending against the Insurer Contribution Claim or to otherwise establish the Reduction Amount contemplated

in this paragraph. In the event that the Reduction Amount is determined to be zero, then such Non-Settling Insurer shall fully reimburse the Alleged Insured their costs and expenses, including legal fees, incurred in defending against (or otherwise responding to) the Insurer Contribution Claim or in establishing the Reduction Amount, including all costs, expenses and fees incurred in seeking relief from the court.

c.      If an Alleged Insured or Abuse Claimant and a Non-Settling Insurer enter into an agreement settling one or more Abuse Claims, such agreement shall include a provision whereby such Non-Settling Insurer releases its Insurer Contribution Claims against Settling Insurers so long as Settling Insurers release their Insurer Contribution Claims against such Non-Settling Insurer.

d.      Nothing contained in this Section 12.5.2 shall be interpreted to require the Trust to maintain or allocate a specific reserve for the costs set forth in this Section 12.5.2.

e.      The above procedures shall bind, and inure to the benefit of, all Settling Insurers.

f.      The Trust shall be solely responsible for the payment of all costs and expenses incurred by the Protected Parties in complying with their obligations under this Section 12.5.2.

12.5.3      To ensure that the reduction contemplated in Section 12.5.2 is accomplished, the Settling Insurers shall be entitled to:  (i) notice, within a reasonable time, of the initiation of any future Action against or future settlement negotiations with any Non-Settling Insurer in which an Insurer Contribution Claim could be asserted against any Settling Insurers, and periodic notices thereafter on at least an annual basis of the status of such Action or negotiations; (ii) the opportunity to participate in the Action or settlement negotiations, but only to the extent necessary to accomplish the reduction contemplated in Section 12.5.2; (iii) the reasonable cooperation of the applicable Alleged Insured, at the sole cost and expense of the Trust, so that the Settling Insurers (or, as applicable, the Trust) can assert Section 12.5.2 as a defense in any Action against for an Insurer Contribution Claim; and (iv) have the court or appropriate tribunal issue such orders as are necessary to effectuate the judgment, award, or settlement reduction in order to protect the Settling Insurers from any Insurer Contribution Claim. The notice required above shall be given by:  (i) the Alleged Insured that is a party to such Action or settlement negotiations; or (ii) if no Alleged Insured is such a party, the Non-Settling Insurer that is a party to such Action or settlement negotiations; or (iii) if no Alleged Insured or Non-Settling Insurer is a party to such Action or settlement negotiations, the Abuse Claimant bound by this Plan.

12.5.4      The Trust shall use reasonable efforts to obtain, from all Settling Insurers, agreements with terms similar to those contained in Section 12.5 hereof.

**12.6    Injunction Against Interference with Plan.**

Upon entry of the Confirmation Order, all holders of Claims shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan.

**12.7    Release by Holders of Channeled Claims.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, ALL HOLDERS OF CHANNELED CLAIMS, INCLUDING CONSENTING ABUSE CLAIMS (THE "RELEASING PARTIES"), SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS RELATING TO THE DIOCESE, THE PARTICIPATING PARTIES, THE ESTATE, THE CONDUCT OF THE DIOCESE'S AND THE PROTECTED PARTIES' BUSINESSES, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THIS PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THIS PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AMONG THE RELEASING PARTIES AND ANY RELEASED PARTY, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE.**

**THE FOREGOING RELEASE SHALL BE EFFECTIVE UPON THE OCCURRENCE OF THE EFFECTIVE DATE, EXCEPT THAT, SOLELY WITH RESPECT TO ANY ABUSE CLAIM THEY MAY HOLD, EACH CONSENTING ABUSE CLAIMANT WILL RELEASE THE DIOCESE OR ANY PARTICIPATING PARTY UPON THE OCCURRENCE OF THE ABUSE CLAIM DISCHARGE DATE APPLICABLE TO SUCH ABUSE CLAIM.**

**FOR THE AVOIDANCE OF DOUBT, PRIOR TO THE OCCURRENCE OF THE APPLICABLE ABUSE CLAIM DISCHARGE DATE AND SUBJECT TO THE LIMITATIONS SET FORTH IN THE PLAN, A DULY AUTHORIZED LITIGATION CLAIMANT MAY NAME THE DIOCESE OR ANY PARTICIPATING PARTY IN A CASE OR PROCEEDING TO ADJUDICATE WHETHER THE DIOCESE OR ANY PARTICIPATING PARTY HAS LIABILITY FOR AN ABUSE CLAIM AND THE AMOUNT OF ANY SUCH LIABILITY, BUT THAT LITIGATION CLAIMANT'S RECOURSE IN SUCH CASE OR PROCEEDING SHALL BE LIMITED TO THE PROCEEDS OF ANY NON-SETTLING INSURER POLICIES AND ALL OTHER COSTS AND/OR DAMAGES THAT MAY BE RECOVERABLE AGAINST ANY NON-**

SETTLING INSURERS.   UNDER NO CIRCUMSTANCE MAY A LITIGATION CLAIMANT OR THE TRUST NAME, OR OTHERWISE PURSUE, ANY SETTLING INSURER RELEASEES OR ANY SETTLING INSURER'S RELATED PERSON (IN ANY ACTION OR OTHERWISE) FOR OR ON ACCOUNT OF A CHANNELED CLAIM FOLLOWING SUCH SETTLING INSURER'S PAYMENT OF THE APPLICABLE INSURANCE SETTLEMENT AMOUNT.

NOTHING IN THIS SECTION 12.7 SHALL BE DEEMED TO RELEASE ANY NON-PARTICIPATING PP ABUSE CLAIM A NON-PARTICIPATING ABUSE CLAIMANT MAY HAVE AGAINST A PARTICIPATING PARTY (IF ANY).

12.8    **Mutual Releases.**

EXCEPT FOR OBLIGATIONS RELATED TO THE PRESERVED COVERAGE, OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED BY THE DIOCESE, OBLIGATIONS ARISING UNDER THE PLAN, AND, SOLELY WITH RESPECT TO THE DIOCESE AND THE PARTICIPATING PARTIES, ABUSE CLAIMS SUBJECT TO DELAYED RELEASE IN ACCORDANCE WITH SECTION 12.7 OF THE PLAN, ON THE EFFECTIVE DATE, EACH OF THE PARTICIPATING PARTIES, THE COMMITTEE, THE TRUST, AND EACH CONSENTING ABUSE CLAIMANT, SHALL BE DEEMED TO WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND NATURE THAT THEY MAY HAVE AGAINST EACH OTHER AND THEIR RESPECTIVE RELATED PERSONS.   FOR THE AVOIDANCE OF DOUBT, CONSENTING ABUSE CLAIMANTS SHALL NOT WAIVE THEIR RIGHTS TO DISTRIBUTIONS UNDER THE TRUST IN ACCORDANCE WITH THE TRUST AGREEMENT AND THE ALLOCATION PROTOCOL, AND SHALL BE DEEMED TO RELEASE THEIR ABUSE CLAIMS AGAINST THE DIOCESE AND THE PARTICIPATING PARTIES AS OF THE APPLICABLE ABUSE CLAIM DISCHARGE DATE; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT ALL OTHER CLAIMS AND CAUSES OF ACTION ANY CONSENTING ABUSE CLAIMANT MAY HOLD AGAINST ANY OF THE PROTECTED PARTIES SHALL BE RELEASED ON THE EFFECTIVE DATE, AND PROVIDED, FURTHER, THAT PRIOR TO THEIR RELEASE ANY SUCH ABUSE CLAIMS SHALL ONLY BE ENFORCEABLE AND COMPENSABLE PURSUANT TO THE TERMS OF THE PLAN AND PLAN DOCUMENTS. CONSENTING ABUSE CLAIMANTS WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND NATURE THAT THEY MAY HAVE AGAINST A SETTLING INSURER, SUCH SETTLING INSURER'S RELATED PERSONS, AND ALL OTHER OF SUCH SETTLING INSURER'S SETTLING INSURER RELEASEES ON THE DATE SUCH SETTLING INSURER REMITS ITS INSURANCE SETTLEMENT AMOUNT TO THE TRUST (BUT NO EARLIER THAN THE EFFECTIVE DATE).

12.9    **Exculpation; Limitation of Liability.**

FROM AND AFTER THE EFFECTIVE DATE, NONE OF THE EXCULPATED PARTIES SHALL HAVE OR INCUR ANY LIABILITY FOR ANY CLAIM BY ANY

89

**OTHER EXCULPATED PARTY, BY ANY HOLDER OF A CLAIM, OR BY ANY OTHER PARTY IN INTEREST, FOR ANY ACT OR OMISSION (I) THAT OCCURRED FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE IN CONNECTION WITH THIS CHAPTER 11 CASE OR (II) IN CONNECTION WITH THE FORMULATION, NEGOTIATION, OR PURSUIT OF CONFIRMATION OF A PLAN, EXCEPT FOR CLAIMS ARISING FROM THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD, OR BREACH OF THE FIDUCIARY DUTY OF LOYALTY OF ANY EXCULPATED PARTY, IN EACH CASE SUBJECT TO DETERMINATION OF SUCH BY FINAL ORDER OF A COURT OF COMPETENT JURISDICTION AND PROVIDED THAT ANY EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THIS PLAN.  WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE COMMITTEE, THE DIOCESE AND THEIR RESPECTIVE OFFICERS, TRUSTEES, BOARDS, COMMITTEE MEMBERS, EMPLOYEES, ATTORNEYS, FINANCIAL ADVISORS, EXPERTS, EXPERT WITNESSES, AND OTHER PROFESSIONALS SHALL BE ENTITLED TO AND GRANTED BENEFITS OF SECTION 1125(e) OF THE BANKRUPTCY CODE AND THE CHANNELING INJUNCTION.**

Notwithstanding anything to the contrary in this Section 12.9 or the Plan, Stinson LLP shall not be exculpated from any Claim(s) related to the cybersecurity incident detailed in the Court's Order at Docket No. 2900 held by the Impacted Survivor (as such term is defined in the Court's Order at Docket No. 2900).

### 12.10    Gatekeeper Injunction

To the extent permitted by law, and subject in all respects to this Section 12, no Enjoined Party may commence or pursue against any Protected Party (a) an Abuse Claim or (b) any other Claim or cause of action that arose, arises from, or is related to an Abuse Claim, the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind-down or reorganization of the business of the Diocese, the administration of the Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or cause of action represents a colorable Claim against a Protected Party and (ii) subject in all respects to the Channeling Injunction and Settling Insurer Injunction, specifically authorizing such Enjoined Party to bring such Claim or cause of action against any such Protected Party. The Bankruptcy Court will have jurisdiction to determine whether a Claim or cause of action is colorable and, to the extent legally permissible and as provided for in Section 13, have jurisdiction to adjudicate the underlying colorable Claim or cause of action.

For the avoidance of doubt, the Gatekeeper Injunction in this Section 12.10 does not apply to Claims commenced for the purpose of seeking recovery from Non-Settling Insurers. For the further avoidance of doubt, the Gatekeeper Injunction shall not enjoin the prosecution of claims with respect to Abuse that occurred, or is alleged to have occurred, on or after the Petition Date.

**12.11    Releases in Insurance Settlement Agreements.**

The releases in the Insurance Settlement Agreements are hereby fully incorporated in this Plan by reference and are adopted and ratified in all respects, and the Confirmation Order shall adopt and ratify all such releases. For the avoidance of doubt, but without limiting the generality of the foregoing, the Confirmation Order shall provide that all such releases are binding upon the Diocese and the Participating Parties.

**12.12    Injunctions in Full Force and Effect.**

All injunctions and/or stays provided for in the Plan, the injunctive provisions of sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting any Settling Insurer that has purchased Settling Insurer Policies, free and clear of all Claims pursuant to sections 105, 363, and 1123 of the Bankruptcy Code, are permanent and will remain in full force and effect following the Effective Date of the Plan and are not subject to being vacated or modified.

**12.13    Injunctions and Releases Integral.**

The foregoing injunctive provisions and releases are an integral part of the Plan and are essential to its implementation. The currently pending Abuse Actions commenced by Consenting Abuse Claimants, the continuation of which would violate Sections 12.1, 12.2, or 12.3 of this Plan, the releases provided for under the Plan, or the Insurance Settlement Agreements shall be dismissed with prejudice following the Trustee's receipt of a Consenting Abuse Claim Release Agreement executed by the applicable Abuse Claimant, except for Litigation Claims (or Abuse Claims that may become Litigation Claims), which will be released as against the Diocese and/or Participating Parties (as applicable) upon the applicable Abuse Claim Discharge Date in accordance with Sections 12.2.3 and 12.7 of this Plan.

**12.14    Timing.**

The injunctions, releases, and discharges (including the Channeling Injunction and the Settling Insurer Injunction) to which a Settling Insurer is entitled pursuant to such Settling Insurer's Insurance Settlement Agreement, the Plan, the Confirmation Order, the Sale Order approving such Insurance Settlement Agreement, and the Bankruptcy Code shall only become effective when (a) the Trust receives payment in full of the Insurance Settlement Amount from the Settling Insurer pursuant to the terms of such Settling Insurer's Insurance Settlement Agreement, and (b) all other conditions to the effectiveness of such Settling Insurer's Insurance Settlement Agreement are satisfied or waived in accordance with the terms thereof.

**12.15    Non-Settling Insurers.**

Notwithstanding anything to the contrary herein, the following shall apply to Non-Settling Insurers: (i) no Claim by an Abuse Claimant against a Non-Settling Insurer shall be a Channeled Claim; *provided*, *however*, any Consenting Abuse Claims which assert liability against a Non-Settling Insurer in conjunction with a Protected Party shall be Channeled Claims as to such Protected Party; (ii) no Claim by an Abuse Claimant against a Non-Settling Insurer shall be released by operation of this Plan; (iii) the injunctions provided in Section 12.1 and 12.2

91

of this Plan shall not apply to Claims by any Abuse Claimant against a Non-Settling Insurer; and (iv) all Claims by any Abuse Claimant against a Non-Settling Insurer are preserved.

**12.16**    **Title to and Vesting of Assets.**

All property of the Diocese and the Estate is dealt with by the Plan.  Therefore, on the Effective Date, to the fullest extent allowed by sections 1123(a)(5), 1123(b)(2), 1123(b)(3), 1141(b) and 1141(c) of the Bankruptcy Code, all property of the Diocese and the Estate, and any property acquired by the Diocese pursuant to this Plan, shall revest in the Diocese and such property shall be free and clear of all Liens, Claims, charges or other encumbrances whatsoever, except that (a) any charitable assets subject to Donor Restrictions shall remain subject to such Donor Restrictions and (b) all Purchased Property shall be settled, sold, and/or released (as applicable) pursuant to the terms of the Insurance Settlement Agreements.  On and after the Effective Date, except as otherwise provided in this Plan, the Diocese may operate and manage its affairs and may use, acquire, or dispose of such property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by Donor Restrictions, the Plan or the Confirmation Order.  The Diocese may pay any charges incurred on or after the Effective Date for Professional Fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

**12.17**    **Continued Corporate Existence.**

12.17.1    The Diocese will continue to exist after the Effective Date as a not-for-profit corporation established by special act under New York law, having tax-exempt status under 26 U.S.C. § 501(c)(3) and applicable New York law, without prejudice to any right to alter or terminate such existence, or to change its corporate name, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

12.17.2    RESERVED

**12.18**    **Identity of Trustees and Officers.**

In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the Persons proposed to serve as the trustees and officers of the Diocese on and after the Effective Date shall be:  (i) The Most Reverend Douglas J. Lucia, Bishop of Syracuse, President; (ii) Reverend John Kurgan, Vicar General, Vice President; (iii) Danielle Cummings, Chancellor, Secretary/Treasurer; and (iv) Stephen Breen, Chief Financial Officer, all of whom have served in such capacities for the Diocese prior to and during this Chapter 11 Case and each of whom is affiliated with the Universal Roman Catholic Church.

**12.19**    **Authority to Effectuate Plan.**

Upon the Effective Date, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court or the Diocese.  The Diocese shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action it may deem necessary or beneficial to achieve

consummation of and carry out the Plan and to effectuate the transactions provided for thereunder.

### 12.20    Binding Effect.

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind all holders of Claims.  Subject to the terms of the Plan, upon the Effective Date, every holder of a Claim shall be precluded and permanently enjoined from asserting against the Diocese any Claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred before the Petition Date.

### 12.21    Dissolution of Committee.

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and Agents shall be released from any further duties and responsibilities in this Chapter 11 Case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during this Chapter 11 Case, including any orders regarding confidentiality issued by the Bankruptcy Court or Mediators, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Fee Claims.

## SECTION 13.    RETENTION OF JURISDICTION

### 13.1    By the Bankruptcy Court.

Pursuant to sections 105, 1123(a)(5) and 1142(b) of the Bankruptcy Code and 28 U.S.C. §§ 157 and 1334, on and after the Effective Date, the Bankruptcy Court shall retain:  (i) original and exclusive jurisdiction over the Chapter 11 Case; (i) original, but not exclusive jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in the Chapter 11 Case; and (iii) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to the Chapter 11 Case and the Plan, including matters concerning the interpretation, implementation, consummation, execution or administration of the Plan.  Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

      a.    over disputes concerning the ownership of Claims.

      b.    over disputes concerning the distribution or retention of assets under the Plan.

      c.    subject to the Plan Documents, over objections to Claims, motions to allow late-filed Claims and motions to estimate Claims.

d.    over proceedings to determine the extent, validity, or priority of any Lien asserted against property of the Diocese, the Estate, or the Trust, or property abandoned or transferred by the Diocese, the Estate or the Trust.

e.    over motions to approve Insurance Settlement Agreements entered into after the Effective Date by the Trustee.

f.    over matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets.

g.    over matters related to the removal of the Trustee and the appointment of a successor Trustee.

h.    over matters relating to the subordination of Claims.

i.    to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated.

j.    to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order.

k.    to issue orders in aid of execution, implementation, or consummation of the Plan, including the issuance of orders enforcing any and all releases and injunctions issued under or pursuant to the Plan and any Insurance Settlement Agreement (including, without limitation, the Channeling Injunction, Settling Insurer Injunction, and Gatekeeper Injunction).

l.    over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith.

m.    over requests for allowance of payment of Claims entitled to priority under sections 507(a)(2) and 503(b) of the Bankruptcy Code and any objections thereto.

n.    over all applications for compensation under sections 327, 328, 329, and 330 of the Bankruptcy Code.

o.    over matters concerning state, local, or federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

p.    over conflicts and disputes among the Trust, the Diocese, and holders of Claims.

q.    over disputes concerning the existence, nature, or scope of the Diocese Discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date.

r.    to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Diocese or its property, the Estate or its property, the Trust or its property, the Trustee, the Professionals, or the Confirmation Order.

s.    to enter a final decree closing the Chapter 11 Case.

t.    to enforce all orders previously entered by the Bankruptcy Court (including without limitation the Sale Order(s)).

u.    over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case or the Plan.

v.    to hear and determine any matters related to the indemnification obligations of the Trust under any Insurance Settlement Agreement and/or Section 8.14.2 of this Plan.

Notwithstanding anything in this Plan to the contrary, nothing contained herein concerning the retention of jurisdiction by the Bankruptcy Court shall be deemed to be a finding or conclusion that (1) the Bankruptcy Court in fact has jurisdiction with respect to any and all Claims and causes of action presently asserted in, or that could be asserted in, the Insurance Coverage Adversary Proceeding, (2) any such jurisdiction is exclusive with respect to all Claims and causes of action presently asserted in, or that could be asserted in, the Insurance Coverage Adversary Proceeding, or (3) abstention or dismissal of the Insurance Coverage Adversary Proceeding pending in the Bankruptcy Court or the District Court as an adversary proceeding is or is not advisable or warranted, so that another court can hear and determine such Insurance Coverage Adversary Proceeding. Any Court other than the Bankruptcy Court that has jurisdiction over the Insurance Coverage Adversary Proceeding shall have the right to exercise such jurisdiction.

## 13.2    By the District Court.

Pursuant to sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. § 1134, on and after the Effective Date, the District Court shall retain original, but not exclusive, jurisdiction to hear and determine all matters arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case.

## 13.3    Actions to Enforce the Plan.

The Diocese and the Trust may, but are not required to, commence an Action to enforce the terms of the Plan or to collect amounts owed pursuant to the Plan and any settlements set forth in the Plan or later approved by the Bankruptcy Court, which are not paid in accordance with the terms of the Plan or such settlement.  Any such Action may be commenced by filing a motion with the Bankruptcy Court.  On and after the Effective Date, the Trust shall have the sole and exclusive right to enforce the terms of the Plan against the Diocese and/or any Participating Party (except that the Diocese or any Participating Party may enforce the terms of the plan as

against each other and the Trust) and may seek any appropriate remedy in law or equity from the Bankruptcy Court which shall retain exclusive jurisdiction over any such Action.

### 13.4    Case Closure.

The existence and continued operation of the Trust shall not prevent the Bankruptcy Court from closing the Chapter 11 Case upon a motion by the Diocese or any other Person.  The Trustee shall not take any actions to unreasonably keep the Chapter 11 Case open.  The Trustee, in his sole discretion, may seek to reopen the Chapter 11 Case to administer assets of the Trust. If the Chapter 11 Case is reopened upon request of the Trustee, the Trust, and the Diocese shall cooperate to assure that no disbursements are made from the Estate during the period when the Chapter 11 Case is reopened, and the case shall be closed at the earliest possibility.

## SECTION 14.    MISCELLANEOUS PROVISIONS

### 14.1    Amendment or Modification of this Plan.

The Plan Proponents may modify the Plan at any time prior to the Confirmation Hearing, in accordance with section 1127(a) of the Bankruptcy Code.  After the Confirmation Date and prior to substantial consummation, the Plan Proponents may modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, by filing a motion on notice as required under the applicable Bankruptcy Rules, and the solicitation of all Creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court.  Notwithstanding the foregoing, those provisions of the Plan that implement, supplement, or relate to the Insurance Settlement Agreements may not be severed, waived, amended, deleted or otherwise modified without the prior written approval of each Settling Insurer affected by such severance, waiver, amendment, deletion or modification.

### 14.2    Revocation or Withdrawal of this Plan.

The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order.  If the Plan Proponents revoke or withdraw this Plan before the Confirmation Date, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Diocese or the Committee or to prejudice in any manner the rights of the Diocese or the Committee in any further proceedings.

### 14.3    Reports.

Until a final decree closing the Chapter 11 Case is entered, the Diocese shall File all post-confirmation quarterly reports as required by the United States Trustee Operating Guidelines (with a copy served on the Office of the United States Trustee).  The first report shall be Filed within thirty days after the end of the quarter in which the Effective Date occurs.

### 14.4    Notices.

All notices or requests in connection with this Plan shall be in writing and given by mail or overnight mail (with a contemporaneous e-mail copy, which shall not constitute notice) addressed to:

> To the Diocese:
> Stephen A. Donato, Esq.
> Charles J. Sullivan, Esq.
> Grayson T. Walter, Esq.
> Bond, Schoeneck & King, PLLC
> One Lincoln Center
> Syracuse, New York 13202
> Email: donatos@bsk.com
>         sullivc@bsk.com
>         walterg@bsk.com
>
> To the Committee:
> Robert T. Kugler *(admitted pro hac vice)*
> Edwin H. Caldie *(admitted pro hac vice)*
> Stinson LLP
> 50 South Sixth Street
> Minneapolis, Minnesota 55402
> Telephone: (612) 335-1500
> Facsimile: (612) 335-1657
> Email:  robert.kugler@stinson.com
>         ed.caldie@stinson.com
>
> To the Trust or the Trustee
> At the address set forth in the Trust Agreement

All notices and requests to Persons holding any Claim in any Class shall be sent to them at (i) the latest mailing address set forth in a proof of claim Filed with Stretto or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Diocese or Trustee, as applicable, by such Claimant in writing; or (ii) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Diocese or Trustee, as applicable, to the mailing address set forth in the Schedules Filed by the Diocese in this Chapter 11 Case.

### 14.5    Severability.

If, prior to confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in

full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation.

### 14.6    Validity and Enforceability.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the Confirmation Order, is valid and enforceable pursuant to its terms.  Should any provision in this Plan be determined by the Bankruptcy Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

### 14.7    Controlling Documents.

In the event and to the extent that any provision of the Plan or the Trust Documents is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan or the Trust Documents, as applicable, shall control and take precedence.  In the event and to the extent that any provision of the Trust Documents is inconsistent with any provision of the Plan, the Plan shall control and take precedence.  In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the Trust Documents, the provisions of the Confirmation Order shall control and take precedence.

### 14.8    Filing of Additional Documents.

At any time before substantial consummation of the Plan, the Diocese, or the Trust, as appropriate, may File with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or otherwise to comply with applicable law.

### 14.9    Direction to a Party.

On or after the Effective Date, the Trustee or the Diocese, as applicable, may apply to the Bankruptcy Court for entry of an Order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect the transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

### 14.10    Certain Actions.

By reason of entry of the Confirmation Order prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers or trustees of the Diocese under the Plan, including: (i) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan; and (ii) the adoption, execution and implementation of other matters provided for under the Plan involving the Diocese or the organizational structure of the Diocese shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective

Date (as appropriate), pursuant to applicable non-bankruptcy law, without any requirement of further action by the officers or trustees of the Diocese.

### 14.11    Waiver of Subordination.

Notwithstanding any provision of the Plan to the contrary, all holders of Claims shall be deemed to have waived any and all contractual subordination rights to which they may have with respect to the Distributions made pursuant to the Plan, and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all holders of Claims from enforcing or attempting to enforce any such rights against any Person receiving Distributions under the Plan.

### 14.12    Reservation of Rights.

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date has occurred.

### 14.13    Plan as Settlement Communication.

The Plan furnishes or offers or promises to furnish (or accepts or offers or promises to accept) valuable consideration in compromising or attempting to compromise Claims and/or causes of action that are disputed as to validity or amount (including Abuse Claims and the Insurance Coverage Adversary Proceeding), except as otherwise provided above.  Accordingly, the Plan, the Disclosure Statement, and any communications regarding the Plan or the Disclosure Statement are subject in all respects to Rule 408 of the Federal Rule of Evidence and any comparable provision(s) of applicable state law precluding their use as evidence of liability for, or the validity, or invalidity of, any Disputed Claim or cause of action.

### 14.14    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan transactions consummated or to be consummated in connection therewith.

### 14.15    Headings.

Headings are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

### 14.16    No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed as an admission by the Diocese, the Committee, any Participating Party, or any Settling Insurer with respect to any matter set forth herein.

*[Signature pages follow]*

Dated:  September 24, 2025                    Respectfully submitted,
        Syracuse, New York

                                             The Roman Catholic Diocese
                                             of Syracuse, New York


                          By:      _____/s/_____
                                   Stephen A. Breen,
                                   Chief Financial Officer



                                   **BOND, SCHOENECK & KING, PLLC**

                          By:      _____/s/_____
                                   Stephen A. Donato, Bar Roll No. 101522
                                   Charles J. Sullivan, Bar Roll No. 507717
                                   Grayson T. Walter, Bar Roll No. 518237
                                   Sara C. Temes, Bar Roll No. 514148
                                   Office and Post Office Address:
                                   One Lincoln Center
                                   Syracuse, New York 13202-1355
                                   Telephone: (315) 218-8000
                                   Facsimile: (315) 218-8100
                                   Email: donatos@bsk.com
                                          sullivc@bsk.com
                                          walterg@bsk.com
                                          stemes@bsk.com

Dated:  September 24, 2025
       Syracuse, New York

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

By:          /s/
          Kevin Braney, Ph.D.
          Committee Chair


**STINSON LLP**

By:          /s/
          Robert T. Kugler *(admitted pro hac vice)*
          Edwin H. Caldie *(admitted pro hac vice)*
          50 South Sixth Street
          Minneapolis, Minnesota 55402
          Telephone: (612) 335-1500
          Facsimile: (612) 335-1657
          Email:  robert.kugler@stinson.com
                  ed.caldie@stinson.com

          *Counsel to the Official Committee*
          *of Unsecured Creditors*

# **EXHIBIT A**

List of Participating Parties

# Parishes

| Parish Corporation Name: | City - Zip |
|---|---|
| St. Agnes Mission | Afton, NY 13730 |
| St. John the Evangelist | Bainbridge, NY 13733 |
| St. Augustine Roman Catholic Church, Baldwinsville, NY | Baldwinsville, NY 13027 |
| St. Elizabeth Ann Seton Church of the Town of Clay, NY | Baldwinsville, NY 13027 |
| St. Marys Church  of  Baldwinsville, NY | Baldwinsville, NY 13027 |
| St. Francis of Assisi a/k/a St. Catherine of Siena a/k/a St. Christopher and St. Rita | Binghamton, NY 13901 |
| *St. Christopher Roman Catholic Church [Town of Chenango, Broome County]* | *Binghamton, NY 13901* |
| *St. Catherine of Siena Roman Catholic Church* | *Binghamton,13901* |
| St. Mary of the Assumption (combined with St. Mary's Church) | Binghamton, NY 13901 |
| St. Paul's Church, Binghamton, NY | Binghamton, NY 13901 |
| *St. Andrew's Church of Binghamton* | *Binghamton, NY 13903* |
| The Church of Saints John & Andrew | Binghamton, NY 13903 |
| *St. John the Evangelist Church* | *Binghamton,13903* |
| Church of the Holy Trinity | Binghamton, NY 13905 |
| *Holy Trinity a/k/a St. Ann a/k/a St. Joseph and St. Stanislaus Kostka Church* | *Binghamton, NY 13905* |
| *St. Joseph's  Lithuanian Roman Catholic Church of Binghamton NY (merged in St. Ann)* | *Binghamton, NY 13905* |
| *St. Ann Catholic Church (renamed church of the Holy Trinity)* | *Binghamton13905* |
| Ss Cyril & Methodius Slovak Roman Catholic Church of Binghamton, NY | Binghamton, NY 13905 |
| St. Patrick's Catholic Church of Binghamton, NY | Binghamton, NY 13905 |
| St. Thomas Aquinas Church | Binghamton, NY 13905 |
| | |
| Christ Our Hope a/k/a St. Joseph a/k/a St. Patrick Mission a/k/a St. Mary of The Snows Oratory | Boonville, NY 13309 |
| St. Agnes Church | Brewerton, NY 13029 |
| Church of St. Francis of Assisi of Bridgeport, NY | Bridgeport, NY 13030 |
| St. John The Evangelist a/k/a St. Mary Devotional Chapel and St. Paul (Redfield) | Camden, NY 13316 |
| St. Joseph's Church of Camillus,NY | Camillus, NY 13031 |
| St. Agatha's Church | Canastota, NY 13032 |
| St. James | Cazenovia, NY 13035 |
| Divine Mercy Parish Roman Catholic Church | Central Square, NY 13036 |
| *Saint Michael's Roman Catholic Church* | *Central Square, NY 13036* |
| *St. Anthony of Padua's Church of Willowvale and Chadwicks* | *Chadwicks, NY 13319* |
| St. Patrick-St. Anthony Church of Chadwicks, New York | Chadwicks, NY 13319 |
| *St. Rita's Roman Catholic Church* | *Chenango Forks, NY 13746* |
| St. Patrick | Chittenango, NY 13037 |
| Our Lady of Perpetual Help Roman Catholic Church of Cincinnatus, NY | Cincinnatus, NY 13040 |
| The Church of the Sacred Heart | Cicero, NY 13039 |
| *St. Patrick's  Church* | *Clayville, NY 13322* |
| *St. Mary of The Assumption a/k/a St. Mary's Oratory* | *Cleveland, NY 13042* |
| St. Mary's Roman Catholic Church, Clinton | Clinton, NY 13323 |
| The Church of Annunciation | Clinton, NY 13323 |
| Mission of St. Bernadette | Constantia, NY 13044 |
| St. Anthony of Padua | Cortland, NY 13045 |
| St. Mary's Church of Cortland | Cortland, NY 13045 |
| St. Joseph's Church, Deposit, NY | Deposit, NY 13754 |
| St. Lawrence Mission | *DeRuyter, NY* |
| Holy Cross Church, DeWitt, NY | DeWitt, NY 13214 |
| *St. Francis Church of Durhamville, NY* | *Durhamville, NY 13054* |
| St. Matthew's Church | E. Syracuse, NY 13057 |
| Our Lady of Good Counsel Church, Endicott, NY | Endicott, NY 13760 |
| St. Ambrose | Endicott, NY 13760 |
| St. Anthony of Padua Church | Endicott, NY 13760 |
| *St. Casimir Roman Catholic (Polish) Church of Endicott* | *Endicott, NY 13760* |
| *St. Joseph's Roman Catholic Church, Endicott, NY* | *Endicott, NY 13760* |
| *Church of Christ The King, Endwell , NY* | *Endwell, NY 13760* |
| *Our Lady of Angels Church of Endwell, NY* | *Endwell, NY 13760* |

| | |
|---|---|
| Church of the Holy Family | Endwell, NY 13760 |
| *St. Paul's Mission (mission of I.C. Pomep)Unincororated, closed* | Fabius |
| Immaculate Conception | Fayetteville, Ny 13066 |
| St. Mary's Church, Florence, Oneida Co. | Florence, NY |
| St. Patrick Mission | Forestport, NY |
| St.Patrick's Church of Forestport | Forestport, NY 13338 |
| *The Holy Family Church of Fulton* | *Fulton, NY 13069* |
| *St. Michael 's Roman Catholic Polish Church* | *Fulton, NY 13069* |
| *Church of the Immaculate Conception of Fulton,NY* | *Fulton, NY 13069* |
| Church of the Holy Trinity | Fulton, NY 13069 |
| Church of the Immaculate Conception | Greene, NY 13778 |
| St. Mary | Hamilton, NY 13346 |
| Our Lady of The Rosary  Church, Hannibal  NY | Oswego, NY 13126 |
| St. John Chrysostom Mission [served area near Forestport] | Hawkinsville, NY |
| *St. Ann Church of Hinckley, NY* | *Hinckley, NY 13352* |
| The Parish Community of St. Leo & St. Ann | Holland Patent, NY 13354 |
| St. Margaret's Catholic Church | Homer, NY 13077 |
| *St Mary's Devotional Chapel-[never inc]* | *Irish Ridge* |
| *St. Mary's Church, Jamesville, NY* | *Jamesville, NY 13078* |
| St. James Roman Catholic Church Lestershire, NY | Johnson City, NY 13790 |
| *The Church of the Blessed Sacrament* | *Johnson City, NY 13790* |
| St. Patrick | Jordan, NY 13080 |
| St. Mary's Church, Kirkwood | Kirkwood, NY 13795 |
| *Church of St. Frances Xavier Cabrini* | *Lacona [Pulaski, NY 13142]* |
| Church of the Nativity at St. Joseph's | LaFayette, NY 13084 |
| St. Joseph's Church | Lee Center, NY 13363 |
| *Our Lady of the Valley Mission* | *Leonardsville, NY,13364* |
| *St. Francis of Assisi Mission as The Trustees of St. Mary's Church of West Monroe* | *Little France, NY* |
| Epiphany | Liverpool, NY 13088 |
| Church of Immaculate Heart of Mary | Liverpool, NY 13088 |
| St. Joseph the Worker Liverpool, Onondaga Co. | Liverpool, NY 13088 |
| Christ the King Church, Liverpool, NY | Liverpool, NY 13090 |
| Pope John XXIII Roman Catholic Church | Liverpool, NY 13090 |
| *St. John Roman Catholic Church of Clay, NY* | *Liverpool, NY 13090* |
| Most Holy Rosary Roman Catholic Church of Maine, NY | Maine, NY 13802 |
| St. Ann's  Church | Manlius, NY 13104 |
| St. Stephen's Church | Marathon, NY 13803 |
| St. Francis Xavier's Church | Marcellus, NY 13108 |
| St. Margaret's Church | Mattydale, NY 13211 |
| St. Jospeh's Church of McGraw, NY- originally titled to St. Mary-Corland | McGraw, NY |
| *St.Mary, Star of the Sea* | *Mexico, NY 13114* |
| St. Anne, Mother of Mary | Mexico, NY 13114 |
| Our Lady of Perpetual Help | Miinetto |
| St. Mary of the Assumption | Minoa, NY 13116 |
| St. Joan of Arc Church of Morrisville, NY | Morrisville, NY 13408 |
| *St. Theresa of the Infant Jesus* | *Munnsville, NY 13409* |
| Church of St. Theresa of the Infant Jesus, New Berlin, NY | New Berlin, NY 13411 |
| Church of Our Lady of the Rosary, New Hartford, NY | New Hartford, NY 13413 |
| St. John the Evangelist Church | New Hartford, NY 13413 |
| St. Thomas | New Hartford, NY 13413 |
| *Holy Cross Church* | *New London* |
| Church of the Sacred Heart a/k/a St. Mary Our Lady | New York Mills, NY 13417 |
| *St. Mary's Church of Our Lady of Czestochowa* | *New York Mills, NY 13417* |
| *St. John Oratory and Cemetery* | *North Bay, NY* |
| *St. Mary' s Mission* | *North Brookfield,NY* |
| St. Rose of Lima Church | N. Syracuse, NY 13212 |
| St. Paul | Norwich, NY 13815 |
| St. Bartholomew | Norwich, NY 13815 |

| | |
|---|---|
| St. Joseph's German Catholic Church of Oneida | Oneida, NY 13421 |
| St. Patrick | Oneida, NY 13421 |
| St. Joseph | Oriskany Falls, NY 13425 |
| *Church of St. Stephen, Protomartyr* | *Oriskany, NY 13424* |
| *St. Louis* | *Oswego, NY 13126* |
| *St. Joseph Mission* | *Oswego, NY* |
| *St. Joseph's Church* | *Oswego, NY 13126* |
| *St. John The Evangelist* | *Oswego, NY 13126* |
| *St. Mary of the Assumption* | Oswego, NY 13126 |
| St. Paul | Oswego, NY 13126 |
| St. Peter's Church, Oswego | Oswego, NY 13126 |
| *St. Stephen Roman Catholic Church* | *Oswego, NY 13126* |
| St. Patrick's  Church of Otisco, NY | Otisco, NY 13159 |
| Church of St. Mary of the Snows | Otter Lake, NY 13338 |
| St. Joseph's Church | Oxford, NY 13830 |
| *St. Anne's Church of Parish, NY a/k/a St. Anne Mother of Mary (Mexico)* | *Parish, NY 13131* |
| St. Stephen | Phoenix, NY 13135 |
| Church of The Nativity at Immaculate Conception | Pompey, NY 13138 |
| Christ Our Light a/k/a St. John The Evangelist | Pulaski, NY 13142 |
| *St. John the Evangelist Church Pulaski* | *Pulaski, NY 13142* |
| *St. Paul's Mission (mission of I.C. Pomep)Unincororated, closed* | *Redfield* |
| St. John the Baptist | Rome, NY 13440 |
| *St. Mary's Church, Rome, NY* | *Rome, NY 13442* |
| St. Paul | Rome, NY 13440 |
| St.  Peter's Church, Rome | Rome, NY 13440 |
| Transfiguration | Rome, NY 13440 |
| St. Joseph | Sanitaria Springs, 13833 |
| Sacred Heart Church of Town of Scriba, Oswego | Scriba, NY 13126 |
| St. Malachy | Sherburne, NY 13460 |
| St. Helena | Sherrill, NY 13461 |
| St. Mary of the Lake Roman Catholic Church,Skaneateles,NY | Skaneateles, NY13152 |
| *St. Bridget Roman Catholic Church of Skaneateles Falls, NY* | *Skaneateles Falls, NY* |
| *St. Bridget's Church -[First a Mission of Oxford, then Cortland, then Truxton]* | *Solon, NY* |
| *St. Peter's Church of Split Rock* | *Syracuse, NY* |
| St. Cecilia's Church, Solvay, NY | Solvay, NY 13209 |
| *Corpus Christi Church of S. Onondaga County of Onondaga, State of  NY* | Syracuse, NY 13159 |
| St. Mary's Church, Syracuse, NY d/b/a The Cathedral of the Immaculate Conception | Syracuse, NY 13202 |
| *St. John's Church, Syracuse, NY* | *Syracuse, NY 13202* |
| *Holy Trinity Church, Syracuse* | *Syracuse, NY 13203* |
| *St. Peter* | *Syracuse, NY 13203* |
| St. Vincent DePaul's Church | Syracuse, NY 13203 |
| Basilica of the Sacred Heart of Jesus, Syracuse, NY | Syracuse, NY 13204 |
| *St. Brigid & St. Joseph Church of Syracuse* | *Syracuse, NY 13204* |
| St. Lucy | Syracuse, NY 13204 |
| St. Patrick' s Church, Geddes | Syracuse, NY 13204 |
| *St. Stephen* | *Syracuse, NY 13204* |
| St. Anthony of Padua | Syracuse, NY 13205 |
| Our Lady of Hope f/k/a St. James | Syracuse, NY 13205 |
| Blessed Sacrament Church, Eastwood, NY | Syracuse, NY 13206 |
| Transfiguration Roman Catholic Church | Syracuse, NY 13206 |
| Most Holy Rosary | Syracuse, NY 13207 |
| *Our Lady of Lourdes Church Syracuse, NY* | *Syracuse, NY 13207* |
| Franciscan Church of the Assumption | Syracuse, NY 13208 |
| Church of Our Lady of Pompei - St. Peter | Syracuse, NY 13208 |
| St. Daniel | Syracuse, NY 13208 |
| St. John the Baptist | Syracuse, NY 13208 |
| St. Joseph (German) Church [FAD 1882] | Syracuse, NY |
| Church of Our Lady of Peace [ merged into St. Cecilia's Solvay as St. Marianne Cope] | Syracuse, NY 13209 |

| | |
|---|---|
| *Church of St. Andrew the Apostle of Syracuse, NY* | *Syracuse, NY 13210* |
| All Saints Church, Syracuse, NY [new name for St. Therese @ merger with OL Solace] | Syracuse, NY 13210 |
| Church of St. Therese The Little Flower of Jesus, Syracuse | Syracuse, NY 13210 |
| St. Michael's & St. Peter Church, Onondaga Hill | Syracuse, NY 13215 |
| Holy Family | Syracuse, NY 13219 |
| St. Ann's Church Syracuse, NY [name changed to St. Charles-St. Ann] | Syracuse, NY 13219 |
| St. Charles Borromeo Church | Syracuse, NY 13219 |
| *The Church of Our Lady of Solace [merged into St. Therese to become All Saints]* | *Syracuse, NY 13224* |
| *St. Anne -Glenmore [never inc]* | *Taberg, NY 13471* |
| St. Patrick's Church Taberg, NY | Taberg, NY 13471 |
| St. Patrick | Truxton,13158 |
| Church of the Nativity at St. Leo's | Tully, NY 13159 |
| *St. Agnes Church* | *Utica, NY 13501* |
| Historic Old St. John | Utica, NY 13501 |
| St. Francis de Sales | Utica, NY 13501 |
| St.Mary's Church  Utica    (South St.) | Utica, NY 13501 |
| Church of the Blessed Sacrament | Utica, NY 13501 |
| St. Maria di Monte Carmelo | Utica, NY 13501 |
| St. Stanislaus Roman Catholic Church | Utica, NY 13501 |
| Holy Trinity Church of Utica, NY | Utica, NY 13502 |
| Church of Our Lady of Lourdes | Utica, NY 13502 |
| Church of The Sacred Heart | Utica, NY 13502 |
| St. Joseph | Utica, NY 13502 |
| St. Patrick Church | Utica, NY 13502 |
| St. George Roman Catholic Church | Utica, NY 13502 |
| St. Mark | Utica, NY 13502 |
| St. Peter | Utica, NY 13502 |
| St. Anthony & St. Agnes Church, Utica, NY | Utica, NY 13504 |
| St. Mary of the Lake Mission | Verona Beach, NY 13162 |
| Holy Family | Vernon, NY 13476 |
| Our Lady of Good Counsel | Verona, NY 13478 |
| Our Lady of Sorrows | Vestal, NY 13851 |
| St. Vincent DePaul-Blessed Sacrament Church | Vestal, NY 13850 |
| Our Lady of Good Counsel | Warners, NY 13164 |
| St. Bernard's Catholic Church of Waterville, Oneida Co. | Waterville, NY 13480 |
| St. Anne's Roman Catholic Church, Whitesboro, NY | Whitesboro, NY 13492 |
| St. Paul's Church -St. Anne's-St. Stephen's, Whitesboro | Whitesboro, NY 13492 |
| The Catholic Community of St. Stephen-St. Patrick [merged into St. Patraick-Whitney Pt. | Whitney Point,  13862 |
| St. Patrick 's Church Williamstown [originally a mission of Parish, later Camden] | Williamstown,NY  13493 |
| Church of Our Lady of Lourdes of Windsor,NY | Windsor,NY 13865 |
| Our Lady of Hope | Syracuse, NY |
| Christ the Good Shepard | Oswego, NY |
| | |
| St. Marianne Cope Church | Solvay, NY 13209 |
| St. Michaels Church | Syracuse NY 13215 |
| St. Anthony of Padua Church | Utica NY 13501 |
| | |
| St. John's Church and Roman Catholic Society in the City of Utica a/k/a Historic Old St. John | Utica, NY 13501 |
| St. Mary Mt. Carmel- Blessed Sacrament Church | Utica, NY 13501 |
| Mary, Mother of Our Savior Church - new name for OLL | Utica, NY 13502 |
| St. Vincent de Paul Church | Vestal, NY 13850 |

# Schools

| | |
|---|---|
| All Saints Catholic School | Endicott |
| Bishop Cunningham High School | Oswego |

| | |
|---|---|
| Bishop Grimes Jr./Sr. High School | East Syracuse |
| Bishop Ludden Jr./Sr. High School | Syracuse |
| Cathedral Academy at Pompei | Syracuse |
| Catholic Schools of Broome County | Binghamton |
| Holy Family | Norwich |
| Notre Dame Elementary School | Utica |
| Notre Dame Jr. / Sr. High | Utica |
| Oswego Catholic High School | Oswego |
| Rome Catholic School | Rome |
| Seton Catholic Central | Binghamton |
| Seton Catholic High School | Endicott |
| Trinity Catholic School | Oswego |
| Utica Catholic Academy | |

# Other Catholic Entities

Associated Catholic Charities for Community Development at Broome Co., Inc.

Catholic Cemeteries of the Roman Catholic Diocese of Syracuse, Inc.

Catholic Charities of the Roman Catholic Diocese of Syracuse

Christopher Community, Inc.

Encompass Health Home, LLC

Heritage Campaign, Inc.

Jail Ministry of Onondaga County, Inc.

Joseph and Elaine Scuderi Foundation, Inc.

The Clerical Fund of the Roman Catholic Diocese of Syracuse

The Diocese of Syracuse Lay Pension Plan

The Foundation of the Roman Catholic Diocese of Syracuse, Inc.

The Robert L. McDevitt, K.S.G.K.C.H.S. and Catherine H. McDevitt, L.C.H.S. Foundation Inc.

The Syracuse Catholic Press Association, Inc.

The Syracuse Diocesan Investment Fund

The Syracuse House of Retreats

The St. Thomas Aquinas Fund, Inc.

Camp Nazareth

Lourdes Camp

Brady Faith Center

Brady Farm

Brady Market

Joseph and Elaine Scuderi Foundation, Inc.

Joseph T. O'Keefe Corporation

Newman Foundation of Binghamton

Newman Foundation of Cortland

Project Joseph

Propagation of Faith

Spirtual Renewal Center

St. Thomas More Catholic Campus Ministry

The Guardian Angel Society

The Robert L. McDevitt K.S.G. , K.C.H.S. and Catherine H. McDevitt L.C.H.S Fund of St. James Church of Lestershire, NY

The Robert L. McDevitt K.S.G. , K.C.H.S. and Catherine H. McDevitt L.C.H.S Fund of St. Patrick's Church of Binghamton, NY

The Robert L. McDevitt K.S.G. , K.C.H.S. and Catherine H. McDevitt L.C.H.S Fund of St. Thomas Aquinas Church

Holy Name Society, St. Margaret's Church. Mattydale, NY

St. Vincent DePaul Church Daycare

Windsor Human Development